PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

**EMERGENCY MOTION FOR ENTRY OF BRIDGE ORDERS**
**GRANTING CERTAIN RELIEF PENDING FIRST DAY HEARINGS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries

in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this emergency motion (the "Emergency Motion") and respectfully

represent as follows:

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.      On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors have requested authorization to consolidate their chapter 11 cases for procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Mesa's Business

3.      Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico.  The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures.  The Debtors employ approximately 3,400 full and part-time employees.

4.      Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements.  Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*").  Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc.  The remaining Debtors operate businesses, or own interests in

businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

5.     As of September 30, 2009, the Debtors had consolidated assets[2] of approximately $975 million, and consolidated liabilities of approximately $869 million.  The Debtors' consolidated 2009 revenues were approximately $968 million.  Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements.  The Debtors' remaining passenger revenues are generated from their independent *go!* operations in Hawaii.

6.     A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* (the "Lotz Declaration"), filed contemporaneously herewith.

## Jurisdiction

7.     This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.     Contemporaneously with their petitions for relief, the Debtors filed numerous "First Day Motions" and applications requesting authority, among other things, to take certain actions and implement procedures to ensure a smooth transition into chapter 11 and to enable the Debtors to reorganize with minimal disruption and harm to their business and operations.  The Debtors have requested that the Court consider the First Day Motions at a hearing scheduled at the Court's earliest convenience (the "First Day Hearing").

---

[2]  At book value.

9.      By this Emergency Motion, the Debtors respectfully request that this Court immediately, and without a hearing, enter several bridge orders on an interim basis (collectively, the "Bridge Orders") pursuant to section 105(a) and other appropriate sections of the Bankruptcy Code pending this Court's disposition of the First Day Motions filed by the Debtors contemporaneously herewith.

## Basis for Relief

10.      Even though there may be a relatively short delay between the time that these chapter 11 cases were commenced and the First Day Hearing, that delay could well be operationally significant to the Debtors, given the nature of the Debtors' twenty-four-hour-a-day business, the critical importance and vulnerability of their operations, and the safety concerns attendant to operating a passenger airline.

11.      In fact, absent entry of the Bridge Orders, any delay in granting the relief requested herein could cause significant damage to the Debtors' business operations, and impact hundreds of flights and the provision of services to thousands of customers. *See* Declaration of Michael J. Lotz attached hereto as Exhibit A.

12.      Given the nature of the relief requested, the Debtors have fashioned the proposed Bridge Orders to be limited in both scope and duration. The Debtors have sought that minimal relief that they believe is absolutely essential to their operations and without which even for a short period of time the Debtors' operations could be severely interrupted. Moreover, the Debtors have asked that the requested relief be granted only until the Court considers and rules on the First Day Motions.

13.      Absent the requested relief, until the First Day Hearing is held:

- Flights would have to be cancelled if critical maintenance and ground handling services cannot be obtained;

- Aspects of the Debtors' system of managing cash receipts and disbursements would have to cease;

- The Debtors' customers could not use any tickets purchased prior to the chapter 11 filing;

- The Debtors could not, in certain circumstances, purchase fuel;

- The Debtors would have to cease participating in their clearinghouse and interline relationships with other airlines and other private and public organizations, causing serious disruption and inconvenience to customers; and

- The Debtors would face disruptions with travel agencies and other businesses that sell tickets and other goods and services to customers.

14.     Bridge orders similar to those identified above have been entered in other large chapter 11 cases. *See, e.g., In re Delphi Corporation,* Case No. 05-44481 (AJG) (Bankr. S.D.N.Y. Oct. 8, 2005) (granting, until first day hearing numerous bridge orders for, *inter alia,* relief related to wages, cash management, foreign and other critical vendors, customer programs, and investment guidelines); *In re Delta Air Lines. Inc.,* Case No. 05- 17923 (PCB) (Bankr. S.D.N.Y. Sept. 14, 2005) (granting, until first day hearing, numerous bridge orders for, *inter alia,* relief related to wages, cash management, customer programs, foreign and other critical vendors, investment guidelines, and cash collateral); *In re US Airways Group, Inc.,* Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004) (granting, until first day hearing, numerous bridge orders for, *inter alia,* relief related to wages, cash management, customer programs, foreign and other critical vendors, and investment guidelines); and *In re US Airways Group, Inc.,* Case No. 02-83984 (SSM) (Bankr. E.D. Va. Aug. 11, 2002) (granting, until first day hearing, numerous bridge orders for, *inter alia,* relief related to wages, cash management, customer programs, foreign vendors, and essential trade vendors).

15.    In light of the foregoing, the Debtors request that this Court enter the Bridge Orders each of which will be effective only until the Court considers these issues during the First Day Hearing as described below for the reasons set forth herein.  The summaries set forth below provide a brief overview of the principal relief requested in each of the Bridge Orders. A further description of the requested relief is set forth in the applicable First Day Motions delivered to the Court simultaneously herewith.

**A.    Cash Management Motion**

16.    On the Petition Date, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(c) And Bankruptcy Rules 6003 and 6004 to (I) Continue Using Existing Cash Management System and (II) Maintain Existing Bank Accounts and Business Forms* (the "Cash Management Motion").  As provided for in the proposed Bridge Order attached hereto as Exhibit B (the "Cash Management Bridge Order"), the Debtors request interim authority to (i) maintain their existing cash management system (the "Cash Management System"), (ii) maintain their existing bank accounts (the "Bank Accounts") with the same account numbers, subject to a prohibition against honoring checks issued or dated before the Petition Date absent a prior order of the Court and (iii) continue to use their existing correspondence and business forms, including, but not limited to, checks, purchase orders, letterhead, envelopes, promotional materials and other business forms, in each case until the Court considers the Cash Management Motion.

17.    The proposed Cash Management Bridge Order also grants the banks at which the Debtors maintain one or more Bank Accounts (the "Banks") the authority to (i) continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process and honor and pay any and all post-petition checks, drafts, wires, or automated

clearing house transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, and (ii) accept and honor all representations from the Debtors as to which checks, drafts, wires or automatic clearing house transfers should be honored or dishonored consistent with the Cash Management Bridge Order and governing law, whether such checks, drafts, wires or automatic clearing house transfers are dated prior to, on or subsequent to the Petition Date, in each case until the Court considers the Cash Management Motion. Pursuant to the relief requested in the Cash Management Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

**B.      Industry Agreements Motion**

18.      On the Petition Date, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a), 362, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 for Interim Authorization to Honor and Satisfy Prepetition Obligations in the Debtors' Discretion Under Certain Industry Related Agreements and Schedule Final Hearing for the Relief Sought Herein* (the "Industry Agreements Motion"). As provided for in the proposed Bridge Order attached hereto as Exhibit C (the "Industry Agreements Bridge Order"), the Debtors request interim authority only to honor certain essential executory contracts set forth in the Industry Agreements Motion.

19.      The airline business is an interdependent industry based upon a network of agreements that govern virtually all aspects of air travel and airline operations. The Debtors need explicit authority to honor those contractual obligations set forth in the Industry Agreements Motion to ensure that customers making connecting flights with other airlines

receive their baggage and have their tickets honored by such other airlines.  Without the express authority to honor the contractual obligations described in the Industry Agreements Motion, contract counterparties may be hesitant to continue to honor the agreements that provide for coordination between airlines and airline services and allow for efficient service by the Debtors and their airline and industry partners.  The Debtors' proposed Industry Agreements Bridge Order merely authorizes the Debtors to honor their prepetition obligations with respect to the contracts set forth in the Industry Agreements Motion as necessary prior to the Court's consideration of the Industry Agreements Motion at the First Day Hearing.

## C.     Customer Programs Motion

20.     On the Petition Date, the Debtors filed the *Debtors' Motion for Authorization to (i) Honor Prepetition Obligations to Customers and Certain Other Business Entities and to Otherwise Continue Customer and Related Programs and Practices in the Ordinary Course of Business and (ii) Authorize Financial Institutions to Honor and Process Related Checks and Transfers* (the "Customer Programs Motion").  As provided for in the proposed Bridge Order attached hereto as Exhibit D (the "Customer Programs Bridge Order"), the Debtors request interim authority to (i) honor prepetition obligations to customers and to continue customer programs and practices in the ordinary course of business and to (ii) authorize financial institutions to honor and process related checks and transfers.

21.     Honoring prepetition obligations to customers and continuing customer programs and practices is essential to maintaining the Debtors' operations.  The mere perception that the Debtors would not honor such obligations may cause customers to no longer use the Debtors' services.  The interim relief requested is vital because if the Debtors cannot honor their prepetition customer obligations most importantly, honoring prepetition airline tickets, then Debtors would have to ground their fleet and shut down their operations.  The proposed

Customer Programs Bridge Order is limited in scope in that it only authorizes the Debtors to honor their customer programs and practices in the ordinary course of business until the Court considers the Customer Programs Motion at the First Day Hearing.

**D.  Fuel Motion**

22.  On the Petition Date, the Debtors filed the *Debtors' Motion Pursuant To Sections 105(A), 362, 363(B) And 553 of the Bankruptcy Code for Order (I) Authorizing Debtors to (A) Apply Prepetition Payments to Prepetition And Postpetition Obligations Under Fuel Supply Contracts, (B) Honor Other Fuel Supply, Storage Fuel Contracts, Into-Plane Service Contracts And Other Fuel Service Arrangements, (C) Continue To Participate in Fuel Consortia and (II) Authorizing Financial Institutions To Honor And Process Related Checks and Transfers* (the "Fuel Motion").  As provided for in the proposed Bridge Order attached hereto as Exhibit E (the "Fuel Bridge Order"), the Debtors request interim authority to pay any prepetition outstanding obligations and continue honoring, performing and exercising their rights and obligations (i) to their fuel suppliers (ii) to their pipeline and storage providers, (iii) under other fuel service arrangements, (iv) to fuel consortia and (v) to their into-plane service providers, and to authorize fuel suppliers and pipeline and fuel storage providers to whom payments were made prepetition (or that have issued or hold credits for the benefit of the Debtors) to apply such prepayments or credits to jet fuel and pipeline and storage facility usage occurring before or after the Petition Date.

23.  The Debtors also request that, to the extent required, the automatic stay under section 362 of the Bankruptcy Code be modified to allow for the payments received by their prepaid fuel suppliers or pipeline and storage providers, or credits existing before the Petition Date, to be applied to fuel pipeline and storage facility usage and into-plane services occurring pre-petition or postpetition, and that the Debtors' prepaid fuel suppliers, pipeline and

storage providers and into-plane service providers be permitted to exercise any such setoff rights pursuant to section 553 of the Bankruptcy Code as may be necessary to ensure the application of fuel or pipeline and storage prepayments or credits.

24.     A ready fuel supply for the Debtors' fleet of aircraft is critically important to their continued operations and successful reorganization.  It is fundamental to the Debtors' operations that they be able to continue performing under any of their fuel purchase, delivery, storage and other service arrangements that are customary in the airline industry.  Without the relief requested, the Debtors' fuel supply and distribution system could be disrupted, thereby stranding the Debtors' aircraft, passengers and employees.  The proposed Fuel Bridge Order authorizes the above described payments only until the Court's consideration of the Fuel Motion at the First Day Hearing.

**E.     Critical Vendors Motion**

25.     On the Petition Date, the Debtors filed the Debtors' Motion for Authorization (I) to Pay Prepetition Claims of Critical Vendors and Certain Administrative Claimholders and (II) to Authorize Financial Institutions to Honor and Process Related Checks and Transfers (the "Critical Vendors Motion").  As provided for in the proposed Bridge Order attached hereto as Exhibit F (the "Critical Vendors Bridge Order"), the Debtors request interim authority, in their sole discretion, (a) to pay all or a portion of the prepetition obligations of certain critical vendors who have obtained or may be able to assert statutory lien rights under applicable law (the "Lienor Critical Vendors"), to the extent such payment is necessary to satisfy such liens, and on the conditions described below; and (b) to pay all or a portion of the prepetition obligations of certain critical vendors who have neither obtained nor have the right to assert statutory liens under applicable law (the "Non-Lienor Critical Vendors" and, collectively with the Lienor Critical Vendors, the "Critical Vendors"), subject to a cap, and provided that

payment of such claims is conditioned upon the claimant's agreement to provide the Debtors with customary trade terms and execute the vendor agreement, to the extent the Debtors deem such conditions are necessary in their sole discretion. The Debtors' Critical Vendors are, among other things, sole source suppliers and suppliers so essential to the Debtors' business that the lack of each of their particular services, even for a short duration, may disrupt the Debtors' operations and consequently cause irreparable harm to their businesses, goodwill and market share.

26.     These Critical Vendors are absolutely necessary to avoid significant disruption to the Debtors' operations pending the First Day Hearing. Through this Motion for a Bridge Order, the Debtors only seek authority to pay up to $100,000 to Critical Vendors **that provide maintenance and ground handling services** pending an interim hearing on the Critical Vendors Motion. In comparison, the Bankruptcy Court for the Southern District of New York authorized $900,000 for Delta Airlines, Inc. on an interim basis for relief related to essential trade vendors. *See In re Delta Airlines, Inc., et al.*, Case No. 05-17923 (PCB) (Sept. 14, 2005) (Bridge Order Under 11 U.S.C. § 105(a) and 363(b) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors). The Bankruptcy Court for the Northern District of Illinois, Eastern Division authorized $850,000 for UAL, Inc. on an interim basis for relief related to essential trade vendors. *See In re UAL Corp. et. al.,* Case No. 02-48191 (SSM) (Dec. 9, 2002) (Bridge Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors). The Bankruptcy Court for the Eastern District of Virginia authorized $500,000 for U.S. Airways on an interim basis for similar relief. *See In re U.S. Airways Group, Inc., et al.*, Case No. 02-11672 (SSM) (Aug. 11, 2002) (Bridge Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors). The amount requested is *de minimis* in comparison to the Debtors' aggregate

prepetition trade claims and minor compared with the potential harm to the Debtors' estates that may be caused by the Critical Vendors refusal to provide the Debtors with essential goods or services. The proposed Critical Vendors Bridge Order is of limited scope because it only authorizes the Debtors to pay limited amounts to Critical Vendors that become due in the ordinary course of business before the Court considers the Critical Vendors Motion at the First Day Hearing.

### Conclusion

27.     Given the critical but limited scope and duration of the relief requested, the Debtors believe that entry of the Bridge Orders is both appropriate and necessary to minimize the risk of deterioration of the value of the Debtors' estates.

### Notice

28.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, and (v) the Securities and Exchange Commission.

29.     The relief sought herein has not been made to this or to any other court.

        WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:     January 5, 2010
           New York, New York            PACHULSKI STANG ZIEHL & JONES LLP


                                         */s/ Maria A. Bove*
                                         Richard M Pachulski (*pro hac vice* pending)
                                         Laura Davis Jones (*pro hac vice* pending)
                                         Debra I. Grassgreen (*pro hac vice* pending)
                                         Maria A. Bove
                                         John W. Lucas

                                         780 Third Avenue, 36th Floor
                                         New York, New York 10017
                                         Telephone:  (212) 561-7700
                                         Facsimile:  (212) 561-7777

                                         Proposed Attorneys for Debtors
                                         and Debtors in Possession

**Exhibit A**

**Declaration in Support of Motion**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

### DECLARATION IN SUPPORT OF EMERGENCY MOTION FOR ENTRY OF BRIDGE ORDERS GRANTING CERTAIN BRIDGE RELIEF PENDING "FIRST DAY HEARING"

Michael J. Lotz declares and says:

1.      I am the President and Chief Financial Officer of Mesa Air Group, Inc. ("Mesa"), which, along with certain of its subsidiaries, is a debtor and debtor in possession in the above captioned chapter 11 cases (collectively, the "Debtors"). This declaration is based on personal knowledge and information supplied by other individuals at the Debtors as well as third party advisors. I am competent to make this declaration in support of Emergency Motion for Entry of Bridge Orders Granting Certain Bridge Relief Pending First Day Hearing (the "Emergency Motion").

**A.      The Bankruptcy Filing**

2.      The Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby becoming debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Simultaneously with their petitions for relief, the Debtors filed numerous first day motions and applications (the "First Day Motions") requesting authority, among other things, to take certain actions and implement

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

certain procedures to ensure a smooth transition into chapter 11 and to enable the Debtors to reorganize with minimal disruption to their business and operations. The Debtors have requested that the Court consider the First Day Motions at a hearing scheduled at the Court's earliest convenience (the "First Day Hearing").

3.     There will, of necessity, be a gap between the time the Debtors' chapter 11 petitions are filed and the time that the Court considers and rules on the Debtors' First Day Motions.

**B.     Mesa and Its Operations**

4.     Mesa is a holding company that directly or indirectly owns each of the other Debtors. Mesa's principal subsidiaries operate as regional or independent air carriers providing scheduled passenger and airfreight services to approximately 128 cities in 39 states, the District of Columbia, Canada, and Mexico. These air carriers operate approximately 133 aircraft with approximately 800 daily system departures.

5.     Mesa, like other air carrier businesses, is faced with rising costs and intense competition. In addition, Mesa is subject to substantial and costly litigation that is inhibiting its ability to function efficiently. To address these issues efficiently and effectively, the Debtors have commenced these cases.

6.     Each day Mesa collects thousands of dollars in receipts, transfers thousands of gallons of aviation fuel into its aircraft and transacts business with numerous vendors and suppliers all over the United States and Mexico. Mesa's operations are literally active twenty-four hours a day, 365 days a year. Mesa never closes.

7.     The disruption caused by any interruption in Mesa's business operations would not only be felt by Mesa, but also by Mesa's passengers, the airports served by Mesa, other airlines that maintain code share and interline relationships with Mesa, other businesses

around the world that transact business with Mesa.  The future of Mesa is based on these operations continuing smoothly so that customers have confidence that Mesa will continue flying.

**C.     Cash Management Motion**

8.     A gap in the Debtors' ability to maintain their existing cash management system could cause serious, irreparable harm.

9.     The Debtors' business and financial affairs are exceedingly complex, requiring the collection, disbursement and movement of funds through numerous bank accounts.

10.     It is the Debtors' understanding that the guidelines established by the Office of the United States Trustee require chapter 11 debtors to, among other things: close all existing bank accounts and open new debtor in possession accounts; establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes); maintain a separate debtor in possession account for cash collateral; and obtain checks that bear the designation Debtor in Possession and reference the bankruptcy case number and the type of account.  Enforcement of these guidelines in the chapter 11 cases would severely disrupt the Debtors' current cash management system.

11.     Immediately upon a bankruptcy filing, the Debtors anticipate that several suppliers, including fuel suppliers, caterers and service personnel will demand payment in advance for future services.  If the Debtors have closed all of their bank accounts, the Debtors will not be prepared to pay any of these providers of goods and services.  Without these goods and services, the Debtors will not be able to operate their business.

12.     The proposed Bridge Order (the "Cash Management Bridge Order") authorizes the Debtors to continue their existing cash management system and related processes until the Court addresses the cash management motion that was filed contemporaneously

herewith.  If the Debtors are unable to continue their existing cash management system during the gap period prior to the First Day Hearing, the Debtors' operations could come to a standstill while the Debtors open new bank accounts, order new business forms, and perform other tasks required of them by the guidelines established by the Office of the United States Trustee.

**D.      Industry Agreements Motion**

13.     A gap in the Debtors' ability to honor certain essential executory contracts set forth in the *Debtors' Motion Pursuant to Sections 105(a), 362, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 for Interim Authorization to Honor and Satisfy Prepetition Obligations in the Debtors' Discretion Under Certain Industry Related Agreements and Schedule Final Hearing for the Relief Sought Herein* (the "Industry Agreements Motion") would cause serious, irreparable harm.

14.     The airline business is an interdependent industry based upon a network of agreements that govern virtually all aspects of air travel and airline operations.  The Debtors need explicit authority to honor those contractual obligations set forth in the Industry Agreements Motion to ensure that customers making connecting flights with other airlines receive their baggage and have their tickets honored by such other airlines.  If counterparties to the Industry Agreements described in the motion were to stop honoring their obligations, passengers would be stranded without a connecting flight.  Without the express authority to honor the contractual obligations described in the Industry Agreements Motion, contract counterparties may be hesitant to continue to honor the agreements that provide for coordination between airlines and airline services and allow for efficient service by the Debtors and the entire airline industry.

15.     The Debtors' proposed Bridge Order (the "<u>Industry Agreements Bridge Order</u>") merely authorizes the Debtors to honor their prepetition obligations with respect to the contracts set forth in the Industry Agreements Motion.

**E.      Customer Programs Motion**

16.     As discussed in the *Debtors' Motion for Authorization to (i) Honor Prepetition Obligations to Customers and Certain Other Business Entities and to Otherwise Continue Customer and Related Programs and Practices in the Ordinary Course of Business and (ii) Authorize Financial Institutions to Honor and Process Related Checks and Transfers* (the "<u>Customer Programs Motion</u>"), a gap in the Debtors' ability to honor prepetition obligations to customers and to continue customer programs in the ordinary course of business would cause serious, irreparable harm.

17.     Honoring prepetition obligations to customers and continuing customer programs and practices is essential to maintaining the Debtors' operations.  The mere perception that the Debtors would not honor such obligations may cause customers to no longer use the Debtors services. The interim relief requested in the Bridge Order (the "<u>Customer Programs Bridge Order</u>") is vital because if the Debtors cannot honor their prepetition customer obligations most importantly, honoring prepetition airline tickets as requested in the Customer Programs Motion, then the Debtors would have to ground their *go!* fleet and shut down their operations.

18.     The proposed Customer Programs Bridge Order is limited in scope in that it only authorizes the Debtors to honor their customer programs and practices in the ordinary course of business until the Court considers the Customer Programs Motion at the First Day Hearing.

**F.      Fuel Motion**

19.      A gap in the Debtors' ability to pay certain prepetition amounts in the ordinary course of business to fuel suppliers and pipeline and fuel storage providers or to allow those parties to apply prepayments or credits to jet fuel pipeline and storage facility usage occurring after the Petition Date would cause serious, irreparable harm.

20.      A ready fuel supply for the Debtors' fleet of aircraft is critically important to their continued operations and successful reorganization.  Given the essential nature of fuel to the Debtors' operations, the Debtors would simply shut down operations if they were unable to have their airplanes filled with fuel.  The Debtors request the relief described in the Fuel Motion to continue to receive thousands of gallons of fuel required to operate the Debtors' fleet during the gap period. It is fundamental to the Debtors' operations that they be able to continue performing under any of their fuel purchase, delivery, storage and other service arrangements that are customary in the airline industry.  Without the relief requested in the proposed Bridge Order (the "Fuel Bridge Order"), the Debtors' fuel supply and distribution system could be disrupted, thereby stranding the Debtors' aircraft, passengers and employees.

**G.      Critical Vendors Motion**

21.      A gap in the Debtors' ability to pay certain prepetition amounts to maintenance providers and ground handling providers vendors to maintain the Debtors' operations and prevent flight cancellations (the "Critical Vendors") would cause serious, irreparable harm.  The maintenance and ground handling supplies are sometimes needed on a moments' notice and are, among other things, sole source suppliers or suppliers who could not be replaced immediately so as to avoid flight cancellations.

22.      By definition, the creditors would be eligible to receive the amounts authorized under the Critical Vendors Motion. Moreover, during an emergency, when a quick

response is most important, the Debtors would be most likely to need to rely on a party with whom the Debtors do not have a contract.

23. The Debtors request interim authority to satisfy the prepetition claims of Critical Vendors that are absolutely necessary to avoid significant disruption to the Debtors' operations. The amount requested of $100,000 pending an interim hearing on the Critical Vendors Motion is *de minimis* in comparison to the Debtors' aggregate prepetition trade claims and minor compared with the potential harm to the Debtors' estates that may be caused by the Critical Vendors refusal to provide the Debtors with essential goods or services.

## Conclusion

24. Given the critical but limited scope and duration of the relief requested, entry of the Bridge Orders is both appropriate and necessary to prevent a deterioration of the value of the Debtors' estates.

25. I, the undersigned officer of Mesa Air Group, Inc., declare under penalty of perjury that the foregoing is true and correct.

Dated: January 5, 2010

Michael J. Lotz
President

**Exhibit B**

**Cash Management Bridge Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

### BRIDGE ORDER PURSUANT TO SECTIONS 105(A), 345(B), 363(C) AND 364(C) AND BANKRUPTCY RULES 6003 AND 6004 TO (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM AND (II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS

Upon the Emergency Motion of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession (collectively, the "Debtors"), seeking entry of a Bridge Order pursuant to sections 105(a), 363(c)(1) and 364(a) of title 11 of the Bankruptcy Code for authorization to (i) continue to use their existing cash management system and (ii) maintain existing bank accounts and business forms (the "Cash Management Motion"),[2] on an interim basis pending the Court's disposition of the Cash Management Motion after notice and hearing; and it appearing that the relief requested is essential to the continued operation of the Debtors' business and in the best interest of the Debtors' estates, creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this is a proper expedited hearing, and that therefore no notice need be given; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653)

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Cash Management Motion.

ORDERED that the Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to manage their cash pursuant to the global Cash Management System maintained by the Debtors before the commencement of these chapter 11 cases and described in the Cash Management Motion (the "Cash Management System"), to collect, concentrate, disburse and invest cash in accordance with that Cash Management System; and it is further

ORDERED that, pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain unsecured credit and incur unsecured debt in the ordinary course of business without any further notice or hearing; and it is further

ORDERED that, in accordance with their prepetition practices, the Debtors shall maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases; and it is further

ORDERED that the Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases; and it is further

ORDERED that the Banks are authorized to continue to treat, service, and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all post-petition checks, drafts, wires, or automatic clearing house transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be; and it is further

ORDERED that, notwithstanding anything to the contrary in any other order or other order of this Court, the Banks are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or automatic clearing house transfers should be honored or dishonored, consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires, or automatic clearing house transfers are dated prior to, on, or subsequent to the Petition Date; and it is further

ORDERED that the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, or (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; and it is further

ORDERED that, in accordance with current practice and the agreement governing the Bank Accounts, the Banks are authorized to charge back to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items; and it is further

ORDERED that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any automatic clearing house transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a midnight deadline or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition; and it is further

ORDERED that the Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead,

envelopes, promotional materials and other business forms (collectively, the "Business Forms"), substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(g), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Order is effective only from the date of entry through this Court's disposition of the Cash Management Motion after notice and hearing. The Court's ultimate disposition of the Cash Management Motion shall not impair any action taken pursuant to this Order.

Dated: _____, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Industry Agreements Bridge Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

### BRIDGE ORDER PURSUANT TO SECTIONS 105(A), 362, AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001, 6003, AND 6004 AUTHORIZING DEBTORS TO HONOR AND SATISFY PREPETITION OBLIGATIONS IN THE DEBTORS' DISCRETION UNDER CERTAIN INDUSTRY RELATED AGREEMENTS AND SCHEDULE FINAL HEARING FOR THE RELIEF SOUGHT HEREIN

Upon the Emergency Motion of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an Bridge Order pursuant to sections 105(a) and 365(a) of title 11 of the Bankruptcy Code, for (i) authorization to honor and satisfy prepetition obligations under certain industry related agreements (the "Industry Agreements Motion"),[2] on an interim basis pending the Court's disposition of the Industry Agreements Motion on its merits after notice and hearing; it appearing that the relief requested is essential to the continued operation of the Debtors' business and in the best interests of the Debtors' estates, creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and no previous application having been made; and it appearing that this is a proper emergency hearing, and that

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Industry Agreements Motion.

therefore no notice need be given; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Debtors are authorized to continue honoring, performing and exercising their respective rights and obligations (whether prepetition or postpetition) in the ordinary course of business to, and in accordance with, each of the agreements described in the Debtors' Industry Agreements Motion (the "Industry Agreements"); and it is further

ORDERED that in accordance with this Order and any other order of this Court, each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Industry Agreements Motion, is authorized and directed to honor checks presented for payment, and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in such accounts; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(g), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Order is effective only from the date of entry through this Court's disposition of the Industry Agreements Motion after notice and hearing. The Court's ultimate disposition of the Industry Agreements Motion shall not impair any action taken pursuant to this Order.


Dated: _____, 2010
      New York, New York

                    _____
                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

**Customer Programs Bridge Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ ( ) |
| Debtors.[1] | (Joint Administration Requested) |

**BRIDGE ORDER (I) AUTHORIZING DEBTORS
TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS
AND CERTAIN OTHER BUSINESS ENTITIES AND TO OTHERWISE CONTINUE
CUSTOMER AND RELATED PROGRAMS AND PRACTICES IN THE ORDINARY
COURSE OF BUSINESS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the Emergency Motion of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession (collectively, the "Debtors"), seeking entry of a Bridge Order granting the Debtors' motion for an Order (a) authorizing the Debtors to honor prepetition obligations to customers and certain other business entities and to otherwise continue customer and related programs and practices in the ordinary course of business and (b) authorizing financial institutions to honor and process related checks and transfers (the "Customer Programs Motion"),[2] on an interim basis pending the Court's disposition of the Customer Programs Motion after notice and hearing; and it appearing that the relief requested is essential to the continued operation of the Debtors business and in the best interest of the Debtors estates, creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 10, 1984

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Customer Programs Motion.

(Ward, Acting C.J.); and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District under 28 U.S.C. §§ 1408 and 1409; and that this is pursuant to a proper expedited hearing, and that therefore no notice need be given; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Debtors, in their business judgment, are authorized to (a) perform and honor their prepetition obligations related to the Customer Programs as they deem appropriate and (b) continue, renew, replace, implement new, and terminate, Customer Programs as appropriate and in the ordinary course of business, without further application to the Court, including making all payments, satisfying all obligations and permitting and effecting all setoffs in connection therewith, whether relating to the period prior or subsequent to the Petition Date; and it is further

ORDERED that all applicable banks and other institutions are authorized and directed, when requested by the Debtors and in the Debtors' sole discretion, to receive, process, honor and pay any and all checks and fund requests drawn on the Debtors' accounts related to the claims and obligations permitted to be paid by the Debtors pursuant to the foregoing provision, whether such checks and fund requests were presented prior to or after the Petition Date, provided that: (i) funds are available in the Debtors' accounts to cover the checks and fund transfers and (ii) the applicable banks and other institutions are authorized to rely on the Debtors' designation of any particular check or fund request as approved by this Order

ORDERED that nothing herein shall be construed to limit, or in any way affect, the Debtors ability to dispute any claim by any party with respect to any Customer Program; and it is further

ORDERED that nothing contained in this Order shall be deemed to constitute an assumption of any executory contract or to require the Debtors to make any of the payments authorized herein; and it is further

ORDERED that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Motion are authorized to receive, process, honor and pay all checks presented for payment, and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and are authorized to rely on the Debtors designation of any particular payment as approved by this Order; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(g), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Order is effective only from the date of entry until this Court's disposition of the Customer Programs Motion after notice and hearing. The Court's ultimate disposition of the Customer Programs Motion shall not impair any action taken pursuant to this Order.

Dated: _____, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit E**

**Fuel Bridge Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

**BRIDGE ORDER PURSUANT TO SECTIONS 105(a), 362,
363(a) AND 553 OF THE BANKRUPTCY CODE FOR ORDER
(I) AUTHORIZING DEBTORS TO (A) APPLY PREPETITION PAYMENTS
TO PREPETITION AND POSTPETITION OBLIGATIONS UNDER FUEL
SUPPLY CONTRACTS, (B) HONOR OTHER FUEL SUPPLY, STORAGE FUEL
CONTRACTS, INTO-PLANE SERVICE CONTRACTS AND OTHER FUEL
SERVICE ARRANGEMENTS, (C) CONTINUE TO PARTICIPATE IN FUEL
CONSORTIA AND (II) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the Emergency Motion of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession (collectively, the "Debtors"), seeking an order authorizing the Debtors to (i) apply prepetition payments to prepetition and postpetition obligations under fuel supply contracts, (ii) honor other fuel supply, pipeline and storage fuel contracts, into-plane service contracts and other fuel service arrangements, (iii) continue to participate in fuel consortia and (iv) authorize financial institutions to honor and process related checks and transfers (the "Fuel Motion")[2] on an interim basis pending the Court's disposition of the Fuel Motion on its merits after notice and hearing; and it appearing that the relief requested is essential to the continued operation of the Debtors' business and in the best interest of the Debtors' estates, creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and it appearing that this proceeding

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Fuel Motion.

is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that venue is

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this is a

proper emergency motion, and that therefore no notice need be given; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Prepaid Fuel Suppliers and the Pipeline and Storage

Providers are authorized, pursuant to sections 105(a), 362, 363(b) and 553 of the Bankruptcy

Code, to apply the Debtors' prepetition prepayments or credits held for the benefit of the Debtors

to jet fuel liftings and pipeline storage facility usage occurring before or after the Petition Date;

and it is further

ORDERED that the Debtors are authorized, but not directed, to pay any

prepetition outstanding obligations: (i) to the Prepaid Fuel Suppliers, (ii) to the Other Fuel

Suppliers, (iii) to the Pipeline and Storage Providers, (iv) under the Other Fuel Service

Arrangements, (v) to the Fuel Consortia and (vi) to the Into-Plane Service Providers; and it is

further

ORDERED that the Debtors are authorized, but not directed, to continue to honor,

perform and exercise their rights and obligations (whether prepetition or postpetition): (i) to the

Prepaid Fuel Suppliers, (ii) to the Other Fuel Suppliers, (iii) to the Pipeline and Storage

Providers, (iv) under the Other Fuel Service Arrangements, (v) to the Fuel Consortia and (vi)

under the Into-Plane Service Contracts, *provided*, *however*, that such honoring, performing, or

exercising of such rights and obligations shall not give rise to administrative claims solely as a

result of the entry of this Order or constitute the assumption of any contract, nor preclude the

Debtors from contesting or objecting to the claim of any party; and it is further

ORDERED that, to the extent required, the automatic stay extant under section 362 of the Bankruptcy Code is hereby modified to allow for the payments received by the Prepaid Fuel Suppliers or Pipeline and Storage Providers or credits existing before the Petition Date to be applied to fuel liftings and pipeline and storage facility usage occurring prepetition or postpetition, and that the Prepaid Fuel Suppliers and the Pipeline and Storage Providers are permitted to exercise any such set-off rights pursuant to section 553 of the Bankruptcy Code as may be necessary to ensure the application of fuel or pipeline and storage prepayments or credits; and it is further

ORDERED that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Fuel Motion are authorized to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and are authorized to rely on the Debtors' designation of any particular check as approved by this Order; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(g), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Order is effective only from the date of entry through this Court's disposition of the Fuel Motion after notice and hearing. The Court's ultimate disposition of the Fuel Motion shall not impair any action taken pursuant to this Order.


Dated: _____, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit F**

**Critical Vendors Bridge Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Joint Administration Requested) |

### BRIDGE ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND CERTAIN ADMINISTRATIVE CLAIMHOLDERS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the Emergency Motion of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession (collectively, the "Debtors"), seeking entry of a Bridge Order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, for authority to pay in the ordinary course of business prepetition claims of critical vendors (the "Critical Vendors"), and (ii) authorizing financial institutions to honor and process related checks and transfers (the "Critical Vendors Motion")[2] on an interim basis pending the Court's disposition of the Critical Vendors Motion after notice and hearing; and it appearing that the relief requested is essential to the continued operation of the Debtors' business and in the best interest of the Debtors' estates, creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District under 28 U.S.C. §§ 1408 and 1409; and that this is pursuant to a proper expedited hearing, and that

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Critical Vendors Motion.

therefore no notice need be given; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, on an interim basis and until an interim hearing on the Critical Vendor Motion, to pay the prepetition vendor claims solely of Critical Vendors who provide maintenance and ground handling services in the ordinary course of business in amounts not to exceed $100,000 upon such terms and in the manner provided in the Critical Vendors Motion and this Order; and it is further

ORDERED that the Debtors shall determine in the ordinary course of business, who is a Critical Vendor by considering, among other things, (a) whether the goods or services the creditor provides can be replaced without interruption to the Debtors' operations; (b) whether failure to pay the creditor's claim will result in the Debtors paying substantially more for the same goods or services during the restructuring; (c) whether failure to pay the creditor's claim will interrupt the Debtors' operations, cause a loss of sales, market share, or future revenue; and (d) the extent to which suppliers have or could assert trade liens on equipment, supplies or goods of the Debtors; and it is further

ORDERED that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Motion are authorized to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and are authorized to rely on the Debtors' designation of any particular check as approved by this Order; and it is further

ORDERED that nothing contained in this Order shall be deemed to constitute an assumption of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(g), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Order is effective only from the date of entry through this Court's disposition of the Critical Vendors Motion after notice and hearing. The Court's ultimate disposition of the Critical Vendors Motion shall not impair any action taken pursuant to this Order.

Dated: _____, 2010
      New York, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE