PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION,**
**PURSUANT TO BANKRUPTCY RULE 2002, 28 U.S.C. § 156(c)**
**AND LOCAL BANKRUPTCY RULE 5075-1, FOR AN ORDER**
**APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC**
**AS CLAIMS AND NOTICING AGENT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.     On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     The Debtors have requested authorization to consolidate their chapter 11 cases for procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Mesa's Business

3.     Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

4.     Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in businesses, that

facilitate or enhance the Debtors' regional or independent air carrier services.  Nilchi, Inc. and Patar, Inc. hold investments.

5.      As of September 30, 2009, the Debtors had consolidated assets  of approximately $975 million, and consolidated liabilities of approximately $869 million.  The Debtors' consolidated 2009 revenues were approximately $968 million.  Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements.  The Debtors' remaining passenger revenues are generated from their independent go! operations in Hawaii.

6.      A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2 (the "Lotz Declaration"), filed contemporaneously herewith.

## Jurisdiction

7.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      Pursuant to Bankruptcy Rule 2002, 28 U.S.C. § 156(c) and Local Bankruptcy Rule 5075-1, the Debtors hereby seek the entry of an order (the "Order") annexed hereto as Exhibit A (a) appointing Epiq Bankruptcy Solutions, LLC ("Epiq") to perform certain claims and noticing functions in this chapter 11 cases (in such role, the "Claims Agent"); and (b) authorizing the Debtors to compensate Epiq for its services and reimburse Epiq for any related expenses in accordance with applicable provisions of the Agreement for Services between Epiq and the

Debtors dated as of December 10, 2009, a copy of which is attached hereto as <u>Exhibit B</u> (the "<u>Services Agreement</u>").

**A. The Need for a Claims Agent**

9. The thousands of creditors and other parties in interest involved in the Debtors' chapter 11 cases may impose heavy administrative and other burdens upon the Court and the Office of the Clerk of this Court (the "<u>Clerk's Office</u>"). To relieve the Court and the Clerk's Office of these burdens, the Debtors propose to appoint Epiq as a claims and noticing agent in these chapter 11 cases.

**B. Qualifications of Epiq as Claims Agent**

10. Epiq is a consulting and data processing firm that specializes in, among other things, chapter 11 administration, including noticing, claims processing, and other administrative tasks in chapter 11 cases. The Debtors believe that Epiq's assistance will expedite service of notices, streamline the claims administration process and permit the Debtors to focus efficiently on their reorganization efforts. The Debtors believe that Epiq is well qualified to provide its services. Epiq has provided identical or substantially similar services in other chapter 11 cases in this and a variety of other jurisdictions, including among others: *Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *Stone Barn Manhattan LLC, f/k/a Steve & Barry's Manhattan LLC, et al.*, Case No. 08-12579 (Bankr. S.D.N.Y. July 9, 2008); *In re Frontier Airlines Holdings, Inc., et al.*, Case No. 08-11298 (Bankr. S.D.N.Y. April 10, 2008); *In re Delta Air Lines, Inc., et al.*, Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Northwest Airlines Corporation, Inc., et al.*, Case No. 05- 17930 (Bankr. S.D.N.Y. Sept. 5, 2005); *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002); *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002); and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002), among others.

**C.     The Debtors' Agreement with Epiq**

11.     At the request of the Debtors or the Clerk's Office, Epiq will provide, among

other things, the following administrative services to the Debtors:

   a.     prepare and serve required notices in these chapter 11 cases, including:

         (i)     a notice of the commencement of these chapter 11 cases
                 and the initial meeting of creditors under section 341(a) of
                 the Bankruptcy Code;

         (ii)    a notice of the claims bar date;

         (iii)   notices of objections to claims;

         (iv)    notices of hearings on a disclosure statement and
                 confirmation of a plan of reorganization; and

         (v)     such other miscellaneous notices as the Debtors or the
                 Court may deem necessary or appropriate for an orderly
                 administration of these chapter 11 cases;

   b.     assist with the publication of required notices, as necessary;

   c.     maintain copies of all proofs of claim and proofs of interest filed in these
          cases;

   d.     maintain official claims registers in these cases by docketing all proofs of
          claim and proofs of interest in a claims database that includes the
          following information for each claim or interest asserted:

         (i)     the name and address of the claimant or interest holder and
                 any agent thereof, if the proof of claim or proof of interest
                 was filed by an agent;

         (ii)    the date the proof of claim or proof of interest was received
                 by Epiq and/or the Court;

         (iii)   the claim number assigned to the proof of claim or proof of
                 interest; and

         (iv)    the asserted amount and classification of the claim;

   e.     implement necessary security measures to ensure the completeness and
          integrity of the claims registers;

f.     transmit to the Clerk's Office a copy of the claims registers on a weekly basis, unless requested by the Clerk's Office on a more or less frequent basis;

g.     maintain an up-to-date mailing list for all entities that have filed proofs of claim or proofs of interest and make such list available to the Clerk's Office or any party in interest upon request;

h.     provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in these cases without charge during regular business hours;

i.     create and maintain a public access website setting forth pertinent case information and allowing access to certain documents filed in the Debtors' chapter 11 cases;

j.     record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers to the extent required by Bankruptcy Rule 3001(e);

k.     comply with applicable federal, state, municipal and local statutes, ordinances, rules, regulations, orders and other requirements;

l.     provide temporary employees, who are not past or present employees of the Debtors, to process claims, as necessary;

m.     promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe;

n.     provide balloting and solicitation services, including producing personalized ballots but excluding the tabulation of creditor ballots. Tabulation of creditor ballots will be handled solely by the Debtors;

o.     provide such other claims processing, noticing, balloting (with the exception of tabulation of ballots) and related administrative services as may be requested from time to time by the Debtors;

p.     file with the Court the final version of the claims register immediately before the close of the chapter 11 cases;

q.     at the close of these chapter 11 cases, box and transport all original documents in proper format, as provided by the Clerk's Office, to the Federal Archives; and

r.     perform such other services as are requested by the Debtors to the extent covered by the Services Agreement.

12.     The amounts paid to Epiq in connection with this appointment will not exceed the amounts set forth in the Services Agreement, except to the extent such amounts are subject to ordinary increase in accordance with Epiq's established billing practices and procedures.  After reviewing proposals of three comparable notice and claims agents in accordance with the Protocol for Employment of Claims Agents dated May 8, 2006, the Debtors believe that the compensation to be paid to Epiq pursuant to the Services Agreement is fair and reasonable and is competitive and comparable to or below the rates charged by its competitors for similar services. The Debtors have provided Epiq with a $50,000 retainer.

13.     The Debtors request that the fees and expenses Epiq incurs in the performance of the above services be treated as an administrative expense of the Debtors' chapter 11 estates and be paid in the ordinary course of business without further application to the Court.

14.     The Services Agreement is terminable by the Debtors on one (1) month's prior written notice received by Epiq and entry of an order of the Court discharging Epiq as Claims Agent or by Epiq upon three (3) month's prior written notice received by the Debtors and entry of an order of the Court discharging Epiq as Claims Agent.

15.     Epiq understands that the indemnification provisions of paragraph 7.4 of the Services Agreement is qualified as follows, as provided in the Order on this Application:

a.      Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services other than those described in the Services Agreement, unless such services and indemnification therefor are approved by the Court;

b.      The Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible; or (iii) settled prior

to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution or reimbursement under the terms of the Services Agreement as modified by the Order; and

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Services Agreement (as modified by the Order), including without limitation the advancement of defense costs, Epiq must file an application therefore in this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution or reimbursement.

16.    Upon the completion of Epiq's duties and responsibilities at the closing of these cases, Epiq shall take the appropriate action to obtain an order from this Court terminating its duties and responsibilities in these cases, in accordance with the Services Agreement and the order of the Court approving Epiq's retention.

## **Argument**

17.    Bankruptcy Rule 2002 describes certain notices that must be provided to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rules 2002(a) and 2002(f), the Court may direct that some person other than the Clerk's Office provide notice of the various matters described therein.[2] In addition, 28 U.S.C. § 156(c) expressly authorizes the use of non-court services for noticing:

---

[2] Bankruptcy Rule 2002(a) provides that "the clerk, or some other person as the court may direct, shall give ... at least 21 days' notice by mail of: (1) the meeting of creditors under § 341 or § 1104(b) of the Code. ..." Bankruptcy Rule 2002(f) provides that "the clerk, or some other person as the court may direct, shall give ... notice by mail of: (1) the order for relief . . . ."

> Any court may utilize . . . services, either on or off the court's premises, which pertain to the provision of notices . . . to parties in cases filed under the provisions of title 11 . . . . The utilization of such . . . services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

18.     According to the Official Comment thereto, Local Bankruptcy Rule 5075-1(a) expressly complements 28 U.S.C. § 156(c), providing that "[t]he Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises . . . to issue notices . . . and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate."

19.     Because of the size of the Debtors' chapter 11 cases, the number of creditors and parties in interest and Epiq's experience, the Debtors believe that the appointment of Epiq as the Claims Agent is appropriate and in the best interests of the Debtors' estates.

**D.     Epiq is a "Disinterested Person"**

20.     As set forth in the Declaration of Daniel C. McElhinney (the "McElhinney Declaration") attached hereto as Exhibit C, to the best of the Debtors' knowledge and as disclosed in the McElhinney Declaration:

    a.    Epiq is not a creditor of the Debtors;

    b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

    c.    By accepting employment is these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government;

    d.    In its capacity as the notice agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.  Epiq will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases;

f.  In its capacity as notice and claims agent in these chapter 11 cases, Epiq will not misrepresent any fact to any person; and

g.  None of the services provided by Epiq as notice and claims agent shall be at the expense of the Clerk's Office.

21.  Neither Epiq nor any of its employees has any connections with the Debtors, their creditors, the Office of the United States Trustee for the Southern District of New York or any employees thereof or any party in interest.  Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates.  The Debtors do not owe Epiq any amount for services performed or expenses incurred prior to the Petition Date.

22.  Epiq will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or relationships are discovered, Epiq will supplement its disclosure to the Court.

## Notice

23.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), and (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates.

24.  No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of the attached order granting the relief requested herein and such other and further relief as is just.

Dated:   January 5, 2010
         New York, New York              PACHULSKI STANG ZIEHL & JONES LLP

                                         /s/ Maria A. Bove
                                         Richard M Pachulski (*pro hac vice* pending)
                                         Laura Davis Jones (*pro hac vice* pending)
                                         Debra I. Grassgreen (*pro hac vice* pending)
                                         Maria A. Bove
                                         John W. Lucas

                                         780 Third Avenue, 36th Floor
                                         New York, New York 10017
                                         Telephone:  (212) 561-7700
                                         Facsimile:  (212) 561-7777

                                         Proposed Attorneys for Debtors
                                         and Debtors in Possession

**EXHIBIT A**
**(Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[3] | (Jointly Administered) |

**ORDER, PURSUANT TO BANKRUPTCY RULE 2002,**
**28 U.S.C. § 156(c) AND LOCAL BANKRUPTCY RULE 5075-1,**
**APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC**
**AS CLAIMS AND NOTICING AGENT**

This matter coming before the Court on the Application of Debtors and Debtors in

Possession, Pursuant to Bankruptcy Rule 2002, 28 U.S.C. § 156(c) and Local Bankruptcy Rule

5075-1, for an Order Appointing Epiq Bankruptcy Solutions, LLC ("Epiq") as Claims and

Noticing Agent (the "Application"),[4] filed by the debtors and debtors in possession in the above-

captioned cases (the "Debtors"); the Court having reviewed the Application and the Affidavit of

Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2 (the

"Affidavit") and having considered the statements of counsel and evidence adduced with respect

to the Application at a hearing before the Court (the "Hearing"); the Court finding that (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) notice of the Motion and the Hearing was

sufficient under the circumstances; and the Court having determined that the legal and factual

bases set forth in the Application and the Affidavit and at the Hearing establish just cause for the

relief granted herein;

---

[3] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[4] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.

2.     Epiq is hereby appointed as the Claims Agent in these chapter 11 cases, pursuant to Bankruptcy Rule 2002(a), 28 U.S.C. § 156(c) and Local Bankruptcy Rule 5075-1(a), on the terms and conditions set forth in the Application and the Services Agreement.

3.     The terms of the Services Agreement are hereby approved except insofar as paragraph 7.4 of the Services Agreement is qualified as follows:

   a.     Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services other than those described in the Services Agreement, unless such services and indemnification therefore are approved by the Court;

   b.     The Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which Epiq should not receive indemnity, contribution or reimbursement under the terms of the Services Agreement as modified by this Order; and

   c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefore in this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq.  All parties in interest shall

retain the right to object to any demand by Epiq for indemnification, contribution or reimbursement.

4        The Debtors are hereby authorized to compensate Epiq for its services and reimburse Epiq for any related expenses in accordance with applicable provisions of the Services Agreement.  The fees and expenses Epiq incurs will be treated as an administrative expense of the Debtors' chapter 11 estates and be paid in the ordinary course of business without further application to the Court.

5.       Upon the completion of Epiq's duties and responsibilities at the closing of these cases, Epiq shall take the appropriate action to obtain an order from this Court terminating its duties and responsibilities in these cases, in accordance with the Services Agreement and this Order.

Dated: _____
        New York, New York


        _____
        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**(Services Agreement)**

## EPIQ BANKRUPTCY SOLUTIONS, LLC

### STANDARD BANKRUPTCY SERVICES AGREEMENT

Between Epiq Bankruptcy Solutions, LLC (formerly known as Bankruptcy Services LLC), a New York limited liability company ("Epiq") and Mesa Air Group Inc. and related debtors (the "Customer" or "Debtor"), dated as of December 10, 2009.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

1. <u>Services.</u>

In accordance with the charges, terms and conditions contained in this Agreement and in the schedule attached hereto (the "Agreement"), Epiq agrees to furnish Customer with computerized bankruptcy support services and bankruptcy administrative services according to the pricing schedule annexed hereto (the "Schedule"). This Schedule sets forth individual unit pricing for services provided by Epiq. The price listed for each service represents a bona fide proposal for that service and the Customer may accept separate Service components or may accept the Services listed in their entirety. Services will be provided when requested by the Customer. Services are mutually exclusive and are deemed delivered and accepted when provided by Epiq.

2. <u>Term.</u>

This Agreement shall become effective on the later of (i) the date of its acceptance by Epiq and (ii) the date of entry of an order by the Bankruptcy Court approving this Agreement (or such earlier date set by the Bankruptcy Court). **The Agreement shall remain in effect until terminated by the Customer on one (1) month's prior written notice received by Epiq and entry of an order of the Court discharging Epiq as claims agent or by Epiq upon three (3) month's prior written notice received by the Customer and entry of an order of the Court discharging Epiq as claims agent.**

3. <u>Charges.</u>

3.1  For services and materials furnished by Epiq under this Agreement, Customer shall pay the charges set forth in the schedule annexed hereto attached hereto and made a part of this Agreement. Epiq will bill Customer monthly. All invoices shall be due and payable upon receipt.

3.2  Epiq reserves the right to reasonably increase its prices, charges and rates annually on January 2nd of each year. However, if such increases exceed 10%, Epiq will be required to give sixty (60) days prior written notice to Customer.

3.3  Customer agrees to pay Epiq for all materials necessary for Epiq's performance under this Agreement, other than computer hardware and software, and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, postage and related items.

kwiktag®   011 108 594



3.4  In addition to all charges for services and materials hereunder, Customer shall pay to Epiq all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by Epiq or paid by Epiq to taxing authorities.  This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

3.5  In addition to all other charges for services and materials hereunder, Customer shall pay to Epiq any actual charges related to, arising out of or as a result of any Customer error or omission, as mutually agreed by Epiq and Customer.  Such charges shall include but not be limited to re-runs and any additional clerical work billed at the Epiq then prevailing standard rates, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the schedule annexed hereto.

3.6  Where the Customer requires measures that are unusual and beyond normal business practice of Epiq such as but not limited to CPA audit, errors and omissions insurance, or off premises storage of data, the cost of such measures, if provided by Epiq, shall be charged to the Customer at a competitive rate.

3.7  In the event of termination due to Customer's default, Customer shall be liable for all amounts then owing.

3.8  Customer shall pay Epiq a retainer in the amount of $50,000 to be applied immediately in satisfaction of any pre-petition obligations incurred pursuant to this agreement.  Any amounts not applied pre-petition will be applied against in satisfaction of Epiq's final invoice for the services provided herein.

4. Confidentiality.

All of Customer's data given to Epiq will be safeguarded by Epiq to the same extent that Epiq safeguards data relating to its own business; provided, however, that if data is publicly available, was already in Epiq's possession or known to it, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for disclosure.  Customer agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by Customer to Epiq in the performance of this Agreement.

5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Customer ("Property").  Charges paid by Customer do not vest in Customer any rights to the Property, it being expressly understood that the Property is made available to Customer under this Agreement solely for Customer's use during and in connection with each use of the Epiq equipment and services.  Customer agrees not to copy or permit others to copy any of the Property.

6. Disposition of Data.

Any data, programs, storage media or other materials furnished by the Customer to Epiq in connection with this Agreement may be retained by Epiq until the services provided herein are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full.  Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by Epiq.  Epiq shall dispose of the data and media in the manner requested by Customer.  Customer agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the data or media.  After giving Customer thirty (30) days advance notice, Epiq reserves the right to dispose of data or media maintained by Epiq for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to Epiq.



7. <u>Limitation of Liability, Warranty and Indemnity.</u>

7.1  Except as provided herein, Epiq's liability to Customer or any person claiming through or under Customer for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if Epiq has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of Epiq shall be limited to the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage.  In no event shall Epiq be liable to Customer for any special or consequential damages (including loss of anticipated profits) incurred by Customer in connection with or arising out of the services provided for in this Agreement.

7.2  Customer is responsible for the accuracy of the programs and data it submits for processing to Epiq and for the output.  Customer agrees to initiate and maintain backup files that would allow Customer to regenerate or duplicate all programs and data submitted by Customer to Epiq.

**7.3  Customer agrees that except as set forth in the paragraph 7.1 above, Epiq makes no representations or warranties, express or implied, including but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.**

7.4  The Customer shall indemnify and hold Epiq, its affiliates and each of their respective officers, members, directors, agents, consultants and employees (each an "Indemnified Person") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  The Customer shall notify Epiq in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Customer is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Customer and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

8. <u>Bank Accounts</u>

At the Customer's request, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Customer.  To the extent certain financial products are provided to the Customer pursuant to Epiq's agreement with certain financial institutions, Epiq may receive compensation from such financial institutions for the services Epiq provides pursuant to such agreement.

9. <u>Confidential On-Line Workspace</u>

Upon request of the Customer, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Customer pursuant to this Agreement; and (b) with the consent of the Customer and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

10. <u>General</u>

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.



10.2  This Agreement may not be assigned by Customer without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Customer, and shall not be made available to any other persons.

10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

10.4  The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail, postage prepaid, and addressed as follows:

        If to Epiq:

                Epiq Bankruptcy Solutions, LLC
                757 Third Avenue, Third Floor
                New York, New York 10017
                Attn:  Ron Jacobs

        If to Customer:

                Brian S. Gillman
                EVP & General Counsel
                Mesa Air Group, Inc.
                o:  602.685.4051
                f:  602.685.4352
                e:  brian.gillman@mesa-air.com

        With a copy to:

                Laura Davis Jones, Esq.
                Pachulski Stang Ziehl & Jones LLP
                919 North Market Street, 17th Floor
                Wilmington, DE 19899-8705



10.6 This Agreement shall be subject to approval of the United States Bankruptcy Court for the Southern District of New York.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

EPIQ BANKRUPTCY SOLUTIONS, LLC

Name:    Daniel C. McElhinney
Title:     Executive Director

**MESA AIR GROUP INC. AND RELATED DEBTORS**

By:_____

Name:_____
         Michael Lotz
Title:_____
         President



# Pricing

Case Management Services:

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $36 - $54 per hour | $ 45.00 |
| Case Manager (Level 1) | $112 - $157 per hour | $128.25 |
| IT Programming Consultant | $126 - $171 per hour | $148.50 |
| Case Manager (Level 2) | $166 - $198 per hour | $182.25 |
| Senior Case Manager | $202 - $247 per hour | $222.75 |
| Senior Consultant | TBD | TBD* |

The level of Senior Consultant activity will vary by engagement. If such services are required, the usual average rate is $265 per hour. Please note that any additional professional services not specifically covered by this proposal will be charged at hourly rates, including any outsourced data input services performed under our supervision and control. Outside vendors may charge a premium for weekend and overtime work.

Claims Management Services:

| | |
|---|---|
| Database and System Access (No restriction on number of users) | $ .10 per record per month |
| Data Transfer | $ .10 per creditor |
| Manual Claims Input | $ .35 per claim plus hourly rates |
| Document Storage | Waived |



SYSTEMS

# Pricing

Printing, Mailing and Noticing:

| | |
|---|---|
| Set up | Waived |
| Printing | $ .10 per image (plus page including envelope face) |
| Collate, fold and/or insert | $ .10 each piece |
| Postage and overnight delivery | At cost |
| Electronic noticing | $ .02 per page |
| Legal notice publishing | Quote prior to publishing |
| Claim acknowledgement card | $ .25 per notice |
| Fax | $ .20 per page |

Document Management/Imaging:

| | |
|---|---|
| Electronic imaging (scanning/bar coding) | $ .30 per image |
| Additional OCR capture | $ .10 per image |
| CD burning (mass document storage) | Varies upon requirements |
| Stand Alone Case Website Construction | $150.00 per hour |
| Hosting Case Specific Site | $200.00 per month |
| Case Data Web Traffic | Waived |

Confidential Document Management:

| | |
|---|---|
| Standard Confidential on-line workspace | $1.30 per page per 9 months |

Call Center Services:

| | |
|---|---|
| Standard Call Center Setup | $2,500 |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $.19 per minute |
| Standard Call Center Support/Maintenance | $200 per month |

Additional call center services not specifically covered by this proposal will be charged at hourly rates or at a unit price to be determined. Specifically, such tasks as reviewing and managing traffic reports, assigning and supervising staff, call auditing, quality control testing, training and the like will be billed at the applicable hourly rate.



# Pricing

Voting Tabulation and Reports:

| | |
|---|---|
| Set-up, tabulation and vote verification | Applicable consulting fees only |
| Printing and mailing of ballots | Subject to unit pricing for mailing and noticing above |
| Solicitation and Notification of Public Securities Holders | Varies upon requirements |

Please note that Epiq will coordinate outside services for notice publication, printing and scanning upon request. Reimbursable expenses including travel, envelopes and courier services are billed at cost. Postage is payable in advance of any mailings.

Disbursements:

Transaction fees:

| | |
|---|---|
| Per check or Form 1099 | $1.50 each |
| Per record to transfer agent | $ .25 each |

# Contract Checklist

Attached is a proposed new or amended contract, which may legally bind *Mesa Air Group, Inc., its officers, directors, employees, agents, successors, subsidiaries or affiliates* to the terms contained within. Please review the attached contract and comment on any and all concerns related to each of your respective area(s) of expertise. As this is merely a copy of the original contract, feel free to mark it up as much as you like. However, in the event the attached contract is deemed acceptable, please sign on your respective line below and return to Brian Gillman.

> **\*NOTE:** If the box above your name is checked, your signature is required. By signing on your respective line, you are acknowledging that you have had the opportunity to read and comment on the attached contract and/or agree to execute the contract in its attached form.

**CONTRACT ATTACHED: Epiq Services Agreement**

| | |
|---|---|
| ☐ _____<br>Jonathan Ornstein, CEO & Chairman | ☐ Approved   ☐ See Attached |
| ☑ _____<br>Michael Lotz, President | ☑ Approved   ☐ See Attached |
| ☐ _____<br>Brian Gillman, Exec. Sr. VP & General Counsel | ☑ Approved   ☐ See Attached |
| ☐ _____<br>Paul Foley, EVP & COO | ☐ Approved   ☐ See Attached |
| ☐ _____<br>Keith Kranzow, VP of Finance | ☐ Approved   ☐ See Attached |
| ☐ _____ | ☐ Approved   ☐ See Attached |
| ☐ _____ | ☐ Approved   ☐ See Attached |

Economic Impact:                           ☐ See Attached

**EXHIBIT C**

**(McElhinney Declaration)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF DANIEL C. McELHINNEY IN SUPPORT OF APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO BANKRUPTCY RULE 2002, 28 U.S.C. § 156(c) AND LOCAL BANKRUPTCY RULE 5075-1, FOR AN ORDER APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC AS CLAIMS AND NOTICING AGENT**

I, Daniel C. McElhinney, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am the Executive Director of Epiq Bankruptcy Solutions, LLC ("Epiq") and I am authorized to make and submit this declaration on behalf of Epiq.  This declaration is submitted in support of the application of the above-captioned debtors and debtors in possession (the "Debtors") to employ and retain Epiq as notice and claims agent to the Debtors ("Claims Agent"), pursuant to 28 U.S.C. § 156(c) (the "Application").  The statements contained herein are based upon personal knowledge.

2.      Epiq is one of the country's leading chapter 11 administrators with expertise in noticing, claims processing, balloting and distribution and is well-qualified to provide such services in connection with these cases.  Among the large chapter 11 cases in which Epiq is or was retained, as noticing, claims and/or balloting agent to debtors include:

*Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008);

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

*Stone Barn Manhattan LLC, f/k/a Steve & Barry's Manhattan LLC, et al.*, Case No. 08-12579 (Bankr. S.D.N.Y. July 9, 2008); *In re Frontier Airlines Holdings, Inc., et al.*, Case No. 08-11298 (Bankr. S.D.N.Y. April 10, 2008); *In re Delta Air Lines, Inc., et al.*, Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Northwest Airlines Corporation, Inc., et al.*, Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 5, 2005); *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002); *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002); and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002), among others.

3.     Subject to the Court's approval, the Debtors have agreed to compensate Epiq for professional services rendered in connection with these chapter 11 cases pursuant to the Agreement for Services (the "Services Agreement") entered into by and between the Debtors and Epiq, a form of which is attached as Exhibit A to the Application. Payments are to be based upon the submission to the Debtors by Epiq of a billing statement, which includes a detailed listing of services, expenses and supplies, at the end of each calendar month.

4.     In the 90 days prior to the Petition Date, Epiq was paid a retainer (the "Retainer") in the amount of $50,000.00. There are no amounts owed to Epiq as of the Petition Date. Epiq is currently holding the balance of the Retainer, which will be applied immediately in satisfaction of obligations incurred in connection with postpetition services rendered by Epiq pursuant to the Services Agreement. The Debtors' funds were the source of the Retainer.

5.     The Debtors' reasons for selecting Epiq to serve as the Claims Agent for the Debtors' estates, as set forth in more detail in the Application filed contemporaneously herewith, and the services Epiq proposes to render as Claims Agent are described in the Application and set forth in the Services Agreement.

6.     To the best of my knowledge, neither Epiq nor any of its personnel have any relationship with the Debtors that would impair Epiq's ability to serve as Claims Agent. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which it serves or has served in a neutral capacity as a Claims Agent for another chapter 11 debtor. To the best of my knowledge, such relationships are completely unrelated to these chapter 11 cases. In addition, Epiq personnel may have relationships with some of the Debtors' creditors or other parties in interest. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to these chapter 11 cases.

7.     That notwithstanding, Epiq has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases.

8.     Epiq is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that Epiq and its personnel:

a.     are not creditors, equity security holders or insiders of the Debtors;

b.     are not and were not, within two years before the date of the filing of the Debtors' chapter 11 petitions, directors, officers or employees of the Debtors; and

c.     do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or any investment banker for an outstanding security of the Debtors.

9.     Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases. If Epiq's proposed

retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtors and the official committee of unsecured creditors in these chapter 11 cases. Epiq may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

10. Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

11. Epiq represents, among other things, that: i) it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent; ii) by accepting employment in these bankruptcy cases, Epiq waives any right to receive compensation from the United States government; iii) in its capacity as Claims Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and iv) Epiq will not employ any past or present employees of the Debtors in connection with its work as Claims Agent.

12. Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c). In addition, Epiq will comply with all of its obligations and responsibilities under the

Protocol for the Employment of Claims Agents, dated May 8, 2006, as may be amended, issued by the Clerk's Office.

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this declaration, the foregoing is true and correct. To the extent that any information disclosed herein requires amendment or modification upon Epiq's completion of further analysis or as additional party in interest information becomes available to me, I will submit supplemental declarations to the Court.

**Signature on the Following Page**

Dated:  January 4, 2010

Daniel C. McElhinney
Executive Director
Epiq Bankruptcy Solutions, LLC