PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS FOR
AUTHORIZATION TO (I) PAY PREPETITION SALES AND USE TAXES,
TRANSPORTATION TAXES, AIRPORT FEES, PASSENGER FACILITY
CHARGES, FUEL TAXES, AND OTHER SIMILAR TAXES AND FEES AND
(II) DIRECT FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
RELATED CHECKS AND TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1. On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors have requested authorization to consolidate their chapter 11 cases for procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Mesa's Business

3. Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

4. Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("go!"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in

businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

5.      As of September 30, 2009, the Debtors had consolidated assets  of approximately $975 million, and consolidated liabilities of approximately $869 million.  The Debtors' consolidated 2009 revenues were approximately $968 million.  Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements.  The Debtors' remaining passenger revenues are generated from their independent go! operations in Hawaii.

6.      A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2 (the "Lotz Declaration"), filed contemporaneously herewith.

**Jurisdiction**

7.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

8.      By this Motion, the Debtors seek the entry of interim and final orders, in substantially the form submitted herewith, for authority, pursuant to sections 105(a), 363(b) and 507(a) of the Bankruptcy Code, in their sole discretion, to (i) pay any Taxes and Fees (as defined below) that arose prior to the Petition Date, including all Taxes and Fees subsequently determined upon audit, or otherwise, to be owed for periods before the Petition Date and (ii) direct the Banks (as defined below) to receive, process, honor and pay checks or electronic transfers used by the Debtors to pay Taxes and Fees.

9. In connection with the normal operation of their businesses, the Debtors collect, withhold and incur sales, use, transportation, excise, immigration, fuel and employment taxes, as well as other fees and charges described in this Motion (collectively, the "Taxes and Fees"). The Debtors remit Taxes and Fees to various federal, foreign, state and local government, and taxing, licensing and airport authorities (collectively, the "Governmental Authorities"). Taxes and Fees are remitted by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions (the "Banks").

10. Most of the Taxes and Fees collected prepetition are not property of the Debtors' estates, and must for that reason be turned over to the Governmental Authorities. To the extent that they are not actually the property of the Governmental Authorities, they may well give rise to priority claims. Moreover, the Debtors also seek to pay prepetition Taxes and Fees in order to forestall Governmental Authorities from taking actions that might interfere with the Debtors' successful reorganization, including possibly bringing personal liability actions against directors, officers and other employees in connection with non-payment of Taxes and Fees. Actions against the Debtors' directors, officers and other employees would likely distract key personnel, whose full-time attention to the Debtors' reorganization efforts is required, and would likely cause potential business disruptions. Any such business disruptions would likely erode the Debtors' customer base and negatively impact these chapter 11 cases. Accordingly, the Debtors submit that the proposed relief is in the best interest of the Debtors' estates.

### The Debtors' Taxes

#### *Federal Transportation Taxes*

11. Pursuant to sections 4261 and 4271 of the Internal Revenue Code, the Debtors are responsible for the collection of certain excise taxes related to air transportation (the "Transportation Taxes"). I.R.C. §§ 4261, 4271. Transportation Taxes generally include (i) an

excise tax on the sale of each air travel passenger ticket calculated at 7.5% of the base fare, (ii) an excise tax payable in connection with any travel beginning and ending in the United States that is not subject to the tax described in section (i), (iii) a segment fee for each non-rural domestic segment of paid travel and (iv) an excise tax on the amount paid for the transportation of property by air that begins or ends in the United States. The Debtors generally are required to remit these taxes to the relevant Governmental Authorities on a monthly basis. As described below, Transportation Taxes are reduced by the amount of the refund credited to the Debtors on account of paid Fuel Taxes (defined below).

***Federal Fuel Taxes***

12.     The Internal Revenue Code also imposes excise taxes on the purchase of aviation fuel (the "Fuel Taxes"). *See* I.R.C. § 4091. Because the purchaser itself is responsible for paying the fuel tax to the Internal Revenue Service (the "IRS"), the Debtors make payments for Fuel Taxes only in instances in which the Debtors themselves purchase fuel. Accordingly, the Debtors do not pay any Fuel Taxes in connection with fuel purchased for their code-share flights with Delta, which arranges and purchases all fuel in connection with such flights.

13.     United purchases fuel at certain airport locations and the Debtors purchase fuel at other airport locations in connection with the Debtors' code-share flights with United. At most of the airport locations where the Debtors purchase fuel, the Debtors pay Governmental Authorities 24.4 cents per gallon on account of Fuel Taxes.[2] Under the United code-share agreement, the Debtors pre-bill United on a monthly basis in the amount of 4.4 cents per gallon of fuel the Debtors expect to purchase, and receive four reimbursement payments per month from United. United and the Debtors true up the amounts pre-billed and amounts actually paid by the Debtors approximately 90 days after the relevant month of service. The Debtors file

---

[2]  Tax on fuel purchased at certain airport locations is less than 24.4 cents per gallon.

quarterly tax returns pursuant to which they receive from the IRS a refund in the amount of 20 cents per gallon. In the ordinary course of business, the Debtors pay the IRS approximately $500,000 per month in federal fuel taxes (@ 24.4 cents per gallon) in connection with fuel purchased by the Debtors for their United code-share flights. United reimburses the Debtors in the approximate amount of $100,000 per month and the remaining amount of approximately $400,000 is refunded by the IRS on a quarterly basis.

14.    US Air purchases fuel through Material Services Corporation ("MSC") in connection with the Debtors' code-share flights with US Air. Although US Air purchases fuel by arrangement with MSC, the Debtors pay Governmental Authorities 24.4 cents per gallon on account of Fuel Taxes.[3] Under the US Air code-share agreement, the Debtors pre-bill US Air on a monthly basis in the amount of 4.4 cents per gallon of fuel the Debtors expect to purchase, and receive four reimbursement payments per month from US Air. US Air and the Debtors true up the amounts pre-billed and amounts actually paid by the Debtors approximately 120 days after the relevant month of service. The Debtors file quarterly tax returns pursuant to which they are refunded the amount of 20 cents per gallon from the IRS. In the ordinary course of business, the Debtors pay the IRS approximately $800,000 per month in federal Fuel Taxes (@ 24.4 cents per gallon) in connection with fuel purchased by the Debtors for their US Air code-share flights. US Air reimburses the Debtors in the approximate amount of $140,000 per month and the remaining amount of approximately $640,000 is refunded by the IRS on a quarterly basis.

15.    The Debtors purchase their own fuel for flights operated by *go!* Mokulele. Accordingly, the Debtors pay 24.4 cents per gallon in Fuel Taxes for a total monthly amount of approximately $100,000. The Debtors file quarterly tax returns pursuant to which they are

---

[3] Tax on fuel purchased at certain airport locations is less than 24.4 cents per gallon.

refunded the amount of 20 cents per gallon for a total refund of approximately $240,000 per quarter.

16. The Debtors expect to receive an aggregate refund in the amount of approximately $1,691,085.00 on account of Fuel Taxes incurred during the month of December 2009 and, accordingly, believe that no amount will be due on account of Fuel Taxes as of the Petition Date. In addition, such refund will be applied to reduce Transportation Taxes incurred during the fourth quarter 2009 in the amount of approximately $926,630.00 and, accordingly, no amounts are due in connection with Transportation Taxes as of the Petition Date.

### *Airport Fees and Passenger Charges*

17. The Debtors are also responsible for the collection of various taxes related to customs, immigration, passenger services and security including, without limitation, fees for inspection of international passengers, baggage and cargo. Certain of these types of taxes and fees collected before the Petition Date have not yet been remitted, including those amounts more specifically outlined below.[4]

18. Under section 40117 of title 49 of the United States Code and Part 158 of title 14 of the Code of Federal Regulations, the Debtors are required to collect passenger facility charges ("PFCs") from passengers on behalf of certain airport operators for use by those airports to finance approved airport improvement projects. 49 U.S.C. § 40117; 14 C.F.R. pt. 158. These charges must be remitted to the appropriate airport operators by the last day of the month

---

[4] In addition, the Debtors are required to pay immigration inspection fees pursuant to section 1356 of title 8 of the United States Code and fees determined on a per passenger basis for inspection services provided by the Animal and Plant Health Inspection Services at international arrival ports. *See* 8 U.S.C. § 1356; 7 C.F.R. § 354.3(f); *see also* 21 U.S.C. § 136a. Such fees are remitted by third party processors to the Department of Justice and billed to the Debtors by Airlines Clearing House, Inc. ("ACH"). The Debtors are seeking authority to pay undisputed prepetition obligations owed pursuant to agreements with ACH pursuant to the *Debtors' Motion Pursuant to Sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 for Interim Authorization to Honor and Satisfy Prepetition Obligations in the Debtors' Discretion Under Certain Industry Related Agreements and Schedule Final Hearing* (the "Industry Agreements Motion") filed contemporaneously herewith.

following the month in which a ticket is sold. In the ordinary course of business, the Debtors remit to applicable airport operators approximately $100 per month on account of PFCs incurred with respect to passengers who travel on *go!* Mokulele flights.[5] Approximately $100 of PFCs collected before the Petition Date have not been remitted to the relevant airport operators. Collected PFCs are held in trust and are not considered property of the Debtors' estates. *See* 49 U.S.C. § 40117(g)(4) and (m)(2).

19. Pursuant to the Aviation and Transportation Security Act, the Debtors also collect fees related to security services ("Security Fees"). 49 U.S.C. § 44940. These fees must be remitted to the Undersecretary of Transportation or the Transportation Security Administration on or before the last day of the month following the month in which a ticket is sold. In the ordinary course of business, the Debtors pay an average total amount of approximately $324,000 in Security Fees over a three-month period. Approximately $100,000 of Security Fees have been collected but not remitted by the Debtors before the Petition Date.

20. In addition, airlines typically pay fees to the airport authorities of the airports at which they land. In many cases, the obligation to pay landing fees, apron rents and terminal rents is assured by a cash deposit, a surety bond or a standby letter of credit. The surety bonds are often secured by a letter of credit and the letters of credit are often secured by cash deposits. Similarly, certain obligations to the United States Customs ("U.S. Customs") authorities are bonded or secured by letters of credit. Therefore, the secured airport authorities and U.S. Customs authorities will ultimately be paid notwithstanding a debtor's bankruptcy, and one claim (of the airport authority or U.S. Customs) simply will be exchanged for another claim (of the letter of credit issuer or bonding company).

---

[5] Under applicable law, PFCs incurred with respect to passengers who travel on flights operated by the Debtors in connection with their code-share agreements are remitted by the Debtors' respective code-share partners directly to the relevant airport operators.

21.     The Debtors seek authority to pay secured prepetition fees owed to airport authorities and U.S. Customs authorities.  A failure to pay these fees at the outset of the cases could be harmful to the Debtors' operations and will result in the Debtors' estates needlessly incurring additional costs as parties exercise their rights under surety bonds and letters of credit, charge fees to the Debtors and, in some instances, instigate litigation in this Court to enforce their rights.

22.     In the ordinary course of business, the Debtors pay approximately $3,000,000 per month to airport authorities on account of landing fees.  Approximately $2,700,000 of such fees are associated with flights operated by the Debtors under the code-share agreements, and the remaining fees in the approximate amount of $300,000 are associated with the Debtors' *go!* Mokulele flights.  Landing fees are paid by the Debtors directly to the applicable airport authorities.  Pursuant to the Debtors' code-share agreements, the Debtors are reimbursed by their code-share partners for landing fees paid by the Debtors in connection with flights they operate under such agreements.  As of the Petition Date, the Debtors owe approximately $2,530,000 in landing fees to certain airport authorities for the month of December 2009.  The Debtors are scheduled to remit such amounts to the airport authorities in mid-January 2010.  The Debtors seek authority, in their discretion and as necessary to avoid interruption in their business, to pay landing fees for which code-share partners owe a reimbursement obligation.

*Sales and Use and Other Taxes*

23.     In addition to the taxes and fees described above, the Debtors also collect or incur various general sales and use taxes ("Sales and Use Taxes").  The Debtors are required to remit these Sales and Use Taxes to the applicable Governmental Authorities on a periodic basis.  Approximately $402.00 in Sales and Use Taxes have been incurred or collected by the

Debtors before the Petition Date. Such amounts have not yet been remitted to the relevant Governmental Authorities but will be as they come due. The Debtors generally will then pay any Sales and Use Taxes to the appropriate Governmental Authorities or, in some cases, to a third-party processor (the "Third Party Processor") that subsequently remits such taxes to the appropriate Governmental Authorities.

24. The Debtors also collect, withhold or incur various other taxes, fees and charges, state and local taxes imposed on overall gross receipts, franchise taxes, corporate income taxes, real and personal property taxes, state and local fuel excise taxes,[6] local tourism taxes, charges in connection with the importation of goods, business and liquor license fees and other similar federal, state or local taxes, charges and fees (including, without limitation, any amounts required to be withheld or collected under applicable law) (the "Other Taxes"). The Debtors are required to remit these Other Taxes to the applicable Governmental Authorities on a periodic basis. Approximately $6,127,038.00 in these Other Taxes have been incurred, withheld or collected by the Debtors before the Petition Date. Of this amount, approximately (i) $2,849,263.00 consists of unpaid personal property taxes incurred during the year 2009 and due prior to the Petition Date, (ii) $3,144,708.99 consists of personal property taxes incurred during the year 2009 but not due until after the Petition Date, (iii) $8,958.00 consists of real property taxes incurred during the year 2009 but not due until after the Petition Date, (iv) $72,346.00 consists of corporate income taxes incurred during the year 2009 and (v) $51,762.00 consists of unpaid state fuel, excise, liquor, gross receipts, and environmental taxes incurred

---

[6] The Debtors make direct payments to Governmental Authorities for state and local fuel taxes in connection with their *go!* operations and their code-share flights with United. The Debtors' state and local fuel tax liability in connection with their *go!* operations amounts to approximately $50,000 per month, and the Debtors' state and local fuel tax liability in connection with their code-share flights with United amount to approximately $150,000 per month.

The Debtors do not pay any state and local fuel taxes in connection with their code-share flights with Delta and US Air, which parties pay such taxes directly to the Governmental Authorities.

during the year 2009. Amounts incurred on account of the Other Taxes have not yet been remitted to the relevant Governmental Authorities but will be as they come due.

**Cause Exists to Authorize the Debtors to Pay Taxes and Fees**

25.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

26.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim prior to reorganization to prevent "stoppage of [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).

27.     This doctrine of "necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to

debtors' continued operation).  The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.  The court in *In re Structurlite Plastics Corp*., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  The court stated that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code."  *Id.* at 932.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

### *Most of the Collected Taxes Are Not Property of the Debtors' Estates*

28.     Most of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Governmental Authority and are held in trust by the Debtors.  *See, e.g.*, I.R.C. §§ 6672, 7501 (stating that certain Taxes and Fees are held in trust); 49 C.F.R. § 1510.11(b) (same for security service fees); 49 U.S.C. § 40117(g)(4) and (m)(2), 14 C.F.R. § 158.49 (same for passenger facility charges); *Ferguson v. U.S.*, 317 F. Supp. 2d 945, 950 (S.D. Iowa 2004) (air transportation excise taxes are trust fund taxes).  As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See, e.g., Begier, Jr. v. IRS*, 496 U.S. 53 (1990) (stating that withholding taxes are property held by debtor in trust for another and, as such, are not property of debtor's estate); *In re American Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that excise and withholding taxes are not property of the estate); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433 (2d Cir. 1985) (concluding that sales taxes are "trust fund" taxes); *Al Copeland Enters., Inc. v. Texas (In re Al Copeland Enters., Inc.)*, 991 F.2d 233 (5th Cir. 1993) (finding that debtors' prepetition

collection of sales taxes and interest thereon were held subject to trust and were not property of the estate); *Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafood Stores, Inc.)*, 163 F.3d 1063 (9th Cir. 1998) (determining that under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate); *Shank v. Wash. State Dept. of Revenue, Excise Tax Div. (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (concluding that sales taxes required by state law to be collected by sellers from their customers are "trust fund" taxes); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes are "trust fund" taxes); *United States v. McConnell (In re Flying Boat, Inc.)*, 258 B.R. 869, 875–76 (N.D. Tex. 2001) (finding that immigration related fees collected by debtor airline are held in trust for benefit of the Immigration and Naturalization Service); *Shipley Co. v. Darr (In re Tap, Inc.)*, 52 B.R. 271, 272–73 (Bankr. D. Mass. 1985) (finding that withholding taxes are "trust fund" taxes). *See generally, Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if statute does not establish an express trust, constructive trust may be found). Because many of these Taxes and Fees are not property of the Debtors' estates, these funds are not available for the satisfaction of creditors' claims and are the property of the Governmental Authorities.

### *Certain of the Taxes Are Priority Claims*

29.     To the extent any amounts in respect of Taxes and Fees are property of the estates under section 541 of the Bankruptcy Code, most of the taxes would likely be afforded priority status under section 507(a)(8) of the Bankruptcy Code. As priority claims, the taxes must be paid in full before any general unsecured obligations of the Debtors can be satisfied. The Debtors submit that sufficient assets exist to pay all priority taxes in full under any plan of reorganization that may ultimately be proposed and confirmed by this Court. Accordingly, to the

extent the collected taxes are property of the Debtors and give rise to claims, the relief requested will only affect the timing of the payment of these priority Taxes and Fees and will not prejudice the rights of general unsecured creditors.

30.     In this respect, it should be noted that obligations labeled as "fees" or "charges" may also be entitled to priority status as taxes.  11 U.S.C. § 507(a)(8).  A fee or charge is a tax if it is an involuntary pecuniary burden: (i) laid upon the individual or their property, (ii) imposed by, or under authority of a legislative body, (iii) assumed for the public purposes, including the purposes of defraying expenses of government or undertakings authorized by it and (iv) assessed under the police or taxing power of the state.  *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498 (2d Cir. 1995) (citation omitted).  Substantially all of the Taxes and Fees are involuntary pecuniary burdens imposed by the authority of a federal, state or local legislature under its police or taxing power.  Certain of the Taxes and Fees are used for, among other things, maintaining passenger facilities at airports, paying the high cost of airport security and monitoring immigration and customs, all for the benefit of the general public. Regardless of their statutory characterization as "fees" or "charges," many, if not all, of the claims in respect of Taxes and Fees may well qualify for priority under section 507(a)(8) of the Bankruptcy Code and, as such, must be paid in full before any general unsecured obligations of a debtor may be satisfied.  Thus, payment of these Taxes and Fees will only affect the timing of the payment and will not prejudice the rights of the general unsecured creditors of these estates.

 *Certain Fees Are Secured By Surety Bonds and Letters of Credit or Subject to Reimbursement*

31.     In cases where the Debtors' landing fee obligations are supported by surety bonds or letters of credit, the Debtors ultimately will pay (albeit indirectly) the airport authorities.  *See Willis v. Celotex Corp.*, 978 F.2d 146, 150 n. 3 (4th Cir. 1992); *American Bank*

*v. Leasing Serv. Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F2d 293, 296 (11th Cir.) ("We agree with LSC that neither a letter of credit nor its proceeds are property of the debtor's estate."), *cert. denied*, 488 U.S. 993 (1988); *see also Rieser v. Landis & GYR Powers, Inc. (In re Brownie Insulation Contractors, Inc.)*, 134 B.R. 261 (Bankr. S.D. Ohio 1991) (recognizing that performance bond funds are not estate property). The impact on unsecured creditors is essentially the same whether the Debtors pay the prepetition claims or whether the airport authorities exercise their rights under surety bonds and letters of credit, except that the fees and ongoing expenses to the estates increase needlessly.

32. Moreover, the secured prepetition fees owed to airport authorities are critical to Debtors' continued operations and the safety and comfort of its passengers. The Debtors simply cannot fly unless they have the confidence that they can pay the appropriate landing fees, apron rents and terminal rents necessary to land safely and timely. In addition, certain of the landing fees are subject to reimbursement obligations under the Debtors' code-share agreements.

### Non-Payment of Certain Taxes and Fees Would Cause Immediate and Irreparable Harm to the Debtors' Estates

33. Many federal and state statutes hold certain directors, officers and other employees of entities responsible for collecting or withholding taxes, or remitting certain taxes, personally liable for these types of taxes. *See, e.g.*, I.R.C. § 6672 (imposing personal liability in connection with non-payment of transportation taxes and employment taxes described above); 21 U.S.C. § 136a(e) (same for APHIS fees); I.R.C. § 4103 (same for fuel taxes). To the extent such Taxes and Fees were incurred by the Debtors before the Petition Date are not remitted or paid by the Debtors, certain of the Debtors' directors, officers and other employees may be subject to lawsuits during the pendency of these chapter 11 cases. Payment of the Taxes and

Fees will avoid director and employee loss of focus and morale resulting from the risk of personal liability.  A lawsuit and any ensuing liability would distract personnel from important tasks, to the detriment of all parties in interest in these chapter 11 cases.  The dedicated and active participation of the Debtors' directors, officers and other employees is not only integral to the Debtors' continued, uninterrupted operations, but is also essential to their successful reorganization.

34.     Payment of certain of the prepetition Taxes and Fees is critical to the Debtors' continued, uninterrupted operations and to avoid immediate and irreparable harm to the Debtors' estates.  Non-payment of the Taxes and Fees may cause certain Governmental Authorities to take precipitous action, including but not limited to conducting audits, filing liens, pursuing payment of Taxes and Fees from the Debtors' directors, officers and other employees, and seeking to lift the automatic stay, all of which would disrupt the Debtors' day-to-day operations and could potentially impose significant costs and burdens on the Debtors' estates. Prompt payment of the Taxes and Fees will avoid these unnecessary and potentially costly governmental actions.  *See In re FCC*, 217 F.3d 125, 137 (2d Cir. 2000).  Accordingly, to the extent the relief requested herein involves the use of property of the estate and Bankruptcy Rule 6003 is applicable, the requested relief is consistent with such Rule because failure to pay the Taxes and Fees would cause immediate and irreparable harm to the Debtors.

### *Substantial Precedent Exists for Authorizing Payment of Prepetition Taxes*

35.     In numerous chapter 11 cases in this and other districts (including in respect of major airline cases), courts have authorized debtors to pay similar prepetition tax obligations.  *See, e.g., In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. April 14, 2008); *In re PLVTZ, Inc.*, Case No. 07-13532 (REG) (Bankr. S.D.N.Y. Nov. 9, 2007); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. March 6, 2006); *In re*

*Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 27, 2005); *In re Delphi Corp.*,

Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 14, 2005); *In re Delta Air Lines, Inc.*, Case

No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005); *In re US Airways Group, Inc*., Case No.

04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004); *In re ATA Holdings Corp.*, Case No. 04-

19866 (BHL) (Bankr. S.D. Ind. October 29, 2004; November 1, 2004); *In re Global Crossing*

*Ltd.*, Case No. 02-40188 (REG) (Bankr. S.D.N.Y. 2002); *In re WorldCom, Inc*., Case No. 02-

13533 (AJG) (Bankr. S.D.N.Y. 2002); *In re Enron Corp*., Case No. 01-16034 (AJG) (Bankr.

S.D.N.Y. 2001*); In re Ames Dep't Stores, Inc.*, Case No. 01-42217 (REG) (Bankr. S.D.N.Y.

2001); *In re Hawaiian Airlines, Inc*., Case No. 03-00817 (RJF) (Bankr. D. Haw. Mar. 21, 2003);

*In re UAL Corp*., Case No. 02-B4-8191 (Bankr. N.D. Ill. 2002); and *In re US Airways Group,*

*Inc*., Case No. 02-83984 (SSM) (Bankr. E.D. Va. 2002).  The Debtors submit the circumstances

described herein warrant similar relief.

      36.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow

the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  The Debtors' decisions to use, sell or lease assets outside the

ordinary course of business must be based upon the sound business judgment of the debtor.  *See*

*Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re*

*Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section

363(b) application must find from evidence presented before him good business reason to grant

such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,

722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Global Crossing Ltd*., 295 B.R. 726, 743

(Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc*., 100 B.R. 670, 674 (Bankr. S.D.N.Y.

1989) (noting that the standard for determining a section 363(b) motion is "good business reason").

37. The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

38. The Debtors submit that to the extent the use of property of the Estate is even implicated here, the actions for which relief is requested represents a sound exercise of the Debtors' business judgment and is justified under section 363(b), as well as under section 105(a) of the Bankruptcy Code.  As noted above, if the Taxes and Fees are not paid, Governmental Authorities could take actions that could be costly and distracting to the Debtors and interfere with the Debtors' ability to successfully reorganize, which would negatively affect all of the creditors, employees and other affected parties.  Moreover, because most if not all of the Taxes and Fees either (i) are "trust fund" taxes, and are therefore not property of the Debtors' estates,

or (ii) would be afforded priority status under section 507(a)(8) of the Bankruptcy Code, the Debtors' general unsecured creditors would not be prejudiced by the Court's granting of the relief requested herein.

**Payment of Checks Issued and Other
Transfers Made for Payment of the Excise and Employment Taxes**

39.     The Debtors pay the Governmental Authorities on a periodic basis with funds drawn by checks (the "Checks") or by means of electronic fund transfers (the "Electronic Transfers").  Before the Petition Date, certain Governmental Authorities were sent Checks or Electronic Transfers for these obligations that may not have cleared as of the Petition Date.

40.     To the extent any Check or Electronic Transfer has not cleared the Banks as of the Petition Date, the Debtors seek authorization in their sole discretion to direct the Banks to receive, process, honor and pay the Checks or Electronic Transfers.  If the Governmental Authorities have not received payment for Taxes and Fees owed, the Debtors seek authority to issue replacement Checks, re-issue Electronic Transfers or otherwise make payment to the Governmental Authorities.  The Debtors represent that each of the Checks and Electronic Transfers can be readily identified as relating directly to the authorized payment of Taxes and Fees.  Accordingly, if the relief requested is granted, Checks and Electronic Transfers other than those relating to authorized payments will not be honored inadvertently.

41.     Nothing in this Motion should be construed as impairing the Debtors' rights to contest the validity or amount of Taxes and Fees assessed by the Governmental Authorities, and the Debtors expressly reserve all of their rights with respect thereto.

42.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors' estates and creditors.

Absent this relief, the value of the Debtors' estates will suffer, possibly precipitously. Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

### Necessity for Immediate Relief

43.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not permitted to pay any Taxes and Fees that arose prior to the Petition Date, including all Taxes and Fees subsequently determined upon audit, or otherwise, to be owed for periods before the Petition Date, it would cause immediate and irreparable harm in that Governmental Authorities could take actions that could be costly and distracting to the Debtors and interfere with the Debtors' ability to successfully reorganize, which would negatively affect all of the creditors, employees and other affected parties. Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003.

### Notice

44.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, and (v) the Securities and Exchange Commission.

### Interim Order

45.     The Debtors seek the relief requested in this Motion in the form of the interim order (the "Interim Order") attached hereto as Exhibit A.  Within three business days of

the entry of the Interim Order, the Debtors will serve a copy of the Interim Order and this Motion on (a) the Office of the United States Trustee, (b) those creditors holding the five (5) largest secured claims against the Debtors' estates, (c) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service, and (e) the Securities and Exchange Commission.

46.     The deadline to file an objection ("Objection") to the Motion shall be 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days after the date of the entry of the Interim Order (the "Objection Deadline").  An Objection shall be considered timely only if, on or prior to the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and Joshua M. Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official committee of unsecured creditors then appointed in these cases.

47.     Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing.

48.     If no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order granting the relief requested herein, which order shall be submitted and may be entered with no hearing and no further notice or opportunity to be heard afforded to any party.  If an Objection is timely filed, a hearing will be held at a date and time to be established by the Court.

49.     The foregoing notice procedures satisfy Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing. *See*, *e.g.*, *In re Drexel Burnham Lambert*, 160 B.R. 729, 734 (S.D.N.Y. 1993) (an opportunity to present objections satisfies due process); *In re Colorado Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses.

50.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of the attached order granting the relief requested herein on an interim basis and request that the court schedule a final hearing.

Dated:     January 5, 2010
           New York, New York            PACHULSKI STANG ZIEHL & JONES LLP

                                         */s/ Maria A. Bove*
                                         Richard M Pachulski (*pro hac vice* pending)
                                         Laura Davis Jones (*pro hac vice* pending)
                                         Debra I. Grassgreen (*pro hac vice* pending)
                                         Maria A. Bove
                                         John W. Lucas

                                         780 Third Avenue, 36th Floor
                                         New York, New York 10017
                                         Telephone:  (212) 561-7700
                                         Facsimile:  (212) 561-7777

                                         Proposed Attorneys for Debtors
                                         and Debtors in Possession

**EXHIBIT A**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

### INTERIM ORDER AUTHORIZING DEBTORS TO (I) PAY PREPETITION SALES AND USE TAXES, TRANSPORTATION TAXES, AIRPORT FEES, PASSENGER FACILITY CHARGES, FUEL TAXES, AND OTHER SIMILAR TAXES AND FEES AND (II) DIRECT FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "Motion")[2] of Mesa Air Group, Inc. ("Mesa") and those of its

subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the

"Debtors"), for an order, pursuant to sections 105(a), 363(b) and 507(a) of the Bankruptcy Code,

for authority, in their sole discretion, to pay any Taxes and Fees that arose prior to the Petition

Date, including all Taxes and Fees subsequently determined upon audit, or otherwise, to be owed

for periods before the Petition Date and direct the Banks to receive, process, honor and pay

checks or electronic transfers used by the Debtors to pay Taxes and Fees, as more fully described

in the Motion; and upon consideration of the Declaration of Michael J. Lotz in Support of First

Day Motions pursuant to Local Bankruptcy Rule 1007-2; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the

Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the requested relief being a core proceeding the Bankruptcy Court can determine

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the Office of the United States Trustee for the Southern District of New York, (b) those creditors holding the five largest secured claims against the Debtors' estates, (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, and (f) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript hereof (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to sections 105(a), 363(b) and 507(a) of the Bankruptcy Code, the relief requested in the Motion is hereby granted on an interim basis to the extent provided herein; and it is further

ORDERED that the Debtors are authorized, but not directed, in their sole discretion to pay Taxes and Fees, including but not limited to all of those Taxes and Fees subsequently determined upon audit, or otherwise, to be owed for periods prior to the Petition Date, to the Governmental Authorities; and it is further

ORDERED that the Debtors are authorized in their sole discretion to direct the Banks to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' accounts to pay the Taxes and Fees, whether those checks were presented prior to or after the

Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments; and it is further

ORDERED that nothing in this Order shall be construed as impairing the Debtors' right to contest the validity or amount of Taxes and Fees assessed by the Governmental Authorities, and all of the Debtors' rights with respect thereto are hereby reserved; and it is further

ORDERED that within three business days of the entry of this Interim Order, the Debtors shall serve a copy of the Interim Order and the Motion on (a) the Office of the United States Trustee for the Southern District of New York, (b) those creditors holding the five largest secured claims against the Debtors' estates, (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service, and (e) the Securities and Exchange Commission; and it is further

ORDERED that any objection (the "Objection") to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days after the date of the entry of this Interim Order (the "Objection Deadline"), be: (a) filed with the Court and (b) served upon and actually received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and John W. Lucas and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official committee of unsecured creditors then appointed in these cases; and it is further

ORDERED that a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing; and it is further

ORDERED that if timely Objections are received there shall be a hearing to consider such timely Objections to the Motion; and it is further

ORDERED that if no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Interim Order, which Order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved nunc pro tunc to the date of the commencement of these chapter 11 cases; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Interim Order.


Dated: [ENTER DATE]
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE