PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO**
**SECTIONS 105, 362 AND 541 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 3001 ESTABLISHING NOTIFICATION AND**
**HEARING PROCEDURES FOR TRADING IN CLAIMS AND EQUITY SECURITIES**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

56772-001\DOCS_NY:19659.4

## Background

1.        On the date hereof (the "<u>Petition Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.        The Debtors have requested authorization to consolidate their chapter 11 cases for procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Mesa's Business

3.        Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico.  The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures.  The Debtors employ approximately 3,400 full and part-time employees.

4.        Mesa Airlines, Inc. ("<u>Mesa Airlines</u>") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements.  Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*<u>go!</u>*").  Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc.  The remaining Debtors operate businesses, or own interests in

businesses, that facilitate or enhance the Debtors' regional or independent air carrier services.

Nilchi, Inc. and Patar, Inc. hold investments.

5.      As of September 30, 2009, the Debtors had consolidated assets  of

approximately $975 million, and consolidated liabilities of approximately $869 million.  The

Debtors' consolidated 2009 revenues were approximately $968 million.  Approximately 96% of

the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were

derived from operations associated with code-share agreements.  The Debtors' remaining

passenger revenues are generated from their independent *go!* operations in Hawaii.

6.      A detailed description of the Debtors' businesses, capital structure, and the

circumstances that precipitated the commencement of these chapter 11 cases is set forth in the

Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy

Rule 1007-2 (the "Lotz Declaration"), filed contemporaneously herewith.

## Jurisdiction

7.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      Through this Motion, the Debtors request that the Court enter an order

pursuant to sections 105, 362 and 541 of the Bankruptcy Code and Bankruptcy Rule 3001

establishing a notice and hearing procedure which must be satisfied before certain transfers of

claims against, and equity securities in, the Debtors, or any beneficial interest therein, are

deemed effective.

9.      The Debtors' net operating loss ("NOL") carryforwards are valuable

assets of their estates which will inure to the benefit of their stakeholders, facilitate their

reorganization, and, as property of the estate, are protected by the automatic stay.  Unfettered

trading in claims and equity securities in the Debtors, with no advance warning of such trades,

jeopardizes these assets and, thus, a source of value to the Debtors' stakeholders.  Further,

unfettered trading may potentially lead to the triggering of "change in control" termination

provisions in the Debtors' codeshare agreements, unnecessarily putting at risk these critical

agreements that the Debtors seek to assume.[2]  Accordingly, this Court should grant the requested

relief and establish a notice and hearing procedure governing the trading of claims against, and

equity securities in, the Debtors.

### Change in Ownership/Control Matters Related to the Debtors' Net Operating Loss Carryforwards and Codeshare Agreements

10.    The Debtors estimate that as of December 31, 2009, they had a

consolidated NOL carryforward of approximately $89,503,317.  In addition, the Debtors

anticipate generating additional NOLs during 2010.  Based on current projections, the Debtors

expect to use a substantial portion of their NOL carryforwards to offset future income and

dramatically reduce their federal income tax liability, subject to certain limitations.  The Debtors'

consolidated NOL carryforwards are valuable assets of the Debtors' estates, because 26 U.S.C.

§ 172 ("Section 172") generally permits corporations to carry forward NOLs to offset future

income, thereby reducing federal income tax liability on such future income and significantly

improving their cash position.  The ability of the Debtors to use their NOL carryforwards is

subject to certain statutory limitations.  One limitation is contained in 26 U.S.C. § 382 ("Section

382"), which, for a corporation that undergoes a change of ownership, limits that corporation's

ability to use its NOLs and certain other tax attributes to offset future income.

---

[2] The Debtors are filing shortly after the Petition a motion to assume their codeshare agreements with US Airways, Inc., United Air Lines, Inc., and Delta Air Lines, Inc. pursuant to section 365 of the Bankruptcy Code.

11.     For purposes of Section 382, an ownership change occurs when the percentage of a loss company's equity (measured by value) owned by one or more 5% shareholders increases by more than fifty percentage points over the lowest percentage of stock owned by such shareholders at any time during a three-year rolling testing period.  A Section 382 change of ownership before confirmation of a plan would effectively eliminate the Debtors' ability to use their NOL carryforwards and certain other tax attributes.

12.     The limitations imposed by Section 382 in the context of an ownership change pursuant to a confirmed chapter 11 plan are significantly more relaxed, particularly where the plan involves the retention or receipt of at least 50% of the stock of the reorganized Debtors by shareholders or Qualified Creditors (as defined under Treas. Reg. § 1.382-9(d)(1) and related authority and as discussed in more detail in Paragraph 30).  *See* 26 U.S.C. § 382(l)(5), (6).

13.     It is possible that any potential plan of reorganization will involve the issuance of common stock to creditors in satisfaction, either in whole or in part, of the Debtors' pre-petition indebtedness.  In that event, the Debtors may seek to avail themselves of the special relief afforded by Section 382 for changes in ownership under a confirmed chapter 11 plan. There is a danger, however, that if the relief requested here is not granted, the Debtors could lose the substantial benefits of their NOL carryforwards before their emergence from chapter 11 as a result of continued trading and accumulation of claims by creditors in claims against, and by stockholders in interests in, the Debtors.  Accordingly, consistent with the automatic stay, the Debtors need the ability to monitor and possibly object to changes in the ownership of stock and claims to assure that (i) a 50% change of ownership does not occur before the effective date of any chapter 11 plan in these cases and (ii) for a change of ownership occurring under a chapter

11 plan, the Debtors have the opportunity to avail themselves of the special relief provided by Section 382.

14.     Further, if such claims and securities trading were not monitored and restricted, the Debtors could effectively lose the benefit of their codeshare agreements with US Airways, Inc., United Air Lines, Inc. and Delta Air Lines, Inc. (collectively, the "Codeshare Agreements").  The Debtors have filed concurrently herewith a motion to assume the Codeshare Agreements pursuant to section 365 of the Bankruptcy Code (the "Assumption Motion"), given their value to the estates.  As set forth in the Assumption Motion, among other things, approximately 96% of the Debtors' primary business is derived under the Codeshare Agreements, and thus, it is critical to the Debtors' reorganization that the Debtors maintain and continue with these agreements.  These agreements, however, contain certain "change in control" provisions that may potentially allow the air carrier counterparties to terminate the agreement if, for example, a certain percentage of the voting power (through Mesa's equity securities) of Mesa is transferred and/or under similar circumstances.[3]  Absent the relief requested by this Motion and the Debtors' ability to closely monitor this situation, a scenario could develop whereby some or all of the change in control provisions in the Codeshare Agreements may be triggered (during the course of these cases or through a proposed plan of reorganization that contemplates issuing common stock), in which case the Debtors may lose the value and benefit of the Codeshare Agreements prior to or after assumption thereof by the Debtors.

---

[3] Although generally speaking, the applicable threshold amounts of securities that would have to be transferred in order for the change in control provisions to be triggered are high, there is a risk that such thresholds could be surpassed if this Motion were not granted.  The Debtors have filed concurrently herewith a motion to file nonredacted copies of the Codeshare Agreements under seal.  The Debtors reserve all their rights with respect to the Codeshare Agreements, including with respect to any change in control or other termination provisions therein, and nothing herein is intended to constitute any admission or acknowledgement with respect thereto.

## **Relief Requested and Reasons Therefor**

15.     By this Motion, the Debtors request authorization to protect and preserve valuable NOLs in excess of $89 million, as well as protect the value of the Codeshare Agreements, by establishing, pursuant to sections 105(a), 362 and 541 of the Bankruptcy Code, notice and waiting periods to govern transfers of equity interests in and claims against the Debtors and procedures for objecting to such transfers in certain circumstances.

16.     If left unrestricted, such trading could severely limit the Debtors' ability to use valuable assets of their estates, namely their NOLs and potentially the Codeshare Agreements, and could have significant negative consequences for the Debtors, their estates and the reorganization process.

17.     Specifically, trading of equity interests in and claims against the Debtors securities could adversely affect the Debtors' NOLs if:

> (i) too many 5% or greater blocks of equity securities are created, or too many shares are added to or sold from such blocks, such that, together with previous trading by 5% shareholders during the preceding three year period, an ownership change within the meaning of Section 382 is triggered prior to consummation, and outside the context, of a confirmed Chapter 11 plan; or

> (ii) the beneficial ownership[4] of claims against the Debtors which are currently held by "qualified creditors" under the applicable tax regulations is transferred, prior to consummation of the plan, and those claims (either alone or when accumulated with other claims currently held by nonqualified creditors) would be converted under a plan of reorganization into a 5% or greater block of the stock of the reorganized Debtors.[5]

---

4  For purposes of this Motion, "beneficial ownership" of a claim against, or stock of, the Debtors includes direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), and ownership by such person's officers, members of the same family, and persons acting in concert.

5 As described in Paragraph 22 below, the relief requested herein has been narrowly tailored in order to comply with the "qualified creditor" *de minimis* rules of the Treasury Regulations.

18.     Thus, in order to preserve to the fullest extent possible the flexibility to craft a plan of reorganization which maximizes the use of their NOL carryforwards, the Debtors seek limited relief (consistent with their rights under the automatic stay) that will enable them to closely monitor certain transfers of claims and equity securities and be in a position to act expeditiously to prevent such transfers if necessary to preserve their NOL carryforwards. Further, as discussed above, such transfers may potentially affect the value and continued viability of the Codeshare Agreements.  By establishing procedures for continuously monitoring claims-trading and equity-securities-trading, the Debtors can preserve their ability to seek relief at the appropriate time if it appears that additional trading may jeopardize the use of their NOL carryforwards or affect the Codeshare Agreements. Accordingly, the Debtors request that the Court enter an order establishing the following procedures:

## A.     Procedure for Trading in Equity Securities.

a.      Notice of Substantial Equity Holder Status. Any person or entity who currently is or becomes a Substantial Equity Holder (as defined in sub-paragraph (e) below) shall file with the Court, and serve upon the Debtors and Debtors' counsel, a notice of such status, in the form attached hereto as Exhibit 1A on or before the later of (A) ten (10) days after the date of the notice of entry of the Order or (B) ten (10) days after becoming a Substantial Equity Holder.

b.      Acquisition of Equity Securities.  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in an increase in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity becoming a Substantial Equity Holder (a "Proposed Equity Acquisition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferee") shall file with the

Court, and serve on the Debtors and Debtors' counsel, a *Notice of Intent to Purchase, Acquire or Otherwise Accumulate an Equity Interest* (an "Equity Acquisition Notice"), in the form attached hereto as Exhibit 1B, specifically and in detail describing the intended transaction acquiring the Debtor's equity securities.

c.      Disposition of Equity Securities.  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in a decrease in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity ceasing to be a Substantial Equity Holder (a "Proposed Equity Disposition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferor") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Transfer an Equity Interest (an "Equity Disposition Notice"), in the form attached hereto as Exhibit 1C, specifically and in detail describing the intended transaction disposing of the Debtors' equity securities.

d.      Objection Procedures.  The Debtors shall have thirty (30) calendar days after actual receipt of an Equity Acquisition Notice or an Equity Disposition Notice, as the case may be, (the "Objection Deadline") to file with the Court and serve on a Proposed Equity Transferor or a Proposed Equity Transferee, as the case may be, an objection to any proposed transfer of equity securities of the Debtors described in any Equity Acquisition Notice or Equity Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize their NOLs or tax attributes as a result of an ownership change under Section 382 or Section 383 of the IRC or the Debtors' rights or benefits under the Codeshare Agreements (an "Objection").  If the Debtors file an Objection by the Objection Deadline, the Proposed Equity

Acquisition Transaction or the Proposed Equity Disposition Transaction will not be effective

unless approved by a final and nonappealable order of this Court.  If the Debtors do not file an

Objection by the Objection Deadline, or if the Debtors provide written authorization to the

Proposed Equity Transferee or Proposed Equity Transferor approving the Proposed Equity

Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be,

prior to the Objection Deadline then such Proposed Equity Acquisition Transaction or the

Proposed Equity Disposition Transaction, as the case may be, may proceed solely as specifically

described in the Equity Acquisition Notice or the Equity Disposition Notice. Further transactions

within the scope of this paragraph must be the subject of additional notices as set forth herein,

with an additional thirty (30) day waiting period.

                e.        <u>Definitions</u>.  For purposes of this Motion and the Order: (A) a

"Substantial Equity Holder" is any person or entity that beneficially owns at least 7,008,689

shares (representing approximately 4% of all issued and outstanding shares on a fully diluted

basis) of the stock (as such term is used for purposes of the Section 382 ownership change test)

of the Debtors; (B) "beneficial ownership" of equity securities shall be determined in accordance

with applicable rules under section 382 and, thus, shall include direct and indirect ownership

(*e.g.*, a holding company would be considered to beneficially own all shares owned or acquired

by its subsidiaries), ownership by such holder's family members and persons acting in concert

with such holder to make a coordinated acquisition of stock, and ownership of shares which such

holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent

purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire

stock or similar interest, regardless of whether it is contingent or otherwise not currently

exercisable.

**B.**    **Procedure for Trading In Claims**

        a.    <u>Notice of Substantial Claimholder Status</u>.  Any person or entity who currently is or becomes a Substantial Claimholder (as defined in paragraph (e) below) shall file with the Court, and serve upon the Debtors and Debtors' counsel, a notice of such status, in the form attached hereto as <u>Exhibit 2A</u>, on or before the later of (A) ten (10) days after the effective date of the notice of entry of the Order or (B) ten (10) days after becoming a Substantial Claimholder.

        b.    <u>Acquisition of Claims</u>.  At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in an increase in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity becoming a Substantial Claimholder (a "<u>Proposed Claims Acquisition Transaction</u>"), such person, entity or Substantial Claimholder (a "<u>Proposed Claims Transferee</u>") shall file with the Court, and serve on the Debtors and Debtors' counsel, a Notice of Intent to Purchase, Acquire or Otherwise Accumulate a Claim (a "<u>Claims Acquisition Notice</u>"), in the form attached hereto as <u>Exhibit 2B</u>, specifically and in detail describing the intended acquisition of claims against the Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing requirements of Bankruptcy Rule 3001.

        c.    <u>Disposition of Claims</u>.  At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in a decrease in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity ceasing to be a Substantial Claimholder (a "<u>Proposed Claims Disposition Transaction</u>"), such person, entity or Substantial Claimholder (a "<u>Proposed Claims Transferor</u>") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Dispose of a Claim (a "<u>Claims Disposition Notice</u>"), in the form attached hereto as

Exhibit 2C, specifically and in detail describing the intended disposition of claims against the

Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing

requirements of Bankruptcy Rule 3001.

           d.        <u>Objection Procedures</u>.  The Debtors shall have thirty (30) calendar

days after receipt of a Claims Acquisition Notice or Claims Disposition Notice to file with the

Court and serve on a Proposed Claims Transferor or Proposed Claims Transferee, as the case

may be, an objection to any proposed transfer of claims described in a Claims Acquisition Notice

or Claims Disposition Notice on the grounds that such transfer may adversely affect the Debtors'

ability to utilize any of their NOLs or tax attributes (an "<u>Objection</u>") after an ownership change

under Section 382 or Section 383 of the IRC.

        (1)        If the Debtors file an Objection by the Objection Deadline, the Proposed Claims Acquisition Transaction or Proposed Claims Disposition Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

        (2)        If the Debtors do not file an Objection by the Objection Deadline, or if the Debtors provide written authorization to the Proposed Claims Transferee or Proposed Claims Transferor approving the Proposed Claims Acquisition Transaction or the Proposed Claims Disposition Transaction, as the case may be, prior to the Objection Deadline then such Proposed Claims Acquisition Transaction or Proposed Claims Disposition Transaction, as the case may be, may proceed solely as set forth in a Claims Acquisition Notice or a Claims Disposition Notice. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional thirty (30) day waiting period.

           e.        <u>Definitions</u>.  For purposes of this Motion and the Order: (A) a

"Substantial Claimholder" is any person or entity that beneficially owns (i) an aggregate

principal amount of claims against the Debtors or any controlled entity through which a

Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (ii) a

lease or leases under which one or more of the Debtors are lessees and pursuant to which

payments are or will become due, or (iii) any combination of (i) and (ii), in each case, in an

amount equal to or exceeding **$25,000,000**; (B) "beneficial ownership" of claims shall be

determined in accordance with applicable rules under section 382 of the IRC and, thus, shall

include direct and indirect ownership (*e.g.*, a holding company would be considered to

beneficially own all claims owned or acquired by its subsidiaries), ownership by family members

and any group of persons acting pursuant to a formal or informal understanding to make a

coordinated acquisition of claims, and ownership of claims which such holder has an option to

acquire; and (C) an "option" to acquire claims includes any contingent purchase, put, contract to

acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not

currently exercisable.

**C.**     **Non-Compliance With the Trading Procedures**

19.     Any purchase, sale or other transfer of claims against, or equity securities

in, the Debtors in violation of the procedures set forth herein shall be null and void and shall

confer no rights on the transferee.

**The Provisions of Section 382 of the**
**Internal Revenue Code Special Section 382 Bankruptcy Rules**

20.     As mentioned above, the limitations imposed by section 382 in the context

of an ownership change pursuant to a confirmed chapter 11 plan are significantly more relaxed

than those applicable outside chapter 11. A corporation that has not previously had an ownership

change is not subject to the limitations imposed by section 382 with respect to an ownership

change resulting from consummation of a chapter 11 plan, provided that under the plan, the

debtor's pre-change shareholders (*i.e.*, persons or entities who owned the debtor's stock

immediately before the relevant ownership change) and/or Qualified Creditors (as defined

below) emerge from the reorganization owning at least 50% of the total value and voting power

of the debtor's stock immediately after the ownership change (the "Section 382(l)(5) safe

harbor"). IRC § 382(l)(5)(A).

21.    Under section 382(l)(5)(E) and Treas. Reg. § 1.382-9, a creditor whose

claim is exchanged for stock under a Chapter 11 plan is a "Qualified Creditor" for section 382

purposes if such claim either (i) has been owned by such creditor for 18 or more months prior to

the date of filing of the bankruptcy petition or (ii) arose in the ordinary course of the Debtors'

business and was at all times beneficially owned by such creditor. Creditors may also be

classified as "qualified," despite not satisfying the continuous ownership requirements under

either (i) or (ii) of the preceding sentence, if such creditors meet the criteria set forth in the de

minimis rule described below.

22.    Under Treas. Reg. § 1.382-9(d)(3) (the "de minimis rule"), the debtor

may, for purposes of the section 382(l)(5) safe harbor, "treat indebtedness as always having been

owned by the beneficial owner of the indebtedness immediately before the ownership change if

the beneficial owner is not, immediately after the ownership change, either a 5% shareholder or

an entity through which a 5% shareholder owns an indirect ownership interest" in the

corporation. Such a claimholder will always be regarded as a Qualified Creditor under the

section 382(l)(5) safe harbor unless the particular claim(s) that it holds both (a) did not arise in

the ordinary course of the issuing debtor's business, and (b) was not in existence 18 months prior

to the filing of the bankruptcy petition.

23.    The requested relief has been narrowly tailored to apply only to

claimholders that own (or would own as a result of the proposed transfer) claims with an

aggregate principal amount of **$25,000,000** or more, which, based upon a preliminary analysis, is

the lowest amount that could reasonably be expected to lead to a distribution of 5% of the stock in the Debtors, as reorganized.[6] Thus, the Debtors only seek to impose the notice and waiting period requirements on transfers of claims by or to those claimholders which could be expected to fall outside of the de minimis rule and, thus, which could jeopardize the Debtors ability to satisfy the requirements of the section 382(l)(5) safe harbor.

24.      While there can be no assurance that the Section 382(l)(5) safe harbor ultimately will be available to the Debtors, it is important that the Debtors preserve the ability to propose a plan of reorganization that would take advantage of that safe harbor. Because the determination of whether a creditor is "qualified" depends on whether such creditor has held its claim until the effective date of the plan of reorganization, transfers of claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the Section 382(l)(5) safe harbor.  Likewise, because transfers of stock by or into the hands of 5% shareholders before the effective date of the plan of reorganization could trigger an ownership change that would impose a severe annual limitation on the Debtors use of their NOLs, even if the Debtors later satisfied the requirements of Section 382(l)(5) in connection with a second ownership change resulting from the plan of reorganization, such transfers also pose a threat to the value of their NOLs.  The requested relief will ensure that the Debtors have maximum flexibility to structure a plan of reorganization that meets the requirements of Section 382(l)(5), and thus preserves their NOLs to the fullest extent.

25.      Even if it is ultimately determined that section 382(l)(5) is unavailable to the Debtors, it is in the best interests of the Debtors and their estates to restrict equity trading which could result in an ownership change prior to consummation of a plan of reorganization for

---

6 If the Debtors substantially revise their initial estimate of this amount, the Debtors shall serve a notice of such recalculated amount.

at least two additional reasons. First, an ownership change must occur pursuant to consummation of the plan in order for the Debtors to qualify for the other section 382 bankruptcy relief provision – the favorable valuation rule of section 382(l)(6). Specifically, section 382(l)(6) provides that if a corporation undergoes an ownership change pursuant to a plan of reorganization in Chapter 11 and section 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then, under Section 382(l)(6), the appropriate value of the Debtors for purposes of calculating the Section 382 limitation shall reflect the increase in value of the Debtors resulting from any surrender or cancellation of creditors' claims in the transaction. Thus, assuming the value of the Debtors increases as a result of the reorganization, Section 382(l)(6) will provide for a higher annual limitation than would result under the general rules of Section 382 and preserve the Debtors' ability to use a greater portion of their NOLs to offset any postchange income. Second, preventing an ownership change prior to the effective date of a plan will also benefit the estates by ensuring that the reorganized Debtors will have unlimited use of their NOLs to offset any expected cancellation of indebtedness income arising on the effective date of the chapter 11 plan, which income may be significant in amount. 26 U.S.C. § 382(a). Thus, in all circumstances, it is in the best interests of the Debtors and their estates to grant the requested relief so as to prevent an ownership change prior to consummation of a plan of reorganization.

### The Requested Relief Is Necessary
### to Avoid Irreparable Harm to the Debtors

26.    Although the Debtors are not required to show irreparable harm under section 362 of the Bankruptcy Code, once an NOL is limited under Section 382, its use is limited forever, and once a claim or equity interest is transferred, it cannot be undone. The relief sought herein is necessary to avoid an irrevocable loss of the Debtors' NOL carryforwards, as well as

potentially adverse consequences to the Debtors under the Codeshare Agreements – and the

irreparable harm to the Debtors' estates and creditors which could be caused by unfettered

trading in the Debtors' claims and equity securities, trading which jeopardizes the Debtors'

ability to offset taxable income freely with NOL carryforwards and potentially, the effective

value of the Codeshare Agreements.

<strong><u>The Requested Relief Is Narrowly Tailored</u></strong>

27.    The Debtors are not seeking to bar the trading of all claims and stock

trading.  Rather, the relief requested herein is narrowly tailored to permit certain claim and stock

trading to continue, subject only to Fed. R. Bankr. P. 3001(e) and applicable securities, corporate

and other laws.  Furthermore, the Debtors are only seeking to enforce the provisions of the

automatic stay with respect to certain types of claims and stock trading which pose serious risk

under the ownership change tests, and to monitor other types of unsecured claims trading which

could pose serious risk so they can preserve their ability to seek relief at the appropriate time if it

appears that the proposed trade will jeopardize the unrestricted use of the NOL carryforwards.

28.    Following entry of the Order, the Debtors propose to send a notice in

substantially the form attached hereto as <u>Exhibit 3</u> (the "<u>Notice</u>") to: (i) the Office of the United

States Trustee for the Southern District of New York; (ii) any committee appointed under section

1102 of the Bankruptcy Code; (iii) all known creditors and shareholders; (v) the indenture

trustees or transfer agents for any class of stock of the Debtors or any bonds of the Debtors; and

(vi) all parties who file notices of transfers of claims under Bankruptcy Rule 3001(e)(i).[7]  Upon

receipt of such Notice, any indenture trustee(s) or transfer agent(s) for any bonds or debentures

of the Debtors or any stock of the Debtors will be required, on at least a quarterly basis, to send

such Notice to all holders of such bonds, debentures or stock registered with such indenture

---

7 Such notice will be sent out as part of the Debtors' notice of commencement of their chapter 11 cases.

trustee or transfer agent. Any such registered holder must, in turn, provide such Notice to any

holder for whose account such registered holder holds such bonds, debentures or stock, and so on

down the chain of ownership. Additionally, any person or entity or broker or agent acting on

their behalf who (i) sells claims against the Debtors in the aggregate principal amount of at least

$5,000,000 or (ii) sells 1,401,737 shares of stock (as such term is used for purposes of the

Section 382 ownership change test) of the Debtors to another person or entity must provide a

copy of the Order authorizing such procedures to such purchaser or any broker or agent acting on

their behalf of such claims or stock. Additionally, the Debtors will publish the Notice in national

editions of *The Wall Street Journal* or *The New York Times*.

## NOLs Are Property of a Debtor's Estate Entitled to Court Protection

29.    Courts have uniformly held that a debtor's NOLs constitutes property of

the estate under section 541 of the Bankruptcy Code, which is protected by section 362 of the

Bankruptcy Code, and, as such, courts have the authority to impose measures intended to protect

and preserve such NOLs. The seminal case articulating this rule is *Official Comm. of Unsecured

Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.)*, 107 B.R. 832 (Bankr. S.D.N.Y.

1989), aff'd, 119 B.R. 430 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991) cert. denied 502

U.S. 821 (1991). *See also Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping

Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL

carrybacks and carryovers are property of the estate of the loss corporation that generated

them.") In *Prudential Lines*, this Court enjoined a parent corporation from taking a worthless

stock deduction with respect to its wholly-owned subsidiary, which was in bankruptcy, on the

grounds that allowing the parent to take such a deduction would destroy its debtor-subsidiary's

NOLs. In issuing the injunction, the court held that a debtor's potential ability to utilize NOLs is

property of the estate under the broad language of section 541 of the Bankruptcy Code, 107 B.R.

832, 841, and that "the taking of a worthless stock deduction is an exercise of control over a debtor's NOLs," *id.*, and thus was properly subject to the automatic stay of section 362 of the Bankruptcy Code.  The Second Circuit went on to hold that the permanent injunction was also supported by the court's equitable powers pursuant to section 105(a), which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Because the NOL was a valuable asset of the debtor, the Second Circuit refused to disturb the bankruptcy court's finding that elimination of the right to apply its NOL to offset income on future tax returns would impede the debtor's reorganization.  *Prudential Lines*, 928 F.2d at 574.

30.    Similarly, in *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), chapter 11 debtors moved to prohibit the transfer of the debtors' stock that could have an adverse effect on the debtors' ability to claim an NOL carryover.  The court held that the NOL qualified as property of the estate and issued an injunctive order to protect the assets of the estate and enforce the automatic stay.  Significantly, the court granted the relief requested even though the stockholders did not state any intent to sell their stock and even though the debtors did not show that a sale was pending which would trigger the prescribed change in ownership under Section 382. Id. at 927.  Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist Debtors in their reorganization process.  This asset is entitled to protection while Debtors move forward toward reorganization." *Id*. (emphasis added).  The court also concluded that because the debtors are seeking to enforce the stay, they did not have to meet the more stringent requirements for a grant of preliminary injunctive relief.

31.    The requirements for enforcing an automatic stay under 11 U.S.C.

§362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable

injury, or loss and a likelihood of success on the merits. "The key elements for a stay . . . are the

existence of property of the estate and the enjoining of all efforts by others to obtain possession

or control of property of the estate." *Id*. at 926 (quoting *Golden Distribs., Ltd. v. Reiss (In re*

*Golden Distribs., Ltd.)*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

32.    In short, it is well-settled by courts in this and other circuits that the

automatic stay enjoins actions under section 362(a)(3) which would adversely affect a debtor's

NOL carryforwards. Such actions, including the trading of claims or common stock, are null and

void *ab initio*.

### The Proposed Notice and Approval Procedures are Necessary and
### in the Best Interests of the Debtors, their Estates, and Creditors

33.    The proposed notice and approval procedures are necessary to preserve the

Debtors' NOL carryforwards and potentially, the value of the Codeshare Agreements, which are

valuable assets of the Debtors' estates. The Debtors' ability to meet the requirements of the tax

laws in order to preserve their NOL carryforwards and the continued value of the Codeshare

Agreements may be seriously jeopardized unless procedures are established to ensure that

trading in certain claims against and interests in the Debtors are precluded, and trading in other

claims against the Debtors are closely monitored and made subject to Court approval.

34.    The Debtors estimate they can use the NOL carryforward to offset future

income and eliminate significant income tax liability.  Thus, the NOL carryforward is clearly a

valuable asset of the Debtors' estates and is entitled to the protection of the automatic stay.

Furthermore, because maintenance of the NOL carryforward is critical to the Debtors' prospects

for a successful emergence from chapter 11, the exercise of this Court's equitable powers under

section 105(a) is appropriate.

       35.      Courts have not hesitated to restrict or enjoin transfers of claims or equity

securities or issue other injunctive relief in order to protect a debtor against the possible loss of

its net operating loss carryforwards or other valuable assets. *See, e.g., In re CIT Group, Inc.*,

Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 24, 2009); *In re Champion,* Case No. 09-

14019 (Bankr. D. Del. Dec. 17, 2009);  *In re Frontier Airlines Holdings, Inc.*, Case No. 08-

11298 (RDD) (Bankr. S.D.N.Y. June 3, 2008); *In re WHX Corp.*, Case No. 05-11444 (Bankr.

S.D.N.Y. March 31, 2005) (debtor provided 10 days to object to proposed transfers of claims or

equity by large claimholders and Equity Holders); *In re WorldCom, Inc.*, Case No. 02-13533

(Bankr. S.D.N.Y. March 5, 2003) (enjoining transfers of stock that would result in the

transferee's holdings increasing to or beyond 3.75%; debtor provided 10 days notice to object to

proposed transfers of unsecured claims against the debtor); *In re Adelphia Communications

Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. Sept. 27, 2002) (debtors provided 30 days to object

to proposed transfers of equity by large Equity Holders); *In re Williams Communications Group,

Inc.*, Case No. 02-11957 (Bankr. S.D.N.Y. July 24, 2002) (debtor provided 30 days notice to

object to proposed transfers of claims against the debtor that would increase the transferee's

holdings to or above $200 million in the aggregate face amount; $200 million in claims was the

lowest amount that could reasonably be expected to lead to a distribution of 5% of the stock in

the reorganized debtor); *In re Metrocall, et al.*, Case No. 02-11579 (Bankr. D. Del. July 8, 2002)

(debtor provided 5 business days notice to object to proposed transfers of stock that would result

in the transferee holding 5% or more of the debtor's stock or a reduction in the ownership

interest of an existing 5% or greater shareholder); *In re Ames Dep't. Stores, Inc.,* Case No. 01-

42217 (Bankr. S.D.N.Y. Aug. 2, 2001) (enjoining transfers of common stock and senior notes which would result in transferee holding 5% or more of the debtor's stock, and providing debtors 30 day period within which to object to a proposed transfer of any claim against the debtors); *In re Casual Male Corp.*, Case No. 01-41404 (Bankr. S.D.N.Y. May 18, 2001) (enjoining transfers of common stock and convertible notes that would result in the transferee's holdings increasing to or beyond 4.99%; debtor provided 30 days notice to object to proposed transfers of senior subordinated notes or other general unsecured claims (excluding the convertible notes) against the debtor); *In re Worldtex, Inc.,* Case No. 01-785 (Bankr. D. Del. Apr. 2, 2001) (debtor provided 30 days notice to object to proposed transfers that would result in the transferee holding 5% or more of the debtor's common stock or decrease the ownership interest of an existing 5% or greater shareholder); *In re Reliance Acceptance Group, Inc.,* Case No. 98-288 (Bankr. D. Del. Apr. 28, 1998) (debtor provided 30 days notice to object to proposed transfers that would result in the transferee holding 5% or more of debtor's common stock); *In re First Merchants Acceptance Corp.*, Case No. 97-1500 1998 Bankr. LEXIS 1816 (Bankr. D. Del. Mar. 12, 1998) (debtor provided 30 days notice to object to proposed transfers of stock in the debtor that would increase the transferee's holdings to or above 300,000 shares of the debtor's stock and to any proposed transfers of 1995 subordinated reset notes or general unsecured claims against the debtor); *In re Grossman's, Inc.,* Case No. 97-695 (Bankr. D. Del. Oct. 9, 1997) (debtor provided 30 days notice to object to proposed transfers of stock that would increase the transferee's holdings to or above 1,350,000 shares of debtor's stock and to proposed transfers of general unsecured claims that would increase the transferee's the holdings to or above an aggregate face amount of $3,500,000); *In re Southeast Banking Corp.,* Case No. 91-14561 (Bankr. S.D. Fla. July 21, 1994) (enjoining 5-percent trades of common stock); *In re Phar-Mor, Inc.,* 152 B.R. 924

(Bankr. N.D. Ohio 1993) (enjoining shareholders from selling stock in the debtor unless they

obtained relief from the automatic stay); *In re McLean Indus., Inc.,* Case Nos. 86-B-12238-

12241 (Bankr. S.D.N.Y. Feb. 16, 1989) (requiring an application to the court for authority to

transfer any claims). Similar relief has also been granted by other courts in large chapter 11

cases involving airlines. *See, e.g., In re US Airways Group, Inc.,* Case No. 04-13819 (Bankr.

E.D. Va. Apr. 1, 2005) (debtors provided with 10 days to object to proposed transfers of claims

or equity by large claimholders and Equity Holders); *In re UAL Corp.,* Case Adv. No. 03-00061

(Bankr. N.D. Ill. Dec. Feb. 24, 2003) (debtors provided with 15 days to object to proposed

transfers of claims or equity by large claimholders and Equity Holders); *In re US Airways

Group, Inc.,* Case No. 02-83984 (Bankr. E.D. Va. Aug 12, 2002) (debtors provided with 30 days

to object to proposed transfers of claims or equity by large claimholders and Equity Holders).

    36.  Courts ordering such relief generally have done so by imposing notice and

hearing requirements on any proposed transfer of claims or stock to or by a person whose

holdings of such claims or stock exceeds (or would exceed as a result of the proposed transfer) a

certain threshold amount. Thus, the court and the debtor must be given notice of any proposed

transfers of claims or stock by persons whose aggregate claim or stock holdings exceed a certain

dollar or share threshold, giving the debtor an opportunity to object to such transfer. The order

in *In re Casual Male Corp.,* Case No. 01-41404 (Bankr. S.D.N.Y. May 18, 2001), was typical in

this regard. There, the Court entered an order prohibiting any party from purchasing, acquiring,

or otherwise obtaining more than a prescribed number of shares of the debtor, or to add

additional shares to such a block. Further, the Court required any party which intended to sell,

acquire, trade, or otherwise transfer any senior subordinated notes or general unsecured claim

against the debtors to provide notice to the Court and to debtor's counsel; the debtor then was

afforded 30 days to object to such transaction, at which point a hearing would be held so that the Court could decide whether or not to allow any such transfer to be consummated. *See, e.g., In re Williams Communications Group, Inc.*, Case No. 02-11957 (BRL) (Bankr. S.D.N.Y. July 24, 2002) (claims trading restrictions applied to claimholders expected to fall outside the de minimis rule); *In re Worldtex, Inc.,* Case No. 01-785 (MFW) (Bankr. D. Del. Apr. 2, 2001) (stock trading restrictions applied to persons who were, or would become as a result of the proposed transfer, a 5 percent stockholder). While the relief the Debtors request here is similar to that which was granted in *Casual Male*, it excludes transfers by claimholders expected to fall under the *de minimis* rule (*i.e.*, persons which beneficially own claims with an aggregate principal amount of less than $25,000,000) from the scope of the notice and hearing procedures, thus making the requested relief even less burdensome than the relief granted in *Casual Male*.

37.    The Debtors' NOLs are valuable assets of their estates which will inure to the benefit of their stakeholders and facilitate their reorganization. Unfettered trading in claims and equity securities in the Debtors, with no advance warning of such trades, jeopardizes this asset, as well as potentially the value of the Codeshare Agreements that the Debtors seek to assume, and, with these assets, a source of value to the Debtors' stakeholders. Accordingly, this Court should grant the requested relief and establish a notice and hearing procedure governing the trading of claims against, and equity securities in, the Debtors. The requested relief imposes a minimal burden to achieve a substantial benefit, and the Debtors believe that granting the relief requested in this Motion is in the best interests of the Debtors' estates, their creditors and other interested parties.

## Necessity for Immediate Relief

38.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation

regarding property of the estate, including a motion to pay all or part of a claim that arose before

the filing of the petition . . . ."  If the Debtors are not permitted to establish a notice and hearing

procedure governing the trading of claims against, and equity securities in, the Debtors, it would

cause immediate and irreparable harm by jeopardizes the Debtors' assets as discussed above and,

with such assets, a source of value to the Debtors' stakeholders.  Accordingly, the interim relief

requested herein is consistent with Bankruptcy Rule 6003.

### Interim Order

39.     The Debtors seek the relief requested in this Motion in the form of the

interim order (the "Interim Order") attached hereto as Exhibit 4.  Within three business days of

the entry of the Interim Order, the Debtors will serve a copy of the Interim Order and this Motion

on (a) the Office of the United States Trustee, (b) those creditors holding the five (5) largest

secured claims against the Debtors' estates, (c) those creditors holding the thirty (30) largest

unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue

Service, and (e) the Securities and Exchange Commission.

40.     The deadline to file an objection ("Objection") to the Motion shall be 4:00

p.m. (prevailing Eastern Time) on the date that is 10 days after the date of the entry of the

Interim Order (the "Objection Deadline").  An Objection shall be considered timely only if, on or

prior to the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually

received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New

York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP,

150 California Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen

and Joshua M. Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor,

New York, New York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official

committee of unsecured creditors then appointed in these cases.

41.    Unless otherwise ordered by the Court, a reply to an Objection may be

filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that

is at least two business days before the date of the applicable hearing.

42.    If no Objections are timely filed and served as set forth herein, the Debtors

shall, on or after the Objection Deadline, submit to the Court a final order granting the relief

requested herein, which order shall be submitted and may be entered with no hearing and no

further notice or opportunity to be heard afforded to any party.  If an Objection is timely filed, a

hearing will be held at a date and time to be established by the Court.

43.    The foregoing notice procedures satisfy Bankruptcy Rule 9014 by

providing parties in interest with notice and an opportunity to object and be heard at a hearing.

*See*, e.g., *In re Drexel Burnham Lambert*, 160 B.R. 729, 734 (S.D.N.Y. 1993) (an opportunity to

present objections satisfies due process); *In re Colorado Mountain Cellars, Inc*., 226 B.R. 244,

246 (D. Colo. 1998) (a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore,

the proposed notice procedures protect the due process rights of the parties in interest without

unnecessarily exposing the Debtors' estates to unwarranted administrative expenses.

## Notice

44.    No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this motion on (i) the Office of the United States Trustee for the

Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured

claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents

holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue

Service, and (v) the Securities and Exchange Commission.

45.     No previous request for the relief sought herein has been made to this or

any other Court.

WHEREFORE, the Debtors request entry of the attached order granting the relief

requested herein and such other and further relief as is just.

Dated:    January 5, 2010          PACHULSKI STANG ZIEHL & JONES LLP
          New York, New York

                                   */s/ Maria A. Bove*
                                   Richard M. Pachulski (*pro hac vice* pending)
                                   Laura Davis Jones (*pro hac vice* pending)
                                   Debra I. Grassgreen (*pro hac vice* pending)
                                   Maria A. Bove
                                   John W. Lucas

                                   780 Third Avenue, 36th Floor
                                   New York, New York 10017
                                   Telephone:  (212) 561-7700
                                   Facsimile:  (212) 561-7777

                                   Proposed Attorneys for Debtors
                                   and Debtors in Possession

**EXHIBIT 1A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF STATUS AS A SUBSTANTIAL EQUITY HOLDER[2]**

PLEASE TAKE NOTICE that [Name of Equity Holder] is/has become a Substantial Equity Holder with respect to the equity securities (the "Equity Securities") of Mesa Air Group, Inc. ("Mesa"), a debtor and debtor-in-possession in Case No. [_____] pending in the United States Bankruptcy Court for the Southern District of New York.

PLEASE TAKE FURTHER NOTICE that, as of [Date], [Name of Equity Holder] beneficially owns _____ shares of the Equity Securities of Mesa.  The following table sets forth the date(s) on which [Name of Equity Holder] acquired or otherwise became the beneficial owner of such Equity Securities:

| Number of Shares | Date Acquired |
|---|---|
| | |
| | |
| | |

(Attach additional page if necessary

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For purposes of this Notice: (A) "Substantial Equity Holder" means any person or entity that beneficially owns at least 7,008,689 shares (representing approximately 4% of all issued and outstanding shares on a fully diluted basis) of the stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors; (B) "beneficial ownership" of equity securities includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

1

      **PLEASE TAKE FURTHER NOTICE** that the taxpayer identification number of [Name of Equity Holder] is _____.

      **PLEASE TAKE FURTHER NOTICE** that, under penalties of perjury, [Name of Equity Holder] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 And 541 And Bankruptcy Rule 3001 Establishing Notice And Hearing Procedures For Trading In Claims And Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ  85008, Attn: Brian S. Gillman and (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: Debra Grassgreen and Joshua M. Fried, and Pachulski Stang Ziehl & Jones LLP 780 Third Avenue, 36th Floor, New York, NY 10017, Maria A. Bove, counsel to the Debtors.

Dated:   _____        Respectfully submitted,


                _____
                (Name of Equity Holder)

           By: _____

      Name: _____

       Title: _____

  Address: _____

                 _____

                 _____

Telephone: _____

Facsimile: _____

56772-001\DOCS_NY:19659.4

**EXHIBIT 1B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF INTENT TO ACQUIRE, PURCHASE, OR**
**OTHERWISE ACCUMULATE AN EQUITY INTEREST[2]**

 **PLEASE TAKE NOTICE** that [Name of Prospective Acquirer] hereby provides notice of its intention to purchase, acquire or otherwise accumulate one or more shares of the equity securities (the "Equity Securities") of Mesa Air Group, Inc. ("Mesa") or an option with respect thereto (the "Proposed Transfer").

 **PLEASE TAKE FURTHER NOTICE** that, if applicable, on [Prior Date(s)], [Name of Prospective Acquirer] filed a Notice of Status as a Substantial Equity Holder 1 with the Court and served copies thereof on the Debtors and the Debtors' counsel.

 **PLEASE TAKE FURTHER NOTICE** that [Name of Prospective Acquirer] currently beneficially owns _____ shares of the Equity Securities of Mesa.

 **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Transfer, [Name of Prospective Acquirer] proposes to purchase, acquire or otherwise accumulate _____ shares of Equity Securities or an option with respect to _____ shares of Equity Securities. If the Proposed Transfer is permitted to occur, [Name of Prospective Acquirer] will beneficially own _____ shares of Equity Securities after the transfer.

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For purposes of this Notice: (A) "Substantial Equity Holder" means any person or entity that beneficially owns at least 7,008,689 shares (representing approximately 4% of all issued and outstanding shares on a fully diluted basis) of the stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors; (B) "beneficial ownership" of equity securities includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

1

**PLEASE TAKE FURTHER NOTICE** that the taxpayer identification number of [Name of Prospective Acquirer] is _____.

**PLEASE TAKE FURTHER NOTICE** that, under penalties of perjury, [Name of Prospective Acquirer] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Claims and Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ 85008, Attn: Brian S. Gillman and (ii) Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Debra I. Grassgreen, Joshua M. Fried, and Maria A. Bove.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have thirty (30) calendar days after receipt of this Notice to object to the Proposed Transfer described herein. If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such thirty (30) day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

**PLEASE TAKE FURTHER NOTICE** that any further transactions contemplated by [Name of Prospective Acquirer] that may result in [Name of Prospective Acquirer] purchasing, acquiring or otherwise accumulating additional shares of Equity Securities (or an option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Dated: _____          Respectfully submitted,

_____
(Name of Prospective Acquirer)

By:      _____

Name:    _____

Title:   _____

Address: _____

         _____

         _____

Telephone: _____

Facsimile: _____

2

**EXHIBIT 1C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF INTENT TO SELL, TRADE, OR**
**OTHERWISE TRANSFER AN EQUITY INTEREST[2]**

>        **PLEASE TAKE NOTICE** that [Name of Prospective Seller] hereby provides notice of its intention to sell, trade or otherwise transfer one or more shares of the equity securities (the "Equity Securities") of Mesa Air Group, Inc. ("Mesa") or an option with respect thereto (the "Proposed Transfer").

>        **PLEASE TAKE FURTHER NOTICE** that, if applicable, on [Prior Date(s)], [Name of Prospective Seller] filed a Notice of Status as a Substantial Equity Holder with the Court and served copies thereof on the Debtors and the Debtors' counsel.

>        **PLEASE TAKE FURTHER NOTICE** that [Name of Prospective Seller] currently beneficially owns _____ shares of the Equity Securities of Mesa.

>        **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Transfer, [Name of Prospective Seller] proposes to sell, trade or otherwise transfer _____ shares of Equity Securities or an option with respect to _____ shares of Equity Securities. If the Proposed Transfer is permitted to occur, [Name of Prospective Seller] will beneficially own _____ shares of Equity Securities after the transfer.

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For Purposes of this Notice: (A) a "Substantial Equity Holder" is any person or entity that beneficially owns at least 7,008,689  shares (representing approximately 4% of all issued and outstanding shares on a fully diluted basis) of the stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors; (B) "beneficial ownership" of equity securities includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

**PLEASE TAKE FURTHER NOTICE** that the taxpayer identification number of [Name of Prospective Seller] is _____.

**PLEASE TAKE FURTHER NOTICE** that, under penalties of perjury, [Name of Prospective Seller] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Claims and Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ 85008, Attn: Brian S. Gillman, (ii) Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Debra I. Grassgreen, Joshua M. Fried, Maria A. Bove.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have thirty (30) calendar days after receipt of this Notice to object to the Proposed Transfer described herein.  If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such thirty (30) day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

**PLEASE TAKE FURTHER NOTICE** that any further transactions contemplated by [Name of Prospective Seller] that may result in [Name of Prospective Seller] selling, trading or otherwise transferring shares of Equity Securities (or an option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Dated: _____        Respectfully submitted,

_____
(Name of Prospective Seller)

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Telephone: _____

Facsimile: _____

2

<u>**EXHIBIT 2A**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

<u>**NOTICE OF STATUS AS A SUBSTANTIAL CLAIMHOLDER**</u>[2]

        PLEASE TAKE NOTICE that [Name of Claimholder] is/has become a Substantial Claimholder with respect to claims against Mesa Air Group, Inc. ("<u>Mesa</u>") and its affiliated debtors and debtors-in-possession (the "<u>Debtors</u>") in Case No.[_____], pending in the United States Bankruptcy Court for the Southern District of New York.

        PLEASE TAKE FURTHER NOTICE that, as of [Date], [Name of Claimholder] beneficially owns claims in the aggregate principal amount of $_____ against the Debtors. The following table sets forth the name of the Debtor issuer, a summary of the terms, and the date on which [Name of Claimholder] acquired or otherwise became the beneficial owner of each such claim:

| Debtor | Terms | Date Acquired |
|---|---|---|
| | | |
| | | |
| | | |

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For purposes of this Notice: (i) a "Substantial Claimholder" is any person or entity that beneficially owns (A) an aggregate principal amount of claims against the Debtors or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (B) a lease or leases under which one or more of the Debtors are lessees and pursuant to which payments are or will become due, or (C) any combination of (A) and (B), in each case, in an amount equal to or exceeding $25,000,000; (ii) "beneficial ownership" of claims includes direct and indirect ownership (e.g, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire; and (iii) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

1

PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of [Name of Claimholder] is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Prospective Seller] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Claims and Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ 85008, Attn: Brian S. Gillman, (ii) Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Debra I. Grassgreen, Joshua M. Fried, Maria A. Bove.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

_____
(Name of claimholder)

By: _____

Name: _____

Title: _____

Address: _____

_____

Tel: _____

Fax: _____

Date: _____

2

<u>EXHIBIT 2B</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF INTENT TO ACQUIRE, PURCHASE,**
**OR OTHERWISE ACCUMULATE A CLAIM[2]**

  **PLEASE TAKE NOTICE** that [Name of Prospective Acquirer] hereby provides notice of its intention to purchase, acquire or otherwise accumulate a claim or claim(s) against the Debtors (the "Proposed Transfer").

  **PLEASE TAKE FURTHER NOTICE** that, if applicable, on [Prior Date(s)], [Name of Prospective Acquirer] filed a Notice of Status as a Substantial Claimholder with the Court and served copies thereof on the Debtors and the Debtors' counsel.

  **PLEASE TAKE FURTHER NOTICE** that [Name of Prospective Acquirer] currently beneficially owns claims against the Debtors in the aggregate principal amount of $ _____.

  **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Transfer, [Name of Prospective Acquirer] proposes to purchase, acquire or otherwise accumulate claims against [Name of Debtor issuer] in the aggregate principal amount of $_____.  If the Proposed Transfer is permitted to occur, [Name of Prospective Acquirer] will beneficially own

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For purposes of this Notice: (i) a "Substantial Claimholder" is any person or entity that beneficially owns (A) an aggregate principal amount of claims against the Debtors or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (B) a lease or leases under which one or more of the Debtors are lessees and pursuant to which payments are or will become due, or (C) any combination of (A) and (B), in each case, in an amount equal to or exceeding $25,000,000; (ii) "beneficial ownership" of claims includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire; and (iii) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

1

claims against the Debtors in the aggregate principal amount of $_____ after the transfer.

**PLEASE TAKE FURTHER NOTICE** that the taxpayer identification number of [Name of Prospective Acquirer] is _____.

**PLEASE TAKE FURTHER NOTICE** that, under penalties of perjury, [Name of Prospective Acquirer] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Claims and Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ 85008, Attn: Brian S. Gillman and (ii) Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Debra I. Grassgreen, Joshua M. Fried, Maria A. Bove.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have thirty (30) calendar days after receipt of this Notice to object to the Proposed Transfer described herein. If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such thirty (30) day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

**PLEASE TAKE FURTHER NOTICE** that any further transactions contemplated by [Name of Prospective Acquirer] that may result in [Name of Prospective Acquirer] purchasing, acquiring or otherwise accumulating additional claims against the Debtors will each require an additional notice filed with the Court to be served in the same manner as this Notice.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Dated: _____          Respectfully submitted,

                                   _____

                                   (Name of Prospective Acquirer)

              By: _____

         Name: _____

          Title: _____

       Address: _____

                      _____

                      _____

    Telephone: _____

    Facsimile: _____

3

**EXHIBIT 2C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF INTENT TO SELL, TRADE,**
**OR OTHERWISE TRANSFER A CLAIM[2]**

      **PLEASE TAKE NOTICE** that [Name of Prospective Seller] hereby provides notice of its intention to sell, trade or otherwise transfer a claim or claim(s) against the Debtors (the "Proposed Transfer").

      **PLEASE TAKE FURTHER NOTICE** that, if applicable, on [Prior Date(s)], [Name of Prospective Seller] filed a Notice of Status as a Substantial Claimholder with the Court and served copies thereof on the Debtors and the Debtors' counsel.

      **PLEASE TAKE FURTHER NOTICE** that [Name of Prospective Seller] currently beneficially owns claims against the Debtors in the aggregate principal amount of $ _____.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Proposed Transfer, [Name of Prospective Seller] proposes to sell, trade or otherwise transfer claims against [Name of Debtor issuer] in the aggregate principal amount of $_____. If the Proposed

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] For purposes of this Notice: (A) a "Substantial Claimholder" is any person or entity that beneficially owns (i) an aggregate principal amount of claims against the Debtors or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (ii) a lease or leases under which one or more of the Debtors are lessees and pursuant to which payments are or will become due, or (iii) any combination of (i) and (ii), in each case, in an amount equal to or exceeding $25,000,000; (B) "beneficial ownership" of claims includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all claims owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire; and (C) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

1

Transfer is permitted to occur, [Name of Prospective Seller] will beneficially own claims against the Debtors in the aggregate principal amount of $_____ after the transfer.

> **PLEASE TAKE FURTHER NOTICE** that the taxpayer identification number of [Name of Prospective Seller] is _____.

> **PLEASE TAKE FURTHER NOTICE** that, under penalties of perjury, [Name of Prospective Seller] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

> **PLEASE TAKE FURTHER NOTICE** that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Claims and Equity Securities, this Notice is being (A) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, and (B) served upon (i) the Debtors, Mesa Air Group, Inc., 401 N. 44th Street, Suite 100, Phoenix, AZ  85008, Attn: Brian S. Gillman and (ii) Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Debra I. Grassgreen, Joshua M. Fried, Maria A. Bove.

> **PLEASE TAKE FURTHER NOTICE** that the Debtors have thirty (30) calendar days after receipt of this Notice to object to the Proposed Transfer described herein.  If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such thirty (30) day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

2

**PLEASE TAKE FURTHER NOTICE** that any further transactions contemplated by [Name of Prospective Seller] that may result in [Name of Prospective Seller] selling, trading or otherwise transferring claims against the Debtors will each require an additional notice filed with the Court to be served in the same manner as this Notice.

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

Dated: _____         Respectfully submitted,

_____
(Name of Prospective Seller)

By: _____

Name: _____

Title: _____

Address: _____

_____

_____

Telephone: _____

Facsimile: _____

3

**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF (A) NOTIFICATION PROCEDURES APPLICABLE TO SUBSTANTIAL HOLDERS OF CLAIMS AND EQUITY SECURITIES AND (B) NOTIFICATION AND HEARING PROCEDURES FOR TRADING IN CLAIMS AND EQUITY SECURITIES[2]**

**TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS**

PLEASE TAKE NOTICE that on January 5, 2010 ("Petition Date"), Mesa Air Group, Inc. and certain of its direct and indirect subsidiaries, (collectively, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").  Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on January [ ], 2010 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), entered an order approving the procedures set forth below in order to preserve the Debtors' net operating losses ("NOLs") and/or valuable assets pursuant to sections 105, 362 and 541 of the Bankruptcy Code (the "Order").  **Any sale or other transfer of claims against or equity securities in the Debtors in violation of the procedures set forth below shall be null and void *ab initio* as an act in violation of the automatic stay under section 362 of the Bankruptcy Code and shall confer no rights on the transferee; any sale or other transfer of claims against the Debtors in violation of the to the consummation of the reorganization of the Debtors.**

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] References to "claims" herein are made in accordance with the definition of "claim" in section 101(5) of the Bankruptcy Code and includes a lessor's right to any current or future payment under or arising out of any lease with respect to which the Debtor or one or more of its Debtor Affiliates is a lessee.

1

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, the following procedures shall apply to holding and trading in equity securities of the Debtors:

a.      Any person[3] or entity who currently is or becomes a Substantial Equity Holder (as defined in paragraph (e) below) must file with the Court, and serve upon the Debtors and Debtors' counsel a notice of such status ("Notice of Status as a Substantial Equity Holder"), in the form attached hereto as Exhibit 1A on or before the later of (A) ten (10) days after the effective date of the notice of entry of the Order or (B) ten (10) days after becoming a Substantial Equity Holder.

b.      Acquisition of Equity Securities.  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in an increase in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity becoming a Substantial Equity Holder (a "Proposed Equity Acquisition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferee") shall file with the Court, and serve on the Debtors and Debtors' counsel, a Notice of Intent to Purchase, Acquire or Otherwise Accumulate an Equity Interest (an "Equity Acquisition Notice"), in the form attached hereto as Exhibit 1B,[4] specifically and in detail describing the intended transaction acquiring the Debtor's equity securities.

c.      Disposition of Equity Securities.  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in a decrease in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity ceasing to be a Substantial Equity Holder (a "Proposed Equity Disposition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferror") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Transfer an Equity Interest (an "Equity Disposition Notice"), in the form attached hereto as Exhibit 1C,[5] specifically and in detail describing the intended transaction disposing of the Debtors' equity securities.

d.      Objection Procedures.  The Debtors shall have thirty (30) calendar days after actual receipt of an Equity Acquisition Notice or an Equity Disposition Notice, as the case may be, (the "Objection Deadline") to file with the Court and serve on a Proposed Equity Transferor or a Proposed Equity Transferee, as the case may be, an objection to any proposed transfer of the equity securities of the Debtors described in any Equity Acquisition Notice or Equity Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize their NOLs or tax attributes as a result of an ownership change under Section

---

[3] References to "person" herein are made in accordance with the definition of "person" in section 101(41) of the Bankruptcy Code.

[4] A notice in the form of Exhibit 1B or Exhibit 2B (as described below) is hereinafter referred to as a "Notice of Intent to Purchase, Acquire or Otherwise Accumulate."

[5] A notice in the form of Exhibit 1C or Exhibit 2C (as described below) is hereinafter referred to as a "Notice of Intent to Sell, Trade or Otherwise Transfer" (and, together with a Notice of Intent to Purchase, Acquire or Accumulate, is collectively referred to as a "Notice of Proposed Transfer").

382 or Section 383 of the IRC or the Debtors' rights or benefits under their codeshare agreements (an "Objection").

    (1)    If the Debtors file an Objection by the Objection Deadline, the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction will not be effective unless approved by a final and nonappealable order of this Court.

    (2)    If the Debtors do not file an Objection by the Objection Deadline, or if the Debtors provide written authorization to the Proposed Equity Transferee or Proposed Equity Transferor approving the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, prior to the Objection Deadline then such Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, may proceed solely as specifically described in the Equity Acquisition Notice or the Equity Disposition Notice. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional thirty (30) day waiting period.

    e.    <u>Definitions</u>. For purposes of this Motion and the Order: (A) a "Substantial Equityholder" is any person or entity that beneficially owns at least 7,008,689 shares (representing approximately 4% of all issued and outstanding shares on a fully diluted basis) of the stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors; (B) "beneficial ownership" of equity securities shall be determined in accordance with applicable rules under section 382 and, thus, shall include direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

    PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, the following procedures shall apply to holding and trading in CLAIMS AGAINST ANY OF THE DEBTORS:

    a.    Any person[6] or entity who currently is or becomes a Substantial Claimholder (as defined in paragraph (e) below) must file with the Court, and serve upon the

---

[6] References to "person" herein are made in accordance with the definition of "person" in section 101(41) of the Bankruptcy Code.

Debtors and Debtors' counsel, a notice of such status ("Notice of Status as a Substantial Claimholder") on or before the later of (A) ten (10) days after the effective date of the notice of entry of the order or (B) ten (10) days after becoming a Substantial Claimholder.

b.      At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in an increase in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity becoming a Substantial Claimholder (a "Proposed Claims Acquisition Transaction"), such person, entity or Substantial Claimholder (a "Proposed Claims Transferor") shall file with the Court, and serve on the Debtors and Debtors' counsel, a Notice of Intent to Purchase, Acquire or Otherwise Accumulate a Claim (a "Claims Acquisition Notice"), in the form attached hereto as Exhibit 2B, specifically and in detail describing the intended acquisition of claims against the Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing requirements of Bankruptcy Rule 3001.

c.      At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in a decrease in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity ceasing to be a Substantial Claimholder (a "Proposed Claims Disposition Transaction"), such person, entity or Substantial Claimholder (a "Proposed Claims Transferor") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Dispose of a Claim (a "Claims Disposition Notice"), in the form attached hereto as Exhibit 2C, specifically and in detail describing the intended disposition of claims against the Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing requirements of Bankruptcy Rule 3001.

d.      The Debtors shall have thirty (30) calendar days after receipt of a Claims Acquisition Notice or Claims Disposition Notice to file with the Court and serve on a Proposed Claims Transferor or Proposed Claims Transferee, as the case may be, an objection to any proposed transfer of claims described in a Claims Acquisition Notice or Claims Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize any of their NOLs or tax attributes after an ownership change under Section 382 or Section 383 of the IRC or the Debtors' rights or benefits under their codeshare agreements (an "Objection").

(1)      If the Debtors file an Objection by the Objection Deadline, the Proposed Claims Acquisition Transaction or Proposed Claims Disposition Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

(2)      If the Debtors do not file an Objection by the Objection Deadline, or if the Debtors provide written authorization to the Proposed Claims Transferee or Proposed Claims Transferor approving the Proposed Claims Acquisition Transaction or the Proposed Claims Disposition Transaction, as the case may be, prior to the Objection Deadline then such Proposed Claims Acquisition

4

Transaction or Proposed Claims Disposition Transaction may proceed solely as specifically set forth in a Claims Acquisition Notice or a Claims Disposition Notice. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional thirty (30) day waiting period.

e.    For purposes of this Motion and the Order: (A) a "Substantial Claimholder" is any person or entity that beneficially owns (i) an aggregate principal amount of claims against the Debtors or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (ii) a lease or leases under which one or more of the Debtors are lessees and pursuant to which payments are or will become due, or (iii) any combination of (i) and (ii), in each case, in an amount equal to or exceeding $25,000,000; (B) "beneficial ownership" of claims shall be determined in accordance with applicable rules under section 382 of the IRC and, thus, shall include direct and indirect ownership (e.g., a holding company would be considered to beneficially own all claims owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire; and (C) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

**PLEASE TAKE FURTHER NOTICE** that, upon the request of any person, Pachulski Stang Ziehl & Jones LLP, counsel to the Debtors, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn. Maria Bove, will provide a form of each of the required notices described above. In addition, copies of the required notices and order may be obtained at http://chapter11.epiqsystems.com/mesa

**PLEASE TAKE FURTHER NOTICE** that, upon the request of any person, Epiq Systems (the "Official Copy Service"), 757 Third Avenue, 3rd Floor, New York, NY 10017, tel: (646) 282-2400, will supply a copy of the Order. The Official Copy Service will supply a copy of the Order at a cost to be paid by the person requesting it at the prevailing fee being charged by the Official Copy Service. The Official Copy Service will accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).[7]

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE WILL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED PURCHASE, SALE, TRADE OR OTHER TRANSFER OF CLAIMS AGAINST OR EQUITY SECURITIES IN THE DEBTORS IN VIOLATION OF THE ORDER WILL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE BANKRUPTCY COURT.**

---

[7] Normal business hours for the Official Copy Service are from 9:00 a.m. to 6:00 p.m. (prevailing Eastern Time).

56772-001\DOCS_NY:19659.4

**THE DEBTORS PLAN OF REORGANIZATION MAY PROVIDE FOR THE DISALLOWANCE OF CLAIMS OR INTERESTS AGAINST THE DEBTORS TO THE EXTENT THAT THEY WOULD ENTITLE THE HOLDERS THEREOF TO A DISTRIBUTION OF 5% OR MORE OF THE VALUE OF THE REORGANIZED DEBTORS.**

**PLEASE TAKE FURTHER NOTICE** that the requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate and other laws, and do not excuse compliance therewith.

Dated:    _____          PACHULSKI STANG ZIEHL & JONES LLP
                New York, New York


                                        _____
                                        Richard M. Pachulski (*pro hac vice* pending)
                                        Laura Davis Jones (*pro hac vice* pending)
                                        Debra I. Grassgreen (*pro hac vice* pending)
                                        Maria A. Bove
                                        John W. Lucas

                                        780 Third Avenue, 36th Floor
                                        New York, New York 10017
                                        Telephone:  (212) 561-7700
                                        Facsimile:  (212) 561-7777

                                        Proposed Attorneys for Debtors
                                        and Debtors in Possession

6

**Exhibit 4**

**(Proposed Interim Order)**

56772-001\DOCS_NY:19659.4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

## INTERIM ORDER PURSUANT TO
## SECTIONS 105, 362 AND 541 OF THE BANKRUPTCY CODE
## AND BANKRUPTCY RULE 3001 ESTABLISHING NOTIFICATION AND
## HEARING PROCEDURE FOR TRADING IN CLAIMS AND EQUITY SECURITIES

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (the "Debtors"), seeking entry of an order pursuant to sections 105, 362

and 541 of title 11, United States Code (the "Bankruptcy Code") and Rule 3001 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to establish notification and hearing

procedures for trading in claims and equity securities, all as described more fully in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been provided

to (i) the Debtors' twenty largest unsecured creditors, (ii) the Debtors' five largest pre-petition

secured lenders or any agent therefor, (iii) the United States Trustee for this District, and (iv) the

Securities and Exchange Commission; and it appearing that no other or further notice of the

Motion need be provided; and the Court having determined that the relief sought in the Motion is

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1

in the best interests of the Debtors, their estates and all parties in interest; and upon the Motion,

the Declaration of Michael J. Lotz, dated as of the Petition Date, Pursuant to Local Bankruptcy

Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Orders, dated as

of the Petition Date; and all of the proceedings had before the Court; and after due deliberation

and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted and approved on an interim basis to the extent

provided herein; and it is further

ORDERED that effective as of the Petition Date, any purchase, sale or other transfer of

claims against or equity securities in the Debtors in violation of the procedures set forth herein

and in the Motion shall be null and void *ab initio* as an act in violation of the automatic stay

under sections 362 and 105(a) of the Bankruptcy Code; and it is further

ORDERED that effective as of the Petition Date, the procedures as described below shall

apply to trading in equity securities;

        a.      Notice of Substantial Equity Holder Status. Any person or entity who currently is or becomes a Substantial Equity Holder (as defined in paragraph (e) below) shall file with the Court, and serve upon the Debtors and Debtors' counsel, a notice of such status, in the form attached hereto as Exhibit 1A on or before the later of (A) ten (10) days after the effective date of the notice of entry of the Order or (B) ten (10) days after becoming a Substantial Equity Holder.

        b.      Acquisition of Equity Securities. At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in an increase in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity becoming a Substantial Equity Holder (a "Proposed Equity Acquisition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferee") shall file with the Court, and serve on the Debtors and Debtors' counsel, a Notice Of Intent to Purchase, Acquire or Otherwise Accumulate an Equity Interest (an "Equity Acquisition Notice"), in the form attached hereto as Exhibit 1B, specifically and in detail describing the intended transaction acquiring the Debtor's equity securities.

c.        Disposition of Equity Securities.  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including options to acquire stock, as defined below) that would result in a decrease in the amount of equity securities of the Debtors beneficially owned by a Substantial Equity Holder or that would result in a person or entity ceasing to be a Substantial Equity Holder (a "Proposed Equity Disposition Transaction"), such person, entity or Substantial Equity Holder (a "Proposed Equity Transferor") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Transfer an Equity Interest (an "Equity Disposition Notice"), in the form attached hereto as Exhibit 1C, specifically and in detail describing the intended transaction disposing of the Debtors' equity securities.

d.        Objection Procedures.  The Debtors shall have thirty (30) calendar days after actual receipt of an Equity Acquisition Notice or an Equity Disposition Notice, as the case may be, (the "Objection Deadline") to file with the Court and serve on a Proposed Equity Transferor or a Proposed Equity Transferee, as the case may be, an objection to any proposed transfer of equity securities of the Debtors described in any Equity Acquisition Notice or Equity Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize their NOLs or tax attributes as a result of an ownership change under Section 382 or Section 383 of the IRC or the Debtors' rights or benefits under their codeshare agreements (an "Objection").

(1)        If the Debtors file an Objection by the Objection Deadline, the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction will not be effective unless approved by a final and nonappealable order of this Court.

(2)        If the Debtors do not file an Objection by the Objection Deadline, or if the Debtors provide written authorization to the Proposed Equity Transferee or Proposed Equity Transferor approving the Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, prior to the Objection Deadline then such Proposed Equity Acquisition Transaction or the Proposed Equity Disposition Transaction, as the case may be, may proceed solely as specifically described in the Equity Acquisition Notice or the Equity Disposition Notice. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional thirty (30) day waiting period.

e.        Definitions.  For purposes of this Motion and the Order: (A) a "Substantial Equity Holder" is any person or entity that beneficially owns at least **7,008,689** shares (representing approximately 4% of all issued and outstanding shares on a fully diluted basis) of the stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors; (B) "beneficial ownership" of equity securities shall be determined in accordance

3

with applicable rules under section 382 and, thus, shall include direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire; and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable;

and it is further

ORDERED that effective as of the date of entry of this Order, the following procedure shall apply to trading in claims:

a.    Notice of Substantial Claimholder Status.  Any person or entity who currently is or becomes a Substantial Claimholder (as defined in paragraph (e) below) shall file with the Court, and serve upon the Debtors and Debtors' counsel, a notice of such status, in the form attached hereto as Exhibit 2A, on or before the later of (A) ten (10) days after the effective date of the notice of entry of the Order or (B) ten (10) days after becoming a Substantial Claimholder.

b.    Acquisition of Claims.  At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in an increase in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity becoming a Substantial Claimholder (a "Proposed Claims Acquisition Transaction"), such person, entity or Substantial Claimholder (a "Proposed Claims Transferee") shall file with the Court, and serve on the Debtors and Debtors' counsel, a Notice of Intent to Purchase, Acquire or Otherwise Accumulate a Claim (a "Claims Acquisition Notice"), in the form attached hereto as Exhibit 2B, specifically and in detail describing the intended acquisition of claims against the Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing requirements of Bankruptcy Rule 3001.

c.    Disposition of Claims.  At least thirty (30) calendar days prior to effectuating any transfer of claims that would result in a decrease in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity ceasing to be a Substantial Claimholder (a "Proposed Claims Disposition Transaction"), such person, entity or Substantial Claimholder (a "Proposed Claims Transferor") shall file with the Court, and serve on the Debtors and counsel to the Debtors, a Notice of Intent to Sell, Trade or Otherwise Dispose of a Claim (a "Claims Disposition Notice"), in the form attached hereto as Exhibit 2C, specifically and in detail describing the intended disposition of claims against the Debtors, regardless of whether such transfer would be subject to the filing, notice and hearing requirements of Bankruptcy Rule 3001.

d.    Objection Procedures.  The Debtors shall have thirty (30) calendar days after receipt of a Claims Acquisition Notice or Claims Disposition Notice to file with the

Court and serve on a Proposed Claims Transferor or Proposed Claims Transferee, as the case may be, an objection to any proposed transfer of claims described in a Claims Acquisition Notice or Claims Disposition Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize any of their NOLs or tax attributes after an ownership change under Section 382 or Section 383 of the IRC or the Debtors' rights or benefits under their codeshare agreements (an "Objection").

> (1)    If the Debtors file an Objection by the Objection Deadline, the Proposed Claims Acquisition Transaction or Proposed Claims Disposition Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

> (2)    If the Debtors do not file an Objection by the Objection Deadline, or if the Debtors provide written authorization to the Proposed Claims Transferee or Proposed Claims Transferor approving the Proposed Claims Acquisition Transaction or the Proposed Claims Disposition Transaction, as the case may be, prior to the Objection Deadline then such Proposed Claims Acquisition Transaction or Proposed Claims Disposition Transaction, as the case may be, may proceed solely as specifically set forth in a Claims Acquisition Notice or a Claims Disposition Notice. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional thirty (30) day waiting period.

     e.    <u>Definitions</u>.  For purposes of this Motion and the Order: (A) a "Substantial Claimholder" is any person or entity that beneficially owns (i) an aggregate principal amount of claims against the Debtors or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (ii) a lease or leases under which one or more of the Debtors are lessees and pursuant to which payments are or will become due, or (iii) any combination of (i) and (ii), in each case, in an amount equal to or exceeding $25,000,000; (B) "beneficial ownership" of claims shall be determined in accordance with applicable rules under section 382 of the IRC and, thus, shall include direct and indirect ownership (e.g., a holding company would be considered to beneficially own all claims owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire; and (C) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

     and it is further

ORDERED that any purchase, sale or other transfer of claims against, or equity securities in, the Debtors in violation of the procedures set forth herein shall be null and void and shall confer no rights on the transferee; and it is further

ORDERED that within three business days of the entry of this Interim Order, the Debtors shall serve a copy of the Interim Order and the Motion on (a) the Office of the United States Trustee for the Southern District of New York, (b) those creditors holding the five largest secured claims against the Debtors' estates, (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service, and (e) the Securities and Exchange Commission; and it is further

ORDERED that any objection (the "Objection") to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days after the date of the entry of this Interim Order (the "Objection Deadline"), be: (a) filed with the Court and (b) served upon and actually received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and Joshua M. Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official committee of unsecured creditors then appointed in these cases; and it is further

6

ORDERED that a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing; and it is further

ORDERED that if timely Objections are received there shall be a hearing to consider such timely Objections to the Motion; and it is further

ORDERED that if no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Interim Order, which Order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the commencement of these chapter 11 cases; and it is further

ORDERED that following entry of the Order, the Debtors will send a notice in substantially the form attached as <u>Exhibit 3</u> to the Motion (the "<u>Notice</u>") to: (i) The Office Of The United States Trustee for the Southern District of New York; (ii) any committee appointed under section 1102 of the Bankruptcy Code; (iii) all known creditors and shareholders, including the indenture trustees or transfer agents for any class of stock of the Debtors or any bonds or debentures of the Debtors; and (iv) all parties who file notices of transfers of claims under Bankruptcy Rule 3001(e)(i); and additionally, the Debtors will publish the Notice in national editions of *The Wall Street Journal, The New York Times*, and in the *Financial Times* ; and posted on the following websites:    http://chapter11.epiqsystems.com/mesa and www.mesa-air.com/restructuring.  No further notice of entry of this Order need be served by the Debtors; and it is further

7

ORDERED that upon receipt of such Notice, any indenture trustee(s) or transfer agent(s) for any bonds or debentures of the Debtors or any stock of the Debtors will be required, on at least a quarterly basis, to send such Notice to all holders of such bonds, debentures or stock registered with such indenture trustee or transfer agent.  Any such registered holder must, in turn, provide such Notice to any holder for whose account such registered holder holds such bonds, debentures or stock, and so on down the chain of ownership.  Additionally, any person or entity or broker or agent acting on their behalf who (i) sells claims against the Debtors in the aggregate principal amount of at least $5,000,000 or (ii) sells 1,401,737 shares of stock (as such term is used for purposes of the Section 382 ownership change test) of the Debtors to another person or entity must provide a copy of the Order authorizing such procedures to such purchaser or any broker or agent acting on their behalf of such claims or stock; and it is further

ORDERED that a final hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on _____, 2010 at _____ and any objections to the entry of such order shall be in writing, filed with the Court and served upon (i) the attorneys for the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis) (unless a statutory committee is appointed, in which case such objection shall be filed on counsel to the committee), (iv) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (v) the Internal Revenue Service, (vi) the Securities and Exchange Commission, and (vi) the Banks, in each case so as to be received no later than ten (10) days prior to the Final Hearing.

8

ORDERED that the requirements set forth in this Order are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate and other laws, and do not excuse compliance therewith; and it is further

ORDERED that any of the Debtors may waive in writing any and all restrictions, stays and notification procedures contained in this Order; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims rights or disputes arising from or related to the implementation of this Order; and it is further

ORDERED that service of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

Dated:  January  __, 2010
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

56772-001\DOCS_NY:19659.4