PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362, 363(b) AND 553
OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO (A) APPLY PREPETITION PAYMENTS TO
PREPETITION AND POSTPETITION OBLIGATIONS UNDER FUEL SUPPLY
CONTRACTS, (B) HONOR OTHER FUEL SUPPLY, STORAGE FUEL CONTRACTS,
INTO-PLANE SERVICE CONTRACTS AND OTHER FUEL SERVICE
ARRANGEMENTS, (C) CONTINUE TO PARTICIPATE IN FUEL CONSORTIA AND
(II) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corporation (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.      On the date hereof (the "Petition Date"), the Debtors each commenced with this

Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  The Debtors are authorized to continue to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

2.      The Debtors have requested authorization to consolidate their chapter 11 cases for

procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Mesa's Business

3.      Mesa is a holding company whose principal direct and indirect subsidiaries

operate as regional air carriers providing scheduled passenger and airfreight service.  As of the

Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the

District of Columbia, Canada, and Mexico.  The Debtors operate a fleet of approximately 130

aircraft with approximately 700 daily system departures.  The Debtors employ approximately

3,400 full and part-time employees.

4.      Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft

under the names of regional carriers of certain major airlines pursuant to code-share agreements.

Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements

with US Airways, Inc., (ii) as United Express under a code-share agreement with United

Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*").  Freedom Airlines, Inc.

operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air

Lines, Inc.  The remaining Debtors operate businesses, or own interests in businesses, that

facilitate or enhance the Debtors' regional or independent air carrier services.  Nilchi, Inc. and

Patar, Inc. hold investments.

5.      As of September 30, 2009, the Debtors had consolidated assets[2] of approximately

$975 million, and consolidated liabilities of approximately $869 million.  The Debtors'

consolidated 2009 revenues were approximately $968 million.  Approximately 96% of the

Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were

derived from operations associated with code-share agreements.  The Debtors' remaining

passenger revenues are generated from their independent *go!* operations in Hawaii.

6.      A detailed description of the Debtors' businesses, capital structure, and the

circumstances that precipitated the commencement of these chapter 11 cases is set forth in the

*Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy*

*Rule 1007-2* (the "Lotz Declaration"), filed contemporaneously herewith.

### Jurisdiction

7.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

8.      The Debtors require a ready supply of fuel for their continued operations.  The

only reliable way to assure this fuel supply is for the Debtors to be authorized to continue to

perform on an uninterrupted basis under existing domestic and international fuel purchase,

distribution and storage agreements and arrangements.  Not only are these complex relationships

essential to the Debtors' integrated efforts to manage fuel supply and costs, but any disruption in

these relationships could leave the Debtors' passengers, as well as their aircraft and employees,

---

[2]  At book value.

stranded.  Without fuel, the Debtors cannot fly, and this result would be devastating to the

Debtors' business.

9.      Consequently, by this motion (the "Motion"), the Debtors seek entry of interim

and final orders, in the form attached hereto as Exhibit A (the "Interim Order"), (a) authorizing

(but not requiring) the Debtors to pay any pre-petition outstanding obligations and continue

honoring, performing and exercising their rights and obligations (whether pre-petition or post-

petition): (i) to the Prepaid Fuel Suppliers, (ii) to the Other Fuel Suppliers, (iii) to the Pipeline

and Storage Providers, (iv) under the Other Fuel Service Arrangements, (v) to the Fuel Consortia

and (vi) to the Into-Plane Service Providers (each as defined below) and (b) authorizing the

Prepaid Fuel Suppliers and the Pipeline and Storage Providers, to whom payments were made

pre-petition (or that have issued or hold credits for the benefit of the Debtors), to apply the

prepayments or credits to jet fuel and storage facility usage occurring before or after the Petition

Date.  The Debtors also request that, to the extent required, the automatic stay under section 362

of the Bankruptcy Code be modified to allow for the payments received by the Prepaid Fuel

Suppliers or Pipeline and Storage Providers or credits existing before the Petition Date to be

applied to fuel liftings and storage facility usage occurring pre-petition or post-petition, and that

the Prepaid Fuel Suppliers and the Pipeline and Storage Providers be permitted to exercise any

such setoff rights pursuant to section 553 of the Bankruptcy Code as may be necessary to ensure

the application of fuel or storage prepayments or credits.

10.     The Debtors also request that all applicable banks and other financial institutions

be authorized to receive, process, honor and pay all checks presented for payment of and to

honor all fund transfer requests made by the Debtors related to the claims that the Debtors

request authority to pay in this Motion, regardless of whether the checks were presented or fund

transfer requests were submitted before or after the Petition Date, *provided, however,* that:
(a) funds are available in the Debtors' accounts to cover the checks and fund transfers and (b) all
the banks and other financial institutions are authorized to rely on the Debtors' designation of
any particular check as approved by the Court's order.

11.      The benefits to be obtained from this relief are substantial, while the cost to these
estates of doing so is minimal.  There are only a limited number of relationships by which the
Debtors conduct fuel acquisition, delivery and storage through payment in arrears.  These credit
relationships amount to only approximately 5% of the total amount spent on fuel for the Debtors.
This is a small percentage in relation to the Debtors' overall fuel costs and *de minimis* in relation
to their overall operating expenses.  Moreover, nearly all of the Debtors' fuel-related costs are
ultimately reimbursed or otherwise borne by the Debtors' code-share partners.  As a result, the
impact of any payments of fuel-related pre-petition claims on other pre-petition creditors in these
cases is necessarily small.

### The Debtors' Fuel Relationships

**A.      Overview of the Debtors' Fuel Relationships**

12.      The Debtors currently require approximately 9 million gallons of jet fuel each
month, excluding the fuel requirements for their Delta Air Lines, Inc. ("Delta") code-share
operation for which the fuel acquisition and delivery is fully controlled by Delta.  The Debtors
obtain fuel directly from several third-party fuel suppliers, maintain fuel inventory near the
airports utilized by their fleet (each an "Airport" and collectively, the "Airports"), and arrange
for delivery of fuel from suppliers to their storage facilities and to and into their aircraft.

13.      Pursuant to the terms of the Debtors' code-share agreements with various major
airlines, approximately 97% of their fuel-related costs are ultimately borne by their code-share
partners.  Nevertheless, with respect to substantial amounts of fuel and related services, the

Debtors must purchase the fuel or incur the fuel-related expense directly in the first instance and receive reimbursement only afterwards from their code-share partners.  Approximately half of these total fuel-related costs are paid in cash by the Debtors, either in advance or on account.  The remaining costs, although recorded by the Debtors, are paid by their code-share partners and thus are not at issue in this Motion.

## B.      Fuel Acquisition

### *Prepaid Fuel Suppliers*

14.      Before the filing of these chapter 11 cases, and in the ordinary course of business, the Debtors purchased aircraft fuel from fuel suppliers pursuant to fuel supply contracts or fuel purchase orders.  For a number of reasons, including current economic conditions, the fuel supplied by these arrangements may not be readily replaced on similar terms and conditions.  The majority of the Debtors' direct fuel purchases, including fuel purchased abroad in Canada and Mexico, are made by advance payments via wire transfer to approximately fifteen (15) suppliers (the "Prepaid Fuel Suppliers") on a weekly basis in the approximate amount of between $1 million to $1.3 million.  Accordingly, the Debtors expect to make advance payments of approximately $4 million to $5 million to the Prepaid Fuel Suppliers for the month following the Petition Date.  The fuel supplied by the Prepaid Fuel Suppliers cannot be readily replaced from other suppliers on similar terms and conditions.

### *Fuel Suppliers Paid In Arrears*

15.      The Debtors' remaining fuel purchases are made on account and paid in arrears to certain other fuel suppliers (the "Other Fuel Suppliers" and, together with the Prepaid Fuel Suppliers, the "Fuel Suppliers").  Payments are generally made within a specified time after receipt by the Debtors of invoices from the Other Fuel Suppliers.  As it is difficult, or impossible,

to calculate the actual amount owed to the Other Fuel Suppliers as of the Petition Date, the

Debtors seek the authority to pay all pre-petition obligations owed to the Other Fuel Suppliers.

**C.    Fuel Delivery and Storage**

16.    The Debtors effectuate the delivery of fuel to Airports in several ways.  In certain

cases, fuel is delivered directly to the Airport.  To accomplish direct delivery, from time-to-time,

the Debtors may utilize pipelines to transport fuel from the point of purchase to various storage

facilities pursuant to pipeline or transport agreements (the "Pipeline Agreements") with certain

common carrier pipeline providers (the "Pipeline Providers").

17.    The Debtors also use fuel storage facilities located at or near Airports.  In these

cases, the Debtors may enter into storage agreements (the "Storage Agreements," and together

with the Pipeline Agreements, the "Pipeline and Storage Agreements") with certain storage

facility providers (the "Storage Providers," and together with the Pipeline Providers, the

"Pipeline and Storage Providers").  The Pipeline and Storage Agreements generally have multi-

year terms and are automatically renewable.  Storage services under Pipeline and Storage

Agreements are generally prepaid on a weekly basis in the amount of approximately $7,000.  As

of the Petition Date, the Debtors estimate that they owe approximately $66,000 in the aggregate

to Pipeline and Storage Providers for services provided pre-petition.

18.    In addition, the Debtors utilize into-plane fueling service contracts (the "Into-

Plane Service Contracts") to get fuel to airplanes.  Under these contracts, the service providers

deliver "airport fuel" (the "Into-Plane Service Providers") from the Debtors' storage facilities

located at or near airport terminals (by pipeline or vehicle) to and into the Debtors' aircraft.  The

Into-Plane Service Contracts generally have yearly terms that do not necessarily renew

automatically.  Under approximately 90% of these arrangements, the Debtors pay on account

rather than prepay.  In some instances, into-plane service may be arranged and compensated

indirectly through Fuel Suppliers or Storage Providers.  As of the Petition Date, the Debtors

estimate that they owe approximately $700,000 in the aggregate for into-plane services provided

pre-petition, and have an aggregate prepaid credit of less than $10,000.  Without the continued

performance of the Pipeline and Storage Agreements, the Debtors will be unable to transport jet

fuel from the point of purchase to the Airports.

**D.      Fuel Consortia and Other Arrangements**

19.      The Debtors have ownership interests in approximately four (4) fuel consortia or

fuel committee cost-sharing cooperatives (collectively, the "Fuel Consortia"), which lease,

operate and manage fuel storage facilities, located at or near Airports, in which participating

carriers and fuel suppliers store their fuel in one or more commingled fuel tanks.  Fuel Consortia

are managed by fuel facility service providers that are responsible for fuel system operations and

maintenance, including inventory accounting.  The Debtors can generally withdraw stored fuel at

a Fuel Consortia at any time.  Fuel Consortia members pay a fee to the fuel facility service

providers for their services in connection with the Fuel Consortia.

20.      Fuel Consortia are established by airlines to minimize and share the cost of local

fuel storage.  Certain of these consortia are organized as separate corporations of which the

Debtors are an equal-share owner with the other members.  The third-party vendors that operate

the consortia are paid by the members of the consortia for services that include maintenance and

operation of the system and all necessary accounting functions required to allocate costs to

individual users.  The Debtors' participation in these arrangements results in significant cost

savings that would be unattainable if they could not make all payments as due and generally

maintain existing relationships in the ordinary course of business.  As of the Petition Date, the

Debtors estimate that they owe approximately $157,000 in the aggregate to Fuel Consortia for

services provided pre-petition, plus any amounts incurred for the month of December 2009,

which have not yet been billed as of the Petition Date and will be due in mid-February 2010.
The Fuel Consortia may attempt to cease providing post-petition services to the Debtors if the
Debtors owe pre-petition amounts to the Fuel Consortia, which would be devastating.
Accordingly, in order to ensure the continued supply of fuel post-petition and minimize the risk
that the Fuel Consortia will discontinue post-petition services to the Debtors, and because it is
difficult, or impossible, to calculate the actual amount owed to the Fuel Consortia as of the
Petition Date, the Debtors seek the authority to pay all pre-petition obligations owed to the Fuel
Consortia.

21.    Finally, the Debtors participate in certain other arrangements (the "Other Fuel
Service Arrangements") by which numerous third parties provide a variety of services in
connection with the purchase, sale and movement of fuel, including airport authorities, facilities,
and fuel transportation, brokerage and related services.  These services are all necessary to the
Debtors' continued ability to transport fuel and to execute trading purchases or sales as necessary
and maintain their business in the ordinary course.  Amounts paid by the Debtors under the Other
Fuel Service Arrangements are included in invoices provided by the Pipeline and Storage
Providers and Into-Plane Service Providers.

**The Debtors Should Be Authorized To: (i) Apply Pre-petition Payments To
Pre-petition and Post-petition Obligations Under Fuel Supply Contracts; (ii) Honor
Other Fuel Supply and Storage Fuel Contracts, Into-Plane Service Contracts and
Other Fuel Service Arrangements; and (iii) Continue to Participate In Fuel Consortia**

22.    In many instances, the Prepaid Fuel Suppliers' or Storage Providers' application
of pre-petition payments to pre-petition and post-petition fuel supply obligations or storage
facility usage might constitute recoupments and therefore not violate the automatic stay extant
under section 362 of the Bankruptcy Code.  Out of abundance of caution and to protect these
critical relationships, the Debtors request authority to permit all of their Prepaid Fuel Suppliers

and Pipeline and Storage Providers to apply pre-petition payments to any amounts outstanding. Courts have granted similar relief in other airline reorganization cases. *See*, *e.g.*, *In re Frontier Airlines Holdings, Inc.,* Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. April 11, 2008) (authorizing fuel suppliers to offset pre-petition advance payments against post-petition fuel supply obligations); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) (same); *In re US Airways Group, Inc., et al.*, Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004) (same); *In re UAL Corp., et al.*, Case no. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) (same).

23.     The Court also has the authority, pursuant to its equitable powers codified in section 105(a) and under section 363(b) of the Bankruptcy Code, to allow the Debtors to continue honoring, performing, or exercising their rights and obligations (whether arising pre-petition or post-petition) under contracts or agreements (whether or not memorialized in a formal, written contract) with: (i) the Other Fuel suppliers, (ii) the Prepaid Fuel Suppliers, (iii) the Pipeline and Storage Providers not paid in advance, (iv) the Fuel Consortia, (v) the Into-Plane Service Providers and (vi) the Other Fuel Service Arrangements.

**Basis for Relief Requested**

24.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr.

E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  The uninterrupted performance of the

Debtors' related obligations is imperative to their ongoing operation and viability.

25.    The "necessity of payment" doctrine supports the relief requested herein. This

doctrine recognizes the existence of the judicial power to authorize a debtor in a reorganization

case to pay pre-petition claims where the payment is essential to the continued operation of the

debtor.  *See Ionosphere Clubs*, 98 B.R. at 176; *see also In re Chateaugay Corp.*, 80 B.R. 279,

(S.D.N.Y. 1987).  This doctrine is consistent with the paramount goal of chapter 11 –

"facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R.

at 176.

26.    Similar relief has been granted in other large chapter 11 cases.  *See*, *e.g.*, *In re

Worldcom, Inc., et al.*, Case No 02-13533 (ALG) (Bankr. S.D.N.Y. 2002); *In re Enron Corp., et

al.*, Case No. 01-16034 (AJG) Bankr. S.D.N.Y. 2001); *In re AI Realty Marketing of New York,

Inc.*, Case Nos. 01-40252 through 01-40290 (AJG) (Bankr. S.D.N.Y. 2001).

27.    Moreover, in recognition of the large and essential role played by a distinct group

of fuel suppliers in the airline industry, courts have granted similar relief in other major airline

reorganization cases.  *See*, *e.g.*, *In re Frontier Airlines Holdings, Inc., et al.,* Case No. 08-11298

(RDD) (Bankr. S.D.N.Y. April 11, 2008); *In re Delta Air Lines, Inc., et al.,* Case No. 05-17923

(PCB) (Bankr. S.D.N.Y. Sept. 16, 2005); *In re Northwest Airlines Corporation, et al.*, Case No.

05-17230 (ALG) (Bankr. S.D.N.Y. Sept. 15, 2005); *In re US Airways Group, Inc., et al.*, Case

No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004); *In re Hawaiian Airlines, Inc.*, Case No.

03-00817 (RJF) (Bankr. D. Haw. Mar. 21, 2003); *In re UAL Corp., et al.*, Case No. 02-48191

(ERW) (Bankr. N.D. Ill. Dec. 9, 2002); *In re US Airways Group, Inc., et al.*, Case No. 02-83984

(SSM) (Bankr. E.D. Va. 2002).

28.    Additionally, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that standard for determining a section 363(b) motion is "good business reason").

29.    The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct form a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as

long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

30.    The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment and is justified under section 363(b), as well as under section 105(a) of the Bankruptcy Code.  It is also in the best interest of the Debtors' estates and creditors. Absent such payments, the value of the Debtors' estates will suffer, possibly precipitously. Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

31.    The Debtors' agreements with Other Fuel Suppliers, the Prepaid Fuel Suppliers, the Pipeline and Storage Providers, the Fuel Consortia, the Into-Plane Service Providers and the Debtors' Other Fuel Service Arrangements are critical to their reorganization efforts without these arrangements, the Debtors would have inadequate access to fuel and no infrastructure through which to distribute it.  Moreover, the Debtors believe they are authorized to continue participating in the Fuel Consortia and the other relationships described herein in the ordinary course, without further order of this Court, but request this relief nonetheless in an abundance of caution.

32.    Nothing in this Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under section 365 of the Bankruptcy Code or to preclude the Debtors from contesting or objecting to the claims of any party.

## Necessity for Immediate Relief

33.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not permitted to maintain their fuel supply relationships

in their current forms, it would cause immediate and irreparable harm by endangering the

Debtors' ability to fly, which is necessary for their operations.  Accordingly, the interim relief

requested herein is consistent with Bankruptcy Rule 6003.

### Interim Order

34.    The Debtors seek the relief requested in this Motion in the form of the interim

order (the "Interim Order") attached hereto as Exhibit A.  Within three business days of the entry

of the Interim Order, the Debtors will serve a copy of the Interim Order and this Motion on (i)

the Office of the United States Trustee for the Southern District of New York, (ii) those creditors

holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated

basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the

Debtors' estates, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission,

(vi) the Pipeline and Storage Providers, (vii) the Into-Plane Service Providers, and (viii) the Fuel

Consortia members.

35.    The deadline to file an objection ("Objection") to the Motion shall be 4:00 p.m.

(prevailing Eastern Time) on the date that is 10 days after the date of the entry of the Interim

Order (the "Objection Deadline").  An Objection shall be considered timely only if, on or prior to

the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually received by

(i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York

10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California

Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and Joshua M.

Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New

York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official committee of unsecured

creditors then appointed in these cases.

36.     Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing.

37.     If no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order granting the relief requested herein, which order shall be submitted and may be entered with no hearing and no further notice or opportunity to be heard afforded to any party.  If an Objection is timely filed, a hearing will be held at a date and time to be established by the Court.

38.     The foregoing notice procedures satisfy Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.  *See*, *e.g.*, *In re Drexel Burnham Lambert*, 160 B.R. 729, 734 (S.D.N.Y. 1993) (an opportunity to present objections satisfies due process); *In re Colorado Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses.

39.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

40.     Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Notice

41.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors

have served notice of this motion on (i) the Office of the United States Trustee for the Southern

District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against

the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five

(5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, (v) the

Securities and Exchange Commission, (vi) the Pipeline and Storage Providers, (vii) the Into-

Plane Service Providers, and (viii) the Fuel Consortia members.

## No Previous Request

42.     No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as it deems just and proper.

Dated:    January 5, 2010
          New York, New York          PACHULSKI STANG ZIEHL & JONES LLP


                                      /s/ Maria A. Bove
                                      Richard M Pachulski (*pro hac vice* pending)
                                      Laura Davis Jones (*pro hac vice* pending)
                                      Debra I. Grassgreen (*pro hac vice* pending)
                                      Maria A. Bove
                                      John W. Lucas

                                      780 Third Avenue, 36th Floor
                                      New York, New York 10017
                                      Telephone:  (212) 561-7700
                                      Facsimile:  (212) 561-7777

                                      Proposed Attorneys for Debtors
                                      and Debtors in Possession

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**INTERIM ORDER PURSUANT TO SECTIONS 105(A), 362, 363(B) AND
553 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE
DEBTORS TO (A) APPLY PREPETITION PAYMENTS TO
PREPETITION AND POSTPETITION OBLIGATIONS UNDER
FUEL SUPPLY CONTRACTS, (B) HONOR OTHER FUEL SUPPLY,
STORAGE FUEL CONTRACTS, INTO-PLANE
SERVICE CONTRACTS AND OTHER FUEL SERVICE
ARRANGEMENTS, (C) CONTINUE TO PARTICIPATE IN
FUEL CONSORTIA AND (II) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion dated January 5, 2010, (the "Motion") of Mesa Air Group, Inc. and its

affiliated debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections

105(a), 362, 363(b) and 553 of title 11 of the United States Code (the "Bankruptcy Code"),

seeking an order (a) authorizing the Debtors to (i) apply prepetition payments to prepetition and

postpetition obligations under fuel supply contracts, (ii) honor other fuel supply, storage fuel

contracts, into-plane service contracts and other fuel service arrangements, (iii) continue to

participate in fuel consortia and (b) authorizing financial institutions to honor and process related

checks and transfers, as more fully described in the Motion; and upon consideration of the

Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy

Rule 1007-2; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corporation (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

Court Judges of the District Court for the Southern District of New York, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the requested relief being a core

proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided to (a) the Office of the United States Trustee,

(b) those creditors holding the five largest secured claims against the Debtors estates, (c) those

creditors holding the thirty largest unsecured claims against the Debtors estates (on a

consolidated basis), (d) the Internal Revenue Service, (e) the Securities and Exchange

Commission, (f) the Pipeline and Storage Providers, (g) the Into-Plane Service Providers, and

(h) the Fuel Consortia members, and it appearing that no other or further notice need be

provided; and the relief requested in the Motion being in the best interests of the Debtors and

their estates and creditors; and the Court having reviewed the Motion and having held a hearing

with appearances of parties in interest noted in the transcript thereof (the "Hearing"); and the

Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and the Court having determined that

immediate relief is necessary to avoid irreparable harm; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is hereby granted and approved on an

interim basis to the extent provided herein; provided that, until the 22nd day after the Petition

Date, the relief requested by the Debtors is granted only to the extent that it is necessary to avoid

irreparable harm; and it is further

ORDERED that the Prepaid Fuel Suppliers and the Storage Providers and the Into-Plane

Service Providers are authorized, pursuant to sections 105(a), 362, 363(b) and 553 of the

Bankruptcy Code, to apply the Debtors prepetition prepayments or credits held for the benefit of

the Debtors to jet fuel liftings, storage and facility usage, and into-plane services occurring

before or after the Petition Date; and it is further

     ORDERED that the Debtors are authorized, but not directed, to pay any prepetition

outstanding obligations: (i) to the Prepaid Fuel Suppliers, (ii) to the Other Fuel Suppliers, (iii) to

the Storage Providers, (iv) under the Other Fuel Service Arrangements, (v) to the Fuel Consortia

and (vi) to the Into-Plane Service Providers; and it is further

     ORDERED that the Debtors are authorized, but not directed, to continue to honor,

perform and exercise their rights and obligations (whether prepetition or postpetition): (i) to the

Prepaid Fuel Suppliers, (ii) to the Other Fuel Suppliers, (iii) to the Storage Providers, (iv) under

the Other Fuel Service Arrangements, (v) to the Fuel Consortia and (vi) under the Into-Plane

Service Contracts, provided, however, that such honoring, performing, or exercising of such

rights and obligations shall not give rise to administrative claims solely as a result of the entry of

this Order or constitute the assumption of any contract, nor preclude the Debtors from contesting

or objecting to the claim of any party; and it is further

     ORDERED that, to the extent required, the automatic stay under section 362 of the

Bankruptcy Code is hereby modified to allow for the payments received by the Prepaid Fuel

Suppliers, the Storage Providers and Into-Plane Service Providers or credits existing before the

Petition Date to be applied to fuel liftings, storage facility usage, and into-plane services

occurring prepetition or postpetition, and that the Prepaid Fuel Suppliers, the Storage Providers,

and the Into-Plane Service Providers are permitted to exercise any such setoff rights pursuant to

section 553 of the Bankruptcy Code as may be necessary to ensure the application of fuel or

storage prepayments or credits; and it is further

ORDERED that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Motion are authorized to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and are authorized to rely on the Debtors designation of any particular check as approved by this Order; and it is further

ORDERED that notwithstanding the possible applicability of rules 6004(h), 7062 or 9014 of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that within three business days of the entry of this interim order (the "Interim Order"), the Debtors shall serve a copy of the Interim Order and the Motion on (a) the Office of the United States Trustee for the Southern District of New York, (b) those creditors holding the five largest secured claims against the Debtors' estates, (c) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) the Pipeline and Storage Providers, (g) the Into-Plane Service Providers, and (h) the Fuel Consortia members; and it is further

ORDERED that any objection (the "Objection") to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days after the date of the entry of this Interim Order (the "Objection Deadline"), be: (a) filed with the Court and (b) served upon and actually received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California

94111, Attn: Debra I. Grassgreen and John W. Lucas and Pachulski Stang Ziehl & Jones LLP,

780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Maria A. Bove, and (iii) the

attorneys for any official committee of unsecured creditors then appointed in these cases; and it

is further

ORDERED that a reply to an Objection may be filed with the Court and served on or

before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before

the date of the applicable hearing; and it is further

ORDERED that if timely Objections are received there shall be a hearing to consider

such timely Objections to the Motion; and it is further

ORDERED that if no Objections are timely filed and served as set forth herein, the

Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially

in the form of this Interim Order, which Order shall be submitted and may be entered with no

further notice or opportunity to be heard afforded any party, and the Motion shall be approved

nunc pro tunc to the date of the commencement of these chapter 11 cases; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and

sufficient notice of the Motion.

Dated: [ENTER DATE]
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE