PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski (*pro hac vice* pending)
Laura Davis Jones (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (   ) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362(d), 363(b),
AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001,
6003, AND 6004 FOR INTERIM AND FINAL ORDERS FOR AUTHORIZATION TO
(I) CONTINUE THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR
LIABILITY, PRODUCT, PROPERTY, AND OTHER INSURANCE PROGRAMS,
(II) PAY, IN THEIR SOLE DISCRETION, ALL PREPETITION OBLIGATIONS
RELATING TO THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR
LIABILITY, PRODUCT, PROPERTY, AND OTHER INSURANCE PROGRAMS,
(III) MODIFY THE AUTOMATIC STAY FOR THE SOLE PURPOSE OF
PERMITTING EMPLOYEES TO PROCEED WITH WORKERS' COMPENSATION
CLAIMS, (IV) PERMIT FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS, AND
(V) SCHEDULING A FINAL HEARING**

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corporation (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("<u>Mesa</u>") and certain of its direct and indirect subsidiaries in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectively represent as follows:

**<u>Background</u>**

1.      On the date hereof (the "<u>Petition Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors have requested authorization to consolidate their chapter 11 cases for procedural purposes only so that they may be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**<u>Mesa's Business</u>**

3.      Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service.  As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico.  The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures.  The Debtors employ approximately 3,400 full and part-time employees.

4.      Mesa Airlines, Inc. ("<u>Mesa Airlines</u>") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements.  Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United

Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*").  Freedom Airlines, Inc.

operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air

Lines, Inc.  The remaining Debtors operate businesses, or own interests in businesses, that

facilitate or enhance the Debtors' regional or independent air carrier services.  Nilchi, Inc. and

Patar, Inc. hold investments.

5.    As of September 30, 2009, the Debtors had consolidated assets[2] of approximately

$975 million, and consolidated liabilities of approximately $869 million.  The Debtors'

consolidated 2009 revenues were approximately $968 million.  Approximately 96% of the

Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were

derived from operations associated with code-share agreements.  The Debtors' remaining

passenger revenues are generated from their independent *go!* operations in Hawaii.

6.    A detailed description of the Debtors' businesses, capital structure, and the

circumstances that precipitated the commencement of these chapter 11 cases is set forth in the

*Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy

Rule 1007-2* (the "Lotz Declaration"), filed contemporaneously herewith.

## Jurisdiction

7.    This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.    In connection with the operation of their businesses, the Debtors maintain certain

workers' compensation programs (the "Workers' Compensation Programs") and various

liability, casualty, property, and other insurance programs and policies (together with the

Workers' Compensation Programs, the ("Insurance Programs") through several different

insurance carriers (the "Insurance Carriers").  Annexed hereto as Exhibit A, is a list of each of

the Insurance Programs that describes the type of coverage, the insured entity, the limits and

deductibles under the applicable policies, the coverage period, the insurance broker (if

applicable), and the aggregate annual premium due thereuder.[3]

9.      By this Motion, the Debtors seek authorization on an interim basis, pursuant to

sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001,

6003, and 6004, to (i) continue their Insurance Programs on an uninterrupted basis, (ii) pay, in

the Debtors' discretion, the undisputed prepetition obligations thereunder (the "Insurance

Obligations"), (iii) modify the automatic stay solely and for the limited purpose of permitting

employees with claims under the Workers' Compensation Programs to proceed with their valid

claims in accordance with such programs in the appropriate judicial or administrative forum,

(iv) permit banks and other financial institutions (the "Banks") to honor any checks or transfers

made against, but not limited to, the disbursement accounts (the "Disbursement Accounts") set

forth in Exhibit B annexed hereto, and (v) schedule a hearing (the "Final Hearing") to consider

the relief herein on a permanent basis.

### Workers' Compensation Programs

10.      The laws of the various states in which the Debtors operate require the Debtors to

maintain workers' compensation policies and programs to provide certain of their employees (the

"Employees") with workers' compensation benefits for claims arising from or related to their

---

[2] At book value.

[3] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits including health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion filed contemporaneously herewith pertaining to the Debtors' employee wage policies and benefit programs.

employment with the Debtors.  The Debtors maintain workers' compensation coverage through a fully-insured, third-party insurance program in each of the states in which they operate.

## A.    **The Chartis Policy**

11.    The Debtors' current workers' compensation benefits are provided by Chartis, Inc. ("Chartis") (shown as AIG on Exhibit A) pursuant to an annual policy that commences January 1, 2010 and expires December 31, 2010 (the "Chartis Policy").[4]  The Chartis Policy is applicable to the Debtors' operations on a national basis.

12.    Under the Chartis Policy, Chartis acts as a third party administrator and provides guaranteed cost insurance coverage at the statutorily-required level for each state in which the Debtors operate.  Under the Chartis Policy, the Debtors pay a fixed annual premium and transfer 100% of their risk to Chartis.  The annual cost of the 2010 Chartis Policy is fixed at approximately $3.1 million.  The Debtors pay this amount on an accelerated schedule by making an initial payment of approximately $800,000 followed by nine equal payments of approximately $258,000.

13.    As of the Petition Date, there are no outstanding prepetition premiums relating to the Chartis Policy.

## B.    **The Ace Policy**

14.    Commencing December 31, 2004 through December 31, 2008, the Debtors' Workers' Compensation Programs were provided through insurance policies (the "Ace Policy") administered by Ace Indemnity Insurance Company of North America ("Ace").  The Ace Policy is a self-insured policy that requires the Debtors to pay up to $500,000 per occurrence, per employee.  Under the Ace Policy, the Debtors are billed monthly for claims that have matured

---

[4] Chartis (AIG) also provided workers compensation coverage for 2009 on a guaranteed claim basis.  Thus, the Debtors do not have any outstanding workers compensation claims for 2009.

and are liable to the extent that the aggregate amount does not exceed the cap.  The Debtors maintain a letter of credit to secure the obligations under the Ace Policy in the amount of $5.5 million.

15.    There are currently approximately 39 workers' compensation claims under the Ace Policy pending against the Debtors for which the Debtors estimate the total liability to be $2.5 million.  However, as of the Petition Date, the fixed and liquidated prepetition claims relating to the Ace Policy are approximately $75,000.  These claims are due and payable during the second week of January.  The Debtors expect that at some time subsequent to the Petition Date, Ace may have additional fixed and liquidated claims for periods prior to the Petition Date. On a historical basis, the average monthly claims under the Ace Policy have been approximately $75,000 to $100,000 and such claims are expected to decrease as the Ace Policies age.

16.    The Debtors believe that payment of the claims arising under the Ace Policy is essential to the continued operation of the Debtors' businesses.  In addition, if such claims are not paid when they become due, Ace has the right, subject to the terms of the applicable letter of credit, to satisfy such claims from the $5.5 million letter of credit securing the Debtors' payment obligations.  The Debtors believe that the payment of the claims arising under the Ace Policies benefits the estates and creditors because the potential exposure is far less than the value of the letter of credit securing the Debtors' payment obligations.  As a result, the Debtors request authority to pay, in their discretion, any and all undisputed amounts due and owing with respect to any the Ace Policy as they come due in the ordinary course of these chapter 11 cases.  The Debtors are seeking interim authorization to pay such claims because they are generally due the middle of each month.

**C.    Limited Modification of the Automatic Stay**
**To The Extent It Affects Valid Workers' Compensation Claims**

17.    Section 362(a) of the Bankruptcy Code, operates to stay the commencement or

continuation, including the issuance or employment of process, of a judicial, administrative, or

other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title, or to recover a claim against the debtor that arose

before the commencement of the case under this title.  11 U.S.C. § 362(a)(1).  Section 362,

however, permits a debtor or other parties in interest to request a modification or termination of

the automatic stay for "cause."  *Id.* § 362(d)(1).

18.    To the extent the Debtors' employees hold valid workers' compensation claims,

the Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit these

employees to proceed with their claims in the appropriate judicial or administrative forum.  The

Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors'

employees from proceeding with their claims could have a detrimental effect on the financial

well-being and morale of such employees and lead to their departure.  Such departures could

cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

19.    To this end, and solely with respect to workers' compensation claims covered

under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay

solely as it relates to valid workers' compensation claims; provided, that such claims are pursued

in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the

proceeds from the applicable policy.  Any claims relating to any of the other Insurance Programs

will remain subject to the automatic stay.  To effectuate the aforementioned modification of the

automatic stay, the Debtors request that the Court waive the stay of judgment under Bankruptcy

Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

20.    Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims.

### Liability, Casualty, and Property Insurance Programs

21.    In connection with the operation of the Debtors' businesses, the Debtors maintain various liability, casualty, property and other insurance, reinsurance and risk control programs providing coverage for, among other things, general liability, passenger liability, property damage, product liability, aircraft loss or damage, baggage and cargo liability, directors and officers liability, aviation and hull liability, automotive liability, crime, and war risk (collectively, the "Liability, Casualty, and Property Insurance Programs").  The Liability, Casualty, and Property Insurance Programs are essential to the preservation of the Debtors' businesses, property and assets, and, in many cases such coverage is required by various regulations, laws, and contracts that govern the Debtors' business conduct.

22.    The Debtors' Liability, Casualty, and Property Insurance Programs are insured through two primary sources: (i) policies purchased from third party carriers (the "Third Party Insurance Policies") and (ii) reinsurance provided by the Debtors' wholly-owned captive insurance company subsidiary, MAGI Insurance, Ltd.[5] (the "Captive Insurance Company").

### D.    The Third Party Insurance Policies

23.    The Third Party Insurance Policies are maintained through several different Insurance Carriers, each of which are listed on Exhibit A annexed hereto that describes the type of coverage, the insured entity, the limits and deductibles under the applicable policies, the coverage period, the insurance broker, and the aggregate annual premium due thereuder.

24.    The Debtors are required to pay premiums under the Third Party Insurance Policies (the "<u>Insurance Premiums</u>") based upon fixed rates that are payable on a monthly, quarterly, or annual basis through the policy term.  The Insurance Premiums are paid directly to the applicable Insurance Carriers or indirectly through insurance brokers.  Pursuant to certain Third Party Insurance Policies, the Insurance Premiums are subject to premium adjustments (the "<u>Premium Adjustments</u>") at the conclusion of the policy term on the basis of certain agreed upon business metrics, including the number of aircraft in the Debtors' fleet, number of passengers and total departures.

25.    The annual premiums for the Third Party Insurance Policies aggregate approximately $7.9 million.  The initial premium for the Third Party Insurance Policies that have a policy year of December 15, 2009 through December 15, 2010 was due on or about December 15, 2009 and was paid on January 4, 2010.  The premiums for the Third Party Insurance Policies that have a policy year of March 23, 2009 through March 23, 2010 were fully paid prepetition.  Accordingly, the Debtors do not believe there are any prepetition obligations due with respect to the Third Party Insurance Policies.

**E.    The Captive Insurance Policies**

26.    The Debtors maintain direct hull and liability coverage under their Third Party Insurance Policies but utilize the Captive Insurance Company to reinsure some or all of the risk associated with this aspect of their business.  Coverage provided by the Captive Insurance Company is generally backstopped by the Insurance Carriers, including La Reunion Aerienne, Sirius International, Tokio Fire & Marine, Glacier Re, and Partner Re, among others.  The annual premiums associated with reinsurance provided by the Captive Insurance Company are approximately $2.15 million and are paid on a quarterly basis (the "<u>Captive Insurance Policies</u>").

---

[5] MAGI Insurance, Ltd. is not a Debtor.

27.    The Debtors do not believe there are any material prepetition obligations with respect the Captive Insurance Policies except for the initial premium that was due on December 15, 2009 and was paid on or about December 28, 2009.

### Insurance Brokers

28.    The Debtors employ AON Risk Services (the "Broker"), to assist them with the procurement and negotiation of their Insurance Programs, and in certain circumstances, to remit payments to the Insurance Carriers on behalf of the Debtors.  The Broker is paid in advance for its services a fixed fee and in certain cases a commission by the Insurance Carriers that is paid as part of the premium due to the Insurance Carrier.  On average, the Debtors are charged a fee in the approximate amount of $450,000 for the Broker's services.  If the Broker is entitled to any commissions then such amount is credited toward the fee due from the Debtors.  As of the Petition Date, the accrued and unpaid prepetition claims of the Broker are approximately $45,000.  The Debtors are seeking authorization to pay such fees.

### Payment of Prepetition Claims Under
### Debtors' Insurance Programs Is Warranted Under The Circumstances

29.    Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted and same basis, and in accordance with the same practices and procedures as were in effect prior to the Petition Date.  Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, broker fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Petition Date.

30.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. Id. § 363(b).  The Debtors submit that the use of estate funds for payment of the obligations under the Insurance Programs is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

31.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Id. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

32.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport C. & S.W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims

beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

33.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims. The court in *In re Structurelite Plastics Corp.* indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *Chateaugay Corp.*, 80 B.R. at 287).  The court stated that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor."  *Ionosphere Clubs*, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

34.    In light of the importance of maintaining insurance coverage with respect to their business activities, the Debtors believe it is in the best interests of their estates to obtain the authority to pay, in their sole discretion, any of their pre-petition obligations under the Insurance Programs.  Thus, by this Motion, the Debtors propose to pay certain pre-petition amounts under such programs to the extent that the Debtors determine in their discretion that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits or proceeds provided by the Captive Insurance Company or under the Third Party Insurance Policies.

35.    It is essential that the Debtors maintain their Insurance Programs on an ongoing and uninterrupted basis.  The non-payment of obligations under the Insurance Programs could result in one or more of the Insurance Carriers or the Captive Insurance Company attempting to terminate or declining to renew the Debtors' insurance policies, or refusing to enter into new insurance policies with the Debtors in the future.  If any of the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability to the detriment of all interested parties.  In addition, as a prerequisite for certain of the Debtors' business operations, governmental agencies require the Debtors to maintain certain of the Insurance Programs.

36.    In addition, as directed by the Office of the United States Trustee for the Southern District of New York, debtors in chapter 11 have a fiduciary obligation and a legal duty to account for their operations of a business, which in part is met by "obtaining and maintaining insurance" following the Petition Date.  *See* section 6 of Operating Guidelines.

37.    If the Debtors are unable to maintain adequate insurance, the Debtors would be prohibited from engaging in air transportation within the United States, and their estates would clearly suffer immediate and irreparable harm. Moreover, failure to maintain appropriate

insurance would expose the Debtors' estates to significant liabilities and run afoul of the rules of the United States Trustee.

38.     The Debtors' payment of pre-petition claims under the Insurance Programs and other fees related to the Insurance Programs is a sound exercise of the Debtors' business judgment and is appropriate under sections 105(a) and 363(b) of the Bankruptcy Code.  As discussed herein, the continuation of the Debtors' Insurance Programs is critical to the ongoing operation of their respective businesses.  In many cases, continuation of these programs is required by law and is imperative to the protection and preservation of the Debtors' assets.  In addition, the Debtors may need to renew or replace certain of their Insurance Policies after the Petition Date.  If the Debtors do not honor their current and outstanding obligations under these policies, certain of the Insurance Carriers may be reluctant to continue doing business with the Debtors.  Any reduction in the number of available Insurance Carriers may result in an increase in the Debtors' future insurance premiums.

39.     Finally, section 363(c)(1) expressly grants the Debtors the authority to "enter into transactions. . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(l).  Therefore, the Debtors believe they are permitted to pay all post-petition amounts related to the Insurance Programs and to renew or obtain new insurance policies as may be required, as such actions clearly constitute ordinary course transactions.

40.     In other chapter 11 cases, this Court and others in different districts have approved the payment of prepetition claims relating to insurance programs substantially similar to those described herein.  *See*, *e.g.*, *In re The Reader's Digest Assoc., Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 93]; *In re Finlay Enter.*, Case No. 09-

14873 (JMP) (Bankr. S.D.N.Y. Sept. 3, 2009) [Docket No.189]; *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) [Docket No. 251]; *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 2, 2008) [Docket No. 188]; *In re Delta Air Lines Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 15, 2005) [Docket No. 115].

### Applicable Banks Should Be Authorized to Honor Checks and Other Transfers Relating to Prepetition Claims Under the Insurance Programs

41.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject Debtors' checks and fund transfers with respect to the claims relating to the Insurance Programs. Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed hereto, and any other bank the Debtors are authorized to do business with under the motion filed contemporaneously herewith (the "Cash Management Motion"), to seek (i) authorization, pursuant to sections 105(a), 363(c), 345(b), and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003(b) and 6004, to (a) continue to operate their Cash Management System, (b) fund the Debtors' operations, and (c) maintain the Debtors' existing Bank Accounts and (ii) a waiver of the requirements of section 345 of the Bankruptcy Code, to process, honor, and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtors with respect to their claims under the Insurance Programs.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers with respect to their claims under the Insurance Programs to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

42.     The Debtors represent that each of these checks or transfers is or will be drawn on the Debtors' Disbursement Accounts, or any other account authorized by the Court under the

Cash Management Motion, and can be readily identified as relating directly to payments under the Insurance Programs. Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to the Insurance Programs will not be honored inadvertently.

43. Authorization to pay all amounts under this Motion, including on account of the prepetition obligations under the Insurance Programs will not be deemed to constitute postpetition assumption or adoption of any contract, program or policy pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts under this Motion, including on account of prepetition obligations under the Insurance Programs will not affect the Debtors' right to contest the amount or validity of any such obligations.

44. Further, to implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

45. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## **Necessity for Immediate Relief**

46. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fort he reasons discussed herein, if the Debtors are not able to continue

their Insurance Programs on an uninterrupted basis, it would cause immediate and irreparable

harm to the Debtors and their business operations unless they are authorized to continue their

ordinary business operations by maintaining the Insurance Programs, and assuring their carriers

that authority has been granted to honor all such claims.  Accordingly, the interim relief

requested herein is consistent with Bankruptcy Rule 6003.

### Interim Order

47.     The Debtors seek the relief requested in this Motion in the form of the interim

order (the "Interim Order") attached hereto as Exhibit C.  Within three business days of the entry

of the Interim Order, the Debtors will serve a copy of the Interim Order and this Motion on (a)

the Office of the United States Trustee, (b) those creditors holding the five (5) largest secured

claims against the Debtors' estates, (c) those creditors holding the thirty (30) largest unsecured

claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue Service,

(e) the Securities and Exchange Commission and (f) the Insurance Carriers.

48.     The deadline to file an objection ("Objection") to the Motion shall be 4:00 p.m.

(prevailing Eastern Time) on the date that is 10 days after the date of the entry of the Interim

Order (the "Objection Deadline").  An Objection shall be considered timely only if, on or prior to

the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually received by

(i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York

10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California

Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and Joshua M.

Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New

York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any committee then appointed in

these cases.

49.     Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing.

50.     If no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order granting the relief requested herein, which order shall be submitted and may be entered with no hearing and no further notice or opportunity to be heard afforded to any party.  If an Objection is timely filed, a hearing will be held at a date and time to be established by the Court.

51.     The foregoing notice procedures satisfy Bankruptcy Rule 9014 by providing the parties in interest with notice and an opportunity to object and be heard at a hearing.  *See*, *e.g.*, *In re Drexel Burnham Lambert*, 160 B.R. 729, 734 (S.D.N.Y. 1993) (an opportunity to present objections satisfies due process); *In re Colorado Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses.

## **Notice**

52.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, and (vi) the Insurance Carriers listed on the schedules annexed hereto as Exhibit A.

53.     The relief sought herein has not been made to this or to any other court.

WHEREFORE the Debtors request entry of the attached order granting the relief requested herein and such other and further relief as is just.

Dated:    January 5, 2010
          New York, New York            PACHULSKI STANG ZIEHL & JONES LLP

                                        /s/ Maria A. Bove
                                        Richard M Pachulski (*pro hac vice* pending)
                                        Laura Davis Jones (*pro hac vice* pending)
                                        Debra I. Grassgreen (*pro hac vice* pending)
                                        Maria A. Bove
                                        John W. Lucas

                                        780 Third Avenue, 36th Floor
                                        New York, New York 10017
                                        Telephone:  (212) 561-7700
                                        Facsimile:  (212) 561-7777

                                        Proposed Attorneys for Debtors
                                        and Debtors in Possession

# **EXHIBIT A**

**(Insurance Programs)**

| Coverage | Carrier | Coverage | Policy Number | Policy Period | Annual Premium |
|---|---|---|---|---|---|
| Property | Travelers Prop. Casualty Co. of America | Blanket Bldg & Personal Prop: $11,946,760 Special Form, Deductible: $25,000 Valuation: Replacement Cost Electronic Data Processing Equip Incl Equip Breakdown: $3,388,734 Blkt Limit $5,000 Deductible Limit on Simulator: $735,000<br><br>Deductible on Simulator: $50,000 Extra Expense: $2,210,000 Limit | P630-4824A638 | 03/23/09 - 03/23/10 | $42,766 |
| Auto Liability | Charter Oak Fire Insurance Company | Liability Limit: $1,000,000 CSL Incl. Hired & Non-Owned Auto Personal Injury Protection: Statutory Uninsured Motorist: $1,000,000 Combined Single Limit Hired Car Physical Damage: $50,000 Limit subject to : $1,000 Deductible on Comprehensive $1,000 Deductible on Collision | P810-4824A638 | 03/23/09 - 03/23/10 | $89,331 |
| Aviation Hull and Liability | [See Attached Security Sheet] | Hull: Agreed Values as per Schedule of Aircraft, Maximum $40,000,000 any one aircraft Spares: $50,000,000 any one location/event; Hull Deductibles: $250,000 as respects Canadair RJ & Embraer 145 aircraft $100,000 as respects DHC Dash 8 aircraft $50,000 as respects Embraer 120, Beech 1900 $25,000 as respects Cessna Caravan 208 B aircraft $5,000 as respects Beech Baron and Beechcraft Bonanza aircraft $1,000 as respects Piper Warrior aircraft<br><br>Deductibles not applicable in the event of total loss/constructive total loss/arranged total loss of the aircraft. Spares Deductible: $10,000 Spare/Leased Engines Deductible: while attached to aircraft Hull Deductible applies; while NOT attached to aircraft Spares Deductible applies<br><br>$750,000,000 Combined Single Limit Comprehensive General Liability, including Airport Liability, Bodily Injury and Property Damage to Third Parties, Passenger Liability, Personal Injury Liab,.Contractual Liab, Passengers' Checked and Unchecked Baggage Liability Premises, Products, Ground Hangarkeepers & Completed Operations Liabilities, On Airport Automobile Liability, Off Airport Excess Automobile Liab, Employers' & Cargo Legal Liabilities. With sub-limits of: Personal Injury to Third Parties other than passengers: $25,000,000 Excess Automobile and Employers Liability: $25,000,000 Hangarkeepers Deductible: $10,000 | [See Attached Security Sheet] | 12/15/09-12/15/10 | See Below |

| Coverage | Carrier | Coverage | Policy Number | Policy Period | Annual Premium |
|---|---|---|---|---|---|
| | | Cargo/Mail Deductible: $10,000 Baggage & Personal Effects Deductible: $3,000 each and every claim or tariff (whichever is greater) | | | |
| Aviation Hull and Liability (Direct Coverage) | | | | | |
| | Allianz Global Risks US Insurance Company Through Allianz Aviation Managers, LLC | Aviation Insurance   10.0%   Quota Share | A1AL000019109AM | 12/15/09-12/15/10 | $6,752,425 |
| | Commerce & Industry Insurance Company Through Chartis Aviation, Inc. | Aviation Insurance   20.0%   Quota Share | HL1853272-06 | | |
| | National Union Fire & Marine Ins. Co. Per Starr Aviation Agency, Inc. | Aviation Insurance   10.0%   Quota Share | 92CVS101807 | | |
| | Iron Shore Indemnity Insurance Company Through Starr Aviation Agency, Inc. | Aviation Insurance   5.0%   Quota Share | IHM100013-01 | | |
| | StarNet Insurance Company Per Berkley Aviation. | Aviation Insurance   3.0%   Quota Share | BA09A1112S | | |
| | ARCH Insurance Company Through International Aerospace Insurance Services, Inc. | Aviation Insurance   6.5%   Quota Share | 11CAA5477801 | | |
| | XL Specialty Insurance Company through XL Aerospace | Aviation Insurance   5.0%   Quota Share | UA00002888AV09A | | |
| | Underwriters at Lloyd's of London,and certain Insurance Companies, London England through Aon Group Ltd.. | Aviation Insurance   17.0%   Quota Share | AM0902181 | | |
| Aviation Hull and Liability (Reinsurance) | MAGI Insurance Ltd. Barbados, West Indies 09 | Aviation Reinsurance   23.50%   Quota Share | AM0902182 | 12/15/09-12/15/2010 | $2.148,028 |
| | c/o the Towner Management Group St. James House | | | | |
| | La Reunion | Aviation Reinsurance   13.0%   Quota Share | | | |

| Coverage | Carrier | Coverage | Policy Number | Policy Period | Annual Premium |
|---|---|---|---|---|---|
| | Aerienne | | | | |
| | Sirius International | Aviation Reinsurance  2.0% Quota Share | | | |
| | Tokio Marine | Aviation Reinsurance  1.5% Quota Share | | | |
| | Partner Reinsurance Company, Ltd. | Aviation Reinsurance  2.0% Quota Share | | | |
| | Glacier Re | Aviation Reinsurance  5.0% Quota Share | | | |
| Aviation Hull Deductible | XL | Dash 8 Aircraft:  To Pay the difference between $100,000 each and every claim and $25,000 each and every claim CRJ/EEMB 145 Aircraft:  To pay the difference between $250,000 each and every claim and $25,000 each and every claim | UA00002889AV08A | 12/15/09-12/15/10 | $764,439 |
| Mexican Liability Policy | Allianz Mexico | $3,400,000 Limit | AVIMATR /00008052 | 12/15/09-12/15/10 | $7,600 |
| Workers Compensation | AIG | States Covered:  All States Except CA Workers' Compensation:  Statutory Limits Employers Liab: Bodily Injury by Accident:  $1,000,000 each Accident Bodily Injury by Disease:  $1,000,000 Policy Limit Bodily Injury by Disease:  $1,000,000  Guaranteed Cost | WC5646334 | 12/31/08 - 12/31/09 | $3,321,588 |
| Workers Compensation - CA Only | AIG | State Covered:  CA Workers' Compensation:  Statutory Limits Employers Liability: Bodily Injury by Accident:  $1,000,000 each Accident Bodily Injury by Disease:  $1,000,000 Policy Limit Bodily Injury by Disease:  $1,000,000  Guaranteed Cost | WC5646335 | 12/31/08 - 12/31/09 | $187,406 |
| D&O | AIG | $10,000,000 Limit  Retentions: Securities Claims:  $500,000 Employment Practices Claims:  $250,000 All Other Claims:  $250,000 | 01-841-82-44 | 5/6/09 - 5/6/10 | $252,500 |
| Excess D&O | XL Specialty | $10,000,000 Aggregate each policy period (including Defense Expenses) | ELU111113-09 | 5/6/09 - 5/6/10 | $150,000 |
| Excess D&O Side A | XL Specialty | $5,000,000 Aggregate each Policy Period (including Defense Expenses) | ELU111114-09 | 5/6/09 - 5/6/10 | $60,000 |
| Crime | Travelers | $500,000 Employee Theft or Forgery  $500,000 Employee Theft from Customer or Client Premises or Employee Forgery of Customer or Client Property  $1,000,000 Employee Welfare & Pension Plan(s)  $50,000 Single Loss Limit of Indemnity $50,000 Deductible | 412CF0754 | 5/6/09 - 5/6/10 | $13,072 |
| FAA War Risk | FAA | Per Occurrence:  $350,000,000 with no Aggregate Limit Third Party Liability:  $700,000,000 with no Aggregate Limit | PWR09012009 | 9/1/09 – 8/31/2010 | |

| Coverage | Carrier | Coverage | Policy Number | Policy Period | Annual Premium |
|---|---|---|---|---|---|
| Workers' Compensation Liability | Ace Indemnity Insurance Company of North America | Self-insured, liability up to $500,000 per occurrence, per employee | C444478365 | Dec. 31, 2004 through December 31, 2008 | N/ |

## HULL & LIABILITY

### Policy Period: December 15, 2009to December 15, 2010

### 12:01 AM Local Standard Time (United States of America) at the address of the insured]

| __Quota Share Insurers__ | Policy No. |
|---|---|
| Allianz Global Risks US Insurance Company through<br>Allianz Aviation Managers, LLC<br>317 Madison Avenue, Suite 1110<br>New York, NY  10017 | AIAL00019109AM<br>10% |
| Underwriters at Lloyd's and certain Insurance Companies, London,<br>England<br>through Aon Group Limited<br>8 Devonshire Square<br>London EC2M 4PL  ENGLAND | AM0802181<br>17% |
| National Fire & Marine Insurance Company<br>through Starr Aviation Agency, Inc.<br>3353 Peachtree Road, NE, Suite 1000<br>Atlanta, GA  30326 | 92CVS101807<br>10% |
| Ironshore Indemnity Insurance Company<br>Through Starr Aviaion Agency, Inc.<br>3353 Peachtree Road, N.E., Suite 1000<br>Atlanta, GA 30326 | IHM100013-01<br>5% |
| StarNet Insurance Company<br>through Berkley Aviation, LLC<br>3780 State Street, Suite C<br>Santa Barbara, CA  93105 | BA08A1112S<br>6.5% |
| Arch Insurance Company<br>through International Aerospace Insurance Service, Inc.<br>1005 Mark Avenue<br>Carpinteria, CA  93013 | 11CAA5477803<br>3.% |
| Commerce & Industry Insurance Company<br>through Chartis Aviation Inc.<br>100 Colony Square - Suite 1000<br>Atlanta GA 30361 | HL 1853272-06<br>20% |
| MAGI Insurance Ltd.<br>Barbado, West Indies 09 – 12/15/1010<br>c/o Tower Management Group<br>St. James House<br>Second Street<br>Holetown, St. James, Barbados | AM0902182<br>23.5% |
| XL Specialty Insurance Company<br>through XL Aerospace<br>One World Financial Center<br>200 Liberty Street, 21st Floor<br>New York, NY 01281 | UA0000288AV08A<br>5% |

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

# **EXHIBIT B**

**(Banks)**

56772-001\DOCS_NY:19652.2

**(Banks and Accounts)**

| Bank Name & Address | Account Name | Account Number |
| --- | --- | --- |
| **Banco Nacional De Mexico S.A.** | Nacional Expense Account | 887-54XXXX |
| **Banco Nacional De Mexico S.A.** | Nacional Collection Account | 887-54 XXXX |
| **Banco Mercantil del Norte S.A.** | Mercantil Peso Account | 006300 XXXX |
| **Banco Mercantil del Norte S.A.** | Mercantil Dollar Account | 1038 XXXX |
| **Banco Mercantil del Norte S.A.** | Mexico Money Market Account | 50033 XXXX |
| **Bank of Hawaii** | Hawaii Deposit Account | 0003-23 XXXX |
| **Bank of Hawaii** | Hawaii Ticket Refund Account | 0003-87 XXXX |
| **Wells Fargo Bank** | Wells Fargo DIA Liquor Account | 103-750 XXXX |
| **Wells Fargo Bank** | Workers Comp. Account | 106-038 XXXX |
| **BBVA Compass Bank** | Main Operating Account | 250105 XXXX |
| **BBVA Compass Bank** | Compass Money Market Account | 250119 XXXX |
| **BBVA Compass Bank** | Accounts Payable | 1286 XXXX |
| **BBVA Compass Bank** | Compass Bank Emergency Reserve | 8449 XXXX |
| **BBVA Compass Bank** | Freedom Airlines LOC Account | 251193 XXXX |
| **Bank of America** | Payroll | 942837 XXXX |
| **Bank of America** | MPD ASU | 942912 XXXX |
| **Bank of America** | Operating | 942845 XXXX |
| **Citizens Bank** | MPD Operating Account | 11717 XXXX |
| **JPMorgan Chase** | JP Morgan Clearinghouse Account | 910-2-46 XXXX |
| **Imperial Capital** | Bonds | 7LU-13 XXXX |
| **Chevy Chase Bank** | IAD Liquor deposits | 142430 XXXX |
| **Seaway Bank** | ORD Liquor deposits | 8012 XXXX |
| **Merrill Lynch Trust Company** | Deferred Comp. Account | 208-95S24 / 2089XXXX |
| **Merrill Lynch Trust Company** | Deferred Comp. Account | 412-95S31 / 412-2XXXX |
| **Merrill Lynch Trust Company** | Deferred Comp. Account | 412-9XXXX |
| **Merrill Lynch Trust Company** | Deferred Comp. Account | 412-9XXXX |

# **EXHIBIT C**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-_____ (  ) |
| Debtors.[1] | (Jointly Administered) |

**INTERIM ORDER PURSUANT TO SECTIONS
105(a), 362(d), 363(b), AND 503(b) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 4001, 6003, AND 6004 FOR INTERIM
AUTHORIZATION TO (I) CONTINUE THEIR WORKERS' COMPENSATION
PROGRAMS AND THEIR LIABILITY, PRODUCT, PROPERTY, AND OTHER
INSURANCE PROGRAMS, (II) PAY, IN THEIR DISCRETION, ALL PREPETITION
OBLIGATIONS RELATING TO THEIR WORKERS' COMPENSATION PROGRAMS
AND THEIR LIABILITY, PRODUCT, PROPERTY, AND OTHER INSURANCE
PROGRAMS, (III) MODIFY THE AUTOMATIC STAY FOR THE SOLE PURPOSE
OF PERMITTING EMPLOYEES TO PROCEED WITH WORKERS' COMPENSATION
CLAIMS, (IV) PERMIT FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS, AND
(V) SCHEDULING A FINAL HEARING ON THE RELIEF REQUESTED HEREIN**

Upon the motion, dated January 5, 2010 (the "Motion"), of Mesa Air Group, Inc. and its

affiliated debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a), 362(d),

363(b), and 503(b) of the title 11 of the United States Code (the "Bankruptcy Code") and Rules

4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure, for authorization to (i)

continue the insurance programs (the "Insurance Programs") described in the Motion on an

uninterrupted basis, (ii) authorizing, but not directing, the Debtors in their discretion, to pay the

undisputed prepetition obligations arising under the Insurance Programs (the "Insurance

Obligations"), (iii) modifying the automatic stay solely and for the limited purpose of permitting

employees with claims under the workers' compensation programs (the "Workers'

Compensation Programs") to proceed with their claims in accordance with such program in the

appropriate judicial or administrative forum, (iv) permitting banks and other financial institutions

(the "Banks") to honor any checks or transfers made against, but not limited to, the disbursement

accounts (the "Disbursement Accounts") set forth in Exhibit A annexed hereto, and

(v) scheduling a hearing (the "Final Hearing") to consider the relief herein on a permanent basis,

all as more fully described in the Motion; the Court having jurisdiction is to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); due and proper notice of the Motion having been provided and that no other or

further notice is necessary; and the Court having found and determined that (a) the relief sought

in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in

interest and (b) such relief is necessary to avoid immediate and irreparable harm as contemplated

by Bankruptcy Rule 6003(b), and (c) that the legal and factual bases set forth in the Motion and

the Declaration of Michael J. Lotz in Support of First Day Motions establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis as provided herein; and it is

further

ORDERED that the Debtors are authorized but not directed to maintain their Insurance

Programs without interruption, on the same basis, and in accordance with the same practices and

procedures that were in effect prior to the commencement of the Debtors' chapter 11 cases; and

it is further

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corporation (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

ORDERED that the Debtors are authorized, but not required, to pay, in their sole discretion, the fixed and liquidated prepetition claims relating to the Ace Policy and that the payment of all other Insurance Obligations, including, without limitation, all premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers' fees, and all other obligations arising under the Insurance Programs, including those Insurance Obligations that were due and payable or related to the period before the commencement of these chapter 11 cases, will be subject to approval of the Court at the Final Hearing on this Motion; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold valid claims under the Debtors' Workers' Compensation Programs, these employees are authorized, at the Debtors' discretion, to proceed with their workers' compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Programs; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Programs and the recoveries are limited to the proceeds available under the applicable policy; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit A, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre or postpetition, to the extent provided herein; and it is further

ORDERED that any Bank, including, but not limited to those on the list annexed hereto as Exhibit A, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored

pursuant to this Order, and such Bank shall not have any liability to any party for relying on such

representations by the Debtors as provided for herein; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or

agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy

Code, neither this Order nor any payments made in accordance with this Order shall constitute

the postpetition assumption of any such Insurance Program, contract, or related agreement

pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the

rights of the Debtors to dispute or contest the amount of or basis for any claims against the

Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that Bankruptcy Rule 6003(b) ahs been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the

Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and

enforceable upon its entry; and it is further

ORDERED that within three business days of the entry of this Interim Order, the Debtors

shall serve a copy of the Interim Order and the Motion on (a) the Office of the United States

Trustee for the Southern District of New York, (b) those creditors holding the five largest

secured claims against the Debtors' estates, (c) those creditors holding the thirty largest

unsecured claims against the Debtors' estates (on a consolidated basis), (d) the Internal Revenue

Service, (e) the Securities and Exchange Commission and (f) the Providers; and it is further

ORDERED that any objection (the "Objection") to the relief requested in the Motion on a

permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on the date that is 10 days after the

date of the entry of this Interim Order (the "Objection Deadline"), be: (a) filed with the Court

and (b) served upon and actually received by (i) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, (ii) the attorneys for the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attn: Debra I. Grassgreen and Joshua M. Fried and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Maria A. Bove, and (iii) the attorneys for any official committee of unsecured creditors then appointed in these cases; and it is further

ORDERED that a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the date of the applicable hearing; and it is further

ORDERED that if timely Objections are received there shall be a hearing to consider such timely Objections to the Motion; and it is further

ORDERED that if no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Interim Order, which Order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved nunc pro tunc to the date of the commencement of these chapter 11 cases; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on [ENTER DATE] at [ENTER TIME] and any objections to the entry of such order shall be in writing, filed with the Court and served upon (i) the attorneys for the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) the attorneys for the agents for the Debtors' prepetition lenders, (iv) the attorneys for the Debtors' proposed postpetition lenders, and (v) the holders of

the top thirty (30) general unsecured claims (on a consolidated basis) unless a statutory

committee of unsecured creditors has been appointed, in which case the attorneys for such

committee shall be served, in each case so as to be received no later than [ENTER DATE AND

TIME]; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims,

rights or disputes arising from or related to the implementation of this Interim Order.

Dated: January __, 2010
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE