PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> MESA AIR GROUP, INC., *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 10-10018 (MG) <br><br> (Jointly Administered) |

### DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO CONTINUE AND RENEW LETTER OF CREDIT AND SURETY BOND PROGRAMS

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

### Background

1. On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") under the captioned case number.

## Mesa's Business

3. Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

4. Mesa Airlines, Inc. ("<u>Mesa Airlines</u>") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("<u>*go!*</u>"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

5. As of September 30, 2009, the Debtors had consolidated assets of approximately $975 million, and consolidated liabilities of approximately $869 million. The Debtors'

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") under the captioned case number.

## Mesa's Business

3. Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

4. Mesa Airlines, Inc. ("<u>Mesa Airlines</u>") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

5. As of September 30, 2009, the Debtors had consolidated assets of approximately $975 million, and consolidated liabilities of approximately $869 million. The Debtors'

consolidated 2009 revenues were approximately $968 million. Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements. The Debtors' remaining passenger revenues are generated from their independent *go!* operations in Hawaii.

6.  A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* filed on the Petition Date.

### Jurisdiction

7.  This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Summary of Relief Requested[2]

8.  By this motion (the "Motion"), the Debtors seek entry of an order in the form attached hereto as Exhibit A pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code for authorization to (i) pay, in their sole discretion, all amounts arising under their Letter of Credit and Surety Bond Programs due and payable after the Petition Date and (ii) renew or obtain, in their sole discretion, new letters of credit and surety bonds as needed in the ordinary course of business.

9.  It is vital that the Debtors be permitted to continue and renew their Letter of Credit and Surety Bond Programs to ensure there is no disruption in the Debtors' ability to conduct their operations. The nonpayment of any obligations under the Letter of Credit and

---

[2] Capitalized terms in this Summary shall have the meanings ascribed to them in this Motion.

Surety Bond Programs could result in one or more of the Providers terminating or declining to renew their letters of credit or surety bonds or refusing to enter into letters of credit or surety bonds with the Debtors in the future. If any letters of credit or surety bonds lapse without renewal, the Debtors could default on various obligations, which could severely disrupt the Debtors' operations, to the detriment of all parties in interest.

10. As a result, it is in the best interests of the Debtors, their estates and their creditors to be permitted to continue the Letter of Credit and Surety Bond Programs and to make payments on all post-petition obligations arising under the Letter of Credit and Surety Bond Programs. Absent such authority, the value of the Debtors' estates is likely to suffer a significant diminution.

## Relief Requested and Reasons Therefor

11. By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code for authority to maintain, continue and renew, in their sole discretion, their Letter of Credit and Surety Bond Programs (as defined below) on an uninterrupted basis and in accordance with the same practices and procedures, including, but not limited to, the maintenance of cash collateral, as were in effect before the Petition Date.

12. The authority requested includes authority for the Debtors to (i) pay all amounts arising under the Letter of Credit and Surety Bond Programs due and payable after the Petition Date (the "Obligations") and (ii) renew or obtain new letters of credit and surety bonds as needed in the ordinary course of business. If the requested relief is not granted and the Letter of Credit and Surety Bond Programs lapse or terminate, the Debtors' operations could be severely affected, thereby endangering the Debtors' successful reorganization and substantially harming all creditors.

## The Debtors' Letter of Credit and Surety Bond Programs

13. In the ordinary course of their business, the Debtors are required to provide to third parties letters of credit and surety bonds (the "Letter of Credit and Surety Bond Programs") to secure the Debtors' payment or performance of certain obligations, including, without limitation: (a) workers' compensation obligations, (b) obligations owed to municipalities, (c) obligations associated with foreign operations, (d) contractual or permit obligations, (e) fuel and liquor taxes, (f) airport obligations, and (g) U.S., Canadian or other customs requirements. Failure to provide, maintain or timely replace these letters of credit and surety bonds could jeopardize the Debtors' ability to conduct their operations. The lending institutions, sureties and private insurance carriers that provide the Debtors with letters of credit or surety bonds (the "Providers"), the identification numbers and the aggregate coverage amounts provided are set forth on the attached Exhibit B.[3]

14. As of the Petition Date, the Providers have posted on behalf of the Debtors approximately $12.3 million in outstanding letters of credit issued pursuant to certain prepetition agreements. Most of these letters of credit are collateralized by cash collateral. Commission and transaction fees are charged by the Providers on an annual basis as a requirement for the issuance and maintenance of these letters of credit. The amounts charged are generally on a percentage basis. The Debtors do not believe they owe any prepetition amounts to the Providers under the letters of credit.

15. As of the Petition Date, the Debtors have approximately $2.5 million in outstanding surety bonds. The premiums for most of the surety bonds are determined annually

---

[3] The Debtors believe Exhibit B is a complete list of the Debtors' current Letter of Credit and Surety Bond Programs. The Debtors, however, may have current letters of credit or surety bonds that are not reflected on Exhibit B. The failure of the Debtors to include a particular letter of credit or surety bond on Exhibit B shall not operate to exclude that letter of credit or surety bond from the coverage of this Motion or the Court's Order entered in connection with this Motion.

and are paid by the Debtors at inception and annually thereafter. The Debtors' principal surety is Fidelity and Deposit Company of Maryland. In addition, the Debtors use brokers to procure surety bonds. The Debtors believe that all premiums and related fees that were due as of the Petition Date have been fully paid.

16.     Because the issuance of a surety bond shifts the risk of the Debtors' nonperformance or non-payment from the Debtors' obligee to the surety, sureties cautiously screen bond applicants to minimize their loss exposure. Despite this reallocation of financial risk, a surety bond is not the equivalent of an insurance policy. Unlike an insurance policy, if a Provider incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal. This right to indemnity is typically memorialized in an indemnity agreement (the "Provider Indemnity Agreements") between the Provider and the principal, the execution of which is generally required by the Provider as a precondition to the issuance of a bond. The Debtors are parties to a number of Provider Indemnity Agreements. Pursuant to the Provider Indemnity Agreements, the Debtors have agreed to indemnify certain parties from any loss, cost, damage or expense they may incur by reason of their execution of any bonds on behalf of the Debtors. By this Motion, the Debtors seek the authority, but not the obligation, to honor those Provider Indemnity Agreements.

17.     Based on the current financial status of the Debtors, it is unlikely that the Debtors will be able to renew or obtain replacement letters of credit or surety bonds on an unsecured basis or in some cases capacity may not be available even on a secured basis. The Debtors' ability to provide the financial assurances necessary to continue their business operations during the reorganization process will require the maintenance of the existing Letter of Credit and

Surety Bond Programs. In addition, the Debtors may also need additional letters of credit and bonding capacity not currently provided by the Letter of Credit and Surety Bond Programs.

18. Accordingly, to operate their business, which requires the Letter of Credit and Surety Bond Programs, the Debtors will have to either renew or replace their existing letters of credit and surety bonds, and will most likely have to maintain collateral arrangements similar to those currently in place.

### Continuing the Letter of Credit and Surety Bond Programs and Paying All Obligations in Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates

19. The nature of the Debtors' business and the extent of their operations make it essential for the Debtors to maintain their Letter of Credit and Surety Bond Programs on an ongoing and uninterrupted basis. The nonpayment of any Obligations under the Letter of Credit and Surety Bond Programs could result in one or more of the Providers terminating or declining to renew their letters of credit or surety bonds or refusing to enter into letters of credit or surety bonds with the Debtors in the future. If any letters of credit or surety bonds lapse without renewal, the Debtors could default on various obligations, which could severely disrupt the Debtors' operations to the detriment of all parties in interest. For example, failure to maintain the required letters of credit or surety bonds could trigger cancellation of the Debtors' workers' compensation insurance programs, denial of landing rights and gate access at various airports, restrictions on import and export rights and result in the inability to purchase fuel.

20. Moreover, because the Letter of Credit and Surety Bond Programs are partly secured by cash collateral, there is no advantage in not rolling over or replacing any letters of credit or surety bonds. The continuation of the Letter of Credit and Surety Bond Programs and the payment of all post-petition obligations arising under the Letter of Credit and Surety Bond

Programs is therefore essential to preserve the Debtors' business and preserve the value of the Debtors' estates for all creditors.

## Basis for Relief Requested

21. Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See, e.g., Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Develop. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("[I]t is axiomatic that bankruptcy courts are "courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *Official Comm. of Unsecured Creditors v. PSS S.S. Co. Inc. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("This provision has been construed liberally to enjoin [actions] that might impede the reorganization process." (quoting *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.), *cert. denied*, 488 U.S. 869 (1988)). Such orders are appropriate where they are essential to the Debtors' reorganization efforts and do not pose a burden on the debtor's creditors. *See United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

22. Section 363(c)(1) expressly grants the Debtors the authority to "enter into transactions… in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." Therefore, the Debtors believe they are permitted to pay all post-petition amounts due pursuant to the Letter of Credit and Surety Bond

Programs and to renew or obtain new letters of credit and surety bonds as such actions are in the ordinary course of the Debtors' business.

23. Section 364(c) permits a debtor unable to obtain unsecured credit allowable in the ordinary course under section 364(a), to obtain credit (1) with priority over any or all administrative expenses specified in sections 503(b) or 507(b); (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien. As set forth above, the Debtors do not believe they can obtain letters of credit except on a secured basis. The Debtors also believe it would be difficult to obtain new bonding capacity at this time. To the extent the renewal or replacement of any letter of credit or entry into any new letter of credit or surety bond facility is deemed a secured extension of credit, the Debtors request authority to do so under section 364(c) of the Bankruptcy Code. The Debtors further submit that, pursuant to section 364(e), any reversal or modification on appeal of this authorization to obtain credit under section 364 should not affect the validity of the debt incurred or any priority of a lien granted.

24. The Debtors do not, at this time, seek to assume any contractual obligations associated with surety bonds or surety bonds. Accordingly, if the Court authorizes the relief requested herein, such relief should not be deemed to constitute post-petition assumption or adoption of any surety-related programs, policies or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.

## Notice

25. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against

the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) the Providers, and (vii) those parties that have requested notice in these chapter 11 cases.

26. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors requests entry of the order attached hereto as <u>Exhibit A</u> granting the relief requested herein and such other and further relief as is just.

Dated: January 8, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Maria A. Bove*
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Proposed Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Proposed Order)**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

## ORDER FOR AUTHORIZATION TO CONTINUE
## AND RENEW LETTER OF CREDIT AND SURETY BOND PROGRAMS

Upon the motion dated January 8, 2010 (the "Motion") of Mesa Air Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") seeking entry of an order pursuant to sections 363 and 364 of the Bankruptcy Code authorizing the Debtors to (i) pay, in their sole discretion, all amounts arising under their letter of credit and surety bond programs (the "Letter of Credit and Surety Bond Programs") due and payable after the Petition Date (the "Obligations") and (ii) renew or obtain, in their sole discretion, new letters of credit and surety bonds as needed in the ordinary course of business; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) the Providers, and (vii) those parties that have requested notice in these chapter 11 cases; and it appearing that no

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

other notice of the Motion need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, and the *Declaration of Michael J. Lotz in Support of Motions Scheduled for Hearing on January 26, 2010*; and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted to the extent provided herein; and it is further

ORDERED that the Debtors, in their sole discretion, are authorized and empowered to maintain their Letter of Credit and Surety Bond Programs without interruption, on the same basis, and in accordance with the same practices and procedures, including, but not limited to, the maintenance of cash collateral, as were in effect prior to the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that the Debtors are, in their sole discretion, authorized, but not required, to pay all amounts arising under the Letter of Credit and Surety Bond Programs, due and payable after the commencement of these chapter 11 cases; and it is further

ORDERED that the Debtors are, in their sole discretion, authorized but not required to renew or obtain any new letters of credit or surety bonds, or execute other agreements in connection with their Letter of Credit and Surety Bond Programs; and it is further

ORDERED that the Debtors are authorized, but not directed, to honor the Provider Indemnity Agreements in their sole discretion; and it is further

ORDERED that the failure to specifically describe or include any particular feature of the Letter of Credit and Surety Bond Programs in this order (the "Order") shall not

diminish or impair the effectiveness of such feature, it being the intent of this Court that the Letter of Credit and Surety Bond Programs be approved in their entireties; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Letter of Credit and Surety Bond Programs; and it is further

ORDERED that to the extent any letter of credit or surety bond or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute post-petition assumption of those letter of credit or surety bonds or related agreements under section 365 of the Bankruptcy Code, and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: January __, 2010
      New York, New York

                                             UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

*Letters of Credit*

| EXPIRATION OR RENEWAL DATE | IDENTIFICATION OR POLICY NUMBER | TOTAL AGGREGATE COVERAGE ($) | PROVIDER |
|---|---|---|---|
| 12/26/2010 | A26371Z | 14,000.00 | BBVA Compass Bank |
| 1/31/2010 | A26401Z | 200,000.00 | BBVA Compass Bank |
| 5/13/2010 | A26428Z | 160,200.00 | BBVA Compass Bank |
| 3/1/2010 | A26439Z | 311,695.00 | BBVA Compass Bank |
| 2/17/2010 | A26441Z | 936.00 | BBVA Compass Bank |
| 3/1/2010 | A26442Z | 122,000.00 | BBVA Compass Bank |
| 3/18/2010 | A26496Z | 168,444.00 | BBVA Compass Bank |
| 5/1/2010 | A26543Z | 6,800.00 | BBVA Compass Bank |
| 7/14/2010 | A26698Z | 113,436.00 | BBVA Compass Bank |
| 8/22/2010 | A27399Z | 855,924.00 | BBVA Compass Bank |
| 12/5/2010 | A27576Z | 150,000.00 | BBVA Compass Bank |
| 7/1/2010 | A27918Z | 40,189.00 | BBVA Compass Bank |
| 6/23/2010 | A29096Z | 600,000.00 | BBVA Compass Bank |
| 3/24/2010 | S26497Z | 400,531.00 | BBVA Compass Bank |
| 4/1/2010 | S26508Z | 18,050.00 | BBVA Compass Bank |
| 4/12/2010 | S26535Z | 58,000.00 | BBVA Compass Bank |
| 9/30/2010 | S26577Z | 903,990.00 | BBVA Compass Bank |
| 5/10/2010 | S26578Z | 74,771.00 | BBVA Compass Bank |
| 12/31/2010 | S26997Z | 5,526,192.00 | BBVA Compass Bank |
| 6/8/2010 | S28476Z | 40,000.00 | BBVA Compass Bank |
| 6/19/2010 | S28493Z | 115,000.00 | BBVA Compass Bank |
| 2/6/2010 | S30274Z | 24,560.00 | BBVA Compass Bank |
| 2/15/2010 | S30275Z | 142,511.00 | BBVA Compass Bank |
| 2/15/2010 | S30276Z | 234,852.00 | BBVA Compass Bank |
| 2/15/2010 | S30277Z | 372,638.00 | BBVA Compass Bank |
| 2/15/2010 | S30342Z | 78,284.00 | BBVA Compass Bank |
| 2/15/2010 | S30343Z | 47,504.00 | BBVA Compass Bank |
| 2/15/2010 | S30344Z | 124,213.00 | BBVA Compass Bank |
| 2/15/2010 | S30398Z | 95,007.00 | BBVA Compass Bank |
| 2/15/2010 | S30399Z | 156,568.00 | BBVA Compass Bank |
| 2/15/2010 | S30400Z | 248,425.00 | BBVA Compass Bank |
| 2/15/2010 | S30567Z | 95,007.00 | BBVA Compass Bank |
| 2/15/2010 | S30568Z | 156,567.00 | BBVA Compass Bank |
| 2/15/2010 | S30569Z | 248,425.00 | BBVA Compass Bank |

*Surety Bonds*

| EXPIRATION OR RENEWAL DATE | IDENTIFICATION OR POLICY NUMBER | TOTAL AGGREGATE COVERAGE ($) | PROVIDER |
|---|---|---|---|
| 1/12/2010 | 6305358 | 5,000.00 | Zurich American Insurance Company |
| 3/13/2010 | 8133618 | 10,000.00 | Fidelity and Deposit Company of Maryland |
| 3/13/2010 | 8133621 | 4,797.00 | Fidelity and Deposit Company of Maryland |
| 4/1/2010 | 8133623 | 22,000.00 | Fidelity and Deposit Company of Maryland |
| 3/12/2010 | 8133632 | 200,000.00 | Fidelity and Deposit Company of Maryland |
| 4/1/2010 | 8133634 | 12,396.00 | Fidelity and Deposit Company of Maryland |
| 10/22/2010 | 8133648 | 25,000.00 | Fidelity and Deposit Company of Maryland |
| 3/4/2010 | 8633105 | 16,500.00 | Fidelity and Deposit Company of Maryland |
| 5/1/2010 | 8633122 | 6,000.00 | Fidelity and Deposit Company of Maryland |
| 6/16/2010 | 8633133 | 17,134.00 | Fidelity and Deposit Company of Maryland |
| 8/1/2010 | 8658479 | 8,500.00 | Fidelity and Deposit Company of Maryland |
| 3/27/2010 | 8690549 | 2,075.00 | Fidelity and Deposit Company of Maryland |
| 10/15/2010 | 8715181 | 23,500.00 | Fidelity and Deposit Company of Maryland |
| 9/1/2010 | 8715182 | 7,500.00 | Fidelity and Deposit Company of Maryland |
| 3/13/2010 | 8758874 | 100,000.00 | Fidelity and Deposit Company of Maryland |
| 3/1/2010 | 8758889 | 47,379.60 | Fidelity and Deposit Company of Maryland |
| 9/27/2010 | 8826857 | 7,500.00 | Fidelity and Deposit Company of Maryland |
| 8/27/2010 | 8826859 | 5,000.00 | Fidelity and Deposit Company of Maryland |
| 1/3/2010 | 8826865 | 14,734.99 | Fidelity and Deposit Company of Maryland |
| 1/3/2010 | 8826866 | 52,746.00 | Fidelity and Deposit Company of Maryland |
| 2/23/2010 | 8826869 | 75,981.75 | Fidelity and Deposit Company of Maryland |
| 2/27/2010 | 8826871 | 11,392.00 | Fidelity and Deposit Company of Maryland |
| 4/1/2010 | 8826873 | 100,000.00 | Fidelity and Deposit Company of Maryland |
| 4/14/2010 | 8826874 | 26,905.00 | Fidelity and Deposit Company of Maryland |
| 9/30/2010 | 8826875 | 1,000.00 | Fidelity and Deposit Company of Maryland |
| 8/27/2010 | 8848086 | 6,000.00 | Fidelity and Deposit Company of Maryland |
| 9/12/2010 | 8848091 | 12,000.00 | Fidelity and Deposit Company of Maryland |
| 1/31/2010 | 460308332 | 1,400,000.00 | International Fidelity Insurance Company |
| 4/7/2010 | LPM0007096 | 100,000.00 | Fidelity and Deposit Company of Maryland |
| 8/11/2011 | LPM8006991 | 151,000.00 | Fidelity and Deposit Company of Maryland |
| 3/13/2010 | LPM8848084 | 7,500.00 | Fidelity and Deposit Company of Maryland |
| 3/12/2010 | LPM8848093 | 19,000.00 | Fidelity and Deposit Company of Maryland |