PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>　　MESA AIR GROUP, INC., *et al.*,<br><br>　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

### DEBTORS' APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF IMPERIAL CAPITAL, LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this application (the "Application") and respectively represent as

follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.    On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under the captioned case number.

## Mesa's Business

3.    Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

4.    Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as go! Mokulele ("go!"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in

businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

5.    As of September 30, 2009, the Debtors had consolidated assets of approximately $975 million, and consolidated liabilities of approximately $869 million. The Debtors' consolidated 2009 revenues were approximately $968 million. Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements. The Debtors' remaining passenger revenues are generated from their independent go! operations in Hawaii.

6.    A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* (the "Lotz Declaration"), filed on the Petition Date.

### Jurisdiction

7.    This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

8.    By this Application, the Debtors request that this Court enter an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rule 2014-1 of the Local Rules for the Southern District of New York (the "Local Rules"), authorizing the employment and retention of Imperial Capital, LLC ("Imperial") as financial advisor and investment banker to the Debtors, and for approval of the proposed terms

of employment during these chapter 11 cases under the terms of the engagement agreement, dated July 2, 2009, and the addendum dated December 29, 2009 between the Debtors and Imperial (the "Engagement Letter"), attached as Exhibit 1 to the affidavit of Marc A. Bilbao in support of the Application (the "Bilbao Affidavit").

## Basis for Relief

9. Pursuant to sections 327 and 328 of the Bankruptcy Code, a debtor in possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist in carrying out a debtor's duties under the Bankruptcy Code.

10. Specifically, section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Pro. 2014.

11. By this Application, the Debtors request that the Court approve the compensation arrangements described in the Engagement Letter pursuant to section 328(a) of the

Bankruptcy Code. The compensation arrangements contained in the Engagement Letter are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for Imperial to act expeditiously and prudently with respect to the matters for which it will be employed.

## Imperial's Qualifications

12.     Imperial is a full-service investment bank offering sophisticated institutional sales and trading, a wide range of investment banking advisory, capital markets and restructuring services, and institutional research. Imperial's institutional sales and trading professionals service over 1,200 institutional accounts. Imperial's investment banking professionals provide advisory services to middle market corporations, institutional investors, and private equity funds.

13.     In particular, Imperial and its professionals have extensive experience working with financially troubled companies in complex financial restructurings both in chapter 11 cases and in out-of-court situations. Imperial is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings.

14.     As an active bankruptcy and restructuring advisor with significant experience in a variety of industries, Imperial is well-qualified to serve as financial advisor to the Debtors. Imperial specializes in assisting and advising debtors, creditors, creditor's committees, shareholders, bondholders and other parties involved with financially distressed companies, both during and outside of bankruptcy cases, and has served as financial and strategic advisors for debtors, creditors, and other constituents in numerous chapter 11 cases. *See, e.g., In re*

*MagnaChip Semiconductor Finance Co.*, No. 09-12008 (PJW) (Bankr. D. Del. Sept. 10, 2009) [Dkt No. 274], *In re Monaco Coach Corp.,* No. 09-10750 (KJC) (Bankr. D. Del. April 9, 2009) [Dkt No. 132], *In re Qimonda Richmond LLC,* No. 09-10589 (MFW) (Bankr. D. Del. May 18, 2009) [Dkt No. 370], *In re Landsource Communities Development LLC,* No. 08-11111 (KJC) (Bankr. D. Del. Aug. 27, 2008) [Dkt No. 504], *In re Aloha Airlines Inc.,* No. 08-00337 (LK) (Bankr. D. Haw. April 8, 2008) [Dkt No. 203], *In re Movie Galley Inc.,* No. 07-33849 (DOT) (Bankr. E.D. Va. Nov. 27, 2007) [Dkt No. 1016], *In re Custom Food Products, Inc.,* No. 07-10495 (PJW) (Bankr. D. Del. June 14, 2007) [Dkt No. 307], and *In re Mesaba Aviation, Inc.*, No. 05-39258 (GFK) (Bankr. D. Minn. June 8, 2005) [Dkt No. 641].

15.     Imperial also has significant knowledge of the Debtors' businesses and the airline industry.  In early 2009, Imperial served as financial advisor to the Debtors in the successful restructuring of approximately $150 million of convertible notes.  Imperial's investment bankers have also advised numerous other airlines and their constituents in a variety of matters, including, but not limited to, Aloha Airlines, Hawaiian Airlines, the Official Committee of Unsecured Creditors for Mesaba Aviation, the Air Line Pilots Association and its United Master Executive Council.

16.     In light of the size and complexity of these chapter 11 cases, the Debtors require the service of a seasoned and experienced financial advisor, and one that is familiar with (i) the Debtors' businesses and operations and (ii) the chapter 11 process.  Additionally, the Debtors believe that by having a financial advisor and investment banker provide these services in these chapter 11 cases, other professionals in these cases – and company officers who might otherwise handle complex financial and financing matters – will be able to focus better on their

respective competencies and their core tasks and efficiently and effectively advise in the management of the Debtors' businesses and operations and to facilitate a successful chapter 11 process. Imperial is well-qualified to provide the services being sought by the Debtors, and the employment of Imperial under the terms contained in the Engagement Letter will benefit the Debtors' estates and their reorganization efforts.

## Imperial's Disinterestedness

17.     Imperial has informed the Debtors that, except as may be set forth in the Bilbao Affidavit, it (i) has no connection with the Debtors, its creditors or other parties in interest in these cases; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Bankruptcy Code section 101(14).

18.     Imperial has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts, connections or relationships are discovered or arise, Imperial will supplement its disclosure to the Court.

19.     Imperial has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these chapter 11 cases.

20.     The Debtors believe that Imperial is not owed any amounts with respect to its prepetition services.

21.     As described in the Bilbao Declaration, Imperial and its affiliates may have and may continue to have investment banking and other relationships with parties other than the Debtors pursuant to which Imperial may acquire information of interest to the Debtors.

Imperial has previously and may again represent Hawaiian Airlines with respect to various investment banking activities. Imperial has previously and may again represent the Air Line Pilots Association ("ALPA") to provide ALPA and ALPA's United Master Executive Council with investment banking and other financial advisory services and advice with respect to UAL Corporation. Imperial shall have no obligation to disclose such information to the Debtors, or to use such information in connection with the matters set forth in Section 1 of the Engagement Letter.

### Services to be Rendered

22.     Imperial commenced its current engagement with the Debtors in late June 2009, and revised and executed the Engagement Letter dated July 2, 2009. Pursuant to the Engagement Letter, the Debtors retained Imperial to provide financial advisory services in connection with the evaluation of strategic alternatives and (i) the formulation of a plan of reorganization, which may be consummated with or without the supervision of the United States Bankruptcy Court, and which will entail material modifications to, or termination of, the Company's existing securities, credit agreements, aircraft lease obligations (covering not less than 30 aircraft) or other material contractual obligations (a "Restructuring") and (ii) a potential transaction, which transaction may include a capital raise involving at least $15 million, merger, consolidation, or any other business combination, in one or a series of transactions, or a purchase or sale involving all or substantially all of the business, securities or assets of the Company, or one or more subsidiaries or divisions of the Company, or any transaction structured to substantially achieve the same result (each a "Transaction").

23.     The Debtors and Imperial have worked closely with respect to the matters set forth in the Engagement Letter.  Imperial has assisted the Debtors in the financial aspects of their restructuring efforts and in the Debtors' preparation of these chapter 11 cases.

24.     Pursuant to the terms of the Engagement Letter, Imperial has provided, is providing and will continue to provide such consulting and advisory services as Imperial and the Debtors deem appropriate and feasible to advise the Debtors in the course of these chapter 11 cases.  Specifically, Imperial will render various services to the Debtors including, but not limited to, the following:

a.      analysis of the Debtors' business, operations, properties, financial condition, competition, prospects and management;

b.      assisting the Debtors in the preparation of its financial forecasts and scenarios related thereto;

c.      financial valuation of the ongoing operations of the Debtors;

d.      assisting the Debtors in arranging and preparing for due diligence investigations and participating in meetings with the Debtors' creditor groups related to a Transaction and/or Restructuring;

e.      assisting the Debtors in the preparation of reports and other materials related to a potential Restructuring, and updates on the Debtors and their financial performance and assisting the Debtors in the communication of such materials with their existing key constituents;

f.      assisting the Debtors in developing, evaluating, structuring and negotiating the terms and conditions of a potential Restructuring or Transaction, including the value of securities, if any, that may be issued to certain creditors under a Restructuring;

g.      assisting the Debtors in the preparation of solicitation materials with respect to a Transaction, and/or Restructuring including without limitation the preparation of an offering memorandum subject to the provisions of Section 4 of the Engagement Letter ("Offering Materials");

h.   identification of and contacting selected qualified buyers ("Buyers") for a Transaction and furnishing them, on behalf of the Debtors, with copies of the Offering Materials related to a Transaction; and

i.   providing such other financial advisory services with respect to the Debtors' financial issues as may from time to time be agreed upon between the Debtors and Imperial.

### Compensation and Fee Applications

25.   Imperial's decision to accept this engagement to advise and assist the Debtors is contingent upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services in accordance with the Engagement Letter.[2]

26.   The proposed overall compensation structure is comparable to compensation generally charged by financial advisors of similar stature for comparable engagements, both in and out of court and reflects a balance between a fixed fee, monthly fee and fees contingent on the consummation and closing of the transactions contemplated by the Engagement Letter.

27.   As compensation for the services rendered pursuant to the Engagement Letter and an amendment to the Engagement Letter dated December 29, 2009, the Debtors have agreed to pay Imperial the following fees (the "Fee Structure") in cash, which are presented here in summary form:

a.   A cash advisory fee (the "Monthly Fee") of $150,000 per month;

---

[2] Please refer to the Engagement Letter for a complete recitation of the terms thereof, including the compensation structure. To the extent this summary contradicts the terms of the Engagement Letter, the Engagement Letter shall govern.

b.     A base fee of $2,500,000 (the "Completion Fee"), payable in cash upon the closing of a Restructuring or upon consummation of a Transaction. Provided, however, that the Completion Fee will be increased to $3,800,000 if the Restructuring or Transaction involves the raising of significant new financing (not less than $15.0 million) or if the present value of expected future cash benefits resulting from the Restructuring or Transactions exceeds $20.0 million.[3] A Transaction shall be deemed to have been consummated upon the earliest of any of the following events to occur: (a) the acquisition of a majority of the outstanding common stock of the Debtors by a buyer; (b) a merger or consolidation of the Debtors with or into a buyer; (c) the acquisition by a buyer of substantially all of the Debtors' assets; or (d) in the case of any other Transaction, the consummation thereof.

28.     In addition, without regard to whether a Restructuring or Transaction is consummated or the Engagement Letter expires or is terminated, all fees, disbursements and out-of-pocket expenses (the "Expenses") incurred by Imperial in connection with the services to be rendered (including, without limitation, reasonable attorneys' fees, travel and lodging expenses, word processing charges, messenger services, duplicating services, facsimile expenses and other customary expenditures) shall be reimbursed to Imperial, or paid on behalf of Imperial, promptly as billed. In light of the Fee Structure and general industry practice, the Debtors, along with Imperial, request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court or any guidelines regarding submission and approval of fee applications, Imperial and its professionals shall only be required to provide summary time records for services rendered postpetition, in hourly increments.

---

[3] Which benefits could include, without duplication: reduced expected future cash losses; reduced future cash expenses; increased future cash revenues; reduced future customer inducement payments; with all such expected future cash benefits discounted at 10.0% for the purposes of determining the fees pursuant to this paragraph.

29.     Prior to the Petition Date and according to the terms of the Engagement Letter and the amendment dated December 29, 2009, Imperial received a total of $700,988 from the Debtors, including $625,000 from the Debtors on account of advisory fees, $50,000 on account of deposit for prepayment of certain estimated expenses (the "Deposit"), and $25,988 for reimbursable expenses. Imperial will hold any amounts received prepetition in excess of fees and expenses that accrued prepetition, including the Deposit, and apply such excess amounts towards fees and expenses that accrue postpetition, subject to the entry of an order of the Court authorizing the payment of such fees and expenses.

30.     The Fee Structure appropriately reflects the nature of the services to be provided by Imperial and is consistent with the fee structures typically utilized by financial advisors and investment banks that do not bill their clients on an hourly basis.

31.     The Debtors agree that the fee arrangements in the Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code, given (i) the numerous issues Imperial may be required to address in the performance of its services under the Engagement Letter, (ii) Imperial's commitment to the variable level of time and effort necessary to address all such issues as they arise and (iii) the market prices for Imperial's services for engagements of this nature in both out-of-court and chapter 11 contexts.

32.     The Debtors believe that Imperial's proposed fees are reasonable and comparable to financial advisory fees in other complex chapter 11 cases. Accordingly, Imperial's engagement is appropriate under section 328(a) of the Bankruptcy Code and Imperial should be subject to review only pursuant to the standards set forth in section 328(a) of the

Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

33.     Imperial will not share or agree to share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Imperial, in accordance with section 504 of the Bankruptcy Code.

34.     The Debtors respectfully submit that the employment of Imperial is in the best interests of the Debtors, their creditors and their estates.

### Indemnity

35.     As set forth in the Engagement Letter and subject to the terms and conditions therein, the Debtors agreed to indemnify Imperial and certain related parties from losses directly or indirectly in connection with, arising out of, based upon, or related to the engagement of Imperial under the Engagement Letter.  The Debtors believe the indemnity provision is a reasonable term and condition of Imperial's engagement.  Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for financial advisors and investment bankers.  Imperial and the Debtors believe that the indemnity provisions are comparable to those generally obtained by advisory firms of similar stature to Imperial and for comparable engagements, both in and out of court.  The proposed indemnification will not include (i) gross negligence, willful misconduct, or fraud of Imperial, and (ii) a material breach of a term or condition of the Engagement Letter.

36.     The payment of indemnity pursuant to the Engagement Letter will be subject an application of the Court (interim or final as the case may be) and will be subject to

review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought.

## Notice

37.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the largest thirty (30) unsecured claims against the Debtors' estates (on a consolidated basis), (iii) those creditors or their agents holding the five (5) largest secured claims against the Debtors' estates, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, and (vi) and parties that have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

## No Prior Request

38.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of the order attached hereto as <u>Exhibit A</u> granting the relief requested herein and such other and further relief as is just.

Dated: January 8, 2010
      New York, New York

MESA AIR GROUP, INC.; MESA AIR NEW YORK, INC.; MESA IN-FLIGHT, INC.; FREEDOM AIRLINES, INC.; MESA AIRLINES, INC.; MPD, INC.; RITZ HOTEL MANAGEMENT CORPORATION; REGIONAL AIRCRAFT SERVICES, INC.; AIR MIDWEST, INC.; MESA AIR GROUP AIRLINE INVENTORY MANAGEMENT, LLC; NILCHI, INC.; AND PATAR, INC.

*/s/ Michael J. Lotz*
By: Michael J. Lotz
Its: President

# EXHIBIT A

## (Proposed Order)

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

## ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF IMPERIAL CAPITAL, LLC, AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Application of Mesa Air Group, Inc., and certain of its direct and indirect subsidiaries (the "Debtors") for an Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1, authorizing the employment and retention of Imperial Capital, LLC ("Imperial") as financial advisor and investment banker to the Debtors *nunc pro tunc* to the Petition Date (the "Application"),[2] all as more fully described in the Application; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, and the *Declaration of Michael J. Lotz in Support of Motions Scheduled for Hearing on January 26, 2010*, the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED that the retention and employment of Imperial as financial advisor and investment banker to the Debtors pursuant to sections 327(a) and 328(a) of the Bankruptcy Code on the terms set forth in the Engagement Letter *nunc pro tunc* to the Petition Date; and it is further

ORDERED that Imperial shall be compensated on the terms and at the times specified in the Engagement Letter and Imperial shall file fee applications for interim and final allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and any applicable Bankruptcy Rules and Local Rules, and such procedures as may be fixed by order of this Court; and it is further

ORDERED that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court or any guidelines regarding submission and approval of fee applications, Imperial and its professionals shall only

2

be required to provide summary time records for services rendered postpetition, in hourly increments; and it is further

ORDERED that in addition to compensation for professional services rendered by Imperial, pursuant to the terms of the Engagement Letter, Imperial is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the fees, disbursements and other charges of Imperial's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise); and it is further

ORDERED that, except as provided in the following decretal paragraph, the terms of the Monthly Fee and the Completion Fee, each as defined in the Engagement Letter, shall not hereafter be subject to challenge except under the standard of review set forth in section 328(a) of the Bankruptcy Code; and it is further

ORDERED that the United States Trustee retains all rights to object to Imperial's interim and final fee applications (including expense reimbursements) on all grounds including but not limited to the reasonableness standard provided for in section 330 of the Bankruptcy Code; and it is further

ORDERED that all requests of Imperial for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Imperial be indemnified if the Debtors or a representative of the estates, assert a claim for, and a court determines by final order that such claim arose out of, (x) the gross

3

negligence, willful misconduct or fraud of Imperial or (y) a material breach of a term or condition of the Engagement Letter by Imperial; and it is further

ORDERED that in the event Imperial seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Imperial's own application (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regards to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with any prior order or pleading with respect to the Application in these cases or the Engagement Letter, the terms of this Order shall govern; and it is further

ORDERED that the relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7; and it is further

ORDERED that notwithstanding any provision to the contrary in the Application or the Engagement Letter the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

4

Dated: _____
       New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE