**BINGHAM MCCUTCHEN LLP**
2020 K Street, N.W.
Washington, DC 20006
(202) 373-6090
Peter D. Schellie (*pro hac vice*)

-and-

399 Park Avenue
New York, New York 10022
(212) 705-7700
Scott K. Seamon
Stephanie W. Mai

*Attorneys for Raytheon Aircraft Credit Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors. | (Jointly Administered) |

**RAYTHEON AIRCRAFT CREDIT CORPORATION'S RENEWED OBJECTION TO DEBTORS' MOTION FOR AUTHORIZATION PURSUANT TO SECTIONS 105, 363, 554, AND 1110 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003, 6004 AND 6007 TO (I) ABANDON CERTAIN AIRCRAFT, ENGINES, AND OTHER RELATED EQUIPMENT (II) TRANSFER TITLE TO CERTAIN AIRCRAFT, ENGINES, AND OTHER RELATED EQUIPMENT, AND (III) SATISFY THE <u>SURRENDER AND RETURN REQUIREMENTS UNDER THE BANKRUPTCY CODE</u>**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................................ 1
II. BACKGROUND ................................................................................................................ 3
    A. Notes And Security Agreements; Prepetition Default ............................................ 3
    B. First Day Hearing On The Motion And Subsequent Consent Interim Order ........ 4
III. ARGUMENTS ................................................................................................................... 5
    A. Section 1110 Is Intended To Provide Unique Rights To Creditors That Finance Aircraft For Airlines And Other Air Carriers, Including The Right To Have Them Surrendered and Returned In Accordance With Their Security Agreements ................................................................................................ 5
        i. Section 1110 of the Bankruptcy Code ........................................................ 5
        ii. The Application of Section 1110 to the Aircraft Equipment ..................... 8
    B. The Relief Requested In The Motion Fails To Satisfy Obligations Required Under Section 1110 Of The Bankruptcy Code And The Aircraft Security Agreements ................................................................................................ 9
    C. RACC Is Entitled Pursuant To Section 1110 To The Prompt Return Of The Aircraft Equipment Subject To Its Security Interests In A Condition That Satisfies The Provisions Of The Security Agreements .............................. 11
        i. Return of the Airframes, Engines and Spare Parts ................................. 11
        ii. Related Return Obligations ...................................................................... 12
        iii. Insurance ................................................................................................... 13
        iv. Books and Records; Title ......................................................................... 13
        v. Interim Storage Costs ............................................................................... 13
IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) ........................ 10

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) .................................................. 10

*In re ATA Holdings Corp.*, Case No. 04-19866 (Bankr. S. D. Ind. Jan. 3, 2005) .......................... 11

## STATUTES

11 U.S.C. § 1110 ............................................................................................................... *passim*

## LEGISLATIVE HISTORY

H.R. Doc. No. 95-595, at 239 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6198. .................. 5, 6

## SECONDARY SOURCES

Colliers on Bankruptcy ¶ 1110.05 (15th ed. rev.) ............................................................................ 5

Kathryn Hoff-Petrinos, *Aviation Finance Revisited: The 1994 Amendments to Section 1110 of the Bankruptcy Code*, 69 Am. Bankr. L.J. 167 (1995) ........................... 5, 6

Gregory P. Ripple, Note, *Special Protection in the Airline Industry: The Historical Development of Section 1110 of the Bankruptcy Code*, 78 Notre Dame L. Rev. 281, 282 (2002) ........................................................................................................... 6

Raytheon Aircraft Credit Corporation ("RACC") objects to Debtors' Motion for Authorization Pursuant to Sections 105, 363, 554, and 1110 of the Bankruptcy Code and Bankruptcy Rules 6003, 6004 and 6007 To (I) Abandon Certain Aircraft, Engines, and other Related Equipment, (II) Transfer Title to Certain Aircraft, Engines and Other Related Equipment, and (III) Satisfy the Surrender and Return Requirements of the Bankruptcy Code (the "Motion").

## I. PRELIMINARY STATEMENT

1. Section 1110 of chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 1110, in conjunction with the security agreements executed by the Debtors (as defined below), governs the parties' rights and responsibilities in this matter. The Motion fails to recognize the controlling provisions of section 1110 and the relevant security agreements, instead incorrectly assuming that the Debtors can simply abandon the aircraft equipment involved here. The Bankruptcy Code does not permit the relief requested in the Motion and, therefore, RACC objects to the Motion.

2. RACC financed the Debtors' purchase of twenty (20) Beech 1900D aircraft (the "Aircraft") at issue and has security interests in the Aircraft and related equipment and spare parts (collectively, the "Aircraft Equipment") pursuant to security agreements the Debtors executed with respect to each Aircraft and other equipment and assets. Section 1110(a)(1), a provision added to the Bankruptcy Code to benefit aircraft lenders and encourage the extension of credit, explicitly preserves all the rights and remedies that RACC, as a secured lender, has under its security agreements with respect to the Aircraft Equipment including, but not limited to, the right to require the Debtors to surrender and return the Aircraft Equipment, "in compliance with a security agreement, lease, or conditional sales contract."

1

3. RACC has the right under the terms of each Aircraft's security agreement to take possession of the Aircraft Equipment that serves as collateral for its loans if, as is the case here, an Event of Default has occurred. The security agreements that the Debtors executed granted to RACC the right to "require the Debtor to assemble the collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties."

4. Section 1110(c)(1) enforces the right to possession established by section 1110(a)(1) and the security agreements. It states that a secured party with a right of possession may make written demand for the surrender and return of its Aircraft Equipment collateral. That provision further states that, upon this demand, the trustee shall "immediately surrender and return" the equipment to the secured party.

5. RACC's ability to enforce its rights as a secured creditor conventionally would be subject to the automatic stay provisions of section 362, to the extent described in section 1110(a)(2). However, the Debtors have advised RACC that they do not intend to rely upon their section 362 rights.

6. On January 11, 2010, given the Debtors' statement that they were not invoking section 362, and as contemplated by section 1110(c), RACC made written demand for possession pursuant to section 1110(c)(1), insisting that the Debtor comply with the terms of the security agreements and return the Aircraft Equipment. An Event of Default had occurred at the time of the demand and was continuing.

7. Thus, the only issue properly before the Court is the enforcement of RACC's rights under its security agreements and section 1110. These rights include not just the right to possession but rights with respect to the condition of the collateral at the time of return to RACC.

Because RACC has these rights, the Debtors may not rely merely upon section 554 of the Bankruptcy Code, which applies to proposed abandonment. Section 1110(a)(1) explicitly trumps all other sections of the Code except for section 362, which as noted is not relevant here.

## II. BACKGROUND

8. On January 5, 2010 (the "Petition Date"), Mesa Air Group, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed voluntary petitions for reorganization under the Bankruptcy Code.

### A. Notes And Security Agreements; Prepetition Default

9. RACC financed the purchase by the Debtors of the Aircraft in 1996. The Debtors evidenced their obligations and secured their performance by executing and delivering to RACC substantially identical promissory notes and security agreements for each Aircraft. Copies of one such promissory note and one such security agreement are attached as Exhibits A and B, respectively. Debtors also executed and delivered to RACC a separate Security Agreement dated April 23, 2008, covering "Spare Parts," and other assets, including aircraft engines, propellers and other equipment. A copy of this Security Agreement is attached as Exhibit C. As of January 1, 2010, the aggregate balance due and outstanding on the twenty (20) Promissory Notes was $32,753,103.22.

10. The Debtors failed to make the monthly payments that were due under each promissory note on December 1, 2009, as well as subsequent payments. Following a grace period, this failure constituted an Event of Default under each promissory note and related security agreement, as well as under other agreements to which RACC and the Debtors are parties. As a result, prior to the Petition Date, RACC accelerated the payment of the debt, which remains unpaid.

**B.     First Day Hearing On The Motion And Subsequent Consent Interim Order**

11.     The Debtors filed the Motion on the Petition Date.  At the first day hearing scheduled on the Petition Date, RACC objected to the Motion being heard without effective notice or an opportunity to respond to the Motion.  The Court did not rule on the Motion, but rather determined that RACC and other interested parties should have the opportunity to object to the proposed process and procedure requested by the Debtors in the Motion.

12.     On January 11, 2010, RACC and the Debtors filed a proposed agreed form of interim order which the Court entered on January 19, 2010 (the "Interim Order").  Under the terms of the Interim Order, parties may file objections to Debtors' Motion on or before January 19, 2010, unless that date was extended by the Debtors.  The Debtors extended that date to January 21, 2010.  The Interim Order left for future negotiation or decision by the Court issues associated with the Debtors' claimed right to abandon the Aircraft Equipment, the rights and obligations established by section 1110 of the Bankruptcy Code, and the effective date of any abandonment or compliance with section 1110.

13.     RACC and the Debtors are engaged in ongoing negotiations in an effort to resolve the issues presented by the Motion and by RACC's demand under section 1110 for surrender and return of the Aircraft Equipment and for the Debtors' compliance with the terms of their security agreements with RACC.  RACC is hopeful that those continuing discussions will produce a consensual resolution of those issues, but is filing this Objection in order to protect its rights and to prevent the application of certain provisions of the Interim Order that would apply in the absence of an objection being filed.

# III. ARGUMENTS

**A. Section 1110 Is Intended To Provide Unique Rights To Creditors That Finance Aircraft For Airlines And Other Air Carriers, Including The Right To Have Them Surrendered and Returned In Accordance With Their Security Agreements**

   i. **Section 1110 of the Bankruptcy Code**

   a. *Background Of Section 1110*

14. Section 1110 of the Bankruptcy Code, and, through that section, the Aircraft security agreements, govern the Debtors' and RACC's rights and responsibilities in this matter.

15. Congress adopted section 1110 of the Bankruptcy Code to encourage funding sources to finance aircraft and related equipment. This unique provision confers protective rights on creditors that finance aircraft beyond those afforded to ordinary creditors by other more general provisions of the Bankruptcy Code.[1] These include requiring a debtor to make an early decision regarding its obligations to its lender <u>and</u>, equally important, providing the debtor with a very limited set of options and aircraft creditors with benefits not available to secured creditors generally. A debtor either must cure defaults and agree to perform all obligations under pre-existing security agreements going forward or it must surrender possession and abide by other pertinent provisions of its security agreements. 11 U.S.C. § 1110(a)(2). Specifically,

---

[1] Under the previous Bankruptcy Act, there were three separate, and varying exceptions to the Automatic Stay provisions relating to transportation equipment, including one that dealt specifically with aircraft. H.R. Doc. No. 95-595, at 239 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6198. Section 1110 of the Bankruptcy Code was intended to provide "an alternative to these [three separate] Sections" of the Bankruptcy Act, and to "accommodate[] the joint interests of the equipment financiers and of the integrity of the bankruptcy laws and the reorganization process." *Id*.; *see also* Colliers on Bankruptcy ¶ 1110.05 at 1110-31 (15th ed. rev.) (Section 1110 "provides an unusual degree of protection for the benefit of [aircraft financiers]."); Kathryn Hoff-Petrinos, *Aviation Finance Revisited: The 1994 Amendments to Section 1110 of the Bankruptcy Code*, 69 AM. BANKR. L.J. 167, 167 (1995) ("Section 1110 of the Bankruptcy Code provides an important benefit to aircraft financers when an air carrier seeks to reorganize under chapter 11. Despite the bankruptcy, the financer may be entitled to receive current payments or to repossess the aircraft. Protection under § 1110 is important to aircraft financers, often resulting in more favorable financing rates than the air carrier could obtain without that protection.").

section 1110 was designed to "protect[] the interest of the financier by entitling him [either] to payments according to the financing terms," or to the return of its aircraft and related equipment. H.R. Doc. No. 95-595, at 239 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6199. Section 1110 does not provide any debtor with the option to merely abandon aircraft equipment or to say "come and get it, as-is, where-is." Aircraft must be returned in an airworthy condition and in compliance with the terms of applicable security agreements.

16. Airlines and air carriers, like the Debtors, benefit from section 1110 because it provides them with greater access to parties willing to finance aircraft on more favorable terms than would exist if there were no section 1110. "Section 1110 of the Bankruptcy Code provides an important benefit to aircraft financiers when an air carrier seeks to reorganize under chapter 11. Despite the bankruptcy, an aircraft financier may be entitled to receive current payments or to repossess the aircraft. Protection under section 1110 is important to aircraft financiers, often resulting in more favorable financing rates than the air carrier could obtain without that protection." Kathryn Hoff-Petrinos, *Aviation Finance Revisited: The 1994 Amendments to Section 1110 of the Bankruptcy Code*, 69 Am. Bankr. L.J. 167, 167 (1995); *see also* Gregory P. Ripple, Note, *Special Protection in the Airline Industry: The Historical Development of Section 1110 of the Bankruptcy Code*, 78 Notre Dame L. Rev. 281, 282 (2002) ("Given the large amount of money involved and airline susceptibility to bankruptcy, financiers have long demanded special protection for their investment. Without this protection, financial institutions or aircraft manufacturers would be unwilling to provide financing for aircraft to new or troubled airlines, or would do so only under terms far less favorable to the borrower.").

17. In addition to enhancing the right of financiers to take possession of their aircraft after a default, section 1110 protects the collateral of financiers in other ways as well. Most

significant, section 1110(c) requires that a carrier that is not willing to perform its original bargain with the aircraft lender must "immediately surrender and return" the aircraft, thus offering additional protection to financiers by assuring that collateral will be returned quickly, in an orderly fashion and in a condition consistent with the terms of the applicable security agreement.

18. In assembling and operating their aircraft fleet, the Debtors have been the beneficiary of section 1110. RACC provided credit at lower cost because section 1110 provided it with special protection in the event of bankruptcy. Having taken advantage of the benefits provided to it by section 1110, Debtors cannot now refuse to comply with section 1110 as they attempt to do here.

      b. *The Relevant Provisions Of Section 1110*

19. Section 1110(a) specifically and unambiguously preserves the right of a secured lender like RACC, after a bankruptcy filing, to take possession of its collateral if the right to possession is granted in its security agreement, and to enforce other rights and remedies granted by the security agreement. Section 1110(a)(1) states:

> Except as provided in paragraph (2) and subject to subsection (b), the right of a secured party with a security interest in equipment described in paragraph (3),[2] or of a lessor or conditional vendor of

---

[2] The equipment "described in paragraph (3)" is the same type of equipment that serves as RACC's collateral under its security agreements. Section 1110(a)(3)(A)(i) defines aircraft equipment as:

> An aircraft, aircraft engine, propeller, appliance, or spare part (as defined in section 40102 of title 49) that is subject to a security interest granted by, leased to, or conditionally sold to a debtor that, at the time such transaction is entered into, holds an air carrier operating certificate issued pursuant to chapter 447 of title 49 for aircraft capable of carrying 10 or more individuals or 6,000 pounds or more of cargo; or . . . .

RACC's security agreements cover "airframes, engines, propellers and associated or related equipment, documents and other assets owned by Debtor," as well as all spare parts. *See* Exhibit B at 1; Exhibit C.

such equipment in compliance with a security agreement, lease, or
conditional sale contract, and to enforce any of its other rights or
remedies, under such security agreement, lease, or conditional sale
contract, to sell, lease, or otherwise retain or dispose of such
equipment, is not limited or otherwise affected by any other
provision of this title or by any power of the court.[3]

20. Section 1110(c) provides the means for a secured creditor with a security agreement granting a right to possession upon default to enforce that right. It states:

In any case under this chapter, the trustee shall immediately
surrender and return to a secured party, lessor, or conditional
vendor, described in subsection (a)(1), equipment described in
subsection (a)(3), if at any time after the date of the order for relief
under this chapter such secured party, lessor, or conditional vendor
is entitled pursuant to subsection (a)(1) to take possession of such
equipment and makes a written demand for such possession to the
trustee.

21. The obligation to surrender and return includes an obligation to comply as well with applicable provisions of the security agreement that govern the conditions of the airline equipment collateral. The right to enforce those provisions is confirmed by section 1110(a)(1) that is quoted above. The relevant provisions of the RACC security agreements are described below.

ii. **The Application of Section 1110 to the Aircraft Equipment**

22. RACC has made written demand for possession as contemplated by section 1110(c)(1) and for Debtors' compliance with the provisions of the security agreement. The

---

[3] The exception in section 1110(a)(1) for the contents of paragraph (2) is not relevant here. Subsection (a)(2) states that a secured creditor's rights are subject to the automatic stay provisions of section 362 if the debtor agrees to comply with security agreements and to cure existing defaults. The Debtors, however, have said that they do not intend to rely on this provision. Indeed, their stated desire to abandon the aircraft equipment at issue is inconsistent with a commitment to be bound by the existing security agreements. Subsection (b) referenced in section 1110(a)(1) also is inapplicable. It relates to agreements between the debtor and its creditor to extend the time for the debtor to decide whether it intends to agree to be bound by the existing security agreement and cure existing defaults.

8

security agreement for each account provides a right of possession. It states in Section 9:

> Should an event of default occur, Secured Party may employ all remedies allowed by law, including declaring all indebtedness under the Promissory Note, as well as any other indebtedness or liability of Debtor owed to Secured Party, immediately due and payable. Additionally, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties.

An Event of Default, failure to make monthly payments due under the promissory notes and expiration of a grace period, had occurred.

23. RACC also demanded that the Debtors comply with applicable provisions of the security agreements. These provisions establish the Debtors' obligations with respect to the condition of the aircraft and, as stated above, these obligations are expressly preserved by section 1110(a)(1). These provisions are identified below. They include, for example, the obligations to maintain the aircraft in an airworthy condition with proper registrations and without liens.

**B.    The Relief Requested In The Motion Fails To Satisfy Obligations Required Under Section 1110 Of The Bankruptcy Code And The Aircraft Security Agreements**

24. The Motion makes passing reference to section 1110 but the Debtors' proposed order seeks authorization for the abandonment of the Aircraft Equipment in an "as is, where is" condition without compliance with either the surrender and return provision of section 1110(c)(1) or with the terms of the Aircraft security agreements, as more fully discussed below. For example, according to Exhibit A to the Motion, and consistent with RACC's observation of the Aircraft, several of the Aircraft appear to be missing one or both of their engines.

25. As an initial matter, abandonment pursuant to section 554 is not an option here. Section 1110(a)(1) provides that a secured party's rights "are not limited or otherwise affected by any other provision of this title or by any power of the court." This provision forecloses a debtor's reliance on section 554 unless the secured party chooses to waive its rights to possession

26. Moreover, section 1110 applies to aircraft and related equipment, whether or not the aircraft and related equipment are in use or are parked. Nothing in the statute limits the application and effectiveness of section 1110 only to aircraft in use.

27. The Debtors' proposal to abandon the Aircraft Equipment "as is, where is" is inconsistent with the specific phrase "surrender and return" used in section 1110(c)(1) to describe a debtor's obligation. *See* Motion ¶ 36 ("Debtors will make abandoned Excess Owned Equipment available to the relevant Secured Parties.").

28. The plain meaning of the phrase "surrender and return" requires a debtor to bring the property back to the secured creditor.[4] Similarly, relinquishing possession "as is, where is" is inconsistent with the Debtors' obligation under its security agreements to "assemble the collateral and make it available to Secured Party at a place designated by Secured Party which is reasonably convenient to both parties." *See* Exhibit B at § 9. Finally, abandonment "as is" is inconsistent with Debtors' other obligations under the security agreements. These include its obligation to "maintain the aircraft in an airworthy condition and good working order." *See* Exhibit B at § 4(d). As shown above, section 1110 preserves a secured party's right under security agreements and compliance with the terms of such agreements are conditions of return that courts must enforce. Debtors' specific obligations under section 1110 and its security agreements are described below.

---

[4] In interpreting the "surrender and return" requirement of Section 1110(c)(1), this court must look first to the plain meaning of the statutory language. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242-43 (1989). Statutory analysis begins with the "understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). Thus, where language within a statute is plain, a court's sole function is to enforce the statute by its terms, unless disposition according to a statute's text would be absurd. *Id*. at 6.

## C. RACC Is Entitled Pursuant To Section 1110 To The Prompt Return Of The Aircraft Equipment Subject To Its Security Interests In A Condition That Satisfies The Provisions Of The Security Agreements

### i. Return of the Airframes, Engines and Spare Parts

29. The security agreement for each Aircraft provides a right of possession:

> Should an event of default occur, Secured Party may employ all remedies allowed by law, including declaring all indebtedness under the Promissory Note, as well as any other indebtedness or liability of Debtor owed to Secured Party, immediately due and payable. Additionally, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties.

Exhibit B at § 9.

30. The Debtors failed to make monthly payments due under the promissory notes, causing an Event of Default under the promissory notes. As contemplated by section 1110(c)(1), RACC made written demand for possession of the Aircraft and for the Debtors' compliance with the provisions of the security agreement. Upon such demand, the Debtors were required to "immediately surrender and return" the Aircraft Equipment in compliance with the terms and conditions set forth in the Aircraft security agreements.

31. Debtors are obligated to return the twenty Aircraft in a fully assembled condition by both the "surrender and return" provision of section 1110(c)(1)[5] and by the requirement in the security agreement to "assemble the Collateral and make it available to Secured Party at a place

---

[5] In *In re ATA Holdings Corp.*, Case No. 04-19866 (Bankr. S. D. Ind. Jan. 3, 2005), the court's order under Section 1110 required the debtors to return the aircraft to the creditors at a designated storage facility in New Mexico, and provided that, "to the extent the Debtors have (a) removed any of the Leased Engines from the Leased Aircraft in which they were originally installed; or (b) installed those Leased Engines in other aircraft, the Debtors, at their own expense, shall reinstall the Lease Engines prior to the Rejection Effective Date, in the Lease Aircraft in which they were originally installed." *In re ATA Holdings Corp.*, Case No. 04-19866 (Bankr. S. D. Ind. Jan. 3, 2005) at ¶7 (A copy is attached hereto as Exhibit D).

to be designated by Secured Party which is reasonably convenient to both parties." The Debtors have proposed to abandon the Aircraft at two locations in Kansas. RACC, which is based in Kansas, is willing to accommodate the Debtors and accept return at those locations, provided the Debtors satisfy their obligation surrender the Aircraft fully assembled so that they can be flown elsewhere. According to Exhibit A of the Motion, it appears that at least three of the Aircraft are missing engines. RACC also is willing to accept return of spare parts and other property subject to its security interest at either Kansas location.

  ii. **Related Return Obligations**

  32. The Debtors also are obligated to return the Aircraft Equipment in a condition that satisfies other relevant terms of the security agreements. The relevant terms and the appropriate means of satisfying them are described below.

  33. Section 4(d) of the security agreements states: "Debtor shall at all times maintain the aircraft in an airworthy condition and in good working order . . ." Section 1110(a)(1) expressly provides for the enforcement of rights under security agreements. The Debtors were obligated to maintain the Aircraft Equipment subject to the security agreements as set forth in the Air Midwest Maintenance Program Manual (the "Manual"). The Manual was approved for use by the Debtors by the Federal Aviation Authority under the authority of FAR 121.369. The Manual states that, "The aircraft and its components, parts, accessories and appliances shall be maintained in an airworthy condition," in accordance with procedures specifically identified in the Manual. The Court's order should enforce this provision by requiring that the Aircraft Equipment be returned in a condition compliant with the Manual's standards.

  34. Similarly, the Court should require the Debtors to furnish to RACC the originals of its current Standard Airworthiness Certificates (FAA Form 8100-2) for each Aircraft.

### iii. **Insurance**

35. The Debtors should be required to maintain hull and liability coverage on each Aircraft until return to RACC in conformity with section 5 of the security agreements.

### iv. **Books and Records; Title**

36. RACC has a security interest in all Aircraft and engine log books and all other documents associated with the Aircraft collateral. *See* Exhibit B at § 1 and Exhibit C at § 1. Accordingly, the Debtors should be ordered to turn over all such documents at the time the Aircraft are returned to RACC. *See* 11 U.S.C. § 1110(a)(3)(B).

37. Similarly, the Debtors should be ordered to provide RACC with bills of sale for the collateral to be returned, to take whatever action is required to register the transfer of ownership with the Cape Town International Registry, and to complete and send to the FAA the pertinent provisions of the FAA Certificate of Aircraft Registration showing transfers of ownership to RACC. With respect to the bills of sale for each Aircraft, the Debtors should deliver a Bill of Sale on FAA Form 8050-2 and a Warranty Bill of Sale that includes a description of the airframe, engines, and propellers by model number and manufacturers serial number.

### v. **Interim Storage Costs**

38. The Court's order should require the Debtors to bear all storage costs associated with Aircraft Equipment through the effective date of the abandonment as agreed to by the interested parties or, in the absence of such agreement, as ordered by the Court.

## IV. CONCLUSION

WHEREFORE, RACC respectfully requests that the Court (i) deny the Motion, or, to the extent the Court grants the motion, grant the Motion subject to the Debtors' satisfaction of the surrender and return conditions as required under section 1110 of the Bankruptcy Code and the applicable Aircraft security agreements, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: January 21, 2010
      New York, New York

BINGHAM McCUTCHEN LLP

By: /s/ Peter D. Schellie
Peter D. Schellie
2020 K Street, N.W.
Washington, DC 20006
(202) 373-6090
Peter D. Schellie (*pro hac vice*)

-and-

399 Park Avenue
New York, New York 10022
(212) 705-7700
Scott K. Seamon
Stephanie W. Mai

*Attorneys for Raytheon Aircraft Credit Corporation*