**Hearing Date and Time:  February 9, 2010 at 3:00 p.m. (Eastern Time)**
**Objection Date:  February 2, 2010**

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**<u>NOTICE OF HEARING</u>**

TO:     (i) the Office of the United States Trustee; (ii) proposed counsel to the Official
Committee of Unsecured Creditors; (iii) affected parties; and (iv) those persons who have
requested notice pursuant to Bankruptcy Rule 2002.

        **PLEASE TAKE NOTICE** that on January 25, 2010, the Debtors filed the

attached Motion for Order (a) Establishing Procedures Authorizing Debtors, Subject to

Subsequent Court Approval, to Perform Obligations and Cure Defaults Pursuant to Section

1110(a) of the Bankruptcy Code and to Enter into Agreements to Extend the 60-Day Period

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

Specified in Section 1110(a) Pursuant to Section 1110(b) of the Bankruptcy Code and (b)

Authorizing the Filing of Redacted Section 1110(a) Election Notices and Section 1110(b)

Agreements Under Seal (the "Motion").

　　　　　**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the relief

sought in the Motion will be held on **February 9, 2010 at 3:00 p.m. Prevailing Eastern Time**

before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States

Bankruptcy Court for the District of New York, One Bowling Green, New York, New York

10004, Courtroom 501.

　　　　　**PLEASE TAKE FURTHER NOTICE** that any response or objection to the

relief sought in the Motion must be filed with the Bankruptcy Court and served upon: (i) the

chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York 10004,

Courtroom 501; (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San

Francisco, California 94111 (Attn: Debra I. Grassgreen and Joshua M. Fried), and Pachulski

Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn:

Maria A. Bove), attorneys for the Debtors, (iii) Mesa Air Group, Inc., Law Department 410 N.

44th St. Suite 700, Phoenix, Arizona 85008, (Attn: Brian S. Gillman, Esq.), (iv) the Office of the

United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, NY 10004 (Attn: Andrea B. Schwartz); (v) Morrison & Foerster LLP, 1290 Avenue

of the Americas, New York, New York 10104 (Attn: Brett H. Miller, Lorenzo Marinuzzi, and

Todd M. Goren), attorneys for the Official Committee of Unsecured Creditors appointed in these

chapter 11 cases; and (vi) any person or entity with a particularized interest in the subject matter

of the Motion, on or before **February 2, 2010.**

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND**

**IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF**

**REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE.**

Dated: January 25, 2010                    PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Maria A. Bove_
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Proposed Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: **February 9, 2010 at 3:00 p.m. (Eastern Time)**
Objection Date: **February 2, 2010**

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**MOTION FOR ORDER (A) ESTABLISHING PROCEDURES AUTHORIZING
DEBTORS, SUBJECT TO SUBSEQUENT COURT APPROVAL, TO PERFORM
OBLIGATIONS AND CURE DEFAULTS PURSUANT TO SECTION 1110(A) OF THE
BANKRUPTCY CODE AND TO ENTER INTO AGREEMENTS TO EXTEND THE 60-
DAY PERIOD SPECIFIED IN SECTION 1110(A) PURSUANT TO SECTION 1110(B)
OF THE BANKRUPTCY CODE AND (B) AUTHORIZING THE FILING OF
REDACTED SECTION 1110(A) ELECTION NOTICES AND
SECTION 1110(B) AGREEMENTS UNDER SEAL**

TO THE HONORABLE MARTIN GLENN:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this motion (the "Motion") and respectively represent as follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364), Mesa Airlines, Inc. (4800), MPD, Inc. (7849), Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.      On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee"), whose members include Bombardier, Inc. Embraer-Empresa Brasilieire de Aeronautica S.A., IHI Corpration, U.S. Bank National Association, AT&T Capital Services, Wilmington Trust Company, and the Air Line Pilots Association.

4.      A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* (the "Lotz Declaration"), filed on the Petition Date.

## The Debtors' Fleet and Related Financing and Lease Arrangements

5.      The Debtors currently maintain a fleet of approximately 178 aircraft (the "Fleet"), consisting of 48 CRJ-200s, 20 CRJ-700s, 38 CRJ-900s, 36 ERJ-145s, and 16 Dash-8, and 20 Beech 1900s. As discussed below, substantially all of the aircraft, related engines and other

equipment in the Debtors' fleet (the "Equipment") are subject to leases or financing

arrangements that may be subject to the provisions of section 1110 of the Bankruptcy Code.

***Beech Aircraft Financing***

6.     The Debtors' fleet includes twenty Beech Model 1900D Airliners that are

financed by Raytheon Aircraft Credit Corporation ("RACC") pursuant to a series of airliner

negotiable promissory notes, each of which is supported by an airliner aircraft security

agreement (the "RACC Agreements"). The outstanding principal balance as of December 14,

2009 for all 20 aircraft was approximately $33.6 million. The Debtors intend to abandon these

aircraft upon authorization from the Court.

***CRJ Owned Aircraft Financing***

7.     The Debtors' fleet also includes Canadair Regional Jets ("CRJ"). The Debtors

own two CRJ 200s, eight CRJ 700s, and fourteen CRJ 900s. The purchase of these aircraft was

financed by loans secured by security agreements (the "CRJ Agreements") The aggregate

outstanding principal balance as of December 31, 2009 with respect to these aircraft is

approximately $393 million.

***Aircraft Lease Obligations***

8.     The remainder of the Debtors' fleet consists of leased CRJs and Embraer

Regional Jets ("ERJ"). The Debtors lease 46 CRJ 200s, 12 CRJ 700s, and 24 CRJ 900s, 16 Dash

8s, and 36 ERJ 145s. These aircraft are subject to leases with certain owner trustees (the "CRJ

Agreements" and together with the RACC Agreements and the CRJ Agreements, the "Aircraft

Agreements"). The aggregate amount outstanding with respect to these aircraft is approximately

$1.62 billion.

     9.     As currently configured, the Fleet is too large for the Debtors' operations.

Approximately 52 aircraft are parked and not being used. In addition, over the next several

months, the Debtors plan to retire additional aircraft that are not needed to service the Debtors'

customers. The Debtors' excess aircraft are either CRJ- 200s, ERJ- 145s, Dash-8s or Beech

1900s.

     10.     By contrast, the Debtors do not anticipate any reduction of the portion of their

Fleet that is CRJ-700s and CRJ-900s aircraft. The Debtors continue to use such aircraft in their

ongoing business operations and they are critical to the Debtors' successful reorganization.

Accordingly, the Debtors do not anticipate abandoning such aircraft during these cases.

     11.     However, there are approximately 40 parties with interests in the Equipment. In

certain transactions, the relationships are governed by complex agreements. Accordingly, it will

take a substantial amount of time to reach definitive agreements to restructure many of the

Debtors' agreements.

### Jurisdiction

     12.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested and Basis for Relief

13.    By this Motion, the Debtors seek an order (a) establishing procedures authorizing

the Debtors, subject to subsequent Court approval, to perform obligations and cure defaults

pursuant to section 1110(a) of the Bankruptcy Code and to enter into agreements to extend the

60-day period specified in Section 1110(a) pursuant to section 1110(b) of the Bankruptcy Code

and Bankruptcy Rule 9018, and (ii) authorizing the filing of redacted Section 1110(a) election

notices and Section 1110(b) agreements under seal pursuant to section 107(b) of the Bankruptcy

Code.

14.    Section 1110(a)(1) provides lessors and lenders with special rights to relief from

the automatic stay:

> [T]he right of a secured party with a security interest in equipment
> [of the type described in section 1110(a)(3)] . . . or of a lessor or
> conditional vendor of such equipment, to take possession of such
> equipment in compliance with a security agreement, lease, or
> conditional sale contract, and to enforce any of its other rights or
> remedies, under such security agreement, lease, or conditional sale
> contract, to sell, lease, or otherwise retain or dispose of such
> equipment, is not limited or otherwise affected by any other
> provision of this title or by any power of the court.

11 U.S.C. § 1110(a)(1).

15.    However, section 1110(a)(2) of the Bankruptcy Code restricts and conditions the

ability of lessors and lenders to exercise their rights:

> The right to take possession and to enforce the other rights and
> remedies described in paragraph (1) shall be subject to section 362
> if –
>
>       (A) before the date that is 60 days after the date of the order
> for relief under this chapter, the trustee, subject to the approval of
> the court, agrees to perform all obligations of the debtor under such
> security agreement, lease, or conditional sale contract; and

(B) any default, other than a default of a kind specified in section 365(b)(2), under such security agreement, lease, or conditional sale contract –

(i) that occurs before the date of the order is cured before the expiration of such 60-day period;

(ii) that occurs after the date of the order and before the expiration of such 60-day period is cured before the later of –

(I) the date that is 30 days after the date of the default; or

(II) the expiration of such 60-day period. . . .

11 U.S.C. § 1110(a)(2).

16.     In addition, Section 1110(b) provides that the 60-day period specified under Section 1110(a) may be extended by agreement between the debtor and the relevant lessor or lender:

The trustee and the secured party, lessor, or conditional vendor whose right to take possession is protected under subsection (a) may agree, subject to the approval of the court, to extend the 60-day period specified in subsection (a)(1).

11 U.S.C. § 1110(b).

17.     In these chapter 11 cases, the 60th day after the order for relief was entered is March 6, 2010, which is a Saturday. Thus, pursuant to Rule 9006(a)(1)(C) of the Federal Rules of Bankruptcy Procedure, the 1110 deadline is Monday, March 8, 2010.

18.     In essence, Section 1110 requires the Debtors to choose one of two options to maintain the protections of the automatic stay with regard to Equipment. First, the Debtors may elect to agree, pursuant to Section 1110(a)(2)(A), to perform all post-petition obligations related to Equipment under the applicable Aircraft Agreements. In addition, the Debtors must cure any

pre-petition defaults which have occurred prior to the 1110 deadline on or before the 1110

deadline, and cure any post-petition defaults on the later of the 1110 deadline or thirty days after

the occurrence of such post-petition defaults.  This agreement to perform under Section 1110(a)

may be exercised unilaterally by the Debtors, without the necessity of consent from any lessor or

lender, but only subject to approval of the Court.

19.    The second option available to the Debtors is to enter into an agreement, under

Section 1110(b), whereby the parties extend the time for the Debtors to agree to perform

obligations and cure defaults under Section 1110(a)(2).  The Debtors cannot invoke Section

1110(b) unilaterally, and 1110(b) Stipulations are subject to the approval of the Court.

**Authorization to Enter Into Section 1110(a) Agreements and Section 1110(b) Agreements**

20.    As described above, the Debtors are seeking to restructure certain leases and debt

financings on terms that are more closely aligned with current market conditions.  However,

given the number of aircraft involved, the complexity of some of the transactions associated with

those aircraft, and the press of other business, the Debtors necessarily will make some decisions

over the next two weeks, and others after that.

21.    It is imperative for the stability of the Debtors' business operations that the

Debtors have authorization to make agreements under Section 1110(a) and Section 1110(b), and,

thus, maintain the automatic stay with respect to the Equipment prior to Court approval, provided

that the agreements are subject to subsequent Court approval.  Accordingly, by this Motion, the

Debtors seek authority to agree to perform obligations pursuant to Section 1110(a), and to enter

into agreements pursuant to Section 1110(b) to extend the 60-day period.  All of the above

agreements shall be immediately effective, such that the automatic stay remains in place, but subject to final approval of the Court, as provided below.

22.      Notwithstanding that Section 1110(a) agreements and Section 1110(b) agreements are subject to final approval of the Court, it is common in airline bankruptcies for courts to authorize airline debtors to make such agreements (and cure defaults as required) prior to final approval of the agreements. *See, e.g., In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. June 3, 2008) (Docket No. 314); *In re Delta Airlines, Inc.*, Case No. 05-17923 (Bankr. S.D.N.Y. Oct. 31, 2005) (Docket No. 972); *In re Northwest Airlines Corporation, et. al.*, Case No. 05-17930 (Bankr. S.D.N.Y. Nov. 10, 2005) (Docket No. 1003); *In re US Airways, Inc., et al.*, Case No. 04-13819 (Bankr. E.D. Va. Nov. 9, 2004) (Docket No. 717); *In re UAL Corporation, et al.*, Case No. 02-48191 (Bankr. N.D. Ill. Feb. 7, 2003) (Docket No. 1207; renumbered no. 1300); *In re US Airways Group, Inc., et al.*, Case No. 02-83984 (Bankr. E.D. Va. Sept. 30, 2002) (Docket No. 726).

23.      The Debtors further request the Court to order that, upon execution and filing of a Section 1110(a) agreement on or before March 8, 2010, the Debtors will have complied with section 1110(a)(2) of the Bankruptcy Code, and, provided that the Debtors perform the obligations required by section 1110(a)(2) in a timely manner, the automatic stay of section 362 of the Bankruptcy Code shall remain in effect with respect to the applicable Equipment, pending final approval of the Section 1110(a) agreement by the Court. Such a determination is also common in airline bankruptcy cases. *See id.*

**Authorization to Cure Defaults Pursuant to Section 1110(a)(2)(B)**

24.     Section 1110(a)(2)(B) requires the cure of certain defaults in order to maintain the

protection of the automatic stay. The Debtors do not believe that Section 1110 requires the

Court to approve such cure payments, once the agreement to perform under Section

1110(a)(2)(A) is approved; however, out of an abundance of caution, the Debtors request

authority to make such payments and to take such actions as may be required under Section

1110(a)(2)(B), in connection with Section 1110(a) agreements.

**Final Approval of 1110(a) Agreements and Determination of Cure Amounts**

25.     The Debtors request that this Court establish the procedures set forth below for

approval of the Debtors' Section 1110(a) agreements.

26.     If the Debtors determine that it is in the best interests of their estates to perform

under an agreement relating to certain Equipment, the Debtors will file with the Court a Notice

of Election Pursuant to Section 1110(a) of the Bankruptcy Code (an "Section 1110(a) Election

Notice"). Each Section 1110(a) Election Notice shall constitute the Debtors' agreement pursuant

to Section 1110(a)(2)(A) to perform the required obligations. Each Section 1110(a) Election

Notice shall list (a) each item Equipment that is the subject of such Section 1110(a) Election

Notice, including (i) for aircraft, the U.S. Federal Aviation Administration ("FAA") Registration

Number, (ii) for engines, the manufacturer's serial number, and (iii) for spare parts, the location

of such parts, (b) for leased Equipment, the lessor, the beneficial owner of such Equipment (if

different and if known) and any indenture trustee, loan trustee or collateral trustee known to the

Debtors to be acting on behalf of debt holders who have provided financing to such lessor

(collectively, the "Leased Aircraft Parties"), (c) for owned Equipment, any mortgagee, security trustee or indenture trustee known to the Debtors to have a security interest in such Equipment (the "Owned Aircraft Parties" and, together with the Leased Aircraft Parties, the "Aircraft Parties"), and (d) the amount, if any (the "Cure Amount"), that the Debtors believe they must pay in order to comply with Section 1110(a)(2)(B).

27.    The Debtors will serve notice of the Section 1110(a) Election Notice by email (if known) and overnight mail on (i) the applicable Leased Aircraft Parties or Owned Aircraft Parties, as the case may be, and (ii) counsel to the Committee; and by email (if known) and regular mail on (iii) parties listed on the Master Service List (as defined in the Court's Order establishing notice procedures and a master service list, dated January 15, 2010 (Docket No. 103)).

28.    Any party in interest may object to a Section 1110(a) Election Notice or any Cure Amount specified therein by filing a written objection with the Court and serving such objection so that it is actually received by each of the following parties (the "Objection Notice Parties") on or before 4:00 p.m. prevailing Eastern Time on the date that is five business days from the filing of the 1110(a) Notice: (i) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attention: Debra Grassgreen and Joshua M. Fried, and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attention: Maria A. Bove, attorneys for the Debtors, (ii) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attention: Lorenzo Marinuzzi, attorneys

for the Committee, and (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st

Floor, New York, New York 10004, Attention: Andrea B. Schwartz.

29.     Any objection must set forth with specificity (1) the party's interest in the affected

Equipment, if any; (2) the basis for the objection; and (3) the amount, if any, that the objecting

party asserts as the Cure Amount, if different from that specified by the Debtors.

30.     If no objection is timely filed, the Debtors' agreement to perform under Section

1110(a)(2)(A) shall be deemed approved, the Debtors' compliance with Section 1110(a)(2)(B)

shall be deemed authorized, and the automatic stay of section 362 shall remain in place as long

as the Debtors comply with their Section 1110(a) obligations.  If an objection is timely filed with

respect to a Section 1110(a) Election Notice, and is not resolved consensually among the parties

within ten (10) days of the date of such objection, the Debtors shall schedule a hearing on the

objection.  If an Section 1110(a) Election Notice applies to multiple pieces of Equipment, and a

timely objection relates to less than all of the Equipment, the Section 1110(a) Election Notice

shall be deemed approved as to all Equipment as to which the objection does not apply.

31.     Rule 6006-1(d) of the Local Bankruptcy Rules for this District states, "Unless the

Court orders otherwise, a debtor in possession or trustee moving for approval of an agreement to

perform all obligations of the debtor pursuant to § 1110(a)(2)(A) of the Bankruptcy Code shall

seek to obtain a return date for the hearing on the motion that is within the 60 days after the order

for relief ...."  This motion constitutes a request that the Court "order otherwise," such that the

hearing on agreements under Section 1110(a) may occur after the 60th day.  The Debtors submit

that in view of the large number of aircraft with respect to which action must be taken,

compliance with the local rule would be burdensome both on the Debtors and on the Court, and

would not fulfill any useful purpose.

## Final Approval of Section 1110(b) Stipulations

32.     In light of the large number of agreements pursuant to Section 1110(b) that the

Debtors may enter into prior to March 8, the Debtors similarly request that this Court establish

the procedures set forth below for approval of Section 1110(b) agreements to extend the 60-day

period specified in Section 1110(a).

33.     Following entry into an agreement under Section 1110(b) (each, a "Section

1110(b) Stipulation"), the Debtors will file the agreement with the Court and serve notice of its

filing by email (if known) and overnight mail on (i) the applicable Leased Aircraft Parties or

Owned Aircraft Parties, as the case may be, and (ii) counsel to the Committee; and by email (if

known) and regular mail on (iii) parties listed on the Master Service List.  Any party in interest

may object to an agreement under Section 1110(b) by filing a written objection with the Court

and serving such objection so that it is actually received by each of the Objection Notice Parties

on or before 4:00 p.m. prevailing Eastern Time on the date that is five business days from the

filing of the applicable 1110(b) Agreement.  Any such objection must set forth with specificity

the basis for the objection.

34.     If no objection is timely filed, the Section 1110(b) Stipulation shall be deemed

authorized and the automatic stay shall remain in effect in accordance with the terms of the

agreement.  If an objection is timely filed and is not resolved consensually among the parties

within ten (10) days, the Debtors shall schedule a hearing on the objection; and the Debtors' time

to perform obligations under Section 1110(a)(2) shall be automatically extended through three

business days following the Court's ruling on the objection.

**Confidentiality Of Section 1110(a) Election Notices and Section 1110(b) Stipulations**

35.     The Debtors further request authority to redact cure amounts in the Section

1110(a) Election Notices and to file Section 1110(b) Stipulations under seal.  Without this relief,

the Debtors believe that both their competitors and aircraft lessors and lenders may utilize the

Section 1110(a) Election Notices and Section 1110(b) Stipulations to the detriment of the

Debtors.  By redacting the cure amounts in the Section 1110(a) Election Notices filing the

Section 1110(b) Stipulations under seal, the Debtors will be able to preserve the confidentiality

of the terms of these deals and maintain a level playing field among the Debtors' competitors and

all of the Debtors' lessors and lenders.

36.     The relief sought by the Debtors is necessary to prevent the various Aircraft

Parties from using the information contained within the Section 1110(a) Election Notices and

Section 1110(b) Stipulations to gain an advantage over the Debtors in their ongoing negotiations

through the disclosure of information relating to the Debtors' arrangements with other Aircraft

Parties that they would not otherwise possess outside of the bankruptcy context.  The relief

sought by the Debtors finds precedent in similar cases and circumstances.  *See, e.g.*, *In re*

*Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. June 3, 2008) (Docket

No. 314); *In re Delta Airlines, Inc.*, Case No. 05-17923 (Bankr. S.D.N.Y. Oct. 31, 2005) (Docket

No. 972); *In re Northwest Airlines Corporation, et. al.*, Case No. 05-17930 (Bankr. S.D.N.Y.

Nov. 10, 2005) (Docket No. 1003).

37.     The Debtors will provide copies of all agreements filed under seal to counsel to

the Committee and the United States Trustee.  This procedure will permit the Committee and the

U.S. Trustee to evaluate the implications of the Section 1110(a) Election Notices and Section

1110(b) Stipulations for the Debtors' estates and intended reorganization, without putting the

Debtors at a competitive and negotiating disadvantage.

38.     Further, the Debtors will provide the Aircraft Parties that have an interest in the

Aircraft Equipment that is the subject of an Section 1110(a) Election Notice or Section 1110(b)

Stipulation with a copy of the relevant unredacted Section 1110(a) Election Notice or Section

1110(b) Stipulation so long as such Aircraft Parties enter into an appropriate confidentiality

agreement with the Debtors.

39.     Section 107(b) of the Bankruptcy Code provides authority to file redacted Section

1110(a) Election Notices and Section 1110(b) Stipulations under seal:

> On the request of a party in interest, the bankruptcy court shall . . .
> (1) protect an equity with respect to a trade secret or confidential
> research, development or commercial information . . .

11 U.S.C. §107(b).  Similarly, Bankruptcy Rule 9018 empowers the Court to "protect the estate

... in respect of a trade secret or other confidential research, development, or commercial

information. . ." Fed.R.Bank.P. 9018(1).

40.     Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 are "designed

to protect business entities from disclosure of information that could reasonably be expected to

cause the entity commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr.

S.D.N.Y. 2003).  "When the requirements of Rule 9018 are satisfied, the authority to issue the

resulting order is broad – any order which justice requires.  The Court notes that the authority

goes not just to the protection of confidential documents, but to other confidentiality restrictions

that are warranted in the interests of justice."  *Id.* at 724 (internal citations omitted).

41.    Once the Court determines that a party in interest is seeking protection of

information that falls within one of the categories enumerated in section 107(b), "the court is

required to protect a requesting interested party and has no discretion to deny the application."

*Video Software Dealers Assn'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24,

27 (2nd Cir. 1994); *see also In re Bennett Funding Group, Inc.*, 226 B.R. 331, 336 (Bankr.

N.D.N.Y. 1998) ("If it is determined that the information sought to be disclosed fits into any of

the specified categories [of section 107(b)], the Court has no discretion in denying access to it.").

Commercial information need not rise to the level of a trade secret to be protected under section

107(b) of the Bankruptcy Code.  *Orion Pictures*, 21 F.3d at 28.

42.    The touchstone for protecting commercial information under section 107(b) of the

Bankruptcy Code and Bankruptcy Rule 9018 is whether disclosure of the information would do

"damage to the estate or its creditors."  *Global Crossing*, 295 B.R. at 725 (citing *In re Farmland

Indus.*, 290 B.R. 364 (Bankr. W.D. Mo. 2003)).  For instance, in *Orion*, the Second Circuit

affirmed the bankruptcy court's order that a licensing agreement remain sealed because the

release of any information pertaining to the licensing agreement would adversely affect the

debtor's ability to negotiate favorable promotional agreements, thereby giving its competitors an

unfair advantage.  *Id.*  In affirming the order of protection, the Second Circuit noted that section

107(b)(1) of the Bankruptcy Code creates an exception to the general rule that court records are

open to examination by the public. *Id.* at 27 (citing *In re Orion Pictures Corp.*, 1993 U.S. Dist. LEXIS 111734, at *2 (S.D.N.Y. Aug. 25, 1993)). The Second Circuit further noted that, under this exception, an interested party has to show only that the information it wishes to seal is "confidential and commercial in nature." *Id.* (internal quotation marks omitted).

43.    Public disclosure of certain of the information contained within the Section 1110(a) Election Notices and Section 1110(b) Stipulations would damage the Debtors' estates. If the terms of existing or renegotiated Aircraft Agreements are revealed, or if it is publicly known, then the Aircraft Parties who are still negotiating with the Debtors likely would insist on terms at least as favorable as the terms in the filed documents, even if the economics of their own arrangements with the Debtors are not comparable. Such parties may also try to "cherry pick" among the most favorable of the terms contained in the earlier-filed papers, leading to a continuing deterioration in the terms which the Debtors could obtain. Therefore, disclosure of the information contained within the Section 1110(a) Election Notices and Section 1110(b) Stipulations would "have a chilling effect on negotiations, ultimately affecting the viability of Debtors" by tilting the playing field against them in their crucial effort to bring the Aircraft Agreements into line with current market conditions. *In re Lomas Fin. Corp.*, No. 90 Civ 7827 (LLS), 1991 U.S. Dist. LEXIS 1589, at *5 (S.D.N.Y. Feb. 11, 1991).

44.    Moreover, disclosure of the information contained within the Section 1110(a) Election Notices and Section 1110(b) Stipulations would confer unfair advantages upon the Debtors' competitors. First, disclosure of the existing or renegotiated terms of the Aircrafts Agreements would give competing airlines a wealth of otherwise non-public information about

the Debtors' costs. Competitors could then use such information in their pricing decisions, to the detriment of the Debtors. The Debtors, on the other hand, would not have comparable information relating to their competitors. The clear risk of unfair competition makes a protective order under section 107(b) of the Bankruptcy Code vital and appropriate in this case. *See Orion Pictures*, 21 F.3d at 27-28 (information that would give unfair advantage to the debtors' competitors is subject to protection under section 107(b)); *see also In re Nunn*, 49 B.R. 963, 965 (E.D. Va. 1985) (issuing protective order under section 107(b) to prevent competitors from gaining unfair competitive advantage over debtors by accessing sensitive customer information).

45.    The information contained within the Section 1110(a) Election Notices and Section 1110(b) Stipulations also would confer an unfair advantage on the Debtors' competitors by undermining the Debtors' efforts to re-negotiate the terms of the Aircraft Agreements. As explained above, disclosure of this information would put the Debtors at a disadvantage in their bargaining with the Aircraft Parties. The Debtors' airline competitors, on the other hand, would remain free to negotiate with their own aircraft lessors and lenders without the handicap of having the terms of their transactions known to such aircraft lessors and lenders. In *Orion Pictures*, the Second Circuit held that the protections of Section 107(b) and Bankruptcy Rule 9018 to maintain the confidentiality of a promotional agreement that the studio had entered into with McDonald's Corporation, the fast-food chain. *See Orion Pictures*, 21 F.3d at 25-26. The Second Circuit upheld the bankruptcy court's decision to issue a protective order where

> . . . [d]isclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to Orion's ability to negotiate favorable promotion

agreements with future customers, thereby giving Orion's competitors an
unfair advantage.

*Orion Pictures*, 21 F.3d at 26 (quoting bankruptcy court decision). As with the promotional

agreement in *Orion Pictures*, disclosure of the information contained within the Section 1110(a)

Election Notices and Section 1110(b) Stipulations in this case would impair the Debtors' ability

to negotiate favorable terms with the Aircraft Parties in the future, thereby giving Debtors'

competitors (who do not publicly disclose the critical terms of their own aircraft agreements) an

unfair advantage.

46.    On the other hand, no right of creditors of the Debtors, including, without

limitation, the Aircraft Parties, or the general public will be prejudiced by the relief sought.

Because the type of confidential commercial information contained within the Section 1110(a)

Election Notices and Section 1110(b) Stipulations would not be revealed by the Debtors outside

of bankruptcy, neither creditors of the Debtors nor the general public will be harmed by

preserving the confidentiality of information that they otherwise would not have in their

commercial dealings. To the extent that creditors of the Debtors may have a legitimate interest

in some of the information contained within the Section 1110(a) Election Notices and Section

1110(b) Stipulations so as to monitor the administration of the Debtors' estates, such interest will

be sufficiently served by providing copies of the unredacted Section 1110(a) Election Notices

and Section 1110(b) Stipulations to counsel to the Committee and the U.S. Trustee.

### Notice

47.    Notice of this Motion has been given to (i) the lessors and lenders having direct

interests in the Equipment (if known to the Debtors); (ii) counsel for the Committee; and

(iii) parties in interest listed on the Master Service List (as defined in the Court's Order

establishing notice procedures and a master service list, entered January 15, 2010).  In light of

the nature of the relief requested, the Debtors submit that no further notice need be given.

### No Prior Request

48.    No previous motion for the relief sought herein has been made to this or to any

other court.

WHEREFORE, the Debtors request entry of the attached Proposed Order granting the

relief requested herein and such other and further relief as may be just and proper.

Dated:    January 25, 2010
          New York, New York          PACHULSKI STANG ZIEHL & JONES LLP


                                      /s/ Maria A. Bove
                                      Richard M Pachulski
                                      Laura Davis Jones
                                      Debra I. Grassgreen
                                      Maria A. Bove
                                      John W. Lucas

                                      780 Third Avenue, 36th Floor
                                      New York, New York 10017
                                      Telephone:  (212) 561-7700
                                      Facsimile:  (212) 561-7777

                                      Proposed Attorneys for Debtors
                                      and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (A) ESTABLISHING PROCEDURES AUTHORIZING DEBTORS,
SUBJECT TO SUBSEQUENT COURT APPROVAL, TO PERFORM
OBLIGATIONS AND CURE DEFAULTS PURSUANT TO SECTION 1110(A) OF THE
BANKRUPTCY CODE AND TO ENTER INTO AGREEMENTS TO EXTEND
THE 60-DAY PERIOD SPECIFIED IN SECTION 1110(A) PURSUANT TO
SECTION 1110(B) OF THE BANKRUPTCY CODE AND (B) AUTHORIZING THE
FILING OF REDACTED SECTION 1110(A) ELECTION NOTICES AND
SECTION 1110(B) AGREEMENTS UNDER SEAL**

Upon consideration of the motion (the "Motion")[2] of Mesa Air Group, Inc., and certain of

its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), seeking entry of

an Order establishing procedures authorizing the Debtors, subject to subsequent Court approval,

to perform obligations and cure defaults pursuant to section 1110(a) of the Bankruptcy Code and

to enter into agreements to extend the 60-day period specified in Section 1110(a) pursuant to

section 1110(b) of the Bankruptcy Code; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due

notice of the Motion having been provided to (i) the lessors and lenders having direct interests in

the Equipment (if known to the Debtors); (ii) counsel for the Official Committee of Unsecured

Creditors; and (iii) parties in interest listed on the Master Service List (as defined in the Court's

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364), Mesa Airlines, Inc. (4800), MPD, Inc. (7849), Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

56772-002\DOCS_LA:214509.3

Order establishing notice procedures and a master service list, entered January 15, 2010); and it appearing that no other or further notice of the Motion need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the Motion, the declaration of Michael J. Lotz Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Orders, dated as of the Petition Date; and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:

1.      The Motion is granted and approved. To the extent any objections to the Motion have not been withdrawn or resolved, they are hereby overruled.

2.      The Debtors are hereby authorized to agree to perform obligations pursuant to section 1110(a) of the Bankruptcy Code, and to enter into agreements pursuant to section 1110(b) of the Bankruptcy Code to extend the 60-day period under Section 1110(a)(2). All such agreements pursuant to Section 1110(a) or Section 1110(b) shall be immediately effective, but shall be subject to final approval of the Court, as provided below.

3.      Upon execution and filing of a Section 1110(a) agreement on or before March 8, 2010, the Debtors shall have complied with section 1110(a)(2) of the Bankruptcy Code, and, provided that the Debtors perform the obligations required by section 1110(a)(2) in a timely manner, the automatic stay of section 362 of the Bankruptcy Code shall remain in effect with respect to the applicable Equipment, pending final approval of the Section 1110(a) agreement by the Court.

4.    The Debtors are authorized to make such payments, and to take such other actions, as are required under section 1110(a)(2)(B) of the Bankruptcy Code in connection with a Section 1110(a) agreement pending final approval of the agreement by the Court.

5.    If the Debtors agree to perform obligations pursuant to section 1110(a) of the Bankruptcy Code with respect to any Equipment, the Debtors shall file with the Court a Notice of Election Pursuant to Section 1110(a) of the Bankruptcy Code (an "Section 1110(a) Election Notice"). Each Section 1110(a) Election Notice shall constitute the Debtors' agreement pursuant to Section 1110(a)(2)(A) to perform the required obligations. Each Section 1110(a) Election Notice shall list (a) each item of Equipment that is the subject of such Section 1110(a) Election Notice, including (i) for aircraft, the U.S. Federal Aviation Administration ("FAA") Registration Number, (ii) for engines, the manufacturer's serial number, and (iii) for spare parts, the location of such parts, (b) for leased Equipment, the lessor, the beneficial owner of such Equipment (if different and if known) and any indenture trustee, loan trustee or collateral trustee known to the Debtors to be acting on behalf of debt holders who have provided financing to such lessor (collectively, the "Leased Aircraft Parties"), (c) for owned Equipment, any mortgagee, security trustee or indenture trustee known to the Debtors to have a security interest in such Equipment (the "Owned Aircraft Parties"), and (d) the amount, if any (the "Cure Amount"), that the Debtors believe they must pay in order to comply with Section 1110(a)(2)(B).

6.    The Debtors shall serve the Section 1110(a) Election Notice by email (if known) and overnight mail on (i) the applicable Leased Aircraft Parties or Owned Aircraft Parties, as the case may be, and (ii) counsel to the Committee; and by email (if known) and regular mail on

(iii) parties listed on the Master Service List (as defined in the Court's Order establishing notice

procedures and a master service list, dated January 15, 2010).

7.      Any party in interest may object to a Section 1110(a) Election Notice or any Cure

Amount specified therein by filing a written objection with the Court and serving such objection

so that it is actually received by each of the following parties (the "Objection Notice Parties") on

or before 4:00 p.m. prevailing Eastern Time on the date that is five business days from the filing

of the 1110(a) Notice: (1) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor,

San Francisco, California 94111, Attention: Debra Grassgreen and Joshua M. Fried, and

Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017,

Attention: Maria A. Bove, attorneys for the Debtors; (2) Mesa Air Group, Inc., Law Department

410 N. 44th St. Suite 700, Phoenix, Arizona 85008, Attention: Brian S. Gillman, Esq.; (3)

Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104,

Attention: Lorenzo Marinuzzi, attorneys for the Committee, and (4) the Office of the United

States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Andrea

B. Schwartz.

8.      Any objection must set forth with specificity (1) the party's interest in the affected

Equipment, if any; (2) the basis for the objection; and (3) the amount, if any, that the objecting

party asserts as the Cure Amount, if different from that specified by the Debtors.

9.      If no objection is timely filed, the Debtors' agreement to perform under Section

1110(a)(2)(A) shall be deemed approved, the Debtors' compliance with Section 1110(a)(2)(B)

shall be deemed authorized, and the automatic stay of section 362 shall remain in place as long

as the Debtors comply with their Section 1110(a) obligations. If an objection is timely filed with respect to a Section 1110(a) Election Notice, and is not resolved consensually among the parties within ten (10) days of the date of such objection, the Debtors shall schedule a hearing on the objection. The Debtors need not seek a return date for such hearing prior to March 8, 2010. If a Section 1110(a) Election Notice applies to multiple pieces of Equipment, and a timely objection relates to less than all of the Equipment, the Section 1110(a) Election Notice shall be deemed approved as to all Equipment as to which the objection does not apply.

10.    Any objections to any 1110(a) Notice or any Cure Amount shall be served and filed in accordance with the procedures specified in this Order, or such objections shall be barred.

11.    Following entry into an agreement under Section 1110(b) (a "Section 1110(b) Stipulation"), the Debtors shall file the agreement with the Court and serve notice of its filing by email (if known) and overnight mail on (i) the applicable Leased Aircraft Parties or Owned Aircraft Parties, as the case may be, and (ii) counsel to the Committee; and by email (if known) and regular mail on (iii) parties listed on the Master Service List. Any party in interest may object to Section 1110(b) Stipulation by filing a written objection with the Court and serving such objection so that it is actually received by each of the Objection Notice Parties on or before 4:00 p.m. prevailing Eastern Time on the date that is five business days from the filing of the applicable Section 1110(b) Stipulation. Any such objection must set forth with specificity the basis for the objection.

12.     If no objection is timely filed, the Section 1110(b) Stipulation shall be deemed

authorized and the automatic stay shall remain in effect in accordance with the terms of the

agreement.  If an objection is timely filed and is not resolved consensually among the parties

within ten (10) days, the Debtors shall schedule a hearing on the objection; and the Debtors' time

to perform obligations under Section 1110(a)(2) shall be automatically extended through three

business days following the Court's ruling on the objection.  Any objections to any Section

1110(b) Stipulation shall be served and filed in accordance with the procedures specified in this

Order, or such objections shall be barred.

13.     The Debtors are hereby authorized to file Section 1110(a) Election Notices with

the proposed cure amounts redacted.

14.     The Debtors are hereby authorized to file Section 1110(b) Stipulations under seal

pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

15.     Notwithstanding the possible applicability of Bankruptcy Rules 6007, 7062, 9014,

any other provision of the Bankruptcy Rules, Bankruptcy Code or otherwise, this Order shall

take effect immediately upon signature by this Court.

16.     The Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the implementation of this Order.

17.     Service of the Motion as provided therein shall be deemed good and sufficient

notice of such Motion.


Dated: _____, 2010         _____
                                     UNITED STATES BANKRUPTCY JUDGE