**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**FINAL ORDER AUTHORIZING DEBTORS TO (I) PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND CERTAIN ADMINISTRATIVE CLAIMHOLDERS AND (II) AUTHORIZE FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion dated January 5, 2010 (the "Motion")[2] [Docket No. 13] of Mesa Air Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, seeking the entry of an interim order (the "Interim Order") and final order (the "Final Order") for authority to pay in the ordinary course of business prepetition claims of critical vendors, as more fully described in the Motion; and upon consideration of the Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided and that no

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

other or further notice is necessary; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having held an interim hearing on January 5, 2010 and entered the Interim Order on January 6, 2010; and the Court having entered the *Amended Interim Order Authorizing Debtors To (I) Pay Prepetition Claims Of Critical Vendors And Certain Administrative Claimholders And (II) Authorize Financial Institutions To Honor And Process Related Checks And Transfers* on January 13, 2010; and the Court having held a final hearing (the "<u>Final Hearing</u>") on January 26, 2010; and the Court having determined that the legal and factual bases set forth in the Motion and at the Final Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is hereby granted and approved on a final basis to the extent provided herein; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of the Lienor Critical Vendors, provided that payments to such vendors do not exceed $3,880,000.00; and it is further

ORDERED that, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of the Non-Lienor Critical Vendors up to the Non-Lienor Critical Vendor Claims Cap, who agree to continue to supply goods or services to the Debtors on such vendors' Customary Trade Terms for a period following the date of the agreement and on other such terms and conditions as are acceptable to and requested by the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors in their discretion. As used herein, Customary Trade Terms means, with respect to a Non-Lienor Critical Vendor, (i) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), that were most favorable to the Debtors and in effect between such vendor and the Debtors prior to the Petition Date or (ii) such other trade terms as agreed by the Debtors and such vendor; and it is further

ORDERED that after the date hereof, the Debtors shall determine, in the ordinary course of business, who is a Critical Vendor by considering, among other things, (a) which suppliers were sole source or limited source suppliers, without whom the Debtors could not continue to operate without disruption, (b) which suppliers would be prohibitively expensive to replace, (c) which suppliers present an unacceptable risk should they cease the provision of truly essential services or supplies and (d) the extent to which suppliers may be able to obtain or have obtained trade liens on equipment, supplies or goods of the Debtors; and it is further

ORDERED that the Debtors shall maintain a matrix (the "Matrix") summarizing (a) the name of each Critical Vendor paid on account of vendor claims, (b) the amount paid to each Critical Vendor on account of its vendor claim and (c) the goods or services provided by such Critical Vendor. The Debtors shall provide the Matrix to the U.S. Trustee and the professionals engaged by the official committee of unsecured creditors (the "Committee"), on a weekly basis, with respect to Lienor Critical Vendors. With respect to Non-Lienor Critical Vendors, the Debtors shall provide the Matrix to such parties each time the payments to the Non-Lienor Critical Vendors aggregate $250,000, but no less frequently than on a weekly basis; and it is further

ORDERED that the Committee's professionals shall keep the Matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of the Committee, without prior written consent from the Debtors; and it is further

ORDERED that the Debtors shall, to the extent they deem required in their sole discretion, undertake all appropriate efforts to cause Non-Lienor Critical Vendors and holders of 503(b)(9) Claims to enter into an agreement (the "<u>Vendor Agreement</u>") including provisions substantially in the form attached to the Motion as <u>Exhibit B</u>; and it is further

ORDERED that, pursuant to section 503(b)(9) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the 503(b)(9) Claims held by Critical Vendors, <u>provided</u> <u>that</u> any payment of 503(b)(9) Claims shall be conditioned upon the claimant's agreement to Customary Trade Terms and execution of the Vendor Agreement, and any other terms and conditions as the Debtors deem appropriate.  Payments of 503(b)(9) Claims shall not count against the Non-Lienor Vendor Claims Cap.  For the avoidance of doubt, the Debtors shall not pay any 503(b)(9) Claims asserted by claimants that are not Critical Vendors; and it is further

ORDERED that the Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so.  However, the Debtors' inability to enter into a Vendor Agreement shall not preclude them from paying a claim when, in the exercise of their reasonable business judgment, such payment is necessary to the Debtors' operations; and it is further

ORDERED that if the Debtors, in their discretion, determine that a Non-Lienor Critical Vendor has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the agreement, or on such

terms as were individually agreed to between the Debtors and such vendor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the Non-Lienor Critical Vendor as contained in this Final Order, provided, however, that the Vendor Agreement may be reinstated if (x) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the vendor; (y) the underlying default under the Vendor Agreement is fully cured by the vendor not later than five business days after the date the initial default occurred; or (z) the Debtors, in their discretion, reach a subsequent agreement with the vendor; and it is further

ORDERED that if a Vendor Agreement is terminated as set forth above, or if a Non-Lienor Critical Vendor that has received payment of a prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Final Order, then (a) the Debtors may, in their discretion, declare that the payment of the such vendor's claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such vendor, (b) the creditor shall immediately return such payments in respect of its claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever and (c) the creditor's claim shall be reinstated in such an amount so as to restore the Debtors and the Non-Lienor Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the claim had been made; and it is further

ORDERED that all Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Final Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; and it is further

ORDERED that each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Motion are authorized to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts, and are authorized to rely on the Debtors' designation of any particular check as approved by this Final Order; and it is further

ORDERED that nothing contained herein shall be deemed as an impairment of the Debtors' rights to contest the validity or amount of any claims asserted by any Critical Vendor or paid pursuant to authority granted under this Final Order, and the Debtors' rights in connection therewith are hereby preserved; and it is further

ORDERED that nothing contained in this Final Order shall be deemed to constitute an assumption of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein; and it is further

ORDERED that notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Final Order.

Dated: January 26, 2010
      New York, New York

                                               /s/ Martin Glenn
                                             UNITED STATES BANKRUPTCY JUDGE