**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**STIPULATED ORDER AUTHORIZING DEBTORS TO (I) ABANDON
CERTAIN AIRCRAFT, ENGINES, AND OTHER RELATED
EQUIPMENT, (II) TRANSFER TITLE TO CERTAIN AIRCRAFT,
ENGINES, AND OTHER RELATED EQUIPMENT, AND (III) SATISFY THE
SURRENDER AND RETURN REQUIREMENTS UNDER THE BANKRUPTCY CODE**

This matter came before the Court upon the motion, dated January 5, 2010 (the "Motion"),[2] [Dkt. no. 9], of Mesa Air Group, Inc. and its affiliated debtors and debtors in possession (the "Debtors") for authorization and approval, pursuant to sections 105(a), 363(b), 554(a), and 1110 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003, 6004, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i) abandon certain aircraft, engines and other related equipment that was identified on an attached exhibit, (ii) transfer title to such aircraft, engines and other related equipment to mortgagees, security trustees, or indenture trustees having security interests therein, and (iii) satisfy the surrender and return requirements of the Bankruptcy Code.  The Court has considered the Motion, the Objections filed by Raytheon Aircraft Credit Corporation ("RACC", and together with the Debtors, the "Parties"), filed on January 8, 2010 [Dkt. No. 66] and January 21, 2010 [Dkt. No. 131], and has been advised that the Parties have reached an agreement with respect to the relief requested in the Motion on the terms set forth herein.

Accordingly, the Court hereby finds that:

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

DOCS_SF:69714.2
A/73274232.2

A. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward Acting C.J.) and consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B. Due and proper notice of the Motion has been provided and no other or further notice is necessary.

C. The relief granted in this Order is in the best interests of the Debtors, their estates and creditors, and the legal and factual bases set forth in the Motion and the Declaration of Michael J. Lotz in Support of First Day Motions establish just cause for the relief granted herein.

D. On January 5, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code.

E. Prior to the Petition Date, RACC financed the purchase by the Debtors of twenty (20) Beech 1900D aircraft and related airframe, engines, propellers, avionics and all other equipment, parts and components installed in or on, or acceded to, or associated with the foregoing as further described on Exhibit A attached to this Order ("Exhibit A) and all related books and records (collectively, the "Aircraft"). The Debtors evidenced their obligations and secured their performance by executing and delivering to RACC a promissory note and a security agreement for each Aircraft (together with all related financing, security agreements and collateral documents, the "Aircraft Agreements"), which, with relevant filings, provided RACC with a perfected security interest in the Aircraft and related assets, records and documents. As of January 1, 2010, the Debtors owed RACC $32,753,103.22.[3]

F. On December 1, 2009, the Debtors failed to make the monthly payments that were due under each promissory note, as well as subsequent payments. Following a grace

---

[3] This amount does not take into account amounts accrued or payments received after January 1, 2010.

period, this failure constituted an event of default under each promissory note and related security agreement, as well as under other agreements to which RACC and the Debtors are parties. As a result, prior to the Petition Date, RACC accelerated the payment of the debt.

G. On the Petition Date, the Debtors filed the Motion seeking, among other things, to abandon the Aircraft.

H. On January 8, 2010, RACC filed an objection to the Motion [Dkt. No. 66].

I. On January 11, 2010, the Debtors submitted to the Court an agreed form of order with respect to the interim relief sought in the Motion [Dkt. No. 85], which was entered by the Court on January 19, 2010 [Dkt. No. 110] (the "Interim Order").

J. As contemplated by the Interim Order, although the Parties were pursuing a consensual resolution of various issues, in order to avoid the consequences specified by the Interim Order in the absence of an objection being filed, on January 21, 2010, RACC filed a renewed objection to the final relief requested in the Motion [Dkt. No. 131].

K. The Parties have negotiated in good faith and at arms' length a consensual abandonment of, and required surrender and return conditions for, the Aircraft, pursuant to the terms set forth in this Order.

L. The Debtors have publicly disclosed that the aggregate value of the Aircraft being surrendered and returned pursuant to this Order, in accordance with the Debtors' market determination of fair market value, is $14 million. For purposes of the current proceeding, (a) the Debtors ratify and confirm that the aggregate value of the Aircraft is $14 million, and (b) RACC stipulates with the Debtors to the value ascribed to the Aircraft by the Debtors. Notwithstanding the foregoing, neither the Official Committee of Unsecured Creditors appointed in this case (the "Committee") nor any other interested party is bound by such stipulation and, if there is an objection or challenge regarding the value of the Aircraft, RACC's foregoing stipulation with the Debtors does not bind RACC in connection with any such objection or challenge.

Accordingly, it is hereby

ORDERED that, the Debtors are hereby authorized to abandon the Aircraft and related equipment specified in <u>Exhibit A</u>, attached hereto, in accordance with and subject to the satisfaction of the surrender and return conditions (the "<u>Return Conditions</u>") set forth herein. The abandonment of the Aircraft is authorized pursuant to section 554(a) of the Bankruptcy Code and is being undertaken through the performance of certain surrender and return obligations as required by section 1110 of the Bankruptcy Code or as agreed between the Debtors and RACC. Each Aircraft shall be deemed abandoned and surrendered and returned by the Debtors as of the Effective Date (as defined below).

ORDERED that, the Debtors shall satisfy the following Return Conditions with respect to each Aircraft as follows:

(a)    <u>General Condition</u>:  Each Aircraft must be returned with a full complement of engines, propellers, avionics, equipment, parts and components, including all additions, accessions and substitutions of the aforesaid items to the extent that the foregoing is within the care, custody or control of the Debtors or could be within the Debtors' care, custody and control upon the exercise of the Debtors' commercially reasonable efforts (which the Debtors agree to undertake). However the Debtors will not be required (i) to acquire any missing parts or equipment unless they have failed to use commercially reasonable efforts to locate and return them or (ii) to install or place on-wing engines or propellers that are currently not installed but are at the Debtors' Kansas storage facilities. The process of inspecting all of the Aircraft will be completed as soon as possible (the "<u>Completion Date</u>") and the Parties will work expeditiously to begin and complete the process. The Debtors will not remove any avionics, equipment, parts or components installed in or on the Aircraft or associated with the Aircraft. The Aircraft and all related equipment will be formally transferred to RACC at an agreed time on the third business day following the Completion Date (the "<u>Effective Date</u>"). Any avionics, equipment, parts or components not currently installed in or on the Aircraft will be delivered to RACC on the Effective Date, along with any loose equipment, spare parts, tooling and ground support equipment for the Aircraft in the Debtors' possession in Wichita and Salina, Kansas.

(b) <u>Bills of Sale</u>:  For each Aircraft, the Debtors will provide RACC with (a) a Bill of Sale on FAA Form 8050-2 and (b) a Warranty Bill of Sale which, among other things, includes a description of the airframe, engines and propellers by model number and manufacturer's serial number.

(c) <u>International Registry</u>:  The Debtors will promptly take whatever action as may be required to register the transfer of ownership of each Aircraft to RACC (inclusive of engines) with the Cape Town International Registry.

(d) <u>Certificate of Aircraft Registration</u>:  The Debtors will complete the section entitled "Effect of Registration" on the reverse side of each Certificate of Aircraft Registration card (FAA Form 8050-3) showing transfer of ownership to RACC and thereafter immediately return the card to the FAA in accordance with the instructions on said card.

(e) <u>Standard Airworthiness Certificate</u>:  The Debtors will deliver with each Aircraft the original of its current Standard Airworthiness Certificate (FAA Form 8100-2).

(f) <u>Liens and Taxes</u>:  The Debtors agree, and represent and warrant, that, since October 13, 2009, they have not created, permitted or suffered any liens, security interests and encumbrances of third parties on the Aircraft and further agree that RACC may undertake (in its own or the Debtors' name, but at RACC's cost) actions and activities to eliminate any other liens, security interests or encumbrances of third parties without any further act or action by the Debtors or order of the Court.  The Debtors also agree, and represent and warrant, that with respect to the Aircraft there are not any Taxes (as defined in the relevant Aircraft Agreement) owed by the Debtors to any taxation or governmental authority.

(g) <u>Storage Expenses</u>:  The Debtors will settle all storage expenses up through and including the Effective Date.  RACC will be responsible for storage expenses after the Effective Date.

(h) <u>Logbooks and Records</u>:  All of the following that are either in the care, custody or control of the Debtors, or that could be, with the Debtors' commercially reasonable efforts (which the Debtors agree to undertake), within the Debtors' care, custody and control,

will be delivered to RACC with each Aircraft: (i) all airframe, engine and propeller logbooks, (ii) flight log, (iii) Aircraft records and documents, including, without limitation, engine "run sheets" since the aircraft have been parked, (iv) airline maintenance and component records, including, without limitation, FAA Form 337, Form 8110 and Form 8130 records, supplemental type certificates (STCs), engineering orders and maintenance task cards, including, without limitation, such records and documents reflecting component removals, repairs, exchanges, substitutions and overhauls, and (v) the Aircraft Flight Manual, the Pilot's Operating Manual, and all weight and balance documentation. All logbooks and records must be up-to-date and properly signed off in accordance with FAA regulations. The chief inspector acting for the Debtors will have completed a final sign-off in the airframe, engine and propeller logbooks documenting, as applicable, total time, total cycles, relevant dates and flight hour meter data.

    (i) <u>Computerized Maintenance Program Data</u>: The Debtors will provide RACC with a copy of the final database run of the Debtors' computerized records on each Aircraft in accordance with the Air Midwest FAA Approved Maintenance Program in effect at the time of the Debtors' surrender of the Air Midwest Part 121 Certificate. To the extent that there have been any additional entries in the Program since that database run, the final print-out shall be brought current and contain the following data at a minimum: (i) total time and total cycles on each airframe, engine, line replaceable unit (LRU) and propeller by part and serial number, (ii) total time and total cycles on each engine module, including time since overhaul (TSO), cycles since overhaul (CSO), and time since last hot section inspection, (iii) total time and total cycles, including TSO and CSO, on all life-limited components installed in or on each airframe, engine and propeller by part and serial number, (iv) tracking data on all other on-board equipment and tracked appliances, and (v) status of all required inspections.

    (j) <u>Insurance</u>: The Debtors shall maintain hull and liability coverage on the Aircraft in accordance with the requirements of the relevant Aircraft Agreement through the Effective Date. RACC shall be responsible for insurance after the Effective Date.

(k)     Location:  On the Effective Date, each Aircraft will be delivered to RACC, along with its keys, at its current location in either Wichita or Salina, Kansas.

(l)     Cooperation; Etc.:  The Debtors will promptly take whatever reasonable actions as may be requested by RACC in order to timely accomplish the transfer of ownership and possession of each Aircraft to RACC and to provide any documents evidencing the transfer of ownership and RACC's rights in and to the Aircraft and other property being transferred as contemplated hereby; and it is further

ORDERED that RACC will be entitled to assert an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code only to the extent that the Debtors fail to perform or breach the Return Conditions or other obligations set forth in this Order.  The Debtors and the Committee reserve the right to object to or otherwise challenge the assertion of any such administrative expense claim; and it is further

ORDERED that RACC reserves the right to assert unsecured claims arising from the security agreements and related collateral documents as well as under the other Aircraft Agreements and the Debtors and the Committee reserve the right to object to or otherwise challenge any such claims; and it is further

ORDERED that, the Debtors and RACC are hereby authorized and directed to execute and deliver all instruments and documents and take any additional actions as may be necessary or appropriate to implement and effectuate the relief granted herein; and it is further

ORDERED that, except to the extent otherwise provided herein, this Order does not limit or affect the rights, remedies or claims of RACC under the provisions of the Bankruptcy Code; and it is further

ORDERED that, this Order does not otherwise affect any term or provision of the Aircraft Agreements except as expressly set forth in this Order, and that the parties hereto reserve all of their respective rights, remedies, and claims with respect thereto; and it is further

ORDERED that, this order shall be binding upon the Parties hereto, their respective successors and assigns (including without limitation any subsequently appointed

chapter 7 trustee or examiner with expanded powers), and all creditors and other parties in interest in these Cases, from the date of its entry by the Court; and it is further

ORDERED that the notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rules 2002(a), 6004, 6007, and 9014 by providing the affected parties and parties in interest with notice of the Motion and an opportunity to object and be heard at a hearing; and it is further

ORDERED that notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 6007, 7062, 9014, or otherwise, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry, and it is further

ORDERED that the Court retains jurisdiction with respect to all matters arising from or related to the interpretation and enforcement of this Order.

Dated: January 26, 2010
      New York, New York

                                        /s/ Martin Glenn_____
                                        UNITED STATES BANKRUPTCY JUDGE