PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF INTERIM AND
FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND
BANKRUPTCY RULE 4001:  (A) AUTHORIZING DEBTORS TO ENTER INTO
NEW LETTER OF CREDIT FACILITY WITH COMPASS BANK; (B) AUTHORIZING
USE OF CASH COLLATERAL PLEDGED TO COMPASS BANK; (C) MODIFYING
THE AUTOMATIC STAY; (D) GRANTING ADEQUATE PROTECTION; (E)
AUTHORIZING DEBTORS TO ASSUME PURCHASING CARD AGREEMENT WITH
COMPASS BANK; (F) SCHEDULING A FINAL HEARING; AND
(G) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN:

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this

Court (this "Motion"), pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 365 and Rule 4001

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of (a) an interim order (the "Interim Order"), in substantially the form attached hereto as **Exhibit A**: (i) authorizing Debtors to enter into a new letter of credit facility with Compass Bank (the "Bank"); (ii) authorizing Debtors to use cash collateral pledged to the Bank; (iii) modifying the automatic stay; (iv) granting adequate protection; (v) scheduling a final hearing (the "Final Hearing"); and (vi) granting related relief and (b) a final order: (i) authorizing the foregoing relief on a final basis; and (ii) authorizing Mesa Airlines (as defined below) to assume a prepetition purchasing card agreement with the Bank and to cure any defaults arising thereunder. In support of this Motion, the Debtors respectfully represent as follows:

### Background

1.      On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee"). The members of the Committee are: Bombardier, Inc.; Embraer-Empresa Brasilieire de Aeronautica S.A.; IHI Corporation; U.S. Bank National Association; AT&T Capital Services; Wilmington Trust

Company; the Air Line Pilots Association; and the Association of Flight Attendants - CWA (ex-officio member).

4.     A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, filed on the Petition Date.

## Summary of Relief Requested

5.     In the ordinary course of their business, the Debtors are required to provide to third parties letters of credit to secure the Debtors' payment or performance of certain obligations, including, without limitation:  (a) workers' compensation obligations, (b) obligations owed to municipalities, (c) obligations associated with foreign operations, (d) contractual or permit obligations, (e) fuel and liquor taxes, (f) airport obligations, and (g) U.S., Canadian or other customs requirements.  Failure to provide, maintain or timely replace these letters of credit could jeopardize the Debtors' ability to conduct their operations.  The Bank provides the Debtors with letters of credit.

6.     On January 8, 2010, the Debtors filed the *Debtors' Motion for Order Authorizing Debtors to Continue and Renew Letters of Credit and Surety Bond Programs* [Docket No. 73], pursuant to which they sought authority to, among other things, renew and obtain additional letters of credit under their existing program with the Bank.[2]  However, the prepetition agreement with the Bank is expiring soon and the Bank has informed the Debtors that it will not

---

[2] *See Debtors' Motion for Order Authorizing Debtors to Continue and Renew Letters of Credit and Surety Bond Programs*, filed on January 8, 2010 (the "Motion to Continue and Renew LOC and Surety Bond Programs") [Docket No. 73].

issue new letters of credit without the certainty of a new postpetition agreement and the validation of its prepetition debt. In addition, in connection with their cash management system, the Debtors maintained certain depository accounts at the Bank prior to the Petition Date, and Mesa Airlines and the Bank are parties to a prepetition purchasing card agreement. The Debtors have determined that it is in the best interests of their estates to enter into a new postpetition letter of credit facility and assume the purchasing card agreement with the Bank. Accordingly, by this Motion, the Debtors request authority to enter into a new postpetition letter of credit facility with the Bank on substantially the same terms as the prepetition agreement, validate the Bank's liens and claims arising under the prepetition agreements with the Bank and assume the purchasing card agreement. As discussed below, the relief requested herein is critical to the Debtors' continued operations.[3]

### The Debtors' Prepetition Letter of Credit Facility With Compass Bank

7.      Mesa Air Group, Inc. ("MAG"), Mesa Airlines, Inc. ("Mesa Airlines") and Freedom Airlines, Inc. ("Freedom Airlines"), on the one hand, and the Bank, on the other hand, entered into that certain *Second Amended and Restated Letter of Credit and Reimbursement Agreement*, dated March 9, 2009, pursuant to which, among other things, the Bank agreed to make available a Letter of Credit Facility to MAG, Mesa Airlines and Freedom Airlines, and MAG, Mesa Airlines and Freedom Airlines agreed to reimburse the Bank for any draws on Letters of Credit pursuant to such facility. A true and correct copy of the Second Amended and Restated Letter of Credit and Reimbursement Agreement is attached hereto as **Exhibit B**. (The

---

[3] The instant Motion moots the Motion to Continue LOC and Surety Bond Programs as to letters of credit, but the surety programs will continue to be addressed pursuant to the Motion to Continue LOC and Surety Bond Programs scheduled for hearing on February 3, 2010 at 10:00 a.m.

Second Amended and Restated Letter of Credit and Reimbursement Agreement is hereinafter referred to as the "Prepetition Credit Agreement".)[4]

8.     The obligations pursuant to the Prepetition Credit Agreement and certain other obligations are secured pursuant to, among other documents, that certain *Second Amended and Restated Cash Collateral Account Agreement*, dated as of March 9, 2009 (the "Prepetition Cash Collateral Agreement"). A true and correct copy of the Prepetition Cash Collateral Agreement is attached hereto as **Exhibit C**. (The Prepetition Credit Agreement and the Prepetition Cash Collateral Agreement, along with any and all other prior, contemporaneous and subsequent documents relating thereto, are collectively referred to herein as the "Prepetition Letter of Credit Agreement".)

9.     As described more fully in § 2 of the Prepetition Cash Collateral Agreement, among other things, MAG, Mesa Airlines, Freedom Airlines, and each of them, assigned, granted and transferred to Bank a first-in-lien-priority continuing security interest in all of Grantor's right, title and interest in and to, among other things, the following property, whether then owned or thereafter acquired:

> a.     the Cash Collateral Account and all cash, checks, drafts, documents, certificates, passbooks, instruments and other amounts, if any, from time to time deposited or held (whether by physical possession, book entry or otherwise) in and/or evidencing the Cash Collateral Account, including, without limitation, all wire transfers made, or in the process of being made, and all other deposits, to the Cash Collateral Account;
>
> b.     all Permitted Investments, including all investment property, certificates, instruments, and securities from time to time representing or evidencing such Permitted Investments and any

---

[4] Capitalized terms not otherwise defined in this Motion shall have the meanings given to those terms in the Prepetition Credit Agreement.

account or accounts in which such Permitted Investments may be held by, or in the name of, Bank for or on behalf of Grantor;

c.      all interest, cash, instruments and other property from time to time held (whether by physical possession, book entry or otherwise) in, received, receivable, or otherwise payable in respect of, or in exchange for, any or all of the foregoing;

d.      all present and future accounts, contract rights, chattel paper (whether tangible or electronic), deposit accounts, documents, general intangibles (including, without limitation, payment intangibles and software), goods, instruments (including, without limitation, promissory notes), investment property, letter of credit rights, letters of credit, money, supporting obligations (in each case as such terms are defined in the UCC), and any other rights and interests pertaining to any of the foregoing, all documents, instruments or passbooks now or hereafter evidencing the Cash Collateral Account, together with all replacements, substitutions, renewals, products or proceeds of any of the foregoing, and all powers, options, rights, privileges and immunities pertaining thereto (including the right to make withdrawals therefrom); and

e.      to the extent not covered by clauses (a), (b), (c) or (d) above, all products and proceeds as defined under the UCC of any or all of the foregoing of every type.

(Collectively, any and all property securing the Secured Obligations, as that term is defined in the Prepetition Cash Collateral Agreement, is referred to herein as the "Prepetition Collateral".) Notwithstanding the foregoing, other than the amounts held in the Cash Collateral Account, the Bank and the Debtors agree that no Prepetition Collateral of the types listed above in (b) through (d) existed as of the Petition Date.

10.      To secure all of the Debtors' secured obligations to Bank under the Prepetition Letter of Credit Agreement, the Bank holds a first-in-lien-priority properly perfected continuing security interest in and to the Cash Collateral Account (as that term is defined in §1 of the Prepetition Cash Collateral Agreement) by virtue of, among other things: (i) any and all of the

Debtors' funds on deposit with the Bank being held in a segregated Cash Collateral Account (as that term is defined in § 1 of the Prepetition Cash Collateral Agreement) pursuant to §§ 4 and 5 of the Prepetition Cash Collateral Agreement; (ii) UCC Financing Statement filed on November 29, 2008 with the Office of the Nevada Secretary of State, Instrument No. 2008-030131-1; and (iii) UCC Financing Statement filed on March 16, 2009 with the Office of the Nevada Secretary of State, Instrument No. 2009-006488-8.

11.    Pursuant to the Prepetition Letter of Credit Agreement, any and all reimbursement obligations of Debtors to Bank under the Prepetition Letter of Credit Agreement shall bear interest from and including the date that Bank pays the applicable drawing under a letter of credit to and including the date of reimbursement for such drawing at a per annum rate equal to the Prime Rate, and upon the occurrence of an Event of Default, the Prime Rate plus an additional three percent (3%).

12.    As of the Petition Date, thirty four letters of credit issued by the Bank under the Prepetition Letter of Credit Agreement were outstanding in the aggregate amount of $11,904,719, as set forth on **Exhibit D** hereto. Of these letters of credit, one expires on January 31, 2010, one expires on February 6, 2010, and twelve expire on February 15, 2010.

13.    On or about January 6, 2010, Raytheon Aircraft Corporation ("Raytheon") notified Bank that it would be drawing on a certain letter of credit issued to it by Bank for the benefit of Debtors in the amount of $903,990 (the "Raytheon Draw").

14.    The Raytheon Draw was appropriately tendered and paid for by Bank on January 11, 2010.

15. On or about January 26, 2010, International Fidelity Co. ("International Fidelity") notified Bank that it would be drawing on a certain letter of credit issued to it by Bank for the benefit of Debtors in the amount of $200,000.00 (the "International Fidelity Draw").

16. The International Fidelity Draw was appropriately tendered and paid for by Bank on January 29, 2010.

17. Pursuant to the Prepetition Letter of Credit Agreement, interest has been accruing on the amount of $200,000, plus $275 in fees, since January 29, 2010 at the rate of Prime Rate plus three percent (3%) and will continue to accrue up to and including the date of reimbursement by the Debtors.

18. Pursuant to the Prepetition Letter of Credit Agreement, interest has been accruing on the amount of $903,990, plus $275 in fees, since January 11, 2010 at the rate of Prime Rate plus three percent (3%) and will continue to accrue up to and including the date of reimbursement by the Debtors.

### The Debtors' Proposed New Letter of Credit Facility With Compass Bank and Use of Cash Collateral

19. As noted above, the Debtors require the renewal of various Letters of Credit that will soon expire. The Bank is willing to make additional or replacement Letters of Credit available to Debtors on a postpetition basis on substantially similar terms as the Prepetition Letter of Credit Agreement. To ensure that no disruption occurs in the Debtors' business as a going concern, the Debtors and the Bank have agreed on the form of that certain *Third Amended and Restated Letter of Credit and Reimbursement Agreement*, dated as of January 5, 2010 (the "Postpetition Credit Agreement"), and that certain *Third Amended and Restated Cash Collateral*

*Account Agreement*, dated as of January 5, 2010 (the "<u>Postpetition Cash Collateral Agreement</u>"), in substantially the forms attached hereto as **Exhibits E and F**. (The Postpetition Credit Agreement and the Postpetition Cash Collateral Agreement, along with any and all other prior, contemporaneous and subsequent documents relating thereto, are collectively referred to herein as the "<u>Postpetition Letter of Credit Agreement</u>" and, together with the Prepetition Letter of Credit Agreement, the "<u>Letter of Credit Agreement</u>".)

20.     The Debtors also seek authority to use the Prepetition Collateral securing the Debtors' obligations under the Prepetition Letter of Credit Agreement to secure and to pay the Debtors' obligations under the Postpetition Letter of Credit Agreement.

<strong><u>Purchasing Card Agreement</u></strong>

21.     Mesa Airlines and the Bank are parties to that certain purchasing card agreement, dated as of July 8, 2008 (the "<u>Purchasing Card Agreement</u>"), pursuant to which the Bank provides approximately eight debit purchasing cards for use by the Debtors' employees to pay for business expenses, including costs for hotels, meals, and transportation. A true and correct copy of the Purchasing Card Agreement is attached hereto as **Exhibit G**. The Debtors are reconciling the unpaid prepetition amount owed under the Purchasing Card Agreement, and believe that such amount is less than approximately $20,000.00.

22.     Pursuant to the Prepetition Cash Collateral Agreement, all obligations arising under the Purchasing Card Agreement are also secured by the Cash Collateral Account. *See* Prepetition Cash Collateral Agreement at §2.

## Jurisdiction

23.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (M), and (O). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

24.     The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 365of the Bankruptcy Code, Bankruptcy Rule 4001, and Rule 4001-2 of the Local Rules for the Bankruptcy Court for the Southern District of New York.

25.     The Debtors request entry of the Interim Order granting the relief sought herein on an interim basis at the emergency hearing hereon and on a final basis (the "Final Order" and, together with the Interim Order, the "Orders") at the final hearing (the "Final Hearing") to be set hereon. Pursuant to the Orders, the Debtors request that the Court grant the following relief:

(A)     Pursuant to 11 U.S.C. §§ 105, 362 and 364 and Bankruptcy Rule 4001:

(1)     Authorization for the Debtors to obtain postpetition letters of credit pursuant to the Postpetition Letter of Credit Agreement attached as **Exhibit E** hereto (i) on an interim basis, up to the amount necessary to renew letters of credit that have expired or will expire prior to the Final Hearing and (ii) on a final basis, up to the amount of $15,000,000.00;

(2)     Authorization for the Debtors to enter into and comply in all respects with the Postpetition Credit Agreement and for approval of the terms and conditions of the Post Petition Credit Agreement;

(3)     As security for the obligations, the granting in favor of the Bank of automatically a perfected, valid, enforceable and non-avoidable postpetition senior liens upon and security interests in the collateral described in section 2 of the Postpetition Cash Collateral Agreement (the "Postpetition Collateral," which includes amounts on deposit in the Cash Collateral Account as of the Petition Date).

(B)     Pursuant to sections 361 and 363 of the Bankruptcy Code, authorization for (1) the Debtors to use Cash Collateral, and (2) the granting of adequate protection to the Bank for such use of Cash Collateral by way of replacement liens in the Postpetition Collateral.

(C)     The scheduling of the Final Hearing on the Motion to consider entry of the Final Order authorizing and granting the relief requested in the Motion.

(D)     The granting of certain related relief.

In addition, pursuant to the Final Order, the Debtors request authority for Mesa Airlines to assume the Purchasing Card Agreement and cure any defaults thereunder.

## Summary of Principal Terms of the Postpetition Letter of Credit Agreement

26.     In accordance with the terms and conditions of the Postpetition Letter of Credit Agreement, the Bank has agreed to issue standby letters of credit for the benefit of MAG, Mesa Airlines and Freedom Airlines (collectively, the "Applicant") of up to $15,000,000 in principal (the "Facility Amount"), certain key terms of which are summarized below.[5]

*Letters of Credit*

---

[5] The following description of the terms of the Postpetition Letter of Credit Agreement is only a summary of certain key terms. In the event of any conflict between the summary set forth herein and the Postpetition Letter of Credit Agreement, the Postpetition Letter of Credit Agreement controls.

27.    The Bank agrees, on the terms and conditions set forth in the Postpetition Credit

Agreement, to issue standby letters of credit for the account of Applicant or any wholly-owned

subsidiary of Applicant ("Letters of Credit") upon the request of Applicant; *provided* that after

giving effect to the issuance of each Letter of Credit, the sum of (i) the undrawn stated amount of

all Letters of Credit, plus (ii) the unpaid amount of all obligations of the Applicant to reimburse

for draws upon Letters of Credit (the "Credit Exposure") shall not exceed the Facility Amount.

*See* Postpetition LOC Agreement, at § 3.1.

### *Reimbursement Obligations*

28.    Applicant agrees and promises to pay to Bank on the first Business Day

immediately succeeding the day that Bank provides notice to Applicant of a drawing under any

Letter of Credit, a sum equal to the amount so drawn, together with all fees and interest thereon

(the "Reimbursement Obligations").  Reimbursement Obligations shall bear interest as follows:

(a)    From and including the date that the Bank pays the applicable drawing

under a Letter of Credit to an including the date of reimbursement for such drawing by Applicant

at a per annum rate equal to the Banks' prime interest rate as in effect from time to time, as

announced by the Bank, or its successors, from time to time as its "prime rate" (the "Prime

Rate").  *See* Postpetition LOC Agreement, at §§ 3.6.1 and 3.7.

(b)    After an Event of Default, the Reimbursement Obligations shall bear

interest at a rate per annum equal to the sum of (i) the Prime Rate plus (ii) three (3) percentage

points, such rate to change with each change in the Prime Rate.  *See* Postpetition LOC

Agreement, at § 9.

### *Fees*

29. Applicant agrees to pay to the Bank the following fees, which shall be earned by the Bank on the date due:

(a) Letter of Credit Fee. A fee for the issuance of each Letter of Credit equal to three-fourths of one percent (0.75%) per annum of the face amount of the requested Letter of Credit, with a minimum fee of $300 per annum. Letter of Credit fees shall be payable in advance on or before the date of issuance of the Letter of Credit for the entire period of the Letters of Credit. In the event that the Letter of Credit is terminated and returned (other than by reason of a drawing) prior to the Expiration Date of that Letter of Credit, the Bank will refund to Applicant the amount of the Letter of Credit fee for the period from the date of such termination to the stated Expiration Date of the Letter of Credit. *See* Postpetition LOC Agreement, at § 3.12.1.

(b) Drawing and Fronting Fees. Applicant shall also pay all standard drawing, amendment, assignment, and other administrative fees customarily charged by the Bank with respect to Letters of Credit. *See* Postpetition LOC Agreement, at § 3.12.2.

***Facility Termination Date***

30. The Postpetition Letter of Credit Agreement will terminate on March 31, 2011.

## Summary of the Terms of Use of Cash Collateral

31. Pursuant to the Postpetition Letter of Credit Agreement, the Applicant shall at all times maintain Collateral (as defined in the Postpetition Letter of Credit Agreement) in an amount not less than the Credit Exposure. Such Collateral (as defined in the Postpetition Letter of Credit Agreement) shall be maintained in the Cash Collateral Account in accordance with the Postpetition Cash Collateral Agreement attached hereto as **Exhibit F** and may be used to satisfy the Debtors' Reimbursement Obligations. *See* Postpetition LOC Agreement, at § 3.3. The

Collateral (as defined in the Postpetition Letter of Credit Agreement) shall also secure any obligations arising under the Purchasing Card Agreement upon assumption of such agreement pursuant to the Final Order. *See* Postpetition Cash Collateral Agreement at § 2. The Bank shall have a first-priority post-petition lien on the Collateral (as defined in the Postpetition Letter of Credit Agreement).

## Extraordinary Provisions

32.     General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order") requires the Debtors to highlight any Extraordinary Provisions (as defined in the General Order) included in a postpetition financing agreement. The proposed order contains two provisions that may be considered extraordinary pursuant to the terms of the General Order:

> *Roll-Up:* The Orders provide that all outstanding obligations under the Prepetition Letter of Credit Agreement shall be obligations under the Postpetition Letter of Credit Agreement. *See* Interim Order, at ¶ B. To the extent that the Debtors' Reimbursement Obligations associated with the International Fidelity Draw, the Raytheon Draw, or any other postpetition draws on Letters of Credit issued prepetition, are prepetition obligations, then such obligations are granted administrative status under the Orders.

> *Termination of Automatic Stay:* The Orders provide that, to the extent it applies, the automatic stay is terminated and modified effective immediately as it relates to the Bank for the limited purpose to allow Bank to exercise any and all rights under the Letter of Credit Agreement when and if any Letters of Credit are drawn upon, including but not limited to applying the Postpetition Collateral, whether now existing or hereafter acquired, securing any and all of Debtors' Letters of Credit, whether now existing or hereafter issued, for Debtors' account with Bank. Notwithstanding the foregoing or anything in the Postpetition Letter of Credit Agreement to the contrary, the Bank shall not be permitted to draw upon or otherwise exercise any rights with respect to the Postpetition Collateral until after three (3) business day prior written notice to the Debtors and the Committee (which such notice can be provided by electronic mail); provided, however, that absent the entry of an order of the Court enjoining the Bank from exercising any and all of its rights under the Letter of Credit Agreement based solely on a showing that the Bank's proposed exercise of its rights is in violation of the Letter of Credit Agreement, the Bank may exercise any and all of its rights under the Letter of Credit Agreement after the expiration of three (3) business day from the date the Bank provides written notice to the Debtors and the Committee. *See* Interim Order, at ¶ E.

*Section 506(c) Waivers*: The Orders provide that: (a) no party in interest or other entity shall, pursuant to Bankruptcy Code § 506(c) or other applicable law or principles of equity, be entitled to recover from the Cash Collateral Account or other collateral subject to the Replacement Lien; and (b) Bank does not consent to the incurrence by Debtors, their professionals, or any other person, party, or entity of any of the costs, expenses or fees contemplated under 11 U.S.C. § 506(c), and no consent shall be implied from any action, inaction or acquiescence by Bank. *See* Interim Order, at ¶ H.

*Period for Committee to Challenge Validity of Bank's Liens and Claims*: The Interim Order provides that the Debtors, on behalf of themselves and their respective bankruptcy estates, acknowledge and agree that, subject to entry of a Final Order and expiration of a period of thirty (30) days following entry of the Interim Order during which time the Committee or any other party in interest may challenge the validity of Bank's claims against the Debtors or their estates on the following limited areas with respect solely to the Debtors' non-Letter of Credit Agreement depository accounts and/or the sums due under the Purchasing Card Agreement (but not the collateralization of amounts due under the Purchasing Card Agreement): (a) Debtors' liability to Bank for any and all pre-petition amounts due and owing to Bank with respect to Debtors' non-Letter of Credit Agreement depository accounts, except those liabilities arising out of or related to the Letter of Credit Agreement, which are admitted in paragraph (I) of the Interim Order; (b) Debtors' claims, offsets, or defenses with respect to the payment of sums due Bank, except those arising out of or related to the Letter of Credit Agreement, which are waived in paragraph (I); and (c) the validity, enforceability, or the amount of the indebtedness to Bank, except the indebtedness arising out of or related to the Letter of Credit Agreement, which are admitted in paragraph (I). Notwithstanding the foregoing, no challenges or claim may be asserted regarding the validity of Bank's first-in-lien-priority security interest in and to the Cash Collateral Account and/or related to or arising out of the Letter of Credit Agreement following the entry of the Interim Order. *See* Interim Order, at ¶ J.

## There Is No Viable Alternative Financing

33.     It is in the best interest of the Debtors, their estates and their creditors to be permitted to enter into the Postpetition Letter of Credit Agreement and to make payments on all postpetition obligations arising thereunder. There is no form of financing readily available to the Debtors that would be an alternative to the Postpetition Letter of Credit Agreement on an unsecured basis or on substantially better terms. No priming is sought.

## Good Faith

34.     The Debtors and the Bank engaged in good faith and arms-length negotiations that culminated in the Postpetition Letter of Credit Agreement and Interim Order attached to this

Motion. No promises have been made, inducements given, or consideration paid or promised to be paid, other than the promises, inducements and consideration expressly contained in the Postpetition Letter of Credit Agreement or the Interim Order. The Debtors have also been sharing information and documents, including drafts of this Motion and exhibits hereto, with counsel for the Committee.

**Final Order**

35.     At the initial hearing on the Motion, the Debtors also seek the scheduling of the Final Hearing, at which the Debtors intend to seek entry of an order authorizing and approving the postpetition financing and use of cash collateral on a final basis on substantially the same terms, covenants and conditions as the Interim Order.

36.     Pursuant to Bankruptcy Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Debtors propose that the Court approve the Interim Order, pending notice of the Final Hearing on a date to be set by the Court, and that the Court enter the Interim Order at the interim hearing and grant the relief sought hereby on a final basis and enter the Final Order at the Final Hearing.

37.     The Debtors also seek authority pursuant to the Final Order for Mesa Airlines to assume the Purchasing Card Agreement and to cure any defaults thereunder.

**Basis for Relief Requested:  Post-Petition Financing**

**A.      Legal Standard**

38.     Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur debt on a secured basis if the financing is necessary and the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the

estate. *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties.") (citation omitted); *In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing credit agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); *see also* 3 Collier on Bankruptcy 364.03, at 364-7-18 (15th ed. rev.).

39.     Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

(c)     If the trustee is unable to obtain unsecured credit allowable under section 503(b)(l) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

***

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

11. U.S.C. § 364(c).

40.     The Debtors satisfy the requirements of section 364(c) of the Bankruptcy Code because the Debtors are unable to obtain credit otherwise, relevant secured creditors are adequately protected, and the proposed financing is in the best interests of the estates, as set forth below.

**B.      The Postpetition Letter of Credit Agreement Is**
**Necessary to Preserve the Assets of the Debtors' Estate**

41.     As described above, the Debtors urgently require authorization to enter into the Postpetition Letter of Credit Agreement because certain Letters of Credit that are critical to the maintenance of the Debtors' businesses will expire within the next 20 days. Without immediate

renewal of these critical Letters of Credit, the Debtors' business operations will be severely

harmed, to the detriment of the Debtors' creditors, employees and other parties in interest in

these chapter 11 cases. For these reasons, the Debtors require the postpetition financing in order

to continue their operations and to preserve value.

**C.     The Debtors Are Unable to Obtain Credit on More Favorable Terms**

42.     In order to satisfy the standards of section 364(c) of the Bankruptcy Code, a

debtor need not seek credit from every available source, but it should make a reasonable effort to

seek other sources of credit available of the type set forth in sections 364(a) and (b) of the

Bankruptcy Code. *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee

had demonstrated by good faith effort that credit was not available without senior lien by

unsuccessfully contacting other financial institutions in immediate geographic area; "the statute

imposes no duty to seek credit from every possible lender before concluding that such credit is

unavailable"); *Ames Department Stores, Inc.*, 115 B.R. at 40 (finding that debtor demonstrated

the unavailability of unsecured financing where debtor approached several lending institutions);

*In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992).

43.     Without approval of the relief sought herein, the Debtors will not be able to

replace the expiring Letters of Credit in a timely manner. The terms of the Postpetition Letter of

Credit Agreement are substantially identical to the terms of the Prepetition Letter of Credit

Agreement and representative of market terms for similar transactions. The Debtors are not able

to obtain replacement letters of credit on an unsecured basis pursuant to section 364(a) or 364(b)

of the Bankruptcy Code or under section 364(c)(1) of the Bankruptcy Code in amounts sufficient

to provide the Debtors with the necessary security arrangements, and, therefore, the Debtors have

agreed to the Postpetition Letter of Credit Agreement, under which the Debtors' reimbursement obligations are secured by liens under section 364(c)(2) and (3) of the Bankruptcy Code.

**D.     The Postpetition Letter of Credit Agreement Was Negotiated in Good Faith and Should be Subject to Bankruptcy Code Section 364(e) Protection**

44.     The terms and conditions of the Postpetition Letter of Credit Agreement are the best available to the Debtors under the circumstances of these cases, are fair and reasonable, and were negotiated in good faith and at arms-length with all parties represented by experienced counsel.  The Postpetition Letter of Credit Agreement sets forth in writing all of the arrangements between the parties and there is no remuneration or consideration paid or payable to any party in connection with the postpetition financing other than as set forth in such Postpetition Letter of Credit Agreement.  The terms of the Postpetition Letter of Credit Agreement are, in substance, virtually identical to the Prepetition Letter of Credit Agreement. Accordingly, the Postpetition Letter of Credit Agreement should be approved and the Bank should be provided with the benefit and protection of section 364(e) of the Bankruptcy Code, such that if any of the provisions of the Postpetition Letter of Credit Agreement or Orders are later modified, vacated, stayed or terminated by subsequent order of this or any other Court, the Bank will be fully protected with respect to any amounts previously disbursed.

**Basis for Relief Requested:  Use of Cash Collateral**

**A.     Legal Standard**

45.     The Debtors' use of property of the estate is governed by section 363 of the Bankruptcy Code.  Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders

> otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

46.     The Bankruptcy Code establishes a special requirement, however, regarding the use of "cash collateral." Bankruptcy Code section 363(c)(2) permits the debtor in possession to use, sell or lease cash collateral under subsection (c)(1) only if either of two alternatives circumstances exist:

> (A)     each entity that has an interest in such cash collateral consents; or
>
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

**B.     The Bank Has Consented**

47.     Here, the Bank consents to the use of the Cash Collateral on the terms and conditions of the Postpetition Letter of Credit Agreement and the Orders. The Debtors are unaware of any other parties that assert an interest in the Cash Collateral whose consent would be required to use the Cash Collateral as proposed or that would be entitled to adequate protection.

## Basis for Relief Requested:  Assumption of Purchasing Card Agreement

**A.     Legal Standard**

48.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a). A contract is executory where performance remains due, to some extent, on both sides. *See Shoppers World Cmty. Ctr., L.P. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc. et al.)*, 2001 WL 1112308 *1, 6 (S.D.N.Y. Sept. 20, 2001) (finding that substantial material obligations remained to be performed by both the contracting parties such that the contract was still executory); *Eastern Air Lines, Inc. v. Ins. Co. of PA (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996).

49.     The standard to be applied by a court in determining whether the assumption or rejection of an executory contract or unexpired lease pursuant to section 365(a) should be approved is the "business judgment" test, which requires that the debtor have determined that the requested assumption or rejection would be beneficial to its estate. *See, e.g., In re Group of Inst. Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("the question [of assumption] is one of business judgment"); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (to decide a motion to assume the court must put itself in the position of the trustee and determine whether such assumption would be a good decision or a bad one); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996) (decision to assume was good business judgment where assumption would allow the debtor estate to substantially reduce an outstanding proof of claim and receive payments in the future); *In re Nat'l Sugar Refining Co.*, 26 B.R. 765, 767 (Bankr. S.D.N.Y. 1983) (absent invalidation, a debtor seeking to assume a profitable contract should be allowed to do so). Under the "business judgment" standard, the debtor's decision to assume or reject "should not be interfered with, absent a showing of bad faith or abuse of business discretion." *See In re Chipwich, Inc.*, 54 B.R. 427,430-31 (Bankr. S.D.N.Y. 1985).

50.    The Debtors have analyzed the Purchasing Card Agreement and the potential

consequences of its assumption.  Certain of the Debtors' employees are required to travel to

various locations for the purpose of conducting the Debtors' business.  Assumption of the

Purchasing Card Agreement will enable such employees to continue to pay for such travel and

other related expenses using the debit cards provided under the agreement.  Further, the

agreement is terminable by either party at any time upon written notice to the other party.  See

Purchasing Card Agreement at ¶16.  Thus, even upon assumption, Mesa Airlines will retain the

right to cancel the agreement at any time.  Accordingly, the Debtors believe that there is little to

no likelihood of any prejudice to the estates upon assumption of such agreement.  The cure

amount necessary to assume such agreement is de minimis and Mesa Airlines will be able to

perform under the agreement.  Thus, the assumption of the Purchasing Card Agreement pursuant

to the Final Order is in the Debtors' best interests.

## Interim Authorization

51.    The authorization for the postpetition financing and to use cash collateral pending

a final hearing will preserve the value of the Debtors' assets and prevent defaults under critical

contracts only if authorization is granted immediately on short notice.

52.    Bankruptcy Rule 4001 (b), Local Bankruptcy Rules 4001-3 and 9014-2, and this

Court's General Order M-274 specifically recognize that it might be necessary to schedule

expedited hearings on requests for interim authorization to use of cash collateral because of the

business exigencies of individual cases.  *See also*, 11 U.S.C. §102(1) (defining "after notice and

a hearing" to mean after such notice and such opportunity for a hearing as is appropriate in the

particular circumstances of a given case), and 11 U.S.C. § 363(c)(3) (which requires hearings to be scheduled in accordance with the needs of the debtor).

53.     In this instance, the Debtors require immediate relief to avoid irreparable harm that would be caused to the estates in the event that Debtors were unable to obtain Letters of Credit to replace those that will expire prior to the date of the Final Hearing on the Motion. Defaults under these agreements would cause damage to the Debtors' businesses. In the absence of immediate relief, there will be significant risk of irreparable harm to the Debtors' estates and their creditors. The interim relief sought in this Motion, pending the Final Hearing, is necessary, appropriate and fully warranted, is essential to avoid immediate and irreparable harm to the Debtors, the estate and their creditors, and should be granted.

<u>Notice</u>

**A.     Notice With Respect to Emergency Interim Financing Request**

54.     The Debtors have served a copy of this Motion upon (i) the Office of the United States Trustee, (ii) the Bank, (iii) counsel to the Committee, and (iv) those parties that have requested notice in these cases (collectively, "<u>Notice Parties</u>") by electronic mail or facsimile, where such information is available, and otherwise by regular mail. The Debtors do not believe any creditors have or claim to have security interests in the Prepetition Collateral.

**B.     Notice With Respect to Final Order**

55.     Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to serve a notice of entry of the Interim Order, and of the Final Hearing, together with a copy of this Motion and the Interim Order, by hand, regular mail, electronic mail or facsimile upon the Notice Parties. The Debtors respectfully request that any further notice of the Final

Hearing, and of the relief requested herein, other than as expressly provided for above, be waived.

### No Prior Request

56.     No previous application for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, as set forth above, the Debtors respectfully request entry of interim and final orders (i) authorizing Debtors to enter into a new letter of credit facility with the Bank; (ii) authorizing Debtors to use Cash Collateral pledged to the Bank; (iii) modifying the automatic stay; (iv) granting adequate protection; (v) scheduling a final hearing; and (vi) granting related relief.

Dated:    New York, New York
          February 2, 2010          PACHULSKI STANG ZIEHL & JONES LLP


                                    */s/ Maria A. Bove*
                                    Richard M Pachulski
                                    Laura Davis Jones
                                    Debra I. Grassgreen
                                    Maria A. Bove
                                    John W. Lucas

                                    780 Third Avenue, 36th Floor
                                    New York, New York 10017
                                    Telephone:  (212) 561-7700
                                    Facsimile:  (212) 561-7777

                                    Proposed Attorneys for Debtors
                                    and Debtors in Possession