UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| MESA AIR GROUP, INC., <u>et al</u>., | ) Case No. 10-10018 (MG) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) **Hearing Date: February 24, 2010 at 10:00 a.m. (EST)** |
| | ) **Objection Deadline: February 17, 2010 at 4:00 p.m. (EST)** |

## <u>NOTICE OF MOTION</u>

TO:     (I) THE OFFICE OF THE UNITED STATES TRUSTEE; AND (II) ALL PARTIES
THAT HAVE REQUESTED NOTICE PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 2002

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession
(collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors of the Debtors
(the "<u>Committee</u>") filed the attached *Motion Of The Official Committee of Unsecured Creditors
For An Order Regarding Creditor Access to Information and Setting and Fixing Creditor
Information Sharing Procedures and Protocols Under 11 U.S.C. §§ 105(a), 107(b), and
1102(b)(3)* (the "<u>Motion</u>").

PLEASE TAKE FURTHER NOTICE that objections to the Motion must be filed on or
before February 17, 2010 at 4:00 p.m. (EST) (the "<u>Objection Deadline</u>") with the United States
Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House,
One Bowling Green, New York, New York 10004.  At the same time, you must serve a copy of
the objection upon the Debtors' and the Committee's undersigned counsel so as to be received
on or before the Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL
BE HELD FEBRUARY 24, 2010 AT 10:00 A.M. (EST) BEFORE THE HONORABLE
MARTIN GLENN, AT THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK, ALEXANDER HAMILTON CUSTOM HOUSE,
ONE BOWLING GREEN, NEW YORK, NEW YORK 10004, COURTROOM 501.

PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND ON OR BEFORE THE OBJECTION DEADLINE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: New York, New York
February 8, 2010

/s/ Brett H. Miller
MORRISON & FOERSTER LLP
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Attorneys for the Official Committee of Unsecured Creditors*

2

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| MESA AIR GROUP, INC., et al., | ) | Case No. 10-10018 (MG) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER REGARDING CREDITOR ACCESS TO INFORMATION AND SETTING AND FIXING CREDITOR INFORMATION SHARING PROCEDURES AND PROTOCOLS UNDER 11 U.S.C. §§ 105(a), 107(b), AND 1102(b)(3)

The Official Committee of Unsecured Creditors (the "Committee") of Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for the entry of an order, pursuant to sections 105(a), 107(b), and 1102(b)(3)(A) of the United States Bankruptcy Code, 11 U.S C §§ 101-1552 (the "Bankruptcy Code") and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), providing that the Committee is not authorized or required, pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, to provide access to the Debtors' confidential and other non-public proprietary information, the Committee's confidential information, or to privileged information, to the creditors it represents and setting and fixing

---

[1]  The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

creditor information sharing procedures and protocols.  In support of the Motion, the Committee respectfully states as follows:

## BACKGROUND

1.      On January 5, 2010 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

2.      On January 13, 2010, the Office of the United States Trustee (the "Trustee") appointed the Committee.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Sections 105(a), 107(b) and 1102(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9018.

## THE DEBTORS' BUSINESS

4.      Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico.  The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures.  The Debtors employ approximately 3,400 full and part-time employees.

5.      Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share

agreements. Specifically, Mesa Airlines operates as (a) US Airways Express under code-share agreements with US Airways, Inc., (b) as United Express under a code-share agreement with United Airlines, Inc., and (c) independently in Hawaii as *go!* Mokulele ("*go!*"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

6. As of September 30, 2009, the Debtors had consolidated assets[2] of approximately $975 million, and consolidated liabilities of approximately $869 million. The Debtors' consolidated 2009 revenues were approximately $968 million. Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements. The Debtors' remaining passenger revenues are generated from their independent *go!* operations in Hawaii.

7. A detailed description of the Debtors' business, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, filed on the Petition Date.

8. In connection with the Debtors' efforts to reorganize under chapter 11, the Debtors are in the process of entering into a Confidentiality Agreement with the Committee pursuant to which the Committee members and its professionals will be provided with access to certain confidential, non-public information (the "Confidentiality Agreement").

---

[2] At book value.

**RELIEF REQUESTED**

9.      By this Motion, the Committee seeks entry of an order of the Court, substantially in the form of Exhibit A attached hereto (the "Procedures Order") (a) confirming that section 1102(b)(3)(A) does not authorize or require the Committee to provide access to the Debtors' Confidential Information (as defined below), the Committee Confidential Information (as defined below) or Privileged Information (as defined below) to any creditor in these cases, and (b) instituting procedures for the disclosure of Confidential Information to third-parties who request such information.  Furthermore, the Debtors and the Committee seek clarification that the Committee's duties under Section 1102(b)(3) are satisfied by (a) responding promptly to written and telephonic inquiries received from the creditors it represents, and (b) in the Committee's reasonable discretion, establishing and maintaining an Internet-accessed website or an electronic mail address for creditors to submit questions and comments to the Committee. The relief requested herein will help ensure that confidential, privileged, proprietary and/or material non-public information will not be disseminated to the detriment of the Debtors' estates and will aid the Committee in performing its statutory functions.

10.      Under the terms of the proposed order, the Committee shall respond to a general unsecured creditor's request for information within thirty (30) days of the Committee's receipt of such request.  Such response shall provide access to the requested information or reasons why such information will not be provided.  If the information request is denied because it requests Confidential Information, Committee Confidential Information, or Privileged Information, which cannot be disclosed or the request is unduly burdensome, such creditor, after good faith attempts to meet and confer with the Committee, can file a motion requesting such information be provided.  In responding to an information request, the Committee shall consider

- 4 -

certain factors, including, without limitation, the creditor's willingness to enter into a confidentiality agreement and trading restrictions; whether the requesting creditor is involved in claims or equity interest trading; or whether the requesting creditor is a current or prospective competitor of the Debtors.

11.     If the Committee agrees that Confidential Information of the Debtors should be supplied to any general unsecured creditor, by request or otherwise, it shall do so only if such creditor executes a confidentiality agreement substantially in the form attached to the Procedures Order as Exhibit 1 (the "<u>Creditor Confidentiality Agreement</u>") and pursuant to the procedures set forth in the Procedures Order.  The Committee may in its sole discretion disclose any Committee Confidential Information.

**<u>BASIS FOR RELIEF</u>**

12.     On April 20, 2005, as part of the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Congress enacted new section 1102(b)(3) of the Bankruptcy Code.  That section states, in relevant part, that a creditors' committee appointed under section 1102(a) of the Bankruptcy Code shall "provide access to information for creditors who (i) hold claims of the kind represented by that committee; and (ii) are not appointed to the committee." 11 U.S.C. § 1102(b)(3)(A).  Section 1102(b)(3)(A) does not indicate how a creditors' committee should provide access to "information," and, more importantly, does not indicate the nature, scope, or extent of the "information" that a creditors' committee must provide to creditors that it represents.  Further, there appears to be no legislative history to section 1102(b)(3) that might shed light on these issues.

13.     The lack of specificity in new section 1102(b)(3)(A) creates significant issues for debtors and creditors' committees.  Typically, a debtor will share various confidential

and other non-public proprietary information with a creditors' committee (as defined in footnote 3 below, "<u>Confidential Information</u>").[3]  Creditors' committees also develop or obtain other confidential and non-public proprietary information in the course of their duties (as defined in footnote 4 below, "<u>Committee Confidential Information</u>").[4]  Creditors' committees use this information to assess, among other things, a debtor's capital structure, opportunities for the restructuring of the debtor's business in chapter 11, the results of any revised operations of the debtor in the bankruptcy case, and the debtor's overall prospects for reorganization under a chapter 11 plan.  In addition, creditors' committees typically execute confidentiality agreements or enter into other similar arrangements with debtors.  Through these agreements and other arrangements a debtor can ensure that the creditors' committees' members will keep its information confidential and will not use confidential information except in connection with the chapter 11 cases and on terms reasonably acceptable to the debtors.  In these cases, the

---

[3]  For purposes of this Motion, the term "<u>Confidential Information</u>" shall mean any non-public information (whether written or oral) of the Debtors, including without limitation, non-public information concerning the Debtors' assets, liabilities, business operations, projections, analyses, compilations, and studies.  Confidential Information shall also include any other non-public documents prepared by the Debtors, their advisors, or any other agents of the Debtors, where such information is furnished, disclosed or otherwise made known to the Committee, whether intentionally or unintentionally, and whether directly or indirectly, by any written, oral, electronic, facsimile, or computer-related forms of communication.  Confidential Information shall also include any analyses, compilations, abstracts, studies, summaries or other documents, reports or records prepared by the Debtors or the Committee, which contain, reflect or, otherwise are generated from any information deemed to be Confidential Information.  The term Confidential Information will not include information that (i) with respect to a Receiving Party (defined below), is or becomes publicly available other than as a result of a disclosure by such Receiving Party in breach of the Confidentiality Agreement, (ii) is independently received by a Receiving Party outside of that Receiving Party's capacity as a Committee member or representative, provided that if such information is subject to another confidentiality agreement binding upon the Receiving Party with, or other obligation of secrecy to, the Debtors, use of such Confidential Information by such Receiving Party shall be governed by such other confidentiality agreement or secrecy obligation, (iii) is or becomes available to the Receiving Party on a non-confidential basis from a source (other than the Debtors), which source is not to the Receiving Party's knowledge subject to any prohibition from disclosing such information to the Receiving Party, (iv) is independently developed by such Receiving Party without violating its obligations under the Confidentiality Agreement and without using any Confidential Information, (v) is disclosed or is required to be disclosed by law, rule, regulation or legal process, subject to the requirements of the Confidentiality Agreement, or (vi) is determined by a court of competent jurisdiction to be non-confidential.

[4]  For purposes of this Motion, the term "<u>Committee Confidential Information</u>" shall mean any non-public information developed independently or obtained from third-parties other than the Debtors, including, but not limited to, any recommendations or reports to Committee members prepared by its professionals, and/or any information deemed by the Committee's professionals to be of a sensitive and confidential nature.

Committee's by-laws provide for the Committee, its members, and its advisors (each a "Receiving Party") to maintain the confidentiality of information provided by the Debtors on a confidential basis, and, as referenced above, the Committee is in the process of entering into a Confidentiality Agreement with the Debtors.

14.     The enactment of section 1102(b)(3)(A) raises the issue of whether a creditors' committee could be required to share a debtor's confidential information with any creditor that the committee represents. There is certainly nothing in the statute that requires such a result, and there is nothing in the legislative history to section 1102(b)(3)(A) that even implies that a creditors' committee has such an obligation. Nonetheless, given the importance of the issue, the Committee is hereby seeking an order of the Court confirming that section 1102(b)(3)(A) does not authorize or require the Committee in these cases to provide access to the Debtors' Confidential Information to any creditor that the Committee represents.

15.     The enactment of new section 1102(b)(3)(A) also raises the issue of whether a creditors' committee could be required to share with any creditor that the committee represents information subject to the attorney-client or some other state, federal, or other jurisdictional law privilege, whether such privilege is solely controlled by the committee or is a joint privilege with the debtor or some other party (collectively, "Privileged Information"). Again, there is certainly nothing in the statute that requires such a result, and there is nothing in the legislative history to section 1102(b)(3)(A) that even implies that a creditors' committee has such an obligation. Nonetheless, given the importance of the issue, the Committee similarly is hereby seeking clarification that the Committee is not authorized or required to provide access to Privileged Information to any creditor that the Committee represents. Of course, the Committee would be permitted, but not required, to provide access to Privileged Information to any party so

long as (a) such Privileged Information was not Confidential Information, and (b) the relevant privilege was held and controlled solely by the Committee.

16.     When a statute is clear and unambiguous, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  However, in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters… the intention of the drafters, rather that the strict language, controls." *Id*. at 242-43 (*citing Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) (internal quotation omitted)).

17.     The Committee respectfully submits that section 1102(b)(3)(A) is unclear and ambiguous.  The statute simply requires a creditors' committee "to provide access to information," yet sets forth no guidelines as to the type, kind and extent of the information to be provided.  In its extreme, section 1102(b)(3)(A) could be read as requiring a creditors' committee to provide access to all information provided to it by a debtor, or developed through exercise of its investigative function, regardless of whether the information is confidential, privileged, proprietary or material non-public information and regardless of whether disseminating such information implicates securities laws disclosure requirements.  *See* 17 C.F.R. §§ 243.100 to 243.103) (2005).

18.     As discussed above, the legislative history does not provide any further guidance on this point and merely reiterates that language of section 1102(b)(3).  *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information.  In

- 8 -

addition, the committee must solicit and receive comments for these creditors and, pursuant to court order, make additional reports and disclosures available to them.").

19.     Given the ability to share information through the Internet or otherwise, the drafters of section 1102(b)(3) likely intended this provision to mean that a creditors' committee's constituency should have easier access to relevant public information about a debtor without the burden of retaining counsel to monitor the numerous proceedings within a bankruptcy case.  Congress could not have intended for a committee to be required to provide unfettered access to every type and kind of information that a committee receives from a debtor or third parties.  If this had been the intention, section 1102(b)(3) would then frustrate numerous provisions of the Bankruptcy Code.

20.     Furthermore, section 107(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, the bankruptcy court shall… protect an entity with respect to trade secret or confidential research, development, or commercial information."[5]

21.     Section 107(b)(1) is mandatory.  *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (providing that the protections of section 107(b)(1) are mandatory upon request).  As a result, under section 107(b)(1) and Bankruptcy Rule 9018, this Court is empowered to protect the Debtors' Confidential Information and Privileged Information from disclosures to general creditors.

22.     In addition, Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  The Committee submits the requested relief is necessary for the Committee to fulfill its obligations as

---

[5]  Section 107(b)(1) is further supported by Bankruptcy Rule 9018, which states, in relevant part, that "on motion or on its own initiative, with or without notice, the court may make any order which justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information...."  Fed. R. Bankr. P. 9018.

set forth under section 1103(c) of the Bankruptcy Code.  Moreover, the requested relief is

appropriate and within the Court's authority.  Indeed, courts in this district routinely grant the

relief requested herein.  *See, e.g.*, *In re Lear Corporation*, Case No. 09-14326 (ALG) (Bankr.

S.D.N.Y. August 26, 2009); *In re Ion Media Networks, Inc., et al.,* Case No. 09-13125 (JMP)

(Bankr. S.D.N.Y. August 20, 2009); *In re Motors Liquidation Company, et al.*, Case No. 09-

50026 (REG) (Bankr. S.D.N.Y. August 3, 2009); *In re Lyondell Chemical Company, et al.*, Case

No. 09-10023 (REG) (Bankr. S.D.N.Y. April 29, 2009); *In re Charter Communications, Inc. et

al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. May 21 2009); *In re Tronox, Inc., et al.*, Case

No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 26, 2009); and *In re Paper International, Inc., et al.*,

Case No. 08-13917 (RDD) (Bankr. S.D.N.Y. Jan. 6, 2009).

23.     The Debtors are in a very competitive industry.  The dissemination of the

Debtors' Confidential Information to parties who are not bound by any confidentiality agreement

directly with the Debtors could be disastrous for the Debtors.  This is especially the case given

the industry in which the Debtors operate and the sensitive nature of much of the proprietary

information utilized and stored by the Debtors.  If the Debtors' general creditors could require

the Committee to give them access to Confidential Information in the possession of the

Committee, such information easily could become public immediately thereafter.

24.     If there were a risk that Confidential Information given by the Debtors to

the Committee would have to be turned over to any creditor, the Debtors would be highly

discouraged from giving Confidential Information to the Committee in the first place.  In fact,

the Debtors might conclude that they could not give such information to the Committee at all.

The inability of the Committee to gain access to Confidential Information, in turn, could limit the

ability of the Committee to fulfill its statutory obligations under the Bankruptcy Code.  As such,

the relief sought by this motion is not only for the benefit of the Debtors but for the benefit of the Committee as well.

25. Finally, the risk to the Debtors and the Committee of the Committee having to provide access to Privileged Information to the creditors it represents creates obvious and serious problems. If the Debtors and the Committee believed that there could be a risk that Privileged Information would need to be turned over to such creditors, with the possible loss of the relevant privilege at that time, the entire purpose of such privilege would be eviscerated, and both the Debtors and the Committee likely would be unable to obtain the independent and unfettered advice and consultation that such privileges are designed to foster. Indeed, unless it is made clear that the risk of dissemination of Privileged Information does not exist, the estate representation structure envisioned by the Bankruptcy Code would become immediately dysfunctional.

26. The disclosure of nonpublic or privileged information to such creditors will not foster a successful proceeding but will likely cause serious harm to the Debtors' estates. Therefore, pursuant to sections 105(a), 107(b)(1), and 1102(b)(3)(A) of the Bankruptcy Code, in order to maximize the value of the estates, the Committee respectfully requests that the relief herein be granted.

27. The relief requested does not mean that the Committee will not be providing information to its constituents pursuant to section 1103(b)(3)(A) of the Bankruptcy Code. The Committee, through a website or otherwise, will make available to creditors a variety of public information concerning the Debtors, including pleadings filed with this Court, the Debtors' schedules and statements of financial affairs that will be filed in the near future and the Debtors' monthly operating reports. Of course, in addition, at such time as the Debtors request a

- 11 -

vote on a plan of reorganization or liquidation from their creditors, the Debtors will provide such creditors with additional material information in a disclosure statement that satisfies the requirements of section 1125(b) of the Bankruptcy Code. Therefore, notwithstanding the relief requested herein, the Debtors' creditors will have more than sufficient information to satisfy the purposes of section 1102(b)(3)(A) of the Bankruptcy Code.

## **NOTICE**

28.     The Committee will serve notice of this Motion on: (a) the Office of the United States Trustee; and (b) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Committee submits that no other or further notice is necessary.

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A (a) granting the relief requested herein, and (b) granting to the Committee such other and further relief as the Court may deem proper.

Dated: New York, New York
       February 8, 2010

/s/ Brett H. Miller
MORRISON & FOERSTER LLP
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Attorneys for the Official Committee of Unsecured Creditors*

- 12 -

# EXHIBIT A

## Proposed Form of Order

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| MESA AIR GROUP, INC., et al., | ) | Case No. 10-10018 (MG) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors.[1] | ) | |
| | ) | **Ref. Docket No.: ___** |

**ORDER REGARDING CREDITOR ACCESS TO INFORMATION AND
SETTING AND FIXING CREDITOR INFORMATION SHARING PROCEDURES
AND PROTOCOLS UNDER 11 U.S.C. §§ 105(a), 107(b), AND 1102(b)(3)**

This matter coming before the Court on the joint motion (the "Motion")[2] of the

Committee, pursuant to sections 105(a), 107(b), and 1102(b)(3)(A) of the Bankruptcy Code and

Rule 9018 of the Federal Rules of Bankruptcy Procedure, for the entry of an order providing that

the Committee is not authorized or required pursuant to section 1102(b)(3)(A) of the Bankruptcy

Code to provide access to the Debtors' confidential information, the Committee's confidential

information, or to privileged information to any creditor the Committee represents and setting

and fixing creditor information sharing procedures and protocols; and the Court finding that:

(i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue

is proper in this district pursuant to 28 U.S.C. § 1409; (iii) this is core proceeding pursuant to 28

U.S.C. § 157(b)(2); and (iv) notice of the Motion and the Hearing was sufficient under the

circumstances; and after due deliberation the Court having determined that the relief requested in

---

[1]  The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2]  Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

the Motion is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

The Motion is GRANTED; and it is further

ORDERED that, for the purposes of this Order, the term "Confidential Information" shall mean any non-public information (whether written or oral) of the Debtors, including without limitation, non-public information concerning the Debtors' assets, liabilities, business operations, projections, analyses, compilations, and studies.  Confidential Information shall also include any other non-public documents prepared by the Debtors, their advisors, or any other agents of the Debtors, where such information is furnished, disclosed or otherwise made known to the Committee, whether intentionally or unintentionally, and whether directly or indirectly, by any written, oral, electronic, facsimile, or computer-related forms of communication.  Confidential Information shall also include any analyses, compilations, abstracts, studies, summaries or other documents, reports or records prepared by the Debtors or the Committee, which contain, reflect or, otherwise are generated from any information deemed to be Confidential Information.  The term Confidential Information will not include information that (i) with respect to a Receiving Party, is or becomes publicly available other than as a result of a disclosure by such Receiving Party in breach of the Confidentiality Agreement, (ii) is independently received by a Receiving Party outside of that Receiving Party's capacity as a Committee member or representative, provided that if such information is subject to another confidentiality agreement binding upon the Receiving Party with, or other obligation of secrecy to, the Debtors, use of such Confidential Information by such Receiving Party shall be governed by such other confidentiality agreement or secrecy obligation, (iii) is or becomes available to the Receiving Party on a non-confidential basis from a source (other than the Debtors), which source

is not to the Receiving Party's knowledge subject to any prohibition from disclosing such information to the Receiving Party, (iv) is independently developed by such Receiving Party without violating its obligations under the Confidentiality Agreement and without using any Confidential Information, (v) is disclosed or is required to be disclosed by law, rule, regulation or legal process, subject to the requirements of the Confidentiality Agreement, or (vi) is determined by a court of competent jurisdiction to be non-confidential.; and it is further

ORDERED that for the purposes of this Order, the term "Committee Confidential Information" shall mean any non-public information developed independently or obtained from third-parties other than the Debtors, including, but not limited to, any recommendations or reports to Committee members prepared by its professionals, and/or any information deemed by the Committee's professionals to be of a sensitive and confidential nature; and it is further

ORDERED that for the purposes of this Order, the term "Privileged Information" shall mean any information subject to the attorney-client or some other state, federal, or other jurisdictional law privilege, whether such privilege is solely controlled by the Committee or is a joint privilege with the Debtors or some other party; and it is further

ORDERED that notwithstanding any construction of section 1102(b)(3)(A) of the Bankruptcy Code to the contrary, the Committee, and its individual members and their respective representatives, advisors and counsel, shall not be authorized or required, without an order of this Court or written consent of the Debtors, which consent shall not be unreasonably withheld, to provide access to any Confidential Information, Committee Confidential Information or Privileged Information of the Debtors to any creditor the Committee represents pursuant to section 1102(b)(3)(A) of the Bankruptcy Code. Notwithstanding the foregoing, the Committee shall be permitted, but not required, to provide access to Privileged Information to any party so

long as (a) such Privileged Information is not Confidential Information, and (b) the relevant privilege is held and controlled solely by the Committee; and it is further

ORDERED that in satisfaction of the Committee's obligation to provide access to information for creditors and solicit and receive comments in accordance with Bankruptcy Code Sections 1102(b)(3)(A) and (B), and to otherwise clarify the statutory requirement that the Committee provide access to information for general unsecured creditors, the Committee shall respond promptly to written and telephonic inquiries received from the creditors it represents, and may, in its reasonable discretion, until the earliest to occur of dissolution of the Committee, dismissal of these chapter 11 cases, or conversion of these chapter 11 cases, establish and maintain an Internet-accessed website (the "Committee Website") or an electronic mail address for creditors to submit questions and comments to the Committee; and it is further

ORDERED that the reasonable fees and expenses of the Committee and its agents relating to the implementation and maintenance of any Committee Website, other than the fees and expenses of its retained professionals, shall be payable by the Debtors upon presentation of an appropriate invoice. Such fees and expenses shall be treated as administrative expenses pursuant to Bankruptcy Code Section 503(b); and it is further

ORDERED that if a general unsecured creditor (the "Requesting Creditor") submits a written request (including electronic mail) (the "Information Request") for the Committee to disclose or provide information, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (including, if relevant, on the Committee Website) (the "Response"), including providing access to the information requested or the reasons the Information Request cannot be complied with. If the Response is to deny the Request because the Committee

believes the Information Request implicates Confidential Information or Privileged Information that need not be disclosed pursuant to the terms of this Order or otherwise under 11 U.S.C. § 1102(b)(3)(A), or that the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion shall be served and the hearing on such motion shall be noticed and scheduled pursuant to the rules of the court. The Committee shall not object to any Requesting Creditor's request to participate in any such hearing by telephone conference. Nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee objecting to such request) that the Committee provide the Requesting Creditor a log or other index of any information specifically responsive to the Requesting Creditor's request that the Committee deems to be Confidential Information, Committee Confidential Information or Privileged Information. Furthermore, nothing herein shall be deemed to preclude the Requesting Creditor from requesting that the Court conduct an in camera review of any information specifically responsive to the Requesting Creditor's request that the Committee claims is Confidential Information, Committee Confidential Information, or Privileged Information; and it is further

ORDERED that in its Response to an Information Request for access to Confidential Information or Committee Confidential Information, the Committee shall consider whether:

a.      the Requesting Creditor is willing to enter into the confidentiality agreement, substantially in the form attached hereto as Exhibit "A" (the "Confidentiality Agreement"), and which form of Confidentiality Agreement is hereby approved, and

trading restrictions with respect to such Confidential Information and/or Committee Confidential Information and represents that such trading restrictions and any information-screening process complies with applicable securities laws, bankruptcy rules or contract; and

       i.      If the Requesting Creditor is involved in purchasing, selling or trading claims against or equity interest in the Debtors, the Requesting Creditor must file and serve upon counsel to the Committee, the Debtors and the United States Trustee, a document with the Court, confirming that it has established an information screening barrier ("Screening Wall") that will be enforced, that no Confidential Information will be revealed to purchasers, sellers or claims traders or any persons or entities involved in trading of claims and listing the name of the person that has been designated as monitor to ensure compliance with the provisions hereof; and

       ii.      If the Requesting Creditor is a competitor or prospective competitor of the Debtors and the information requested may impair the Debtors' business in any material way, no information will be disclosed unless the Court orders such disclosure after notice and a hearing; and

       b.      under the particular facts, such agreement and any information-screening process that it implements will reasonably protect the confidentiality of such information; provided, however, that if the Committee elects to provide access to Confidential Information on the basis of the entry into the Confidentiality Agreement and such trading restrictions, the Committee shall have no responsibility for the Requesting Creditor's compliance with, or liability for violation of, applicable or contract laws. Any disputes with respect to this paragraph

shall be resolved as provided in the preceding paragraph, and, to the extent applicable, the next paragraph; and it is further

ORDERED that if the Information Request implicates Confidential Information of the Debtors (or any other Entity other than the Committee) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee shall make a demand for the benefit of the Debtors' creditors pursuant to the following procedures:

a.      If the Confidential Information is information of the Debtors, the Committee shall submit a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors ("Debtors' Counsel"), stating that such information will be disclosed in the manner described in the Committee Confirmation Demand unless the Debtors object to such Committee Information Demand on or before ten (10) days after the service of such Committee Information Demand. If the Debtors lodge such an objection, the Debtors, the Committee and the Requesting Party shall work in good faith to resolve the Debtors' objection to the Committee Information Demand. In the event that the Debtors' objection is not resolved, the Debtors shall schedule a hearing (that is acceptable to the Committee and Requesting Creditor) no later than twenty (20) days after the service of the Committee Information Demand. At such hearing, the Debtors must demonstrate why such Committee Information Demand is prejudicial to the Debtors and why the Debtors should not comply with the request pursuant to 11 U.S.C. § 704(a)(7).

b.      If the Confidential Information is information of another Entity, the Committee shall submit a written request, each captioned as a "Committee Information

Demand," to such Entity and its counsel of record, with a copy to Debtors' Counsel, stating that such information will be disclosed in the manner described in the Committee Information Demand unless such Entity or the Debtors object to such Committee Information Demand on or before ten (10) days after the service of such Committee Information Demand. If the Debtors or the Entity lodge such an objection, the Debtors, the Committee, the Entity and Requesting Creditor shall work in good faith to resolve the Debtors' or the Entity's objection to the Committee Information Demand. In the event that the Debtors' or the Entity's objection is not resolved, the Debtors shall schedule a hearing (that is acceptable to the Committee, the Entity and Requesting Creditor) no later than twenty (20) days after the service of the Committee Information Demand. At such hearing, the objecting party must demonstrate why such Committee Information Demand should not be complied with and why the Debtors should not comply pursuant to 11 U.S.C. § 704(a)(7).

c. The Committee may in its sole discretion disclose any Committee Confidential Information pursuant to and consistent with the terms of this Order; and it is further

ORDERED that nothing in this Order requires the Committee to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: New York, New York
　　　＿＿＿＿＿＿＿＿, 2010

_____
The Honorable Martin Glenn
United States Bankruptcy Judge

## APPENDIX 1

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Confidentiality Agreement and Nondisclosure Agreement ("Agreement") is hereby entered into as of _____ by and between the Official Committee of Unsecured Creditors (the "Committee") of Mesa Air Group, Inc. and its affiliated debtors and debtors-in-possession and [CREDITOR] ("Creditor").

### WITNESSETH

WHEREAS, Creditor has made a Request for Confidential Information and/or Committee Confidential Information pursuant to the Order Regarding Creditor Access to Information and Setting and Fixing Creditor Information Sharing Procedures and Protocols Under 11 U.S.C. §§ 105(a), 1102(b)(3) and 1103(c) (the "Protocol Order");[1]

WHEREAS, this Agreement is intended to facilitate the delivery of Confidential Information and/or Committee Confidential Information from the Debtors or the Committee to Creditor and to establish Creditor's rights and obligations with respect to such information.

NOW THEREFORE, in consideration of the foregoing, and as a condition to the Committee providing such Confidential Information and/or Committee Confidential Information to Creditor, the Committee and Creditor hereby agree as follows:

1.    With respect to Confidential Information and/or Committee Confidential Information disclosed under this Agreement, the party receiving Confidential Information and/or Committee Confidential Information shall:

      *a.*    *hold the Confidential Information and/or Committee Confidential Information in confidence, exercising a degree of care not less than the care used by receiving party to protect its own proprietary or confidential information that it does not wish to disclose;*

      *b.*    *restrict disclosure of the Confidential Information and/or Committee Confidential Information solely to the [CREDITOR], its affiliates, and its and their directors, officers, employees, and/or agents/consultants, with a need to know and not disclose it to any other person;*

      *c.*    *advise those persons to whom the Confidential Information and/or Committee Confidential Information is proposed to be disclosed of their obligations with respect to the*

---

[1] All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Protocol Order, a copy of which is attached hereto as Exhibit A.

*Confidential Information and/or Committee Confidential Information; and*

d.   *use the Confidential Information and/or Committee Confidential Information only in a manner approved in writing by the Committee.*

2.     The Confidential Information and the Committee Confidential Information shall be deemed the property of the Committee and, upon written request, the Creditor shall return to the Committee, or destroy all Confidential Information and/or Committee Confidential Information received in tangible form or will destroy or erase such Confidential Information and/or Committee Confidential Information if it is recorded on an erasable storage medium, all such Confidential Information and/or Committee Confidential Information, except in each case as required by law, rule, regulation or internal document retention policies for compliance purposes.  If Creditor loses or makes an unauthorized disclosure of any Confidential Information and/or Committee Confidential Information, it shall notify the Committee promptly and use reasonable efforts to retrieve the lost or wrongfully disclosed Confidential Information and/or Confidential Committee Information.

3.     The Creditor shall have no obligation to preserve the proprietary nature of such Confidential Information and/or Committee Confidential Information which:

a.   *was lawfully in Creditor's possession at the time of the disclosure and was obtained free of any obligation to keep it confidential;*

b.   *is or becomes publicly available other than by a breach of this Agreement;*

c.   *is developed by or on behalf of such party independent of any Confidential Information and/or Committee Confidential Information;*

d.   *is received from a third party whose disclosure to the knowledge of the party, after due inquiry, does not violate any confidentiality obligation; or*

e.   *is disclosed pursuant to the requirement or request of a duly empowered governmental, regulatory or supervisory agency or authority or court of competent jurisdiction to the extent such disclosure is required by a valid law, regulation, rule or court order, and prompt notice is given by the recipient to the disclosing party of any such requirement or request (except in connection with any regulatory examination), unless such notice is prohibited by law.*

- 12 -

4. This Agreement shall benefit and be binding upon the parties hereto and with each party's written consent their respective successors and assigns.

5. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to choice of law principles and shall be subject to the jurisdiction of the Bankruptcy Court.

6. This Agreement shall become effective as of the date executed by all parties to the Agreement and shall terminate upon the earlier of the closing or dismissal of the Debtors' cases, except as may otherwise be ordered by the Court.

7. The parties acknowledge that in the event of an unauthorized disclosure, the damages incurred by the Debtors or the Committee may be difficult if not impossible to ascertain, and that the Debtors or the Committee may seek injunctive relief as well as monetary damages against the Creditor for breaches this Agreement.

8. The Creditor acknowledges that it is aware and will advise its representatives that the United States securities laws restrict persons with material non-public information about a company obtained directly or indirectly from that company from purchasing or selling securities of such company and from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

9. This Agreement constitutes the entire understanding between the parties with respect to the Confidential Information and/or Committee Confidential Information provided hereunder. No amendment or modification of this Agreement shall be valid or binding on the parties unless made in writing and executed on behalf of each party by its duly authorized representative.

10. This Agreement may be executed in one or more counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Facsimile signatures to this Agreement shall be deemed to be binding upon the parties.

11. Each party represents that it has caused this Agreement to be executed on its behalf as of the date written below by a representative empowered to bind that party with respect to the undertakings and obligations contained herein.

Executed and effective this ___day of _____, 20___.