PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**NOTICE OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTION
327(A) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND
LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF
DELOITTE TAX LLP TO PROVIDE TAX COMPLIANCE AND TAX CONSULTING
SERVICES TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 5, 2010**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for an*

*Order Pursuant to Section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016,*

*and Local Rule 2014-1 Authorizing the Employment and Retention of Deloitte Tax LLP to*

*Provide Tax Compliance and Tax Consulting Services to the Debtors Nunc Pro Tunc to January*

*5, 2010* (the "Application") filed herewith by Mesa Air Group Inc. and certain of its subsidiaries

and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), will be held

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

before the Honorable Martin Glenn, at the United States Bankruptcy Court, Alexander Hamilton Customs House, One Bowling Green, New York, New York, 10004, Courtroom 501, **at 3:00 p.m. on March 3, 2010**.

   **PLEASE TAKE FURTHER NOTICE** that any response or objection to the relief sought in the Application must be filed with the Bankruptcy Court and served upon: (i) the chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York 10004; (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111 (Attn: Debra I. Grassgreen and Joshua M. Fried), and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn: Maria A. Bove), attorneys for the Debtors; (iii) Mesa Air Group, Inc., Law Department 410 N. 44th St. Suite 700, Phoenix, Arizona 85008, (Attn: Brian S. Gillman, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Andrea B. Schwartz); (v) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Brett H. Miller, Lorenzo Marinuzzi, and Todd M. Goren), attorneys for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases; and (vi) any person or entity with a particularized interest in the subject matter of the Application, on or before **February 24, 2010**.

   **PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE.**

Dated: February 12, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Maria A. Bove*
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP TO PROVIDE TAX COMPLIANCE AND TAX CONSULTING SERVICES TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 5, 2010

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this application (the "Application") and respectively represent as follows:

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1. On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee"). The members of the Committee are: Bombardier, Inc., Embraer-Empresa Brasilieira de Aeronautica S.A., IHI Corporation, U.S. Bank National Association, AT&T Capital Services, Wilmington Trust Company, the Air Line Pilots Association, and the Association of Flight Attendants – CWA (ex-officio member).

4. A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, filed on the Petition Date.

## Jurisdiction

5. This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      By this Application, the Debtors request that this Court enter an order in the form attached here as Exhibit A pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rule 2014-1 of the Local Rules for the Southern District of New York (the "Local Rules"), authorizing the retention and employment of Deloitte Tax LLP ("Deloitte Tax") as tax services provider to perform tax compliance and tax consulting services *nunc pro tunc* to January 5, 2010. In support of this Application, the Debtors submit herewith the affidavit of Tiffany Young, a partner of Deloitte Tax (the "Young Declaration").

7.      In light of the size and complexity of these chapter 11 cases, the Debtors require the services of an experienced tax consultant that is familiar with the Debtors' businesses and operations and the chapter 11 process. The Debtors have selected Deloitte Tax, subject to the Court's approval, to continue to serve as their tax services provider in connection with these chapter 11 cases. Deloitte Tax has provided similar services to the Debtors since approximately 1999. As of January 5, 2010, the Debtors engaged Deloitte Tax to provide such services as described in the Engagement Letters (as defined below). In providing tax compliance and tax consulting services to the Debtors in connection with these matters, Deloitte Tax's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, debt structure, creditors, business and operations and related matters. Accordingly, Deloitte Tax has developed significant relevant experience regarding the Debtors that will assist Deloitte Tax in providing effective and efficient services during these chapter 11 cases.

## Scope of Services

8.     The retention of Deloitte Tax shall be based on the terms and conditions

set forth herein and in accordance with the two engagement letters each dated January 21, 2010

between the Debtors and Deloitte Tax (the "Tax Compliance Letter" and the "Tax Advisory

Letter", collectively, the "Engagement Letters"), and as may be agreed to by Deloitte Tax and

the Debtors, the Debtors anticipate that Deloitte Tax will render such tax services as deemed

appropriate and feasible by the Debtors and Deloitte Tax, including but not limited to the

following:

a.     preparation of September 30, 2009 federal and state income tax returns for Mesa Air Group, Inc. and subsidiaries as identified in Exhibit A of the Tax Compliance Letter and preparation of any estimated tax payments for the year ending September 30, 2010;

b.     tax advisory services for Mesa Air Group, Inc. and its subsidiaries during the year January 1, 2010 through December 31, 2010, including but not limited to Work Orders as specified in the Tax Advisory Letter. These services may include:

(1)     U.S. Federal Income Tax Consulting

- Periodic consulting regarding various federal income tax issues including but not limited to assistance with IRS audits, mergers, acquisitions, dispositions, restructuring, cancellation of debt income, tax attribute planning, debt restructuring services and net operating loss carryback

(2)     Multi-State Tax Consulting

- Consulting regarding various issues pertaining to state and local taxes (income/franchise/sales/use/property), including but not limited to assistance with audits, consulting regarding state and local income tax issues and assistance with responding to state and local tax notices

(3)     Employee Benefits

- Consulting regarding various income tax and employment tax issues associated with employee compensation and reporting

    (4)    International Tax Consulting

- Consulting regarding general international tax issues including but not limited to transfer pricing, withholding tax, mergers, acquisitions, dispositions, restructuring services and assistance with income tax audits; and

    c.    such other tax services as may be requested by the Debtors and agreed to by Deloitte Tax including pursuant to separate engagement letters.

Copies of the Engagement Letters are attached collectively to the Young Declaration as Exhibit 1.

    9.    The Debtors believe that the services to be provided by Deloitte Tax to the Debtors will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals. Deloitte Tax will seek to coordinate any services performed at the Debtors' request with the Debtors' other proposed professionals, including Deloitte & Touche LLP, Imperial Capital LLC, and Pachulski Stang Ziehl & Jones LLP, as appropriate, to avoid duplication of effort. If the Debtors seek to expand the scope of Deloitte Tax's retention, a supplemental affidavit will be filed with the Court and served on the U. S. Trustee and the Committee.

    10.    Subject to this Court's approval of the Application, Deloitte Tax is willing to serve as the Debtors' tax compliance and tax consulting services provider and to perform the services described in the Engagement Letters on the terms set forth therein. At the Debtors' request, Deloitte Tax has been providing necessary services to the Debtor since the Petition Date

in the approximate amount of $13,805 in fees and related expenses for which, upon approval of its retentions, it will seek to be compensated in its First Interim Fee Application.

### Disinterestedness of Professionals

11.     To the best of the Debtors' knowledge, and except as disclosed in the Young Declaration, Deloitte Tax (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code, and neither holds nor represented an interest adverse to the Debtors and their estates and (ii) has no connection to the Debtors, their significant creditors or to certain other parties-in-interest in these chapter 11 cases whose names were supplied by the Debtors to Deloitte Tax.

12.     The Debtors have been informed that if any new relevant facts or relationships are discovered that Deloitte Tax deems require disclosure in these chapter 11 cases, Deloitte Tax will supplement its disclosures to the Court.

### Basis for Relief

13.     The Debtors have reviewed the qualifications and experience of Deloitte Tax's personnel and believe that such personnel have considerable experience in advising debtors with respect to various tax matters including bankruptcy tax services. Personnel of Deloitte Tax have assisted debtors in numerous bankruptcy cases and out-of-court restructurings. Deloitte Tax is a highly-qualified professional services firm whose professionals have experience in matters of this type. Deloitte Tax's depth of experience and breadth of service capabilities render it particularly well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases.

14.     Pursuant to sections 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist in carrying out a debtor's duties under the Bankruptcy Code.

15.     Specifically, section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).  Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Pro. 2014.

16.     By this Application, the Debtors request that the Court approve the compensation arrangements described in the Engagement Letters pursuant to section 327(a) of the Bankruptcy Code.  The compensation arrangements contained in the Engagement Letters are fair and reasonable for the Debtors' estates.

### Compensation and Fee Applications

17.     Pursuant to the terms and conditions of the Tax Compliance Letter, and subject to the Court's approval, the professional fees charged for Deloitte Tax's services are

calculated from the actual hours expended in providing the services multiplied by a blended hourly rate.

18.    The proposed overall compensation structure is comparable to compensation generally charged by tax consultants of similar stature for comparable engagements, both in and out of court.

19.    Subject to the Court's approval and pursuant to the terms and conditions of the Tax Compliance Letter, Deloitte Tax's tax return preparation services will be billed as set forth herein. The Deloitte Tax professional fees for the preparation of the tax returns, extensions and estimated tax calculations, other than for services related to assessing the applicability of the reportable transaction provisions, are estimated to be approximately $259,750, plus reasonable out-of-pocket expenses. Such professional fee includes the following: (i) $199,750 for the preparation of federal and state income tax returns; (ii) $10,000 for state apportionment; (iii) $20,000 for the preparation of federal and state extensions (including first quarter estimated tax payments); and (iv) $30,000 for the preparation of federal and state estimated tax calculations and payment vouchers ($10,000 per quarter for second, third and fourth quarters). These estimates are based on a blended rate of $160 per hour and assume that the tax returns will involve approximately the same level of complexity as last year's returns. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A of the Tax Compliance Letter, Deloitte Tax will contact the Debtors to discuss the billing arrangement related to such out-of-scope services. For the preparation of additional city or state income/franchise tax returns identified and not listed in Exhibit A of the Tax Compliance Letter, Deloitte Tax's fee will be $1,250 per return.

20.　Deloitte Tax's ability to prepare the returns for the quoted fee is based on the expectation that Deloitte Tax will complete the returns in an efficient manner during the agreed upon timeline. To the extent delays in receiving the information requested occur or Deloitte Tax performs additional work in gathering data or formatting data to the requested manner, Deloitte Tax will bill for the additional time at 60% of its current applicable hourly rates which are as follows:

| | | |
|---|---|---|
| a. | Partner/Principal/Director: | $525 per hour |
| b. | Senior Manager: | $420 per hour |
| c. | Manager: | $369 per hour |
| d. | Senior: | $291 per hour |
| e. | Staff: | $216 per hour |

21.　Pursuant to the Tax Advisory Letter, the Deloitte Tax fees for tax consulting and advisory services, other than for advisory services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time required and 75% of its standard hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable expenses.

22.　The applicable current hourly rates (discounted as described above) by level are as follows:

| | | |
|---|---|---|
| a. | Partner: | $656 per hour |
| b. | Senior Manager: | $525 per hour |
| c. | Manager: | $461 per hour |
| d. | Senior: | $364 per hour |
| e. | Staff: | $270 per hour |

23.    The billing rates reflect, among other things, geographical differentials, differences in experience levels within classifications, and differences between types of services being provided. In the normal course of business, Deloitte Tax revises its regular hourly rates to reflect changes in responsibilities, increased experience and increased costs of doing business. Accordingly, Deloitte Tax requests that the aforementioned rates be revised to the applicable hourly rates that will be in effect from time to time. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

24.    Deloitte Tax will also seek reimbursement for all necessary and reasonable related expenses. Reasonable and documented actual expenses, including travel (with air travel based on coach fares consistent with this Court's guidelines), report production, delivery services, and other expenses incurred in providing the services, will be included in the total billed.

25.    The Debtors have paid Deloitte Tax a total of approximately $295,750 in the 90 days prior to the Petition Date. As of the Petition Date, the Debtors do not owe Deloitte Tax any amounts for its prepetition services.

26.    In connection with the engagement, Deloitte Tax will be entitled to compensation for any time and actual reasonable expenses (including, without limitation, reasonable legal fees and expenses) that it may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Debtors, including,

without limitation, those relating to the Debtors but arising other than as a result of or in connection with this engagement.

27.     Deloitte Tax will charge the Debtors for its expenses in a manner and at rates consistent with charges made generally to its other clients, the Court's Administrative Order M-150 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases), and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the Executive Office for the United States Trustees. Deloitte Tax understands that (a) it shall accept as compensation such sums as may be allowed by the Court and (b) interim and final fee awards are subject to approval by this Court.

28.     Except as set forth in the Young Declaration, Deloitte Tax has not shared or agreed to share any of its compensation in connection with this matter with any other nonaffiliated person, except as permitted by section 504 of the Bankruptcy Code.

29.     Deloitte Tax will file interim and final fee applications for allowance of its compensation and expenses, with respect to its services, and Deloitte Tax will seek compensation and reimbursement of expenses, as specified in the Engagement Letters, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the United States Trustee for the Southern District of New York, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's *Order to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated January 26, 2010 [Docket No. 181].

## Indemnity

30.     As set forth in the Engagement Letters and subject to the terms and conditions therein, the Debtors agreed to indemnify Deloitte Tax and certain related parties from losses directly or indirectly in connection with, arising out of, based upon, or related to the engagement of Deloitte Tax under the Engagement Letters. The Debtors believe the indemnity provision is a reasonable term and condition of Deloitte Tax's engagement. Deloitte Tax and the Debtors believe that the indemnity provisions are comparable to those generally obtained by professional services firms of similar stature to Deloitte Tax and for comparable engagements, both in and out of court. The proposed order clarifies the applicable procedure with respect to indemnification.

31.     The payment of indemnity pursuant to the Engagement Letters will be subject to an application with the Court, and will be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letters.

## Notice

32.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Application on (i) counsel for the Committee; and (ii) parties in interest listed on the Master Service List (as defined in the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Authorizing the Implementation of Notice and Case Management Procedures*, entered on January 15, 2010 [Docket No. 103]). In light of the nature of the relief requested, the Debtors submit that no further notice need be provided.

## No Prior Request

33.     No previous request for the relief sought herein has been made to this

Court or any other court.

WHEREFORE, the Debtors request entry of the order attached hereto as <u>Exhibit A</u>

granting the relief requested herein and such other and further relief as is just.

Dated: February 12, 2010

MESA AIR GROUP, INC.; MESA AIR NEW
YORK, INC.; MESA IN-FLIGHT, INC.;
FREEDOM AIRLINES, INC.; MESA AIRLINES,
INC.; MPD, INC.; RITZ HOTEL MANAGEMENT
CORPORATION; REGIONAL AIRCRAFT
SERVICES, INC.; AIR MIDWEST, INC.; MESA
AIR GROUP AIRLINE INVENTORY
MANAGEMENT, LLC; NILCHI, INC.; AND
PATAR, INC.

By: Michael J. Lotz
Its: President

## EXHIBIT A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

---

### ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016 AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP TO PROVIDE TAX COMPLIANCE AND TAX CONSULTING SERVICES TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 5, 2010

Upon the Application of Mesa Air Group, Inc., and certain of its direct and indirect subsidiaries (the "Debtors") for an Order, pursuant to sections 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1, authorizing and approving the employment and retention of Deloitte Tax LLP ("Deloitte Tax") to provide tax compliance and tax consulting services to the Debtors *nunc pro tunc* to January 5, 2010 (the "Application");[2] and upon the Declaration of Tiffany Young (the "Young Declaration"), filed in support of the Application, and the Court being satisfied, based on the representations made in the Young Declaration, that Deloitte Tax represents no interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged, under section 327(a) of the Bankruptcy Code as modified by section 1107(b); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application having been provided, and it

appearing that no other or further notice need be provided; and a hearing having been held to

consider the relief requested in the Application (the "Hearing"); and the appearances of all

interested parties having been noted in the record of the Hearing; and the Court having found and

determined that the relief sought in the Application is in the best interests of the Debtors, their

estates and creditors, and all parties in interest and that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED that, in accordance with section 327(a) of the Bankruptcy Code, the Debtors

are authorized to employ and retain Deloitte Tax to provide tax compliance and tax consulting

services, *nunc pro tunc* to January 5, 2010, on the terms set forth in the Engagement Letters and

the Application; and it is further

ORDERED that Deloitte Tax shall be compensated in accordance with the procedures set

forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules

and the Court's *Order to Establish Procedures for Interim Compensation and Reimbursement of*

*Expenses of Professionals*, dated January 26, 2010 [Docket No. 181]; and it is further

ORDERED that all requests of Deloitte Tax for payment of indemnity pursuant to the

Engagement Letters shall be made by means of an application (interim or final as the case may

be) and shall be subject to review by the Court to ensure that payment of such indemnity

conforms to the terms of the Engagement Letters and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Deloitte Tax be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED that in no event shall Deloitte Tax be indemnified if the Debtors or representatives of the estates, assert a claim for, and a court determines by final order that such claim arose out of, Deloitte Tax's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. To the extent this Order is inconsistent with the Engagement Letters or the Application, this Order shall govern; and it is further

ORDERED that notwithstanding any provision to the contrary in the Application or the Engagement Letters the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.


Dated: _____
    New York, New York

                                    _____
                                    THE HONORABLE MARTIN GLENN
                                    UNITED STATES BANKRUPTCY JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF TIFFANY YOUNG IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) OF THE**
**BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL**
**RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**DELOITTE TAX LLP TO PROVIDE TAX COMPLIANCE AND TAX CONSULTING**
**SERVICES TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 5, 2010**

Tiffany Young, being duly sworn, deposes and says:

1.      I am a partner of the firm of Deloitte Tax LLP ("Deloitte Tax"), which has

an office located at 2901 N. Central Avenue, Phoenix, Arizona 85012.  I make this declaration

(the "Declaration") in support of the *Debtors' Application for an Order Pursuant to Section*

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

*327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1*

*Authorizing the Employment and Retention of Deloitte Tax LLP to Provide Tax Compliance and*

*Tax Consulting Services Nunc Pro Tunc to January 5, 2010* (the "Application"). The above–

captioned debtors (the "Debtors") seek to retain Deloitte Tax effective as of January 5, 2010

pursuant to the terms and conditions set forth in the two engagement letters each dated January

21, 2010 between the Debtors and Deloitte Tax (the "Tax Compliance Letter" and the "Tax

Advisory Letter", collectively, the "Engagement Letters").[2]

       2.     The statements set forth in this Declaration are based upon my personal

knowledge, upon information and belief, and upon client matter records kept in the ordinary

course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

### Deloitte Tax's Disinterestedness

       3.     In connection with the preparation of this Declaration, Deloitte Tax

reviewed the list of potential parties in interest that Deloitte Tax received from the Debtors.

       4.     Except as set forth herein, to my knowledge based on reasonable inquiry,

(a) Deloitte Tax, and its partners, principals, and directors that are anticipated to provide services

in connection with the engagement (the "Deloitte Tax Professionals") do not hold or represent an

interest adverse to any of the Debtors with respect to the matters on which Deloitte Tax is to be

retained in these chapter 11 cases, and (b) Deloitte Tax or the Deloitte Tax Professionals have no

relationship to any of the Debtors, any of the Debtors' significant creditors, other known

significant parties-in-interest in these chapter 11 cases, or to the Debtors' attorneys that have

---

[2] Capitalized terms used herein shall have the meaning ascribed to them in the Application, unless otherwise specified.

been identified as assisting the Debtors in these chapter 11 cases, except as described herein or on attachments hereto.

5.      From time to time, Deloitte Tax or its affiliates have provided, currently provide, or may currently provide services and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these chapter 11 cases.

6.      Deloitte Tax and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that have been identified to us to be assisting the Debtors or various committees. Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte Tax or its affiliates in matters unrelated to these chapter 11 cases.

7.      Despite the efforts described above to identify and disclose Deloitte Tax's connections with the parties-in-interest in these chapter 11 cases, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

8.     To check upon and disclose possible relationships with parties-in-interest in these chapter 11 cases, Deloitte Tax has researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or the Debtors' significant secured and unsecured creditors whose names were supplied to it by the Debtors' counsel, significant noteholders and equity holders, other professionals or other such persons or entities whose names were supplied with significant relationships with the Debtors, including the individual names of the attorneys in the United States Trustee's Office as were identified to Deloitte Tax by the Debtors' counsel. The identities of these parties in interest were provided by counsel to the Debtors.

9.     From the internal research, Deloitte Tax has determined that certain relationships should be disclosed, as follows:

(a)     Deloitte Tax or its affiliates provide services in matters unrelated to these chapter 11 cases to certain of the Debtors' largest secured or unsecured creditors or interest holders and to other entities listed on Exhibit 2.

(b)     Pachulski Stang Ziehl & James LLP ("Pachulski Stang") the Debtor's Bankruptcy Counsel, may have provided, currently provides and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to these chapter 11 cases, and/or Deloitte Tax and/or its affiliates may have provided, may currently provide, and may in the future provide services to Pachulski Stang.

(c)     Certain financial institutions or their respective affiliates which are listed on Exhibit 2, including Wells Fargo/Wachovia Bank, are lenders to Deloitte Tax or its affiliates. Deloitte Tax is a guarantor of certain such indebtedness. Certain of these financial institutions have also financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates.

(d)     Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, or its affiliates have provided and may continue to provide professional

services to the Debtors including without limitation, post-bankruptcy services pursuant to a separate retention application.

10.     Certain parties-in-interest may be adverse to and/or involved in litigation matters with Deloitte Tax and/or its affiliates in connection with matters unrelated to these chapter 11 cases.

11.     Except as may be disclosed herein or on exhibits hereto, to the best of my knowledge, Deloitte Tax and the Deloitte Tax Professionals do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Deloitte Tax Professionals are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

## Scope of Services

12.     Subject to the terms of the Engagement Letters, Deloitte Tax proposes to render, as may be requested by the Debtors and as may be agreed to by Deloitte Tax, various tax services which may include the following:

      a.     preparation of September 30, 2009 federal and state income tax returns for Mesa Air Group, Inc. and subsidiaries as identified in Exhibit A of the Tax Compliance Letter and preparation of any estimated tax payments for the year ending September 30, 2010;

      b.     tax advisory services for Mesa Air Group, Inc. and its subsidiaries during the year January 1, 2010 through December 31, 2010, including but not limited to Work Orders as specified in the Tax Advisory Letter. These services may include:

          (1)     U.S. Federal Income Tax Consulting

               •     Periodic consulting regarding various federal income tax issues including but not limited to assistance with IRS audits, mergers, acquisitions, dispositions, restructuring, cancellation of debt income, tax attribute planning, debt restructuring services and net operating loss carryback

(2)     Multi-State Tax Consulting

- Consulting regarding various issues pertaining to state and local taxes (income/franchise/sales/use/property), including but not limited to assistance with audits, consulting regarding state and local income tax issues and assistance with responding to state and local tax notices

(3)     Employee Benefits

- Consulting regarding various income tax and employment tax issues associated with employee compensation and reporting

(4)     International Tax Consulting

- Consulting regarding general international tax issues including but not limited to transfer pricing, withholding tax, mergers, acquisitions, dispositions, restructuring services and assistance with income tax audits; and

c.      such other tax services as may be requested by the Debtors and agreed to by Deloitte Tax including pursuant to separate engagement letters.

## Reasonableness of Compensation

13.     The fee structure described in the Application and Engagement Letters is consistent with Deloitte Tax's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these chapter 11 cases.

14.     So far as I am aware the proposed overall compensation structure is comparable to compensation generally charged by tax consultants of similar stature for comparable engagements, both in and out of court.

15.     Subject to the Court's approval and pursuant to the terms and conditions of the Tax Compliance Letter, Deloitte Tax's tax return preparation services will be billed as set

forth herein. The Deloitte Tax professional fees for the preparation of the tax returns, extensions and estimated tax calculations, other than for services related to assessing the applicability of the reportable transaction provisions, are estimated to be approximately $259,750, plus reasonable out-of-pocket expenses. Such professional fee includes the following: (i) $199,750 for the preparation of federal and state income tax returns; (ii) $10,000 for state apportionment; (iii) $20,000 for the preparation of federal and state extensions (including first quarter estimated tax payments); and (iv) $30,000 for the preparation of federal and state estimated tax calculations and payment vouchers ($10,000 per quarter for second, third and fourth quarters). These estimates are based on a blended rate per hour of $160 and assume that the tax returns will involve approximately the same level of complexity as last year's returns. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A of the Tax Compliance Letter, Deloitte Tax will contact the Debtors to discuss the billing arrangement related to such out-of-scope services. For the preparation of additional city or state income/franchise tax returns identified and not listed in Exhibit A of the Tax Compliance Letter, Deloitte Tax's fee will be $1,250 per return.

16.    Deloitte Tax's ability to prepare the returns for the quoted fee is based on the expectation that Deloitte Tax will complete the returns in an efficient manner during the agreed upon timeline. To the extent delays in receiving the information requested occur or Deloitte Tax performs additional work in gathering data or formatting data to the requested manner, Deloitte Tax will bill for the additional time at 60% of its current applicable hourly rates which are as follows:

a.    Partner/Principal/Director:          $525 per hour

| b. | Senior Manager: | $420 per hour |
|----|-----------------|---------------|
| c. | Manager: | $369 per hour |
| d. | Senior: | $291 per hour |
| e. | Staff: | $216 per hour |

17.     Pursuant to the Tax Advisory Letter, the Deloitte Tax fees for consulting and advisory services, other than for advisory services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time required and 75% of our standard hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable expenses.  Deloitte Tax will send the Debtors monthly bills as the work is performed consistent with applicable Bankruptcy Court procedure in place in these cases.

18.     The applicable current hourly rates (discounted as described) by level are as follows:

| a. | Partner: | $656 per hour |
|----|----------|---------------|
| b. | Senior Manager: | $525 per hour |
| c. | Manager: | $461 per hour |
| d. | Senior: | $364 per hour |
| e. | Staff: | $270 per hour |

19.     The billing rates reflect, among other things, geographical differentials, differences in experience levels within classifications, and differences between types of services being provided.  In the normal course of business, Deloitte Tax revises its regular hourly rates to reflect changes in responsibilities, increased experience and increased costs of doing business. Accordingly, Deloitte Tax requests that the aforementioned rates be revised to the applicable

hourly rates that will be in effect from time to time. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective. Deloitte Tax will also seek reimbursement for all necessary and reasonable related expenses. Reasonable and documented actual expenses, including travel (with air travel based on coach fares consistent with this Court's guidelines), report production, delivery services, and other expenses incurred in providing the services, will be included in the total billed.

20.    Deloitte Tax will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York and any applicable orders of the Court, provided that Deloitte Tax and its professionals shall only be required to provide summary time records for services rendered postpetition, in hourly increments.

21.    The Debtors have paid Deloitte Tax a total of approximately $295,750 in the 90 days prior to the Petition Date. As of the Petition Date, the Debtors do not owe Deloitte Tax any amounts for its prepetition services.

22.    To the best of my knowledge, Deloitte Tax has no agreement with any other non-affiliated entity to share with such entity any compensation from revenue received by Deloitte Tax in connection with the Debtors' chapter 11 cases.

23.    Deloitte & Touche LLP recently completed a reorganization of some of its business units, including its financial advisory services, tax services, solutions, human capital, and outsourcing business functions. This reorganization was indented to align the organizational structure more closely with the manner with in which business is conducted. These business functions are now being conducted by entities affiliated with Deloitte & Touche, including

Deloitte Financial Advisory Services LLP ("Deloitte FAS"), Deloitte Consulting LLP ("Deloitte Consulting"), and Deloitte Tax.  Accordingly, some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with Deloitte FAS, Deloitte Consulting, Deloitte & Touche LLP and/or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and expenses with respect to such services will be included in the fee applications of Deloitte Tax unless subject to a spate retention application and order.

Dated: February 4, 2010

_[signature]_
Tiffany Young

SWORN TO AND SUBSCRIBED before me on
this 4th day of February, 2010.

_[signature]_
NOTARY PUBLIC
My Commission expires:
2-26-13

CATHY J. BOWERS
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 26, 2013

# EXHIBIT 1

## (Tax Engagement Letters)

# Deloitte.

**Deloitte Tax LLP**
Suite 1200
2901 N. Central Avenue
Phoenix, AZ 85012-2799
USA

Tel: +1 602 234 5100
Fax: +1 602 234 5186
www.deloitte.com

January 21, 2010

Mr. Keith C. Kranzow
Vice President, Finance
Mesa Air Group, Inc. and Subsidiaries
410 North 44th Street, Suite 100
Phoenix, Arizona 85008

Dear Keith:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to prepare the fiscal year ended September 30, 2009 federal and state income tax returns ("tax returns") for Mesa Air Group, Inc. & Subsidiaries ("Client" or the "Debtor") identified in Exhibit A, Listing of Federal and State Tax Returns Included in Engagement, attached to this engagement letter ("Engagement Letter") and incorporated herein by reference. This Engagement Letter describes the scope of the Deloitte Tax services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

For purposes of this Engagement Letter and its attached General Business Terms, "Bankruptcy Court" shall mean the Bankruptcy Court with which the Debtor has filed a petition.

Debtor agrees that it will promptly seek the Bankruptcy Court's approval of this Engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, it may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Debtor in the Case on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the date of the commencement of the Case on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Debtor hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the bankruptcy proceeding.

## SCOPE OF SERVICES

The target date for completion of the tax returns is June 1, 2010. Deloitte Tax will notify Client of circumstances encountered that could significantly change the targeted completion date. In order to meet this date, Deloitte Tax must receive complete and organized data needed to prepare the tax returns no later than February 15, 2010. The initial information needed by Deloitte Tax to complete the federal, state, and international returns will be requested under separate cover upon audit committee approval for these services.

Member of
Deloitte Touche Tohmatsu

In addition to the preparation of Client's federal and state income tax returns, Deloitte Tax will prepare the extension requests for the returns listed on Exhibit A.

Deloitte Tax will also prepare any quarterly estimated tax payments for the year ending September 30, 2010 as needed. Deloitte Tax will prepare these quarterly federal and state estimated income tax payment vouchers based on financial information supplied by Client.

The Internal Revenue Service ("IRS") issued regulations and administrative guidance that require certain large corporations and tax exempt organizations to electronically file their federal income tax return using the Modernized e-File ("MeF") System. As a result, Client may be required to file its federal income tax return electronically using the MeF System. Under separate state mandates, Client may also be required to electronically file in the states of Massachusetts and Michigan. The Deloitte Tax responsibilities in connection with providing electronic filing assistance will be limited to communicating to Client the specific procedures and responsibilities regarding the MeF System that will enable Client to comply with the MeF System and the transmission of the electronic file to the Internal Revenue Service ("IRS") in the form and content as authorized by the Client. In order for Deloitte Tax to electronically transmit Client's files, Client must provide the signed Form 8453-C, "U.S. Corporation Income Tax Return Declaration for an IRS e-file Return" or other required declaration to Deloitte Tax at least seven (7) days prior to transmission to the IRS. Upon receipt of the signed Form 8453-C or required declaration, Deloitte Tax will transmit the electronic file to the IRS without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of a signed Form 8453-C or other required declaration will be deemed by Deloitte Tax as authorization by Client to transmit Client's electronic files.

The IRS and some states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state agency. These rules impose significant requirements to disclose certain transactions and such disclosures may encompass transactions entered into in the normal course of business. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosures will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

Unless outlined below or the subject of a separate engagement letter, the Deloitte Tax return preparation services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions that have not been the subject of a prior consultation between Deloitte Tax and Client.

## TAX POSITIONS AND POTENTIAL PENALTIES

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of and for which Client or Deloitte Tax could be subject to potential penalties. With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure. Client should be aware that in certain instances, the standards to

avoid a potential penalty applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty standards applicable to Client. With respect to positions known to Deloitte Tax, Deloitte Tax will include in the tax returns prepared by Deloitte Tax disclosures required in order for Client to avoid accuracy-related penalties under Internal Revenue Code ("IRC") section 6662 (or comparable state provisions), and disclosures required in order for Deloitte Tax to avoid tax return preparer penalties under IRC section 6694 (or comparable state provisions).

Client returns may be selected for review by taxing authorities, who may not agree with Client's positions. Any adjustments proposed by tax authorities are subject to certain rights of appeal. Client representation in administrative tax authority proceedings is not contemplated within the scope of this Engagement Letter. Deloitte Tax would generally be willing to represent Client in such proceedings for an additional fee that is mutually agreed upon. Because of the lack of clarity in the law, Deloitte Tax cannot provide assurances that the positions asserted by taxing authorities will not ultimately be sustained which could result in the assessment of potential penalties.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the preparation of Client's tax returns under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing tax consulting services and services in connection with the preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## PROFESSIONAL FEES AND EXPENSES

The Deloitte Tax professional fees for the preparation of the tax returns, extensions and estimated tax calculations, other than for services related to assessing the applicability of the reportable transaction provisions, are $259,750, plus reasonable out-of-pocket expenses. Our professional fee includes the following:

- Preparation of federal and state income tax returns - $199,750
- State apportionment - $10,000
- Preparation of federal and state extensions - $20,000 (includes first quarter estimated tax payments), and
- Preparation of federal and state estimated tax calculations and payment vouchers - $30,000 ($10,000/quarter for second, third and fourth quarters).

These estimates are based on a blended rate per hour of $160 and assume that the tax returns will involve approximately the same level of complexity as last year's returns. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services. For the preparation of additional city or state income/franchise tax returns identified and not listed in Exhibit A, our fee will be $1,250 per return.

Our ability to prepare the returns for the quoted fee is based on the expectation that Deloitte Tax will complete the returns in an efficient manner during our agreed upon timeline. To the extent delays in receiving the information requested occur or Deloitte Tax performs additional work in gathering data or formatting data to the requested manner, Deloitte Tax will bill for the additional time at 60% of our current standard hourly rates which are as follows:

| | |
|---|---|
| Partner | $525 |
| Senior Manager | $420 |
| Manager | $369 |
| Senior | $291 |
| Staff | $216 |

The fee is also based on the following assumptions:

- Client will provide one final reconciled version of the federal, state, and international data collect packages for each entity.

- Client will provide one final version of all fixed asset detail for each entity which includes the depreciation reports for U.S. tax, state tax, AMT, ACE, rotables, additions and disposals (including the gain/loss calculation for U.S. tax, state tax, AMT, ACE and rotables). Client will also provide Deloitte Tax with a fixed asset rollforward for each entity (the reconciled amount must agree with the amount reported on the audited financial statements). The rollforward will include a reconciliation of any differences between the book cost and tax cost.

- The international entity structure has not changed from the previous year and no major new international transactions occurred during the tax year.

Should multiple versions of this information be provided to Deloitte Tax or if the international entity structure has changed during the tax year, additional fees will be billed for the professional time incurred to incorporate the new information. Deloitte Tax will bill for the additional time at 60% of our current standard hourly rates (listed above).

Deloitte Tax intends to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of chapter 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code. The payment of fees and reimbursement of expenses will be subject to ultimate allowance and

approval by the Bankruptcy Court (as defined above). However, in the interim, the Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices in accordance with the Local Rules. Payment of these invoices will be made by the Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court. Deloitte Tax intends to submit fee applications seeking approval of its fees and expenses on a quarterly basis. We will provide you with an invoice on a regular basis, with the invoice due and payable pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

## ACCEPTANCE

This Engagement Letter including all exhibits, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at 602-631-5974.

Very truly yours,

DELOITTE TAX LLP

By: _Tiffany Young_

Tiffany Young
Partner

AGREED AND ACCEPTED:

Mesa Air Group, Inc. on behalf of itself and its subsidiaries and/or affiliates

By: _RICHARD THAYER_

Printed
Name: _____

Title: _CHAIRMAN, AUDIT COMMITTEE_

Date: _4 Feb 2010_

Rev 03/09

Mr. Keith C. Kranzow
Mesa Air Group, Inc. & Subsidiaries
January 21, 2010
Page 5

approval by the Bankruptcy Court (as defined above). However, in the interim, the Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices in accordance with the Local Rules. Payment of these invoices will be made by the Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court. Deloitte Tax intends to submit fee applications seeking approval of its fees and expenses on a quarterly basis. We will provide you with an invoice on a regular basis, with the invoice due and payable pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

## ACCEPTANCE

This Engagement Letter including all exhibits, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at 602-631-5974.

Very truly yours,                    AGREED AND ACCEPTED:

DELOITTE TAX LLP                     Mesa Air Group, Inc. on behalf of itself and its
                                     subsidiaries and/or affiliates

By: _____                By: _____
    Tiffany Young                    Printed
    Partner                          Name: _Michael Lotz_
                                     Title: _President_
                                     Date: _2-5-10_

Rev 03/09

**Exhibit A**
**Listing of Federal and State Tax Returns Included in Engagement**

**Mesa Air Group, Inc. and Subsidiaries**
  U.S. Corporate Income Tax Return (Form 1120)
  Arizona Corporation Income Tax Returns (Form 120)
  California Corporation Income or Franchise Tax Return (Form 100)
  Colorado Corporation Income Tax Return (Form 112)
  Florida Corporation Income / Fran Emergency Excise (Form 1120)
  Hawaii Corporation Income Tax Return (Form N-30)
  Idaho Corporation Income Tax Return (Form 41)
  Illinois Corporation Income and Replacement Tax Return (Form IL-1120)
  Kansas Corporation Income Tax Return (Form K-120)
  Maine Corporation Income Tax Return (Form 1120ME)
  Michigan Business Tax Return (Form 4567)
  Minnesota Corporation Income Tax Return (Form M4)
  Montana Corporation License Tax Return (Form CLT-4)
  Nebraska Corporation Income Tax Return (Form 1120N)
  New Hampshire Business Enterprise Tax Return for Consolidated Groups (Form BET-80-WE)
  New Mexico Corporate Income and Franchise Tax Return (Form CIT-1)
  Oklahoma Corporation Income Tax Return (Form 512)
  Oregon Corporation Excise Tax Return (Form 20)
  Texas Franchise Tax Report (Form 05-158-A)
  Utah Corporation Franchise or Income Tax Return (Form TC)
  Vermont Corporation Income Tax Return (Form CO-411)

**Mesa Airlines, Inc.**
  Alabama Corporation Income Tax Return (Form 20C)
  Alabama Business Privilege Tax Return (Form CPT)
  Arkansas Corporation Income Tax Return (Form AR1100CT)
  Connecticut Corporation Business Tax Return (Form CT-1120)
  District of Columbia Corporation Franchise Tax Return (Form D-20)
  Georgia Corporation Tax Return (Form 600)
  Indiana Corporation Income Tax Return (Form IT-20)
  Iowa Corporation Income Tax Return (Form IA-1120)
  Kentucky Corporation Income and License Tax Return (Form 720)
  City of Louisville Occupational License Return (Form OL-3)
  Louisiana Corporation Income Tax Return (Form CIFT-620)
  Maryland Corporation Income Tax Return (Form 500)
  Massachusetts Foreign Business or Manufacturing Corporation Excise Return (Form 355B)
  City of Detroit Income Tax Corporation Return (Form D-1120)
  City of Grand Rapids Corporation Income Tax Return (Form GR-1120)
  City of Saginaw Income Tax Corporation Return (Form S-1120)
  Mississippi Corporate Income and Franchise Tax Return (Form 83-105)
  Missouri Corporation Income Tax Return (Form MO-1120)
  City of Kansas City Profits Return (Form RD-108)
  City of St. Louis Earnings Tax Return (Form E-234)
  New Jersey Corporation Business Tax Return (Form CBT-100)
  New York General Business Corporation Franchise Tax Return (Form CT-3)
  New York City General Corporation Tax Return (Form 3L)
  North Carolina Corporation Income Tax Return (Form CD-405)
  Ohio Corporation Franchise Tax Report (Form FT-1120)

City of Cleveland Corporation Income Tax Return (Form CCA)
City of Columbus Income Tax Return (Form BR-25)
City of Dayton Corporation Income Tax Return (Form R)
City of Youngstown Income Tax Return (Form R)
Oklahoma Annual Franchise Tax Return (Form 200)
Pennsylvania Corporate Tax Report (Form RCT 101)
City of Philadelphia Business Privilege Tax Return (Form 2003 BPT)
Rhode Island Business Corporation Tax Return (Form RI-1120C)
South Carolina Corporation Income Tax Return (Form SC1120)
Tennessee Franchise, Excise Tax Return (Form FAE170)
Virginia Corporation Income Tax Return (Form 500)
West Virginia Combined Corporate Income/Franchise Tax Return (Form CNF-120)
Wisconsin Corporation Franchise or Income Tax Return (Form 4)

## Mesa Air Group - Aircraft Inventory Management, LLC
Alabama Business Privilege Tax Return (Form PPT)
California Limited Liability Company Return of Income (Form 568)
Pennsylvania Corporate Tax Report (Form RCT-101)

## Air Midwest, Inc.
Arkansas Corporation Income Tax Return (Form AR1100CT)
Georgia Corporation Tax Return (Form 600)
Iowa Corporation Income Tax Return-Long Form (Form 1120)
Kentucky Corporation Income and License Tax Return (Form 720)
Louisiana Corporation Income/Franchise Tax Return (Form CIFT-620-SD)
Maryland Corporation Income Tax Return (Form 500)
City of Saginaw Corporation Income Tax Return (Form S-1120)
Mississippi Corporate Income and Franchise Tax Return (Form 83-105)
Missouri Corporation/Franchise Tax Return (Form MO-1120)
City of Kansas City, MO Profits Return-Earnings Tax (Form RD-108)
New York General Business Corporation Franchise Tax Return (Form CT-3)
North Carolina C Corporation Tax Return (Form CD-405)
Ohio Corporation Franchise Tax Report (Form FT-1120)
City of Cleveland Regional Income Tax Agency Net Profits Tax Return (Form 27)
City of Youngstown Income Tax Return (Form R)
Oklahoma Annual Franchise Tax Return (Form 200)
Pennsylvania Corporate Tax Report (Form RCT-101)
City of Philadelphia Business Privilege Tax (Form BPT)
South Carolina Corporation Income Tax Return (Form SC1120)
Tennessee Franchise, Excise Tax Return (Form FAE 170)
Virginia Corporation Income Tax Return (Form 500)
West Virginia Combined Corporate Income/Franchise Tax Return (Form CNF-120)

## Regional Aircraft Services, Inc.
Georgia Corporation Tax Return (Form 600)
Iowa Corporation Income Tax Return-Long Form (Form 1120)
New York General Business Corporation Franchise Tax Return (Form CT-3)
North Carolina C Corporation Tax Return (Form CD-405)
Ohio Corporation Franchise Tax Report (Form FT-1120)
Pennsylvania Corporate Tax Report (Form RCT-101)
South Carolina Corporation Income Tax Return (Form SC1120)
Tennessee Franchise, Excise Tax Return (Form FAE 170)

Virginia Corporation Income Tax Return (Form 500)

**Freedom Air Inc.**
Alabama Corporation Income Tax Return (Form 20C)
Alabama Business Privilege Tax Return and Annual Report (Form PSA)
Arkansas Corporation Income Tax Return (Form AR1100CT)
Connecticut Corporation Business Tax Return (Form CT-1120)
District of Columbia Corporation Franchise Tax Return (Form D-20)
Georgia Corporation Tax Return (Form 600)
Indiana Corporate Adjusted Gross Income Tax Return (Form IT-20)
Iowa Corporation Income Tax Return-Long Form (Form 1120)
Kentucky Corporation Income and License Tax Return (Form 720)
City of Louisville Occupational License Return (Form OL-3)
Louisiana Corporation Income/Franchise Tax Return (Form CIFT-620-SD)
Maryland Corporation Income Tax Return (Form 500)
Massachusetts Business or Manufacturing Corporation Excise Return (Form 355)
City of St. Louis Earnings Tax Return (Form E-234)
Mississippi Corporate Income and Franchise Tax Return (Form 83-105)
Missouri Corporation/Franchise Tax Return (Form MO-1120)
New York General Business Corporation Franchise Tax Return (Form CT-3)
New York City General Corporation Tax Return (Form 3L)
North Carolina C Corporation Tax Return (Form CD-405)
Ohio Corporation Franchise Tax Report (Form FT-1120)
City of Columbus Income Tax Return (Form BR-25)
City of Dayton Corporation Income Tax Return (Form R)
Pennsylvania Corporate Tax Report (Form RCT-101)
City of Philadelphia Business Privilege Tax (Form BPT)
Rhode Island Business Corporation Tax Return (Form RI-1120C)
South Carolina C Corporation Income Tax Return (Form SC1120)
Tennessee Franchise, Excise Tax Return (Form FAE 170)
Virginia Corporation Income Tax Return (Form 500)
Wisconsin Corporation Franchise or Income Tax Return (Form 4)

**Mesa Air New York, Inc.**
New York General Business Corporation Franchise Tax Return (Form CT-3)

**Kunpeng Airlines Co, Ltd.**
Information Return of U.S. Persons with Respect to Certain Foreign Corporations (Form 5471)
Return by a U.S. Transferor of Property to a Foreign Corporation (Form 926)

**Ping Shan, SRL**
Information Return of U.S. Persons with Respect to Foreign Disregarded Entities (Form 8858)

**Shan Yue, SRL**
Information Return of U.S. Persons with Respect to Foreign Disregarded Entities (Form 8858)

# DELOITTE TAX LLP GENERAL BUSINESS TERMS

**1.     Services.**  It is understood and agreed that services (the "Services") provided by Deloitte Tax (as defined in paragraph 12 below) under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean Mesa Air Group, Inc. and its subsidiaries and/or affiliates.  Mesa Air Group, Inc. represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

**2.     Payment of Invoices.**  Subject to any applicable orders or procedures of the Bankruptcy Court, Deloitte Tax's invoices are due within thirty (30) days of the invoice date.  Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date.  The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

**3.     Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services.  This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period.  Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules.  Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

**4.     Ownership of Deloitte Tax Property.**  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property.  Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.  In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools.  Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items

**5.     Limitation on Warranties.  THIS IS A SERVICES ENGAGEMENT.  DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE.  DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF**

**PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

6.     **Limitation on Damages.**   The Client agrees that Deloitte Tax, its subcontractors and their respective personnel shall not be liable to the Client for any claims, liabilities or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Client to Deloitte Tax pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from gross negligence of Deloitte Tax or its subcontractors (in which event the liability of Deloitte Tax, its subcontractors and their prospective personnel shall not exceed an aggregate amount of 3 times the fees paid by the Client to Deloitte Tax pursuant to this engagement) or bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its subcontractors or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

7.     **Client Responsibilities.**   The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services. The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.     **Force Majeure.**   Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.     **Limitation on Actions.**   No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.     **Independent Contractor.**   Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of services to be provided by Deloitte Tax under this engagement. It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, joint venturer, co-owner or representative. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, theother.

11.     **Confidentiality.**   To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The

Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.

12.     **Survival and Interpretation.** The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement. For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13.     **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14.     **Waiver of Jury Trial.  DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15.     **Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith, intentional misconduct, or gross negligence of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective

personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16. **Governing Law, Venue, Jurisdiction and Severability.** These terms, the Engagement Letter, including exhibits, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action based on or arising out of this engagement or the Services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

17. **Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

18. **Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

19. **Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for

services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

**20.** **Accountant / Client Privilege – IRC §7525.** The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege. The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

**21.** **Dispute Resolution.** Any Dispute (as defined below) arising out of or relating to Services performed under the Engagement Letter prior to the effective date of (a) a plan of reorganization of the Debtor or (b) a court order dismissing the Debtor's chapter 11 case or cases (the "Bankruptcy Effective Date") shall be brought in the Bankruptcy Court (as defined below) (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Bankruptcy Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix A and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. Damages that are punitive or exemplary in nature, or that are not based on a party's actual damages, shall be unavailable in arbitration or any other forum (and the parties expressly waive their right to receive such damages). The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the Engagement Letter, including its exhibits or appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court where the Debtor's chapter 11 case or cases are pending and (c) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

**DISPUTE RESOLUTION PROVISION**
**Mesa Air Group, Inc.**

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentially of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Client and Deloitte Tax LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the Engagement Letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: **Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.**

Rev 02/09

**Introduction**

This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP as defined in paragraph 12 of the General Business Terms.

**Information Collection**

Deloitte Tax may collect personally identifiable information ("PII") from you such as:

- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:

- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**

Deloitte Tax collects PII about you to:

- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:

- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:

- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**

You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**

Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**

Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**

If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.

Rev 02/09

# Deloitte.

January 21, 2010

Mr. Keith C. Kranzow
Vice President, Finance
Mesa Air Group, Inc. and Subsidiaries
410 North 44th Street, Suite 100
Phoenix, AZ 85008

**Deloitte Tax LLP**
Suite 1200
2901 N. Central Avenue
Phoenix, AZ 85012-2799
USA

Tel: +1 602 234 5100
Fax: +1 602 234 5186
www.deloitte.com

Dear Keith:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services ("Advisory Services") for Mesa Air Group, Inc. and its subsidiaries ("Client" or "Debtor") during the upcoming year including January 1, 2010 through December 31, 2010. Deloitte Tax professionals will generally be available to provide Advisory Services on federal, foreign, state and local tax matters on an as-requested basis. Exhibit B lists the Advisory Services Deloitte Tax anticipates providing to the Client.

This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Advisory Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

For purposes of this Engagement Letter and its attached General Business Terms, "Bankruptcy Court" shall mean the Bankruptcy Court with which the Debtor has filed a petition.

Debtor agrees that it will promptly seek the Bankruptcy Court's approval of this Engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, it may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Debtor in the Case on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the date of the commencement of the Case on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Debtor hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the bankruptcy proceeding.

## SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Advisory Services provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific Advisory Service desired by Client from Deloitte Tax is identified, Client and Deloitte Tax will execute a separate work order ("Work Order") when such Advisory Service involves contemplated fees in excess of $50,000 per quarter. The request for Advisory Services

should be in a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form). The request for Advisory Services should reference this Engagement Letter and clearly describe the specific details of the Advisory Services anticipated pursuant to the Work Order (including scope of work, deliverables, timing, client responsibilities and fees).

It is contemplated that the Advisory Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Advisory Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

## REPORTABLE TRANSACTIONS

The Internal Revenue Service ("IRS") and some st ates have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state tax agency. These rules impose significant requirements to disclose certain transactions and such disclosures may encompass transactions entered into in the normal course of business. The Advisory Services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any advisory services regarding reportable transactions will be provided under the terms of a separate engagement letter. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

## TAX POSITIONS AND POTENTIAL PENALTIES

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of as a result of the Advisory Services and for which Client or Deloitte Tax could be subject to potential penalties. With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure. Client should be aware that in certain instances, the standards to avoid a potential penalty applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty standards applicable to Client.

## ACKNOWLEDGEMENTS AND AGREEMENTS

The Advisory Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Advisory Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Advisory Services are requested.

Client acknowledges and agrees that the Advisory Services provided pursuant to this Engagement Letter will be based solely upon:

(a)     The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

(b)     The review of documents under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants or the U.S. Public Company Accounting Oversight Board.

(c)     The understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

(d)     Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other taxing authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing taxing authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

(e)     Client's understanding and agreement that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion; and

(f)     Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon.

Although Deloitte Tax might in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the Advisory Services provided.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Advisory Services under this Engagement Letter and preparation of tax returns, tax planning, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Advisory Services, other than for Advisory Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time required and 75% of our standard hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable out-of-pocket expenses. Deloitte Tax will send Client monthly bills as the work is performed.

Our current discounted hourly rates by level are as follows:

| | |
|---|---|
| Partner | $656 |
| Senior Manager | $525 |
| Manager | $461 |
| Senior | $364 |
| Staff | $270 |

These rates are presented at 75% of our standard hourly rates.

Deloitte Tax intends to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of chapter 11 of

the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code. The payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined above). However, in the interim, the Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices in accordance with the Local Rules. Payment of these invoices will be made by the Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court. Deloitte Tax intends to submit fee applications seeking approval of its fees and expenses on a quarterly basis. We will provide you with an invoice on a regular basis, with the invoice due and payable pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

## ACCEPTANCE

This Engagement Letter including all exhibits and Work Order, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Advisory Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact me at (602) 631-5974.

Very truly yours,                     AGREED AND ACCEPTED:

DELOITTE TAX LLP                      Mesa Air Group, Inc. on behalf of itself and its
                                      subsidiaries and/or affiliates

By: _____          By: _____
    Tiffany Young                     Printed
    Partner                           Name: Richard Thayer

                                      Title: Chairman, Audit Committee
                                      Date: 5 feb 2010

the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code. The payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined above). However, in the interim, the Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices in accordance with the Local Rules. Payment of these invoices will be made by the Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court. Deloitte Tax intends to submit fee applications seeking approval of its fees and expenses on a quarterly basis. We will provide you with an invoice on a regular basis, with the invoice due and payable pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

## ACCEPTANCE

This Engagement Letter including all exhibits and Work Order, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Advisory Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact me at (602) 631-5974.

Very truly yours,                          AGREED AND ACCEPTED:

DELOITTE TAX LLP                           Mesa Air Group, Inc. on behalf of itself and its
                                           subsidiaries and/or affiliates

By: _____               By: _____
      Tiffany Young                        Printed
      Partner                              Name: _MICHAEL LOTZ_____

                                           Title: _PRESIDENT_____
                                           Date: _2-5-10_____

**Exhibit A**
**Work Order**

| Work Order Number: | Authorized Start Date: |
| --- | --- |

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Mesa Air Group, Inc. and Subsidiaries ("Client") dated January 21, 2010.

**Description of Advisory Services:**

**Estimated Timing for Advisory Services and Deliverables (if any):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Advisory Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be used by Deloitte Tax and disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing services in connection with the Services under this Work Order and preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Mesa Air Group, Inc. and Subsidiaries**          **Deloitte Tax LLP**

By: _____          By: _____
Printed                                              Printed
Name: _Richard Thayer_____          Name: _____
Title: _Chairman Audit Comm_          Title: _____
Date: _5 Feb 2010_____          Date: _____
Address: _____          Address: _____

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Mesa Air Group, Inc. and Subsidiaries**          **Deloitte Tax LLP**

By: _____          By: _____
Printed                                          Printed
Name: _MICHAEL LOTZ_____          Name: _____
Title: _PRESIDENT_____          Title: _____
Date: _2-5-10_____          Date: _____
Address: _____          Address: _____

**Exhibit B**

U.S. Federal Income Tax Consulting

- Periodic consulting regarding various federal income tax issues including but not limited to assistance with IRS audits, mergers, acquisitions, dispositions, restructuring, cancelation of debt income, tax attribute planning, debt restructuring services and net operating loss carryback.

Multi-State Tax Consulting

- Consulting regarding various issues pertaining to state and local taxes (income/franchise/sales/use/property), including but not limited to assistance with audits, consulting regarding state and local income tax issues and assistance with responding to state and local tax notices

Employee Benefits

- Consulting regarding various income tax and employment tax issues associated with employee compensation and reporting

International Tax Consulting

- Consulting regarding general international tax issues including but not limited to transfer pricing, withholding tax, mergers, acquisitions, dispositions, restructuring services and assistance with income tax audits

# DELOITTE TAX LLP GENERAL BUSINESS TERMS

1.    **Services.** It is understood and agreed that services (the "Services") provided by Deloitte Tax, (as defined in paragraph 12 below), under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. As the specific Service desired by Client from Deloitte Tax is identified, Client and Deloitte Tax may execute a separate work order ("Work Order"), the form of which is attached to the Engagement Letter as Exhibit A. For purposes of these terms and the Engagement Letter, the "Client" shall mean Mesa Air Group, Inc. and its subsidiaries and/or affiliates. Mesa Air Group, Inc. represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.]

2.    **Payment of Invoices.** Subject to any applicable orders or procedures of the Bankruptcy Court, Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

3.    **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services; provided, however, that the Engagement Letter and these terms shall continue to apply to all Work Orders that are in existence at the effective date of such termination and underwhich the Services have not been completed. This engagement or a Work Order may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. If any individual Work Order is terminated pursuant to this section, the Engagement Letter and these terms shall continue to apply to all Work Orders that have not been terminated. Deloitte Tax may terminate this engagement, any Work Order or the performance of any Services upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4.    **Ownership of Deloitte Tax Property.** To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing. In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools. Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items

5.    **Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE**

PROFESSIONAL CARE. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.

6.     **Limitation on Damages.**   Except to the extent finally judicially determined to have resulted primarily from the bad faith, intentional misconduct, or gross negligence of Deloitte Tax or its subcontractors, the Client agrees that Deloitte Tax, its subcontractors and their respective personnel shall not be liable to the Client for any claims, liabilities or expenses relating to this engagement ("Claims") for an aggregate amount in excess of (i)  3 times the fees paid by the Client to Deloitte Tax pursuant to a Work Order, for Claims arising under such Work Order or (ii) 3 times the fees paid by the Client to Deloitte Tax under this engagement other than pursuant to any Work Order, for Claims arising where a Work Order was not used. In no event shall Deloitte Tax, its subcontractors or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement, any Work Order or the Services. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

7.     **Client Responsibilities.**  In addition to any responsibilities set forth in a Work Order, the Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services. The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities under the engagement and any Work Order and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation monitoring ongoing activities.

8.     **Force Majeure.**  Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.     **Limitation on Actions.**  No action, regardless of form, relating to this engagement, any Work Order or the Services may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.    **Independent Contractor.**  Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of services to be provided by Deloitte Tax under this engagement. It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, joint venturer, co-owner or representative.

Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

**11.    Confidentiality.**  To the extent that, in connection with this engagement or any Work Order, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement or any Work Order and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining to this engagement or any Work Order; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.

**12.    Survival and Interpretation.**  The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement or any Work Order. For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement or any Work Order. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms and the agreements and undertakings of Client contained in any Work Order. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

**13.    Assignment and Subcontracting.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations under this engagement or any Work Order to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14. **Waiver of Jury Trial.** DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT, ANY WORK ORDER OR THE SERVICES UNDER ANY WORK ORDER.

15. **Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith, intentional misconduct, or gross negligence of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16. **Governing Law, Venue, Jurisdiction and Severability.** These terms, the Engagement Letter, including exhibits, each Work Order and all matters relating to this engagement and each Work Order shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action based on or arising out of this engagement, any Work Order or the Services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

17. **Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

18. **Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter, any related Work Order and Services provided pursuant to the Engagement Letter and any related Work Order. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter or a Work Order. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

19.    **Certain Tax Disclosures and Reporting.**  In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter or a Work Order as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter and any Work Order executed pursuant to the Engagement Letter and these terms.  The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

20.    **Accountant / Client Privilege – IRC §7525.**  The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings.  The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege.  The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege.  Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties.  The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege.  Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures.  In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules.  The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

21.    **Dispute Resolution.**  Any Dispute (as defined below) arising out of or relating to Services performed under the Engagement Letter prior to the effective date of (a) a plan of reorganization of the Debtor or (b) a court order dismissing the Debtor's chapter 11 case or cases (the "Bankruptcy Effective Date") shall be brought in the Bankruptcy Court (as defined below) (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court).  All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Bankruptcy Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix A and made a part hereof (the "Dispute Resolution Provision").  The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute.  Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute.  Damages that are punitive or exemplary in nature, or that are

not based on a party's actual damages, shall be unavailable in arbitration or any other forum (and the parties expressly waive their right to receive such damages). The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the Engagement Letter, including its exhibits or appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court where the Debtor's chapter 11 case or cases are pending and (c) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

**DISPUTE RESOLUTION PROVISION**
**Mesa Air Group, Inc.**

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Client and Deloitte Tax LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the Engagement Letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: **Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.**

# Deloitte Tax Privacy Notice

**Introduction**

This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP as defined in paragraph 12 of the General Business Terms.

**Information Collection**

Deloitte Tax may collect personally identifiable information ("PII") from you such as:

- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:

- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**

Deloitte Tax collects PII about you to:

- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:

- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:

- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**

You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**

Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**

Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**

If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.

Rev 2/09

# EXHIBIT 2

Deloitte Tax LLP and/or its affiliates have provided or are currently providing certain services in matters unrelated to these chapter 11 cases to, or otherwise have business relationships (including banking relationships) with, the following parties-in-interest and/or their respective affiliates:

AAR Corporation
AT&T Capital Services, Inc. and their affiliates
Bank of Hawaii Leasing, Inc. and their affiliates
Bombardier, Inc. and their affiliates
Cargill Leasing Corporation and their affiliates
Debis Financial Services LLC and their affiliates
Deutsche Bank and their affiliates
DVB Bank
Embraer and their affiliates
Epiq Bankruptcy Solutions and their affiliates
Federal Communications Commission
Fleet National Bank and their affiliates
GE Commercial Aviation Services and their affiliates
Goldman Sachs and their affiliates
IHI Corporation
Imperial Capital LLC and their affiliates
Indigo Miramar LLC and their affiliates
Internal Revenue Service
Investissement Quebec and their affiliates
Jones Day LLC
LCC Capital Master Fund Ltd. And their affiliates
Mesa Air Group, Inc. and their affiliates
MPD, Inc.
Nilchi, Inc.
Pacific Century Leasing, Inc.
Pachulski Stang Ziehl & Jones LLP
Patar, Inc.
Philip Morris Capital Corporation and their affiliates
PNC and their affiliates
Raytheon Aircraft Credit Corporation and their affiliates
Ritz Hotel Management Corp.
Rolls-Royce and their affiliates
SW Holding (CIT) and their affiliates
Transamerica Finance and their affiliates
US Bank N.A. and their affiliates
Wells Fargo Equipment Finance and their affiliates
Zazove Associates LLC and their affiliates