PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    MESA AIR GROUP, INC., *et al.*,<br><br>                            Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**SUPPLEMENT IN SUPPORT OF DEBTORS' MOTION FOR INTERIM AND FINAL
ORDERS PURSUANT TO SECTIONS 105(a), 345(b), 363(c), 364(c) AND 507(a) OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 TO
(I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM;
(II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS;
AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this supplement (the "Supplement") in support of *Debtors' Motion for

Interim and Final Orders Pursuant to Sections 105(a), 345(b), 363(c), 364(c) and 507(a) of the

Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to (I) Continue Using Existing Cash*

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

*Management System; (II) Maintain Existing Bank Accounts and Business Forms; and (III) Granting Related Relief* [Docket No. 17] (the "Motion"), and respectively represent as follows:

## Background

1. On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee"), whose members include Bombardier, Inc. Embraer-Empresa Brasilieire de Aeronautica S.A., IHI Corpration, U.S. Bank National Association, AT&T Capital Services, Wilmington Trust Company, and the Air Line Pilots Association.

## Mesa's Business

4. Mesa is a holding company whose principal direct and indirect subsidiaries operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations serve approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate a fleet of approximately 130 aircraft with approximately 700 daily system departures. The Debtors employ approximately 3,400 full and part-time employees.

5.  Mesa Airlines, Inc. ("Mesa Airlines") operates regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to code-share agreements. Specifically, Mesa Airlines operates as (i) US Airways Express under code-share agreements with US Airways, Inc., (ii) as United Express under a code-share agreement with United Airlines, Inc., and (iii) independently in Hawaii as *go!* Mokulele ("*go!*"). Freedom Airlines, Inc. operates regional jet aircraft as Delta Connection under code-share agreements with Delta Air Lines, Inc. The remaining Debtors operate businesses, or own interests in businesses, that facilitate or enhance the Debtors' regional or independent air carrier services. Nilchi, Inc. and Patar, Inc. hold investments.

6.  As of September 30, 2009, the Debtors had consolidated assets of approximately $975 million, and consolidated liabilities of approximately $869 million. The Debtors' consolidated 2009 revenues were approximately $968 million. Approximately 96% of the Debtors' consolidated passenger revenues for the fiscal year ending September 30, 2009 were derived from operations associated with code-share agreements. The Debtors' remaining passenger revenues are generated from their independent *go!* operations in Hawaii.

7.  A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2*, filed on the Petition Date.

## Jurisdiction

8.  This Court has jurisdiction to consider the Motion and this Supplement pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3

## Relief Requested

9. In connection with approval of the Motion, the Debtors are requesting a waiver of the requirements of section 345 of the Bankruptcy Code solely with respect to the Debtors' bank accounts located in Mexico. For the reasons stated in the declaration of Michael J. Lotz in support of the Supplement, annexed hereto as **Exhibit A**, and the Motion, the Debtors submit that the section 345 waiver is warranted and in the best interests of the Debtors and their estates.

## Notice

10. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Supplement on (i) the Office of the United States Trustee for the Southern District of New York, (ii) proposed counsel to the Committee, and (iii) those parties that have requested service pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtors request entry of the attached order granting the relief requested herein and such other and further relief as is just.

Dated: February 16, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Maria A. Bove
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

56772-001\DOCS_SF:69784.3

# EXHIBIT A

# (Declaration of Michael J. Lotz)

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF MICHAEL J. LOTZ IN SUPPORT OF**
**SUPPLEMENT IN SUPPORT OF DEBTORS' MOTION FOR INTERIM**
**AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 345(b), 363(c), 364(c)**
**AND 507(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND**
**6004 TO (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM;**
**(II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS;**
**AND (III) GRANTING RELATED RELIEF**

Michael J. Lotz, being duly sworn, hereby deposes and says:

1. I am the President of Mesa Air New York, Inc. (a corporation organized under the laws of the State of New York), Mesa Air Group, Inc. ("Mesa")[2] (a corporation organized under the laws of the State of Nevada), Mesa In-Flight, Inc. (a corporation organized under the laws of the State of Colorado), Freedom Airlines, Inc. (a corporation organized under

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Mr. Lotz is also the Chief Financial Officer of Mesa Air Group, Inc.

1

the laws of the State of Nevada), Mesa Airlines, Inc. ("Mesa Airlines") (a corporation organized under the laws of the State of Nevada), MPD, Inc. (a corporation organized under the laws of the State of Nevada), Ritz Hotel Management Corporation (a corporation organized under the laws of the State of Nevada), Regional Aircraft Services, Inc. (a corporation organized under the laws of the State of Nevada), Air Midwest, Inc. (a corporation organized under the laws of the State of Kansas), Mesa Air Group Airline Inventory Management, LLC (a limited liability company organized under the laws of the State of Arizona), Nilchi, Inc. (a corporation organized under the laws of the State of Nevada), and Patar, Inc. (a corporation organized under the laws of the State of Nevada). Mesa and the foregoing affiliated entities are the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). In these capacities, I am generally familiar with the day-to-day operations, business, and financial affairs of the Debtors.

2. I am authorized by the Debtors to submit this declaration (the "Declaration"). I submit this Declaration in support of the supplement, dated February 16, 2010 (the "Supplement"), to the *Debtors' Motion for Interim and Final Orders Pursuant to Sections 105(a), 345(b), 363(c), 364(c) and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to (I) Continue Using Existing Cash Management System; (II) Maintain Existing Bank Accounts and Business Forms; and (III) Granting Related Relief* (the "Motion"), discussed herein.

3. To the extent not provided herein, I incorporate by reference all of the information set forth in my declaration, dated January 5, 2010 [Docket No. 2] (the "First Day Declaration"), that was filed contemporaneously with the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and in support of the first day motions and applications that the Debtors have filed with the Court.

4. Except as otherwise indicated, all facts set forth in this Declaration are based on either: my personal knowledge, information supplied by employees under my supervision, or my opinion based on experience, knowledge, and information concerning the operations of the Debtors and the airline industry as a whole and the regional airline industry in particular. It is my belief that the relief sought in the Motion and Supplement is critical and an essential component to the Debtors' successful restructuring. If I were called upon to testify, I would testify competently to the facts set forth herein.

A. **The Mexico Bank Accounts**

5. The Debtors maintain stations[3] in Mexico under their codeshare agreement with US Airways, Inc ("US Air"). The codeshare agreement with US Air requires the Debtors to operate and provide services in Mexico. The Debtors earn certain revenues and incur expenses in connection with the operation of their Mexico stations. The Debtors established five (5) bank accounts with two separate banks located in Mexico to collect revenues and pay related expenses (the "Mexico Accounts"). Two of the Mexico Accounts are located at Banco Nacional de Mexico S.A. ("Banco Nacional") and the other three accounts at Banco Mercantil del Norte S.A. ("Banco Mercantil"). The Mexico Accounts are part of the Debtors' Cash Management System[4] described in the Motion.

6. The Debtors deposit most ticket sale proceeds derived from US Air related flights directly into a US Air controlled deposit account. As a result, the Debtors' only source of revenue or cash collection at its Mexico stations are *de minimis* fees and taxes associated with employee guest flight passes (the "Guest Pass Tax Revenue") (approximately $500 per month). The Debtors deposit the Guest Pass Tax Revenue into its collection account at Banco Nacional

---

[3] A "station" is an airport location that is staffed by the Debtors' employees.
[4] All capitalized terms not defined herein have the meaning used in the Motion.

(the "Nacional Collection Account") on a daily basis. The average monthly balance of the Nacional Collection Account is generally small (up to $4,000) and is swept into the Debtors' Main Operating Account on a manual basis when the balance restrictions for such account permit the Debtors to transfer excess funds. The Debtors sweep the Nacional Collection Account every quarter.

7. The Debtors also maintain a disbursement account at Banco Nacional (the "Nacional Expense Account"). Payroll and other routine expenses associated with the operation of the Mexico stations are deducted from the Nacional Expense Account. To fund the Nacional Expense Account, the Debtors wire funds each month from the Main Concentration Account to the Debtors' dollar account at Banco Mercantil (the "Mercantil Dollar Account"). This amount varies from month to month but is generally in the approximate amount of $100,000 to $300,000. The director of the Debtors' Mexico station operations converts the funds in the Mercantil Dollar Account to Mexican pesos and deposits the proceeds into the Debtors' peso account at Banco Mercantil (the "Mercantil Peso Account"). The Debtors endeavor to convert the funds from dollars to peso when the exchange rates are optimal. The funds in the Mercantil Peso Account are transferred weekly to the Nacional Expense Account in the amount necessary to fund the Debtors accounts payable.

8. The Mercantil Peso Account is linked to an investment account located at Banco Mercantil (the "Mexico Money Market Account"). Each night the excess funds in the Mercantil Peso Account are swept into the Mexico Money Market Account. The Mexico Money Market Account is an interest bearing account, the rate of which is determined by the investments made by Banco Mercantil.

9. When funds are transferred from the Main Concentration Account to the Mexico Accounts, the balances in the Mexico Accounts are quickly reduced because the Debtors use the funds to satisfy outstanding expenses that are due and payable. As a result, the Debtors generally keep less than $300,000 in the Mexico Accounts for any significant period of time.

**B.** **Mexico Based Businesses Are Required To Have Mexico Based Bank Accounts**

10. I am informed and believe that foreign companies that conduct business with companies based in Mexico are not required to have physical presence within Mexico. For example, if an United States based company conducts business with a Mexican company, I believe that the United States based company may settle its accounts payable directly with the vendor provided the parties agree upon an appropriate exchange rate.

11. However, I am informed and believe that under Mexican law, companies operating in Mexico are required to obtain a tax identification number and comply with various fiscal policies including the requirement of a physical address and maintaining copies of the company's business records, including bank statements. In addition, the settlement of a company's accounts payable must be reconciled through a Mexico based bank as opposed to a foreign based bank.

12. In addition, the Debtors are subject to certain taxes assessed by the Derecho de No Inmigrante (Non immigrant tax), Derecho de Servicios Migratorios (Immigrations Services Tax), and Tarifa de Uso de Aeropuerto (Airport Facility Fee). In each case, these taxes cannot be satisfied from a transfer originating in the United States.

13. Given the Debtors' operations in Mexico, it would not only be impracticable to close the Mexico Accounts but also impossible because the Debtors are continuing to operate in Mexico and must continue such operations under the codeshare agreement with US Air..

C. **The Mexico Accounts Are Sufficiently Secured**

14. I believe that the funds in the Mexico Account are sufficiently secured by the manner in which the Debtors utilize such accounts and the protections afforded by Mexico's banking laws.

15. For example, the Debtors generally transfer only the funds necessary to satisfy the expenses that are due and payable, which as noted above ranges from $100,000 to $300,000 per month. After making this transfer, the overall balance is quickly reduced to satisfy the Debtors' accounts payable. I believe that the risk of maintaining the Mexico Accounts is reasonable because the average maximum balance is quickly reduced and any funds remaining are *de minimis*.

16. I believe that the risk associated with the Mexico Accounts is reduced by the partial guarantee supplied by the Mexico banking system. Much like the Federal Deposit Insurance Corporation, cash deposits held by Mexican banks are secured by the Instituto para la Protección al Ahorro Bancario (the "IPAB"). The IPAB guarantees deposit accounts in an amount that is determined in relation to certain exchange rates. While this limit fluctuates, the guarantee is in the range of $140,000. Thus, I believe that that the security provided by the IPAB offsets the risk to a sufficient extent to justify the Debtors' maintenance of the Mexico Accounts.

17. After the Motion was filed, the Debtors inquired as to whether they could obtain a bond to secure the amounts on deposit in the Mexico Accounts. Unfortunately, the bonding agency informed the Debtors that it would not issue a bond unless the Debtors posted a cash deposit in the full amount of the bond in order to secure the bonding agency's obligations. In addition to posting 100% of the amount of the bond collateral, the Debtors would have to pay a bond fee as well as an additional fee to establish and maintain a letter of credit in favor of the bonding agency. I believe that tying up the estates' cash, in the amount of 100% of the amounts on deposit to the Mexico Accounts in addition to payments of the bond fee and letter of credit fee, is not in the estates' best interests, especially given the *de minimis* amounts on deposit in the Mexico Accounts and given the existing protections that minimize any risk of less funds deposited in the Mexico Accounts.

18. For the reasons discussed herein, I believe that the Motion should be approved.

The foregoing is true and correct to the best of my knowledge, information, and belief. Executed this 16th day of February, 2010 in Phoenix, Arizona.

_____
Michael J. Lotz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
| --- | --- |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

FINAL ORDER PURSUANT TO
SECTIONS 105(a), 345(b), 363(c), 364(c) AND 507(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING DEBTORS TO (I) CONTINUE
USING EXISTING CASH MANAGEMENT SYSTEM; (II) MAINTAIN EXISTING BANK
ACCOUNTS AND BUSINESS FORMS AND; (III) GRANTING RELATED RELIEF

Upon the motion, dated January 5, 2010 (the "Motion"), and the supplement thereto, dated February 16, 2010 (the "Supplement"), of Mesa Air Group, Inc. ("Mesa") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), seeking (i) authorization, pursuant to sections 105(a), 363(c), 345(b), 364(a) and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003(b) and 6004, to (a) continue to operate their cash management system (the "Cash Management System"), (b) fund the Debtors' operations, and (c) maintain the Debtors' existing bank accounts (the "Bank Accounts") and business forms and (ii) a waiver of the requirements of section 345 of the Bankruptcy Code to the extent the Cash Management System and Bank Accounts are not in compliance with the Bankruptcy Code, all as described more fully in the Motion and Supplement; and the Court having jurisdiction is to consider the Motion and Supplement and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

1

(Ward Acting C.J.); and consideration of the Motion and Supplement and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and Supplement having been provided and that no other or further notice is necessary; and the Court having held a final hearing on the Motion and Supplement on March 3, 2010 and having found and determined that the relief sought in the Motion and Supplement is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion and the Declaration of Michael J. Lotz in Support of First Day Motions establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion and Supplement are granted and approved on a permanent basis to the extent provided herein; and it is further

ORDERED that the Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System maintained by the Debtors prior to the commencement of their chapter 11 cases (the "Petition Date"), as modified by this Order, and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany and interdivision transfers of funds; and it is further

ORDERED that the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the Petition Date; and it is further

ORDERED that the Debtors are authorized to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts listed on Exhibit 1 annexed hereto, in the names

and with the account numbers existing immediately prior to the Petition Date, (ii) deposit funds in and withdraw funds from such accounts by all usual means including, without limitation, checks, wire transfers, automated clearinghouse transfers and other debits, (iii) pay any Bank or Credit Card Company fees or charges associated with the Bank Accounts or Credit Card Receivables, and (iv) treat their prepetition Bank Accounts for all purposes as debtors in possession accounts; and it is further

ORDERED that nothing contained herein shall prevent the Debtors from opening any new bank accounts or closing any existing bank accounts as they may deem necessary and appropriate, with notice to the United States Trustee and any statutory committee appointed in these cases; provided that such account shall be with a bank that is insured by the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein; and it is further

ORDERED that except as otherwise provided in this Order, all financial institutions in which the Debtors maintain the Bank Accounts as of the commencement of their chapter 11 cases are authorized and directed to continue to maintain, service, and administer such Bank Accounts without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, or other transfers by the holders or makers thereof, as the case may be; provided, however, that nothing contained herein shall authorize any such financial institution to honor any check, draft, wire, or other transfer issued or dated prior to the Petition Date, except as otherwise provided by further order of this Court; *provided, however,* that any such financial institution may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date

56772-001\DOCS_SF:69784.3

should be honored pursuant to an order of this Court, and such bank shall not have any liability to any party for relying on such representation by the Debtors as provided for herein; and it is further

ORDERED that to the extent that it later becomes necessary for the Debtors to obtain execution of a Uniform Depository Agreement between the U.S. Trustee and any Bank (or other new institution at which the Debtors may open an account), the Debtors shall have 45 days (or such additional time as the U.S. Trustee may agree to) after the date it becomes necessary for the Debtors to obtain a Uniform Depository Agreement to either come into compliance with section 345(b) of the Bankruptcy Code, to make such other arrangements as the U.S. Trustee may agree to, or seek a waiver from the Court upon notice and hearing; and it is further

ORDERED that, with respect to any deposit or investment currently insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States, upon the termination or modification of such insurance or guarantee, the Debtors shall either come into compliance with section 345(b) of the Bankruptcy Code or seek appropriate relief from the Court; and it is further

ORDERED that the Debtors are waived from satisfying the requirements of section 345(b) of the Bankruptcy Code solely with respect to the two bank accounts located at Banco Nacional de Mexico S.A. and the three accounts located at Banco Mercantil del Norte S.A., each as set forth on Exhibit 1; and it is further

ORDERED that, as soon as practicable after the Petition Date, the Debtors shall mark "Debtor in Possession" and the chapter 11 case number under which these cases are being jointly administered on their check stock, business form stock, and wire transfer instructions and shall not be required to order new stock with such marking until they exhaust their current stock; and it is further

ORDERED that, pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized in connection with the ordinary course of their Cash Management System to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay prepetition amounts outstanding as of the Petition Date, if any, owed to their banks as fees or service charges for the maintenance of the Cash Management System; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Amended Interim Order.

Dated: March __, 2010
      New York, New York

                                                   THE HONORABLE MARTIN GLENN
                                                   UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## (Banks and Accounts)

| Bank Name & Address | Account Name | Account Number |
|---|---|---|
| Banco Nacional De Mexico S.A. | Nacional Expense Account | 887-54XXXX |
| Banco Nacional De Mexico S.A. | Nacional Collection Account | 887-54 XXXX |
| Banco Mercantil del Norte S.A. | Mercantil Peso Account | 006300 XXXX |
| Banco Mercantil del Norte S.A. | Mercantil Dollar Account | 1038 XXXX |
| Banco Mercantil del Norte S.A. | Mexico Money Market Account | 50033 XXXX |
| Bank of Hawaii | Hawaii Deposit Account | 0003-23 XXXX |
| Bank of Hawaii | Hawaii Ticket Refund Account | 0003-87 XXXX |
| Wells Fargo Bank | Wells Fargo DIA Liquor Account | 103-750 XXXX |
| Wells Fargo Bank | Workers Comp. Account | 106-038 XXXX |
| BBVA Compass Bank | Main Operating Account | 250105 XXXX |
| BBVA Compass Bank | Compass Money Market Account | 250119 XXXX |
| BBVA Compass Bank | Accounts Payable | 1286 XXXX |
| BBVA Compass Bank | Compass Bank Emergency Reserve | 8449 XXXX |
| BBVA Compass Bank | Freedom Airlines LOC Account | 251193 XXXX |
| Bank of America | Payroll | 942837 XXXX |
| Bank of America | MPD ASU | 942912 XXXX |
| Bank of America | Operating | 942845 XXXX |
| Citizens Bank | MPD Operating Account | 11717 XXXX |
| JPMorgan Chase | JP Morgan Clearinghouse Account | 910-2-46 XXXX |
| Imperial Capital | Bonds | 7LU-13 XXXX |
| Chevy Chase Bank | IAD Liquor deposits | 142430 XXXX |
| Seaway Bank | ORD Liquor deposits | 8012 XXXX |
| Merrill Lynch Trust Company | Deferred Comp. Account | 208-95S24 / 2089XXXX |
| Merrill Lynch Trust Company | Deferred Comp. Account | 412-95S31 / 412-2XXXX |
| Merrill Lynch Trust Company | Deferred Comp. Account | 412-9XXXX |
| Merrill Lynch Trust Company | Deferred Comp. Account | 412-9XXXX |

56772-001\DOCS_SF:69784.3