**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    MESA AIR GROUP, INC., *et al.*,<br><br>                      Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**ORDER (I) AUTHORIZING DEBTORS TO (A) REJECT LEASES
RELATING TO CERTAIN AIRCRAFT AND OTHER RELATED EQUIPMENT;
(B) ABANDON CERTAIN AIRCRAFT, ENGINES, AND OTHER RELATED
EQUIPMENT; (C) TRANSFER TITLE TO CERTAIN AIRCRAFT, ENGINES,
AND OTHER RELATED EQUIPMENT; AND (D) SATISFY THE SURRENDER
AND RETURN REQUIREMENTS UNDER THE BANKRUPTCY CODE
AND (II) APPROVING RELATED NOTICES AND PROCEDURES**

Upon the motion dated January 25, 2010 [Docket No. 168] (the "Motion"),[2] of Mesa Air Group, Inc. and its affiliated debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a), 363(b), 365(a), 554(a), and 1110 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for, *inter alia*, (a) approval of procedures relating to (i) the rejection of executory contracts and unexpired leases including certain leases and related subleases (collectively, the "Leases") relating to certain aircraft, engines and other related equipment identified on the schedules annexed hereto as Exhibit A-1 and Exhibit A-2 (collectively, the "Excess Leased Equipment") and the return of applicable Excess Leased Equipment to the applicable lessor, beneficial owner (if different and if known to the Debtors), any indenture trustee, loan trustee, or collateral trustee known to the Debtors to be acting on

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

behalf of debt holders who are the controlling party under the transaction documents, any guarantor, and, if known to the Debtors, any loan participant (collectively, the "Lessors"); (ii) the abandonment of certain aircraft, engines and other related equipment identified on the schedule annexed hereto as Exhibit B (collectively, the "Excess Owned Equipment"); (iii) the transfer of title to such abandoned Excess Owned Equipment to mortgagees, security trustees, or indenture trustees having a security interests in such Excess Owned Equipment, along with any associated guarantor, servicer and/or loan participant (collectively, the "Secured Parties", and, along with the Lessors, the "Aircraft Finance Parties" and each an "Aircraft Finance Party"); and (iv) the surrender and return of the Excess Leased Equipment and the Excess Owned Equipment (collectively, the "Excess Equipment"); and (b) approval of the form of the Subsequent Rejection/Abandonment Notice to be served upon the counterparties to the applicable executory contracts and unexpired leases annexed hereto as Exhibit C, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been provided and that no other or further notice is necessary; and, as evidenced by the affidavit of service filed by the Debtors [Docket No. 200], the parties identified on Exhibit A-1, among other parties, were previously served with, *inter alia*, a copy of the Motion; and the Debtors having filed and served on parties in interest a notice of amended exhibits to the Motion ("Amendment Notice"), which amended exhibits are substantively identical to the attached Exhibit A-1, Exhibit A-2 and Exhibit B (which Exhibit B corresponds to

amended Exhibit B-2 attached to the Amendment Notice) [Docket No. 267]; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and that the legal and factual bases set forth in the Motion and the arguments and representations of Debtors' counsel at the hearing on the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

1. ORDERED that the Motion is granted as provided herein; and it is further

2. ORDERED that, pursuant to section 365 of the Bankruptcy Code, the rejection of the Leases of Excess Leased Equipment set forth on Exhibit A-1 annexed hereto is authorized and approved effective as of the Effective Date (as defined below). With respect to any Excess Equipment abandoned or Lease of Excess Equipment that is rejected, in each case, in accordance with the provisions of this Order, the "Effective Date" for such abandonment or rejection, as the case may be, shall be the date, subject to adjustment, if any, as set forth in subparagraph 6(d) hereof, that the Debtors surrender and return such Excess Equipment and related Aircraft Documents (as defined herein) in compliance with the terms of this Order; *provided*, *however*, that unless the Debtors and the affected Aircraft Financing Party agree to an earlier date with respect to any Excess Equipment, the Effective Date (and the Deemed Effective Date (as defined below)) shall not be prior to the eighth (8th) business day after the filing and service of (y) with respect to the rejection of the Leases of Excess Leased Equipment set forth on Exhibit A-1 annexed hereto, the Motion upon the affected Aircraft Finance Parties (*i.e.*, the Effective Date and the Deemed Effective Date as to such Leases are no earlier than February 4, 2010), and (z) with respect to all other Excess Equipment, the applicable Subsequent Rejection/Abandonment Notice (described below) upon the affected Aircraft Finance Parties and other Notice Parties (as

defined in paragraph 8 hereof); *provided further* that if any affected Aircraft Finance Party or other party in interest wishes to object to the rejection of the applicable Lease or abandonment of equipment which is covered by a Subsequent Rejection/Abandonment Notice, such Aircraft Finance Party or other party in interest, as the case may be, must file and serve such objection in accordance with the terms set forth below and the effective date of such rejection or abandonment, if any, shall be established by this Court; *provided additionally* that absent further order of the Bankruptcy Court establishing a different date, with respect to Excess Equipment identified in Exhibit A-2 and Exhibit B, the "Effective Date" for all purposes hereunder shall be deemed to be the date set forth by the Debtors in the Subsequent Rejection/Abandonment Notice (or the date as agreed upon between the Debtors and the applicable controlling Aircraft Financing Party) (the "Deemed Effective Date"); *provided additionally* that, notwithstanding the other terms of this Order, the Aircraft Finance Parties may request by motion filed, no later than sixty (60) days after the original Effective Date, that the Bankruptcy Court adjust the Effective Date for such Excess Equipment on account of the Enumerated Matters (as such term is defined herein) or any other breach of this Order, as appropriate, to a later date to the extent required under section 1110(c) or the other provisions of the Bankruptcy Code; *provided finally* that, notwithstanding any of the foregoing, the "Effective Date" of the rejection of any sublease identified on Exhibit A-2 shall be effective as of (a) the Deemed Effective Date set forth in the applicable Subsequent Rejection/Abandonment Notice or (b) if the applicable sublessee timely and properly objects to the applicable Subsequent Rejection/Abandonment Notice in accordance with the procedures set forth herein, such other date as may be determined by the Court as described in paragraph 6(d) below; and it is further

    3.     ORDERED that, pursuant to section 365 of the Bankruptcy Code, the rejection of

the Leases of Excess Leased Equipment set forth on <u>Exhibit A-2</u> annexed hereto is authorized and approved and shall be effective as of the relevant Effective Date for such rejection; and it is further

    4.  ORDERED that, pursuant to section 554(a) of the Bankruptcy Code, the abandonment of the Excess Owned Equipment listed in <u>Exhibit B</u> annexed hereto is authorized and approved and shall be effective as of the Effective Date for such abandonment; and it is further

    5.  ORDERED that, pursuant to sections 363(b) and 1110 of the Bankruptcy Code, the Debtors are authorized to and shall transfer title, if requested by the applicable Secured Party or other Aircraft Financing Party, to any Excess Owned Equipment that is subject to this Order, to such applicable Aircraft Financing Party (unless such Aircraft Financing Party directs otherwise or waives in writing its security interests in such Excess Owned Equipment) and to the extent that the Debtors may have transferred title consistent with the procedures and provisions set forth in this Order subsequent to the filing of the Motion but prior to the entry of this Order, such prior transfer is deemed effective and approved without need of further notice; and it is further

    6.  ORDERED that the following procedures are approved with respect to the rejection of any Lease or abandonment of any equipment identified in <u>Exhibit A-2</u> and <u>Exhibit B</u>:

    (a)  within three (3) business days after the entry of this Order, the Debtors will serve a copy of the Order on the Notice Parties, the applicable Aircraft Finance Parties, and each Aircraft Finance Party's respective counsel (if known), and the sublessees identified in <u>Exhibit A-2</u> (the "<u>Sublessees</u>"), via electronic delivery, facsimile, messenger, or overnight delivery;

    (b)  as soon as reasonably practical after the Debtors have determined to reject an applicable Lease or abandon the applicable equipment, the Debtors shall file with the Court a notice of rejection or abandonment substantially in the

form attached hereto as Exhibit C, which either in the notice itself or in exhibit(s) thereto shall in all events contain the information required under Bankruptcy Rule 6006(f) in the case of any rejected Leases and which notices will be consecutively numbered in the caption (a "Subsequent Rejection/Abandonment Notice"), and serve such notice on the applicable Aircraft Finance Parties and/or Sublessees via electronic delivery (if the applicable party's electronic mail address is known to the Debtors), with a copy sent concurrently pursuant to one of the following methods - facsimile, messenger, or overnight delivery, and serve such notice on the other Notice Parties in accordance with the case management order, with such notice setting forth the Debtors' intent to reject the Lease or abandon the Excess Equipment in accordance with the terms of this Order, as applicable. The Subsequent Rejection/Abandonment Notice shall also set forth (i) the Deemed Effective Date for the surrender and return of the Excess Equipment (which Effective Date shall be subject to change in accordance with paragraphs 2 and 6(d) hereof), (ii) as applicable, type of aircraft, engine(s) and equipment involved, (iii) the FAA registration number and manufacturer serial numbers for the affected airframe and engines, (iv) the location at which the Excess Equipment will be surrendered and returned (which location must comply with the requirements of paragraph 12(a) hereof) and (v) to the extent known by the Debtors, the Aircraft Finance Parties relating to such Excess Equipment; *provided* that the Debtors may in their discretion utilize one or more Subsequent Rejection/Abandonment Notices to cover single or multiple proposed Lease rejections and/or abandonment of equipment; *provided further* that, upon delivery of the Subsequent Rejection/Abandonment Notice, the Debtors agree to provide the applicable Lessor, Secured Party, or other party in interest reasonably prompt access to the Excess Equipment and Aircraft Documents (as defined in paragraph 12(d) herein) applicable thereto for inspection and review (which inspection rights are without prejudice to any rights for inspection as required under the operative documents and/or applicable law), *provided* that such inspections do not unreasonably interfere with the Debtors' operation, if any, of the Excess Equipment;

(c) the Debtors' rejection of the applicable Lease that is rejected pursuant to these procedures or the Debtors' abandonment of the applicable Excess Owned Equipment, as the case may be, in accordance with the terms of this Order, shall be effective as of the Deemed Effective Date without the need of any further order or notice unless an objection is filed and served by 4:00 p.m. (prevailing Eastern Time) on the seventh (7th) business day after filing and service of such Subsequent Rejection/Abandonment Notice on the applicable Aircraft Finance Parties;

(d) if a timely objection is filed and served, the effective date of rejection or abandonment, as applicable, will be (i) the Deemed Effective Date for such Excess Equipment that would have applied in the absence of such objection if such objection is overruled or (ii) such other date as determined by the Bankruptcy Court after a hearing on the objection. A hearing on any objection to a Subsequent Rejection/Abandonment Notice will be held on the next scheduled

omnibus hearing date in the Debtors' cases, *provided* that the objecting party shall have been given by the Debtors at least five (5) business days' prior written notice of such hearing date and time, and *provided further* that the foregoing is without prejudice to the right of the Debtors and/or objecting party to move for an expedited hearing (on less than five (5) business days' notice). The Debtors must file and serve any reply to any objection at least two (2) business days prior to the scheduled hearing; and

(e) if the Debtors seek to abandon any Excess Owned Equipment or reject a Lease for any Excess Equipment in accordance with the procedures set forth herein, subject to the terms hereof, the applicable Aircraft Finance Party (or its respective nominee) (unless in the case of any Excess Equipment mortgaged by the Debtor(s), the applicable Secured Party waives in writing its security interests in such Excess Owned Equipment prior to the Deemed Effective Date) is required to accept the surrender and return of such equipment and documents on the latest of: (i) if no objection is filed with respect to such abandonment or rejection, on the Deemed Effective Date of such rejection or abandonment, (ii) if an objection is interposed with respect to such abandonment or rejection, on the fifth (5th) business day after the Bankruptcy Court issues an unstayed order approving such abandonment or rejection, (iii) if applicable, such other date as agreed upon by the respective party(ies)-in-interest, and (iv) if applicable, such other date as determined by the Bankruptcy Court; and it is further

7. ORDERED that the proposed form of Subsequent Rejection/Abandonment Notice, substantially in the form attached hereto as Exhibit C (subject to the additional requirements set forth in paragraph 6(b)), is hereby approved; and it is further

8. ORDERED that as soon as reasonably practicable after entry of this Order, the Debtors shall serve a copy of this Order on (i) the Office of the United States Trustee for the Southern District of New York, (ii) proposed counsel to the Committee, (iii) the Securities and Exchange Commission, (iv) each of the applicable Aircraft Finance Parties (or their respective counsel of record), (v) the Sublessees, and (vi) all parties who have requested notice in these chapter 11 cases (the parties identified in (i), (ii), (iv), (v) and (vi) are referred to herein as the "Notice Parties"); and it is further

9. ORDERED that all claims arising from the rejection of a Lease or abandonment of Excess Equipment as provided for herein shall be filed in accordance with any order pursuant

to Bankruptcy Rule 3003(c) establishing a deadline by which prepetition general unsecured claims must be filed (the "Bar Date") and this Order, on or before the latest of (i) the Bar Date, (ii) sixty (60) days after the Effective Date of the rejection or abandonment of the Excess Leased Equipment or Excess Owned Equipment, as applicable, and (iii) sixty (60) days after the Court determines any objection to such rejection or abandonment of the Excess Leased Equipment or Excess Owned Equipment, as applicable; and that any claim, whether unsecured or administrative, not filed in accordance with the foregoing deadlines shall be barred and shall not be entitled to share in any distributions from the Debtors' estates as approved by the Court unless otherwise ordered by the Court; *provided, however*, that properly filed amendments to any proof of claim or proof of administrative claim shall not be affected by the provisions of this paragraph; and it is further

10. ORDERED that if an applicable Aircraft Finance Party (that is the controlling party or equivalent pursuant to the underlying transaction documents) (unless in the case of any Excess Equipment mortgaged by the Debtor(s), the applicable Secured Party waives in writing its security interests in such Excess Owned Equipment prior to the Deemed Effective Date) whose equipment has been surrendered and returned to it (whether pursuant to a rejected Lease of Excess Leased Equipment or abandoned Excess Owned Equipment), as applicable, pursuant to this Order fails to accept the Debtors' surrender and return, as provided in this Order, then, unless otherwise agreed between the Debtors and the applicable controlling Aircraft Finance Party, after the latest of (i) ten (10) calendar days after the Deemed Effective Date, (ii) ten (10) calendar days after the date the Court resolves the applicable objection, if any (and such order of the Bankruptcy Court is not stayed), and (iii) ten (10) calendar days after the date of this Order, such applicable Aircraft Finance Party (that is the controlling party or equivalent pursuant to the

underlying transaction documents) shall be responsible to the Debtors from that latest date forward for any out-of-pocket costs and expenses actually incurred by the Debtors to a third party arising from the storage, insurance and maintenance of such equipment; *provided, however*, that to the extent that the Bankruptcy Court adjusts the Effective Date pursuant to paragraphs 2 and/or 6(d) hereof to a date other than the Deemed Effective Date, the Court shall grant an administrative expense priority claim against the Debtors to the extent appropriate to readjust the foregoing described expenses actually paid by an Aircraft Finance Party to reflect the change in the Effective Date; *provided further* that nothing in this paragraph shall affect in any way any rights that such applicable Aircraft Finance party (that is the controlling party or equivalent pursuant to the underlying transaction documents) may possess against any other Aircraft Finance Party, all of which rights are reserved; and it is further

11. ORDERED that the filing of the Motion obviates the need for any Aircraft Finance Parties to demand possession of the applicable aircraft pursuant to section 1110(c)(1) of the Bankruptcy Code; *provided*, *however*, that (a) this Order is without prejudice to the rights of any applicable Aircraft Finance Party to make a section 1110(c) demand upon the Debtor(s) and (b) upon receipt of any Subsequent Rejection/Abandonment Notice relating to any Excess Equipment, any affected Aircraft Finance Party is hereby authorized to make a section 1110(c) demand upon an applicable Debtor; and it is further

**Section 1110(c) Surrender and Return Requirements**

12. ORDERED that unless otherwise agreed between the Debtors and the applicable counterparty, to satisfy the minimum requirements under section 1110(c) of the Bankruptcy Code to "surrender and return" the applicable equipment, the Debtors shall:

    (a) surrender and return the Excess Equipment (including, without limitation, all "equipment" as defined in section 1110(a)(3)(A) of the Bankruptcy

Code) (i) at one of the following locations: (A) a location required by section 1110(c) of the Bankruptcy Code, (B) at a location in compliance with the terms of the applicable operative documents with the affected Lessor or Secured Party, or (C) at any other location (and upon such terms as) agreed to by the Debtors and the applicable counterparty, and (ii) with, as applicable, the associated engines and all parts and equipment installed (serviceable or unserviceable) thereon (including, without limitation, all "equipment" as defined in section 1110(a)(3)(A) of the Bankruptcy Code) to the extent required by section 1110(c) of the Bankruptcy Code; *provided, however*, that the Debtors are not required to surrender and return any Excess Equipment with, as applicable, originally installed or replaced engines, equipment or other parts therein, but instead may surrender and return replacement engine(s), equipment and other parts installed on the airframe or engine, if one of the following conditions is satisfied: (1) such replacement or substitution is made in strict compliance with the terms of the operative documents to the extent permitted under such operative documents (and such replacement or substitute is not subject to any other party's lien, claim or interest), (2) the Debtors and the applicable controlling counterparties agree to terms for such substitution or replacement, or (3) if the following two terms are satisfied - (a) both the original engine, equipment, and/or other parts, as applicable, on the one hand, and the replacement engine, equipment and/or other parts, as applicable, on the other hand, are of the same model and from the same manufacturer and the same or better modification level, and (b) both the original engine, equipment and/or other parts, as applicable, on the one hand, and the replacement engine, equipment and/or other parts, as applicable, on the other hand, are associated with, as applicable, the same loan participants, owner participants and guarantors;

(b) notwithstanding subparagraph 12(a), and solely with respect to the engine(s), if the applicable engine(s) are currently not assembled and assembling such engine would require the Debtors to incur material costs (*i.e.,* more than $10,000 of out-of pocket costs per engine), the Debtors may elect (as an alternative to the requirements of paragraph 12(a) hereof) the following treatment, at Debtors' expense: (i) the Debtors shall provide a substitute engine(s) for the limited purpose of transporting the Excess Equipment to the location at which the associated aircraft is being surrendered and returned and, upon arrival, the Debtors shall remove and retain possession of the substitute engine(s), and (ii) the Debtors shall deliver the applicable engine(s) (and all parts and equipment that are part of such engine(s)) to the same location with full QEC and properly packaged;

(c) notwithstanding subparagraph 12(a), and solely with respect to the engine(s), if the applicable engines are currently not serviceable and/or not properly preserved and making such engine serviceable and/or properly preserved would require the Debtors to incur material costs (*i.e.,* more than $10,000 of out-of pocket costs per engine), the Debtors may elect (as an alternative to the requirements of paragraph 12(a) hereof) the following treatment, at Debtors' expense: (i) the Debtors shall provide a substitute engine(s) for the limited purpose of transporting the Excess Equipment to the location at which the

associated aircraft is being surrendered and returned and, upon arrival, the Debtors shall remove and retain possession of the substitute engine(s), and (ii) the Debtors shall deliver the applicable engine(s) (and all parts and equipment that are part of such engine(s)) to the same location with full QEC on an approved transport stand (with such transport stand or equivalent replacement to be promptly returned to the Debtors) correctly preserved and inhibited per manufacturer's approved requirements (without any obligation to install the same on the associated airframe); and

(d) in all cases, the Debtors shall surrender and return on the applicable Effective Date, and at the same location as the aircraft and/or engines are being surrendered and returned (or such other location as agreed in writing between the Debtors and the applicable Aircraft Finance Party (that is the controlling party or equivalent pursuant to the underlying transaction documents)), all records, logs, manuals and other documents (collectively, the "Aircraft Documents") relating to the Excess Equipment to the extent required by sections 1110(a)(3)(B) and 1110(c) of the Bankruptcy Code; *provided, however*, that, without limiting or affecting the scope of the foregoing obligation (including, without limitation, with respect to whether FAR 121 compliant documentation is required to be delivered for Excess Equipment that is not in airworthy condition), if any such Excess Equipment was in airworthy condition as of the Petition Date, then the Debtors shall provide such Aircraft Documents in a condition qualifying for FAR 121 operation, including, *inter alia*, a then valid and effective FAA certificate of airworthiness.

The above subparagraphs 12(a) through (d) shall be collectively referred to as the "Minimum Standards". The Court is not currently making any finding that the Debtors' performance of the foregoing Minimum Standards will be sufficient, or that such performance will be insufficient, to fully comply with the "surrender and return" requirements imposed under section 1110(c) of the Bankruptcy Code. The rights and claims, if any, of the Aircraft Finance Parties to assert that the Enumerated Matters as set forth in paragraph 13 hereof are required under Section 1110(c) of the Bankruptcy Code are fully reserved and preserved; and it is further

13. ORDERED that each Aircraft Financing Party retains the right to assert in any action or claim that the Debtors are required (in whole or in part) to take any of the following actions in order to satisfy the surrender and return requirements under Bankruptcy Code section 1110(c) (such actions, the "Enumerated Matters"):

(a) deliver any Excess Equipment at one of the locations specified under the operative documents or as provided in paragraph 12(a)(i) hereof;

(b) deliver any Excess Equipment free and clear of any liens, claims, and interests;

(c) deliver "all" Excess Equipment and Aircraft Documents (*i.e.*, a claim that the Debtors delivered the Excess Equipment with missing "equipment" (as defined in section 1110(a)(3)(A) of the Bankruptcy Code) (or part, portion or component thereof), or the Debtors delivered the wrong "equipment" (or part, portion or component thereof); and

(d) other than the requirements regarding installation of the engines on the applicable airframes (which are governed by paragraph 12 hereof), install on any engine or airframe any associated parts and other "equipment" as defined in section 1110(a)(3)(A)(i) of the Bankruptcy Code) (or part, portion or component thereof).

Notwithstanding any other provision of paragraph 12 hereof, with respect to such Enumerated Matters:

(w) each Aircraft Financing Party's rights under section 1110(c) of the Bankruptcy Code, its operative documents and/or other applicable law or agreement to claim or bring an action for specific performance, administrative claims or to adjust the "Effective Date" or any other action or claim against the Debtors or any other person or entity on account of such Enumerated Matters are fully reserved and preserved;

(x) the Debtors' or any other party in interest's right under section 1110(c) of the Bankruptcy Code, its operative documents and/or other applicable law or agreement to object or contest such claims or actions in any manner are fully reserved and preserved;

(y) nothing in this Order shall be deemed to impose any additional obligations upon or detract from any obligations of the Debtors or any other person or entity (rather, the obligations upon the Debtors or any other person or entity with respect to any Enumerated Matters and such obligations with respect to any Enumerated Matters shall be as provided under section 1110(c) of the Bankruptcy Code or other applicable law); and

(z) nothing in this Order shall be deemed to alter any burden of proof imposed upon the Debtors or any other person or entity under section 1110(c) of the Bankruptcy Code;

*provided* that nothing in this paragraph 13 modifies the Debtors' obligation under paragraph 12

hereof to return all of an applicable Excess Equipment (including, without limitation, as applicable, any associated engines, parts and equipment, Aircraft Documents and other "equipment" as defined in section 1110(a)(3)(A) of the Bankruptcy Code) to one location or other matters set forth in paragraph 12 that are not Enumerated Matters. If the Debtors fully comply with the Minimum Standards and any Enumerated Matters that the Court subsequently determines the Debtors must perform, then the Debtors' surrender and return of Excess Equipment (including, without limitation, the airframe, the engines and all parts and equipment related thereto, and the Aircraft Documents) and, in the case of Excess Owned Equipment, the Debtors' execution and delivery of title documents, and, in the case of Excess Leased Equipment, the Debtors' execution of documents canceling the lease (under Uniform Commercial Code §2A-505(1)) and releasing the relevant aircraft and/or engines from the terms thereof, in each case as provided pursuant to paragraph 17 of this Order, shall be deemed to satisfy in full the "surrender and return" requirements of section 1110(c) of the Bankruptcy Code. Notwithstanding the foregoing, the surrender and return are without prejudice to the rights of (collectively, the following are the "Reserved Rights"): (i) a Lessor and/or other affected Aircraft Finance Party to assert damages as part of its general unsecured claim (or as an administrative claim to the extent that such constitutes a Retained Administrative Claim/Specific Performance Right) for rejection and other damages, if any (including, without limitation, the failure to return any aircraft, engine or documents in accordance with the applicable return conditions under the applicable operative documents, applicable law or other agreements); (ii) a Secured Party and/or other affected Aircraft Finance Party to assert damages as part of any unsecured deficiency claim, if any (including, without limitation, the failure to return any aircraft, engine or documents in accordance with the applicable return conditions under the

applicable operative documents, applicable law or other agreements); (iii) a Lessor, Secured Party and/or other affected Aircraft Finance Party to assert damages for failure to satisfy all contractual return or turnover provisions of the applicable Lease or security agreement; (iv) any party to assert any other general unsecured claims (or as an administrative claim to the extent that such constitutes a Retained Administrative Claim/Specific Performance Right) against the Debtors or any other person or entity under the operative documents or applicable law; (v) any and all Retained Administrative Claim/Specific Performance Rights (as defined in paragraph 14) against the Debtors or any other person or entity; or (vi) subject to paragraph 14 hereof, the Debtors or any other party in interest to object to any such claims or rights; and it is further

14. ORDERED that the right to assert administrative expense priority under sections 503 and 507(a)(1) of the Bankruptcy Code for claims relating to any abandonment of any Excess Equipment or rejection of a Lease of any Excess Equipment, the rights to seek specific performance, and the right to request adjustment of the Effective Date, as such may be required under the Bankruptcy Code or other applicable law, shall be limited to the following matters (the "<u>Retained Administrative Claim/Specific Performance Rights</u>"): (a) any breach of this Order (excluding claims for Enumerated Matters); (b) in the event that the Debtor(s) made a section 1110(a) election with respect to any Excess Equipment, claims for any breach of any obligation on account of such election; (c) claims for breach of any Bankruptcy Code section 1110(b) agreement with respect to any Excess Equipment; (d) any postpetition use, diminution, depreciation, or other postpetition act, omission, or change in condition affecting any Excess Equipment (or portion thereof) that is subject to abandonment or rejection under the terms of this Order (which shall include, without limitation, claims for rent, maintenance reserves, postpetition deterioration from use or failure to maintain or replace parts, and postpetition

damages to equipment); and (e) any Enumerated Matter (to the extent required under applicable law). The Debtors' or any other party in interest's right to object to or contest the amount of any such claims or suits is fully reserved and preserved; *provided, however,* that, to the extent any party seeks to challenge any Retained Administrative Claim/Specific Performance Right of the types set forth in subparagraphs 14(a), (b), (c) and (d) above (provided that with respect to subparagraph 14(d), the following preclusion shall only apply to matters covered by such subparagraph 14(d) that are caused by, relate to or arise from the postpetition use or postpetition damage to the applicable "equipment" (as defined in Bankruptcy Code Section 1110(a)(3)) and with respect to subparagraph 14(b), the following preclusion shall only apply to obligations arising prior to (if applicable and permitted) the Debtors' termination or revocation of such section 1110(a) election or the rejection or abandonment of the applicable "equipment"), such party shall be precluded from challenging the administrative expense priority thereof. Notwithstanding the limitations in this paragraph, nothing herein shall affect in any way any obligations owed by any person or entity, other than the Debtors, to any affected Lessor or Secured Party and/or other affected Aircraft Finance Party under any guaranty, loan deficiency agreement, equity deficiency agreement or other similar agreement relating to any Excess Equipment; *provided further* that to the extent that the obligations or liabilities would be construed to be affected or limited under any such guaranty, loan deficiency agreement, equity deficiency agreement or other similar agreement, the limitation set forth in this paragraph shall be deemed to be automatically modified to the extent necessary to eliminate any such effect; and it is further

15. ORDERED that the rejection of any Lease and the related Excess Leased Equipment and the abandonment of any Excess Owned Equipment pursuant to this Order are

without prejudice to the Reserved Rights; and it is further

16. ORDERED that the Debtors will provide to an affected Aircraft Finance Party aircraft data contained in a computerized maintenance program in soft copy format with respect to the applicable Excess Equipment in which the Aircraft Party has an interest if both the following conditions are satisfied: (a) such records are requested in writing by such Aircraft Financing Party and addressed via e-mail to the following people: Debra Grassgreen (dgrassgreen@pszjlaw.com) and Brian Gillman (Brian.Gillman@mesa-air.com)) (such request, the "Computerized Data Request") and (b) such records are possessed by or in the control of the Debtors with respect to any such Excess Equipment; provided that the Debtors shall provide such computerized records by the latest of the following dates:

> (x) ten (10) days after the applicable Aircraft Finance Party (that is the controlling party or equivalent pursuant to the underlying transaction documents) in respect of any Excess Equipment accepts delivery of such Excess Equipment,
>
> (y) ten (10) days after the earlier of (i) the lapse of the deadline set forth in paragraph 2 hereof for requesting an adjustment of the Effective Date for such Excess Equipment and (ii) the date, if any, that the applicable Aircraft Finance Party (that is the controlling party or equivalent pursuant to the underlying transaction documents) for such Excess Equipment waives its right to seek an adjustment of the Effective Date for such Excess Equipment, which waiver must be set forth in writing and delivered by e-mail to the following people: Debra Grassgreen (dgrassgreen@pszjlaw.com) and Brian Gillman (Brian.Gillman@mesa-air.com); and
>
> (z) ten (10) days after the Debtors have received the Computerized Data Request in the manner as set forth above in this paragraph 16;

and it is further.

17. ORDERED that, without limiting the provisions of paragraph 12 hereof, upon written request from any affected Aircraft Finance Party, the Debtors (at the Debtors' expense) shall reasonably cooperate with such affected Aircraft Finance Party to the extent that is

reasonably practicable with respect to the execution of or provision of information required for a lease termination document, bill of sale, or quitclaim deed, as appropriate, in form acceptable for filing with the Federal Aviation Administration (the "FAA") in connection with such Excess Leased Equipment or Excess Owned Equipment and provide, upon written request, to the extent reasonably practicable with respect to such Excess Equipment, a special flight permit; *provided*, *however*, that the affected Lessor or Secured Party shall be solely responsible for all costs associated with the filing, as applicable, thereof with the FAA; and it is further

18. ORDERED that nothing herein is intended to limit, expand or otherwise modify any right of any Aircraft Finance Party to set off mutual debts subject to sections 362, 553 and/or 1110 of the Bankruptcy Code or, as applicable, of the Debtor or any other party in interest to object thereto; and it is further

19. ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents and take any additional actions as may be necessary or appropriate to implement and effectuate the relief granted herein; and it is further

20. ORDERED that notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective immediately upon its entry; and it is further

21. ORDERED that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February 23, 2010
      New York, New York

                                           /s/Martin Glenn
                                           UNITED STATES BANKRUPTCY JUDGE