PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**EMERGENCY MOTION OF THE DEBTORS FOR AUTHORIZATION
(I) TO ENTER INTO THE ROLLS-ROYCE AGREEMENTS AND (II) TO
ENTER INTO AND PERFORM UNDER NEW SHORT-TERM AIRCRAFT
ENGINE LEASE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

TO THE HONORABLE MARTIN GLENN:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this emergency motion (the "Motion") and respectfully represent as follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

56772-002\DOCS_NY:20243.4

## Background

1. On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee"). The members of the Committee are: Bombardier, Inc.; Embraer-Empresa Brasilieira de Aeronáutica S.A.; IHI Corporation; U.S. Bank National Association; AT&T Capital Services; Wilmington Trust Company; the Air Line Pilots Association; and Association of Flight Attendants (ex-officio member).

## Jurisdiction

4. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5. The Debtors do not believe that they need Court approval to enter into the Rolls-Royce Agreements (as defined below) or to enter into and perform under new short-term aircraft engine lease agreements (such agreements, the "Aircraft Engine Lease Agreements") in the ordinary course of business.

6. However, in an abundance of caution, to the extent the Court finds that the leases are not in the ordinary course of business, pursuant to section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors seek an order in the form attached hereto as <u>Exhibit A</u> authorizing the Debtors (i) to lease from Rolls-Royce Corporation ("<u>Rolls-Royce</u>") up to six aircraft engines on the terms contemplated by the agreement, dated as of February 26, 2010, substantially in the form attached hereto as <u>Exhibit B</u>, and a letter agreement dated February 24, 2010, (each, a "<u>Rolls-Royce Agreement</u>" and, collectively, the "<u>Rolls-Royce Agreements</u>"),[2] and (ii) to enter into and perform under new short-term aircraft engine lease agreements in the ordinary course of business (each, an "<u>Aircraft Engine Lease Agreement</u>" and, collectively, the "<u>Aircraft Engine Lease Agreements</u>") in accordance with the same practices and procedures as in effect immediately prior to the Petition Date, and perform all obligations contemplated thereunder, including, without limitation, the payment of any fees, charges and expenses required thereby, pursuant to the procedures set forth below.

7. The Debtors shall provide counsel for the Committee (i) reasonable advance notice by electronic mail of the Debtors' entry into the Rolls-Royce Agreements and (ii) seven days' written notice by electronic mail of the Debtors' entry into any Aircraft Engine Lease Agreement that is not substantially in the form of the Rolls-Royce Agreements, provided that the Debtors are not required to provide notice of their entry into any renewals of Aircraft Engine Lease Agreements entered into prior to March 2, 1010. If counsel for the Committee does not inform the Debtors in writing by electronic mail of any objection to the Debtors' entry into the Aircraft Engine Lease Agreements, the Debtors shall be deemed authorized to enter into such agreements without further notice or order of the Court. In the event counsel for the

---

[2] The form of Rolls-Royce Agreement attached hereto as Exhibit B shall serve as the form for the lease of the additional Aircraft Engines.

Committee timely objects to the Debtors' entry into any such agreement, and such objection is not consensually resolved, the Debtors shall schedule a hearing on the matter as soon as practicable and, if necessary, on shortened notice on a date and time that is convenient for the Court.

### Terms of the Rolls-Royce Engine Agreement

8. The Rolls-Royce Agreement attached hereto as <u>Exhibit B</u> contemplates that the Debtors will lease one aircraft engine from Rolls-Royce bearing the manufacturer serial number as set forth in the Rolls-Royce Agreement. The Debtors intend to lease up to five additional aircraft engines (collectively, the "<u>Aircraft Engines</u>") pursuant to subsequent agreements in substantially the form of the Rolls-Royce Agreement. The Aircraft Engines are scheduled to be delivered to the Debtors beginning in early March 2010. The lease term for the Aircraft Engines will be three months from their respective delivery dates. The Debtors are required to make a security deposit upon execution of the Rolls-Royce Agreements, and rent will be payable monthly in advance commencing on the delivery date of each Aircraft Engine.

### Basis for Relief

9. As of January 25, 2010, the Debtors maintain a fleet of approximately 178 aircraft, consisting of 48 CRJ-200s, 20 CRJ-700s, 38 CRJ-900s, 36 ERJ-145s, and 16 Dash-8, and 20 Beech 1900s. Substantially all of the aircraft and aircraft engines in the Debtors' fleet are subject to leases or financing arrangements.

10. Since then, the Debtors and their advisors have explored and implemented various strategies to rationalize both the Debtors' overall flying operations and the size of their fleet of aircraft and aircraft engines so as to maximize profitability and enhance operational liquidity.

11. As part of their ongoing fleet rationalization, the Debtors have assessed various aircraft engine lease and purchase options, and they have determined that entering into the Rolls-Royce Agreements and other Aircraft Engine Lease Agreements meet their short-term needs and is in their best interest. The terms of the Rolls-Royce Agreement are competitive on price and substantially similar to the terms of many of the Debtors' current aircraft lease agreements and other leasing alternatives under the circumstances.

12. Based on the foregoing considerations, the Debtors seek approval of the Rolls-Royce Agreements, and authority to enter into and perform under new short-term the Aircraft Engine Lease Agreements in the ordinary course of business pursuant to the procedures set forth herein.

## Applicable Authority

13. Section 363(b)(1) of the Bankruptcy Code empowers courts to allow debtors to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Global Crossing Ttd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that standard for determining a section 363(b) motion is a "good business reason").

14. The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v.*

*Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

15. The Debtors' decision to enter into the Rolls-Royce Agreements and other Aircraft Engine Lease Agreements is justified by the fact that the Aircraft Engines are on reasonable and competitive market terms, and serve a critical need in the Debtors' operations. Since the Rolls-Royce Agreements and other Aircraft Engine Lease Agreements are short-term, there is no risk to the Debtors' estates of a large damage claim. Consequently, the Debtors' entry into the Rolls-Royce Agreements and other Aircraft Engine Lease Agreements represents a sound exercise of the Debtors' business judgment, is for a valid business purpose and should be authorized under section 363(b)(1) of the Bankruptcy Code.

## Relief Under Bankruptcy Rule 6004(h)

16. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors require the delivery of Aircraft Engines on an expedited basis to avoid any interruptions in the operation of their business. Accordingly, the Debtors request that any order granting the relief sought herein be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived.

## Notice

17. Notice of this Motion has been given by facsimile or electronic mail, where such contact information is available, to (i) the United States Trustee; (ii) counsel for

Rolls-Royce; (iii) counsel for the Committee; and (iv) parties in interest listed on the Master Service List (as defined in the Court's Order establishing notice procedures and a master service list, entered January 15, 2010).[3] In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

18. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 2, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Maria A. Bove*
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

---

[3] The Debtors were not provided with an electronic email address or facsimile number for (i) counsel for Donna and James Fuzi or (ii) Damon Walker, Transportation Industry Analyst at the Office of Aviation Analysis, U.S. Department of Transportation. The Debtors have provided telephonic notice of this Motion to counsel for Donna and James Fuzi. In the event the Court enters an order shortening the notice period for a hearing on this Motion, the Debtors will serve such order and this Motion by overnight courier on such parties.

# EXHIBIT A

# (Proposed Order)

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> MESA AIR GROUP, INC., *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 10-10018 (MG) <br><br> (Jointly Administered) |

### ORDER AUTHORIZING THE DEBTORS (I) TO ENTER INTO THE ROLLS-ROYCE AGREEMENT AND (II) TO ENTER INTO AND PERFORM UNDER NEW SHORT-TERM AIRCRAFT ENGINE LEASE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion")[2] of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession herein (collectively, the "Debtors"), for an order, pursuant to section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004, seeking authority (i) to enter into the Rolls-Royce Agreements, and (ii) to enter into and perform under new short-term aircraft engine lease agreements in the ordinary course of business (such agreements, the "Aircraft Engine Lease Agreements"), as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is hereby granted to the extent provided below; and it is further

ORDERED that, pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtors are authorized to enter into agreements contemplated by and substantially on the terms set forth in the Rolls-Royce Agreements and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions that may be reasonably necessary or appropriate to implement the Rolls-Royce Agreements and other short-term Aircraft Engine Lease Agreements, and perform all obligations contemplated thereunder, including, without limitation, the payment of any fees, charges and expenses required thereby pursuant to the procedures set forth herein; and it is further

ORDERED that, in the event of any inconsistency between the provisions of this Order and the Rolls-Royce Agreements, the provisions of this Order shall govern; and it is further

ORDERED that the Debtors' entry into and performance under the Rolls-Royce Agreement and Aircraft Engine Lease Agreements pursuant to the procedures set forth herein is in the best interests of the Debtors and their respective estates and creditors and is within the Debtors' sound business judgment,; and it is further

ORDERED that the Debtors shall provide counsel for the Committee (i) reasonable advance notice by electronic mail of the Debtors' entry into the Rolls-Royce Agreements and (ii) seven days' written notice by electronic mail of the Debtors' entry into any Aircraft Engine Lease Agreement that is not substantially in the form of the Rolls-Royce Agreements, provided that the Debtors are not required to provide notice of their entry into any renewals of Aircraft

Engine Lease Agreements entered into prior to March 2, 1010. If counsel for the Committee does not inform the Debtors in writing by electronic mail of any objection to the Debtors' entry into the Aircraft Engine Lease Agreements, the Debtors shall be deemed authorized to enter into such agreements without further notice or order of the Court. In the event counsel for the Committee timely objects to the Debtors' entry into any Aircraft Engine Lease Agreements, and such objection is not consensually resolved, the Debtors shall schedule a hearing on the matter as soon as practicable and, if necessary, on shortened notice on a date and time that is convenient for the Court; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Rolls-Royce Agreements and other short-term Aircraft Engine Lease Agreements and all amendments thereto, (ii) to resolve any disputes arising under or related to the Rolls-Royce Agreements and other short-term Aircraft Engine Lease Agreements, except as otherwise provided therein and (iii) to interpret, implement and enforce the provisions of this Order.

Dated: New York, New York
_____, 2010

                                          HONORABLE MARTIN GLENN
                                          UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(Rolls-Royce Agreement)**

# Form of Lease Agreement

## Lease Agreement

This Lease Agreement is made as of February 26, 2010 between Rolls-Royce Corporation ("*Lessor*") and Mesa Air Group ("*Lessee*"). It refers to and incorporates the terms of IATA Document No. 5016-00 (Master Short-Term Engine Lease Agreement, 2002) ("***Master Agreement***").

This Lease Agreement modifies the Master Agreement, and, as so modified, constitutes a single contract applicable to the leasing of the Engine (defined below), as contemplated by 2.1.2 of the Master Agreement.

## Part I – Referenced Provisions

For purposes of the Master Agreement ("N/A" denotes non-applicability):

| *1. Engine* (clause 2.3.1(i); annex 1, definition)<br><br>Rolls-Royce manufactured AE3007A engine with serial number CAE310078 including all Part attached thereto.<br><br>Serviceability Tag: FAA 8130 | *2A+B. Engine Flight Hours (2A) and Engine Flight Cycles (2B) /Since Last Overhaul* (clause 2.3.1(ii); Annex 1, Definitions)<br><br>N/A |
|---|---|
| *3A+B. Additional Conditions Precedent to Lessee's Obligations* (clause 2.3.1(iii)) *(3A) and to Lessor's Obligations* (clause 2.3.3) *(3B)*<br>3A **Lessee's obligations:** N/A<br>3B **Lessor's obligations:** N/A | *4. Conditions Precedent Time Period* (clause 2.3.2)<br><br>From the date of this Lease Agreement to the Commencement Date. |
| *5. Commencement Date* (clause 2.4.1; annex 1, definition)<br><br>February 26 , 2010 | *6. Acceptance Certificate* (clause 2.4.2; annex 1, definition)<br><br>An Acceptance Certificate is required (form attached at Appendix A). |
| *7. Deposit and/or Letter of Credit* (clause 3.1)<br><br>A deposit of US$_____(2 months lease rental payment plus 2 months estimated use fee amounts) is required. Any refund of the deposit will be made without interest.<br><br>Lessee agrees that (a) Lessor may, without notice or demand, apply the Deposit (or any part of it) towards payment or discharge of any matured obligation of Lessee to Lessor; (b) Lessor may commingle the Deposit with Lessor's other funds any interest earned on such Deposit will be for Lessor's account; and (c) if Lessor exercises the rights set out in (a), Lessor will inform Lessee and Lessee will immediately restore the Deposit to the level at which it should have stood immediately before such exercise.<br><br>Nothing in clause 3.1 or this point 7 will create a relationship of trust or any fiduciary duty between Lessor and Lessee.<br><br>The Deposit will serve as security for the performance by Lessee of its obligations under this Lease Agreement (including, without limitation, the Master Agreement) and may be applied by Lessor upon the occurrence of any default or Event of Default under such agreements. Upon termination of this Lease Agreement other than if an Event of Default has occurred and is continuing (and after the occurrence of the redelivery and the Final Inspection), Lessor will return to Lessee within fifteen (15) days after the completion of the Final Inspection the amount of the Deposit then held by Lessor, without interest. Upon termination of this Lease and if an Event of Default has occurred and is continuing (and after the occurrence of the redelivery and the Final Inspection), then within fifteen (15) days after the completion of the Final Inspection Lessor will return, without | *8. Rent* (clause 3.2; annex 1, definition)<br><br>US$_____ for each month of the Term. |

| | |
|---|---|
| interest, the balance of the Deposit, if any, after the application of the Deposit to cure such Event of Default. | |
| **9. *Rent Payment Date*** (clause 3.2; annex 1, definition)<br><br>The Commencement Date and each of the dates numerically corresponding to the Commencement Date in each following calendar month or, if there is no corresponding day in any month, the last day of that month). | **10. *Default Rate*** (clause 3.5; annex 1, definition)<br><br>LIBOR plus 5% per annum. |
| **11. *Agreed Currency*** (clause 3.7.2; annex 1, definition)<br><br>United States Dollars ($). | **12. *Payment Account*** (clause 3.7.2; annex 1, definition) |
| **13. *Engine Documentation*** (clause 4.2.1(i))<br><br>The Lease Engine Data Set and Lease Engine Data Set Checklist | **14. *Engine Reports - Other Information*** (clause 4.2.4(ii))<br><br>As detailed in the Lease Engine Procedures for Operators |
| **15. *Engine Installation/Removal Notification Requirements*** (clause 4.2.6)<br><br>Details of all installations and removals required by Lessor within 5 days of such installation or removal. | **16. *Certain Lessee Obligations Concerning Indemnitees*** (clause 4.4.6)<br><br>Clause 4.4.6 will apply to Additional Indemnities and be in respect of all laws in all jurisdictions (at Lessee's expense). |
| **17. *Consequences of Partial Loss*** (clause 7.2.1(ii))<br><br>The Engine will continue to be leased as set out in clause 7.2.1(ii)(a). | **18 *Stipulated Amount*** (clause 7.3.1; annex 1, definition)<br><br>US $_____ |
| **19. *Reinsurance*** (clause 8.1)<br><br>N/A | **20. *Redelivery Location*** (clause 11.1(i); annex 1, definition)<br><br>The Rolls-Royce facility at Indianapolis, Indiana, USA |
| **21. *Redelivery-additional requirement*** (clause 11.1(ii))<br><br>Where the Engine is returned in an unserviceable condition, it should be returned with an unserviceable tag specifying why the Engine is not serviceable. | **22. *Final Inspection–other tests*** (clause 11.3.1(ii))<br><br>As specified in the Lease Engine Guide. |
| **23. *Redelivery–Additional Documentation*** (clause 11.4(viii))<br><br>As specified in the Lease Engine Guide. | **24. *Transportation – supplemental requirements*** (clause 11.5)<br><br>In accordance with IATA/ICAO regulations, particularly with respect to purging, inhibiting and drainage of the fuel system. |
| **25. *Additional Amounts – Term Extension*** (clause 11.6.2)<br><br>Rent will accrue and be paid by Lessee at a rate per month equal to the amount of Rent previously payable plus 50%, calculated on a per diem basis.<br><br>If Lessor elects at any time to accept redelivery notwithstanding non-compliance with clauses 11.1 and 11.5, Lessee will indemnify Lessor, and provide cash to Lessor, in an amount satisfactory to Lessor as security for that indemnity in respect of the cost of putting the Engine into the required condition. | **26. *Differing Period*** (clause 14.1(i))<br><br>**Failure to make any payment required under this Agreement on the specified due date shall be an Event of Default.** |
| **27. *Notices*** (clause 16.5)<br><br>Notices may be given in writing or by facsimile transmission. The address and facsimile details for notices are as set out below or as otherwise advised in writing by one party to the other in compliance with clause 16.5: | **28. *Contracting by Fax/Electronic Writing*** (clause 16.6)<br><br>Notices by fax is acceptable as per box 27. Notice by electronic writing is not permitted. |

Lease Reference: L10-_____

| | |
|---|---|
| **Lessor:** Rolls-Royce Corporation<br>Address: PO Box 420, Mail Code U14<br>Indianapolis, Indiana 46206-0420, USA<br>Attention: Commercial Manager – North America<br>Fax No. +1 (317) 230-4010<br><br>**Lessee:** Mesa Air Group<br>Address: 410 North 44th Street, Suite 700<br>Phoenix, Arizona 85008 | |

NEWYORK/#228597.4

| | |
|---|---|
| **29. *Governing Law*** (clause 16.7)<br><br>Laws of the State of New York | **30. *Nonexclusive Jurisdiction*** (clause 16.8.1(i))<br><br>New York State Courts and/or Federal Courts located in New York |
| **31. *Additional Indemnitees*** (annex 1, definition) (for use, *inter alia*, in definition of "Indemnitees") | **32. *Business Day*** (annex 1, definition)<br><br>New York and Phoenix and in relation to a payment, New York. |
| **33. *Use Fee Amount (Cycle)*** (annex 1, definition) (for use in definition of "Use Fees (Cycle)"<br><br>US$____ Per Engine Flight Cycle | **34. *Use Fee Amount (Flight Hour)*** (annex 1 definition) (for use in definition of "Use Fees (Flight Hours)")<br><br>US$____ Per Engine Flight Hour |
| **35. *Scheduled Final Date*** (annex 1, definition (for use in definition of "Final Date")<br><br>The date that falls sixty (60) days after the Commencement Date. | **36. *Principal Taxation Jurisdictions*** (annex 1, definition) (for use in definition of "Lessor Tax")<br><br>United States |
| **37. *Calculation Discount Rate*** (annex 1, definition (for use in definition of Termination Damage Amount))<br><br>3 % per annum | **38. *Threshold Amount*** (annex 1, definition)<br><br>US$100,000 |
| **39. *Required Liability Amount*** (annex 4, clause 4)<br><br>US$350,000,000 | **40. *Deductibles*** (annex 4, clause 8)<br><br>US$100,000 |

**Part II – Modifications Applicable Where Lessee Is Not an Airline or Other Operator of Engines**

> Pursuant to *2.1.4* of the Lease Agreement, the Master Agreement is modified as follows ("N/A" denotes non-applicability):
>
> N/A.

**Part III – Other Modification to Master Agreement**

> As regards this Lease Agreement, the Master Agreement is further modified as follows ("N/A" denotes non-applicability):
>
> 1. N/A
>
> 2. All references to the "JAA" are deleted and replaced by the word "EASA".
>
> 3. A new clause 2.4.3 is added as follows: "Delivery of the Engine by Lessor to Lessee will take place at the Rolls-Royce facility in Indianapolis, Indiana, USA"
>
> 4. Clause 4.4.4(ii) is amended by deleting the words "(which may be done in that party's leasing or financing contract with Lessee)".
>
> 5. A new clause 4.4A is added as follows:
>
>    **4.A  CAPE TOWN CONVENTION**
>
>    **4A.1 Applicability**
>
>    The provisions of this clause will only apply if, on the date of this Lease Agreement, the Cape Town Convention applies to the transactions contemplated.

### 4A.2 Transacting User Entity

Lessee will register as, and remain, a transacting user entity of the International Registry.

### 4A.3 Consent to Registration

Lessee consents to the registration of the International Interest constituted by this Lease Agreement and will ensure that no other interest is registered in the International Registry without the Lessor's prior written consent.

### 4A.4 Cape Town Convention Remedies

In addition to its rights under clause 14.2, Lessor may exercise all rights expressed to be available to creditors under the Cape Town Convention including the right to receive speedy relief (as defined in Article 20(2) of the Consolidated Text) in the form of any of the orders specified in Article 20 of the Consolidated Text. Lessee agrees that Article 20(4) of the Consolidated Text is disapplied. To the extent its remedies are governed by the Cape Town Convention, Lessor will exercise those remedies in a "commercially reasonable manner" and Lessee agrees that none of the remedies granted in this Lease Agreement to Lessor are manifestly unreasonable.

### 4A.5 Conflict

If a provision in this Lease Agreement relating to the Cape Town Convention conflicts with another provision of this Lease Agreement, the Cape Town Convention prevails unless this Lease Agreement grants Lessor greater rights or imposes fewer restrictions."

6. Clause 14.1 is amended by inserting the words "(and a *default* for the purposes of Article 17(1) of the Consolidated Text, if applicable)" at the end of the opening line.

7. Clause 16.8.1(ii) is amended by inserting the words "(including in accordance with Article 57 of the Consolidated Text, if applicable)" at the end of that clause.

8. The definition of "JAA" in Annex 1 is deleted.

9. The following new definitions are inserted in the correct alphabetical position in Annex 1:

    **Consolidated Text** means the consolidated text of the Cape Town Convention attached to Resolution No. 1 of the Final Act of the Diplomatic Conference to adopt the Cape Town Convention.

    **EASA** means the European Aviation Safety Agency or any other authority to which its responsibilities have been transferred or reallocated and includes, where the context so requires, a reference to the European Joint Airworthiness Authority.

    **International Interest** has the meaning specified in the Consolidated Text.

    **International Registry** has the meaning specified in the Consolidated Text.

    **Lease Engine Procedures for Operators** means the lease engine guide issued by the Lessor (as amended and updated from time to time) which is published on www.aeromanager.com

    **LIBOR** means the British Bankers Interest Settlement Rate for the Agreed Currency and period displayed on the relevant Reuters screen or, if that page is unavailable, another page displaying the appropriate rate or if no page is available the arithmetic mean (rounded upward to 4 decimal places) of the rates quoted by British Banking Association to leading banks in the London interbank market as of 11.00am on the relevant date for such period as Lessor determines.

10. Annex 3 is amended by adding the following additional paragraph:

    "1.4 if applicable:

    (a) evidence in a priority search certificate from the International Registry that the International Interest constituted by this Lease Agreement has been duly registered with the International Registry, and there are no other interests in relation to the Engine; and

    (b) an executed Recognition Agreement from all parties with a proprietary interest in the aircraft on which the Engine is to be installed."

11. Annex 4, paragraph 2 is deleted and replaced with the following: "The Insurances must include an endorsement on the terms of AVN67C (Hull All and Hull War Endorsement) (or equivalent) naming Lessor as the "Designated Contract Party".".

12. Annex 4, paragraph 9 is amended by inserting the words "Such insurance shall include an endorsement on the terms of AVN99 naming the Lessor as the "Designated Contract Party"" at the end of that paragraph.

13. A new Clause 13.3 is added as follows:

    "If head lease relating to the Engine Package is terminated then (a) this Agreement shall terminate without further action and (b) Lessee shall comply with Clause 11 and pay to Lessor the Termination Damage Amount save the amount specified in (iii) of that definition".

14. Annex 3 is amended by inserting a requirement for provision of a process agent letter before delivery.

15. A new Clause 14.1(vii) is added as follows:

    "(vii) failure by Lessee to pay any amount due for engine repair work or for parts or for any other services ."

16. This Lease Agreement is contingent upon Mesa delivering to a Rolls-Royce designated repair facility one unserviceable engine to be inspected and repaired on a Time & Material basis with a prepayment of $____ deposit and the payment of any additional repair costs identified during the repair process. Failure to comply with these terms shall be an Event of Default hereunder and under the Master Agreement.

17. Notwithstanding anything else to the contrary herein or in the Master Agreement, this Lease Agreement is contingent upon the approval by the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), in the Lessee's pending chapter 11 case (Chapter 11 Case No. 10-10018) (the "Bankruptcy Case"), of both this Lease Agreement and the letter agreement sent to Mesa's Gary Appling, dated February 24, 2010, from Rolls-Royce, which order of the Bankruptcy Court (such order, the "Approval Order") must be obtained on or before March 5, 2010. In this regard, the Lessee agrees to seek to obtain such Approval Order from the Bankruptcy Court as soon as practicable, but in any event by March [5], 2010. If the Lessee wants this Lease Agreement to become effective before obtaining such Approval Order from the Bankruptcy Court, then, on an interim basis, this Lease Agreement can become effective assuming that the following two additional conditions are satisfied (assuming that the other terms for effectiveness in this Lease Agreement and in the Master Agreement have been satisfied): (a) the Official Committee of Unsecured Creditors in Lessee' Bankruptcy Case both consents to the Lessee's entry into this Lease Agreement transaction (both with or without court approval) and agrees that it will not file or assert with the Bankruptcy Court an objection on any grounds to the Lessee's entry into this Lease Agreement and (b) Mesa deliver's an officer's certificate, in form and substance acceptable to Lessor, confirming that this transaction is an ordinary course of business transaction for the Lessee; provided, however, that, notwithstanding anything else in this Lease Agreement or the Master Agreement, and notwithstanding the satisfaction of the foregoing two additional conditions, this Lease Agreement shall automatically terminate if the Bankruptcy Court does not enter the Approval Order on or before March [5], 2010 and the Final Date shall be March [5,] 2010 for all purposes under this Lease Agreement and the Master Agreement.

18. A new sentence is added at the end of Clause 14.2 as follows:

    "In addition to the foregoing, the Lessor shall have the rights to effect any rights or remedies available to it under applicable law, including, without limitation Article 2A of the Uniform Commercial Code."

**Part IV – Appendix**

**Appendix A** hereto is the form of **Acceptance Certificate**, the execution of which, as contemplated by point 6 above, effects or evidences Lessee's acceptance of the Engine under the Lease Agreement.

IN WITNESS whereof, Parties have executed this Lease Agreement **as a deed** on the respective dates specified below.

Executed and delivered as a deed

by _____,
a duly authorised delegate
for and on behalf of                          _____
**Rolls-Royce Corporation**                    Sign

Lease Reference: L10-\_\_\_\_\_

in the presence of:

_____
Sign

_____
Print Name

Executed and delivered as a deed

by _____,
a duly authorised delegate
for and on behalf of
**Mesa Air Group**

_____
Sign

in the presence of:

_____
Sign

_____
Print Name

NEWYORK/#228597.4

## Appendix A – Acceptance Certificate

Rolls-Royce Corporation
PO Box 420, Mail Code U-14
Indianapolis, Indiana USA

*Re:* **Acceptance of Engine Package**

Dear Sir/Madam,

Reference is made to the Lease Agreement between Rolls-Royce Corporation ("**Lessor**") and Mesa Air Group. ("**Lessee**") dated February ____, 2010 ("***Engine Lease Agreement***") regarding the leasing by Lessee of one Rolls-Royce manufactured AE3007A engine with serial number CAE310078 ("***Engine***"). Terms used herein without definition have the meanings assigned in the Engine Lease Agreement.

Lessee hereby confirms to Lessor that: on _____ [*insert date*] at _____ [*insert time*] at _____ [*insert place*] Lessee accepted delivery of the Engine, as described in **Part I, point 1** of the Engine Lease Agreement and the Engine Documentation, as described in **Part I, point 13** of the Engine Lease Agreement.

**Mesa Air Group**

By: _____

Date: _____