UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re**<br><br>    MESA AIR GROUP, INC., *et al.,*<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND BANKRUPTCY RULE 4001: (A) AUTHORIZING DEBTORS TO ENTER INTO NEW LETTER OF CREDIT FACILITY WITH COMPASS BANK; (B) AUTHORIZING USE OF CASH COLLATERAL PLEDGED TO COMPASS BANK; (C) MODIFYING THE AUTOMATIC STAY; (D) GRANTING ADEQUATE PROTECTION; <u>AND (E) GRANTING RELATED RELIEF</u>**

Upon the "<u>Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Bankruptcy Rule 4001: (A) Authorizing Debtors to Enter Into New Letter of Credit Facility with Compass Bank; (B) Authorizing Use of Cash Collateral Pledged to Compass Bank; (C) Modifying the Automatic Stay; (D) Granting Adequate Protection; (E) Setting a Final Hearing; and (F) Granting Related Relief</u>" (the "<u>Motion</u>") filed by Mesa Air Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and an interim hearing on the Motion having been held on February 4, 2010 at 2:00 P.M.; and the <u>Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Bankruptcy Rule 4001: (A) Authorizing Debtors to Enter Into New Letter of Credit Facility with Compass Bank; (B) Authorizing Use of Cash Collateral Pledged to Compass Bank; (C) Modifying the Automatic Stay; (D) Granting Adequate Protection; (E) Setting a Final Hearing; and (F) Granting Related Relief</u>" having been entered by this Court on February 4, 2010; and notice having been provided to the identified parties in the manner prescribed in the Motion; and no objections to the relief

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

requested in the Motion on a final basis having been filed; and a final hearing on the Motion having been held by this Court on March 3, 2010 at 3:00 P.M.; and good cause appearing therefor:

**THE COURT HEREBY FINDS** that:

1. This matter presents a "core" bankruptcy proceeding over which the Court has the jurisdiction and authority to enter an order pursuant to 28 U.S.C. §§ 157 and 1334;

2. Mesa Air Group, Inc. ("MAG"), Mesa Airlines, Inc. ("Mesa Airlines") and Freedom Airlines, Inc. ("Freedom Airlines") and Compass Bank (the "Bank") entered into that certain "Second Amended and Restated Letter of Credit and Reimbursement Agreement," dated March 9, 2009, pursuant to which, among other things, Bank agreed to make available a Letter of Credit Facility to MAG, Mesa Airlines and Freedom Airlines, and MAG, Mesa Airlines and Freedom Airlines agreed to reimburse Bank for any draws on Letters of Credit pursuant to such facility. A true and correct copy of the Second Amended and Restated Letter of Credit and Reimbursement Agreement is attached to the Motion as Exhibit A and incorporated herein by reference. (The Second Amended and Restated Letter of Credit and Reimbursement Agreement is hereinafter referred to as the "Prepetition Credit Agreement".)[2]

3. The obligations pursuant to the Credit Agreement and certain other obligations are secured pursuant to, among other documents, that certain "Second Amended and Restated Cash Collateral Account Agreement," dated as of March 9, 2009 (the "Prepetition Cash Collateral Agreement"). A true and correct copy of the Prepetition Cash Collateral Agreement is attached to the Motion as Exhibit B and incorporated herein by reference. (The Prepetition Credit Agreement and the Prepetition Cash Collateral Agreement, along with any and all other

---

[2] Capitalized terms not otherwise defined in this Final Order shall have the meanings given to those terms in the Prepetition Credit Agreement.

prior, contemporaneous and subsequent documents relating thereto, are collectively referred to herein as the "Prepetition Letter of Credit Agreement".)

4. Pursuant to the Prepetition Cash Collateral Agreement, any and all obligations, of MAG, Mesa Airlines and Freedom Airlines to the Bank or any of the Bank's subsidiaries or affiliates or successors, including, without limitation, all such obligations arising under or in connection with (i) the Prepetition Letter of Credit Agreement or the Credit Documents (as defined in the Prepetition Letter of Credit Agreement), and/or (iii) any credit card or purchasing card arrangements and agreements between Grantor and Bank, including that certain Purchasing Card Agreement by and between Mesa Airlines and the Bank, dated as of July 8, 2008 (the "Purchasing Card Agreement") constitute "Secured Obligations" thereunder.

5. As described more fully in § 2 of the Prepetition Cash Collateral Agreement, among other things, MAG, Mesa Airlines, Freedom Airlines, and each of them, assigned, granted and transferred to Bank a first-in-lien-priority continuing security interest in all of Grantor's right, title and interest in and to, among other things, the following property, whether then owned or thereafter acquired:

> a. the Cash Collateral Account and all cash, checks, drafts, documents, certificates, passbooks, instruments and other amounts, if any, from time to time deposited or held (whether by physical possession, book entry or otherwise) in and/or evidencing the Cash Collateral Account, including, without limitation, all wire transfers made, or in the process of being made, and all other deposits, to the Cash Collateral Account;
>
> b. all Permitted Investments, including all investment property, certificates, instruments, and securities from time to time representing or evidencing such Permitted Investments and any account or accounts in which such Permitted Investments may be held by, or in the name of, Bank for or on behalf of Grantor;
>
> c. all interest, cash, instruments and other property from time to time held (whether by physical possession, book entry or

otherwise) in, received, receivable, or otherwise payable in respect of, or in exchange for, any or all of the foregoing;

d. all present and future accounts, contract rights, chattel paper (whether tangible or electronic), deposit accounts, documents, general intangibles (including, without limitation, payment intangibles and software), goods, instruments (including, without limitation, promissory notes), investment property, letter of credit rights, letters of credit, money, supporting obligations (in each case as such terms are defined in the UCC), and any other rights and interests pertaining to any of the foregoing, all documents, instruments or passbooks now or hereafter evidencing the Cash Collateral Account, all replacements, substitutions, renewals, products or proceeds of any of the foregoing, and all powers, options, rights, privileges and immunities pertaining thereto (including the right to make withdrawals therefrom); and; and

e. to the extent not covered by clauses (a), (b), (c) or (d) above, all products and proceeds as defined under the UCC of any or all of the foregoing of every type..

(Collectively, any and all property securing the Secured Obligations, as that term is defined in the Prepetition Cash Collateral Agreement, is referred to herein as the "Prepetition Collateral".) Notwithstanding the foregoing, other than the amounts held in the Cash Collateral Account, the Bank and the Debtors agree that no Prepetition Collateral of the types listed above in 6(b) through 6(d) existed as of the Petition Date.

6. To secure all of the Debtors' Secured Obligations to Bank arising under the Prepetition Letter of Credit Agreement and the Purchasing Card Agreement, Bank holds a first-in-lien-priority properly perfected continuing security interest in and to the Cash Collateral Account (as that term is defined in §1 of the Prepetition Cash Collateral Agreement) by virtue of, among other things: (i) any and all of Debtors' funds on deposit with Bank being held in a segregated Cash Collateral Account (as that term is defined in § 1 of the Prepetition Cash Collateral Agreement) pursuant to §§ 4, 5 of the Prepetition Cash Collateral Agreement; (ii) UCC Financing Statement filed on November 29, 2008 with the Office of the Nevada

Secretary of State, Instrument No. 2008-030131-1; and (iii) UCC Financing Statement filed on March 16, 2009 with the Office of the Nevada Secretary of State, Instrument No. 2009-006488-8.

7. Pursuant to the Prepetition Letter of Credit Agreement, any and all reimbursement obligations of Debtors to Bank under the Prepetition Letter of Credit Agreement shall bear interest from and including the date that Bank pays the applicable drawing under a letter of credit to and including the date of reimbursement for such drawing at a per annum rate equal to the Prime Rate, and, upon the occurrence of an Event of Default, the Prime Rate plus an additional three percent (3%).

8. On or about January 6, 2010, Raytheon Aircraft Corporation ("Raytheon") notified Bank that it would be drawing on a certain letter of credit issued to it by Bank for the benefit of Debtors in the amount of $903,990 (the "Raytheon Draw").

9. The Raytheon Draw was appropriately tendered and paid for by Bank on January 11, 2010.

10. Pursuant to the Prepetition Letter of Credit Agreement, interest has been accruing on the amount of $903,990, plus $275 in fees, since January 11, 2010 at the rate of Prime Rate plus three percent (3%) and will continue to accrue up to and including the date of reimbursement by the Debtors.

11. On or about January 26, 2010, International Fidelity Co. ("International Fidelity") notified Bank that it would be drawing on a certain letter of credit issued to it by Bank for the benefit of Debtors in the amount of $200,000.00 (the "International Fidelity Draw").

12. The International Fidelity Draw was appropriately tendered and paid for by Bank on January 29, 2010.

13. Pursuant to the Prepetition Letter of Credit Agreement, interest has been accruing on the amount of $200,000, plus $275 in fees, since January 29, 2010 at the rate of Prime Rate

plus three percent (3%) and will continue to accrue up to and including the date of reimbursement by the Debtors.

14. As set forth in the Postpetition Letter of Credit Agreement, including but not limited to §§ 2, 3.3, 4.1, 4.2, and 5(b) of the Postpetition Credit Agreement, prior to issuing a Letter of Credit, Applicant, among other things, shall have made all deposits to the Cash Collateral Account as are required by the Letter of Credit Agreement.

15. Debtors require the renewal of various Letters of Credit. The Bank has agreed to make additional or replacement Letters of Credit available to Debtors on a postpetition basis on substantially similar terms as the Prepetition Letter of Credit Agreement. The Debtors and the Bank have agreed to that certain "Third Amended and Restated Letter of Credit and Reimbursement Agreement," dated as of January 5, 2010 (the "Postpetition Credit Agreement"), and that certain "Third Amended and Restated Cash Collateral Account Agreement," dated as of January 5, 2010 (the "Postpetition Cash Collateral Agreement"). True and correct copies of the Postpetition Credit Agreement and Postpetition Cash Collateral Agreement are attached hereto as Exhibits A and B, respectively. (The Postpetition Credit Agreement and the Postpetition Cash Collateral Agreement, along with any and all other prior, contemporaneous and subsequent documents relating thereto, are collectively referred to herein as the "Postpetition Letter of Credit Agreement".)

16. Pursuant to § 2 of the Postpetition Cash Collateral Agreement MAG, Mesa Airlines, Freedom Airlines, will assign, grant and transfer to Bank a first-in-lien-priority continuing security interest in all of Grantor's right, title and interest in and to the following property, whether then owned or thereafter acquired:

> a. the Cash Collateral Account and all cash, checks, drafts, documents, certificates, passbooks, instruments and other amounts, if any, from time to time deposited or held (whether by physical possession, book entry or otherwise) in and/or evidencing the Cash Collateral Account, including, without limitation, all wire transfers

made, or in the process of being made, and all other deposits, to the Cash Collateral Account; and

(b) all products and proceeds of the foregoing, as defined under the UCC.

(Collectively, any and all property securing the Secured Obligations, as that term is defined in the Postpetition Cash Collateral Agreement, is referred to herein as the "<u>Postpetition Collateral</u>," which includes amounts on deposit in the Cash Collateral Account as of the Petition Date.)

17. It is in the best interest of Debtors, their estates and their creditors to be permitted to enter into the Postpetition Letter of Credit Agreement and to make payments on all post-petition obligations arising thereunder. There is no form of financing readily available to the Debtors that would be an alternative to the Postpetition Letter of Credit Agreement on an unsecured basis or on substantially better terms.

18. The Debtors believe that they do not have any claims against the Bank relating to the Prepetition Letter of Credit Agreement.

19. Based upon the foregoing along with the facts and circumstances of this case, the approval of this Motion is in the best interests of Debtors, their estates, the creditors and other parties in interest and is a reasonable exercise of Debtors' business judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDICATED AND DECREED** that:

A. Debtors are authorized to execute and consummate the transactions contemplated under the Postpetition Letter of Credit Agreement together with the process and procedures in the Postpetition Letter of Credit Agreement for requesting, obtaining and securing the renewal and issuance of Letters of Credit;

B. Upon entry of this Final Order and the execution of the Postpetition Letter of Credit Agreement by the Debtors, (i) the Prepetition Letter of Credit Agreement shall be deemed amended and restated in its entirety, and replaced by the Postpetition Letter of Credit Agreement;

(ii) all outstanding obligations under the Prepetition Letter of Credit Agreement shall be obligations under the Postpetition Letter of Credit Agreement; and (iii) all Letters of Credit issued and outstanding pursuant to Prepetition Letter of Credit Agreement shall be deemed to be Letters of Credit issued and outstanding pursuant to the Postpetition Letter of Credit Agreement (the Postpetition Letter of Credit Agreement and Prepetition Letter of Credit Agreement are hereinafter referred to individually and collectively as the "<u>Letter of Credit Agreement</u>");

C. To fully collateralize any and all of Debtors' Letters of Credit under the Letter of Credit Agreement, whether now existing or hereafter issued, Debtors are authorized, pursuant to 11 U.S.C. §§ 105(a) and 364 and notwithstanding 11 U.S.C. § 552, to grant and hereby do grant Bank a post-petition, first-in-lien-priority security interest in and to the Postpetition Collateral, which consists of property of the estate consisting of the Postpetition Collateral (collectively, the "<u>Replacement Liens</u>");

D. The liens granted to Bank pursuant to this Order shall be valid and perfected as of January 5, 2010 (the "<u>Petition Date</u>"), without the need for execution or filing of any further document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law. Notwithstanding that no documents need to be executed or filed to perfect the liens granted hereunder, Debtors and their officers and agents on their behalf shall execute and deliver such further documentation as Bank may request to evidence and give notice of liens granted pursuant to this Order, and, to the extent necessary, the automatic stay is hereby modified for that purpose;

E. Pursuant to 11 U.S.C. § 362(d)(1) and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure, to the extent it applies, the automatic stay is hereby terminated and modified effective immediately as it relates to Bank for the limited purpose to allow Bank to exercise any and all rights under the Letter of Credit Agreement when and if any Letters of Credit are drawn upon, including but not limited to applying Postpetition Collateral, whether

now existing or hereafter acquired, securing any and all of Debtors' Letters of Credit, whether now existing or hereafter issued, for Debtors' account with Bank. Notwithstanding the foregoing or anything in the Postpetition Letter of Credit Agreement to the contrary, the Bank shall not be permitted to draw upon or otherwise exercise any rights with respect to the Postpetition Collateral (including the Cash Collateral Account) until after three (3) business day prior written notice to the Debtors and the Committee (which such notice can be provided by electronic mail); provided, however, that absent the entry of an order of the Court enjoining the Bank from exercising any and all of its rights under the Letter of Credit Agreement based solely on a showing that the Bank's proposed exercise of its rights is in violation of the Letter of Credit Agreement, the Bank may exercise any and all of its rights under the Letter of Credit Agreement after the expiration of three (3) business day from the date the Bank provides written notice to the Debtors and the Committee;

F.   Debtors are hereby authorized to renew the Postpetition Letter of Credit Agreement on an annual basis and upon substantially similar terms and execute any and all documents and pay any and all fees and expenses required by Bank in connection with such renewal of the Postpetition Letter of Credit Agreement without notice or further order of this Court;

G.   Bank's participation in this process and in the provisions under this Final Order is as a secured creditor, not as a co-owner, partner, joint venturer, operator, insider, control entity, employer in fact or in law, or as any other equity participant;

H.   Notwithstanding any term or provision of this Order: (a) no party in interest or other entity shall, pursuant to Bankruptcy Code § 506(c) or other applicable law or principles of equity, be entitled to recover from Bank's Collateral or other collateral subject to the Replacement Lien; and (b) Bank does not consent to the incurrence by Debtors, their professionals, or any other person, party, or entity of any of the costs, expenses or fees

contemplated under 11 U.S.C. § 506(c), and no consent shall be implied from any action, inaction or acquiescence by Bank.

I.  Debtors, on behalf of themselves and their respective bankruptcy estates, and the Committee, acknowledge and agree that: (i) Bank has, and will continue to have, a valid, perfected and non-avoidable first-priority lien in Cash Collateral Account as security for Debtors' indebtedness to Bank under the Prepetition Letter of Credit Agreement and the Purchasing Card Agreement; (ii) Debtors waive any and all claims or causes of action against Bank arising out of or related to the Prepetition Letter of Credit Agreement and the Purchasing Card Agreement, including but not limited to any avoidance, subrogation, setoff, or subordination powers or causes of action under the Bankruptcy Code and any other applicable state or federal law; (iii) Debtors are liable to Bank for any and all pre-petition amounts due and owing to Bank with respect to Debtors' non-Prepetition Letter of Credit Agreement depository accounts; (iv) Debtors have no claims, offsets, or defenses with respect to the payment of sums due Bank with respect to Debtors' non-Prepetition Letter of Credit Agreement depository accounts; and (v) Debtors do not dispute the validity, enforceability, or the amount of the indebtedness to Bank with respect to Debtors' non-Prepetition Letter of Credit Agreement depository accounts.

J.  Nothing herein shall be deemed a waiver of the rights of the Committee or any other parties in interest to challenge the validity of the Bank's liens on any Prepetition Collateral other than the Cash Collateral Account, which rights are expressly reserved and preserved.

K.  The Debtors are hereby authorized to assume the Purchasing Card Agreement, a true and correct copy of which is attached to the Motion as Exhibit G, and the assumption by the Debtors of the Purchasing Card Agreement is hereby approved, pursuant to 11 U.S.C. §365(a). As of the date of this Final Order, no cure amounts need be paid by the Debtors to cure any monetary defaults in connection with the assumption of the Purchasing Card Agreements. No

provision of this Final Order is intended to, or shall be deemed to, enlarge, diminish, alter, amend or otherwise change the terms or provisions of the Purchasing Card Agreement or the obligations of the parties thereunder.

L.     Any and all Letters of Credit issued or renewed and/or any and all payments made by Bank under this Final Order are done in good faith and shall be secured by a valid, perfected and non-avoidable first-priority lien in the Postpetition Collateral under 11 U.S.C. § 364(e).

M.     To the extent that the Postpetition Letter of Credit Agreement or the Postpetition Cash Collateral Agreement differ from this Final Order, this Final Order shall control.

Dated:  New York, New York
        March 5, 2010

                                          /s/ Martin Glenn_____
                                          UNITED STATES BANKRUPTCY JUDGE