| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date and Time:<br>March 24, 2010, at 10:00 a.m. |

-----------------------------------------------------------x
:
In re                                            :    Chapter 11
:
MESA AIR GROUP, INC., *et al.*,                  :    Case No. 10-10018 (MG)
:
:    (Jointly Administered)
                        Debtors.                 :
:
-----------------------------------------------------------x

**OBJECTION AND RESERVATION OF RIGHTS
OF THE UNITED STATES TRUSTEE TO DEBTORS'
MOTION FOR ENTRY OF FINAL ORDER PURSUANT TO
SECTIONS 105(a), 345(b), 363(c) AND 507(a) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 6003 AND 6004 TO (I) CONTINUE
USING EXISTING CASH MANAGEMENT SYSTEM; (II) MAINTAIN
EXISTING BANK ACCOUNTS AND BUSINESS FORMS;
AND (III) GRANTING RELATED RELIEF**

To:   HONORABLE MARTIN GLENN,
      UNITED STATES BANKRUPTCY JUDGE:

Diana G. Adams, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this (a) objection (the "Objection") to the Debtors' Motion (the "Motion") for Entry of a Final Order Pursuant to Sections 105(a), 345(b), 363(c) and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to (i) Continue Using Existing Cash Management System; (ii) Maintain Existing Bank Accounts and Business Forms; and (iii) Granting Related Relief (ECF Dkt. #17), and (b) reservation of rights with respect to accounts maintained at BBVA Compass Bank ("Compass Bank"). #17).  In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The United States Trustee objects to the Motion to the extent that Debtors seek a waiver of the requirements of Section 345(b) of title 11, United States Code (the "Bankruptcy Code") and the United States Trustee's Operating Guidelines and Reporting Requirements (the "Guidelines") to permit the Debtors to maintain estate funds in non-U.S. bank accounts. The Debtors have failed to establish their burden of proof that actual "cause" exists for the Court to excuse compliance with the Bankruptcy Code and the Guidelines. Accordingly, the Debtors' request for a waiver under Section 345(b)(2) of the Bankruptcy Code should be denied.[1]

## BACKGROUND

1. On January 5, 2010 (the "Petition Date"), Mesa Air Group, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. By Order dated January 5, 2010, the Debtors' cases are being administered jointly. (ECF Dkt. #33).

2. The Debtors and their non-debtor affiliates operate as regional air carriers providing scheduled passenger and airfreight service. As of the Petition Date, the Debtors' airline operations served approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico. The Debtors operate regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to various code-share agreements.

---

[1] The United States Trustee has consented to the Motion on an interim basis, and to periodic adjournments of the final hearing on the Motion to allow the Debtors to take the necessary steps to comply with Section 345 of the Bankruptcy Code and the Guidelines. The final hearing currently is scheduled for March 24, 2010, at 10:00 a.m.

3. The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in these cases.

5. On January 14, 2010, the United States Trustee appointed an Official Committee of Unsecured Creditors. (ECF Dkt. #97).

6. On February 24, 2010, the Debtors filed their first consolidated monthly operating report. (ECF Dkt. #354). The Debtors currently do not owe any quarterly fees to the United States Trustee pursuant to Section 1930(a)(6) of title 28, United States Code.

*The Motion*

7. The Debtors filed the Motion on the Petition Date seeking the entry of interim and final orders (i) authorizing the Debtors: (a) to continue to operate their cash management system ("Cash Management System") with their existing banks and financial institutions, (b) to fund the Debtors' operations, and (c) to maintain the Debtors' existing bank accounts and business forms and (ii) waiving the mandatory requirements of Section 345(b) of the Bankruptcy Code to the extent the Cash Management System is not in compliance. Motion at ¶ 8.

*The United States Trustee's Inquiries*

8. From and after the Petition Date, counsel to the United States Trustee and counsel to the Debtors have engaged in several informal teleconferences regarding the Motion. During these discussions, counsel to the United States Trustee expressed concern that some of the Debtors' funds were held in accounts maintained in banks that are not "Authorized Depositories" under the Guidelines.

*Mexican Banks*

9. The Debtors acknowledge that their deposit of funds into and transferred through the bank accounts maintained by Banco Nacional De Mexico S.A. and Banco Mercantil del Norte S.A. (collectively, the "Mexican Banks")[2] does not comply with Section 345 of the Bankruptcy Code. Motion at ¶ 53. The Debtors, therefore, request a waiver of the requirements of Section 345(b) of the Bankruptcy Code to maintain these foreign bank accounts. Id.

10. In support thereof, and following discussions with counsel to the United States Trustee, on February 16, 2010, the Debtors filed a supplement to the Motion and the Declaration of Michael Lotz, President of the Debtors, dated February 16, 2010 (the "Lotz Declaration"). Mr. Lotz represents that the monthly balance in at least one of the Mexican accounts ranges from approximately $100,000 to $300,000 USD.[3] Lotz Decl. at ¶ 7. Mr. Lotz states that the amount of the funds in the remaining Mexican bank account (the "Nacional Collection Account") is not greater than $4,000 USD. Id. at ¶ 6.

11. Mr. Lotz represents that for the Debtors to conduct business in Mexico, the Debtors are required to, among other things, maintain "a physical address in Mexico and maintain copies of the company's business records, including bank statements." Id. at ¶ 11. Mr. Lotz further represents that "the settlement of a company's accounts payable

---

[2] The Debtors maintain five bank accounts in the aggregate in the Mexican Banks. Motion at Exhibit 1.

[3] According to the Lotz Declaration, the funds are wired into one of the Mexican bank accounts (the "Mercantil Dollar Account"), converted into Mexican pesos and transferred into another account (the "Mercantil Peso Account"), and then again transferred to another account (the "Nacional Expense Account") to be distributed for payroll and other expenses associated with the operation of the Mexico stations. Lotz Decl. at ¶ 7. The Mercantil Peso Account is linked to an investment account located at Banco Mercantil (the "Mexico Money Market Account"), and each night the excess funds in the Mercantil Peso Account are swept into the Mexico Money Market Account. Id. at ¶ 8. It appears from the Lotz Declaration that the maximum amount of funds in any one of these Mexican accounts does not exceed $300,000 at any one time. Id. at ¶¶ 5-9.

4

must be reconciled through a Mexico based bank as opposed to a foreign based bank." Id. In addition, Mr. Lotz states that the Debtors are subject to certain taxes by the Mexican taxing authorities which "cannot be satisfied from a transfer originating in the United States." Id. at 12.

12. In his declaration, Mr. Lotz asserts that the funds held by the Mexican banks are secured, see id. at ¶ 14, and that the cost to post a bond is not in the best interests of the estates. Id. at ¶ 17. Mr. Lotz further represents that: (1) the Instituto para la Proteccion al Ahorro Bancario (the "IPAB") guarantees deposit accounts in an amount that is determined in relation to certain exchange rates which usually is in the range of $140,000 USD, and (2) the Debtors contacted one bonding agency that informed them that they would have to post a cash deposit in the full amount of the bond, plus pay a bonding fee and a letter of credit fee to secure the bonding agency's obligations. Id. at ¶¶ 16 and 17.

*Compass Bank*

13. Based upon the bank statements that the Debtors provided to the United States Trustee, it appears that the Debtors' funds held by Compass Bank are maintained in non-interest bearing, demand accounts. Under the Federal Transaction Account Guarantee Program, these funds are, therefore, insured fully by the FDIC through June 30, 2010. Because Compass Bank is not an "Authorized Depository" under the Guidelines, however, the United States Trustee has requested, and the Debtors have agreed, that within 45 days after June 30, 2010, the Debtors shall provide the United States Trustee with a Uniform Depository Agreement from Compass Bank, come into

compliance with Section 345(b) of the Bankruptcy Code, or seek a waiver of Section 345(b) requirements.

**OBJECTION**

14. Section 345(a) of the Bankruptcy Code directs that the trustee must deposit or invest money of the estates to achieve the "maximum reasonable net return" while considering the safety of the deposit or investment.[4] 11 U.S.C. § 345(a).

15. Section 345(b) of the Bankruptcy Code and the Guidelines were promulgated to protect all creditors of bankrupt entities against the loss of estate funds deposited or invested by debtors. Specifically, Section 345(b) of the Bankruptcy Code provides:

> (b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested –
>
>     (1)     a bond --
>
>         (A)     in favor of the United States;
>         (B)     secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>         (C) conditioned on –
>             (i)     a proper accounting for all money so deposited or invested and for any return on such money;
>             (ii)     prompt repayment of such money and return; and
>             (iii)     faithful performance of duties as a depository; or
>
>     (2)     the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

---

[4] These duties apply equally to the Debtors in these cases pursuant to Section 1107 of the Bankruptcy Code. 11 U.S.C. § 1107.

6

**The Debtors Have Not Established Cause Sufficient to Warrant the Court's Waiving the Protective Requirements of Section 345(b) of the Bankruptcy Code With Respect to the Estate Funds Held in the Mexican Banks**

16. The Debtors have requested that the Court authorize them to continue to deposit estate funds into five non-U.S. bank accounts without having to meet the requirements of obtaining a bond in favor of the United States or other security therefore.

17. The Debtors assert two reasons why they believe that "cause" exists under Section 345(b)(2) of the Bankruptcy Code for a waiver of the protections of Section 345 of the Bankruptcy Code. First, the Debtors argue that the IPAB guarantees up to approximately $140,000 USD of the funds deposited and held in the Mexican banks. Id. at ¶ 16. By the Debtors' own admission, the amount of funds held in the Mexican bank accounts may be as much as $300,000. Lotz Decl. at ¶ 7. Thus, it is plain that a substantial sum of the estates' funds is not guaranteed or insured by the United States. In addition, the Debtors have cited no case law, and the United States Trustee is unaware of any cases, that support the proposition that Section 345(b) of the Bankruptcy Code is met if the funds are guaranteed by a country other than United States. The Code and *Collier's* are silent on this issue. Indeed, the statute provides that the funds be "backed by the full faith and credit of the United States." 11 U.S.C. § 345(b). Thus, although a portion of the estates' funds that are deposited into the Mexican accounts may be guaranteed by the Mexican government, the Debtors have not established that cause exists for a waiver of the Section 345 protections.

18. The second argument that the Debtors advance is that the cost of having to post a bond is not in the best interests of the estate. Lotz Decl. at ¶ 17. Although it appears that the requirements of the bonding agency that the Debtors contacted are

7

substantial, see id., the Debtors have not proffered evidence of their efforts to obtain a bond or other security on more favorable terms, or evidence of their efforts to deposit securities as required by the Bankruptcy Code. The Debtors have failed to justify their decision to expose estate funds to risk of loss to the detriment of creditors. For these reasons, the Motion should be denied to the extent that the Debtors seek a waiver of the requirements of Section 345(b) of the Bankruptcy Code and the Guidelines to permit them to maintain the estates' funds in five non-U.S. bank accounts which do not meet the requirements of Section 345 of the Bankruptcy Code.

## CONCLUSION

19. The statute is clear - the posting of a bond or the deposit of appropriate securities is required if the Debtors wish to continue depositing estate funds with the Mexican Banks. The Debtors have not established cause for a waiver of the protections of Section 345 of the Bankruptcy Code. Accordingly, the Debtors' request for a waiver should be denied.

## RESERVATION OF RIGHTS

20. The United States Trustee expressly reserves all rights with regard to the Debtors' funds that are on deposit in the accounts maintained by Compass Bank. Motion at ¶ 50; Exhibit 1.

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order (i) denying the Debtors' request for a waiver of the requirements of Section 345(b) of the Bankruptcy Code with respect to the funds on deposit in the bank accounts maintained by the Mexican Banks, (ii) directing the Debtors to obtain the necessary bond or other security in compliance with Section 345(b) of the Bankruptcy

Code, (iii) reserving all of the United States Trustee's rights with respect to the estates' funds that are on deposit in accounts with Compass Bank, and (iv) granting such further relief as is just.

Dated: New York, New York
March 16, 2010

    Respectfully submitted,

    DIANA G. ADAMS
    UNITED STATES TRUSTEE

    By  */s/ Andrea B. Schwartz*
        Andrea B. Schwartz
        Trial Attorney
        33 Whitehall Street, 21st Floor
        New York, New York 10004
        Tel. No. (212) 510-0500
        Fax No. (212) 668-2255