

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 19 2009

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **DELTA AIR LINES, INC.** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION FILE** |
| **v.** ) | **No.: 09-CV-2267** |
| ) | |
| **MESA AIR GROUP, INC., and** ) | |
| **FREEDOM AIRLINES, INC.** ) | **FILED UNDER SEAL** |
| ) | |
| **Defendants.** ) | |
| ) | |



## COMPLAINT

Plaintiff Delta Air Lines, Inc. ("Delta") alleges for its Complaint against Defendants Mesa Air Group, Inc. ("Mesa") and Freedom Airlines, Inc. ("Freedom") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.     Delta and Defendants entered into a Delta Connection Agreement (the "Agreement") on May 3, 2005 under which Freedom operates Delta Connection flights using ERJ-145 regional aircraft.  The Agreement essentially operates as a "capacity-purchase" arrangement:  Freedom operates Delta Connection flights for Delta, and Delta reimburses Freedom for its operating costs plus a mark-up pursuant to the terms of the Agreement.

2.     A key factor in Delta's decision to award this contract to Freedom was Defendants' promise when Defendants entered into the Agreement that Freedom would be the lowest cost carrier within the Delta Connection program. In other words, Defendants agreed that the operating costs Freedom charged to Delta under the Agreement would be the lowest of any Delta Connection carrier operating similarly-configured aircraft for Delta.

3.     Defendants also committed that the operating costs Freedom charged to Delta under the Agreement would be no higher than the costs charged to any other code share partner for whom Freedom, or an affiliate of Freedom, operated.

4.     Since at least January 1, 2009, Freedom has not been the lowest cost carrier within the Delta Connection program.

5.     Defendants are, therefore, in material breach of the Agreement.

6.     Delta has diligently attempted to resolve these issues with Defendants since early this year. Despite the parties' repeated discussions, communications, and meetings, Defendants have refused to comply with Delta's requests. Accordingly, on May 21, 2009, Delta gave Defendants formal written notice of their breach and demanded that they cure the breach within 30 days.

7.     Defendants have failed to cure the breach. They have instead argued that Freedom's costs cannot be accurately compared to those of Pinnacle Airlines

("Pinnacle"), a Delta Connection carrier with lower direct operating costs than Freedom.

8.    Defendants have similarly failed to provide Delta with information about their agreements with other code share partners, so that Delta cannot confirm that the direct operating costs it pays are, in fact, the lowest of Freedom's code share partners. Delta is entitled to this information under the Agreement.

9.    Under Article 11, Section C of the Agreement, Delta was entitled to immediately terminate the Agreement at its sole option based upon Defendants' failure to cure the breach within 30 days of receipt of Delta's May 21 letter. Notwithstanding this right, Delta has continued well-past the 30-day deadline to engage Defendants in discussions in an effort to resolve this dispute.   But Defendants have stubbornly refused to acknowledge and to comply with their obligations under the Agreement.   It is now clear that this dispute cannot be resolved without judicial intervention.

10.    Delta wishes and intends to terminate the Agreement based upon Defendants' failure to timely cure this material breach.   Although Delta could unilaterally and immediately do so, Delta brings this action for a judgment declaring that Delta has the right to terminate the Agreement and to recover overpayments made to Freedom, for a judgment declaring that Delta is entitled to

information about Defendants' agreements with other code share partners and an order directing Defendants to produce the information to Delta, and for damages arising out of Defendants' breach of the Agreement.

## THE PARTIES

11.    Plaintiff Delta is a Delaware corporation with its principal place of business in Atlanta, Georgia.

12.    Defendant Mesa is a Nevada corporation with its principal place of business in Phoenix, Arizona.

13.    Defendant Freedom is a wholly-owned subsidiary of Mesa and is a Nevada corporation with its principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 2201, as there is an actual controversy between the parties, and under 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.    Venue is proper in this district under 28 U.S.C. §§ 1391(a)(2) and 1392(c).

- 4 -

## FACTUAL BACKGROUND

16.    Delta and Defendants are parties to the Agreement, under which Freedom agreed to operate ERJ-145 50-seat regional aircraft as a Delta Connection carrier.

17.    The "Base Compensation" to Freedom provided for in the Agreement is established in Article 3, Section A.   This provision says that Delta will compensate Freedom for operating Delta Connection flights based in part on a payment for certain specified operating costs, defined either as "Base Rate Costs" or "Pass Through Costs," plus a "Base Mark-up" on these costs of 4% in any month in which Freedom achieves certain minimum performance standards. Additional incentive compensation is available to Freedom if it achieves performance standards exceeding those minimums.

18.    "Base Rate Costs" are defined in Article 3, Section A(i) of the Agreement as "all direct, operating costs recorded in accordance with generally accepted accounting principles," specifically including engine maintenance expenses, aircraft rent/ownership costs, terminal facility rent and use charges, recurrent training costs, and general overhead.  Compensation for these costs under the Agreement is based on a pre-agreed model attached as Exhibit B to the Agreement, which calculates the actual cost payment based on specified units of

measure, such as "Aircraft Months," "Months," or "Block Hours" of operation. "Block Hours" represent the number of hours between the time an aircraft leaves the departure gate and the time it arrives at the arrival gate.

19.   "Pass Through Costs" are defined in Article 3, Section A(ii) of the Agreement to include specific, highly variable operating costs for which Delta assumes the risk of price and volume fluctuations by compensating Freedom based on the actual costs incurred each month rather than a fixed payment based on the number of Aircraft Months, Months, or Block Hours.   These Pass Through Costs included, for example, landing fees, insurance, fuel, glycol and de-icing services, catering costs, and certain other matters.

20.   Article 3, Section A(i) of the Agreement provides that, at all times during the term of the Agreement, Freedom's Base Rate Costs, on a unit basis and taken as a whole, shall not exceed the Base Rate Costs of any other Delta Connection carrier operating similarly-configured aircraft.   Similarly, Article 3, Section A(ii) of the Agreement provides that, at all times during the term of the Agreement, Freedom's Pass Through Costs, on a unit basis and taken as a whole, shall not exceed the Pass Through Costs of any other Delta Connection carrier operating similarly-configured aircraft.

21.    Article 3, Section A(i) of the Agreement further provides that, at all times during the term of the Agreement, Freedom's Base Rate Costs, on a unit basis and taken as a whole, shall not exceed the Base Rate Costs Freedom, or any affiliate of Freedom, charged to any other code share partner for similarly-configured aircraft.  Similarly, Article 3, Section A(ii) of the Agreement provides that, at all times during the term of the Agreement, Freedom's Pass Through Costs, on a unit basis and taken as a whole, shall not exceed the Pass Through Costs Freedom, or any affiliate of Freedom, charged to any other code share partner for similarly-configured aircraft.

22.    Following Delta's merger with Northwest Airlines in October 2008, Pinnacle began operating CRJ-200 50-seat regional aircraft as a Delta Connection carrier.  Pinnacle had previously operated these aircraft as a Northwest Airlink regional carrier prior to the Delta/Northwest merger.

23.    Pinnacle has been operating the 50-seat regional aircraft as a Delta Connection carrier since October 2008.

### FREEDOM'S FAILURE TO MAINTAIN THE LOWEST DIRECT OPERATING COSTS, AND THE RESULTING HARM TO DELTA

24.    Pinnacle's CRJ-200 and Freedom's ERJ-145 aircraft are similarly configured.  Each is configured to carry 50 passengers with no first class cabin. The aircraft are used interchangeably on regional routes.

- 7 -

25.    Although the Pinnacle and Freedom code share agreements are not identical, Delta has calculated the total Base Rate Costs (as defined in the Agreement) charged by Pinnacle and Freedom for their operation of 50-seat regional aircraft in the Delta Connection program for the purpose of determining whether Freedom is in compliance with its obligation pursuant to Article 3, Section A(i) that its Base Rate Costs taken as a whole shall not exceed the Base Rate Costs of any other carrier within the Delta Connection program operating similarly-configured aircraft.    The calculation was based on information received directly from Pinnacle and Freedom and based on adjustments made in response to input from Defendants.    The calculation on an aggregated cost per Block Hour basis reflects a fair and accurate comparison between the Base Rate Costs, taken as a whole, charged by Pinnacle and Freedom for their operation of 50-seat regional aircraft in the Delta Connection program.

26.    Based on Delta's calculation, Pinnacle's Base Rate Costs for the 50-seat regional aircraft for 2009 average substantially less per Block Hour than Freedom's Base Rate Costs for similarly-configured aircraft for 2009.

27.    Because Freedom is required under the Agreement to have the lowest Base Rate Costs of any Delta Connection carrier operating similarly-configured

aircraft, Freedom was not and is not entitled to payments exceeding those made or that will be made to Pinnacle during 2009.

28.    From January 1, 2009 through March 30, 2009, Delta paid Freedom Base Rate Costs as invoiced.  Delta, therefore, overpaid Freedom from January through March 2009 in an amount estimated to exceed $5 million.

29.    Damages resulting from overpayments to Freedom continue to accrue because Defendants refuse to comply with the requirement that Freedom's Base Rate Costs shall not exceed those of any other carrier operating similarly-configured aircraft within the Delta Connection program.  In fact, Defendants not only have persistently refused to lower Freedom's Base Rate Costs to match those of Pinnacle, but also have pressed Delta for increases in Freedom's Base Rate Costs.

30.    On May 21, 2009, after at least two in-person meetings and numerous other discussions of Freedom's noncompliance with Article 3, Section A of the Agreement, Delta provided Defendants with formal notice, pursuant to Article 11, Section C of the Agreement, that they were in material breach of the Agreement because Pinnacle's Base Rate Costs were lower than Freedom's.  Article 11, Section C of the Agreement states that Delta has the right to terminate the Agreement if Defendants fail to cure a material breach within 30 days after

receiving a formal demand for such cure. On May 21, 2009, Delta demanded that Defendants cure their material breach of the Agreement within 30 days, or by June 22, 2009, by lowering Freedom's Base Rate Costs to, or below, those of Pinnacle.

31.     At the same time, Delta informed Defendants that because Freedom had been charging Delta Base Rate Costs that were higher than Pinnacle's Base Rate Costs since January 1, 2009, Delta was entitled to recoup any overpayments.

32.     Defendants have made clear that they have no intention of curing their breach of the Agreement. In a letter dated June 18, 2009, Defendants stated that "there has not been a breach of the Agreement, much less a material breach," that "the Pinnacle and Freedom agreements are so different as to render them incomparable," and that "Freedom disputes the amount that Delta claims that it is owed by Freedom."

### DEFENDANTS' FAILURE TO PROVIDE INFORMATION ABOUT BASE RATE COSTS PAID TO OTHER CODE SHARE PARTNERS

33.     On May 21, 2009, in addition to notifying Defendants of their material breach of the Agreement, Delta asked Defendants for information about Base Rate Costs and Pass Through Costs charged to other code share partners for similarly-configured aircraft, so that Delta could verify that the Base Rate Costs and Pass Through Costs Freedom charges to Delta do not exceed the Base Rate Costs or Pass Through Costs Freedom, or any affiliate of Freedom, charges to

- 10 -

other code share partners. Delta is entitled to this information under Article 3, Section I of the Agreement.

34.    Defendants have failed to provide Delta with the requested information about their agreements with other code share partners for the operation of similarly-configured aircraft.

## COUNT I

### DECLARATORY JUDGMENT
**Delta has the right to terminate the Agreement.**

35.    Delta incorporates paragraphs 1-34 as though fully set forth here.

36.    The Agreement is a valid and binding contract between the parties.

37.    Delta has substantially performed under the Agreement.

38.    The Agreement requires that Freedom be the lowest cost carrier among Delta Connection carriers operating similarly-configured aircraft.

39.    Since at least January 1, 2009, Freedom's Base Rate Costs have exceeded the Base Rate Costs, taken as a whole, of at least one other carrier within the Delta Connection program operating similarly-configured aircraft. Defendants are, therefore, in material breach of the Agreement.

40.    Delta is being harmed by Defendants' breach of the Agreement.

41.    Defendants refuse to cure their breach of the Agreement.

42.    Pursuant to Article 11, Section C of the Agreement, Delta has the right to terminate the Agreement if Defendants fail to cure a material breach within 30 days after receiving a formal demand for such cure.  Delta provided Defendants with notice of the material breach on May 21, 2009, but Defendants failed to cure the breach by June 22, 2009.

43.    Delta wishes to exercise its right to terminate the Agreement immediately.

44.    There is an actual and justiciable controversy between Delta and Defendants regarding Delta's right to terminate the Agreement and to demand reimbursement for overpayments made to Freedom.

45.    A declaratory judgment resolving these issues will be effective in terminating the controversy between the parties.

### COUNT II

### DECLARATORY JUDGMENT & INJUNCTIVE RELIEF
**Delta is entitled to information about Base Rate Costs and Pass Through Costs paid to Defendants' other code share partners.**

46.    Delta incorporates paragraphs 1-45 as though fully set forth here.

47.    Article 3, Section A(i) of the Agreement provides that, at all times during the term of the Agreement, Freedom's Base Rate Costs charged to Delta shall not exceed Freedom's Base Rate Costs charged to any other code share

partner for similarly-configured aircraft. Similarly, Article 3, Section A(ii) of the Agreement provides that, at all times during the term of the Agreement, Freedom's Pass Through Costs charged to Delta shall not exceed Freedom's Pass Through Costs charged to any other code share partner for similarly-configured aircraft.

48. On May 21, 2009, as part of the annual rate setting process required by the Agreement, Delta asked Defendants for information about Base Rate Costs charged to other code share partners for similarly-configured aircraft so that Delta could verify that the Base Rate Costs Freedom charges to Delta do not exceed the Base Rate Costs Freedom, or any affiliate of Freedom, charges to other code share partners. Similarly, Delta requested all other information sufficient to document Defendants' compliance with Article 3, Section A.

49. Defendants have failed to provide Delta with the information Delta requested and is entitled to under Article 3, Section I of the Agreement.

50. There is an actual and justiciable controversy between Delta and Defendants regarding Delta's right to obtain information about Defendants' agreements with other code share partners.

51. A declaratory judgment resolving this issue will be effective in terminating the controversy between the parties.

52.    In addition to a declaratory judgment, and because it has no adequate remedy at law, Delta also asks the Court to enter an order directing Defendants to produce immediately to Delta the information Delta requested from Defendants concerning their agreements with other code share partners, and all other information sufficient to document Defendants' compliance with Article 3, Section A.

## COUNT III

### BREACH OF CONTRACT
**Failure to be the lowest cost Delta Connection carrier.**

53.    Delta incorporates paragraphs 1-52 as though fully set forth here.

54.    Article 3, Section A of the Agreement requires that Freedom charge Delta Base Rate Costs that do not exceed the Base Rate Costs of any other Delta Connection carrier operating similarly-configured aircraft.

55.    Since at least January 1, 2009, Freedom has charged Delta Base Rate Costs that exceed the Base Rate Costs charged by Pinnacle, which operates similarly-configured 50-seat regional aircraft within the Delta Connection program.  Defendants are, therefore, in material breach of Article 3, Section A of the Agreement.

56.    Delta has been damaged by Defendants' breach of Article 3, Section A of the Agreement because it has overpaid Freedom for its Base Rate Costs.

57.     Upon information and belief, Delta's estimated damages as a result of Defendants' breach of the Agreement between January 1, 2009 and March 30, 2009 exceed $5 million, and damages continue to accrue.

58.     As a result of Defendants' breach of the Agreement, Delta is entitled to recover damages in an amount to be proven at trial.

WHEREFORE, Delta prays that:

(1) The Court enter a declaratory judgment in favor of Delta, declaring that Delta has the right to terminate the Agreement as a result of Defendants' material breaches, and that Delta has the right to seek reimbursement of excess payments to Freedom;

(2) The Court enter a declaratory judgment in favor of Delta, declaring that Delta is entitled to information from Defendants about their agreements with other code share partners;

(3) The Court enter an order directing Defendants to produce immediately to Delta the information Delta requested from Defendants concerning their agreements with other code share partners, and all other information sufficient to document Defendants' compliance with Article 3, Section A;

(4) The Court enter a judgment in favor of Delta in the amount of the damages Delta has incurred as a result of Defendants' breaches of the Agreement;

(5) That Delta recover from Defendants its expenses of litigation, including its attorneys' fees; and

(6) That Delta recover such other and additional relief as the Court deems just and appropriate.

Respectfully submitted, this 19th day of August, 2009.

Catherine M. O'Neil
Georgia Bar No. 553714
David E. Meadows
Georgia Bar No. 500352
Joseph P. Rockers
Georgia Bar No. 611220
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100

Counsel for Plaintiff
Delta Air Lines, Inc.

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 1 9 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| DELTA AIR LINES, INC. )<br><br>Plaintiff, )<br>v. )<br><br>MESA AIR GROUP, INC., and )<br>FREEDOM AIRLINES, INC. )<br><br>Defendants. )<br> ) | CIVIL ACTION FILE<br>NO. 1-09-CV-2267 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **COMPLAINT**

will be served upon counsel this day via hand delivery:

    G. Lee Garrett, Jr.
    David M. Monde
    Jones Day
    1420 Peachtree Street, N.E.
    Atlanta, Georgia  30309

This 19th day of August, 2009.

_____
Catherine M. O'Neil
Georgia Bar No. 553714

ORIGINAL

JS44 (Rev. 1/08 NDGA)    **CIVIL COVER SHEET**    1 09 - CV - 2267

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Delta Air Lines, Inc., a Delaware corporation

## DEFENDANT(S)

Mesa Air Group, Inc., a Nevada corporation, and Freedom Airlines, Inc., a Nevada corporation

TCB

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Fulton County, Georgia
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Maricopa County, Arizona
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Catherine M. O'Neil
David E. Meadows
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
404-572-4600
coneil@kslaw.com

**ATTORNEYS** (IF KNOWN)

G. Lee Garrett, Jr.
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT PLAINTIFF

☐ 2 U.S. GOVERNMENT DEFENDANT

☐ 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)

☑ 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|---|
| | ☐ 1 | ☑ 1 | CITIZEN OF THIS STATE | ☐ 4 | ☑ 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| | ☑ 2 | ☐ 2 | CITIZEN OF ANOTHER STATE | ☑ 5 | ☐ 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| | ☐ 3 | ☐ 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐ 6 | ☐ 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 ORIGINAL PROCEEDING  ☐ 2 REMOVED FROM STATE COURT  ☐ 3 REMANDED FROM APPELLATE COURT  ☐ 4 REINSTATED OR REOPENED  ☐ 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)  ☐ 6 MULTIDISTRICT LITIGATION  ☐ 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 2201 and 28 U.S.C. 1332 Complaint for Declaratory Judgment, Injunctive Relief and Breach of Contract

**(IF COMPLEX, CHECK REASON BELOW)**

☐ 1. Unusually large number of parties.

☐ 2. Unusually large number of claims or defenses.

☐ 3. Factual issues are exceptionally complex

☐ 4. Greater than normal volume of evidence.

☐ 5. Extended discovery period is needed.

☐ 6. Problems locating or preserving evidence

☐ 7. Pending parallel investigations or actions by government.

☐ 8. Multiple use of experts.

☐ 9. Need for discovery outside United States boundaries.

☐ 10. Existence of highly technical issues and proof.

**CONTINUED ON REVERSE**

| FOR OFFICE USE ONLY | | | | |
|---|---|---|---|---|
| RECEIPT # | AMOUNT $ | APPLYING IFP | MAG. JUDGE (IFP) | |
| JUDGE | MAG. JUDGE | (Referal) | NATURE OF SUIT | CAUSE OF ACTION |

TCB    190    28:2201 dj

# VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK'**
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 151 MEDICARE ACT
- [ ] 160 STOCKHOLDERS' SUITS
- [x] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- [ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 440 OTHER CIVIL RIGHTS
- [ ] 445 AMERICANS with DISABILITIES - Employment
- [ ] 446 AMERICANS with DISABILITIES - Other

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 463 HABEAS CORPUS- Alien Detainee
- [ ] 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- [ ] 510 MOTIONS TO VACATE SENTENCE
- [ ] 530 HABEAS CORPUS
- [ ] 535 HABEAS CORPUS DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS - Filed Pro se
- [ ] 555 PRISON CONDITION(S) - Filed Pro se

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- [ ] 550 CIVIL RIGHTS - Filed by Counsel
- [ ] 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 R.R. & TRUCK
- [ ] 650 AIRLINE REGS.
- [ ] 660 OCCUPATIONAL SAFETY / HEALTH
- [ ] 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT. RELATIONS
- [ ] 730 LABOR/MGMT. REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 820 COPYRIGHTS
- [ ] 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- [ ] 830 PATENT

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 430 BANKS AND BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC.
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURAL ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- [ ] 410 ANTITRUST
- [ ] 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- [ ] ARBITRATION (Confirm / Vacate / Order / Modify)

(Note: Mark underlying Nature of Suit as well)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

# VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23    DEMAND $ Exceeds $5MM

JURY DEMAND  [ ] YES  [x] NO  (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

---

# VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE_____    DOCKET NO._____

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- [ ] 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- [ ] 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- [ ] 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- [ ] 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO._____, WHICH WAS DISMISSED. This case [ ] IS [ ] IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

_____    _____
SIGNATURE OF ATTORNEY OF RECORD                   DATE  8/19/09