PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Joshua M. Fried
Maria A. Bove

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 AUTHORIZING THE DEBTORS TO ASSUME CERTAIN AIRCRAFT ENGINE LEASES, AS AMENDED, WITH WILLIS LEASE FINANCE CORPORATION AND WEST ENGINE FUNDING LLC**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 Authorizing the Debtors to Assume Certain Aircraft Engine Leases, as Amended, With Willis Lease Finance Corporation and WEST Engine Funding LLC* (the "Motion") filed herewith by Mesa Air Group Inc., and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), will be held before the Honorable Martin Glenn, at the

---

[1]  The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

United States Bankruptcy Court, Alexander Hamilton Customs House, One Bowling Green, New York, New York, 10004, Courtroom 501, **at 10:00 a.m. on May 13, 2010**.

    **PLEASE TAKE FURTHER NOTICE** that any response or objection to the relief sought in the Motion must be filed with the Bankruptcy Court and served upon: (i) the chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York 10004, Courtroom 501; (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111 (Attn:  Debra I. Grassgreen and Joshua M. Fried), and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn: Maria A. Bove), attorneys for the Debtors; (iii) Mesa Air Group, Inc., Law Department 410 N. 44th St. Suite 700, Phoenix, Arizona 85008, (Attn:  Brian S. Gillman, Esq.); (iv) Stephen H. Gross, Esq., Counsel for Willis Lease Finance Corporation and WEST Engine Funding LLC, 35 Old Sport Hill Road, Easton, CT 06612-2134; (v) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY  10004 (Attn: Andrea B. Schwartz); (vi) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Brett H. Miller, Lorenzo Marinuzzi, and Todd M. Goren), attorneys for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases; and (vii) any person or entity with a particularized interest in the subject matter of the Motion, on or before **May 6, 2010**.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE.**

Dated: April 12, 2010
      New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Debra Grassgreen*
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al*., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF THE DEBTORS FOR ORDER PURSUANT TO SECTIONS
363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 6004 AND 6006 AUTHORIZING THE DEBTORS TO ASSUME CERTAIN
AIRCRAFT ENGINE LEASES, AS AMENDED, WITH WILLIS LEASE
<u>FINANCE CORPORATION AND WEST ENGINE FUNDING LLC</u>**

Mesa Air Group, Inc. ("<u>Mesa</u>") and certain of its direct and indirect subsidiaries

in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"<u>Debtors</u>"), hereby file this motion (the "<u>Motion</u>") and respectfully represent as follows:

<u>**Background**</u>

1.      On January 5, 2010 (the "<u>Petition Date</u>"), the Debtors each commenced

with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

"Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee").  The members of the Committee are:  Bombardier, Inc.; Embraer-Empresa Brasilieira de Aeronáutica S.A.; IHI Corporation; U.S. Bank National Association; AT&T Capital Services; Wilmington Trust Company; the Air Line Pilots Association; and Association of Flight Attendants (ex-officio member).

## Jurisdiction

4.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      Pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, the Debtors seek entry of an order (the "Proposed Order") in the form attached hereto as **Exhibit A** authorizing and approving the assumption by the Debtors of certain of the Debtors' existing aircraft engine leases, as amended (the "Assumed Leases") with Willis Lease Finance Corporation ("Willis") and WEST Engine Funding LLC ("WEST"), on the terms and conditions set forth herein.  Certain commercially sensitive information is contained in the

Assumed Leases; true copies of the Assumed Leases, with such commercially sensitive

information redacted, are attached hereto as **Exhibit B**.[2]

<u>**Terms and Conditions of Assumption of the Assumed Leases**</u>

6.      Prior to the Petition Date, Mesa Air Group, Inc. and Mesa Airlines, Inc.

(together, "<u>Mesa Airlines</u>") leased six (6) spare engines (the "<u>Engines</u>") in which Willis or

WEST was the interest holder, as follows (the "<u>Leases</u>"):

| Lessor | Lessee/Debtor | Mfr. Serial Number |
|---|---|---|
| Willis Lease Finance Corporation | Mesa Airlines, Inc. | PCE-123005 |
| Willis Lease Finance Corporation | Mesa Airlines, Inc. | PCE-AG0074 |
| Wells Fargo Bank Northwest, NA, as owner trustee for the benefit of WEST Engine Funding LLC | Mesa Air Group, Inc. | CAE312234 |
| Wells Fargo Bank Northwest, NA, as owner trustee for the benefit of Willis Lease Finance Corporation | Mesa Airlines, Inc. | 194264 |
| Wells Fargo Bank Northwest, NA, as owner trustee for the benefit of Willis Lease Finance Corporation | Mesa Airlines, Inc. | 194223 |
| Wells Fargo Bank Northwest, NA, as owner trustee for the benefit of Willis Lease Finance Corporation | Mesa Airlines, Inc. | CAE311498 |

7.      The Lease governing engine serial number ("<u>ESN</u>") 194223 has been

deemed rejected by the Debtors pursuant to the *Order (I) Authorizing Debtors to (A) Reject*

*Leases Relating to Certain Aircraft and Other Related Equipment; (B) Abandon Certain*

*Aircraft, Engines, and Other Related Equipment; (C) Transfer Title to Certain Aircraft, Engines,*

*and Other Related Equipment, and (D) Satisfy the Surrender and Return Requirements Under*

*the Bankruptcy Code and (II) Approving Related Notices and Procedures* dated February 23,

---

[2] Unredacted copies of the Assumed Leases will be provided to the Committee's professionals.

2010 (the "Rejection Procedures Order"), and the Debtors also have elected to reject the lease governing ESN CAE311498 (each of ESN 194223 and ESN CAE311498 are referred to herein as the "Rejected Engines" and the related leases as the "Rejected Leases"). The Debtors will return the two Rejected Engines subject to the Rejected Leases in accordance with the terms of the Rejection Procedures Order.

8.     Each of the remaining four (4) engines (the "Remaining Engines") is governed by an Assumed Lease and is critical to the Debtors' continuing operations while the Debtors seek to reorganize.

9.     By this Motion, the Debtors seek to assume the Assumed Leases on the following terms and conditions:[3]

- **Apportionment of Heavy Maintenance Costs; Use of Reserves.** Upon assumption of Assumed Leases ESN CAE312234 and ESN 194264 only, the costs of heavy maintenance on the Remaining Engines shall be apportioned as follows: Willis and WEST shall bear the costs of all prepetition heavy maintenance, and the Debtors shall bear the costs of all postpetition heavy maintenance on the Remaining Engines as may be required under the applicable Assumed Leases. As to each such Remaining Engines, such apportionment shall be applied to all costs arising from future heavy maintenance events during the term of the applicable Assumed Lease (if any), including without limitation the costs of the next heavy maintenance event under such Assumed Lease, if any, which costs shall be apportioned between, on the one hand, WEST (as to ESN CAE312234) or Willis (as to ESN 194264) and, on the other hand, the Debtors according to prepetition and postpetition use, respectively. Existing and future reserve accounts under each Assumed Lease shall be applied to satisfy only the Debtors' postpetition maintenance obligations in respect of the Remaining Engines, including as related to return conditions, with the balance of any such reserves to be applied to the Debtors' ongoing payment obligations under the applicable Assumed

---

[3] The following description of the terms and conditions is a summary. In the event of any conflict between this summary, on the one hand, and the Assumed Leases or the Proposed Order, on the other hand, the Assumed Leases or the Proposed Order, as applicable, shall control.

Lease, except in the event of default other than an existing event of default.[4]

- **General Unsecured Claim for Prepetition Use Fees**.  Any claim for unpaid prepetition Use Fees (if any) shall be a general unsecured claim. Willis and WEST shall each be entitled to file a proof of claim asserting a general unsecured claim for such amounts, and the Debtors' rights to object to the amount of such claims are reserved.

- **Early Termination Rights**.  In the event of a conversion of the bankruptcy cases to chapter 7, the Debtors, in their sole discretion, shall have the right to terminate any of the Assumed Leases upon ten (10) days' written notice, upon which termination the Debtors and the estates shall have no further liability or obligations under such terminated Assumed Lease(s) except with respect to the continuing provision of insurance, security, storage and proper return of the Remaining Engines.

- **Payment Due Dates**.  Payments shall be due under the Assumed Leases as follows: (a) basic rent shall be due and payable on the 5th of the month for such month's possession and use of the Remaining Engines; and (b) reserves shall be due and payable on the 15th of the month in arrears for actual use during the prior month.

- **Rights Under Rejected Leases Reserved**.  The foregoing terms shall not apply to the Rejected Leases, and all of the parties' respective rights under the Rejection Procedures Order and sections 365 and 502 of the Bankruptcy Code with respect of such Rejected Leases are reserved.

- **Substitute Starter for ESN 194223**.  The Debtors shall provide to Willis one serviceable substitute starter for ESN 194223 and work in good faith to return equipment/records related to the Rejected Engines as soon as practicable.

## Basis for Relief

10.     As of January 25, 2010, the Debtors maintain a fleet of approximately 178 aircraft, consisting of 48 CRJ-200s, 20 CRJ-700s, 38 CRJ-900s, 36 ERJ-145s, and 16 Dash-8, and 20 Beech 1900s.  Substantially all of the aircraft and aircraft engines in the Debtors' fleet are subject to leases or financing arrangements.

---

[4] The Debtors believe that there is not significant arrearage for prepetition Use Fees (as defined in the Assumed Leases) with respect to ESN 123005 and ESN AG0074.

11. Since the Petition Date, the Debtors and their advisors have explored and implemented various strategies to economize both the Debtors' overall flying operations and the size of their fleet of aircraft and aircraft engines so as to maximize profitability and enhance operational liquidity.

12. As part of the Debtors' economization of their ongoing fleet, the Debtors and various aircraft engine lessors have engaged in discussions regarding their ongoing business relationships. As a result of these discussions with Willis and WEST, the Debtors have agreed to assume the Assumed Leases effective upon the Court's entry of the Proposed Order.

13. The Debtors have assessed various aircraft engine lease and purchase options, and they have determined that assuming the Assumed Leases pursuant to section 365 of the Bankruptcy Code is in their best interest. Based on the foregoing considerations, the Debtors seek Court authorization to enter into and to assume the Assumed Leases.

## **Applicable Authority**

14. The Debtors request that this Court authorize and approve, pursuant to section 365(a) of the Bankruptcy Code, the Debtors' assumption of the Assumed Leases. Section 365 of the Bankruptcy Code empowers a debtor-in-possession, subject to Court approval, to assume executory contracts of the debtor. 11 U.S.C. § 365(a).

15. In considering a motion to assume or reject an executory contract, a court "should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if [the contract] would be beneficial or burdensome to the estate." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Nostas Associates v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 21 (2d Cir. 1996); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996).

16.     A debtor's decision to assume an executory contract based on its business judgment will generally not be disturbed "absent a showing of bad faith or abuse of business discretion."  *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd John Forsyth Co., Inc. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995).  Upon finding that the debtor has exercised its sound business judgment in determining that the assumption of an agreement is in the best interests of the debtor, its creditors and all parties in interest, the court should approve the assumption under section 365(a) of the Bankruptcy Code.  *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *Gucci*, 193 B.R. at 417.

17.     Assumption of the Assumed Leases will provide significant benefits to the estates in that assumption will enable the Debtors to retain the aircraft engines that are critical to the Debtors' operations over the next several months.  Pursuant to that certain *Stipulation Pursuant to Section 1110(b) of the Bankruptcy Code Between Debtors and Willis Lease Finance Corporation and WEST Engine Funding LLC, Regarding the Extension of the Automatic Stay With Respect to Certain Spare Engines of the Debtors* filed under seal with the Court on March 5, 2010 (the "1110(b) Stipulation"), the Debtors have agreed to pay postpetition arrearage under the Assumed Leases in order to secure a 30-day extension of the automatic stay.  However, Willis and WEST would not agree to a longer term extension of the stay except on terms that include assumption of the Assumed Leases.

18.     The assumption of the Assumed Leases will not increase the administrative burdens on the estate in the event of a liquidation of the Debtors because, as set forth above, there will be no prepetition amounts owed by the Debtors to Willis and WEST under the proposed terms and conditions of assumption.

19.     Given the benefits provided by assumption of the Assumed Leases and the limited additional burdens on the estate, the Debtors believe that the relief requested is in the best interests of their estates, and well within the exercise of their sound business judgment. Accordingly, the Debtors' assumption of the Assumed Leases should be approved.

20.     To the extent that the agreements and transactions contemplated by the Assumed Leases constitutes the use of property of the estate other than in the ordinary course of business, the Debtors seek authority to enter into and perform such agreements and transactions under section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

21.     Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); s*ee also Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1066 (2d Cir. 1983) (same); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (noting that standard for determining a section 363(b) motion is a "good business reason"); *Official Committee of Subordinated Bondholders v. In re Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (upholding debtor's decision so long as it was attributable to "any rational business purposes").

22.     The business judgment rule shields a debtor's management from judicial second-guessing.  *In re Johns-Manville Corp*., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").  The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Resources, Inc*., 147 BR. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

23.     The Debtors' entry into and assumption of the Assumed Leases will permit the Debtors to continue to operate their aircraft fleet during these chapter 11 cases on terms beneficial to the Debtors, and will enhance the prospect of a successful reorganization. Based upon the foregoing, the Debtors submit that the assumption of the Assumed Leases is an exercise of sound business judgment, is in the best interest of the Debtors and their estates, and should be approved.

### Relief Under Bankruptcy Rule 6004(h)

24.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors further request that the order approving the Assumed Leases be made effective immediately, and that the Court waive the automatic ten-day stay that would otherwise apply under Bankruptcy Rule 6004(h).

**Notice**

25.     Notice of this Motion has been given by facsimile or electronic mail, where such contact information is available, to (i) the United States Trustee; (ii) counsel for Willis and WEST; (iii) counsel for the Committee; and (iv) parties in interest listed on the Master Service List (as defined in the Court's Order establishing notice procedures and a master service list, entered January 15, 2010).  In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper and enter an Order substantially in the form of **Exhibit A** attached hereto.

Dated:   April 12, 2010
         New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Debra Grassgreen*
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

## (Proposed Order)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 AUTHORIZING THE DEBTORS TO ASSUME CERTAIN AIRCRAFT ENGINE LEASES, AS AMENDED, WITH WILLIS LEASE FINANCE CORPORATION AND WEST ENGINE FUNDING LLC

Upon the motion (the "Motion")[2] of Mesa Air Group, Inc. and those of its subsidiaries that are debtors and debtors in possession herein (collectively, the "Debtors"), for an order, pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, seeking authority to assume certain of the Debtors' aircraft engine leases, as amended (the "Assumed Leases"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

ORDERED that the relief requested in the Motion is hereby granted to the extent provided below; and it is further

ORDERED that the Assumed Leases, and all the terms and conditions thereof, are approved in all respects; and it is further

ORDERED that, pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume, and are hereby deemed to assume, the Assumed Leases; and it is further

ORDERED that, pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtors are authorized to enter into agreements contemplated by and on the terms set forth in the Assumed Leases and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions that may be reasonably necessary or appropriate to implement the Assumed Leases, and perform all obligations contemplated thereunder, including without limitation the payment of postpetition heavy maintenance costs (if any), postpetition utilization, and postpetition Use Fees (as defined in the Assumed Leases) with respect to the Remaining Engines to the extent required under paragraphs 6(b)(i), 18(c), and Article XV or XVI (as applicable) of the Assumed Leases; and it is further

ORDERED that any claim for unpaid prepetition Use Fees (if any) owed under the Assumed Leases shall be a general unsecured claim. Willis and WEST shall each be entitled to file a proof of claim asserting a general unsecured claim for such amounts, and the Debtors' rights to object to the amount of such claims are reserved; and it is further

ORDERED that, notwithstanding any contrary provision in the Amended Leases, in the event of a conversion of the bankruptcy cases to chapter 7, the Debtors, in their sole discretion, shall have the right to terminate any or all of the Assumed Leases upon ten (10) days' written notice, upon which termination the Debtors and the estates shall have no further liability or

obligations under such terminated Assumed Lease(s) except with respect to the continuing provision of insurance, security, storage, and proper return of the Remaining Engines; and it is further

ORDERED that the foregoing terms shall not apply to the Rejected Leases, and all of the parties' respective rights under sections 365 and 502 of the Bankruptcy Code are reserved with respect to the Rejected Leases; and it is further

ORDERED that, subject to the provisions of this Order, the Debtors shall perform their obligations under the Assumed Leases; *provided however*, that any rights of Willis and/or WEST (a) to demand monetary cure for existing defaults other than as set forth in the 1110(b) Stipulation; (b) to assert administrative expense claims with respect to the Assumed Leases as a result of (i) unpaid prepetition Use Fees; or (ii) a cross default to the Rejected Leases; or (c) to assert defaults based upon the Debtors' financial condition or bankruptcy cases are hereby waived; and it is further

ORDERED that the Debtors shall provide to Willis one serviceable substitute starter for ESN 194223 and work in good faith to return equipment and records related to the Rejected Engines as soon as practicable, to the extent not already accomplished; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Assumed Leases and all amendments thereto, (ii) to resolve any disputes arising under or related to the Assumed Leases, except as otherwise provided therein and (iii) to interpret, implement and enforce the provisions of this Order.

Dated:  New York, New York
        _____, 2010

                                    _____
                                    HONORABLE MARTIN GLENN
                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(Assumed Leases)**

# LEASE ESN 194264

## AIRCRAFT ENGINE LEASE AGREEMENT

This Aircraft Engine Lease Agreement ("Lease") is made and entered into as of April 29, 2005 by and between WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee ("Lessor"), for the benefit of Willis Lease Finance Corporation ("Beneficiary") and MESA AIRLINES, INC. ("Lessee").

### W I T N E S S E T H :

**ARTICLE I      Agreement to Lease:**

Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described in ARTICLE IV herein, subject to the terms and provisions of this Lease. This Lease is entered into pursuant to, and by this reference incorporates all the terms and conditions of, the General Terms Engine Lease Agreement dated as of April 11, 2005 (the "GTA") between Lessor and Lessee. Capitalized terms used but not defined herein shall have the respective meanings given such terms in the GTA. In the event of any conflict in terms between the GTA and this Lease, the terms of this Lease shall control.

**ARTICLE II      Lease Term:**

The term of this Lease will be one hundred twenty (120) months (or ten years), commencing April 29, 2005 (the "Delivery Date") and continuing through and including April 28, 2015 (the "Lease Term").

**ARTICLE III      Delivery/Redelivery Locations:**

The Equipment will be delivered to Lessee FOB Phoenix, Arizona, and upon termination of the Lease, the Equipment will be redelivered to Lessor FOB as designated by Lessor within the North American continent. *To coordinate return of the Engine and its Engine records Lessee should contact Lessor's Contract Administration Department, at 415-331-5281.*

kwiktag* 020 234 974

**ARTICLE IV**　　　　**Equipment:**

| Engine Make | Engine Model | Engine Serial No. | Total Time Since New | Total Cycles Since New | Engine Container Serial No. |
|---|---|---|---|---|---|
| General Electric | CF34-8C5 | 194264 | 0 | 0 | 251 |

Equipment includes, together with the Engine and Engine Shipping Container listed above, (i) all Engine parts and attachments, and (ii) all Engine records, including a copy of the disk profile attached as Appendix A hereto, in the possession of Lessor requested by Lessee and all Engine records generated by Lessee during the Lease Term.

The Engine described above is rated in excess of 750 horsepower. The Engine described above has a maximum take-off thrust of 14,510 pounds.

**ARTICLE V**　　　　**Agreed Value of Equipment:**　　(See Schedule 1)

**ARTICLE VI**　　　　**Lease Payments:**　(See Schedule 1)

**ARTICLE VII**　　　　**Intentionally deleted.**

**ARTICLE VIII**　　　　**Payments Due on Delivery:**　　　　(See Schedule 1)

**ARTICLE IX**　　　　**Maintenance Costs:**

Lessee to be responsible for equipment maintenance and repair costs in accordance with the GTA and this Lease.

**ARTICLE X**　　　　**Advance Payment:**　　　　(Intentionally deleted)

**ARTICLE XI**　　　　**Beneficiary:**

Beneficiary shall mean Willis Lease Finance Corporation. Beneficiary's Notice address is:

> 2320 Marinship Way, Suite 300
> Sausalito, CA 94965

Attn: Counsel
Phone: 415-331-5281
Fax: 415-331-5167

**ARTICLE XII**  **Payment Account:**

| | |
|---|---|
| Bank: | City National Bank |
| | San Francisco, CA 94111 |
| ABA Routing No.: | 122 016 066 |
| Swift Code: | CINAUS6L |
| Account No.: | 0432633411 |
| Account Name: | Willis Lease Finance Corporation |

**ARTICLE XIII**  **Lessor's Lender:**

Lessor's Lender shall mean Fortis Bank [Nederland] N.V., as Security Agent. Lessor's Lender's Notice address is:

Coolsingel 93
3012 AE Rotterdam
The Netherlands
Attn: Maarten H. Schipper
Telephone No.: 31 10 401 9522
Fax No.: 31 10 401 9529

With a copy to:
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL 60601
Attn: Dean N. Gerber
Telephone No.: 312-609-7500
Fax No.: 312-609-5005

**ARTICLE XIV**  **Renewal Option:**

Subject in each case to Lessor's then agreement on terms and conditions, upon ninety (90) days prior written notice and provided no Event of Default has occurred and is continuing under the GTA and the Lease, Lessee may renew the Lease, with Lessor's agreement, for *3 years at the rate specified in Article VI of the Lease, adjusted in accordance with the formula set forth in Schedule 1 for changes in the three year U.S. Treasury Note yield from the Delivery Date to the end of Lease Term specified in Article II of this Lease* (the "Renewal Term").

**ARTICLE XV**  **Amendments to GTA for this Lease Only:**

Section 18(b) and (c) of the GTA shall be amended by deleting them and replacing them with the following:

"(b) At the time the Equipment is returned to Lessor, the time remaining on the Engine, in hours or cycles, whichever is the governing parameter, to the next shop visit for engine heavy maintenance of each module shall be not less than three quarters of the hours, or cycles, accumulated between such shop visits. The interval for this calculation will be based upon the Lessee's mean time between shop visits for engine heavy maintenance of the Engine, as determined at the conclusion of the Lease Term. The Engine may be delivered in a lesser condition as set forth in (c) below but shall have a minimum test cell Interturbine Temperature ("ITT") Redline Margin at Take off power Ground Power Assurance Check of 10 degrees C, and in no event shall any life-limited component have less than 3,000 cycles remaining to its respective life limit current at the time of return.

(c) Upon return of the Equipment, Lessee shall make a payment to Lessor to compensate Lessor for any difference between the condition of the Equipment as outlined in the first sentence in (b) above, and the condition of the Equipment at the time of return. With respect to the Engine, Lessee shall compensate Lessor if the number of hours or cycles on the Engine since the most recent shop visit for engine heavy maintenance at the time of return is less than three quarters of the time remaining to the next shop visit for heavy maintenance of all modules as outlined in (b) above. The per-hour or per-cycle charge payable to Lessor in respect of such difference shall be the shop visit cost estimated by an FAA approved overhaul facility (acceptable to Lessor) for engine heavy maintenance of the Engine at the time of redelivery divided by the mean time (in hours or cycles) between scheduled shop visits for engine heavy maintenance as set forth in (b) above, but excluding costs for life-limited parts. In addition, Lessee shall compensate Lessor at the conclusion of the Lease Term for life used on life-limited parts during the Lease Term, as determined by the difference between the life limited parts sheets for the Engine on the Delivery Date less 25% of the delivered value and the life limited parts sheets for the Engine at the time of return. The amount of such compensation shall be calculated by reference to the applicable manufacturer's parts price catalogue current at the time of redelivery."

## ARTICLE XVI    Use Fees Modifications:

Notwithstanding anything to the contrary set forth in Sections 4(b)(ii), 4(f) and 6(c) of the GTA, for this Lease only, Lessee will not be required to pay utilization charges ("Use Fees") except Lessee shall be required to make monthly Use Fee payments thereafter, in accordance with Schedule 1, if Lessee posts a "Loss" for three (3) consecutive quarters. A "Loss" shall be defined as "Net Income (Loss) for the Period" of less than zero on the Lessee's interim financial statements as presented in accordance with generally accepted accounting principles and in conformance with SEC requirements for Quarterly Reports on Form 10-Q and/or Annual Reports on Form 10-K, as applicable. In all cases, extraordinary items shall be excluded from the calculation.

If Lessee is obligated to make monthly Use Fee payments, then Lessee shall be responsible to pay Lessor for Use Fees for all hours and cycles operated commencing with the later of the Delivery Date of the Engine or last engine heavy maintenance for the Engine. Such payment shall be made within five (5) days after the determination that the Lessee is obligated to make periodic Use Fee payments. Thereafter, Lessee shall continue to make such payments monthly in arrears, based on the actual usage of the Engine in the preceding month, such payment to be made on or before the 10th day of the close of the relevant month.

Should the Lessee have made Use Fee payments to Lessor and thereafter the Lessee returns to operating profits for four consecutive quarters, the Lessee will no longer be required to pay Use Fees and so long as no Event of Default has occurred and is continuing, the Lessor will return to the Lessee any accumulated and unapplied Use Fees, subject to the aforementioned conditions of profitability within ten (10) days. Thereafter, should the Lessee return to three quarters of Loss, Use Fees shall be paid as set forth on Schedule 1 hereto.

During the period of time in which a General Electric ("GE") "Maintenance Cost Per hour" maintenance program is implemented by the Lessee with respect to the Engine, the above-referenced provisions related to Use Fees shall be of no force and effect; provided, that, Lessor receives (i) a copy of such program, and (ii) an executed agreement in form and substance satisfactory to Lessor from GE whereby GE shall guarantee to Lessor that the Engine shall meet the return conditions set forth in Section 18 of the GTA, as amended by this Lease, notwithstanding that there may have been an Event of Default by Lessee under the Lease or a default by Lessee under the maintenance agreement with GE.

## ARTICLE XVII    Additional Insureds:

Additional Insureds:

    Willis Lease Finance Corporation
    2320 Marinship Way, Suite 300
    Sausalito, CA  94965
    Attn: General Counsel
    Tel: (415) 331-5281
    Fax: (415) 331-5167

    Wells Fargo Bank Northwest, N.A.
    (not in its individual capacity but solely as owner trustee)
    299 South Main Street, 12th Floor
    Salt Lake City, UT  84111
    Attn: Corporate Trust Dept.
    Tel: (801) 246-5630
    Fax: (801) 246-5053

    Fortis Bank [Nederland] N.V., as Security Agent

Coolsingel 93
3012 AE Rotterdam
The Netherlands
Attn: Maarten H. Schipper
Tel: 31 10 401 9522
Fax: 31 10 401 9529

National City Bank, as Administrative Agent
Attention: Christos Kytzidis, Vice President
Specialized Banking Group
One South Broad Street
13th Floor, Locator 01-5997
Philadelphia, PA 19107
Tel: (267) 256-4092
Fax: (267) 256-4001

Loss Payees/Contract Parties:

Fortis Bank [Nederland] N.V., as Security Agent
Coolsingel 93
3012 AE Rotterdam
The Netherlands
Attn: Maarten H. Schipper
Tel: 31 10 401 9522
Fax: 31 10 401 9529

Wells Fargo Bank Northwest, N.A.
(not in its individual capacity but solely as owner trustee)
299 South Main Street, 12th Floor
Salt Lake City, UT 84111
Attn: Corporate Trust Dept.
Tel: (801) 246-5630
Fax: (801) 246-5053

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee**

By: _____
Name: _Val T. Orton_
Title: _Vice President_

**MESA AIRLINES, INC.**

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee**

By: _____
Name: _____
Title: _____

**MESA AIRLINES, INC.**

By: _____
Name: George Murnane III
Title:   Executive Vice President & CFO

**Schedule 1**
to Aircraft Engine Lease Agreement


# REDACTION

# REDACTION

Lease MesaAir 194264

# REDACTION

**Appendix A**

[insert LLP Disk Sheet]

# Willis Lease Finance
### C O R P O R A T I O N

| Engine: | 194264 | |
|---|---|---|

## Aircraft information

| Model and type of engine | CF34-8C5 | Aircraft registration | N/A |
|---|---|---|---|
| Power rating of engine | -8C5 | At date of aircraft | N/A |

## Limiting part information

| | | Fan Disk |
|---|---|---|
| Limiting Part | | |
| Cycles Remaining | | 5000 |

| Engine at date | 23-Dec-2004 | Position of engine on aircraft | N/A |
|---|---|---|---|
| Date of last installation / shop input | 23-Dec-2004 | | |

## Limiting inspection information

| Description | | Remaining |
|---|---|---|
| Hour Limit N/A | | Hour Limit N/A |

| Current TSN of aircraft | 0 | Current TSN of aircraft | N/A |
|---|---|---|---|
| Current CSN of engine | 0 | | |

| Cycle Limit N/A | | Cycle Limit N/A |
|---|---|---|
| Engine Preservation | | 363 days |

| TSN of engine at last installation / shop input | 0 | TSN of aircraft at last installation | N/A |
|---|---|---|---|
| CSN of engine at last installation / shop input | 0 | CSN of aircraft at last installation | N/A |

## Last shop visit Information

| Time since last SV | N/A |
|---|---|
| Last Repair Agency | N/A |
| Last SV Workscope | N/A |

| Module Name | Part Name | Part # | Serial # | | | Limit |
|---|---|---|---|---|---|---|
| **Fan Module** | | 412110SG02 | GE-E194264 | | | |
| | Fan Disk | 411411RG02 | IH6907AA | 0 | 0 | 5000 |
| | Fan Drive Shaft | 411876TP01 | IH2160W | 0 | 0 | 9000 |
| **Compressor Rotor Module** | | 415377ZG01 | GE-E194264 | | | |
| | Stg 1-2 Compr/Rotor Blisk | 423816PP01 | GUHTR6DK | 0 | 0 | 9000 |
| | HPC Fwd Shaft | 412819TG05 | TMTYW043 | 0 | 0 | 9000 |
| | Stg 3 Compr/Rotor Blisk | 412915RP02 | GUHTN62N | 0 | 0 | 9000 |
| | HPC Rotor Vortex Seal | 412974GP01 | EJW63112 | 0 | 0 | 9000 |
| | Stg 4-10 Compr/Rotor Aft Shaft Spool | 412975CXG03 | GVW05413 | 0 | 0 | 9000 |
| | CDP Rotating Seal | 412972BPG5 | XAE75115 | 0 | 0 | 9000 |
| **HPT Rotor Module** | | 412419GG03 | GE-E194264 | | | |
| | Inner Balance Piston Rotating Air Seal | 412419RG03 | XACF5G07 | 0 | 0 | 6000 |
| | Outer Balance Piston Rotating Air Seal | 412419DPG2 | FGKR613A | 0 | 0 | 6000 |
| | Stg 1 Fwd Cooling Plate | 412573QP01 | NCE2NG7Y | 0 | 0 | 6000 |
| | Stg 1 Disk | 412572PXG03 | GATHEH0K | 0 | 0 | 6000 |
| | Outer Torque Coupling | 412573TP02 | XAE0583G2 | 0 | 0 | 6000 |
| | Stg 2 Disk | 412572XPG4 | GATHEH11 | 0 | 0 | 6000 |
| | Stg 2 Aft Cooling Plate | 412419RPG3 | NCE6713Y | 0 | 0 | 6000 |
| **LPT Rotor Module** | | 411679GG04 | GE-E194264 | | | |
| | Stg 3 Disk | 411679XP01 | IH5654UF | 0 | 0 | 9000 |
| | Stg 3-4 Seal | 411771BPG1 | WES364CK | 0 | 0 | 9000 |
| | Stg 4 Disk | 411771XPG4 | IH452AL | 0 | 0 | 9000 |
| | Stg 4-5 Seal | 411771TP01 | WES1855GR | 0 | 0 | 9000 |
| | Rear Shaft | 411876ZP01 | IH6370F | 0 | 0 | 9000 |
| | Stg 5 Disk | 411771XP02 | IH5930AT | 0 | 0 | 9000 |
| | Stg 5-6 Seal | 411771WP01 | IHGR9CU | 0 | 0 | 9000 |
| | Stg 6 Disk | 411771TP02 | IH6058A | 0 | 0 | 9000 |

Authorizing Signature

Although the information in this report has been obtained from sources which Willis Lease Finance Corporation believes to be reliable, any such information may be incomplete or condensed.
All data and information included in this report is for information purposes only, and is not intended as official documentation with respect to the purchase of this engine.

Date

# Willis Lease Finance CORPORATION

| Engine: | 194264 |
|---|---|
| Model and type of engine | CF34-8C5 |
| Power rating of engine | 8C5 |

| Engine at date | |
|---|---|
| Date of last installation / shop input | 23-Dec-2004 |
| Current TSN of engine | 0 |
| Current CSN of engine | 0 |
| TSN of engine at last installation / shop input | 0 |
| CSN of engine at last installation / shop input | 0 |

### Aircraft information

| | |
|---|---|
| Aircraft registration | N/A |
| At date of aircraft | N/A |
| Position of engine on aircraft | N/A |
| Current TSN of aircraft | N/A |
| Current CSN of aircraft | N/A |
| TSN of aircraft at last installation | N/A |
| CSN of aircraft at last installation | N/A |

### Limiting part information

| Limiting Part | Fan Disk |
|---|---|
| Cycles Remaining | 5000 |

### Limiting inspection information

| Description | Limit | Remaining |
|---|---|---|
| Hour Limit N/A | Hour Limit N/A | |
| Cycle Limit N/A | Cycle Limit N/A | |
| Engine Preservation | 21-Dec-05 | 365 days |

### Last shop visit information

| | |
|---|---|
| Time since last SV | N/A |
| Last Repair Agency | N/A |
| Last SV Workscope | N/A |

### Static Structures

| Part Name | Part Number | Serial | | | Limit | Remaining |
|---|---|---|---|---|---|---|
| Front Frame and Bearing Support Assy | 4145154013 | SPK042UE | 0 | 0 | 80000 | 80000 |
| Combustion Chamber Assy | 4180727G04 | GEYKR485 | 0 | 0 | 41100 | 41100 |
| Engine Rear Mount Link | 4126T40G01 | SAM1083C | 0 | 0 | 160000 | 160000 |
| Engine Mount Link Assy | 4126T40G01 | WAGW0456 | 0 | 0 | 160000 | 160000 |
| Front Frame Yoke | 4138T20G01 | SAM10068 | 0 | 0 | 80000 | 80000 |
| Fwd Mount Clevis | 4126T12G04 | FEK018AA | 0 | 0 | 80000 | 80000 |
| Fwd Mount Clevis | 4126T12G04 | TEH111AA | 0 | 0 | 160000 | 160000 |
| Compressor Case | 1802342G03 | C0AD9126 | 0 | 0 | 160000 | 160000 |
| Shoulder Bolt | 4105T93P02 | SNAR2255 | 0 | 0 | N/A | N/A |
| Shoulder Bolt | 4105T93P02 | SNAR2001 | 0 | 0 | 160000 | 160000 |
| Shoulder Bolt | 4126T92P02 | SNAP0176 | 0 | 0 | 160000 | 160000 |
| Shoulder Bolt | 4126T91PP2 | SNAP0172 | 0 | 0 | 160000 | 160000 |
| Shoulder Bolt | 4126T47P02 | RCMA0595 | 0 | 0 | 160000 | 160000 |
| Rear Engine Mount | 4131T91G01 | C0AS9591 | 0 | 0 | 160000 | 160000 |
| Fan Frame XXV | 4128T00G12 | CANB1297 | 0 | 0 | 160000 | 160000 |
| Rear Main Mount Rng | 4131T16G01 | SMG2411D | 0 | 0 | N/A | 160000 |

Authorizing Signature

Date

Although the information in this report has been obtained from sources which Willis Lease Finance Corporation believes to be reliable, any such information may be incomplete or condensed. All data and information included in this report is for information purposes only, and is not intended as official documentation with respect to the purchase of this engine.

**AMENDMENT NO. 1 TO THE ENGINE LEASE AGREEMENT**
**ESN 194264**
**(this "Agreement")**

April 7, 2010

Mesa Airlines, Inc.
Attn: Legal Department
410 N. 44th Street, Suite 700
Phoenix, Arizona 85008

Re:    Aircraft Engine Lease Agreement dated as of April 29, 2005 (the "Lease") between Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee, ("Lessor"), for the benefit of Willis Lease Finance Corporation ("Beneficiary"), and Mesa Airlines, Inc. ("Lessee"), with General Terms Agreement dated as of April 11, 2005 (the "GTA") between the Lessor and the Lessee, which Lease was recorded by the FAA on May 19, 2005 and assigned Conveyance No. ZZ032594, covering one General Electric model number CF34-8C5 aircraft engine bearing manufacturer's serial number 194264.

Ladies and Gentlemen:

Please refer to the above-referenced Lease. Lessee and Lessor hereby agree that upon entry of an order of the United States Bankruptcy Court having jurisdiction over the Lessee's pending Chapter 11 proceedings approving and authorizing (i) the assumption of the Lease and (ii) the entry into this Agreement, the Lease shall be amended effective as of January 5, 2010 (the "Petition Date") as follows:

1) **Article II (Lease Term)** is amended by deleting "April 28, 2015" and replacing it with "August 31, 2012".

2) **Article XIV (Renewal Option)** is amended by deleting the text thereof and replacing it with "Not Applicable."

3) **Article XV (Amendments to GTA for this Lease Only)** is amended by deleting the text thereof in its entirety and replacing it with the following:

Section 4(b) of the GTA shall be amended by deleting it and replacing it with the following:

"(b)    For each Lease, Lessee will pay Lessor (i) in advance on the fifth (5th) day of each succeeding calendar month of the Lease Term following the Delivery Date, the Monthly Rent for such succeeding month, and (ii) to the extent required by the applicable Lease, on the fifteenth (15th) day of each succeeding calendar month, the Use Fee based on the actual hours

ESN 194264

and cycles of operation in such preceding month (or in the case of the first such month, since the Delivery Date)."

Sections 6(b), (c) and (e) of the GTA shall be amended by deleting them and replacing them with the following:

"(b)    During the Lease Term, Lessee will service, repair, overhaul, and maintain the Engine subject to subsection (c) below, in accordance with Lessee's FAA approved maintenance program so as to keep the Engine in good operating condition as when delivered to Lessee, reasonable wear and tear excepted.  Such maintenance will include all shop visit work, performed by a repair station acceptable to Lessee and Lessor, as well as line maintenance and replacement of components and parts as may be required, and shall be performed in the same manner and with the same care as shall be the case with similar engines owned by or operated by or on behalf of Lessee without discrimination.  In addition, Lessee will replace any loss to or repair any damage to the Engine, regardless of cause.  Lessee will advise Lessor and obtain Lessor's approval before commencing any non-routine repairs, such approval not to be unreasonably delayed or denied.  All maintenance required by this Section 6(b) shall be performed at Lessee's sole expense (subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA); provided that in the case of engine heavy maintenance occurring during or at the conclusion of the Lease Term, the cost of such engine heavy maintenance shall be paid as follows: (i) Lessee shall at the time of such heavy engine maintenance pay for the portion of the cost of such engine heavy maintenance proportionate to the greater of (x) the number of cycles expended on and after January 5, 2010 through and including the date of the applicable shop visit divided by the number of cycles expended from the Delivery Date through and including the date of the applicable shop visit, and (y) the number of hours expended on and after January 5, 2010 through and including the date of the applicable shop visit divided by the number of hours expended from the Delivery Date through and including the date of the applicable shop visit (the "Lessee's Share"), and (ii) Lessor (a) shall at the time of heavy engine maintenance pay for the cost of such heavy engine maintenance less the Lessee's Share and (b) shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, the amount paid by Lessor pursuant to the preceding clause (ii)(a), and a sum equal to the Use Fee payments owed to Lessor in accordance with Section 4(b) of the GTA, if any, with respect to utilization of the Engine during the Prepetition Lease Term."

"(c)    Lessee shall be entitled to apply accumulated Use Fees to pay for Lessee's Share pursuant to any of Sections 6(b)(i) or 18(c)(i) of (i) off-wing shop visit work that is performed during the Lease Term or upon or after Lessee's return of the Equipment to the extent required due to normal

Exhaust Gas Temperature ("EGT") margin deterioration or other indications of unacceptable performance caused by normal extended operation, provided however that Lessee shall not be entitled to the use of accumulated Use Fees if the Engine deterioration was caused by foreign object damage or by operational abuse and misuse including, but not limited to, incorrect or unauthorized settings or overspeed and component failure; (ii) for Engine performance restoration to comply with the return conditions set forth in Section 18; and (iii) for life used on life-limited parts during the Lease Term. If, as set forth above, the Lessee is entitled to the use of accumulated Use Fees, Lessee must first, upon Engine removal, provide Lessor with the reason for removal and the initial workscope. Upon completion of the repair, Lessee must provide to Lessor the full records package (evidencing the teardowns and inspection findings, repair details and work completed) along with the maintenance repair station invoice after the shop visit repair. Lessee shall have the right to apply Use Fees only if no Event of Default has occurred and is continuing, other than any Events of Default existing as of March 31, 2010 set forth in Sections 19(a)(i), (vi), (vii), or (ix). In the event that Use Fees are not sufficient to pay for such maintenance and repair, Lessee and Lessor shall each pay its respective share of any deficiency in accordance with Section 6(b)(i) or 18(c)(i), as applicable. The obligations, covenants and liabilities of Lessee under this provision arising prior to return of the Equipment to Lessor shall continue in full force and effect notwithstanding any termination arising out of an Event of Default under any Lease, Related Lease or otherwise, until such time as Beneficiary has received all sums and performances to which it is entitled under any Lease or Related Lease."

"(e)    If any modification or repair to any Equipment is required to be made during the Lease Term by reason of any Airworthiness Directive, regulation or advisory circular promulgated by the FAA (collectively, a "Mandatory Change"), Lessee shall make such Mandatory Change at Lessee's expense and there shall be no abatement of Monthly Rent for any out-of-service period required to perform any Mandatory Change, provided however, the following shall apply in the case of any Mandatory Change which can only be made through a shop visit to repair or replace any part of the Equipment (a "Qualifying Mandatory Change"):

(i)    Lessee's obligation to pay for the incremental cost of making such Qualifying Mandatory Change (over and above the costs of any maintenance event or heavy engine shop visit for which Lessee would otherwise be liable) shall be limited to Lessee's Share of such total incremental cost, and Lessor shall bear the cost of the balance of such incremental cost of such Qualifying Mandatory Change;

ESN 194264

(ii) In lieu of paying the costs described in the preceding clause (i), either Lessor or Lessee may terminate the Lease Term prior to the otherwise applicable expiration date, provided that Lessee shall nonetheless be obligated to meet all other maintenance and return conditions for the Engine."

Sections 18(b) and (c) of the GTA shall be amended by deleting them and replacing them with the following:

"(b) At the time the Equipment is returned to Lessor, the time remaining on the Engine, in hours or cycles, whichever is the governing parameter, to the next shop visit for engine heavy maintenance of each module shall not be less than three quarters of the hours, or cycles, accumulated between such shop visits. The interval for this calculation will be based upon the Lessee's mean time between shop visits for engine heavy maintenance of the Engine, as determined at the conclusion of the Lease Term. The Engine may be delivered in a lesser condition as set forth in (c) below but shall have a minimum test cell Interturbine Temperature ("ITT") Redline Margin at Take off power Ground Power Assurance Check of 10 degrees C, and in no event shall any life-limited component have less than 3,000 cycles remaining to its respective life limit current at the time of return.

(c) Subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA, upon return of the Equipment, Lessee shall be liable for a payment to Lessor to compensate Lessor for any difference between the condition of the Equipment as outlined in the first sentence in (b) above, and the condition of the Equipment at the time of return. With respect to the Engine (subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA), Lessee shall compensate Lessor if the number of hours or cycles on the Engine since the most recent shop visit for engine heavy maintenance at the time of return is less than three quarters of the time remaining to the next shop visit for engine heavy maintenance of all modules as outlined in (b) above. The per-hour or per-cycle charge payable to Lessor after application of any Use Fees to the extent permitted by Section 6(c) of this GTA in respect of such difference shall be the shop visit cost estimated by an FAA approved overhaul facility (acceptable to Lessor) for engine heavy maintenance of the Engine at the time of redelivery divided by the mean time (in hours or cycles) between scheduled shop visits for engine heavy maintenance as set forth in (b) above, but excluding costs for life-limited parts. In addition (subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA), Lessee shall compensate Lessor at the conclusion of the Lease Term for life used on life-limited parts during the Lease Term, as determined by the difference between the life-limited parts sheets value for the Engine on the Delivery Date less 25% of the delivered value and the life limited parts sheets for the Engine at the time of return. The

amount of such compensation shall be calculated by reference to the applicable manufacturer's parts price catalogue current at the time of redelivery. All compensation contemplated by this Section 18(c) shall be paid as follows: (i) upon the return of the Engine, and subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA, Lessee shall make a payment to Lessor equal to the proportion of such compensation allocable to utilization of the Engine on and after January 5, 2010 (the "<u>Postpetition Lease Term</u>"), and (ii) Lessor shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, a sum equal to the Use Fee payments owed to Lessor, if any, in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Prepetition Lease Term."

4) **Article XVI (Use Fee Modifications)** is amended by deleting the text thereof in its entirety and replacing it with the following:

"Utilization charges shall accrue throughout the Lease Term based on all utilization of the Engine from the Delivery Date and thereafter as set forth in Article VI of this Lease ("<u>Use Fees</u>"), provided that (i) Lessee shall make monthly Use Fee payments to Lessor in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Postpetition Lease Term, and (ii) Lessor shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, a sum equal to the Use Fee payments owed to Lessor, if any, in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Prepetition Lease Term."

All other terms and conditions as currently set forth under the Lease remain the same.

Please signify your agreement to the above by executing and forwarding by email and send four (4) originals by overnight courier to:

Dana Skinner
Willis Lease Finance Corporation, as Servicer
773 San Marin Drive, Suite 2215
Novato, CA 94998

Please also email your signature to <u>dskinner@willislease.com</u>. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

*[signatures on following page]*

ESN 194264

Very truly yours,

**WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION,**
not in its individual capacity but solely as
Owner Trustee

By: _____
Name:___ **Val T. Orton** ___
Title:___ **Vice President** ___

Accepted:

**MESA AIRLINES, INC.**

By:_____
Name:_____
Title:_____

ESN 194264

Very truly yours,

Accepted:

**WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION,**
not in its individual capacity but solely as
Owner Trustee

**MESA AIRLINES, INC.**

By:_____
Name:_____
Title:_____

By:_____
Name:_____ Michael Lotz____
Title:_____ President_____

ESN 194264

# LEASE ESN 312234

COUNTERPART NO. _3_ OF 4 SERIALLY NUMBERED, MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT, IF ANY, THAT THIS LEASE CONSTITUTES CHATTEL PAPER UNDER THE UCC, NO SECURITY INTEREST IN THIS LEASE MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

## AIRCRAFT ENGINE LEASE AGREEMENT

This Aircraft Engine Lease Agreement ("Lease") is made and entered into as of July _19_, 2002 by and between WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee ("Lessor") for the benefit of WILLIS LEASE FINANCE CORPORATION ("Beneficiary") and MESA AIR GROUP, INC. ("Lessee").

### WITNESSETH:

**ARTICLE I**     **Agreement to Lease:**

Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described in ARTICLE IV herein, subject to the terms and provisions of this Lease. This Lease is entered into pursuant to, and by this reference incorporates all the terms and conditions of, General Terms Engine Lease Agreement dated as of July 4, 2002 (the "GTA") among Lessor, Beneficiary and Lessee. Capitalized terms used but not defined herein shall have the respective meanings given such terms in the GTA. In the event of any conflict in terms between the GTA and this Lease, the terms of this Lease shall control.

**ARTICLE II**     **Lease Term:**

The term of this Lease will be one-hundred twenty (120) months (or ten years), commencing July _19_, 2002 (the "Delivery Date") and continuing through and including July _18_, 2012 (the "Lease Term").

**ARTICLE III**     **Delivery/Redelivery Locations:**

The Equipment will be delivered to Lessee FOB Louisville, Kentucky or as otherwise mutually agreed by Lessor and Lessee in writing, and upon termination of the Lease, the Equipment will be redelivered to Lessor FOB as designated by Lessor within the North American Continent. *To coordinate return of the Engine and its Engine records Lessee should contact Lessor's Contract Administration, at 415-331-5281.*

**ARTICLE IV**     Equipment:

| Engine Make | Engine Model | Engine Serial No. | Total Time Since New | Total Cycles Since New | Engine Stand Serial No. |
|---|---|---|---|---|---|
| Rolls Royce Allison | 3007A1/3 | 312234 | 0 | 0 | M-57129 |

Equipment includes, together with the Engine and Engine Stand listed above, (i) all Engine parts and attachments, and (ii) all Engine records, including a copy of the disk profile attached as Appendix A hereto, in the possession of Lessor requested by Lessee and all Engine records generated by Lessee during the Lease Term.

The Engine described above is rated in excess of 750 horsepower. The Engine described above has 7,580 lbs. of thrust.

**ARTICLE V**     **Agreed Value of Equipment:**     (See Schedule 1)

**ARTICLE VI**     **Lease Payments:**     (See Schedule 1)

**ARTICLE VII**     **Estimated Daily Flight Hours:**  TBD

**ARTICLE VIII**     **Payments Due on Delivery:**     (See Schedule 1)

**ARTICLE IX**     **Maintenance Costs:**

Lessee to be responsible for equipment maintenance and repair costs in accordance with the GTA and this Lease.

**ARTICLE X**     **Advance Payment:**     (Intentionally deleted)

**ARTICLE XI**     **Payment Account:**

    City National Bank
    San Francisco, California  94111
    ABA #:  122 016 066
    Account Name:  Willis Lease Finance Corporation
    Account #:  0432 633 411

**ARTICLE XII**      Lessor's Lender:

Lessor's Lender shall mean Fortis Bank [Nederland] N.V., as Administrative Agent. Lessor's Lender's address is:

> Fortis Bank [Nederland] N.V., as Administrative Agent
> Coolsingel 93
> 3012 AE Rotterdam
> The NetherlandsAttn: Maarten H. Schipper
> Tel: 31-10-401-9522
> Fax: 31-10-401-9529

With a copy to:

> Vedder, Price, Kaufman & Kammholz
> Attention: Dean Gerber
> 222 North LaSalle Street, Suite 2600
> Chicago, Illinois 60601
> Tel: 312-609-7500
> Fax: 312-609-5005

**ARTICLE XIV**      Amendments to GTA for this Lease Only:

<u>Section 18(b) and (c)</u> of the GTA shall be amended by deleting them and replacing them with the following:

"(b) At the time the Equipment is returned to Lessor, the time remaining on the Engine, in hours or cycles, whichever is the governing parameter, to the next shop visit for engine heavy maintenance of each module shall be not less than three quarters of the hours, or cycles, accumulated between such shop visits. The interval for this calculation will be based upon the Lessee's mean time between shop visits for engine heavy maintenance of the Engine, as determined at the conclusion of the Lease Term. The Engine may be delivered in a lesser condition as set forth in (c) below but shall have a minimum test cell ITT Redline Margin at T0-1 of 10 degrees C as measured by Rolls Royce for this model, and in no event shall any life-limited component have less than 3,000 cycles remaining.

(c) Upon return of the Equipment, Lessee shall make a payment to Lessor to compensate Lessor for any difference between the condition of the Equipment as outlined in the first sentence in (b) above, and the condition of the Equipment at the time of return. With respect to the Engine, Lessee shall compensate Lessor if the number of hours or cycles on the Engine since the most recent shop visit for engine heavy maintenance at the time of return is less than three quarters of the time remaining to the next shop visit for heavy maintenance of all modules as outlined in (b) above. The per-hour or per-cycle charge payable to Lessor in respect of such difference shall be the shop visit cost estimated by an FAA approved overhaul facility (reasonably acceptable to Lessor) for engine heavy maintenance of the Engine at the time of redelivery divided by the mean time (in hours or cycles) between scheduled shop visits for engine heavy maintenance as set forth in (b) above, but excluding costs for life-limited parts. In

addition, Lessee shall compensate Lessor at the conclusion of the Lease Term for life used on life-limited parts during the Lease Term, as determined by the difference between the disk sheets for the Engine on the Delivery Date less 25% of the delivered value and the disk sheets for the Engine at the time of return. The amount of such compensation shall be calculated by reference to the applicable manufacturer's parts price catalogue current at the time of redelivery."

## ARTICLE XV      Use Fees Modifications:

Notwithstanding anything to the contrary set forth in Sections 4(b)(ii), 4(f) and 6(c) of the GTA, for this Lease only, Lessee will not be required to pay utilization charges ("Use Fees") except Lessee shall be required to make monthly Use Fee payments thereafter, in accordance with Schedule 1, if Lessee posts a "Loss" for two (2) consecutive quarters. A "Loss" shall be defined as "Net Income (Loss) for the Period" of less than zero on the Lessee's interim financial statements as presented in accordance with generally accepted accounting principles and in conformance with SEC requirements for Quarterly Reports on Form 10-Q and/or Annual Reports on Form 10-K, as applicable;provided, however, in all cases, extraordinary items shall be excluded from the calculation.

If Lessee is obligated to make monthly Use Fee payments, then Lessee shall be responsible to pay Lessor for Use Fees for all hours and cycles operated commencing with the later of the Delivery Date of the Engine or last engine heavy maintenance shop visit for the Engine. Such payment shall be made within ten (10) days after the determination that the Lessee is obligated to make periodic Use Fee payments. Thereafter, Lessee shall continue to make such payments monthly in arrears, based on the actual usage of the Engine in the preceding month, such payment to be made on or before the 10th day of the close of the relevant month.

Should the Lessee have made Use Fee payments to Lessor and thereafter the Lessee returns to operating profits for four consecutive quarters, the Lessee will no longer be required to pay Use Fees and so long as no Event of Default has occurred and is continuing, the Lessor will return to the Lessee any accumulated and unapplied Use Fees, subject to the aforementioned conditions of profitability. Thereafter, should the Lessee return to three quarters of Loss excluding extraordinary items, Use Fees shall be paid as set forth on Schedule 1 hereto.

During the period of time in which a Rolls Royce ("RR") "power by the hour" maintenance program is implemented by the Lessee with respect to the Engine, the above-referenced provisions related to Use Fees shall be of no force and effect; provided, that, Lessor receives (i) a copy of such program, and (ii) an executed agreement in form and substance satisfactory to Lessor from RR whereby RR shall guarantee to Lessor that the Engine shall meet the return conditions set forth in Section 18 of the GTA, as amended by this Lease, notwithstanding that there may have been an Event of Default by Lessee under the Lease or a default by Lessee under the maintenance agreement with RR.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, not in its individual capacity but solely as Owner Trustee

By: _~Val SL~_____
Name: __Val T. Orton_____
Title: __Vice President_____

**MESA AIR GROUP, INC.**

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

**WELLS FARGO BANK NORTHWEST,**
**NATIONAL ASSOCIATION,** not in its
Individual capacity but solely as Owner
Trustee

MESA AIR GROUP, INC.

By: _____
Name: _____
Title: _____R.B. STONE_____
          CHIEF FINANCIAL OFFICER

By: _____
Name: _____
Title: _____

Schedule 1
to Aircraft Engine Lease Agreement




REDACTION

**Schedule 1**
to Aircraft Engine Lease Agreement


Omitted from FAA filing counterpart
as containing confidential financial information.

## Appendix A

LLP Disk Sheet

LLP Disk Sheet TBD

**AMENDMENT NO. 1 TO THE ENGINE LEASE AGREEMENT**
**ESN 312234**
**(this "Agreement")**

April 7, 2010

Mesa Air Group, Inc.
Attn: Legal Department
410 N. 44th Street, Suite 700
Phoenix, Arizona 85008

**Re:** Aircraft Engine Lease Agreement dated as of July 19, 2002 (the "Lease") between Wells
Fargo Bank Northwest, National Association, as lessor, and Mesa Air Group, Inc., as
lessee, with General Terms Engine Lease Agreement dated July 4, 2002 (the "GTA")
attached thereto, which was recorded by the FAA on July 25, 2002 and assigned
Conveyance No. II025970, as assigned and assumed by Engine 312234 First Transfer
Assignment and Assumption Agreement and Bill of Sale dated as of January 2, 2003
between Wells Fargo Bank Northwest, N.A., as owner trustee, as assignor, and Willis
Lease Finance Corporation ("Willis"), as assignee, which was recorded by the FAA on
February 11, 2003 and assigned Conveyance No. MM024457, as further assigned and
assumed by Engine or Beneficial Interest Transfer Certificate dated as of January 2, 2003
between Willis, as seller, and Willis Engine Funding LLC ("WEF"), as issuer, which was
recorded by the FAA on February 11, 2003 and assigned Conveyance No. MM024458, as
assigned and assumed by Engine 312234 Assignment and Assumption Agreement and
Bill of Sale dated as of January 2, 2003 between WEF, as assignor, and Wells Fargo
Bank Northwest, National Association, as owner trustee ("Lessor"), as assignee, which
was recorded by the FAA on February 11, 2003 and assigned Conveyance No.
MM024459, covering one Rolls Royce Allison model number 3007A1/3, aircraft engine
bearing manufacturer's serial number 312234.

Ladies and Gentlemen:

Please refer to the above-referenced Lease. Lessee and Lessor hereby agree that upon entry of
an order of the United States Bankruptcy Court having jurisdiction over the Lessee's pending
Chapter 11 proceedings approving and authorizing (i) the assumption of the Lease and (ii) the
entry into this Agreement, the Lease shall be amended effective as of January 5, 2010 (the
"Petition Date") as follows:

1) **Article II (Lease Term)** is amended by deleting the text thereof and replacing it with the
following:

> "The term of this Lease will commence on July 18, 2002 (the "Delivery Date")
> and will run through and including October 31, 2012 (the "Lease Term");
> provided that Lessee may terminate the Lease Term upon an earlier date subject
> to satisfaction of the following conditions: (i) the effectiveness of the termination

of the Delta Connection Agreement dated as of May 3, 2005 by and between Delta Airlines, Inc. and Freedom Airlines, Inc. (an affiliate of Lessee), (ii) Lessee providing Lessor with 180 days' advance written notice of its intent to terminate this Lease, and (iii) satisfaction of all other redelivery requirements set forth in this Lease."

2) **Article XIV (Amendments to GTA for this Lease Only)** is amended by deleting the text thereof and replacing it with the following:

Section 4(a) of the GTA shall be amended by deleting it and replacing it with the following:

"(a)     On the Delivery Date, Lessee will pay to Lessor an amount equal to the sum specified as the "total payment" in Article VIII of the applicable Lease. For each Lease, Lessee will pay Lessor (i) in advance on the fifth (5th) day of each succeeding calendar month of the Lease Term following the Delivery Date, the Monthly Rent for such succeeding month, and (ii) to the extent required by the applicable Lease, on the fifteenth (15th) day of each succeeding calendar month, the Use Fee based on the actual hours and cycles of operation in such preceding month (or in the case of the first such month, since the Delivery Date)."

Sections 6(b), (c) and (e) of the GTA shall be amended by deleting them and replacing them with the following:

"(b)     During the Lease Term, Lessee will service, repair, overhaul, and maintain the Engine subject to subsection (c) below, in accordance with Lessee's FAA approved maintenance program so as to keep the Engine in good operating condition as when delivered to Lessee, reasonable wear and tear excepted. Such maintenance will include all shop visit work, performed by a repair station acceptable to Lessee and Lessor, as well as line maintenance and replacement of components and parts as may be required, and shall be performed in the same manner and with the same care as shall be the case with similar engines owned by or operated by or on behalf of Lessee without discrimination. In addition, Lessee will replace any loss to or repair any damage to the Engine, regardless of cause. Lessee will advise Lessor and obtain Lessor's approval before commencing any non-routine repairs, such approval not to be unreasonably delayed or denied. All maintenance required by this Section 6(b) shall be performed at Lessee's sole expense (subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA); provided that in the case of engine heavy maintenance occurring during or at the conclusion of the Lease Term, the cost of such engine heavy maintenance shall be paid as follows: (i) Lessee shall at the time of such heavy engine maintenance pay for the portion of the cost of such engine heavy maintenance proportionate to the greater of (x) the number of cycles

ESN 312234

expended on and after January 5, 2010 through and including the date of the applicable shop visit divided by the number of cycles expended from the October 16, 2007, the date of the Engine's last shop visit, through and including the date of the applicable shop visit, and (y) the number of hours expended on and after January 5, 2010 through and including the date of the applicable shop visit divided by the number of hours expended from the October 16, 2007, the date of the Engine's last shop visit, through and including the date of the applicable shop visit (the "Lessee's Share"), and (ii) Lessor (a) shall at the time of heavy engine maintenance pay for the cost of such heavy engine maintenance less the Lessee's Share and (b) shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, the amount paid by Lessor pursuant to the preceding clause (ii)(a), and a sum equal to the Use Fee payments owed to Lessor in accordance with Section 4(b) of the GTA, if any, with respect to utilization of the Engine during the Prepetition Lease Term."

"(c)     Lessee shall be entitled to apply accumulated Use Fees to pay for Lessee's Share pursuant to any of Sections 6(b)(i) or 18(c)(i) of (i) off-wing shop visit work that is performed during the Lease Term or upon or after Lessee's return of the Equipment to the extent required due to normal Exhaust Gas Temperature ("EGT") margin deterioration or other indications of unacceptable performance caused by normal extended operation, provided however that Lessee shall not be entitled to the use of accumulated Use Fees if the Engine deterioration was caused by foreign object damage or by operational abuse and misuse including, but not limited to, incorrect or unauthorized settings or overspeed and component failure; (ii) for Engine performance restoration to comply with the return conditions set forth in Section 18; and (iii) for life used on life-limited parts during the Lease Term. If, as set forth above, the Lessee is entitled to the use of accumulated Use Fees, Lessee must first, upon Engine removal, provide Lessor with the reason for removal and the initial workscope. Upon completion of the repair, Lessee must provide to Lessor the full records package (evidencing the teardowns and inspection findings, repair details and work completed) along with the maintenance repair station invoice after the shop visit repair. Lessee shall have the right to apply Use Fees only if no Event of Default has occurred and is continuing, other than any Events of Default existing as of March 31, 2010 set forth in Sections 19(a)(i), (vi), (vii), or (ix). In the event that Use Fees are not sufficient to pay for such maintenance and repair, Lessee and Lessor shall each pay its respective share of any deficiency in accordance with Section 6(b)(i) or 18(c)(i), as applicable. The obligations, covenants and liabilities of Lessee under this provision arising prior to return of the Equipment to Lessor shall continue in full force and effect notwithstanding any termination arising out of an Event of Default under any Lease, Related Lease or otherwise, until such time as Beneficiary has

received all sums and performances to which it is entitled under any Lease or Related Lease."

"(e)    If any modification or repair to any Equipment is required to be made during the Lease Term by reason of any Airworthiness Directive, regulation or advisory circular promulgated by the FAA (collectively, a "Mandatory Change"), Lessee shall make such Mandatory Change at Lessee's expense and there shall be no abatement of Monthly Rent for any out-of-service period required to perform any Mandatory Change, provided however, the following shall apply in the case of any Mandatory Change which can only be made through a shop visit to repair or replace any part of the Equipment (a "Qualifying Mandatory Change"):

(i)    Lessee's obligation to pay for the incremental cost of making such Qualifying Mandatory Change (over and above the costs of any maintenance event or heavy engine shop visit for which Lessee would otherwise be liable) shall be limited to Lessee's Share of such total incremental cost, and Lessor shall bear the cost of the balance of such incremental cost of such Qualifying Mandatory Change;

(ii)    In lieu of paying the costs described in the preceding clause (i), either Lessor or Lessee may terminate the Lease Term prior to the otherwise applicable expiration date, provided that Lessee shall nonetheless be obligated to meet all other maintenance and return conditions for the Engine."

Section 18(b) and (c) of the GTA shall be amended by deleting them and replacing them with the following:

"(b)    At the time the Equipment is returned to Lessor, the time remaining on the Engine, in hours or cycles, whichever is the governing parameter, to the next shop visit for engine heavy maintenance of each module shall be not less than three quarters of the hours, or cycles, accumulated between such shop visits. The interval for this calculation will be based upon the Lessee's mean time between shop visits for engine heavy maintenance of the Engine, as determined at the conclusion of the Lease Term. The Engine may be delivered in a lesser condition as set forth in (c) below but shall have a minimum test cell ITT Redline Margin at T0-1 of 10 degrees C as measured by Rolls Royce for this model, and in no event shall any life-limited component have less than 3,000 cycles remaining.

(c)    Subject to application of any Use Fees to the extent permitted by Section 6(c) of this GTA, upon return of the Equipment, Lessee shall make a payment to Lessor to compensate Lessor for any difference between the condition of the Equipment as outlined in the first sentence in (b) above,

Lease Term"), and (ii) Lessor shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, a sum equal to the Use Fee payments owed to Lessor, if any, in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Prepetition Lease Term."

3) **Article XV (Use Fee Modifications)** is amended by deleting the text thereof in its entirety and replacing it with the following:

"Utilization charges shall accrue throughout the Lease Term based on all utilization of the Engine from the Delivery Date and thereafter as set forth in Article VI of this Lease ("Use Fees"), provided that (i) Lessee shall make monthly Use Fee payments to Lessor in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Postpetition Lease Term, and (ii) Lessor shall be entitled to a pre-petition general unsecured claim against Lessee which shall include, without limitation, a sum equal to the Use Fee payments owed to Lessor, if any, in accordance with Section 4(b) of the GTA with respect to utilization of the Engine during the Prepetition Lease Term."

ESN 312234

All other terms and conditions as currently set forth under the Lease remain the same.

Please signify your agreement to the above by executing and forwarding by email and send four (4) originals by overnight courier to:

Dana Skinner
Willis Lease Finance Corporation, as Servicer
773 San Marin Drive, Suite 2215
Novato, CA 94998

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,                                    Accepted:

**WELLS FARGO BANK NORTHWEST,**          **MESA AIR GROUP, INC.**
**NATIONAL ASSOCIATION, not in its**
**Individual capacity but solely as**
**Owner Trustee**


By:_____                    By:_____
Name:_____                    Name:_____
Title:_____                    Title:_____
                                             Michael Lotz
                                             President

ESN 312234

All other terms and conditions as currently set forth under the Lease remain the same.

Please signify your agreement to the above by executing and forwarding by email and send four (4) originals by overnight courier to:

Dana Skinner
Willis Lease Finance Corporation, as Servicer
773 San Marin Drive, Suite 2215
Novato, CA 94998

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,                                          Accepted:

**WELLS FARGO BANK NORTHWEST,**          **MESA AIR GROUP, INC.**
**NATIONAL ASSOCIATION, not in its**
**Individual capacity but solely as**
**Owner Trustee**

By: _____                    By: _____
Name: _____                    Name: _____
Title: _____Val T. Orton_____                 Title: _____
            Vice President

ESN 312234

# LEASE ESN AG0074

## ENGINE LEASE AGREEMENT

This Engine Lease Agreement is made as of September 10, 2009 by and between **WILLIS LEASE FINANCE CORPORATION** ("Lessor"), and **MESA AIRLINES, INC.,** a Nevada corporation whose address and principal place of business is at 410 North 44th Street, Suite 700, Phoenix, AZ 85008, ("Lessee").

This Lease Agreement refers to and incorporates herein the terms of the International Air Transport Association IATA Document No. 5016-00 Master Short-Term Engine Lease Agreement dated December 1, 2002 (*"Master Agreement"*). This Lease Agreement modifies the Master Agreement, and as modified constitutes a single contract applicable to the leasing of the Engine defined below. Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Engine described in Part 1 herein, subject to the terms and conditions of this Lease Agreement.

### Part I – Referenced Provisions

"N/A" denotes non-applicability:

| *1. Engine* (clause 2.3.1(i); annex 1, definition) | *2A+B. Engine Flight Hours (2A) and Engine Flight Cycles (2B) /Since Last Overhaul* (clause 2.3.1(ii); Annex 1, Definitions) |
|---|---|
| Manufacturer: Pratt & Whitney Canada<br>Engine Model: PW123, in bare configuration<br><br>Engine Serial Number: AG0074<br>Shipping Container S/N : Not serialized<br>MVP Bag: N/A<br>Serviceability Tag: EASA Form One with FAA Form 8130-3 with dual release<br>Horsepower: Rated 2500 equivalent shaft horsepower | Time Since New: 13,643<br>Time Since Overhaul: *<br>Cycles Since New: 15,925<br>Cycles Since Overhaul: *<br>    * See Block 13, Engine Documentation |
| *3A. Additional Conditions Precedent to Lessee's Obligations* (clause 2.3.1(iii))<br><br>a. Within nine (9) days of taking delivery of the Engine at the location specified in this Lease Agreement, and at Lessee's sole risk and expense, Lessee may perform a videoboroscope inspection of the Engine to confirm that it is in good serviceable condition in accordance with the applicable manufacturer's engine manual. If the Engine is determined to be in such good serviceable condition, Lessee shall sign the Acceptance of the Engine Package, unconditionally and irrevocably accepting the Engine for all purposes under this Lease Agreement. If the Engine is determined not to be in such good serviceable condition, then Lessee shall return the Engine to Lessor per Lessor's instructions and Lessee shall have no obligation to pay Rent or Use Fees for the Engine (but Lessee shall be responsible for performance of its other obligations under the Lease Agreement during the Term) provided Lessee (i) gives written notice to Lessor of such failure within nine (9) days of taking delivery of the Engine at the location specified in this | *4. Conditions Precedent Time Period* (clause 2.3.2)<br><br>N/A |

1

kwiktag®    011 107 984

Lease Agreement, (ii) does not use, or permit the use of, the Engine in flight operations and (iii) returns the Engine in the same condition as at delivery and otherwise in accordance with Clause 11.1 of the Lease Agreement ("Redelivery of Engine Package"). In such circumstances, the Term shall expire upon redelivery of the Equipment in accordance with Clause 11.1 and Lessor shall reimburse Lessee for the costs of shipment of the Engine to the location designated.

*3B. Additional Conditions Precedent to Lessor's Obligations (clause 2.3.3)*

a. Receipt of any payments due on or prior to the Commencement Date (see Schedule 1);
b. Receipt of a copy of Lessee's maintenance program approved by the FAA (or Lessee's maintenance program approved by the applicable regulatory agency which shall be equivalent FAA FAR 121) with respect to the maintenance schedule for the applicable Engine;
c. The pre-positioning with Lessor's FAA counsel of duly executed original counterparts of the Lease Agreement in proper form for filing with the FAA.

| | |
|---|---|
| *5. Commencement Date* (clause 2.4.1; annex 1, definition) | *6. Acceptance Certificate* (clause 2.4.2; annex 1 definition) |
| September ____, 2009 | Required, as per Appendix A |
| *7. Deposit and/or Letter of Credit* (clause 3.1) | *8. Rent* (clause 3.2; annex 1, definition) |
| *See Schedule 1 attached* | *See Schedule 1 attached* |
| *9. Rent Payment Date* (clause 3.2; annex 1, definition) | *10. Default Rate* (clause 3.5; annex 1, definition) |
| On Commencement Date and on the same day of the month each month thereafter during the Term | At the rate of Lessor Lender's prime lending rate for commercial borrowers plus two percent per annum. |
| *11. Agreed Currency* (clause 3.7.2; annex 1, definition) | *12. Payment Account* (clause 3.7.2; annex 1, definition) |
| United States Dollars | Bank: City National Bank, San Francisco, CA 94111<br>ABA No.: 122 016 066<br>Swift Code: CINAUS6L<br>Acct. No.: 0432633411<br>Acct. Name: Willis Lease Finance Corporation |
| *13. Engine Documentation* (clause 4.2.1 (i)) | *14. Engine Reports – Other Information*<br>(clause 4.2.4 (ii)) |
| a. EASA Form One with FAA Form 8130-3 dual release Serviceability Tag<br>b. Life Limited Parts List (disk profile) attached as Appendix B hereto)<br>c. Airworthiness Directive/Service Bulletin status<br>d. Component and QEC List (if applicable) attached as Appendix C hereto | The monthly report should also include the information in 15 herein and shall be in the form of Appendix D hereto. |
| *15. Engine Installation/Removal Notification Requirements* (clause 4.2.6) | *16. Certain Lessee Obligations Concerning Indemnitees* (clause 4.4.6) |
| Engine installation and removal dates. | The following actions are required by the Additional Indemnitees and shall be performed by Lessee at its expense: |

2

| | |
|---|---|
| Aircraft Total Hours and Total Cycles at Engine Installation and removal.<br><br>Aircraft serial number and engine position. | Attach and maintain an Ownership Placard on the Engine, to be supplied by Lessor |
| **17. Consequences of Partial Loss** (clause 7.2.1(ii))<br><br>Engine remains on lease | **18 Stipulated Amount** (clause 7.3.1; annex 1, definition)<br><br>*See Schedule 1 attached* |
| **19. Reinsurance** (clause 8.1)<br><br>Reinsurance shall be provided if required by Lessee to meet the requirements of Annex 4. | **20. Redelivery Location** (clause 11.1 (i); annex 1, definition)<br><br>FCA Standard Aero BV, Tilburg, The Netherlands |
| **21. Redelivery-additional requirement** (clause 11.1 (ii)) | **22. Final Inspection-other tests** (clause 11.3.1 (ii))<br><br>Current Test cell run, long term preservation in accordance with the manufacturers procedures, complete engine video borescope inspection, "C" check, or equivalent inspection, and dual release FAA/EASA serviceability tags. |
| **23. Redelivery--Additional Documentation** (clause 11.4 (viii))<br><br>See Appendix F attached. | **24. Transportation -- supplemental requirements** (clause 11.5)<br><br>Manufacturer's published recommendations, including proper equipment tie-down and use of air-ride suspension vehicles. |
| **25. Additional Amounts -- Term Extension** (clause 11.6.2)<br><br>*See Schedule 1 attached* | **26. Differing Period** (clause 14.1 (i))<br><br>N/A |

| 27. Notices (clause 16.5) | 28. Contracting by Fax/Electronic Writing (clause 16.8) |
|---|---|
| Facsimile transmission as follows: | Execution by facsimile or electronic media is not acceptable. |
| **For Lessor:** | |
| 773 San Marin Drive, Suite 2215<br>Novato, California 94998<br>Attn: General Counsel<br>Phone No.: (415) 408-4700<br>Fax No.: (415) 408-4702 | |
| With a copy to Lessor's Lender at:<br>National City Bank<br>One South Broad<br>14th Floor, Locator 01-5997<br>Philadelphia, PA 19107<br>Attention: Christos Kytzidis<br>Tel: (267) 256-4092<br>Fax: (267) 256-4001 | |
| **For Lessee:**<br>Mesa Airlines, Inc.<br>410 North 44th Street, Suite 700<br>Phoenix, AZ 85008<br>Attn: Dean Sinerius<br>Phone No.: 602-685-4015<br>Fax No.: _____ | |
| With a copy to Lessee's Legal Department: | |
| Mesa Airlines, Inc.<br>410 N. 44th Street, Suite 700<br>Phoenix, AZ 85008<br>Attn: Legal Department<br>Phone No.: 602-685-4052<br>Fax No: 602-685-4352 | |
| 29. Governing Law (clause 16.7) | 30. Nonexclusive Jurisdiction (clause 16.8.1(l)) |
| State of New York | Courts of the State of New York and the United States District Court located in the Borough of Manhattan, New York City |
| 31. Additional Indemnitees (annex 1, definition) (for use, inter alia, in definition of "Indemnitees") | 32. Business Day (annex 1, definition) |
| The parties listed on Appendix E hereto shall be (i) Additional Indemnitees and (ii) shall be additional insureds under the Insurances. The party listed on Appendix E hereto shall be named as sole loss payee. | New York City, San Francisco, Salt Lake City and Phoenix, Arizona |
| 33. Use Fee Amount (Cycle) (annex 1, definition) (for use in definition of "Use Fees (Cycle)" | 34. Use Fee Amount (Flight Hour) (annex 1 definition) (for use in definition of "Use Fees (Flight Hours)") |
| See Schedule 1 attached | See Schedule 1 attached |
| 35. Scheduled Final Date (annex 1, definition) (for use in definition of "Final Date") | 36. Principal Taxation Jurisdictions (annex 1 definition) (for use in definition of "Lessor Tax") |
| March ___, 2010 | United States |

| 37. *Calculation Discount Rate* (annex 1, definition) (for use in definition of Termination Damage Amount) | 38. *Threshold Amount* (annex 1, definition) |
|---|---|
| 5% per annum | $10,000 |
| 39. *Required Liability Amount* (annex 4, clause 4) | 40. *Deductibles* (annex 4, clause 8) |
| At least US$250,000,000 | Not more than US$50,000 for aircraft hull and $10,000 for Spares. |

## Part II – Modifications Applicable Where Lessee is Not an Airline or Other Operator of Engines

Pursuant to *2.1.4* of the Lease Agreement, the Master Agreement is modified as follows ("N/A" denotes non-applicability):   **N/A**

## Part III – Other Modification to Master Agreement

As regards this Lease Agreement, the Master Agreement is further modified as:

The delivery location is FCA Standard Aero BV,Tilburg, The Netherlands.

4.6.2  Insert the words "(to include the additional costs incurred as a result of the Engine requiring the repair)" in the first line after the word "Engine" and before the comma.

4.6.4  Add the following subsection:  "Lessor shall be responsible for Equipment repairs related to normal wear and tear and engine failure except if caused by Lessee's negligence, operational mishandling of the Engine, operation of the Engine beyond limits, or a foreign object."

10.2.3(vii) (b) insert the word "materially" before the word "increase".

11.3.1 Insert the words "and upon a minimum of seven (7) days advance notice to Lessor of the time and location so that Lessor may have an agent present during such video borescope and performance tests" after the word "redelivery" and before the comma.

11.3.2 Insert the words "and shall repair at Lessee's sole expense any defects for which Lessee is responsible under 4.6 of the Master Agreement" after the clause "required by 11.3.1" and before the period.

11.4.(iv) change the words to read "engine statement or computerized record, certified by the operator, of engine hours and cycles to include, as a minimum, the Engine hours and cycles at each installation and removal;

11.4. (v) Insert the word "current" before "engine".

11.4 (vi) Insert the word "current" before "serviceability" and insert the words, "required by Section 11.2.1" after the word, "tag".

12.2    Delete "provided Lessor has notified Lessee thereof within 30 Business Days of redelivery."  and replace it with "provided Lessor +has notified Lessee within 30 Business Days of redelivery that Lessor intends to procure the repair of the Engine."

12.3   Insert "to the extent" after "repairs" and before "contemplated".

16.11. Add the following sentence at the end. "Each Lease Agreement shall be executed in at least four (4) serially numbered counterparts, only counterpart 1 of which shall be deemed chattel paper for financing purposes and shall be so marked."

16.13 Add a period after the word "Agreement" and delete the remainder of the sentence.  Add the following after the first sentence:

"Lessee will cooperate with Lessor in order to register the Lease Agreement with the International Registry established pursuant to the Cape Town Convention (as defined below).  Lessor shall initiate a registration of the Lease Agreement and Lessee shall consent to such registration, or appoint a professional user for such purpose, with such consent to be lodged within 36 hours of initiation of the registration by Lessor.

Lessor also intends to record this Lease Agreement with the Department of Transportation, Federal Aviation Administration, FAA Registry, Oklahoma City, Oklahoma,], and with such other similar authority in each jurisdiction where the Engine may be leased from time to time, the reasonable costs of which shall be borne by Lessor.  Upon the termination of this Lease Agreement for any reason whatsoever, each of the parties will execute and deliver to the other party promptly such documents and discharges as

5

the other party may reasonably request in order to file a termination of this Lease Agreement with the FAA or other authority and evidence of the discharge of the Lease Agreement with the International Registry.

For purposes of this Lease Agreement:

"Cape Town Convention" shall mean the Convention on International Interests in Mobile Equipment (the "Convention") and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (the "Protocol"), both signed in Cape Town, South Africa on November 16, 2001, together with any protocols, regulations, procedures, rules, orders, agreements, instruments, amendments, supplements, revisions or otherwise that have or will be subsequently made in connection with the Convention and/or the Protocol by the "Supervisory Authority" (as defined in the Protocol), the "International Registry" or the "Registrar" (as defined in the Convention) or an appropriate "registry authority" (as defined in the Protocol) or any other international or national body or authority."

16.15. Delete this entire section and any other reference to it in the Master Agreement.

16.16 (i) is deleted in its entirety and replaced with the following: "(i) (a) Lessee may not assign or transfer any of its rights or obligations under this Agreement or any Lease Agreement without the prior written consent of Lessor and any such attempted assignment shall be null and void. (b) Lessor shall have the absolute right to transfer or assign, for security purposes or otherwise, to any person, firm, corporation or other entity, any or all of Lessor's rights, obligations, benefits and interest under this Agreement or any Lease Agreement or to any Engine Package."

Insert the following clause: "16.17 Lessor's Lender Following receipt of notice from National City Bank as Security Agent ("Lessor's Lender") that an "Event of Default", as defined in the mortgage and security agreement from Lessor to Lessor's Lender (the "Mortgage"), has occurred, Lessor's Lender shall be entitled to exercise all rights, remedies, powers and privileges of Lessor, as lessor, to the exclusion of Lessor, provided that the rights of Lessor's Lender under the Mortgage shall be subject in all respects to the rights of the Lessee under this Lease and, so long as no event of Default under the Lease shall have occurred, Lessor's Lender will not interfere with the Lessee's quiet and peaceful possession, use and enjoyment of the Engine leased under this Lease."

Annex 4 is modified as follows:

1.(a) "AVN52C" is changed to "AVN52E".

1.(a) Add the following at the end of the paragraph: "(however, the total War Risks Liability coverage including Third Party War Risks must be the same amount as the combined single limit either by the purchase of Excess Third Party War Risks Insurance and/or any other applicable government sponsored insurance program for aviation war risk liabilities)".

1.(c) Add the following after the word "air" in the second line "with respect to peril (a) of AVN 48B".

1.(d) Delete "aviation hull" and replace with "aviation hull/spares" in the first line and delete "LSW555B" in the second line and replace with "LSW555D".

The term "Hull All Insurance" is changed to "Hull All Risks Insurance" wherever it appears.

10. In the second sentence of the italicized paragraph, the word "equipment" is changed to "Engine".

Additional Terms:

Notwithstanding anything in the Engine Lease Agreement to the contrary, Lessor agrees to the following: Lessor will allow Lessee to convert and operate the Engine as a PW123D at Lessee's sole expense. Lessee agrees to return the Engine to its original configuration prior to the redelivery of the Engine unless mutually agreed upon by both parties to return the Engine as a PW123D.


## Part IV – Schedule and Appendices

Schedule 1 hereto contains proprietary commercial information which will not be filed with the FAA.

Appendix A hereto is the form of Acceptance Certificate, the execution of which, as contemplated by point 6 above, effects or evidences Lessee's acceptance of the Engine hereunder.

Appendix B hereto is the Life Limited Parts List as contemplated by point 13 above.

Appendix C (not applicable)

Appendix D hereto is the form of Monthly Engine Utilization Report as contemplated by point 14 above.

6

Appendix E hereto is the list of Additional Insureds as contemplated by point 19 above and the list of Additional Indemnitees as contemplated by point 31 above.

Appendix F hereto is the list o the Clause 23 Redelivery-Additional Documentation, inclusive of (clause 11.4(vii)).

IN WITNESS whereof, Parties have executed this Lease Agreement on the respective dates specified below.

| MESA AIRLINES, INC. | WILLIS LEASE FINANCE CORPORATION, as Lessor |
|---|---|
| BY: | BY: |
| NAME: Michael Lotz | NAME: THOMAS C. NORD |
| TITLE: President | TITLE: SENIOR VICE PRESIDENT |
| DATE: 09/10/09 | DATE: 09/10/09 |

8

REDACTION

REDACTION

**Appendix A**

**Acceptance Certificate**

Willis Lease Finance Corporation
733 San Marin Drive, Ste 2215
Novato, California 94998
Attn: General Counsel

Re: Acceptance of Engine Package

Dear Sir/Madam,

Reference is made to the Lease Agreement between you (*"Lessor"*) and us (*"Lessee"*) dated
_____, 2009 (*"Engine Lease Agreement"*) regarding the leasing by Lessee of one (1) Pratt &
Whitney Canada model number PW123 aircraft engine bearing manufacturer's serial number AG0074
(*"Engine"*). Terms used herein without definition have the meanings assigned in the Engine Lease
Agreement.

Lessee hereby confirms to Lessor that:

(i) on _____, 20___ at Standard Aero's facility in Tilburg, The Netherlands, Lessee accepted
delivery of the Engine, as described in Part I, point 1 of the Engine Lease Agreement and the Engine
Documentation, as described in Part I, point 13 of the Engine Lease Agreement;

(ii) Appendices B & C to the Engine Lease Agreement lists all Parts so received by Lessee; and

(iii) the Engine Documentation confirms the Engine Flight Hours and Engine Flight Cycle information and
data summarised on Appendix B to the Engine Lease Agreement.

MESA AIRLINES, INC.

By: _____

Date: _____

10

# LIFE LIMITED
## PARTS SUMMARY

| Model: | PW123 | Serial No: | | PCE AG0074 | | |
|---|---|---|---|---|---|---|
| Status: | As of 31-AUG-09 | | | | | |
| Q.E.C.: | PRATT BARE | | | | | |

| | DATE | REPAIR FACILITY | | | HOURS | CYCLES |
|---|---|---|---|---|---|---|
| Since New: | | | | | 13,643.0 | 15,925 |
| Since O.H.C.: | N/A | N/A | | | N/A | N/A |
| Since H.S.I.: | 7/31/2001 | Pratt & Whitney Canada | | | 9,494.8 | 11,105 |
| Since LSV: | 8/13/2009 | Standard Aero | | | 0.0 | 0 |

| FIRST LIMITERS | | P/N | S/N | | REMAINING | |
|---|---|---|---|---|---|---|
| MULTIPLE COMPONENTS | | | | | 13,860 CYC | |

| STAGE | P/N | S/N | LIMITS | | USED | | REMAINING | |
|---|---|---|---|---|---|---|---|---|
| | | | HRS | CYCLES | HRS | CYCLES | HRS | CYCLES |
| *TURBOMACHINE | | TM AG0074 | TSN: 13,643.0 | CSN: 15,925 | TSOHC: N/A | CSOHC: N/A | TSLSV: 3,372.2 | CSLSV: 1,140 |
| LP IMPELLR | 3038080 | A001YARH | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| HP IMPELLR | 3043293 | A0020FAB | UNLTD | 15,000 | UNLTD | 946 | UNLTD | 14,054 |
| HP F COVER | 3039840 | A001X902 | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| HPT DISK | 3041611 | A001YMN4 | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| HPT BLADES | 315601-01 | VARIOUS | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| HP R COVER | 3039839 | A001YCFE | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| AIR SEAL | 3039172 | TPAA2772 | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| LP DISK | 3038512 | A001XAB1 | UNLTD | 15,000 | UNLTD | 1,140 | UNLTD | 13,860 |
| PT DISK 1 | 3038513 | 46B660 | UNLTD | 30,000 | UNLTD | 15,925 | UNLTD | 14,075 |
| PT DISK 2 | 3033914 | 46B665 | UNLTD | 30,000 | UNLTD | 15,925 | UNLTD | 14,075 |
| *REDUCTION GEARBOX | | RGB 123197 | TSN: 27,476.0 | CSN: 26,044 | TSOHC: 15,214.9 | CSOHC: 13,870 | TSLSV: 3,372.2 | CSLSV: 1,140 |

The information contained herein has been obtained from sources (previous owners, operators and/or repair agencies), which Whirlwind Leasing,LLC believes to be reliable. The installer of these parts has ultimate responsibility for use of this information

Appendix C
Component and QEC List
(not applicable)

12



# Monthly Engine Utilization and Status Report

## *Utilization Data is DUE on the 10TH Business Day of Each Month*

To:

Willis Lease Finance Corp.
**Attention:** Finance Department
e-mail: ar@willislease.com or
Fax: +1 415-408-4706 (email preferred)

**Attention:** Technical Department
e-mail: jwebber@willislease.com
e-mail: apatterson@willislease.com
e-mail: bruce@whirlwindleasing.com

From: _____

Company Name: _____

Customer Fax#: _____

Customer e-Mail: _____

Month/Year: _____ / _____

| | |
|---|---|
| 1. Engine Model: _____ | 2. Serial Number: _____ |
| 3. Total TIME Since New: Hours: _____ Minutes: _____<br><br> Total CYCLES Since New: _____ | |
| 4. HOURS Flown During Month: Hours: _____ Minutes: _____ | |
| 5. CYCLES Flown During Month: Total Cycles: _____ Current Thrust Rating : _____ | |
| 6. Aircraft:<br><br> A/C Model: _____<br><br> Registration: _____<br><br> Position: _____ | 7. Thrust Categories Operated Throughout Lease:<br><br> Rating: _____ Cycles: _____<br><br> Rating: _____ Cycles: _____<br><br> Rating: _____ Cycles: _____ |
| 8. Date Installed: _____<br> Or<br> Date Removed: _____ | 9. Reason for Removal: |
| 10. Location of Engine (Country): | Please enter amount of Overhaul Reserves<br> Paid this Month: $ |

## Appendix E

### Additional Insureds
### Additional Indemnitees

<u>Loss Payees/Contract Parties:</u>

National City Bank, as Security Agent and Administrative Agent
Attention: Christos Kytzidis, Vice President
Specialized Banking Group
One South Broad Street
13th Floor, Locator 01-5997
Philadelphia, PA 19107
Tel: (267) 256-4092
Fax: (267) 256-4001

<u>Additional Insureds:</u>

Willis Lease Finance Corporation
773 San Marin Drive, Suite 2215
Novato, California 94998
Attention: General Counsel
Tel: (415) 408-4700
Fax: (415) 408-4702

National City Bank, as Security Agent and Administrative Agent
Attention: Christos Kytzidis, Vice President
Specialized Banking Group
One South Broad Street
13th Floor, Locator 01-5997
Philadelphia, PA 19107
Tel: (267) 256-4092
Fax: (267) 256-4001

The respective directors, officers, employees and agents of the foregoing additional insureds.

14

## Appendix F

## Redelivery–Additional Documentation

On the last agreed date of this Lease and prior to return of the Engine to LESSOR, LESSEE will have the following performed on the engine by an FAA licensed facility:

(1) Full performance test cell run; and,
(2) Post-test video borescope; and,
(3) Full long term preservation

LESSEE will be responsible for supplying the following return to service documentation to LESSOR, along with the Engine, on the last agreed date of this lease:

    (a) FAA 8130-3 with dual release or EASA Form One with dual release serviceable tag, or equivalent certification; and,
    (b) Updated life limited parts status; and
    (c) Airworthiness Directive (AD) status to include the following:
        (i)    Number of AD; and
        (ii)   Model application of AD; and
        (iii)  Method of AD compliance; and
        (iv)  Date of engine hours and cycles at time of AD accomplishment; and
    (d) Basic Engine and QEC (if applicable) component inventory, including:
        (i)    Part numbers; and
        (ii)   Serial numbers; and
        (iii)  Total hours and cycles since new and overhaul; and
        (iv)  FAA 8130-3 or equivalent for all exchanged units.
    (e) Test data; and
    (f) Video and hard copy post test borescope; and
    (g) Documentation for all maintenance accomplished during the Lease Term; and
    (h) Non-Incident Statement; and
    (i) ECTM covering the entire period the engine was operated. If ECTM was not used, a signed statement indicating ECTM was not used is required from the operator (on company letterhead).
    (j) Installation/Removal History Sheet signed by operator
    (k) Engine removal tag from operator to include engine TSN/CSN, removal date, removal reason and removal location.
    (l) Combination Statement signed by operator.
    (m) Copies of the aircraft tech log showing engine installation and removal as well as all pilot reports that occurred during the lease term. Include the respective corrective actions. A computerized printout is acceptable.

All documentation is to be prepared on LESSEE or the FAA or EASA approved facility's letterhead and certified by a Quality Control/Quality Assurance authorized employee.

**AMENDMENT NO. 1 TO THE ENGINE LEASE AGREEMENT**
**ESN AG0074**
**(this "Agreement")**

April 7, 2010

Mesa Airlines, Inc.
Attn: Legal Department
410 N. 44th Street, Suite 700
Phoenix, Arizona 85008

Re:     Engine Lease Agreement (the "Lease") dated as of September 10, 2009 between Willis
        Lease Finance Corporation (the "Lessor") and MESA AIRLINES, INC. (the "Lessee"),
        incorporating the terms of the International Air Transport Association IATA Document
        No. 5016-00 Master Short-Term Engine Lease Agreement dated as of December 1, 2002,
        ("Master Agreement"), together with the Master Agreement was recorded by the FAA on
        October 6, 2009 and assigned Conveyance No. RW003461, regarding that certain Pratt &
        Whitney Canada model number PW123 aircraft engine bearing manufacturer's serial
        number AG0074 (the "Engine").

Ladies and Gentlemen:

Please refer to the above-referenced Lease.  Lessee and Lessor hereby agree that upon entry of
an order of the United States Bankruptcy Court having jurisdiction over the Lessee's pending
Chapter 11 proceedings approving and authorizing (i) the assumption of the Lease and (ii) the
entry into this Agreement, the Lease shall be amended effective as of January 5, 2010 (the
"Petition Date") as follows:

   1)   The text in **Part 1, Point 9 (Rent Payment Date)** is deleted and replaced with the
        following:

        "On the Commencement Date and on the 5th day of each month thereafter."

   2)   The text in **Part I, Point 35 (Scheduled Final Date)** is deleted and replaced with the
        following:

        "August 15, 2010."

All other terms and conditions as currently set forth under the Lease remain the same.

Please signify your agreement to the above by executing and forwarding by email and send four
(4) originals by overnight courier to:

Dana Skinner
Willis Lease Finance Corporation, as Servicer
773 San Marin Drive, Suite 2215
Novato, CA 94998

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,                          Accepted:

**WILLIS LEASE FINANCE CORPORATION,**     **MESA AIRLINES, INC.**
**as Lessor**

By:_____             By:_____
Name:_____             Name:_____Michael Lotz_____
Title:_____             Title:_____President_____

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,                                    Accepted:

**WILLIS LEASE FINANCE CORPORATION,**     **MESA AIRLINES, INC.**
**as Lessor**

By: _Nunemaker_                                     By:_____
Name: __Donald A. Nunemaker__                       Name:_____
Title: __Executive Vice President__                 Title:_____
       **General Manager Leasing**

ESN AG0074

# LEASE ESN 123005

## ENGINE LEASE AGREEMENT

This Engine Lease Agreement is made as of September 10, 2009 by and between WILLIS LEASE FINANCE CORPORATION ("Lessor"), and MESA AIRLINES, INC., a Nevada corporation whose address and principal place of business is at 410 North 44th Street, Suite 700, Phoenix, AZ 85008, ("Lessee").

This Lease Agreement refers to and incorporates herein the terms of the International Air Transport Association IATA Document No. 5016-00 Master Short-Term Engine Lease Agreement dated December 1, 2002 ("*Master Agreement*"). This Lease Agreement modifies the Master Agreement, and as modified constitutes a single contract applicable to the leasing of the Engine defined below. Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Engine described in Part 1 herein, subject to the terms and conditions of this Lease Agreement.

### Part I – Referenced Provisions

"N/A" denotes non-applicability:

| 1. Engine (clause 2.3.1(i); annex 1, definition) | 2A+B. Engine Flight Hours (2A) and Engine Flight Cycles (2B) /Since Last Overhaul (clause 2.3.1(ii); Annex 1, Definitions) |
|---|---|
| Manufacturer: Pratt & Whitney Canada<br><br>Engine Model: PW123, in bare configuration<br><br>Engine Serial Number: 123005<br><br>Shipping Container S/N : Not serialized<br><br>MVP Bag: N/A<br><br>Serviceability Tag: EASA Form One with FAA Form 8130-3 with dual release<br><br>Horsepower: Rated 2500 equivalent shaft horsepower | Time Since New: 19,676.50<br>Time Since Overhaul: *<br>Cycles Since New: 27,346<br>Cycles Since Overhaul: *<br>   * See Block 13, Engine Documentation |
| 3A. Additional Conditions Precedent to Lessee's Obligations (clause 2.3.1(iii)) | 4. Conditions Precedent Time Period (clause 2.3.2) |
| a. Within nine (9) days of taking delivery of the Engine at the location specified in this Lease Agreement, and at Lessee's sole risk and expense, Lessee may perform a videoborescope inspection of the Engine to confirm that it is in good serviceable condition in accordance with the applicable manufacturer's engine manual. If the Engine is determined to be in such good serviceable condition, Lessee shall sign the Acceptance of the Engine Package, unconditionally and irrevocably accepting the Engine for all purposes under this Lease Agreement. If the Engine is determined not to be in such good serviceable condition, then Lessee shall return the Engine to Lessor per Lessor's instructions and Lessee shall have no obligation to pay Rent or Use Fees for the Engine (but Lessee shall be responsible for performance of its other obligations under the Lease Agreement during the Term) provided Lessee (i) gives written notice to Lessor of such failure within nine (9) days of taking delivery of the Engine at the location specified in this | N/A |

1

kwiktag® 011 107 983

Lease Agreement, (ii) does not use, or permit the use of, the Engine in flight operations and (iii) returns the Engine in the same condition as at delivery and otherwise in accordance with Clause 11.1 of the Lease Agreement ("Redelivery of Engine Package"). In such circumstances, the Term shall expire upon redelivery of the Equipment in accordance with Clause 11.1 and Lessor shall reimburse Lessee for the costs of shipment of the Engine to the location designated.

**3B. Additional Conditions Precedent to Lessor's Obligations** (clause 2.3.3)

a. Receipt of any payments due on or prior to the Commencement Date (see Schedule 1);
b. Receipt of a copy of Lessee's maintenance program approved by the FAA (or Lessee's maintenance program approved by the applicable regulatory agency which shall be equivalent FAA FAR 121) with respect to the maintenance schedule for the applicable Engine;
c. The pre-positioning with Lessor's FAA counsel of duly executed original counterparts of the Lease Agreement in proper form for filing with the FAA.

| | |
|---|---|
| **5. Commencement Date** (clause 2.4.1; annex 1, definition)<br><br>September ___, 2009 | **6. Acceptance Certificate** (clause 2.4.2; annex 1 definition)<br><br>Required, as per Appendix A |
| **7. Deposit and/or Letter of Credit** (clause 3.1)<br><br>See Schedule 1 attached | **8. Rent** (clause 3.2; annex 1, definition)<br><br>See Schedule 1 attached |
| **9. Rent Payment Date** (clause 3.2; annex 1, definition)<br><br>On Commencement Date and on the same day of the month each month thereafter during the Term | **10. Default Rate** (clause 3.5; annex 1, definition)<br><br>At the rate of Lessor Lender's prime lending rate for commercial borrowers plus two percent per annum. |
| **11. Agreed Currency** (clause 3.7.2; annex 1, definition)<br><br>United States Dollars | **12. Payment Account** (clause 3.7.2; annex 1, definition)<br><br>Bank:  City National Bank, San Francisco, CA  94111<br>ABA No.:  122 016 066<br>Swift Code:  CINAUS6L<br>Acct. No.:  0432633411<br>Acct. Name:  Willis Lease Finance Corporation |
| **13. Engine Documentation** (clause 4.2.1 (i))<br><br>a. EASA Form One with FAA Form 8130-3  dual release Serviceability Tag<br>b. Life Limited Parts List (disk profile) attached as Appendix B hereto)<br>c. Airworthiness Directive/Service Bulletin status<br>d. Component and QEC List (if applicable) attached as Appendix C hereto | **14. Engine Reports – Other Information** (clause 4.2.4 (ii))<br><br>The monthly report should also include the information in 15 herein and shall be in the form of Appendix D hereto. |
| **15. Engine Installation/Removal Notification Requirements** (clause 4.2.6)<br><br>Engine installation and removal dates. | **16. Certain Lessee Obligations Concerning Indemnitees** (clause 4.4.6)<br><br>The following actions are required by the Additional |

2

| | Indemnitees and shall be performed by Lessee at its expense: |
|---|---|
| Aircraft Total Hours and Total Cycles at Engine installation and removal.<br><br>Aircraft serial number and engine position. | Attach and maintain an Ownership Placard on the Engine, to be supplied by Lessor |
| *17. Consequences of Partial Loss* (clause 7.2.1(ii))<br><br>Engine remains on lease | *18 Stipulated Amount* (clause 7.3.1; annex 1, definition)<br><br>*See Schedule 1 attached* |
| *19. Reinsurance* (clause 8.1)<br><br>Reinsurance shall be provided if required by Lessee to meet the requirements of Annex 4. | *20. Redelivery Location* (clause 11.1 (i); annex 1, definition)<br><br>FCA Standard Aero BV, Tilburg, The Netherlands |
| *21. Redelivery–additional requirement* (clause 11.1 (ii)) | *22. Final Inspection–other tests* (clause 11.3.1 (ii))<br><br>Current Test cell run, long term preservation in accordance with the manufacturers procedures, complete engine video borescope inspection, "C" check, or equivalent inspection, and dual release FAA/EASA serviceability tags. |
| *23. Redelivery–Additional Documentation* (clause 11.4 (viii))<br><br>See Appendix F attached. | *24. Transportation – supplemental requirements* (clause 11.5)<br><br>Manufacturer's published recommendations, including proper equipment tie-down and use of air-ride suspension vehicles. |
| *25. Additional Amounts – Term Extension* (clause 11.6.2)<br><br>*See Schedule 1 attached* | *26. Differing Period* (clause 14.1 (i))<br><br>N/A |

| 27. **Notices** (clause 16.5) | 28. *Contracting by Fax/Electronic Writing* (clause 16.6) |
|---|---|
| Facsimile transmission as follows:<br><br>**For Lessor:**<br><br>773 San Marin Drive, Suite 2215<br>Novato, California 94998<br>Attn: General Counsel<br>Phone No.: (415) 408-4700<br>Fax No.: (415) 408-4702<br><br>With a copy to Lessor's Lender at:<br>National City Bank<br>One South Broad<br>14th Floor, Locator 01-5997<br>Philadelphia, PA 19107<br>Attention: Christos Kytzidis<br>Tel: (267) 256-4092<br>Fax: (267) 256-4001<br>**For Lessee:**<br>Mesa Airlines, Inc.<br>410 North 44th Street, Suite 700<br>Phoenix, AZ 85008<br>Attn: Dean Sinerius<br>Phone No.: 602-685-4015<br>Fax No.: _____<br><br>With a copy to Lessee's Legal Department:<br><br>Mesa Airlines, Inc.<br>410 N. 44th Street, Suite 700<br>Phoenix, AZ 85008<br>Attn: Legal Department<br>Phone No.: 602-685-4052<br>Fax No: 602-685-4352 | Execution by facsimile or electronic media is not acceptable. |
| 29. *Governing Law* (clause 16.7)<br><br>State of New York | 30. *Nonexclusive Jurisdiction* (clause 16.8.1(i))<br><br>Courts of the State of New York and the United States District Court located in the Borough of Manhattan, New York City |
| 31. *Additional Indemnitees* (annex 1, definition) (for use, inter alia, in definition of "Indemnitees")<br><br>The parties listed on Appendix E hereto shall be (i) Additional Indemnitees and (ii) shall be additional insureds under the Insurances. The party listed on Appendix E hereto shall be named as sole loss payee. | 32. *Business Day* (annex 1, definition)<br><br>New York City, San Francisco, Salt Lake City and Phoenix, Arizona |
| 33. *Use Fee Amount (Cycle)* (annex 1, definition) (for use in definition of "Use Fees (Cycle)")<br><br>See Schedule 1 attached | 34. *Use Fee Amount (Flight Hour)* (annex 1 definition) (for use in definition of "Use Fees (Flight Hours)")<br><br>See Schedule 1 attached |
| 35. *Scheduled Final Date* (annex 1, definition) (for use in definition of "Final Date")<br><br>March ___, 2010 | 36. *Principal Taxation Jurisdictions* (annex 1 definition) (for use in definition of "Lessor Tax")<br><br>United States |

4

| 37. *Calculation Discount Rate* (annex 1, definition) (for use in definition of Termination Damage Amount) | 38. *Threshold Amount* (annex 1, definition) |
|---|---|
| 5% per annum | $10,000 |
| 39. *Required Liability Amount* (annex 4, clause 4) | 40. *Deductibles* (annex 4, clause 8) |
| At least US$250,000,000 | Not more than US$50,000 for aircraft hull and $10,000 for Spares. |

### Part II – Modifications Applicable Where Lessee is Not an Airline or Other Operator of Engines

Pursuant to 2.1.4 of the Lease Agreement, the Master Agreement is modified as follows ("N/A" denotes non-applicability):   N/A

### Part III – Other Modification to Master Agreement

As regards this Lease Agreement, the Master Agreement is further modified as:

The delivery location is FCA Standard Aero BV,Tilburg, The Netherlands.

4.6.2 Insert the words "(to include the additional costs incurred as a result of the Engine requiring the repair)" in the first line after the word "Engine" and before the comma.

4.6.4 Add the following subsection:  "Lessor shall be responsible for Equipment repairs related to normal wear and tear and engine failure except if caused by Lessee's negligence, operational mishandling of the Engine, operation of the Engine beyond limits, or a foreign object."

10.2.3(vii) (b) Insert the word "materially" before the word "increase".

11.3.1 Insert the words "and upon a minimum of seven (7) days advance notice to Lessor of the time and location so that Lessor may have an agent present during such video borescope and performance tests" after the word "redelivery" and before the comma.

11.3.2 Insert the words "and shall repair at Lessee's sole expense any defects for which Lessee is responsible under 4.6 of the Master Agreement" after the clause "required by 11.3.1" and before the period.

11.4.(iv) change the words to read "engine statement or computerized record, certified by the operator, of engine hours and cycles to include, as a minimum, the Engine hours and cycles at each installation and removal;

11.4. (v) Insert the word "current" before "engine".

11.4 (vi) Insert the word "current" before "serviceability" and insert the words, "required by Section 11.2.1" after the word, "tag".

12.2   Delete "provided Lessor has notified Lessee thereof within 30 Business Days of redelivery." and replace it with "provided Lessor +has notified Lessee within 30 Business Days of redelivery that Lessor intends to procure the repair of the Engine."

12.3   Insert "to the extent" after "repairs" and before "contemplated".

16.11. Add the following sentence at the end. "Each Lease Agreement shall be executed in at least four (4) serially numbered counterparts, only counterpart 1 of which shall be deemed chattel paper for financing purposes and shall be so marked."

16.13 Add a period after the word "Agreement" and delete the remainder of the sentence.  Add the following after the first sentence:

"Lessee will cooperate with Lessor in order to register the Lease Agreement with the International Registry established pursuant to the Cape Town Convention (as defined below).  Lessor shall initiate a registration of the Lease Agreement and Lessee shall consent to such registration, or appoint a professional user for such purpose, with such consent to be lodged within 36 hours of initiation of the registration by Lessor.

Lessor also intends to record this Lease Agreement with the Department of Transportation, Federal Aviation Administration, FAA Registry, Oklahoma City, Oklahoma,], and with such other similar authority in each jurisdiction where the Engine may be leased from time to time, the reasonable costs of which shall be borne by Lessor. Upon the termination of this Lease Agreement for any reason whatsoever, each of the parties will execute and deliver to the other party promptly such documents and discharges as

the other party may reasonably request in order to file a termination of this Lease Agreement with the FAA or other authority and evidence of the discharge of the Lease Agreement with the International Registry.

For purposes of this Lease Agreement:

"Cape Town Convention" shall mean the Convention on International Interests in Mobile Equipment (the "Convention") and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (the "Protocol"), both signed in Cape Town, South Africa on November 16, 2001, together with any protocols, regulations, procedures, rules, orders, agreements, instruments, amendments, supplements, revisions or otherwise that have or will be subsequently made in connection with the Convention and/or the Protocol by the "Supervisory Authority" (as defined in the Protocol), the "International Registry" or the "Registrar" (as defined in the Convention) or an appropriate "registry authority" (as defined in the Protocol) or any other international or national body or authority."

16.15. Delete this entire section and any other reference to it in the Master Agreement.

16.16 (i) is deleted in its entirety and replaced with the following: "(i) (a) Lessee may not assign or transfer any of its rights or obligations under this Agreement or any Lease Agreement without the prior written consent of Lessor and any such attempted assignment shall be null and void. (b) Lessor shall have the absolute right to transfer or assign, for security purposes or otherwise, to any person, firm, corporation or other entity, any or all of Lessor's rights, obligations, benefits and interest under this Agreement or any Lease Agreement or to any Engine Package."

Insert the following clause: "16.17 Lessor's Lender Following receipt of notice from National City Bank as Security Agent ("Lessor's Lender") that an "Event of Default", as defined in the mortgage and security agreement from Lessor to Lessor's Lender (the "Mortgage"), has occurred, Lessor's Lender shall be entitled to exercise all rights, remedies, powers and privileges of Lessor, as lessor, to the exclusion of Lessor, provided that the rights of Lessor's Lender under the Mortgage shall be subject in all respects to the rights of the Lessee under this Lease and, so long as no event of Default under the Lease shall have occurred, Lessor's Lender will not interfere with the Lessee's quiet and peaceful possession, use and enjoyment of the Engine leased under this Lease."

Annex 4 is modified as follows:

1.(a) "AVN52C" is changed to "AVN52E".

1.(a) Add the following at the end of the paragraph: "(however, the total War Risks Liability coverage including Third Party War Risks must be the same amount as the combined single limit either by the purchase of Excess Third Party War Risks Insurance and/or any other applicable government sponsored insurance program for aviation war risk liabilities)".

1.(c) Add the following after the word "air" in the second line "with respect to peril (a) of AVN 48B".

1.(d) Delete "aviation hull" and replace with "aviation hull/spares" in the first line and delete "LSW555B" in the second line and replace with "LSW555D".

The term "Hull All Insurance" is changed to "Hull All Risks Insurance" wherever it appears.

10. In the second sentence of the italicized paragraph, the word "equipment" is changed to "Engine".

Additional Terms:

Notwithstanding anything in the Engine Lease Agreement to the contrary, Lessor agrees to the following: Lessor will allow Lessee to convert and operate the Engine as a PW123D at Lessee's sole expense. Lessee agrees to return the Engine to its original configuration prior to the redelivery of the Engine unless mutually agreed upon by both parties to return the Engine as a PW123D.

---

## Part IV – Schedule and Appendices

Schedule 1 hereto contains proprietary commercial information which will not be filed with the FAA.

Appendix A hereto is the form of Acceptance Certificate, the execution of which, as contemplated by point 6 above, effects or evidences Lessee's acceptance of the Engine hereunder.

Appendix B hereto is the Life Limited Parts List as contemplated by point 13 above.

Appendix C (not applicable)

Appendix D hereto is the form of Monthly Engine Utilization Report as contemplated by point 14 above.

Appendix E hereto is the list of Additional Insureds as contemplated by point 19 above and the list of Additional Indemnitees as contemplated by point 31 above.

Appendix F hereto is the list o the Clause 23 Redelivery-Additional Documentation, inclusive of (clause 11.4(vii)).

IN WITNESS whereof, Parties have executed this Lease Agreement on the respective dates specified below.

| MESA AIRLINES, INC. | WILLIS LEASE FINANCE CORPORATION, as Lessor |
|---|---|
| BY: | BY: _Thomas C. Nord_ |
| NAME: Michael Lotz | NAME: THOMAS C. NORD |
| President | SENIOR VICE PRESIDENT |
| TITLE: | TITLE: |
| DATE: 09/10/09 | DATE: 09/10/09 |

8

REDACTION          REDACTION

## Appendix A

### Acceptance Certificate

Willis Lease Finance Corporation
733 San Marin Drive, Ste 2215
Novato, California 94998
Attn: General Counsel

**Re: Acceptance of Engine Package**

Dear Sir/Madam,

Reference is made to the Lease Agreement between you (*"Lessor"*) and us (*"Lessee"*) dated _____, 2009 (*"Engine Lease Agreement"*) regarding the leasing by Lessee of one (1) Pratt & Whitney Canada model number PW123 aircraft engine bearing manufacturer's serial number 123005 (*"Engine"*). Terms used herein without definition have the meanings assigned in the Engine Lease Agreement.

Lessee hereby confirms to Lessor that:

(i) on _____, 20___ at Standard Aero's facility in Tilburg, The Netherlands, Lessee accepted delivery of the Engine, as described in Part I, point 1 of the Engine Lease Agreement and the Engine Documentation, as described in Part I, point 13 of the Engine Lease Agreement;

(ii) Appendices B & C to the Engine Lease Agreement lists all Parts so received by Lessee; and

(iii) the Engine Documentation confirms the Engine Flight Hours and Engine Flight Cycle Information and data summarised on Appendix B to the Engine Lease Agreement.

**MESA AIRLINES, INC.**

By:     _____

Date:   _____

10

# LIFE LIMITED
## PARTS SUMMARY

| Model: | PW123 | Serial No: | | PCE 123005 | | |
|---|---|---|---|---|---|---|
| Status: | As of 13-Aug-09 | | | | | |
| Q.E.C.: | PRATT BARE | | | | | |

| | DATE | REPAIR FACILITY | | | HOURS | CYCLES |
|---|---|---|---|---|---|---|
| Since New: | | | | | 19,676.5 | 27,346 |
| Since O.H.C.: | 1/27/2001 | Pratt & Whitney Canada | | | 8,639.5 | 10,373 |
| Since H.S.I.: | N/A | N/A | | | N/A | N/A |
| Since LSV: | 7/14/2009 | Standard Aero | | | 0.0 | 0 |

| FIRST LIMITERS | | P/N | S/N | | REMAINING | |
|---|---|---|---|---|---|---|
| Multiple Components | | | | | 4,627 | CYC |

| STAGE | P/N | S/N | LIMITS | | USED | | REMAINING | |
|---|---|---|---|---|---|---|---|---|
| | | | HRS | CYCLES | HRS | CYCLES | HRS | CYCLES |
| *TURBOMACHINE | | TM 123005 | TSN: | 19,676.5 | TSOHC: | 8,639.5 | TSLSV: | 0.0 |
| | | | CSN: | 27,346 | CSOHC: | 10,373 | CSLSV: | 0 |
| LP IMPELLR | 3037974 | A000KP0X | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| HP IMPELLR | 3043293 | A000KAK1 | UNLTD | 15,000 | UNLTD | 8,610 | UNLTD | 6,390 |
| HP F COVER | 3038840 | A000KT13 | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| HPT DISK | 3041511 | A000LK2C | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| HPT BLADES | 3116801-01 | VARIOUS | UNLTD | 15,000 | UNLTD | 0 | UNLTD | 15,000 |
| HP R COVER | 3039839 | A000KWK8 | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| AIR SEAL | 3039172 | 69B131 | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| LP DISK | 3039512 | A000M0MP | UNLTD | 15,000 | UNLTD | 10,373 | UNLTD | 4,627 |
| PT DISK 1 | 3038513 | A00010DX | UNLTD | 30,000 | UNLTD | 16,223 | UNLTD | 13,777 |
| PT DISK 2 | 3033914 | A0003116 | UNLTD | 30,000 | UNLTD | 23,869 | UNLTD | 6,131 |
| *REDUCTION GEARBOX | | RGB AG0074 | TSN: | 13,607.5 | TSOHC: | N/A | TSLSV: | 3,203.5 |
| | | | CSN: | 18,534 | CSOHC: | N/A | CSLSV: | 3,754 |

The information contained herein has been obtained from sources (previous owners, operators and/or repair agencies), which Whirlwind Leasing,LLC believes to be reliable. The installer of these parts has ultimate responsibility for use of this information

**Appendix C**
**Component and QEC List**
**(not applicable)**

12

 **Monthly Engine Utilization and Status Report**

## *Utilization Data is DUE on the 10TH Business Day of Each Month*

To:                                            From: _____

**Willis Lease Finance Corp.**        Company Name: _____
**Attention:** Finance Department
e-mail: ar@willislease.com or        Customer Fax#: _____
Fax: +1 415-408-4706 (email preferred)
                                               Customer e-Mail: _____
**Attention:** Technical Department
e-mail: lwebber@willislease.com      Month/Year: _____ / _____
e-mail: apatterson@willislease.com
e-mail: bruce@whirlwindleasing.com

| 1. Engine Model: _____ | 2. Serial Number: _____ |
|---|---|
| 3. Total TIME Since New: Hours: _____ Minutes: _____ <br><br> Total CYCLES Since New: _____ | |
| 4. HOURS Flown During Month: Hours: _____ Minutes: _____ | |
| 5. CYCLES Flown During Month: Total Cycles: _____ Current Thrust Rating : _____ | |
| 6. Aircraft: <br><br> A/C Model: _____ <br><br> Registration: _____ <br><br> Position: _____ | 7. Thrust Categories Operated Throughout Lease: <br><br> Rating: _____ Cycles: _____ <br><br> Rating: _____ Cycles: _____ <br><br> Rating: _____ Cycles: _____ |
| 8. Date Installed: _____ <br> Or <br> Date Removed: _____ | 9. Reason for Removal: |
| 10. Location of Engine (Country): | Please enter amount of Overhaul Reserves <br> Paid this Month: $ |

**Additional Insureds**
**Additional Indemnitees**

Loss Payees/Contract Parties:

National City Bank, as Security Agent and Administrative Agent
Attention: Christos Kytzidis, Vice President
Specialized Banking Group
One South Broad Street
13th Floor, Locator 01-5997
Philadelphia, PA 19107
Tel: (267) 256-4092
Fax: (267) 256-4001

Additional Insureds:

Willis Lease Finance Corporation
773 San Marin Drive, Suite 2215
Novato, California 94998
Attention: General Counsel
Tel: (415) 408-4700
Fax: (415) 408-4702

National City Bank, as Security Agent and Administrative Agent
Attention: Christos Kytzidis, Vice President
Specialized Banking Group
One South Broad Street
13th Floor, Locator 01-5997
Philadelphia, PA 19107
Tel: (267) 256-4092
Fax: (267) 256-4001

The respective directors, officers, employees and agents of the foregoing additional insureds.

14

## Appendix F

### Redelivery--Additional Documentation

On the last agreed date of this Lease and prior to return of the Engine to LESSOR, LESSEE will have the following performed on the engine by an FAA licensed facility:

(1) Full performance test cell run; and,
(2) Post-test video borescope; and,
(3) Full long term preservation

LESSEE will be responsible for supplying the following return to service documentation to LESSOR, along with the Engine, on the last agreed date of this lease:

- (a) FAA 8130-3 with dual release or EASA Form One with dual release serviceable tag, or equivalent certification; and,
- (b) Updated life limited parts status; and
- (c) Airworthiness Directive (AD) status to include the following:
    - (i) Number of AD; and
    - (ii) Model application of AD; and
    - (iii) Method of AD compliance; and
    - (iv) Date of engine hours and cycles at time of AD accomplishment; and
- (d) Basic Engine and QEC (if applicable) component inventory, including:
    - (i) Part numbers; and
    - (ii) Serial numbers; and
    - (iii) Total hours and cycles since new and overhaul; and
    - (iv) FAA 8130-3 or equivalent for all exchanged units.
- (e) Test data; and
- (f) Video and hard copy post test borescope; and
- (g) Documentation for all maintenance accomplished during the Lease Term; and
- (h) Non-Incident Statement; and
- (i) ECTM covering the entire period the engine was operated. If ECTM was not used, a signed statement indicating ECTM was not used is required from the operator (on company letterhead).
- (j) Installation/Removal History Sheet signed by operator
- (k) Engine removal tag from operator to include engine TSN/CSN, removal date, removal reason and removal location.
- (l) Combination Statement signed by operator.
- (m) Copies of the aircraft tech log showing engine installation and removal as well as all pilot reports that occurred during the lease term. Include the respective corrective actions. A computerized printout is acceptable.

All documentation is to be prepared on LESSEE or the FAA or EASA approved facility's letterhead and certified by a Quality Control/Quality Assurance authorized employee.

15

**AMENDMENT NO. 1 TO THE ENGINE LEASE AGREEMENT**
**ESN 123005**
**(this "Agreement")**

April 7, 2010

Mesa Airlines, Inc.
Attn: Legal Department
410 N. 44th Street, Suite 700
Phoenix, Arizona 85008

Re:     Engine Lease Agreement (the "Lease") dated as of September 10, 2009 between Willis
        Lease Finance Corporation (the "Lessor") and MESA AIRLINES, INC. (the "Lessee"),
        incorporating the terms of the International Air Transport Association IATA Document
        No. 5016-00 Master Short-Term Engine Lease Agreement dated as of December 1, 2002,
        ("Master Agreement"), together with the Master Agreement was recorded by the FAA on
        October 6, 2009 and assigned Conveyance No. MC004851, regarding that certain Pratt &
        Whitney Canada model number PW123 aircraft engine bearing manufacturer's serial
        number 123005 (the "Engine").

Ladies and Gentlemen:

Please refer to the above-referenced Lease. Lessee and Lessor hereby agree that upon entry of
an order of the United States Bankruptcy Court having jurisdiction over the Lessee's pending
Chapter 11 proceedings approving and authorizing (i) the assumption of the Lease and (ii) the
entry into this Agreement, the Lease shall be amended effective as of January 5, 2010 (the
"Petition Date") as follows:

1) The text in **Part 1, Point 9 (Rent Payment Date)** is deleted and replaced with the
   following:

   "On the Commencement Date and on the 5th day of each month thereafter."

2) The text in **Part I, Point 35 (Scheduled Final Date)** is deleted and replaced with the
   following:

   "August 15, 2010."

All other terms and conditions as currently set forth under the Lease remain the same.

Please signify your agreement to the above by executing and forwarding by email and send four
(4) originals by overnight courier to:

Dana Skinner
Willis Lease Finance Corporation, as Servicer
773 San Marin Drive, Suite 2215
Novato, CA 94998

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,

Accepted:

**WILLIS LEASE FINANCE CORPORATION, as Lessor**

**MESA AIRLINES, INC.**

By:_____

Name:_____

Title:_____

By:_____

Name:_____Michael Lotz____

Title:_____President_____

ESN 123005

Please also email your signature to dskinner@willislease.com. Upon receipt of your email signature, we will counter-fax our execution to you.

Thank you for your assistance.

Very truly yours,                                    Accepted:

**WILLIS LEASE FINANCE CORPORATION,**                **MESA AIRLINES, INC.**
**as Lessor**

By: _____                        By:_____
Name: ~~Donald A. Nunemaker~~                        Name:_____
Title: ~~Executive Vice President~~                  Title:_____
       ~~General Manager Leasing~~

ESN 123005