PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Joshua M. Fried
Maria A. Bove

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF DEBTORS' MOTION FOR AUTHORIZATION TO APPROVE THE DETERMINATION, SETTLEMENT, AND ALLOWANCE OF CERTAIN CLAIMS ARISING FROM THE REJECTION OF AIRCRAFT RELATED LEASES AND RELATED PROCEDURES

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Authorization to Approve the Determination, Settlement, and Allowance of Certain Claims Arising from the Rejection of Aircraft Related Leases and Related Procedures* (the "Motion") filed by Mesa Air Group Inc. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), will be held before the Honorable Martin Glenn, at the United States Bankruptcy Court, Alexander Hamilton Customs House, One Bowling Green, New York, New York, 10004, Courtroom 501, **at 10:00 a.m. on May 13, 2010**.

---

[1]  The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

**PLEASE TAKE FURTHER NOTICE** that any response or objection to the relief sought in the Motion must be filed with the Bankruptcy Court and served upon: (i) the chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York 10004, Courtroom 501; (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111 (Attn: Debra I. Grassgreen and Joshua M. Fried), and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn: Maria A. Bove), attorneys for the Debtors; (iii) Mesa Air Group, Inc., Law Department 410 N. 44th St. Suite 700, Phoenix, Arizona 85008, (Attn: Brian S. Gillman, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Andrea B. Schwartz); (v) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Brett H. Miller, Lorenzo Marinuzzi, and Todd M. Goren), attorneys for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases; and (vi) any person or entity with a particularized interest in the subject matter of the Motion, on or before **May 6, 2010**.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE.**

Dated: April 21, 2010
    New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Debra I. Grassgreen*
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Joshua M. Fried
Maria A. Bove

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Joshua M. Fried
Maria A. Bove

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR AUTHORIZATION TO**
**APPROVE THE DETERMINATION, SETTLEMENT, AND**
**ALLOWANCE OF CERTAIN CLAIMS ARISING FROM THE REJECTION**
**OF AIRCRAFT RELATED LEASES AND RELATED PROCEDURES**

TO THE HONORABLE MARTIN GLENN:

Mesa Air Group, Inc. and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully represent:

**Background**

1.      On January 5, 2010 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

"Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.  On January 14, 2010, the Office of the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee").  The members of the Committee are: Bombardier, Inc.; Embraer-Empresa Brasilieira de Aeronautica S.A.; IHI Corporation; U.S. Bank National Association; AT&T Capital Services; Wilmington Trust Company; the Air Line Pilots Association; and the Association of Flight Attendants – CWA (ex-officio member).

## Jurisdiction

4.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.  Through this Motion, the Debtors seek the approval, pursuant to sections 105(a), 363(b), and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, of the settlement of certain claims arising from the rejection of certain aircraft leases, in accordance with the procedures set forth herein.[2]

---

[2]    This motion does not effect the rejection of any leases involving aircraft equipment or the abandonment of any aircraft equipment.  Rather, as provided under the Section 1110(b) Stipulations (as defined herein), this motion seeks to establish the formula for ascertaining rejection damage claims arising from lease rejections.  As applicable, all other matters, including the timing of any rejection and/or abandonment, the assertion of administrative claims

## The Section 1110(b) Aircraft Stipulations

6.      As of the Petition Date, the Debtors maintained a fleet of approximately 178 aircraft.  At that time, the fleet was too large for the Debtors' operations and projected business model.  Accordingly, the Debtors intend to reject the leases for certain leased aircraft and/or abandon certain owned aircraft subject to aircraft mortgages.  On January 25, 2010, the Debtors filed two motions to implement procedures governing the elections under the section 1110(a) and (b) of the Bankruptcy Code pending such rejections and the rejection of aircraft related leases and abandonment of aircraft subject to security agreements.  On February 23, 2010 the Court entered an order approving (i) the "Section 1110 Procedures,"[3] which govern the process of the Debtors' election to continue to perform under aircraft related agreements and the entry into stipulations regarding the terms for the Debtors' postpetition use of certain aircraft related equipment and (ii) the order approving the "Aircraft Rejection/Abandonment Procedures,"[4] which governs the process by which the Debtors reject aircraft related leases and abandon owned aircraft.  The Aircraft Rejection/Abandonment Procedures limited the types of claims that could be asserted by Aircraft Finance Parties (as such term is defined therein) as

---

and of other types of general unsecured claims remain subject to the terms of the applicable Section 1110(b) Stipulations and the Aircraft Rejection/Abandonment Procedures Order (as defined herein).

[3] *Order (A) Establishing Procedures Authorizing Debtors, Subject to Subsequent Court Approval, to Perform Obligations and Cure Defaults Pursuant to Section 1110(A) of the Bankruptcy Code and to Enter Into Agreements to Extend the 60-Day Period Specified in Section 1110(A) Pursuant to Section 1110(B) of the Bankruptcy Code and (B) Authorizing the Filing of Redacted Section 1110(A) Election Notices and Section 1110(B) Agreements Under Seal* [Docket No. 352].

[4] Order *(I) Authorization to (A) Reject Leases Relating to Certain Aircraft And Other Related Equipment, (B) Abandon Certain Aircraft, Engines, and Other Related Equipment, (C) Transfer Title to Certain Aircraft, Engines, and Other Related Equipment, and (D) Satisfy the Surrender and Return Requirements Under the Bankruptcy Code, and (II) Approval of Related Notices and Procedures* [Docket No. 353] (the "Aircraft Rejection/Abandonment Procedures Order").

administrative priority and specified that certain categories of claims could only be asserted as general unsecured claims. *See* Aircraft Rejection/Abandonment Procedures Order at ¶¶ 13 and 14.

7. Pursuant to the Section 1110 Procedures and after extensive arms-length, good-faith negotiations with various aircraft counterparties, the Debtors entered into twenty-five stipulations pursuant to section 1110(b) of the Bankruptcy Code with respect to 124 aircraft and sixteen engines (the "<u>Section 1110(b) Stipulations</u>").

8. The Section 1110(b) Stipulations , which were filed under seal, permit the Debtors to continue operating certain aircraft on terms that the Debtors believe are fair, equitable, and in the best interest of the Debtors' estates and all stakeholders. The Section 1110(b) Stipulations generally provide that the Debtors may continue utilizing these aircraft in exchange for making certain agreed upon payments and contain customary terms and conditions.

9. With respect to eleven[5] of the twenty-five Section 1110(b) Stipulations, the Debtors and the applicable counterparties (such counterparties (or, as applicable, their nominees), the "<u>Aircraft Counterparties</u>") agreed to a methodology for the determination, settlement, and allowance of prepetition, general unsecured claims arising from the Debtors' rejection of aircraft related leases (the "<u>Section 1110(b) Settled Rejection Damage Claims</u>"). Other than prepetition, general unsecured claims related to the rejection of leases of such equipment, the Section 1110(b) Settled Rejection Damage Claims do not include, and nothing in this Motion or any related order shall affect the assertion, allowance and/or defenses for any

---

[5] A list of the Aircraft Counterparties is annexed hereto as <u>Exhibit A</u>.

other types of claims, including, without limitation, administrative priority claims and of other types of general unsecured claims not arising from the rejection of an aircraft related lease, which matters remain subject to the terms of the applicable Section 1110(b) Stipulations and the Aircraft Rejection/Abandonment Procedures Order.

10.     The Debtors request that the Court approve the resolution of the Section 1110(b) Settled Rejection Damage Claims in accordance with the methodology set forth in the applicable Section 1110(b) Stipulations, which methodology is restated in Paragraph 11 hereof.

## The Claim Settlements and Procedures for Final Approval

11.     The Debtors request approval of the Section 1110(b) Settled Rejection Damage Claims.  Because a portion of the claim amount cannot be determined until an aircraft related lease is rejected, the Debtors propose that each of the following procedures apply to establish the final amount of the Section 1110(b) Settled Rejection Damage Claims (without the necessity of obtaining any further order from the Court), which procedures authorize the settlement and allowance of such claims free from any objections other than as set forth below (the following procedures, collectively, the "Settlement Procedures"):

> a.      Upon rejection, an Aircraft Counterparty's prepetition general unsecured claim for rejection shall be the sum of the following (such methodology for calculating the rejection claims, the "Rejection Damage Claim Methodology"):  (i) (A) the amount under the applicable aircraft related agreement as the "Stipulated Loss Value"[6] or the equivalent term as of the Petition Date, less

---

[6] The Stipulated Loss Value is essentially a liquidated damage formula that is often calculated by multiplying the purchase price of the aircraft by percentage of the purchase price that decreases as the lease or security agreement approaches its term.  Attached hereto as Exhibit B is a list of the Stipulated Loss Value as of the Petition Date for each of the aircraft.  In the case of the transactions relating to the aircraft bearing FAA registration numbers N650ML and N651ML, the "Agreed Value" (as defined in the underlying operative documents) is the Stipulated Value for purposes of the claim formula for calculating the rejection damages claim.

(B) any postpetition payments made by the Debtors under the terms of the applicable Section 1110(b) Stipulation, plus (ii) any unpaid prepetition rent or installment payments, plus (iii) any swap breakage or hedging fees that are attributable to the affected aircraft that the Debtors are liable under any applicable agreements or otherwise , plus (iv) any reasonable expenses of the applicable Aircraft Counterparty attributable to the affected aircraft that the Debtors are required to reimburse or indemnify the applicable Aircraft Counterparty under the applicable aircraft related agreement.

b.   In accordance with the Aircraft Rejection/Abandonment Procedures Order, all proofs of claims for Section 1110(b) Settled Rejection Damage Claims arising from the rejection of an aircraft related lease must be filed with this Court on or before the later of (i) May 21, 2010 [Docket No. 577], the deadline set by the Court by which prepetition general unsecured claims must be filed, (ii) sixty (60) days after the effective date of such rejection or abandonment, or (iii) sixty (60) days after the Court resolves any objection to such rejection or abandonment.  In addition to filing such claims with this Court, the applicable Aircraft Counterparty shall send (via overnight courier, mail or electronic transmission) a courtesy copy of any such claim to (1) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California  94111, Attention:  Debra I. Grassgreen, Esq., Fax. No.:  (415) 263-7000, E-Mail:  Dgrassgreen@pszjaw.com, and (2) counsel to the Creditors' Committee, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 Attn: Brett H. Miller, Esq., Fax. No.:  (212) 468-8051, E-Mail: Bmiller@MoFo.com; *provided, however*, that the failure to provide such a courtesy copies shall not affect the validity of such claim, but only the timing of the Final Claims Procedures outlined below.

c.   Promptly after any Section 1110(b) Settled Rejection Damage Claim is filed, the Debtors shall review such Section 1110(b) Settled Rejection Damage Claim to ascertain if the Debtors agree or disagree as to whether the asserted claim comports with the Rejection Damage Claim Methodology.  If the Debtors disagree with any asserted Section 1110(b) Settled Rejection Damage Claim, the Debtors shall contact the applicable Aircraft Counterparty and shall work in good faith to resolve any issues so as to be able to agree upon the amount of such Section 1110(b) Settled Rejection Damage Claims calculated in accordance with the Rejection Damage Claim Methodology.  Although the amount of the claims under subparagraphs 11(a)(i), (ii) and (iii) hereof should be fixed by the time that the Section 1110(b) Settled Rejection Damage Claims are filed, the amounts of the claims under

subparagraph 11(a)(iv) hereof may remain contingent, unliquidated and/or otherwise not fixed at the time that such Section 1110(b) Settled Rejection Damage Claim is filed. The contingent and unliquidated nature of any claims asserted under subparagraph 11(a)(iv) hereof or other claims asserted by the applicable Aircraft Counterparty in such proof of claim shall not affect the timing or allowance of any claims asserted under subparagraphs 11(a)(i), (ii) and (iii) hereof and shall not prejudice a later amendment of such claim to liquidate any claim under subparagraph 11(a)(iv) hereof.

d.    Within thirty-five (35) days after the filing a Section 1110(b) Settled Rejection Damage Claim, the Debtors shall both:

(i)    Prepare in good faith a notice (each such notice, a "<u>Notice of Settlement</u>") setting forth (x) whether it agrees or disagrees that such Section 1110(b) Settled Rejection Damage Claims conforms to the Rejection Damage Claim Methodology, (y) the aggregate amount of the Section 1110(b) Settled Rejection Damage Claim determined as of that date and an itemization of the components of such claim that comprise the Rejection Damage Claim Methodology (either as delineated by the applicable Aircraft Counterparty or, if the Debtors believe in good faith that such proof of claim does not conform to the Rejection Damage Claim Methodology, as calculated by the Debtors), and (z) the notice address for counsel for the applicable Aircraft Counterparty (which, unless otherwise stated in such applicable Aircraft Counterparty's proof of claim or subsequent filing with the Court, is Vedder Price P.C., 1633 Broadway, 47th Floor, New York, New York 10019, Attention: Michael J. Edelman, Esq.). In addition, if the amount of the claims asserted under subparagraph 11(a)(iv) hereof remain contingent, unliquidated or are otherwise not fixed, the Notice of Settlement may state that the claims asserted under subparagraph 11(a)(iv) hereof remain subject to being liquidated and subject to future objections as to the amount of such claims under subparagraph 11(a)(iv) hereof.

(ii)    File with the Court the applicable Notice of Settlement and serve such Notice of Settlement upon, as applicable, (v) counsel to the affected Aircraft Counterparty; (w) counsel to the Creditors' Committee; (x) the Office of the United States Trustee; (y) all parties entitled to receive notice in these cases; and (z) counsel for the Debtors.

If the Debtors do not file a Notice of Settlement within thirty-five (35) days after the Section 1110(b) Settled Rejection Damage Claim is filed with the Court, then counsel to the applicable Aircraft Counterparty may file such Notice of Settlement and it will be subject to the same notice and objection procedures set forth herein.

e.     Notwithstanding any other provision herein, the sole basis to object to any Section 1110(b) Settled Rejection Damage Claim shall be that the amount of such claim is not calculated in accordance with the Rejection Damage Claim Methodology or the reasonableness of the expenses covered by paragraph 11(a)(iv).  Subject to such limitation, any party-in-interest that does not agree with the amount of any Section 1110(b) Settled Rejection Damage Claim as set forth in the Notice of Settlement will be required to (i) file with this Court an objection (an "Objection") on or before fourteen (14) days (the "Objection Deadline") after the filing the Notice of Settlement setting forth the basis of such Objection and (ii) serve prior to the Objection Deadline such Objection on (a) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attention:  Debra Grassgreen (service by electronic mail shall be accepted:  dgrassgreen@pszjlaw.com) and Joshua M. Fried, and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attention: Maria A. Bove, (b) counsel to the Creditors' Committee, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 Attn: Brett H. Miller, Esq., Fax. No.:  (212) 468-8051, E-Mail:  Bmiller@MoFo.com, and (c) counsel to the applicable Aircraft Counterparty.

f.     In the absence of any such Objection, the Section 1110(b) Settled Rejection Damage Claim will be allowed in the amount set forth in the Notice of Settlement and will be binding on all parties in interest in these chapter 11 cases.

g.     Upon the filing of an Objection, the Debtors, the applicable Aircraft Counterparties and the objector(s) will make a good-faith effort to resolve the Objection(s) consensually.  If, however, the Debtors, the applicable Aircraft Counterparty and the objector(s) are not able to resolve the Objection(s) on a consensual basis, the Notice of Settlement and the Objection(s) thereto will be heard by the Court at the next scheduled omnibus hearing with the sole issue to be determined by this Court being the appropriate amount of such Section 1110(b) Settled Rejection Damage Claim as determined in accordance with the Rejection Damage Claim Methodology.

h.    The settlement of any other claims not authorized pursuant to the these Settlement Procedures will be authorized only upon separate order of this Court upon a motion of the Debtors served upon those parties entitled to receive notice in these chapter 11 cases.

i.    In the event that a portion of any Section 1110(b) Settled Rejection Damage Claim under subparagraph 11(a)(iv) hereof is not liquidated and/or remains contingent (the "Unliquidated Claim Portion") when the Notice of Settlement is filed for the other portions of such Section 1110(b) Settled Rejection Damage Claim, then the Debtors will file and serve a subsequent Notice of Settlement with respect to the Unliquidated Claim Portion upon the parties specified in subparagraph 11(d)(ii) hereof within thirty-five (35) days after such Unliquidated Claim Portion becomes liquidated (as set forth in a claim amendment filed with this Court); *provided, however*, that if the Debtors fail to file such a subsequent Notice of Settlement with respect to any Unliquidated Claim Portion within such time, then counsel to the applicable Aircraft Counterparty may file and serve upon such parties a subsequent Notice of Settlement for such Unliquidated Claim Portion.  Upon the filing of a Notice of Settlement with respect to any Unliquidated Claim Portion, such Unliquidated Claim Portion shall be subject to the allowance procedures set forth in subparagraphs 11(e) – (h) and (j) of these Settlement Procedures; *provided* that any such subsequent Notice of Settlement filed with respect to any Unliquidated Claim Portion shall not affect in any way the timing, amount and/or allowance of any other portion of the related Section 1110(b) Settled Rejection Damage Claim that has been liquidated and allowed in accordance with these Settlement Procedures.

j.    Notwithstanding anything else provided herein, these Settlement Procedures only apply to the prepetition, general unsecured claims related to the rejection of aircraft related leases.  Nothing herein shall affect in any way , the allowance and/or defenses for any other types of claims, including, without limitation, administrative priority claims and of other types of general unsecured claims not arising from the rejection of an aircraft related lease, or the timing to assert such claims, defenses or objections thereto, all of which matters remain subject to the terms of the applicable Section 1110(b) Stipulations and the Aircraft Rejection/Abandonment Procedures Order.

12.    In no event will the allowance of any Section 1110(b) Settled Rejection

Damage Claims provide for any monetary payment to be made by the Debtors from property of

their estates to or on behalf of the applicable Aircraft Counterparty except under a chapter 11 plan of reorganization approved by this Court.

13. The Debtors acknowledge and agree that the Stipulated Loss Values set forth on Exhibit B set forth the portion of the Section 1110(b) Settled Rejection Damage Claims provided under subparagraph 11(a)(i)(A) hereof.

14. The allowance of any Section 1110(b) Settled Rejection Damage Claim will not affect the Debtors' rights, if any, to off-set, recoup, or reduce a Section 1110(b) Settled Rejection Damage Claim by any other means permitted under the Bankruptcy Code or under applicable non-bankruptcy law.

### Basis for Relief Requested

15. Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968). A settlement of claim by a debtor, however, constitutes a disposition of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350 (3d Cir. 1999). If a settlement falls outside the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *Id.* at 351. Typically, in addition to approval under section 363(b) of the Bankruptcy Code, Bankruptcy Rule 9019 requires a motion, notice and hearing as a prerequisite of approval.

16. To approve a compromise or settlement under Bankruptcy Rule 9019(a), a court should find that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g., In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). In determining whether to approve a settlement, the court must make an independent determination that the settlement is fair and reasonable. *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y 1993). The court may consider the opinions of the trustee or debtor in possession that the settlement is fair and reasonable. *Id.*; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). In addition, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see Nellis v. Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process.").

17. In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotations omitted); *see In re Purofied Down Prods.*, 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation.").

18. "The 'reasonableness' of a settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 426-27.

19. In this instance, the methodology by which the Section 1110(b) Settled Rejection Damage Claims are calculated is fair, equitable, reasonable, and in the best interest of

the Debtors' estates for the following reasons. Ordinarily, upon the rejection of an aircraft related lease, the claim would be determined by calculating the sum of the Stipulated Loss Value and the costs associated with satisfying the return conditions (the "Return Conditions") under the applicable aircraft agreements of the subject aircraft and then subtracting the fair market value of the aircraft.

20. The Return Conditions generally include but are not limited to (i) a valid certificate of airworthiness, (ii) engines and airframe having been serviced and a minimum number of cycles remaining; (iii) the aircraft being free and clear of all liens, (iv) the aircraft being configured for regular passenger use, (v) the removal of all of all markings or insignia painted on the aircraft, and (vi) removal of all corrosion. There is not always a bright line with respect to the satisfaction of the Return Conditions since many of the Return Condition terms in the applicable agreements are not defined and subject to interpretation. As a result, it is likely that the Debtors and the applicable Aircraft Counterparties would disagree on the claims arising from the Return Conditions.

21. The Debtors and their advisors believe that the determination of the fair market value of an aircraft and the cost associated with the Return Conditions of a rejected aircraft would be fact intensive and subject to dispute among the Debtors, the applicable Aircraft Counterparties, and other major constituencies in these cases. As a result, the liquidation of these claims would be time consuming and expensive.

22. However, the Debtors and their advisors believe that the value of the aircraft subject to the eleven Section 1110(b) Stipulations is roughly equivalent to the claims

arising from the Return Conditions. Since these values would likely be setoff against the other, the Debtors believe it is best to use Stipulated Loss Value (subject to the adjustments noted above) to arrive at the value of the Section 1110(b) Settled Rejection Damage Claims. The Debtors believe that any variation in the value of the Section 1110(b) Settled Rejection Damage Claims as a result of the methodology described herein as compared to the actual liquidated value of such claim and will be offset by the fees and expenses associated with expert reports and litigation before the Court.

23. Further, this Court, pursuant to Bankruptcy Rule 9019(b), may authorize the Debtors to settle certain claims without requiring a separate hearing for each settlement. In this regard, this Court and other courts in large chapter 11 cases have approved settlement procedures for the purpose of streamlining the administration of a debtor's estate. *See In re Tower Automotive, Inc., et al.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Mar. 14, 2005) [Docket No. 240] (establishing expedited procedures for the settlement of *de minimis* claims and causes of action); *In re Flying J Inc., et al.*, Case No. 08-13384 (MFW) (Bankr. D. Del. Mar. 6, 2009) [Docket No. 704] (same); *In re Dura Automotive Systems, Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Dec. 1, 2006) [Docket No. 436] (same); *In re UAL Corporation*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) [Docket No. 990] (same). *See also In re Delphi Corporation, et al.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005) [Docket No. 230] (establishing expedited procedures for settlement of reclamation claims); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Sept. 29, 2008) [Docket No. 1513] (establishing expedited procedures for settlement of ad valorem tax claims).

24.     If the Debtors were required to obtain the Court's prior approval to the settlement of each Section 1110(b) Settled Rejection Damage Claim, and considering the ever-growing size of the list of parties requesting notice and service of papers in these chapter 11 cases, the Debtors would incur significant costs associated with preparing, filing and serving separate motions for each proposed settlement.  Therefore, the Debtors desire to establish an omnibus procedure in these chapter 11 cases that will permit the Debtors to determination, settlement, and allowance of the Section 1110(b) Settled Rejection Damage Claims to be concluded on a more cost-effective and expeditious basis, while at the same time preserving an oversight function for parties-in-interest by providing them with an opportunity to object to the Notice of Settlement.

### Request for Waiver of Stay

25.     Further, to implement the foregoing successfully, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h) to the extent that such rule applies.

### Notice

26.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the Committee, and (iii) all persons and entities that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order in the form attached hereto as Exhibit C granting the relief requested herein and such other and further relief as is just.

Dated:   April 21, 2010
         New York, New York          PACHULSKI STANG ZIEHL & JONES LLP

                                     _/s/ Debra I. Grassgreen_
                                     Richard M. Pachulski
                                     Laura Davis Jones
                                     Debra I. Grassgreen
                                     Joshua M. Fried
                                     Maria A. Bove
                                     780 Third Avenue, 36th Floor
                                     New York, New York 10017
                                     Telephone:  (212) 561-7700
                                     Facsimile:  (212) 561-7777

                                     Attorneys for Debtors
                                     and Debtors in Possession

# EXHIBIT A

## (Settling Counterparties)

1. Export Development Canada
2. HSH Nordbank AG and Landesbank Baden-Wurttemberg
3. Fortis Bank Nederland N.V. and NIBC Bank N.V.
4. HSH Nordbank AG and Bank of Scotland plc
5. HSH Nordbank AG, Bank of Scotland plc, and Landesbank Baden-Wurttemberg
6. Export Canada Development and CIT Capital USA
7. Landesbank Baden-Wurttemberg
8. DVB Transport Finance Limited and Bremer Landesbank Kreditanstalt Oldenburg-Girozentrale
9. DVB Bank SE
10. DVB Bank SE, BNP Paribas, Commerzbank Aktiengesellschaft, Singapore Branch, NIBC Bank N.V., Credit Agricole Corporate and Investment Bank (f/k/a Calyon) and ING Bank N.V., Singapore Branch
11. Export Development Canada

**EXHIBIT B**

**(Stipulated Loss Values)**

Export Development Canada

N17156 - $9,662,204.60
N27172 - $9,560,409.10
N27173 - $9,560,409.10
N37178 - $9,821,217.43
N77181 - $9,779,154.11
N27185 - $9,956,397.90

HSH Nordbank AG and Landesbank Baden-Wurttemberg

N37342 - $12,582,290.31
N17358 - $12,784,784.75

Fortis Bank Nederland N.V. and NIBC Bank N.V.

N77260 - $12,044,535.80
N7264V - $12,044,535.80
N17275 - $12,110,094.05
N97325 - $12,256,636.82

HSH Nordbank AG and Bank of Scotland plc

N77286 - $11,781,717.67
N7291Z -$11,781,717.67

HSH Nordbank AG, Bank of Scotland plc, and Landesbank Baden-Wurttemberg

N77302 - $11,781,717.67
N7305V - $11,781,717.67
N27314 - $11,781,717.67

Export Canada Development and CIT Capital USA[1]

N715SF – To be provided.
N154SF – To be provided.

---

[1] The proposed amount for these aircraft is subject to further negotiation between the Debtors and the Settling Counterparties and will be filed with the Court no later than fourteen (14) days prior to the hearing date of this Motion.  To extent that the amount cannot be agreed upon by such time for any such aircraft, such transaction may be excluded from this settlement.

Landesbank Baden-Wurttemberg

N650ML - $11,636,000.00
N651ML - $11,209,000.00

DVB Transport Finance Limited and Bremer Landesbank Kreditanstalt Oldenburg-Girozentrale

N77278 - $11,761,687.36
N27318 - $11,870,829.51

DVB Bank SE

N87353 - $12,683,812.13

DVB Bank SE, BNP Paribas, Commerzbank Aktiengesellschaft, Singapore Branch, and NIBC Bank N.V.[2]

N75994 - To be provided.
N75993 - To be provided.
N75992 - To be provided.
N75987 - To be provided.
N75991 - To be provided.
N75996 - To be provided.
N75995 - To be provided.
N75998 - To be provided.

Export Development Canada

N434YV - $4,504,923.74
N436YV - $4,513,285.32
N437YV - $4,505,558.00
N449YV - $4,945,270.37
N444YV - $4,531,228.81
N447YV - $4,558,226.42
N448YV - $4,566,206.73
N445YV - $4,614,489.10
N446YV - $4,638,958.12
N454YV - $5,012,764.84
N455YV - $4,780,316.39
N456YV - $4,910,577.20

---

[2] The proposed amount for these aircraft is subject to further negotiation between the Debtors and the Settling Counterparties and will be filed with the Court no later than fourteen (14) days prior to the hearing date of this Motion.  To the extent that the amount cannot be agreed upon by such time for any such aircraft, such transaction may be excluded from this settlement

**EXHIBIT C**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., et al., | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

### ORDER AUTHORIZING DEBTORS' TO APPROVE
### THE DETERMINATION, SETTLEMENT, AND ALLOWANCE
### OF CERTAIN CLAIMS ARISING FROM THE REJECTION OF
### <u>AIRCRAFT RELATED LEASES AND RELATED PROCEDURES</u>

Upon the Motion, dated April 21, 2010 (the "<u>Motion</u>"),[2] Mesa Air Group, Inc. and certain

of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "<u>Debtors</u>"), pursuant to sections 363(b) and 502 of the title 11 of the United

States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), to implement procedures for the determination, settlement,

and allowance of certain claims arising from the rejection of certain aircraft leases, all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to (i) the Office of the United States Trustee

for the Southern District of New York, (ii) the attorneys for the Committee, and (iii) all persons

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and entities that have formally appeared and requested service in these cases pursuant to

Bankruptcy Rule 2002, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion (the "Hearing"); and

upon the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for relief granted herein; and after due deliberation and

sufficient cause appearing therefore, it is

>ORDERED that the Motion is granted as provided herein; and it is further

>ORDERED that the Debtors are authorized to settle the Section 1110(b) Settled

Rejection Damage Claims as described in the Motion in accordance with the following

settlement procedures ("Settlement Procedures"):

>a. Upon rejection, an Aircraft Counterparty's prepetition general unsecured claim for rejection shall be the sum of the following (such methodology for calculating the rejection claims, the "Rejection Damage Claim Methodology"):  (i) (A) the amount under the applicable aircraft related agreement as the "Stipulated Loss Value"[3] or the equivalent term as of the Petition Date, less (B) any postpetition payments made by the Debtors under the terms of the applicable Section 1110(b) Stipulation, plus (ii) any unpaid prepetition rent or installment payments, plus (iii) any swap breakage or hedging fees that are attributable to the affected aircraft that the Debtors are liable under any applicable agreements or otherwise, plus (iv) any reasonable expenses of the applicable Aircraft Counterparty attributable to the affected aircraft that the Debtors are required to reimburse or indemnify the applicable

---

[3] The Stipulated Loss Value is essentially a liquidated damage formula that is often calculated by multiplying the purchase price of the aircraft by percentage of the purchase price that decreases as the lease or security agreement approaches its term.  Attached hereto as Exhibit B is a list of the Stipulated Loss Value as of the Petition Date for each of the aircraft.  In the case of the transactions relating to the aircraft bearing FAA registration numbers N650ML and N651ML, the "Agreed Value" (as defined in the underlying operative documents) is the Stipulated Value for purposes of the claim formula for calculating the rejection damages claim.

Aircraft Counterparty under the applicable aircraft related agreement.

b.     In accordance with the Aircraft Rejection/Abandonment Procedures Order, all proofs of claims for Section 1110(b) Settled Rejection Damage Claims arising from the rejection of an aircraft related lease must be filed with this Court on or before the later of (i) May 21, 2010 [Docket No. 577], the deadline set by the Court by which prepetition general unsecured claims must be filed, (ii) sixty (60) days after the effective date of such rejection or abandonment, or (iii) sixty (60) days after the Court resolves any objection to such rejection or abandonment. In addition to filing such claims with this Court, the applicable Aircraft Counterparty shall send (via overnight courier, mail or electronic transmission) a courtesy copy of any such claim to (1) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attention: Debra I. Grassgreen, Esq., Fax. No.: (415) 263-7000, E-Mail: Dgrassgreen@pszjaw.com, and (2) counsel to the Creditors' Committee, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 Attn: Brett H. Miller, Esq., Fax. No.: (212) 468-8051, E-Mail: Bmiller@MoFo.com; *provided, however*, that the failure to provide such a courtesy copies shall not affect the validity of such claim, but only the timing of the Final Claims Procedures outlined below.

c.     Promptly after any Section 1110(b) Settled Rejection Damage Claim is filed, the Debtors shall review such Section 1110(b) Settled Rejection Damage Claim to ascertain if the Debtors agree or disagree as to whether the asserted claim comports with the Rejection Damage Claim Methodology. If the Debtors disagree with any asserted Section 1110(b) Settled Rejection Damage Claim, the Debtors shall contact the applicable Aircraft Counterparty and shall work in good faith to resolve any issues so as to be able to agree upon the amount of such Section 1110(b) Settled Rejection Damage Claims calculated in accordance with the Rejection Damage Claim Methodology. Although the amount of the claims under clause (a)(i), (ii) and (iii) of these Settlement Procedures should be fixed by the time that the Section 1110(b) Settled Rejection Damage Claims are filed, the amounts of the claims under clause (a)(iv) of these Settlement Procedures may remain contingent, unliquidated and/or otherwise not fixed at the time that such Section 1110(b) Settled Rejection Damage Claim is filed. The contingent and unliquidated nature of any claims asserted under clause (a)(iv) of these Settlement Procedures or other claims asserted by the applicable Aircraft Counterparty in such proof of claim shall not affect the timing or allowance of any claims asserted under clauses (a)(i), (ii) and (iii) of these

Settlement Procedures and shall not prejudice a later amendment of such claim to liquidate any claim under clause (a)(iv) of these Settlement Procedures.

d.      Within thirty-five (35) days after the filing a Section 1110(b) Settled Rejection Damage Claim, the Debtors shall both:

(i)      Prepare in good faith a notice (each such notice, a "<u>Notice of Settlement</u>") setting forth (x) whether it agrees or disagrees that such Section 1110(b) Settled Rejection Damage Claims conforms to the Rejection Damage Claim Methodology, (y) the aggregate amount of the Section 1110(b) Settled Rejection Damage Claim determined as of that date and an itemization of the components of such claim that comprise the Rejection Damage Claim Methodology (either as delineated by the applicable Aircraft Counterparty or, if the Debtors believe in good faith that such proof of claim does not conform to the Rejection Damage Claim Methodology, as calculated by the Debtors), and (z) the notice address for counsel for the applicable Aircraft Counterparty (which, unless otherwise stated in such applicable Aircraft Counterparty's proof of claim or subsequent filing with the Court, is Vedder Price P.C., 1633 Broadway, 47th Floor, New York, New York 10019, Attention:  Michael J. Edelman, Esq.).  In addition, if the amount of the claims asserted under clause (a)(iv) of these Settlement Procedures remain contingent, unliquidated or are otherwise not fixed, the Notice of Settlement may state that the claims asserted under clause (a)(iv) of these Settlement Procedures remain subject to being liquidated and subject to future objections as to the amount of such claims under clause (a)(iv) of these Settlement Procedures.

(ii)      File with the Court the applicable Notice of Settlement and serve such Notice of Settlement upon, as applicable, (v) counsel to the affected Aircraft Counterparty; (w) counsel to the Creditors' Committee; (x) the Office of the United States Trustee; (y) all parties entitled to receive notice in these cases; and (z) counsel for the Debtors.

If the Debtors do not file a Notice of Settlement within thirty-five (35) days after the Section 1110(b) Settled Rejection Damage Claim is filed with the Court, then counsel to the applicable Aircraft Counterparty may file such Notice of Settlement and it will be subject to the same notice and objection procedures set forth herein.

e.   Notwithstanding any other provision herein, the sole basis to object to any Section 1110(b) Settled Rejection Damage Claim shall be that the amount of such claim is not calculated in accordance with the Rejection Damage Claim Methodology or the reasonableness of the expenses covered by clause (a)(iv) of these Settlement Procedures.  Subject to such limitation, any party-in-interest that does not agree with the amount of any Section 1110(b) Settled Rejection Damage Claim as set forth in the Notice of Settlement will be required to (i) file with this Court an objection (an "Objection") on or before fourteen (14) days (the "Objection Deadline") after the filing the Notice of Settlement setting forth the basis of such Objection and (ii) serve prior to the Objection Deadline such Objection on (a) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, California 94111, Attention:  Debra Grassgreen (service by electronic mail shall be accepted:  dgrassgreen@pszjlaw.com) and Joshua M. Fried, and Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attention:  Maria A. Bove, (b) counsel to the Creditors' Committee, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 Attn: Brett H. Miller, Esq., Fax. No.:  (212) 468-8051, E-Mail:  Bmiller@MoFo.com, and (c) counsel to the applicable Aircraft Counterparty.

f.   In the absence of any such Objection, the Section 1110(b) Settled Rejection Damage Claim will be allowed in the amount set forth in the Notice of Settlement and will be binding on all parties in interest in these chapter 11 cases.

g.   Upon the filing of an Objection, the Debtors, the applicable Aircraft Counterparties and the objector(s) will make a good-faith effort to resolve the Objection(s) consensually.  If, however, the Debtors, the applicable Aircraft Counterparties and the objector(s) are not able to resolve the Objection(s) on a consensual basis, the Notice of Settlement and the Objection(s) thereto will be heard by the Court at the next scheduled omnibus hearing with the sole issue to be determined by this Court being the appropriate amount of such Section 1110(b) Settled Rejection Damage Claim as determined in accordance with the Rejection Damage Claim Methodology.

h.   The settlement of any other claims not authorized pursuant to the these Settlement Procedures will be authorized only upon separate order of this Court upon a motion of the Debtors served upon those parties entitled to receive notice in these chapter 11 cases.

i. In the event that a portion of any Section 1110(b) Settled Rejection Damage Claim under clause (a)(iv) of these Settlement Procedures is not liquidated and/or remains contingent (the "<u>Unliquidated Claim Portion</u>") when the Notice of Settlement is filed for the other portions of such Section 1110(b) Settled Rejection Damage Claim, then the Debtors will file and serve a subsequent Notice of Settlement with respect to the Unliquidated Claim Portion upon the parties specified in clause (d)(ii) of these Settlement Procedures within thirty-five (35) days after such Unliquidated Claim Portion becomes liquidated (as set forth in a claim amendment filed with this Court); *provided, however*, that if the Debtors fail to file such a subsequent Notice of Settlement with respect to any Unliquidated Claim Portion within such time, then counsel to the applicable Aircraft Counterparty may file and serve upon such parties a subsequent Notice of Settlement for such Unliquidated Claim Portion. Upon the filing of a Notice of Settlement with respect to any Unliquidated Claim Portion, such Unliquidated Claim Portion shall be subject to the allowance procedures set forth in clauses (e) – (h) and (j) of these Settlement Procedures; *provided* that any such subsequent Notice of Settlement filed with respect to any Unliquidated Claim Portion shall not affect in any way the timing, amount and/or allowance of any other portion of the related Section 1110(b) Settled Rejection Damage Claim that has been liquidated and allowed in accordance with these Settlement Procedures.

j. Notwithstanding anything else provided herein, these Settlement Procedures only apply to the prepetition, general unsecured claims related to the rejection of aircraft related leases. Nothing herein shall affect in any way , the allowance and/or defenses for any other types of claims, including, without limitation, administrative priority claims and of other types of general unsecured claims not arising from the rejection of an aircraft related lease, or the timing to assert such claims, defenses or objections thereto, all of which matters remain subject to the terms of the applicable Section 1110(b) Stipulations and the Aircraft Rejection/Abandonment Procedures Order.

; and it is further

ORDERED that the allowance of any Section 1110(b) Settled Rejection Damage Claim shall not affect the Debtors' rights of off-set, recoupment, or any other means by which allowed claims may be reduced under the Bankruptcy Code or under applicable non-bankruptcy law; and it is further

ORDERED that the allowance of any Section 1110(b) Settled Rejection Damage Claims shall not provide for any monetary payment to be made by the Debtors from property of their estates to or on behalf of the applicable Aircraft Counterparty except under a chapter 11 plan for one or more of the Debtors as approved by this Court; and it is further

ORDERED that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

ORDERED that all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a); and it is further

ORDERED that, notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: New York, New York
      May __, 2010

_____
UNITED STATES BANKRUPTCY JUDGE