PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP TO PROVIDE TAX ADVISORY SERVICES TO THE DEBTORS NUNC PRO TUNC TO APRIL 15, 2010

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for an Order Pursuant to Section 327(A) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP to Provide Tax Advisory Services to the Debtors Nunc Pro Tunc to April 15, 2010* (the "Motion") filed herewith by Mesa Air Group Inc., and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), will be held before the Honorable

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

Martin Glenn, at the United States Bankruptcy Court, Alexander Hamilton Customs House, One

Bowling Green, New York, New York, 10004, Courtroom 501, **at 10:00 a.m. on May 13, 2010**.

**PLEASE TAKE FURTHER NOTICE** that any response or objection to the

relief sought in the Motion must be filed with the Bankruptcy Court and served upon: (i) the

chambers of the Honorable Martin Glenn, One Bowling Green, New York, New York 10004,

Courtroom 501; (ii) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San

Francisco, California 94111 (Attn: Debra I. Grassgreen and Joshua M. Fried), and Pachulski

Stang Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017 (Attn:

Maria A. Bove), attorneys for the Debtors; (iii) Mesa Air Group, Inc., Law Department 410 N.

44th St. Suite 700, Phoenix, Arizona 85008, (Attn: Brian S. Gillman, Esq.); (iv)

PricewaterhouseCoopers LLP, 225 South Sixth Street, Suite 1400, Minneapolis, MN 55402

(Attn: Andrea Clark Smith); (v) the Office of the United States Trustee for the Southern District

of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Andrea B.

Schwartz); (vi) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York

10104 (Attn: Brett H. Miller, Lorenzo Marinuzzi, and Todd M. Goren), attorneys for the Official

Committee of Unsecured Creditors appointed in these chapter 11 cases; and (vii) any person or

entity with a particularized interest in the subject matter of the Motion, on or before **May 6,**

**2010**.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE.**

Dated: April 28, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Debra Grassgreen*

Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO
SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014
AND 2016, AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT
AND RETENTION OF PRICEWATERHOUSECOOPERS LLP TO PROVIDE TAX
ADVISORY SERVICES TO THE DEBTORS NUNC PRO TUNC TO APRIL 15, 2010**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Mesa Air Group, Inc. ("Mesa") and certain of its direct and indirect subsidiaries in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this application (the "Application") and respectively represent as follows:

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

## Background

1.      On January 5, 2010 (the "<u>Petition Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

3.      On January 14, 2010, the Office of the U.S. Trustee (the "<u>U.S. Trustee</u>") appointed an Official Committee of Unsecured Creditors in these cases (the "<u>Committee</u>").  The members of the Committee are: Bombardier, Inc., Embraer-Empresa Brasileira de Aeronáutica S.A., IHI Corporation, U.S. Bank National Association, AT&T Capital Services, Wilmington Trust Company, the Air Line Pilots Association, and the Association of Flight Attendants – CWA (ex-officio member).

4.      A detailed description of the Debtors' businesses, capital structure, and the circumstances that precipitated the commencement of these chapter 11 cases is set forth in the *Declaration of Michael J. Lotz in Support of First Day Motions Pursuant to Local Bankruptcy Rule 1007-2* filed on the Petition Date.

## Jurisdiction

5.      This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.      By this Application, the Debtors request that this Court enter an order in the form annexed hereto as <u>Exhibit A</u>, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rule 2014-1 of the Local Rules for the Southern District of New York (the "<u>Local Rules</u>"), authorizing the Debtors to retain and employ PricewaterhouseCoopers LLP ("<u>PricewaterhouseCoopers</u>") to provide tax advisory services to the Debtors in these chapter 11 cases *nunc pro tunc* to April 15, 2010, in accordance with the terms of the engagement letter, dated December 18, 2009 (the "<u>Engagement Letter</u>"), as of the date of the Motion.  A copy of the Engagement Letter is annexed hereto as <u>Exhibit B</u>.  In support of this Application, the Debtors submit herewith the affidavit of Alan D. Floria, a partner of PricewaterhouseCoopers (the "<u>Floria Declaration</u>").  A copy of the Floria Declaration is annexed hereto as <u>Exhibit C</u>.

7.      In light of the size and complexity of these chapter 11 cases, the Debtors require tax advisory services of an experienced professional services firm that is familiar with the Debtors' businesses and operations and the chapter 11 process.  As of December 18, 2009, the Debtors engaged PricewaterhouseCoopers, subject to the Court's approval, to provide services with respect to matters involving state or local tax authorities as described in the Engagement Letter.  PricewaterhouseCoopers, however, has not performed any services for the Debtors since entering into the Engagement Letter and the Petition Date.  In providing services to the Debtors in connection with these matters, PricewaterhouseCoopers' professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, debt structure, creditors, business and operations and related matters.  Accordingly, PricewaterhouseCoopers has developed significant relevant experience regarding

the Debtors that will assist PricewaterhouseCoopers in providing effective and efficient services in these chapter 11 cases.

## Scope of Services

8.      In accordance with the Engagement Letter, and as may be agreed to by PricewaterhouseCoopers and the Debtors, the Debtors seek to employ PricewaterhouseCoopers to provide a tax advisory services with respect to state and local tax planning or reporting matters, including research, discussions, preparation of memoranda, and attendance at meetings relating to such matter.  The Debtors also seek PricewaterhouseCoopers' services with respect to the Denver sales, use and occupational tax audit of Mesa Airlines Inc. and Mesa Air Group Inventory Management for the period of January 1, 2005 through December 31, 2007. PricewaterhouseCoopers will not use independent contractors to perform services under the Engagement Letter without Court approval.

9.      The services to be provided by PricewaterhouseCoopers to the Debtors will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals, and PricewaterhouseCoopers will seek to coordinate any services performed at the Debtors' request with the Debtors' other proposed professionals, including Deloitte Tax LLP, Imperial Capital LLC, and Pachulski Stang Ziehl & Jones LLP, as appropriate, to avoid duplication of effort.  If the Debtors seek to expand the scope of PricewaterhouseCoopers' retention, a supplemental affidavit will be filed with the Court and served on the U.S. Trustee and the Committee.

10.      Subject to this Court's approval of the Application, PricewaterhouseCoopers is willing to provide tax advisory services to the Debtors and to perform the services described in the Engagement Letter on the terms set forth therein.

11.     The PricewaterhouseCoopers professionals providing the Services will consult with internal PricewaterhouseCoopers bankruptcy retention and billing advisors (the "<u>Bankruptcy Retention Advisors</u>") to ensure compliance with the requirements of the Bankruptcy Code, as well as decrease the overall fees associated with the administrative aspects of PricewaterhouseCoopers' engagement.  The services provided by these Bankruptcy Retention Advisors shall include, but are not limited to, (i) assistance with the bankruptcy retention documents; (ii) assistance with the disinterestedness disclosures; and (iii) completion of fee applications.  Due to the specialized nature of these services, and consistency between bankruptcy venues, specific billing rates exist for these Bankruptcy Retention Advisors.[2]

## Disinterestedness of Professionals

12.     To the best of the Debtors' knowledge, and except as disclosed in the Floria Declaration, PricewaterhouseCoopers (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code, and neither holds nor represented an interest adverse to the Debtors and their estates and (ii) has no connection to the Debtors, their significant creditors or to certain other parties-in-interest in these chapter 11 cases whose names were supplied by the Debtors to PricewaterhouseCoopers.

13.     The Debtors have been informed that if any new relevant facts or relationships are discovered, PricewaterhouseCoopers will supplement its disclosures to the Court.

---

[2] The rate per hour for these PricewaterhouseCoopers bankruptcy retention and billing advisors by level of experience will be as follows: Partner: $780; Managing Director: $675; Director/Senior Manager: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150.  These rates are subject to periodic adjustments.  PricewaterhouseCoopers has agreed that the fees for the Bankruptcy Retention Advisors will not exceed more than 10% of the total tax advisory fees.

## Basis for Relief

14.     The Debtors have reviewed the qualifications and experience of PricewaterhouseCoopers' personnel and believe that such personnel have considerable experience providing tax advisory services.  PricewaterhouseCoopers' depth of experience and breadth of service capabilities render it particularly well-qualified and able to provide tax advisory services to the Debtors during the pendency of these chapter 11 cases.

15.     The Debtors have selected PricewaterhouseCoopers, subject to the Court's approval, to provide advice and assistance with respect to matters involving state and local tax authorities.  PricewaterhouseCoopers has become well acquainted with the Debtors' operations, debt structure, creditors, business and operations and related matters and can, therefore, provide effective and efficient services in these chapter 11 cases.

16.     Pursuant to sections 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist in carrying out a debtor's duties under the Bankruptcy Code.

17.     Specifically, section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).  Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all

of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Pro. 2014.

18.     By this Application, the Debtors request that the Court approve the compensation arrangements described in the Engagement Letter pursuant to section 327(a) of the Bankruptcy Code.  The compensation arrangements contained in the Engagement Letter and as discussed hereafter are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for PricewaterhouseCoopers to act expeditiously and prudently with respect to the matters for which it will be employed.

## Compensation and Fee Applications

19.     Pursuant to the terms and conditions of the Engagement Letter, and subject to the Court's approval, the professional fees charged for PricewaterhouseCoopers' services are calculated from the actual hours expended in providing the services multiplied by the hourly billing rates for the specific personnel involved.

20.     The proposed overall compensation structure (the "Fee Structure") is comparable to compensation generally charged by auditors of similar stature for comparable engagements, both in and out of court.

21.     Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter, PricewaterhouseCoopers' services will be billed at the hourly rates below.

|    |           |                 |
|----|-----------|-----------------|
| a. | Partners: | $595 per hour   |
| b. | Directors: | $400 per hour  |
| c. | Managers: | $300 per hour   |

|   |   |   |
|---|---|---|
| d. | Senior Associates: | $225 per hour |
| e. | Associates: | $170 per hour |
| f. | Administrative personnel: | $ 90 per hour |

22.     For the Denver audit services, as more fully described in the Engagement Letter, PricewaterhouseCoopers estimates that its fees will be between $28,000 and $32,000.  If unforeseen circumstances cause PricewaterhouseCoopers to exceed this estimate, PricewaterhouseCoopers will seek approval from the Debtors for the additional fees before the services are rendered.

23.     The billing rates above reflect, among other things, geographical differentials, differences in experience levels within classifications, and differences between types of services being provided.  In the normal course of business, PricewaterhouseCoopers revises its regular hourly rates to reflect changes in responsibilities, increased experience and increased costs of doing business.  Accordingly, PricewaterhouseCoopers requests that the aforementioned rates be revised to the applicable hourly rates that will be in effect from time to time.  PricewaterhouseCoopers will provide ten (10) business days notice to the Debtors, Committee, and the U.S. Trustee prior to any increases in the rate structure disclose herein. After such notice, changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

24.     PricewaterhouseCoopers will also seek reimbursement for all necessary and reasonable out-of-pocket expenses (including the reasonable fees, disbursements, and other charges of legal counsel that may be retained by PricewaterhouseCoopers in connection with this engagement, and any other consultants and advisors retained by PricewaterhouseCoopers).

25. Reasonable and documented actual expenses, including travel (with air travel based on coach fares), report production, delivery services, and other expenses incurred in providing the services, will be included in the total billed.

26. In the year prior to the Petition Date, the Debtors paid PricewaterhouseCoopers approximately $6,150 for fees and expenses pursuant to the terms of prior engagements. As of the Petition Date, PricewaterhouseCoopers did not hold a prepetition claim against the Debtors for services rendered or reimbursable fees in connection with the engagement. To the extent that PricewaterhouseCoopers is holding funds from the Debtors in excess of fees earned and reimbursements due as of the Petition Date, PricewaterhouseCoopers will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtors to PricewaterhouseCoopers, subject to compliance with applicable fee application requirements.

27. In connection with the engagement, PricewaterhouseCoopers will be entitled to compensation for any time and actual reasonable expenses (including, without limitation, reasonable legal fees and expenses) that it may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Debtors, including, without limitation, those relating to the Debtors but arising other than as a result of or in connection with this engagement.

28. PricewaterhouseCoopers will charge the Debtors for its expenses in a manner and at rates consistent with charges made generally to its other clients, the Court's Administrative Order M-389 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases), and the Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the Executive Office for the United States Trustees. PricewaterhouseCoopers understands that (a) it shall accept as compensation such sums as may be allowed by the Court and (b) interim and final fee awards are subject to approval by this Court.

29.     PricewaterhouseCoopers has not shared or agreed to share any of its compensation in connection with this matter with any other nonaffiliated person, except as permitted by section 504 of the Bankruptcy Code.

30.     PricewaterhouseCoopers will file interim and final fee applications for allowance of its compensation and expenses, with respect to its services, and PricewaterhouseCoopers will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the Court, guidelines established by the United States Trustee for the Southern District of New York, and such other procedures as may be fixed by order of this Court, including but not limited to the Court's *Order to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated January 26, 2010.

31.     Because it is not the general practice of PricewaterhouseCoopers' tax advisory personnel to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis, PricewaterhouseCoopers is requesting that it document its services as follows:

> - Hourly Services - PricewaterhouseCoopers will submit a narrative summary of each project category describing the services offered, identification of each professional, number of hours spent and the amount of compensation requested, as well as reasonably detailed records of its

hourly fees incurred in connection with its services that shall set forth a description of the services rendered by each professional and the amount of time spent on each date, in .5 hour increments. These time descriptions still provide the ability to review the time entries and evaluate the services provided by PricewaterhouseCoopers professionals.

### Indemnity

32. As set forth in the Engagement Letter and subject to the terms and conditions therein, the Debtors agreed to indemnify PricewaterhouseCoopers and certain related parties from losses directly or indirectly in connection with, arising out of, based upon, or related to the engagement of PricewaterhouseCoopers under the Engagement Letter. The Debtors believe the indemnity provision is a reasonable term and condition of PricewaterhouseCoopers' engagement. PricewaterhouseCoopers and the Debtors believe that the indemnity provisions are comparable to those generally obtained by audit firms of similar stature to PricewaterhouseCoopers and for comparable engagements, both in and out of court. The proposed indemnification will not include (i) gross negligence, willful misconduct, or fraud of PricewaterhouseCoopers, and (ii) a material breach of a term or condition of the Engagement Letter.

33. The payment of indemnity pursuant to the Engagement Letter will be subject an application of the Court (interim or final as the case may be) and will be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought.

### Notice

34. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Application on (i) counsel for the Committee; and (ii) parties in interest listed on the Master Service List (as defined in the *Order Pursuant to Section 105(a)*

*of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Authorizing the Implementation*

*of Notice and Case Management Procedures*, entered on January 15, 2010 [Docket No. 103]). In

light of the nature of the relief requested, the Debtors submit that no further notice need be

provided.

## **No Prior Request**

35.     No previous request for the relief sought herein has been made to this

Court or any other court.

WHEREFORE, the Debtors request entry of the order attached hereto as <u>Exhibit A</u>

granting the relief requested herein and such other and further relief as is just.

Dated: April \_\_\_, 2010          MESA AIR GROUP, INC.; MESA AIR NEW
              YORK, INC.; MESA IN-FLIGHT, INC.;
     New York, New York      FREEDOM AIRLINES, INC.; MESA AIRLINES,
              INC.; MPD, INC.; RITZ HOTEL
              MANAGEMENT CORPORATION; REGIONAL
              AIRCRAFT SERVICES, INC.; AIR MIDWEST,
              INC.; MESA AIR GROUP AIRLINE
              INVENTORY MANAGEMENT, LLC; NILCHI,
              INC.; AND PATAR, INC.


              */s/ Michael J. Lotz*
              By:  Michael J. Lotz
              Title: President

**EXHIBIT A**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP TO PROVIDE TAX ADVISORY SERVICES TO THE DEBTORS NUNC PRO TUNC TO APRIL 15, 2010

Upon the Application of Mesa Air Group, Inc., and certain of its direct and

indirect subsidiaries (the "Debtors") for an Order, pursuant to sections 327(a) of the Bankruptcy

Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1, authorizing and approving the

employment and retention of PricewaterhouseCoopers LLP ("PricewaterhouseCoopers") to

provide tax advisory services to the Debtors in these chapter 11 cases *nunc pro tunc* to April 15,

2010, in accordance with the terms of the engagement letter (the "Engagement Letter"), dated

December 18, 2009 (the "Application");[2] and upon the Declaration of Alan D. Floria (the "Floria

Declaration"), filed in support of the Application, and the Court being satisfied, based on the

representations made in the Fleming Declaration, that PricewaterhouseCoopers represents no

interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is

to be engaged, under section 327(a) of the Bankruptcy Code as modified by section 1107(b); and

the Court having jurisdiction to consider the Application and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED that, in accordance with section 327(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain PricewaterhouseCoopers to provide tax advisory services, *nunc pro tunc* to April 15, 2010, on the terms set forth in the Engagement Letter and the Application, to provide the following services:

a.   tax advisory services with respect to state and local tax planning or reporting matters, including research, discussions, preparation of memoranda, and attendance at meetings relating to such matter;

b.   assistance with a Denver Sales, Use and Occupational Tax audit of Mesa Airlines Inc. and Mesa Air Group Inventory Management for the period of January 1, 2005 through December 31, 2007; and

       c.     such other services as may be requested and agreed to by PricewaterhouseCoopers pursuant to separate engagement letters, and separate approval by Court Order; and it is further

ORDERED that PricewaterhouseCoopers shall be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated November 25, 2009, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United Trustee Fee Guidelines (collectively, the "Fee Guidelines"), and the Court's *Order to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated June 26, 2010 [Docket No. 181]; and it is further

ORDERED that PricewaterhouseCoopers shall submit time records describing the services rendered by each professional and the amount of time spent on each date, in half-hour (0.5) increments, by each individual rendering services on behalf of the Debtors; and it is further

ORDERED that PricewaterhouseCoopers shall be reimbursed only for reasonable and necessary expenses as provided by the Fee Guidelines; and it is further

ORDERED that ten business days' notice must be provided by PricewaterhouseCoopers to the Debtors, the Committee, and the U.S. Trustee prior to any increases in the rates set forth in the Engagement Letter and such notice must be filed with the Court; and it is further

ORDERED that PricewaterhouseCoopers will not seek to use independent contractors to perform services under the Engagement Letter without the Court approval; and it is further

ORDERED that all requests of PricewaterhouseCoopers for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, *however*, that in no event shall PricewaterhouseCoopers be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED that in the event PricewaterhouseCoopers seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by PricewaterhouseCoopers for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in PricewaterhouseCoopers's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regards to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that in these cases PricewaterhouseCoopers shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of

PricewaterhouseCoopers's counsel other than those incurred in connection with a request of PricewaterhouseCoopers for payment of indemnity; and it is further

ORDERED that in no event shall PricewaterhouseCoopers be indemnified if the Debtors or representatives of the estates, assert a claim for, and a court determines by final order that such claim arose out of, PricewaterhouseCoopers' own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. To the extent this Order is inconsistent with the Engagement Letter or the Application, this Order shall govern; and it is further

ORDERED that notwithstanding any provision to the contrary in the Application or the Engagement Letter the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: May __, 2010
     New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**(ENGAGEMENT LETTER BETWEEN PRICEWATERHOUSECOOPERS LLP AND MESA AIR GROUP, INC.)**



**PRICEWATERHOUSECOOPERS** [image]

PricewaterhouseCoopers LLP
1850 North Central Ave
Suite 700
Phoenix AZ 85004-4563
Telephone (602) 364 8000
Facsimile (602) 364 8001

December 18, 2009

Mr. Keith Kranzow
Vice President of Finance
Mesa Air Group, Inc.
410 North 44th Street, Suite 700
Phoenix, AZ 85008-7608

Dear Mr. Kranzow:

This engagement letter confirms that Mesa Air Group, Inc. ("you" or "Mesa") has engaged
PricewaterhouseCoopers LLP ("we" or "us" or "PwC") to provide the services described below.

## Scope of Our Services

From time to time, you may request PwC to provide services in connection with state and local tax
matters that will not be the subject of a separate engagement letter.

Subject to our acceptance, PwC will provide services necessary to respond to matters presented
to PwC by Mesa, or matters PwC brings to the attention of Mesa for which Mesa agrees PwC
should provide assistance. The following illustrates the nature of the services intended to be
covered by this engagement letter:

- **Recurring state and local tax services**

  We will provide advice, answers to questions and/or opinions on state and local tax
  planning or reporting matters, including research, discussions, preparation of memoranda
  and attendance at meetings relating to such matters, as mutually determined to be
  necessary.

- **Matters involving state and local tax authorities**

  We will provide advice and/or assistance with respect to matters involving state and local
  tax authorities on an as-needed or as-requested basis.

These examples are not meant to limit the services we may provide to Mesa under the terms of
this engagement letter. We will keep you informed as of the nature of any services we are
providing under this engagement letter. All related periodic billings (see Fees and Expenses
below) will describe the services rendered during the period.

Any services covered by a separate engagement letter will be governed by the terms and
conditions set forth thereunder.

Recently you requested our assistance with a Denver Sales, Use and Occupational Privilege Tax audit
of Mesa Airlines Inc. and Mesa Air Group Inventory Management for the period of January 1, 2005
through December 31, 2007. This assistance is anticipated to involve communications regarding the
scope of the audits, appropriate sampling methodologies, unique business transactions, technical
issues and timing, performance and completion of the audit. As necessary, this assistance will also
include research and meetings to resolve issues identified during the audit. This assistance may also
involve making available and presenting Mesa hard-copy documentation to Denver Finance personnel
in our Denver office.



To the extent significant Denver audit issues cannot be resolved, we will separately discuss and define the administrative appeal assistance we can provide. This administrative appeal assistance is not included within the scope of the audit support mentioned above.

## Other PricewaterhouseCoopers Firms

PwC is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of PwC, the "Other PwC Firms"). While performing the Services hereunder, PwC may, in its discretion, draw on the resources of and subcontract to its subsidiaries and/or the Other PwC Firms (each a "PwC Firm Subcontractor"). You agree that PwC may provide information PwC receives in connection with this engagement letter, including your entire tax return information, to its subsidiaries and/or the Other PwC Firm(s) located outside the United States to perform the Services and/or for internal administrative and regulatory compliance purposes.

We will be solely responsible for the provision of the Services (including those performed by each PwC Firm Subcontractor) and no Other PwC Firm shall have any liability or obligations arising out of this engagement letter. Consequently, you agree (a) to bring any claim or other legal proceeding of any nature arising from the Services against us and not against any PwC Firm Subcontractors or their or PwC's respective partners, principals or employees (collectively the "Beneficiaries") and (b) ensure or procure that your subsidiaries and affiliates will not assert any such claim or other legal proceeding against us or the Beneficiaries. If any of your subsidiaries and affiliates receive Services under this engagement letter, you agree to provide a copy of this engagement letter to such entities, and you will notify them that although PwC Firm Subcontractors may interact with them, the delivery of Services under this engagement letter is governed by the terms of this engagement letter (including the liability limitations herein), and they should notify you of any disputes or potential claims arising from the Services.

By entering into this engagement letter you are binding your subsidiaries and affiliates to the extent that you have authority to do so. We disclaim any contractual or other responsibility or duty of care to any other subsidiaries or affiliates. While we are entering into this engagement letter on our own behalf, this section is intended for the benefit of each PwC Firm Subcontractor that provides services under this engagement letter.

## Other Subcontractors

We may engage (a) subcontractor(s), other than Other PwC Firms, to perform services in connection with this engagement. You agree that we may subcontract any of the Services hereunder provided that we shall be responsible for the fulfillment of our obligations under this engagement letter. You acknowledge that we may disclose your information, including your entire tax return information, to such subcontractor involved in the provision of the Services, including any subcontractor located outside the United States.

Upon request, we will be happy to provide details on the supervision and billing arrangements we use in connection with these professionals.

## Consents to Disclose Client Information

Mesa authorizes PwC to participate in discussions with and to disclose your information, including your tax return information, to your agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as you may direct.



You have the ability to request a more limited disclosure than that authorized by the Other PricewaterhouseCoopers Firms, Other Subcontractors and Consents to Disclose Client Information provisions of this engagement letter, as you may direct. This consent is valid until the later of three years following receipt of your information or completion of the Services covered by this engagement letter.

**Ownership and Use**

We are providing these Services and deliverables solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility or duty of care to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material prepared for and delivered to you under this engagement letter, except as follows: we own our working papers, preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which we may have discovered or created as a result of the Services. You have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

In addition to deliverables, we may develop software or electronic materials (including spreadsheets, documents, databases and other tools) to assist us with an engagement. If we make these available to you, they are provided "as is" and your use of these materials is at your own risk.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us.

**Your Responsibilities**

To facilitate our work, you will need to provide the following assistance:

To facilitate PricewaterhouseCoopers work, we will consult with you and any primary contacts assigned by you on an ongoing basis to determine specific documents and applicable information requested and needed to complete the audit.

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain your internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.



**Fees and Expenses**

Our fee is based on the time required by our professionals to complete the engagement. Individual hourly rates vary according to the experience and skill required. Hourly rates may be revised from time to time, and the adjusted rates will be reflected in billings.

| | | |
|---|---|---|
| Partners | : | $595 per hour |
| Directors: | | $400 per hour |
| Managers: | | $300 per hour |
| Senior Associates: | | $225 per hour |
| Associates: | | $170 per hour |
| Administrative: | | $90 per hour |

For the Denver audit assistance identified in this letter, we estimate our fees for this engagement will be between $28,000 and $32,000.  If unforeseen circumstances will cause us to exceed this estimate, we will discuss and seek your approval for the additional fees before the services are performed.

We also will bill Mesa for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel.  You agree to reimburse us for sales, use or value added tax, if applicable, which will be included in the invoices for Services or at a later date if it is determined that such taxes should have been collected.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this engagement letter. In the event we believe an additional fee is required as the result of the failure of Mesa to meet any of these requests or for any other reason, we will inform you promptly.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis.  Payment of our invoices is due on presentation and expected to be received within 15 days of the invoice date.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.

**Termination and Dispute Resolution**

This engagement letter has a term of two years.  Either party may terminate the Services by giving notice to that effect.  Any unresolved dispute relating in any way to the Services or this engagement letter shall be resolved by arbitration.  The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect.  The arbitration will be conducted before a panel of three arbitrators.  The arbitration panel shall have no power to award non-monetary or equitable relief of any sort.  It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below.  You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.



This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our aggregate liability for all claims, losses, liability or damages in connection with this engagement letter or the Services, whether as a result of breach of contract, tort (including negligence) or otherwise, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular Service giving rise to the liability under this engagement letter. In addition, we will not be liable in any event for lost profits, consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us and each PwC Firm Subcontractor and our respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or deliverables under this engagement letter, except to the extent determined to have resulted from our gross negligence or intentional misconduct relating to such Services and/or deliverables.

**Regulatory Matters**

Notwithstanding anything to the contrary in this engagement letter, you have no obligation of confidentiality with respect to any materials, advice or portions of deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Certain federal and state regulations require taxpayers to disclose their participation in certain reportable transactions to the taxing authorities. Mesa shall advise PwC if Mesa determines that any matter covered by this engagement letter is a reportable transaction that is required to be disclosed. Certain federal and state regulations also require PwC to submit information returns and maintain lists of certain Mesa engagements if PwC is a material advisor to Mesas that have participated in a reportable transaction. Therefore, if PwC determines, after consultation with Mesa, that Mesa has participated in a transaction causing PwC to have a registration and/or list maintenance obligation, PwC will place Mesa's name and other required information on a list. PwC will contact Mesa if PwC is required to provide Mesa's name to the U.S. Internal Revenue Service or any state in connection with any matter under this engagement letter.



**Federal (Internal Revenue Code Section 6694) and State Preparer Standards**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.

Our work may require consultation with a PwC subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

No party to this engagement letter may assign or transfer this engagement letter, or any rights, obligations, claims or proceeds from claims arising under it, without the prior written consent of the other party, and any assignment without such consent shall be void and invalid. If any provision of this engagement letter is found to be unenforceable, the remainder of this engagement letter shall be enforced to the extent permitted by law. If we perform the Services prior to both parties executing this engagement letter, this engagement letter shall be effective as of the date we began the Services.

You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

\*   \*   \*   \*   \*

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with me at (213) 217-3419 or Rhonda Sparlin at (720) 931-7539. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP

By: _____

Michael I. Fleming, Partner



**ACKNOWLEDGED AND AGREED:**

**Mesa Air Group, Inc., individually and on behalf of its subsidiaries and affiliates**

**Signature of Mesa official:**  _____

**Please print name:**  _____

**Title:**  _____

**Date:**  _____

# EXHIBIT C

## (DECLARATION OF ALAN D FLORIA)

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
Joshua M. Fried

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF ALAN D. FLORIA IN SUPPORT OF
DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTION
327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND
2016, AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PRICEWATERHOUSECOOPERS LLP TO PROVIDE TAX
ADVISORY SERVICES TO THE DEBTORS NUNC PRO TUNC TO APRIL 15, 2010**

I, Alan D. Floria, being duly sworn, deposes and says:

1.       I am a partner of the firm of PricewaterhouseCoopers LLP

("PricewaterhouseCoopers"), which has an office located at 350 South Grand Avenue, 49th

Floor, Los Angeles, California, 90071.  I make this declaration (the "Declaration") in support of

the *Debtors' Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code,*

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

*Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 Authorizing the Employment and Retention of PricewaterhouseCoopers to Provide Tax Advisory Services to the Debtors Nunc Pro Tunc* to April 15, 2010 (the "<u>Application</u>").  The above–captioned debtors (the "<u>Debtors</u>") seek to retain PricewaterhouseCoopers effective as of April 15, 2010 pursuant to the terms and conditions set forth in the engagement letter (the "<u>Engagement Letter</u>"), which is annexed to the Application as <u>Exhibit B</u>.

2.     The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of PricewaterhouseCoopers or its affiliates.

**PricewaterhouseCoopers' Disinterestedness**

3.     In connection with the preparation of this Declaration, PricewaterhouseCoopers reviewed the list of potential parties in interest that it received from the Debtors (the "<u>Parties in Interest</u>"), a copy of which is annexed hereto as <u>Exhibit 1</u>.

4.     Except as set forth herein, to my knowledge based on reasonable inquiry, (a) PricewaterhouseCoopers, and its partners, principals, directors, and employees (the "<u>PricewaterhouseCoopers Professionals</u>") that are anticipated to provide the services do not hold or represent any interest adverse to any of the Debtors with respect to the matters on which PricewaterhouseCoopers is to be retained in these chapter 11 cases, and (b) the PricewaterhouseCoopers Professionals have no relationship to any of the Debtors, any of the Debtors' significant creditors, other known parties-in-interest in these chapter 11 cases, or to the Debtors' attorneys that have been identified as assisting the Debtors in these chapter 11 cases, except as described herein.

5.	From time to time, PricewaterhouseCoopers and its affiliates have provided, currently provide or may currently provide services and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these chapter 11 cases.

6.	PricewaterhouseCoopers and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that have been identified to us to be assisting the Debtors or various committees.  Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, PricewaterhouseCoopers or its affiliates in matters unrelated to these chapter 11 cases.

7.	To check upon and disclose possible relationships with parties-in-interest in these chapter 11 cases, PricewaterhouseCoopers researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors.  The identities of these parties-in-interest were provided to PricewaterhouseCoopers by counsel to the Debtors.

8.	Despite the efforts described above to identify and disclose PricewaterhouseCoopers' connections with the parties-in-interest in these chapter 11 cases, because PricewaterhouseCoopers is a nationwide firm with thousands of personnel, and because

the Debtors are a large enterprise, PricewaterhouseCoopers is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if PricewaterhouseCoopers discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

9. From this internal search, PricewaterhouseCoopers has determined that PricewaterhouseCoopers has provided and likely will continue to provide services unrelated to the Debtors' case for the various entities shown on <u>Exhibit 2</u>. Our assistance to these parties has been primarily related to auditing, tax, and/or other consulting services. To the best of my knowledge, no services have been provided to these creditors or other parties in interest which could impact their rights in the Debtors' case, nor does PwC's involvement in this case compromise its ability to continue such auditing, tax and/or consulting services. With respect to those potential parties in interest listed on <u>Exhibit 2</u> who are PwC clients, none of those clients accounted for more than 1.0% of PwC's revenues for the fiscal year ended June 30, 2009.

10. Except as may be disclosed herein, to the best of my knowledge, PricewaterhouseCoopers does not hold or represent any interest adverse to the Debtors, and I believe that PricewaterhouseCoopers and the PricewaterhouseCoopers Professionals are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

**<u>Scope of Services</u>**

11. In accordance with the Engagement Letter, and as may be agreed to by PricewaterhouseCoopers and the Debtors, the Debtors seek to employ PricewaterhouseCoopers to provide tax advisory services with respect to state and local tax planning or reporting matters, including research, discussions, preparation of memoranda, and attendance at meetings relating

to such matters. The Debtors also seek PricewaterhouseCoopers' services with respect to the Denver sales, use and occupational tax audit of Mesa Airlines Inc. and Mesa Air Group Inventory Management for the period of January 1, 2005 through December 31, 2007. PricewaterhouseCoopers will not use independent contractors to perform services under the Engagement Letters without Court approval.

12. The services to be provided by PricewaterhouseCoopers to the Debtors will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals, and PricewaterhouseCoopers will seek to coordinate any services performed at the Debtors' request with the Debtors' other proposed professionals, including Deloitte Tax LLP, Imperial Capital LLC, and Pachulski Stang Ziehl & Jones LLP, as appropriate, to avoid duplication of effort. If the Debtors seek to expand the scope of PricewaterhouseCoopers' retention, a supplemental affidavit will be filed with the Court and served on the U.S. Trustee and the Committee.

13. Subject to this Court's approval of the Application, PricewaterhouseCoopers is willing to provide audit services to the Debtors and to perform the services described in the Engagement Letter on the terms set forth therein.

14. The PwC professionals providing the Services will consult with internal PricewaterhouseCoopers bankruptcy retention and billing advisors (the "Bankruptcy Retention Advisors") to ensure compliance with the requirements of the Bankruptcy Code, as well as decrease the overall fees associated with the administrative aspects of PricewaterhouseCoopers' engagement. The services provided by these Bankruptcy Retention Advisors shall include, but are not limited to, (i) assistance with the bankruptcy retention documents; (ii) assistance with the disinterestedness disclosures; and (iii) completion of fee applications. Due to the specialized

nature of these services, and consistency between bankruptcy venues, specific billing rates exist

for these Bankruptcy Retention Advisors.[2]

**Reasonableness of Compensation**

15.     The Fee Structure described in the Application and Engagement Letter is consistent with PricewaterhouseCoopers' normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the audit services to be provided in connection with these chapter 11 cases.

16.     PricewaterhouseCoopers will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York and any applicable orders of the Court, provided that PricewaterhouseCoopers and its professionals shall only be required to provide summary time records for services rendered postpetition, in half-hourly increments.

17.     Because it is not the general practice of PricewaterhouseCoopers' tax advisory personnel to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis, PricewaterhouseCoopers is requesting that it document its services as follows:

- Hourly Services - PricewaterhouseCoopers will submit a narrative summary of each project category describing the services offered, identification of each professional, number of hours spent and the amount of compensation requested, as well as reasonably detailed records of its hourly fees incurred in connection with its services that shall set forth a

---

[2] The rate per hour for these PricewaterhouseCoopers bankruptcy retention and billing advisors by level of experience will be as follows: Partner: $780; Managing Director: $675; Director/Senior Manager: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates are subject to periodic adjustments. PricewaterhouseCoopers has agreed that the fees for the Bankruptcy Retention Advisors will not exceed more than 10% of the total tax advisory fees.

description of the services rendered by each professional and the amount of time spent on each date, in .5 hour increments. These time descriptions still provide the ability to review the time entries and evaluate the services provided by PricewaterhouseCoopers professionals.

18.     Before the Petition Date, the Debtors paid PricewaterhouseCoopers approximately $6,150 for fees and expenses pursuant to the terms of prior engagements. As of the Petition Date, PricewaterhouseCoopers did not hold a prepetition claim against the Debtors for services rendered or reimbursable fees in connection with the engagement. To the extent that PricewaterhouseCoopers is holding funds from the Debtors in excess of fees earned and reimbursements due as of the Petition Date, PricewaterhouseCoopers will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtors to PricewaterhouseCoopers, subject to compliance with applicable fee motion requirements.

19.     To the best of my knowledge, PricewaterhouseCoopers has no agreement with any other entity to share with such entity any compensation received by PricewaterhouseCoopers in connection with the Debtors' bankruptcy cases.

State of California
County of San Francisco

Dated: April 28, 2010

_Alan D. Floria_ (signature)
Alan D. Floria

SWORN TO AND SUBSCRIBED before me on
this 28th day of April, 2010.

_Marianne Aubert_ (signature)
NOTARY PUBLIC
My Commission expires: 01/10/2013

MARIANNE AUBERT
Commission # 1830111
Notary Public - California
San Francisco County
My Comm. Expires Jan 10, 2013

Proved to me on the basis of satisfactory evidence
to be the person who appeared before me.

# **EXHIBIT 1**

## **(PARTIES-IN-INTEREST)**

## Debtors and Non-Debtor Affiliates

Air Midwest, Inc.
Freedom Airlines, Inc.
Mesa Air Group, Inc.
Mesa Air Group Airline Inventory Management, LLC
Mesa Air New York, Inc.
Mesa Airlines, Inc.
Mesa In-Flight, Inc.
MPD, Inc.
Nilchi, Inc.
Patar, Inc.
Regional Aircraft Services, Inc.
Ritz Hotel Management Corp.

## Directors

Jonathan Ornstein
Michael J. Lotz
Daniel J. Altobello
Robert Beleson
Carlos E. Bonilla
Joseph L. Manson
Peter F. Nostrand
Maurice A. Parker
Richard R. Thayer
Brian Gillman
Christopher Pappaioanou

## Entities in Which the Debtors Have an Indirect Interest

Finao Telserra Fund I LLP
Indigo Miramar LLC
Mo-Go LLC

## Secured Lenders

AAR Corp.
Ameritech Credit Corporation
BCI Aircraft Leasing
Bombardier
Bombardier Services Corp.
Brafco
CIT Group
Citibank
Citicorp North America
Craft
Debis Financial Services
EDC
Fleet Bank
Fluid Aviation, LLC
GE
GE Commercial Aviation Services
General Electric Credit Corporation
National City Leasing Corporation

Pacific Century Leasing Inc.
Philip Morris Credit Corp
Raspro
Phillip Morris Credit Corp
Raytheon
Transamerica Finance
Wonderfulworld Holding BV

**Counterparties to Litigation with the Debtors**

Association of Flight Attendants
Delta Airlines, Inc.
Federal Aviation Administration
Jodi Harmon
Robert Herbstreith
Brenda Hiderbrand
Randy Klinckhardt
Mike Monroney Aeronautical Center
SW Holdings Trust
TSA
United Air Lines, Inc.
Walter Hilderbrand
Wells Fargo Bank Northwest, N.A.

**Owner Participant Under Aircraft Leases**

GE Commercial Aviation Services

**Owner/Trustee Lessor Under Aircraft Leases**

Wells Fargo

**Indenture Trustee for Bond Issuances**

U.S. Bank, N.A.

**Significant Noteholders**

Acuity Capital Management, LLC
Argent Funds Group, LLC
Anchorage Advisors LLC
Bank of Ireland
Bank of Scotland
BNP Paribas Arbitrage SNC
Cetus Capital, LLC
Citi Global Markets, Inc.
Duquesne Capital Management
Fir Tree Partners
Geode Capital Management, LLC
Lampe, Conway & Co.
Marathon Asset Management
Quattro Global Capital, LLC
QVT Financial LP
Varde Partners Inc.
Wolverine Asset Management, LLC
York Capital

**Largest Unsecured Creditors**

AAR Corporation
AT&T Capital Services, Inc. (Successor to TransAmerica)
Avmax International Aircraft Leasing, Inc.
Bank of Hawaii Leasing, Inc. (Successor to Pacific Century Leasing, Inc.)
Bombardier Services Corporation
Bombardier, Inc.
Cargill Leasing Corporation
Debis Financial Services LLC
EMBRAER – Empresa Brasileira de Aeronautica S.A.
Fleet National Bank
Fluid CRJ One Statutory Trust
GE Commercial Aviation Services, Inc.
GE Engine Services, Inc.
GECAS (ASC)
General Electric Capital Corporation
IHI Corporation
Investissement Quebec
NCBE Leasing Corporation
Northstar Avlease, Ltd.
Philip Morris Capital Corporation
PNCEF, LLC d/b/a PNC Equipment Finance, f/k/a National City Commercial Capital Company LLC
Polaris Holding Company (GECAS)
Raytheon Aircraft Credit Corporation
Rolls-Royce Corporation
SW Holding Trust (CIT)
Transamerica Aviation LLC
Transwestern Phoenix Gateway LLC
US Bank, National Association
Wells Fargo Bank Northwest, N.A.
Wells Fargo Equipment Finance, Inc.
Wonderfulworld Holding BV (DVB Bank)

**Shareholders Holding More than 5% Equity Interests**

AAR Corp.
Deutsche Bank
Goldman Sachs
LC Capital Master Fund, Ltd.
Zazove Associates

**Professionals**

Pachulski Stang Ziehl & Jones LLP
Imperial Capital, LLC
Jones Day

**Unions**

Air Line Pilots Association
Association of Flight Attendants, AFL-CIO

**Other Parities in Interest**

3

Internal Revenue Service
Federal Communications Commission

**United States Trustee for the Southern District of New York (and Key Staff Members)**

Diana G. Adams
Linda A. Riffkin
Tracy Hope Davis
Elisabetta Gasparini
Susan Golden
Nazar Khodorovsky
Marylou Martin
Brian S. Masumoto
Serene Nakano
Richard C. Morrissey
Andrea B. Schwartz
Paul K. Schwartzberg
Andy Velez-Rivera
Greg Zipes

**Judges for the Bankruptcy Court of the Southern District of New York**

Hon. Stuart M. Bernstein
Hon. Robert D. Drain
Hon. Robert E. Gerber
Hon. Martin Glenn
Hon. Arthur J. Gonzalez
Hon. Allan L. Gropper
Hon. Burton R. Lifland
Hon. Cecelia G. Morris
Hon. James M. Peck

# EXHIBIT 2

## (Known Relationships With Parties-In-Interest)

## RELATIONSHIPS KNOWN AS OF APRIL 26, 2010

PwC or its affiliates currently perform or have previously performed services as described in the Floria Declaration and/or in matters unrelated to these chapter 11 cases to the following individuals or entities or have other relationships with such entities, such as banking relationships.

**Secured Lenders**
Bombardier
Bombardier Services Corp.
CIT Group
Citibank
Citicorp North America
Craft
Fleet Bank
GE
Raytheon
Transamerica Finance
**Counterparties to Litigation with the Debtors**
TSA
United Air Lines, Inc.
**Owner/Trustee Lessor Under Aircraft Leases**
Wells Fargo
**Indenture Trustee for Bond Issuances**
U.S. Bank, N.A.
**Significant Noteholders**
Bank of Ireland
Bank of Scotland
BNP Paribas Arbitrage SNC
Geode Capital Management, LLC
Lampe, Conway & Co.
Marathon Asset Management
QVT Financial LP
**Largest Unsecured Creditors**
AT&T Capital Services, Inc. (Successor to TransAmerica)
Bombardier Services Corporation
Bombardier, Inc.
EMBRAER – Empresa Brasileira de Aeronautica S.A.
Fleet National Bank
General Electric Capital Corporation
Philip Morris Capital Corporation
Raytheon Aircraft Credit Corporation
Rolls-Royce Corporation
US Bank, National Association
**Shareholders Holding More than 5% Equity Interests**
Deutsche Bank
Goldman Sachs