UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re               :      Case No. 10-10018 (MG)

                    :

MESA AIR GROUP, INC., *et al.*,    :      Chapter 11

                    :

          Debtors.    :

------------------------------------------------------- x

## OBJECTION OF THE UNITED STATES TRUSTEE
## <u>REGARDING APPLICATIONS FOR INTERIM COMPENSATION</u>

TO:    THE HONORABLE MARTIN GLENN,
        UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, Acting United States Trustee for Region 2 (the "United States Trustee"), has reviewed the following applications (the "Applications") of the retained professionals (the "Retained Professionals") seeking awards of interim and final compensation and reimbursement of out-of-pocket expenses for the fee periods set forth below (collectively, the "Fee Period"):

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Pachulski Stang Ziehl & Jones LLP, Counsel to Debtors | January 5, 2010, through April 30, 2010 | $1,768,931.75 | $111,993.88 | 3,318.7 |
| Imperial Capital, LLC, Financial Advisor and Investment Banker to Debtors | January 5, 2010, through April 30, 2010 | $580,645.16 | $61,156.75 | 3,316 |
| Jones Day LLP, Special Litigation Counsel to Debtors | January 5, 2010, through April 30, 2010 | $1,081,736.00 | $54,085.00 | 3,145.30 |
| Deloitte Tax LLP, Tax Advisors to Debtors | January 5, 2010, through April 30, 2010 | $182,551.00 | $1,401.30 | 683.2 |
| Smith, Gambrell & Russell, LLP, Special Aircraft Counsel to Debtors | January 5, 2010, through April 30, 2010 | $105,524.50 | $22.05 | 275.4 |

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Morrison & Foerster LLP, Counsel to Creditors' Committee | January 13, 2010, through April 30, 2010 | $709,542.00 | $9,608.42 | |
| Macquarie Capital (USA), Financial Advisor to Creditors' Committee | January 21, 2010, through April 30, 2010 | $419,355.00 | $7,944.68 | |

## I. INTRODUCTION

The Retained Professionals seek fees totaling $4,848,285.41 and reimbursement of out-of-pocket expenses totaling $246,212.08. The United States Trustee objects to the allowance of approximately $465,000 in fees and approximately $125,000 in out-of-pocket expenses for the reasons set forth below.

## II. JURISDICTION, VENUE AND STATUTORY PREDICATES

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

2. The statutory predicates for the relief sought are Sections 330 and 331 of title 11, United States Code (the "Bankruptcy Code"). This matter was initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), Administrative Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §

330[1] (the "UST Guidelines," and together with the Amended Guidelines, the "Guidelines").

## III. FACTUAL BACKGROUND

### The Chapter 11 Filing

3.　　On January 5, 2010 (the "Petition Date"), Mesa Air Group, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under chapter 11 the Bankruptcy Code.  By Order dated January 5, 2010, the Debtors' cases are being administered jointly.  (ECF Dkt. #33).

4.　　The Debtors and their non-debtor affiliates operate as regional air carriers providing scheduled passenger and airfreight service.  As of the Petition Date, the Debtors' airline operations served approximately 127 cities in 41 states, the District of Columbia, Canada, and Mexico.  The Debtors operate regional jet and turboprop aircraft under the names of regional carriers of certain major airlines pursuant to various code-share agreements.

5.　　The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.　　No trustee or examiner has been appointed in these cases.

7.　　On January 14, 2010, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").  (ECF Dkt. #97).

8.　　By Order dated January 26, 2010 (the "Monthly Compensation Order"), the Court authorized procedures for the payment of interim monthly compensation and reimbursement of expenses for the Retained Professionals.  (ECF Dkt. #181).

---

[1] The Bankruptcy Court for this district has adopted the UST Guidelines.  See In re Brous, 370 B.R. 563, 569 at n.8 (Bankr. S.D.N.Y. 2007).

9. By Order dated February 3, 2010, the Debtors retained Pachulski Stang Ziehl & Jones LLP ("Pachulski") as their counsel. (ECF Dkt. #236).

10. By Order dated February 3, 2010, the Debtors retained Jones Day LLP ("Jones Day") as their special litigation counsel.[2] (ECF Dkt. #235).

11. By Order dated February 25, 2010, the Creditors' Committee retained Morrison & Foerster LLP ("MoFo") as its counsel. (ECF Dkt. #366).

12. By Order dated February 25, 2010, the Debtors retained Imperial Capital, LLC ("Imperial") as their financial advisor and investment banker. (ECF Dkt. #372).

13. By Order dated April 15, 2010, the Creditors' Committee retained Macquarie Capital (USA) Inc. ("Macquarie") as its financial advisor and investment banker. (ECF Dkt. #647).

14. By Order dated April 16, 2010, the Debtors retained Deloitte Tax, LLP ("Deloitte Tax") as their tax compliance and tax consultants. (ECF Dkt. #655).

15. By Order dated June 10, 2010, the Debtors retained Deloitte & Touche, LLP ("D&T") as their auditors. (ECF Dkt. #807).

16. By Order dated June 10, 2010, the Debtors retained Smith, Gambrell & Russell LLP ("Smith Gambrell") as their special aviation counsel. (ECF Dkt. #809).

---

[2] Prior to the Court's entry of the Order approving the Debtors' retention of Jones Day, the United States Trustee raised objections informally with Jones Day, including, among others, an objection to Jones Day's intention to bill the Debtors for services provided by firm personnel, other than lawyers and paralegals, that are a part of the firm's overhead. In response, Jones Day filed the Amended Declaration of G. Lee Garrett, Jr. dated January 29, 2010 (the "Supplemental Garrett Declaration"). In the Supplemental Garrett Declaration, Jones Day deleted from the list of the persons who would work on this engagement, those personnel originally proposed who are not attorneys or paralegals. See ECF Dkt. #203, at 4.

**Status of the Cases**

17.     By Order dated March 26, 2010, the Court fixed May 21, 2010, and July 6, 2010, as the last day to file proofs of claims by creditors and governmental units, respectively.  (ECF Dkt. #577).  On July 6, 2010, at the request of the United States Trustee, the Debtors informed the United States Trustee that claims representing an aggregate total amount of $5,331,828.08 had been asserted against the Debtors.  Of this amount, $121,281,365 is represented as administrative expenses, $1,038,561,547 is represented as secured, $170,647,090 is represented as unsecured priority, $4,002,305,361 is represented as unsecured.

18.     As of the date hereof, the Debtors have not filed with the Court a plan or a disclosure statement.

19.     The Debtors are current with the filing of their monthly operating reports and payment of quarterly fees due to the United States Trustee pursuant to Section 1930(a)(6) of title 28.  The monthly operating report for the period ending June 30, 2010, provides that the Debtors have a monthly net operating loss of approximately $275 million, and an overall loss of approximately $281 million since the Petition Date.  (ECF Dkt. #920).  The Debtors have cash on hand in the amount of approximately $52 million. Id.

## IV.  LEGAL STANDARDS

**Reasonableness**

20.     Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

> (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

21.     To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code

instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> a.     the time spent on such services;
>
> b.     the rates charged for such services;
>
> c.     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> d.     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> e.     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> f.     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

22.     Bankruptcy Rule 2016 implements the standards set forth in Section 330

of the Bankruptcy Code:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services

rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

23. Each applicant bears the burden of proof for its claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

24. The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)).

25. Further, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also, Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

**Vague Time Entries**

26.     Because professionals have the burden of proving the reasonableness of their fee requests, they must provide specific and detailed time records.  To that end, the UST Guidelines provide that:

> Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; . . . . Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference.

See UST Guidelines, (b)(4)(v).

27.     In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific and the records must clearly identify each discrete task billed.  In re Baker, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007) ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also, In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).  "Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are

routinely disallowed."  In re Hirsch, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. December 11, 2009).

28.     Similarly, with respect to research or reviewing materials, the time entries must at a minimum provide a description of the issue that is being researched or reviewed.

**Word Processing and Overhead**

29.     Word processing is "a clerical service regardless of who performs it." Bennett Funding, 213 B.R. at 248.  As an overhead expense, word processing cannot be billed to the client.  Overhead also includes secretarial and clerical pay, library costs, and office supplies.  See In re Fibermark, Inc., 349 B.R. 385, 400 (Bankr. D.Vt. 2006) (Overhead expense reimbursement will be "denied . . . categorically.").  Moreover, the UST Guidelines provide that word processing expenses are nonreimbursable "overhead". See UST Guidelines, 4(b)(5)(vii).

30.     In evaluating fees, the court "considers administrative activities, photocopying, organizing documents, etc. clerical tasks included in a firm's overhead rather than services of a legal nature."  In re Hudson, 364 B.R. 875, 881 (Bankr. N.D.N.Y. 2007); see also, In re Schneider, No. 06-50441, 2007 WL 2688812, at *6 (Bankr. N.D. Cal. 2007) ("Services that are clerical in nature are properly chargeable to the firm as an overhead expense and not to the bankruptcy estate;" fees incurred for services that are "clerical, ministerial, or administrative should be disallowed regardless of who performs them.").

31.     Time spent by a firm's library staff is also considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting that debtor's counsel use

of librarian was "overhead" and was not proper charge against estate); <u>In re First Software Corp.</u>, 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the compensation for research performed by a librarian). A court should, therefore, deny fees associated with clerical tasks.

**<u>Travel Time</u>**

32.     It is customary practice in this Circuit, as well as in many others, that travel time is charged at one-half the professional's hourly rate. <u>See</u> <u>Petronella v. ACAS</u>, No. Civ. 302CV01047 (WWE), 2004 WL 1688525 at *1 (D. Conn. Jan. 23, 2004) (citing <u>Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.</u>, 227 F.Supp.2d 323 (S.D.N.Y. 2003); <u>Wilder v. Bernstein</u>, 975 F.Supp. 276, 283-84 (S.D.N.Y. 1997)); <u>see</u> <u>also</u>, <u>In re</u> <u>Raytech Corp.</u>, 241 B.R. 785, 790 (D. Conn. 1999) (vacating and remanding bankruptcy court's allowance of full compensation for attorneys' non-working, non-local travel time for determination of "customary billing practice for nonproductive travel time in the prevailing community"); <u>In re Kuhn</u>, 337 B.R. 668, 676 (Bankr. N. D. Ind. 2006) (travel time in this district is compensated at one-half of the professional's hourly rate); <u>In re Caribbean Const. Servs., Inc.</u>, 283 B.R. 388, 395 (Bankr. D.V.I. 2002) (non-working travel time compensable at 50% of customary hourly rate unless evidence establishes that professional used time productively by preparing for meeting or court proceeding); <u>In re Anderson Grain Corp.</u>, 222 B.R. 528, 532 (Bankr. N.D. Tex. 1998) (50% of customary hourly rate for non-working travel time more than adequate as "[t]here are just too many distractions while traveling to consider that full hourly rates should be allowed.")

**Photocopies**

33.     The Amended Guidelines provide as follows: "Photocopying shall be reimbursable *at the lesser* of $.20 or cost." Amended Guidelines at p.3, F.2 (emphasis added).  The $.10 per page rate has been the prevailing rate in this District since In re Enron, Case No. 01-16034 (AJG).

**Interim Compensation**

34.     Interim fee awards are discretionary, and are subject to re-examination and adjustment during the course of the case.  In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. D. Ill. 1996) (citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985)).  Any interim fees awarded or paid under Section 331 of the Bankruptcy Code, are payable on account and are subject to the Court's review at the time that applications for final compensation are made.

**Actual and Necessary Expenses**

35.     Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

## V. OBJECTION

### A.     All Retained Professionals

36.    The Debtors have not filed a disclosure statement and plan, and no information concerning a valuation of the Debtors has been filed with the Court. As a result, there is no information yet available concerning the Debtors' solvency at this stage in the cases. As stated in paragraph 19 above, the Debtors' operating report for the period ending June 30, 2010, reflects that the Debtors are operating at a net loss in the approximate amount of $275 million for the month of June 2010, and $281 million since the Debtors filed for bankruptcy relief seven months ago. In addition, the information provided by the Debtors concerning the proofs of claim filed against the estates is that they exceed 5 billion in the aggregate, of which more than 1 billion is represented as secured. Section 331 of the Bankruptcy Code permits a Court to award interim compensation only to the extent that it is otherwise reasonable under Section 330 of the Bankruptcy Code. See 11 U.S.C. §§ 330 and 331. Given the size of the claims asserted against the Debtors, and the substantial losses that the Debtors have suffered, the Debtors have not carried their burden to show that an interim allowance and payment of any of the fees requested is reasonable at this stage in the proceedings.

37.    Further, the results that will be achieved serve as an important factor in determining the success of the efforts of these applicants. See, e.g., In re Bank of New England Corp., 134 B.R. 450, 459 (Bankr. D. Mass. 1991), aff'd, 142 B.R. 584 (D. Mass. 1992) (because of the difficulty in determining whether services were actual and necessary when reviewing interim applications, bankruptcy courts routinely require hold backs until the end of the case); see also, In re Child World, Inc., 184 B.R. 14, 18 (Bankr.

S.D.N.Y. 1995) (courts commonly use holdbacks to moderate potentially excessive interim allowances and to offer an incentive to timely resolution of the case). Accordingly, the United States Trustee proposes that the Court reduce any compensation awarded to the Retained Professionals by a significant percentage (colloquially referred to as a "holdback") pending the final resolution of the cases.

**B.      Pachulski**

     (i)      Fees

38.      Pachulski seeks an allowance of $1,768,931.75 in fees and reimbursement of out-of-pocket expenses aggregating $111,993.88 during the Fee Period.

**Vagueness**

39.      Pachulski's fee application includes many vague time entries that do not comply with the Guidelines. Specifically, in the project categories titled "Bankruptcy Litigation," "Case Administration," and "Codeshare," Puchulski seeks allowance of fees in the aggregate amount of approximately $500,000, but the time records submitted in support thereof contain vague descriptions that do not comply with the Guidelines. By way of example only, these time entries include: (i) "review paperflow pleadings and notice (.8);" (ii) "review pending tasks (.4);" (iii) "attend team call re open issues (.5);" (iv) "research and print cases (.4);" (v) "WIP call (.5);" (vi) "assisting clients with various requests (2.10);" (vii) "maintain document control (.5);" (viii) "research Delta litigation issues (2.7);" (ix) "chapter 11 preparation (3.5);" (x) "work on materials and review cases from Leslie B. (.7);" (xi) "conference call with PSZJ and Mofo (1.0);" (xii) telephone conferences with Ornalstein regarding case issues (.7)"; (xiii) "emails re filing issues (.4)"; (xiv) "research re lease issues (1.10);" and (xv) "analysis regarding claim (.5)."

40.     Moreover, many of the time entries for time spent on conference calls or meetings are vague and do not indicate all the attendees at such meetings as is required by the UST Guidelines.  See UST Guidelines at (b)(4)(v) ("time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.").  The lack of disclosure renders it very difficult for a reviewer to determine how many people attended the call.  Absent explanation, the United States Trustee proposes that the Court reduce Pachulski's fees for these vague services in the amount of $100,000, or 20 percent of the fees requested in these project categories.  This percentage reduction correlates to the percentage of vague time entries contained in these project categories.

**Lumping**

41.     Many of the time records contained in Pachulski's application contain impermissibly "lumped" time.  See UST Guidelines, (b)(4)(v).  By way of example only, these time records include:

| 1/06/10 | RMP | Return to LA and meet with MB regarding case issues and review and respond to numerous e-mails regarding case issues and strategy (7.30). |
|---------|-----|---|
| 1/05/10 | DAH | Assist with preparation for first day hearing; proofing motions, notices, documents, etc; attention to numerous matter [sic] related to chapter 11 filing, first day hearings etc. Telephone conference's [sic] with Trustees office. (17.40) |
| 1/25/10 | DAA | Update supplemental declaration of M. Bilbao and order with comments of J. Fried; review other orders granting retention of financial advisor in SDNY (2.50) |
| 1/25/10 | LDJ | Continued work on issues surrounding letter to Judge Glenn, related Delta litigation strategy (2.20) |
| 2/04/10 | RJF | Review L/C motion and office conferences with Maria Bove regarding same (2.00) |

| 2/24/10 | RMP | Various client meetings in preparation for Committee meeting and also general strategy meetings (3.60) |
|---|---|---|

Absent explanation, the United States Trustee proposes that the Court reduce Pachulski's fees for such lumped services in the amount of $10,000, which represents an approximate 50 percent reduction of the total fees sought ($18,825.00) by Pachulski for these "lumped" time entries.

**Duplicate Time Entries**

42.     The Pachulski application contains numerous instances of duplicate time entries.  <u>By way of example only</u>, the application includes the following entries:

| 1/26/10 | DAA | Attention to emails of D. Grassgreen regarding open items; email reply (.20) |
|---|---|---|
| 1/26/10 | DAA | Attention to email of D. Grassgreen regarding open items; email reply (.20) |
| 1/27/10 | MB | Revise notice of commencement (.10) |
| 1/27/10 | MB | Revise notice of commencement (.10) |
| 1/10/10 | JMF | Telephone call with L. Jones re codeshare agreements. |
| 1/10/10 | JMF | Telephone call with L. Jones re codeshare agreements. |
| 2/01/10 | DAH | Converting and e-filing notice of continuance of hearing on certain application motions. (.20) |
| 2/01/10 | DAH | Converting and e-filing notice of continuance of hearing on certain application motions. (.20) |
| 2/01/10 | DAH | Telephone conference with Tappernite regarding standing order for transcripts. (.20) |
| 2/01/10 | DAH | Telephone conference with Tappernite regarding standing order for transcripts. (.20) |
| 2/01/10 | DAH | Converting and efiling notice of commencement (.20) |
| 2/01/10 | DAH | Converting and efiling notice of commencement (.20) |
| 3/08/10 | DG | Review daily filings (.20) |
| 3/08/10 | DG | Review daily filings (.20) |

| 4/01/10 | JJK | Emails J. Rosell on lease/default/related analysis. (.10) |
| 4/01/10 | JJK | Emails J. Rosell on lease/default/related analysis. (.10) |

Accordingly, the United States Trustee proposes that the Court reduce Pachulski's fees for these duplicate time entries by the amount of $1,000, which is the approximate amount of the duplicate fees.

**Overhead**

43. Pachulski seeks approval of fees for paralegals in the total amount of $140,487.75. Much of the time that the paralegals billed to the estates, however, appears to have been spent on clerical duties, such as preparing materials and binders, updating calendars and lists, maintaining and updating files, and organizing or distributing documents. By way of example only:

- Beatrice M. Koveleski billed a total of $2,520.00 for 16.80 hours worked on tasks such as preparing daily memo narrative and coordinating client distribution.

- Thomas J. Brown billed a total of $31,160.00 for 152.0 hours worked on such tasks as assembling and updating binders, drafting indices for binders, copying and scanning motions, assisting in preparing agendas, converting documents to PDF, downloading documents from PACER, delivering binders to court, assisting with filing documents on ECF and preparing calendar reminders

- Denise A. Harris billed a total of $14,781.50 for 62.90 hours worked on tasks such as researching and printing cases, redlining and comparing documents, arrange conference calls with "Court Call" for attorney conferences with Court, convert documents to PDF, tasks such as preparing daily memo narrative and coordinating client distribution.

- Monica Molitor billed a total of $23,594.00 for 235.0 hours worked on tasks such as reviewing daily pleadings and distributing them to the "appropriate parties," revise and update critical dates list, updates to the docket and review, emails to Pachulski's in-house file room support, coordinate updates to service list, revise hearing agendas, and emails to counsel re pending deadlines.

44. The Pachulski fee application provides no information regarding the legal nature of the services rendered by these paralegals for whose work they seek compensation. Absent explanation, the United States Trustee proposes that the Court

reduce any fees awarded to Pachulski by $45,000, or approximately 1/3 of the paralegal time billed.

**Retention of Professionals - PriceWaterhouseCoopers**

45.     Pachulski seeks allowance of fees in the amount of approximately $3,100 for 7 hours spent on the preparation of a retention application for PriceWaterhouseCoopers.  The PriceWaterhouseCoopers application ultimately was withdrawn.  Upon information and belief, the application was withdrawn because, among other things, the United States Trustee would not consent to the terms of the proposed retention.  Accordingly, the United States Trustee proposes that the Court reduce Pachulski's fees by $3,100.

**Lumped Professional Time and Travel Time**

46.     The Pachulski application contains many entries whereby the timekeepers lump together court appearance time and travel time to court.  By way of example only, the Pachulski application contains the following time entries:

| 1/19/10 | MB     Travel to/from and attend hearing (1.30) $550.00/hr ($715.00) |

| 1/26/10 | MB     Travel to/from and attend hearing (2.20) $550.00/hr ($1,210.00) |

| 3/03/10 | MB     Travel to/from court (.8) $550.00/hr ($440.00 charge) |

The United States Trustee proposes that the Court reduce Pachulski's fees in the amount of $2,500.

**Plan and Disclosure Statement**

47.     Pachulski seeks allowance of fees in the amount of $37,789.00 for 59.8 hours billed under the project category titled "Plan and Disclosure Statement."  As of the date hereof, the Debtors have not filed a plan and a disclosure statement.  Pachulski's

request for fees in this category, therefore, is premature because a reasonableness determination cannot be made. It is noted that three months have passed since the end of the Fee Period and it is likely that Pachulski will seek additional fees incurred during subsequent months in connection with this work. The United States Trustee proposes, therefore, that Pachulski's request for these fees be denied at this time without prejudice to the firm's ability to renew its request once a disclosure statement and plan are on file with the Court.

(ii) Expenses

**Meals**

48. Pachulski seeks reimbursement for meals in the amount of $2,263.17. Although Pachulski did not provide any backup in support of its request for reimbursement of these expenses, it appears that Pachulski has exceeded the $20.00 per person maximum allowable amount under the Guidelines for overtime meals after 8:00 p.m. Amended Guidelines at F(5). To illustrate by way of example only, Pachulski seeks reimbursement for meals/catering in the amounts of (i) approximately $1,100.00 on 1/5/10 – the number of persons at the meal is not provided; (ii) $131.60 on 1/12/10 – the number of persons at the meal is not provided, (iii) $138.96 on 1/13/10 – the number of persons at the meal is not provided and (iv) $96.02 on 2/26/10 for two people. Absent explanation, the United States Trustee proposes that this expense reimbursement be denied entirely.

**Airfare**

49. Pachulski seeks reimbursement of airfare expenses in the amount of $19,689.90. Many of the airfare tickets that are included in the Pachulski application

exceed $2,000 per trip, and some exceed $3,000 per trip.[3]  By way of example only, Pachulski seeks reimbursement for airfare tickets on (i) 1/5/10 airfare from JFK to LAX in the amount of $2,626.70; (ii) 1/9/10 from SFO to JFK in the amount of $3,076.00; and (iii) 1/22/10 from SFO to JFK in the amount of $3,076.00.  Although Pachulski has not submitted any backup documentation to establish that these airfare tickets are reasonable, it appears that they may provide for first class travel.  The UST Guidelines expressly prohibit first class or other luxury modes of travel in bankruptcy cases.  See UST Guidelines at b(5).  Accordingly, absent explanation, the United States Trustee proposes that the Court deny these expenses in their entirety.

**Lodging**

50.     Pachulski seeks reimbursement of lodging expenses in the amount of $21,320.98.  Many of the hotel charges that are included in the Pachulski application are for excessively high room rate charges, which, at least in one case, nears $800 per night.  By way of example only, a couple of these charges include: (i) 2 nights at the St. Regis Hotel in the amount of $1,591.76; (ii) 2 nights at the New York Palace Hotel in the amount of $1,338.53; (iii) an unknown number of nights at the New York Palace Hotel in the amount of $1,830.96, (iv) an unknown number of nights at the New York Palace Hotel in the amount of $1,012.72, and (v) 1 night at the Hyatt Regency in San Francisco in the amount of $322.38 (it is unclear why a hotel stay was required in San Francisco).  Absent explanation, including why the Pachulski attorneys could not obtain lodging at

---

[3] It is noted that the Pachulski application also includes charges for what appear to be in-flight internet usage referenced as "Aircell Go-go Inflight Internet expense."

more economical and reasonable rates,[4] as well as backup for these charges, the Court should deny these charges in their entirety.

**Travel Agency Fees and Other Unexplained Travel Expenses**

51.     Although not specifically segregated, Pachulski seeks reimbursement for multiple travel agency fees in the amount of $345.00.  Travel agency fees are a part of the firm's overhead and not compensable by the estates.  In addition, the time records include two $100 unexplained travel expense reimbursements.  Absent explanation, the Court should reduce any expenses allowed to Pachulski in the amount of $545.00.

**Photocopies**

52.     Pachulski seeks reimbursement for "reproduction expense" and "reproduction/scan copy" expenses in the approximate amount of $15,000.  Although Pachulski states in its application that it charges $.10 per page for photocopies, it appears that there are multiple charges for these expenses that are in the amount of $1.25 per page.  By way of example only, there are several of these charges billed on 2/8/10.  In addition, it is unclear whether "scan/copy" relates to photocopies or scanning of documents.  Scanning is not a compensable charge to the estates.  Absent explanation, the United States Trustee proposes that the Court deny this expense reimbursement entirely.

---

[4] It is observed that some of the Debtors' other professionals, namely, Jones Day and Imperial, obtained lodging costs at substantially lower rates, i.e., not higher than $450 per night.

**C.     Jones Day**

(i)     <u>Fees</u>

53.     Jones Day seeks an allowance of $1,081,736.00 in fees and reimbursement of out-of-pocket expenses aggregating $54,085.00 during the Fee Period.

**Overhead**

54.     Jones Day seeks an allowance in the amount of $23,200 for services provided by the firm's staff personnel.  After Jones Day's retention application was filed, the United States Trustee informally raised various objections with Jones Day, including, among others, an objection to Jones Day's intention to bill the estates for the services of its firm's administrative staff, other than lawyers and paralegals.  The United States Trustee made clear that the firm's administrative staff is a part of the firm's overhead and should not be charged to the estates.  In response to the United States Trustee's informal objections, Jones Day filed the Supplemental Garrett Declaration which deleted the proposed staff personnel, thereby confirming that Jones Day would not bill for these services.  <u>See</u> ECF Dkt. No. 203, at 4.  Notwithstanding this agreement, the Jones Day application includes a request for payment of these administrative fees.  Based upon the foregoing, however, the United States Trustee proposes that Court disallow these fees entirely, and reduce any allowance of fees to Jones Day by $23,200.

55.     In addition, the Jones Day application seeks compensation for services performed by attorneys and paralegals that are a part of the firm's overhead and should not be billed to the estates.  For example, there are several time records describing time spent by Jones Day's lawyers instructing their own lawyers how to bill in bankruptcy cases.  One example provides: "draft and revise email to working group regarding billing

requirements in bankruptcy (.30)." Another example reads: "attention to new file openings (.10)." Another example provides: "draft and revise billing memo (1.50)." Jones Day appears in many cases venued in the Southern District of New York. It is unclear why Jones Day does not already have these billing memos and procedures in place.

56.     Jones Day also seeks an allowance for time that its lawyers spent "secur[ing] local counsel for purposes of pro hac vice admission (.30);" "review[ing] research regarding referral (1.00);" and "confer[ring] with Caraway about software licenses for contract attorneys (.10). These are all administrative tasks that should not be billed to the estates. Accordingly, the United States Trustee proposes that the Court reduce any allowance of Jones Day's fees by $10,000, which represents approximately 1 percent of the total fees sought by Jones Day during the Fee Period.

**Vagueness**

57.     Jones Day's fee application includes many vague time entries that do not comply with the Guidelines. Specifically, the time entries are contained in the project categories titled "ERJ-145 Litigation," "CRJ Litigation" and "Base Rate Litigation." Jones Day seeks allowance of fees in the aggregate amount of approximately $940,000, but the time records submitted in support contain vague descriptions that do not comply with the Guidelines. <u>By way of example only</u>, these time entries include: (i) "research in preparation of trial (2.80);" (ii) "continue researching various issues in preparation of trial (7.50);" (iii) "plan and prepare for final hearing (6.10);" (iv) trial preparation (10.80);" (v) "draft and revise trial related documents (3.20);" (vi) "research strategy issues and discuss with Rob Schmoll (2.30);" (vii) "participate in conference call with Mesa's

bankruptcy counsel and L. Caudle (.50);" (viii) "identify and follow up on data processing and document collection matters (2.20);" (ix) "review documents with R. Schmoll (1.00);" and (x) "attention to document production matters (3.50)." In particular, it is noted that the Jones Day time entries which relate generally to "trial preparation" and "document review/production" identified above, appear multiple times in Jones Day's time records.

58.     A review of Jones Day's time records reveals that some of its attorneys have properly billed their time for services in connection with the "trial preparation," to which the United States Trustee has no objection. One example is:

| 4/13/10 | KG Romig | Trial preparation including: identify exhibits and draft exhibit list (2.50); research, plan and draft pretrial order (3.40); research and analysis of Delta's counterclaim (3.50); draft trial brief (5.00) |

59.     Absent explanation, the United States Trustee proposes that the Court reduce Jones Day's fees for such vague services in the amount of $200,000, which represents approximately 20 percent of the fees sought in these categories, and correlates to the percentage of vague time entries contained therein.

**Lumping**

60.     Many of the time records contained in Jones Day's application contain impermissibly "lumped" time. See UST Guidelines, (b)(4)(v). By way of example only, these time records include:

| 1/18/10 | RA Schmoll | Review and revise motion to transfer prepetition litigation to bankruptcy court pursuant to 28 U.S.C. 1412; prepare e-mail to bankruptcy counsel regarding same (3.30) |

| | | |
|---|---|---|
| 2/19/10 | RA Schmoll | Review, revise and serve written discovery requests on Delta and confer with Mesa's bankruptcy counsel, L. Garrett and M. Taylor regarding same (3.90) |
| 3/23/10 | BT Jones | Review of emails and invoices from the client; create excel spreadsheet regarding the same (3.30) |
| 4/17/10 | MA Taylor | Attention to trial preparation task list, including legal outlines and witness preparation (12.00) |
| 4/22/10 | RA Schmoll | Appear for/attend trial and plan and prepare for same (15.30) |

Absent explanation, the United States Trustee proposes that the Court reduce Jones Day's fees for such lumped services in the amount of $6,500, or approximately a 50 percent reduction of the total amount sought by Jones Day ($13,000) for the "lumped" time entries.

### Contract Attorneys

61.     It appears from Jones Day's time records that the firm may have hired "contract attorneys" to work on, at least, document review in connection with the "Base-Rate Litigation."  The firm's retention of contract attorneys was discovered upon review of time records, including among others:

| | | |
|---|---|---|
| 3/09/10 | MA Taylor | **Conduct training of contract attorneys (2.50);** attention to searches, tool setup and functionality (6.00); review documents responsive to Delta's First Request for Production of Documents (2.00) |

62.     Neither the Jones Day retention application, nor the declarations filed in support thereof disclose that Jones Day would retain contract attorneys to work on this engagement.  In addition, the United States Trustee is unaware of any supplemental declarations, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure, that Jones Day has filed in this regard.

63.     It is not clear from the Jones Day fee application whether Jones Day is seeking allowance of fees for services rendered by contract attorneys.  Accordingly, the United States Trustee proposes that the Court direct Jones Day to supplement its fee application with a declaration addressing this issue and whether the appropriate conflicts checks were performed.  To the extent that Jones Day represents that it is seeking fees for services rendered by contract attorneys, the United States Trustee reserves all rights with regard to the allowance of such fees once identified.

**Billing Inaccuracies**

64.     A review of Jones Day's time records reveals that there are apparent billing inaccuracies contained therein.  For example, on January 19, 2010, RA Schmoll entered the following time entry: "Review, revise and file motion to transfer prepetition litigation to bankruptcy court pursuant to 28 U.S.C. 1412 and confer with client regarding same (.30).  The estates, however, were billed 3.0 for this time entry.  Accordingly, the United States Trustee proposes that, at a minimum, the Court reduce the fees allowed to Jones Day by $1,080.  The Court should also direct Mr. Garrett, the Jones Day attorney who certified to the accuracy of these records, or another Jones Day lawyer, to review all of the time records submitted for the Fee Period and submit a supplemental certification representing the veracity of these records, compliance with the Guidelines and that no other billing inaccuracies were discovered.  The United States Trustee reserves all rights in connection with any supplemental certification filed.

(ii)     Expenses

**Photocopies**

65.     As stated above at paragraph 33, the Amended Guidelines provide as follows: "Photocopying shall be reimbursable *at the lesser* of $.20 or cost." Amended Guidelines at p.3, F.2 (emphasis added).  The $.10 per page rate has been the prevailing rate in this District since In re Enron, Case No. 01-16034 (AJG).  Jones Day admittedly has charged in excess of the maximum allowable, noting that it has charged $1.00 for color copies and $.20 for standard copies.  Neither the Jones Day fee application nor the Certification of G. Lee Garrett submitted in support of the Jones Day fee application provides that the actual cost of photocopies to Jones Day is, in fact, $.20 per page. Absent explanation, the United States Trustee proposes that the Court reduce any allowed reimbursement of expenses for photocopies by $2,429.40, representing a reduction that effects a $.10 per page charge.

**Overhead – Staff Overtime**

66.     Jones Day seeks reimbursement of expenses for accounting staff overtime and secretarial overtime.  These expenses are overhead and not compensable by the estates.  See Fibermark, Inc., 349 B.R. at 400.  Accordingly, the United States Trustee proposes that the Court deny these reimbursements of expenses in the total amount requested, $860.91.

**Imaging Services**

67.     Jones Day seeks reimbursement in the amount of approximately $22,000 for "Imaging Services."  Jones Day does not provide a description of these charges, other than "Lexis-Nexis Litigation Data Repository fee," and, therefore, an evaluation as to the

reasonableness of these charges cannot at this time be made. Absent explanation, the United States Trustee proposes that the Court deny reimbursement of this expense in its entirety.

**Meals**

68. Jones Day seeks reimbursement for meals in the amount of $654.19. Jones Day did not provide any backup in support of its request for reimbursement of these expenses, it appears that Jones Day has exceeded the $20.00 per person maximum allowable amount under the Guidelines for overtime meals after 8:00 p.m. Amended Guidelines at F(5). To illustrate by way of example only, Jones Day seeks reimbursement for (i) $86.29 on 3/22/10 for local food and beverage expense (the time and the number of people are not provided); (ii) $41.30 on 3/22/10 for local food and beverage expense (the time and the number of people are not provided); and (iii) $30.97 on 4/28/10 for local food and beverage expense (the time and the number of people are not provided). Absent explanation, the United States Trustee proposes that this expense reimbursement be denied entirely.

**Travel Service Fees**

69. In its fee application, Jones Day discloses that it incorporates "a $40 transaction fee to cover travel service expenses" in its charges for airline and train travel. Travel service charges are a part of the firm's overhead and not compensable by the estates. Accordingly, the Court should reduce any expenses allowed to Jones Day in the amount of $240.00.

**D.      Imperial**

(i)      <u>Fees</u>

70.      Imperial seeks an allowance of $580,645.16 in fees and reimbursement of out-of-pocket expenses aggregating $61,156.75 during the Fee Period.

71.      Subject to paragraphs 36 and 37 above, the United States Trustee has no other objection to Imperial's request for allowance of interim fees.

(ii)      <u>Expenses</u>

**Airfare**

72.      Imperial seeks reimbursement of airfare expenses in the amount of $33,519.60.  Many of the airfare tickets that are included in the Imperial application exceed $2,000 per trip, and one trip exceeds $8,000.  <u>By way of example only</u>, Imperial seeks reimbursement for airfare tickets on (i) 1/25/10 airfare from "SFO to JFK" in the amount of $2,232.40; (ii) 1/25/10 from "LAX to JFK" in the amount of $1,981.70; (iii) 2/16/10 from "SFO to JFK" in the amount of $2,177.40; and (iv) 3/23/10 from "SFO to RIO" in the amount of $8,412.50.  The UST Guidelines, however, prohibit first class or other luxury modes of travel in bankruptcy cases.  <u>See</u> UST Guidelines at b(5).  Absent explanation, the United States Trustee proposes that the Court deny these expenses entirely.

**Meals**

73.      Imperial seeks reimbursement for meals in the amount of $3,214.14.  Although Imperial did not provide any backup in support of its request for reimbursement of these expenses, it appears that Imperial has exceeded the $20.00 per person maximum allowable amount under the Guidelines for overtime meals after 8:00 p.m.  Amended

Guidelines at F(5). To illustrate <u>by way of examples only</u>, Imperial seeks reimbursement for "working meals" in the amounts of (i) approximately $1,000.00 on 1/12/10 (the time and the number of persons at the meal is not provided); (ii) approximately $600.00 on 1/15/10 (the time and the number of persons at the meal is not provided); (iii) approximately $1,000.00 on 2/23/10 (the time and the number of persons at the meal is not provided); and (iv) approximately $175.00 on 2/4/10 (the time and the number of persons at the meal is not provided). Absent explanation, the United States Trustee proposes that this expense reimbursement be denied entirely.

**Telephone Charges**

74.     Imperial seeks reimbursement for "communication" charges in the amount of $14,244.52. Many of the charges under this category appear to be for telephone usage, including: (i) "Verizon" $64.46; (ii) "AT&T" $61.06; (iii) "AT&T" $95.85. Imperial has provided no back up to support that these charges were actual and necessary expenses of the estates. 11 U.S.C. § 330(a)(1)(B). Absent explanation, the United States Trustee proposes that the Court reduce any expense reimbursement in this category by $500.00.

**Travel Service and Other Fees**

75.     In its fee application, Imperial requests reimbursement of various travel service fees, including: "ticket booking fees ($22.00)," "ticket change fee ($22.00)," "visa fee ($226.20)," "travel agency fees ($81.00) and "Amex ticket void fee ($22.00)." Travel service charges are a part of the firm's overhead and not compensable by the estates. Absent explanation, the Court should reduce any expenses allowed to Imperial in the amount of $375.00.

**D.      Deloitte Tax**

(i)      Fees

76.      Deloitte Tax seeks an allowance of $182,551 in fees and reimbursement of out-of-pocket expenses aggregating $1,401.30 during the Fee Period.

77.      **Overhead**

78.      Deloitte Tax seeks an allowance in the amount of $10,560 for the services provided by Yoga Chaitanya Singanamala.  A review of this timekeeper's records reveals that the majority of the time was spent largely on secretarial and clerical duties, such as importing and exporting files, uploading files and converting files to .csv format.  These services are a part of the firm's overhead and are not compensable by the estates.  See Fibermark, Inc., 349 B.R. at 400.  Absent explanation, the United States Trustee proposes that the Court reduce Deloitte Tax's requested fees by $5,000.

(ii)      Expenses

79.      The United States Trustee has no objection to Deloitte Tax's request for reimbursement of expenses.

**E.      Smith Gambrell**

(i)      Fees

80.      Smith Gambrell seeks an allowance of $105,534.50 in fees and reimbursement of out-of-pocket expenses aggregating $22.05 during the Fee Period.  The United States Trustee has no objection to an allowance of the fees requested.

(ii)      Expenses

81.      The United States Trustee has no objection to the reimbursement of the expenses requested.

**F.    MoFo**

   (i)    Fees

82.    MoFo seeks an allowance of $709,542.00 in fees and reimbursement of out-of-pocket expenses aggregating $9,608.42 during the Fee Period.

**Multiple Conference/Meeting Attendees**

83.    MoFo seeks allowance of fees in the amount of $125,510.50 for 198.30 hours related to Project Category 10 – "Meetings of Creditors."  On numerous occasions during the Fee Period, multiple MoFo attorneys appeared at and attended various conferences or meetings.  The MoFo application, however, does not provide an explanation for the involvement of more than one attorney (let alone 6 attorneys) at such conferences or meetings.

84.    Specifically, MoFo should explain why the following attorneys and/or paraprofessionals <u>all</u> needed to attend, prepare for, and/or deal with issues related to conferences or meetings on the following dates during the Fee Period:[5]

   (i)     <u>January 26, 2010</u>:  Stefan W. Engelhart, Todd M. Goren, Stephen P. Koshgerian, Lorenzo Marinuzzi, Brett H. Miller and Erica J. Richards, aggregating 26.4 hours and $16,635.00 in fees.

   (ii)    <u>February 4, 2010</u>:  Todd M. Goren, Stephen P. Koshgerian, Lorenzo Marinuzzi, Brett H. Miller and Erica J. Richards, aggregating 5.4 hours and $3,196.00 in fees.

   (iii)   <u>February 25, 2010</u>:  Stefan W. Engelhart, Todd M. Goren, Stephen P. Koshgerian, Brett H. Miller, Lorenzo Marinuzzi and Erica J. Richards, aggregating 22.3 hours and $14,832.00 in fees.

   (iv)    <u>March 4, 2010</u>:  Stefan W. Engelhart, Todd M. Goren, Brett H. Miller, Lorenzo Marinuzzi and Erica J. Richards, aggregating 5.9 hours and $4,009.50 in fees.

---

[5] Notably, many entries reflect inconsistent time spent by professionals for attending the same hearing on a specific date.

(v)    <u>March 11, 2010</u>:  Stefan W. Engelhart, Todd M. Goren, Brett H. Miller, Lorenzo Marinuzzi and Erica J. Richards, aggregating 6.9 hours and $4,649.50 in fees.

(vi)    <u>April 8, 2010</u>:  Stefan W. Engelhart, Todd M. Goren, Stephen P. Koshgerian, Brett H. Miller, Lorenzo Marinuzzi and Erica J. Richards, aggregating 8.1 hours and $4,929.50 in fees.

(vii)    <u>April 29, 2010</u>:  Leah C. Fletcher, Todd M. Goren, Stephen P. Koshgerian, Brett H. Miller, Lorenzo Marinuzzi and Erica J. Richards, aggregating 6.3 hours and $3,705 in fees.

85.    Absent explanation for the appearances of multiple MoFo attorneys at meetings and conferences, and multiple professionals billing the estates for preparing for such meetings and conferences, MoFo has not met its evidentiary burden to establish the reasonableness of these charges.  <u>See</u> <u>Howard & Zukin Capital v. High River Ltd. P'ship</u>, 2007 WL 1217268 at *2; <u>JLM</u>, 210 B.R. at 19; <u>Northwest Airlines</u>, 382 B.R. at 645; <u>Keene Corp.</u>, 205 B.R. at 695.  Consequently, compensation in the amount of $25,000 for such services should be denied.  <u>See</u> <u>Brous</u>, 370 B.R. at 570 (noting that fee applicants must explain why more than one professional needed to participate in a hearing or a conference).

**Staffing Inefficiencies**

86.    MoFo seeks an allowance in the amount of $15,000 for 40 hours of attorney time "preparing summaries of motions."  This time appears to have been spent by one associate, notwithstanding that several other MoFo lawyers were actually reviewing the motions and billing their time.  MoFo has not met its burden to show that these fees are necessary and, if so, why a paralegal could not have been utilized to provide these summaries.  Absent explanation, the United States Trustee proposes that the Court reduce the fees requested by MoFo in the amount of $7,500.

**Vagueness**

87.    MoFo's fee application includes many time entries, especially in the project categories titled "Case Administration," for which MoFo seeks allowance of fees in the aggregate amount of approximately $38,000, with vague descriptions that do not comply with the Guidelines.  By way of example only, these time entries include: (i) "docket update (.2);" (ii) "confer w/ E. Albert regarding meeting issues (.5);" (iii) "call w/ Debtors regarding case issues (1.1);" (iv) "Meeting w/ Pachulski, Imperial and Macquarie regarding general case issues (3.3);" (v) "review court filing (.20);" (vi) "review filing updates (.30);" (vii) "assessment of necessary upcoming projects (.50);" (viii) "Tel call with R. Seltzer regarding status (.40);" and (ix) "confer with L. Marinuzzi regarding litigation issues (.50)."  Absent explanation, the United States Trustee proposes that the Court reduce any allowance awarded to MoFo in the amount of $7,500, or approximately 20 percent of fees sought in this category, which correlates to the percentage of vague time entries contained therein.

**Billing Inaccuracies**

88.    The MoFo application appears to contain the following duplicate time entry:

| 2/3/10 | Prepare for and attend omnibus hearing and Delta status conference. | | |
|---|---|---|---|
| | Lorenzo Marinuzzi | 3.0 | $2,100.00 |

| 2/3/10 | Prepare for and attend omnibus hearing and Delta status conference. | | |
|---|---|---|---|
| | Lorenzo Marinuzzi | 3.0 | $2,100.00 |

89.    Absent explanation, the United States Trustee proposes that any allowance awarded to MoFo be reduced by $2,100.00.

(ii)    Expenses

**Photocopies**

90.     MoFo seeks a reimbursement in the amount of $690.90 for photocopies. Neither MoFo's application, the Certification of Lorenzo Marinuzzi dated June 30, 2010 (the "Marinuzzi Certification"), filed in support of the application, or the expense detail sets forth the number of copies or the rate charged.  The Amended Guidelines provide as follows: "Photocopying shall be reimbursable *at the lesser* of $.20 or cost."  Amended Guidelines at p.3, F.2 (emphasis added).  Absent explanation, the United States Trustee proposes that this expense reimbursement be denied entirely.

**Travel**

91.     MoFo seeks reimbursement of travel expenses in the amount of $2,300.00. The expense detail includes various airfare flight change fees, at least one exceeding $400, and hotel charges in excess of $600.  Neither MoFo's application, the Marinuzzi Certification nor the expense detail establishes the reasonableness of these charges. Absent explanation and backup documentation, the United States Trustee proposes that the Court deny this expense reimbursement entirely.

**G.     Macquarie**

(i)     Fees

92.     Macquarie seeks an allowance of $419,355.00 in fees and reimbursement of out-of-pocket expenses aggregating $7,944.68 during the Fee Period.  The United States Trustee has no objection to an allowance of fees to Macquarie in the requested amount.

(ii)     Expenses

**Travel Service Fees**

93.     Macquarie seeks reimbursement of travel "agency" fees.  It appears from invoices submitted to the United States Trustee, that there is no separate travel "agency." Rather, this is an internal department within Macquarie.  Nonetheless, these charges are a part of the firm's overhead and are not compensable by the estates.  Accordingly, the United States Trustee proposes that the Court reduce any expenses allowed to Macquarie in the amount of $260.00.


## VI.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an Order (i) reducing the fees allowed to the Retained Professionals by the amounts set forth herein, (ii) directing the Retained Professionals to supplement the Applications as set forth herein, (iii) reducing the reimbursements of expenses to the Retained Professionals by the amounts set forth herein and (iv) granting such other relief as is just.

Dated:  New York, New York
        August 5, 2010

                                    Respectfully submitted,

                                    TRACY HOPE DAVIS
                                    ACTING UNITED STATES TRUSTEE

                                    By  _/s/ Andrea B. Schwartz_____
                                        Andrea B. Schwartz
                                        Trial Attorney
                                        33 Whitehall Street, 21st Floor
                                        New York, New York 10004
                                        Tel. No. (212) 510-0500
                                        Fax No. (212) 668-2255