**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., et al.,<br><br>                                    Debtors.[1] | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 10-10018 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION GRANTING THE DEBTORS' MOTION FOR
AUTHORIZATION TO IMPLEMENT AN EMPLOYEE INCENTIVE
PROGRAM AND MAKE PAYMENTS THEREUNDER**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Mesa Air Group, Inc. (the "Debtors") filed a motion ("Motion") (ECF # 1028) seeking authorization pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004 to implement the proposed employee incentive program (the "Incentive Program") with respect to seven (7) eligible employees (the "Eligible Employees").[2] The Debtors propose to pay aggregate quarterly incentive payments of $287,000 to the Eligible Employees for their services rendered from January 2010 through June 2010. (Motion ¶ 11.) The Debtors also seek authorization to pay up to 100 percent of the target amount, or $111,000 in the aggregate, per quarter on a going-forward basis to each of the Eligible Employees. (Motion ¶ 12.)

---

[1]  The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

[2]  The Debtors seek authorization to pay interim bonuses to the: (1) Executive Vice President – General Counsel; (2) Chief Operating Officer; (3) Senior Vice President of Administration / Human Resources; (4) Vice President of Finance; (5) Senior Vice President of Technical Operations; (6) Vice President of Operations; and (7) Director of Finance. The Debtors do not seek authorization to make incentive payments to the Debtors' CEO (J. Ornstein) and President (M. Lotz) and reserve all rights to seek such authorization in the future by separate motion.

The Debtors argue that the Incentive Program is a valid exercise of the Debtors' business judgment pursuant to section 363(b) of the Bankruptcy Code. Under this standard, the Debtors state that this compensation program is a proper exercise of the Debtors' business judgment as the Eligible Employees have played a critical role in the successful operation of the business during the pendency of the bankruptcy, including maintaining flight completions and arrival and departure schedules, improving financial performance and meeting restructuring milestones. (Motion ¶¶ 24-28.) The Debtors also argue that the Incentive Program is not prohibited by section 503(c) of the Bankruptcy Code. (Motion ¶¶ 29-35.) In particular, the Debtors state that, even if the payments are outside the ordinary course of business, the Incentive Plan meets the requirement of section 503(c)(3) as they have "demonstrated a sound business purpose for establishing the Incentive Program." (Motion ¶ 33.) At the hearing on the Motion, counsel for the Official Committee of Unsecured Creditors (the "Committee" or the "Creditors' Committee") stated that the Committee has reviewed and approved these payments, and the Office of the United States Trustee stated that it has not objected to the Motion.

For the reasons explained below, the Court grants the Motion seeking authorization to implement the Incentive Program as it relates to the Eligible Employees.

## DISCUSSION

**A.     Law Governing Incentive Plans and Compensation of Directors**

The Bankruptcy Code outlines two separate standards for approving compensation plans for employees or directors, depending on whether the particular plan is made in or outside of the ordinary course of business. *See* 11 U.S.C. §§ 363, 503(c). Transfers to insiders, or transfers made outside the ordinary course of business and not

2

justified by "the facts and circumstances of the case," are subject to the requirements of section 503(c) of the Bankruptcy Code. This section prohibits any transfer

> made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
>
>> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>>
>> (B) the services provided by the person are essential to the survival of the business; and
>>
>> (C) either—
>>
>>> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>>>
>>> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1).

A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of section 503(c)(1) in order to be subject to this subdivision's exception. 4 COLLIER ON BANKRUPTCY ¶ 503.17 (15th ed. rev. 2007); *see also In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("*Dana II*") (summarizing the requirements under 503(c)(1)). Attempts to characterize what are essentially prohibited retention programs as "incentive" programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as

3

the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1). *See, e.g.*, *In re Dana Corp.*, 351 B.R. 96, 102 n.3 (Bankr. S.D.N.Y. 2006) ("*Dana I*") (stating that if a bonus proposal "walks like a duck (KERP), and quacks like a duck (KERP), it's a duck (KERP).").

Section 503(c)(3) also prohibits "other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11 U.S.C. § 503(c)(3).

Section 503(c) is a new provision of the Bankruptcy Code added as one of the BAPCPA amendments in 2005, to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Prods.*, *LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007). The intent of section 503(c) is to "limit the scope of 'key employee retention plans' and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor." 4 COLLIER ON BANKRUPTCY ¶ 503.17 (15th ed. rev. 2007). In addition to limiting payments to insiders for retention purposes, section 503 also limits severance payments to insiders and any transaction outside the ordinary course of business that would benefit "officers, managers, and consultants hired after the date of the filing of the petition." *Id.* The effect of section 503(c) was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. *Global Home*, 369 B.R. at 784-85.

4

The alternative method for approving these transactions is as an "ordinary course" transaction by Debtors pursuant to 11 U.S.C. § 363. While the Code does not provide guidance whether a particular transaction is conducted in the "ordinary course of business," courts have applied both "horizontal" and "vertical" tests to consider the reasonableness of a transaction and whether it was conducted in the ordinary course. As stated by Judge Beatty,

> [t]he inquiry deemed horizontal is whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. The inquiry deemed vertical analyzes the transactions 'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.'

*In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997) (citation omitted); *see also Dana II*, 358 B.R. at 580 (citing *Crystal Apparel* with approval). The horizontal test "is aimed at determining whether the transaction is abnormal or unusual, in which case it is probably not in the ordinary course of business, or whether it is a reasonably common type of transaction." 4 COLLIER ON BANKRUPTCY ¶ 363.17 (15th ed. rev. 2007). The vertical test "reviews the transaction from the perspective of creditors, asking whether the transaction is one that creditors would reasonably expect the debtor or trustee to enter into." *Id.*

If a particular transaction passes the horizontal and vertical tests, it is then considered an "ordinary course" transaction subject to approval under section 363. As an ordinary course transaction, the inquiry is then whether the debtor has a valid business purpose for engaging in the particular transaction, and whether "the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of

5

authority under the Bankruptcy Code." *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 799 (Bankr. D. Del. 2007).

### B. The Debtors Have Met Their Burden of Demonstrating an Appropriate Exercise of Business Judgment

The Debtors' Motion seeks approval of payments to certain key employees in the amount of $287,000 for the first two quarters of 2010 and a maximum of $111,000 for each quarter in the aggregate going forward. The Debtors first argue that payments under the Incentive Program are a valid exercise of their business judgment under section 363, and thereafter argue that they may be approved pursuant to section 503(c) as the proposed payment plan is not primarily motivated by retention or in the nature of severance and justified by the facts and circumstances of the case.

The Debtors have established their *prima facie* case that the Incentive Payments are a valid exercise of their business judgment under both sections 363 and 503(c). The Debtors have demonstrated that the Incentive Payments are consistent with past practices. First, the Debtors assert that their standard compensation policy "involves a lower than market base salary combined with additional compensation in the form of quarterly incentive payments" and the Incentive Program "supplements their below-market base salary so that their total compensation is commensurate with the services they are actually providing." (Motion ¶¶ 9, 10.) Further, Michael J. Lotz, President of Mesa Air Group, Inc. and its subsidiaries, notes in his Declaration ("Lotz Decl.") that the Debtors have had this compensation structure in place since 1998. (ECF # 1070, Lotz Decl. ¶ 7.) The Debtors also stated in their initial Wage and Benefit Motion that payments under the incentive plan "are consistent with historic practices and in the ordinary course of their business." (ECF # 15, ¶ 25.) The Debtors also support the ordinary course nature of the

6

transaction by noting that the amount of the bonuses was negotiated prior to the filing of the bankruptcy petition. *Dana II*, 358 B.R. at 579-81 (approving short-term incentive program for employees after it was demonstrated that the 2006 plan was a revision of a plan used by debtor in the year prior to bankruptcy).

To establish the expectation of creditors prong, the Incentive Payments have been vetted and approved by the Creditors' Committee. (Motion ¶ 13.) In addition, the Incentive Program only applies to seven (7) employees and the Debtors posit that such payments appropriately compensate the Debtors' executives for their efforts since the filing of the bankruptcy petition and going forward. In sum, the Debtors have established that the Incentive Payments are consistent with prepetition and industry practices, are within the expectation of creditors and are a reasonable exercise of their business judgment made in good faith.

In addition, the Debtors have made out their *prima facie* case that the Incentive Program is not a "retention" bonus and is "intended to motivate . . . the employees to achieve performance goals" under section 503(c) of the Bankruptcy Code. (Motion ¶ 30.) There is no indication that the Incentive Program is an attempt to encourage the Eligible Employees to stay with the Debtors during the restructuring. In fact, the Incentive Program is tied to certain performance goals of the Debtors that have been met during the second and third fiscal quarters of 2010, including maintenance of flight schedules, efficient return of aircraft, securing aircraft equipment at reduced rates and negotiation of reduced rates for aircraft of the Debtors that were no longer in service. (Motion ¶ 27.)

7

Moreover, the Declaration of Mr. Lotz indicates that, historically, the Debtors have given out bonuses to employees based on the profits achieved by the company. If the Debtors achieved a profit in excess of $1 million, the Debtors have paid up to 100 percent of the target incentive payment. (Lotz Decl. ¶ 9.) If the Debtors' profits are substantial (in excess of $10 million), they have traditionally paid more than 100 percent of the target incentive payments. *Id.* For the two quarters subject to the Motion, the Debtors have turned a profit to the tune of $1.8 and $11.1 million, respectively. *Id.* Consequently, the Debtors now seek authority to pay 100 percent of the target bonus to the Eligible Employees for the second and third fiscal quarters of 2010, and up to 100 percent of the target bonus going forward. Such payments are consistent with past practices and clearly tied to the performance of the Debtors.

Assuming that these payments are not ordinary course payments under section 363 and not prohibited by section 503(c)(1)(A) and (B) as retention payments, they are governed by section 503(c)(3) as transfers "outside the ordinary course of business." As noted above, the Debtors have established that the Incentive Payments are "justified by the facts and circumstances of the case" under section 503(c)(3) as they are within the "sound business judgment" of the Debtors. *Dana II*, 358 B.R. at 576-77.

**CONCLUSION**

The Debtors have met their burden of proving that the proposed payments may appropriately be paid in the exercise of their sound business judgment under sections 363 and 503(c)(3) and a separate order will be entered approving the Incentive Program.

DATED:   September 24, 2010
           New York, New York

                                             **/s/Martin Glenn**
                                               MARTIN GLENN
                                      United States Bankruptcy Judge