PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF AMENDED EXHIBIT

**PLEASE TAKE NOTICE** that the debtors and debtors in possession (collectively, the "Debtors") hereby file this notice of an amended Exhibit E to the *Objection to the Request by Engine Lease Finance Corporation and Deucalion Engine Leasing (Ireland) Limited for Allowance and Payment of Administrative Expense Pursuant to Section 503(b) and 507(a)(2) of the Bankruptcy Code* filed on October 20, 2010 [Docket No. 1131].

---

[1] The Debtors are:  Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

56772-002\DOCS_SF:74659.1

Dated: November 5, 2010
New York, New York

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ John W. Lucas*
Richard M Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT E

**(UAL December 17, 2004 Transcript)**

```
                 12_17_2004 United Omnibus Transcript.txt
0001
  1            IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
  2                       EASTERN DIVISION
  3
  4    In re:                    )
                                 ) No. 02 B 48191
  5    UAL CORPORATION, et al., )
                                 ) Chicago, Illinois
  6                              ) December 17, 2004
                       Debtors.  ) 9:30 a.m.
  7
  8        TRANSCRIPT OF PROCEEDINGS BEFORE THE
                HONORABLE EUGENE R. WEDOFF
  9
 10    APPEARANCES:
 11    MR. JAMES SPRAYREGEN
       MR. MARC KIESELSTEIN
 12    MR. DANIEL LAYTIN
       MR. DAVID SELIGMAN
 13    MR. MARC CARMEL
       MR. ERIC PREZANT
 14    MR. ANDY MAROVITZ
       MR. TODD GALE
 15    on behalf of the debtors;
 16    MR. FRUMAN JACOBSON
       on behalf of the official creditors committee;
 17
       MR. FIL AGUSTI
 18    on behalf of the IFS;
 19    MS. THERESA GEE
       on behalf of the Secretary of Labor for the U.S.
 20    Department of Labor;
 21    MR. JOHN MENKE
       on behalf of the Pension Benefit Guaranty
 22    Corporation;
 23    MR. JACK CARRIGLIO
       on behalf of the United Retired Pilots Benefit
 24    Protection Association;
 25    MR. TOM REDBURN
       on behalf of the IAM;
0002
  1    MR. ROBERT CLAYMAN
       on behalf of the Association of Flight Attendants;
  2
       MS. KATY GLEASON
  3    on behalf of the United States Trustee;
  4    MR. DANIEL CURTH
       MR. DAVID KANE
  5    on behalf of OurHouse;
  6    MR. ANDREW ROSENMAN
       on behalf of UAL Loyalty Services;
  7
       MR. RICHARD LORENZEN (TELEPHONICALLY)
  8    on behalf of Best Western;
  9    MR. FRANK CITERA
       on behalf of the city of Chicago;
 10
       MS. CAROL CONNER FLOWE
 11    on behalf of SunTrust Bank;
 12    MR. PATRICK MCLAUGHLIN
       on behalf of U.S. Bank as trustee;
 13
       MR. ROBERT FISHMAN
                              Page 1
```

```
                         12_17_2004 United Omnibus Transcript.txt
14   on behalf of the 2000 A ad hoc committee;
15   MR. MARK HEBBELN
     on behalf of HSBC Bank.
16
17
18
19
20
21
22
23
24
25
0003
 1              THE CLERK:  UAL Corporation, 02 B 48191.
 2              MR. SPRAYREGEN:  Good morning, Judge
 3   Wedoff.  James Sprayregen from Kirkland & Ellis on
 4   behalf of the debtors.  Your Honor, we filed a
 5   status report late yesterday.  I believe we got it
 6   to your chambers prior to your departure, but I'm
 7   not sure if the court has had an opportunity to
 8   review it.
 9              THE COURT:  You did, and I have reviewed
10   it.  And so we're in the situation that we have been
11   several times in the past where if there is
12   something you want to say for the benefit of the
13   people who are here, you're certainly free to do
14   that.  But, otherwise, we can get right to the
15   agenda.
16              MR. SPRAYREGEN:  Well, the status report,
17   obviously it's filed and would be available for
18   people to review, so I don't think I need to
19   duplicate the oral conversation -- I'm sorry, the
20   written document with oral conversation.  I would
21   only add that we did file late yesterday, around the
22   same time as the status report, an emergency motion
23   concerning a scheduling issue, and the court should
24   have received that also.
25              THE COURT:  Yes.  And that's the last item
0004
 1   on the agenda, unless there is a need to take that
 2   up first.  I shouldn't say on the agenda, it's the
 3   last item in my computer-generated call.  So if you
 4   want to take that out of order, we can.  But,
 5   otherwise, I would just as soon leave it where it
 6   is.
 7              MR. SPRAYREGEN:  That's fine, Your Honor.
 8   I'll address it at that point in time.
 9              THE COURT:  Okay.  Then we can turn to the
10   agenda.  The first matter is a motion for leave to
11   prosecute claims brought by the unsecured creditors
12   committee.  That's been requested to be continued to
13   January 1, and that will be done unless there is any
14   objection to that.
15              MR. SPRAYREGEN:  That's correct.  And
16   there is some discussion as to whether it's moot in
17   light of the events of the past couple of weeks.
18   And we'll hopefully deal with that at the next
19   hearing.
20              THE COURT:  All right.
21              THE CLERK:  January 21.
22              THE COURT:  The next matter is the motion
23   of the Port of Oakland for relief from stay to
24   assert setoff rights.  And, again, that's being
                                                    Page 2
```

```
                    12_17_2004 United Omnibus Transcript.txt
23   provides information regarding its operations
24   without the need for getting a court order to
25   provide the information.
0010
 1              The next several matters on the
 2   agenda, items seven, eight, and nine, all are
 3   motions for attorneys to appear pro hac vice.  My
 4   role here is basically that of a fee collector.  If
 5   fees have been paid, I am happy to welcome
 6   Messrs. Feinsmith, Elstad, and Pohl to practice
 7   before the court in this case.  This was going to be
 8   presented by Mr. Dressler or...
 9              MR. POHL:  Your Honor, Steve Pohl.  My
10   colleagues Todd Feinsmith and John Elstad aren't
11   here today because they don't need to be here.
12              THE COURT:  They do not.
13              MR. POHL:  And I'm told by my local
14   counsel that he didn't have to be here, so I'm here
15   for these motions.
16              THE COURT:  I just need to know that those
17   fees were paid.
18              MR. POHL:  The clients will pay our fees,
19   yes.
20              THE COURT:  Well, if they're planning to
21   do it in the future, I'm not going to grant the
22   motion until they pay.  If the fees have been paid,
23   then, of course, I will enter the orders that you've
24   proposed.
25              MR. POHL:  Yes, they have been paid, Your
0011
 1   Honor.
 2              THE COURT:  Thank you very much.
 3              MR. POHL:  I apologize.
 4              THE COURT:  And welcome to the court.
 5              MR. POHL:  Thank you.
 6              MR. SPRAYREGEN:  Your Honor,
 7   Mr. Kieselstein is going to handle the next -- 10
 8   through 14.
 9              THE COURT:  Okay.  At this point --
10              MR. KIESELSTEIN:  Good morning, your
11   Honor.  Marc Kieselstein on behalf of the debtors.
12              THE COURT:  Ten and 11 really go together.
13   Eleven is the motion of U.S. Bank, National Bank of
14   New York, and Wells Fargo to compel payment of
15   post-petition lease obligations for now, I guess, 18
16   leased aircraft, and item ten deals with that.  It's
17   the debtors' motion.  It's termed a motion to
18   dismiss under Federal Rule of Civil Procedure
19   12(b)(6) of certain claims that are made in the
20   motion.  I've read the briefs on item ten, this
21   motion to dismiss, and I'm prepared to rule on it.
22   I don't believe I'll need argument.  But I'll read
23   this ruling into the record and we'll see where we
24   stand after I rule on it.
25              MR. KIESELSTEIN:  Very good, Your Honor.
0012
 1              THE COURT:  The initial issue presented
 2   here is whether the motion is appropriate.  It is.
 3   A motion seeking to limit the issues for trial can
 4   be considered as a motion in limine without regard
 5   to its appropriateness under Rule 12(b)(6) of the
 6   Federal Rules of Civil Procedure, and so I will rule
 7   on the merits of the motion.  On the merits, the
 8   motion raises legal questions involving two claims
                                 Page 5
```

```
                    12_17_2004 United Omnibus Transcript.txt
 9    for allowance of administrative expense set out in
10    the trustees' amended motion.  First, a claim of
11    entitlement to adequate protection for a loss of
12    value, maintenance burn, during periods of time
13    after termination of the automatic stay, and,
14    second, a claim for breach of return obligations set
15    out in the underlying leases where those leases were
16    not subject to an agreement under Section
17    1110(a)(2)(A).
18              As to the first issue, the debtors are
19    correct.  Adequate protection is intended to
20    compensate a creditor for the loss of its interest
21    in property of the debtor during the time that the
22    automatic stay is in effect.  The need for adequate
23    protection in bankruptcy arises from the fact that
24    the automatic stay prevents a creditor from
25    exercising its nonbankruptcy rights to the debtors'
0013
 1    property, and so may impose on the creditor a
 2    bankruptcy induced decline in the value of its
 3    interest in depreciating property.  See United
 4    Savings Association versus Timbers of Inwood Forest
 5    Associates, 484 U.S. 365, 371, 1988, stating that a
 6    creditor is not adequately protected unless it is,
 7    quote, "reimbursed for the use of the proceeds he is
 8    deprived of during the term of the stay," close
 9    quote.
10              However, once the stay is terminated
11    as to a particular item of property, the creditor is
12    free to exercise its nonbankruptcy remedies, taking
13    possession of or selling the property, and so is no
14    longer entitled to the bankruptcy-based remedy of
15    adequate protection.  This understanding is
16    reflected in Section 363(e) of the Bankruptcy Code
17    which allows adequate protection to personal
18    property lessors, quote, "to the exclusion of such
19    property being subject to an order to grant relief
20    from the automatic stay," close quote.  A creditor
21    might choose to allow the debtor to retain property
22    after the termination of the stay.  But if so, the
23    creditor is free to require whatever protection the
24    creditor wishes as a condition for retention.
25    Adequate protection under the Bankruptcy Code has no
0014
 1    application to this situation.
 2              As to the second issue, return
 3    obligations cannot be a ground for allowance of an
 4    administrative expense in their own right.  It may
 5    well be that property is returned by the debtor in a
 6    condition contrary to that required by the lease.
 7    But if the property was damaged by the debtor prior
 8    to the filing of the case, that damage would be a
 9    pre-petition nonpriority claim, not a priority claim
10    arising during the administration of the bankruptcy
11    case.  This distinction is clearly set forth in in
12    re Atlantic Container Corporation, 133 BR 980, 992,
13    a decision of the bankruptcy court for this district
14    in 1991.
15              Atlantic Container Corporation dealt
16    with a real property lease that included termination
17    provisions requiring the property to be returned in
18    the condition that it was received.  The landlord
19    claimed an administrative claim for failure to do
20    so.  The court concluded its analysis of this
                                   Page 6
```

```
                    12_17_2004 United Omnibus Transcript.txt
21   question as follows:  Quote, "only the costs of
22   remedying damages to the premises which actually
23   occurred after the filing of the bankruptcy petition
24   may be treated as administrative expenses.  See
25   United Trucking Service, 851 F.2d at 164.  An
0015
 1   evidentiary hearing will be necessary in order to
 2   determine the extent, if any, of damages to the
 3   premises which occurred post-petition," close quote.
 4   The same result applies here.  To the extent that
 5   the aircraft were damaged post-petition, an
 6   administrative claim would arise.  To the extent
 7   that any failure to comply with return provisions
 8   reflects other than a failure to maintain the
 9   aircraft in accordance with the applicable leases
10   post-petition, there would be no administrative
11   claim.
12                 As a result, considered as a motion in
13   limine, the debtors' motion will be granted.  The
14   court will not hear evidence at the scheduled
15   hearing on the trustees' amended motion with respect
16   to either a lack of adequate protection after
17   termination of the automatic stay or to any breach
18   of return obligations not involving failure of the
19   debtors to maintain aircraft according to applicable
20   obligations during the period prior to rejection of
21   its leases.  I will enter an order in conformity
22   with this ruling.
23                 That leaves the underlying motion for
24   allowance of administrative claims to be heard on
25   March 1 with the factual disputes that remain after
0016
 1   this ruling.
 2             MR. KIESELSTEIN:  Thank you, your Honor.
 3             UNIDENTIFIED SPEAKER:  Thank you.
 4             MR. KIESELSTEIN:  Your Honor, I do think
 5   we also were going to talk just about a pre-trial
 6   order and the like with respect to the March 1 trial
 7   on 365(d)(10).  And we have exchanged with counsel a
 8   proposed set of dates.  That's still being worked
 9   on, Your Honor.  Frankly, it got caught up in the
10   backwash of some of the other issues that we've had
11   with the aircraft providers.  So we hope to submit
12   something to Your Honor soon, in the next couple of
13   weeks.
14             THE COURT:  Well, that would be a very
15   good idea.  And it might be a good idea to set a
16   date for a continued pre-trial conference, if you
17   will, so that if there is any remaining dispute or
18   unclarity about that it can be resolved prior to
19   March 1.
20             MR. KIESELSTEIN:  Could we do that at the
21   January omnibus, Your Honor?
22             THE COURT:  Yes, that would be fine.
23             Mr. Jacobson, you had something to
24   say?
25             MR. JACOBSON:  Yes, your Honor.  Fruman
0017
 1   Jacobson on behalf of the official creditors
 2   committee.  We wanted to join the debtor in the
 3   reservation of rights which is reflected in the
 4   draft order.
 5             THE COURT:  Well, that's fine.  But I
 6   haven't seen it.  So if you have an agreed order
                                                    Page 7
```

```
                   12_17_2004 United Omnibus Transcript.txt
11              MR. SPRAYREGEN:  We were going to suggest
12   a January 4 reply to any objections so you would
13   have things two days before the hearing.
14              THE COURT:  Okay.
15              MR. SPRAYREGEN:  If that works for the
16   court.
17              THE COURT:  And, obviously, that puts an
18   imposition on your people as well.  But, yes, that
19   would be appropriate.
20              MR. SPRAYREGEN:  And I will say we
21   apologize to the court and all the parties for the
22   timing imposition.  This is unfortunate --
23              THE COURT:  I think it was predictable
24   when we set the 1113 hearing when we did that there
25   could be some interference with peoples' holiday
0136
 1   schedule.  I think it's unavoidable.
 2              I don't believe there is anything else
 3   on the agenda for today.
 4              MR. SPRAYREGEN:  Thank you, your Honor.
 5   Happy holidays.
 6                      (Which were all the proceedings
                        had in the above-entitled cause,
 7                      December 17, 2004.)
 8
 9   I, GARY SCHNEIDER, CSR, RPR, DO HEREBY CERTIFY THAT
     THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
10   PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```