# EXHIBIT A

**(Blackline of Second Amended Plan)**

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile: 212-561-7777
Richard M. Pachulski
Laura Davis Jones
Debra I. Grassgreen
Maria A. Bove
John W. Lucas

Attorneys for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MESA AIR GROUP, INC., *et al.*, | Case No. 10-10018 (MG) |
| Debtors.[1] | (Jointly Administered) |

**SECOND AMENDED JOINT PLAN**
**OF REORGANIZATION OF MESA AIR GROUP, INC. AND**
**AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: November 4,[], 2010

---

[1] The Debtors are: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group — Airline Inventory Management, LLC (2015); Nilchii, Inc. (5531); and Patar, Inc. (1653).

**ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION** ........................................................... 1

1.1 510(a) Subrogation Claim. ........................................................... 2

1.2 2012 Noteholder Claim. ........................................................... 2

1.3 2012 Note Guarantors. ........................................................... 2

1.4 2012 Notes. ........................................................... 2

1.5 2023 Noteholder Claim. ........................................................... 2

1.6 2023 Notes. ........................................................... 2

1.7 2024 Noteholder Claim. ........................................................... 2

1.8 2024 Notes. ........................................................... 2

1.9 ACE Companies. ........................................................... 2

1.10 ACE Insurance Program. ........................................................... 3

1.11 Actual Pro Rata Share of ~~New 8% Notes (Series B)~~Restructured Unsecured Equity. ........................................................... 3

1.12 ~~Actual Pro Rata Share of Restructured Unsecured Equity.   3~~Administrative Claim. 3

1.13 Administrative Claim Bar Date. ........................................................... 3

1.14 ~~Administrative Claim Bar Date~~AFA. ........................................................... 3

1.15 AFA Collective Bargaining Agreement. ........................................................... 4

1.16 ~~AFA Collective Bargaining Agreement.~~                                          ~~4~~Agent. 4

1.17 ~~Agent~~Aggregate Distribution Share. ........................................................... 4

1.18 Aggregate Distribution ~~Share~~Percentage. ........................................................... 4

1.19 Aggregate ~~Distribution Percentage~~Estimated Value. ........................................................... 4

1.20 ~~Aggregate Estimated Value.~~ ........................................................... 4

~~1.21~~ Air Midwest. ........................................................... 4

1.21 Aircraft Equipment. ........................................................... 4

1.22 Aircraft ~~Equipment.~~ ........................................................... 4

~~1.23~~ ~~Aircraft~~Rejection Damages Claim Settlement Procedures. ........................................................... 4

~~1.24~~1.23                                                        Aircraft Secured Claim. 4

1.24 Allowed. ........................................................... 4

1.25 ~~Allowed~~ALPA. ........................................................... 45

1.26 ALPA Collective Bargaining Agreement. ........................................................... 5

1.27 ~~ALPA Collective Bargaining Agreement.~~ ........................................................... 5

~~1.28~~ Alternative Transaction. ........................................................... 5

1.28 AMT. ........................................................... 5

1.29 AMTAMTI. ........................................................... 5

1.30 AMTI. ................................................................ 5

1.31 Arizona District Court. ........................................ 5

1.321.31 Assumption Obligations. 5

1.331.32 Avoidance Actions. 5

1.33 Bankruptcy Code. ................................................ 5

1.34 Bankruptcy CodeCourt. ...................................... 5

1.35 Bankruptcy Court. .............................................. 6

1.36 Bankruptcy Rules. .............................................. 65

1.36 Bar Date. ............................................................ 6

1.37 Bar Date. ............................................................ 6

1.38 Business Day. ...................................................... 6

1.38 Bombardier. ........................................................ 6

1.39 Bombardier MPA. ............................................... 6

1.40 Bombardier MPACash. ........................................ 6

1.41 Cash. .................................................................. 6

1.42 Causes of Action and Defenses. ........................ 6

1.431.42 Chapter 11 Case(s). 6

1.43 Charter Documents. ............................................ 6

1.44 Charter Documents. ............................................ 6

1.45 Citizenship Declaration. ...................................... 76

1.45 Claim. ................................................................ 6

1.46 Claim. ................................................................ 7

1.47 Claim Objection Deadline. .................................. 7

1.481.47 Claims Settlement Procedures Order. 7

1.48 Class. .................................................................. 7

1.49 Class 3 Distribution Date. ................................... 7

1.50 Class 35 Distribution Date. ................................. 7

1.51 Class 56 Distribution Date. ................................. 7

1.52 COD. .................................................................. 7

1.53 Code-Share Agreements. .................................... 7

1.54 Collective Bargaining Agreements. ...................... 7

1.55 Committee. ......................................................... 8

1.56 Compass Bank. ................................................... 8

| | | |
|---|---|---|
| 1.57 | Confirmation. | 8 |
| 1.58 | Confirmation Date. | 8 |
| 1.59 | Confirmation Hearing. | 8 |
| 1.60 | Confirmation Order. | 8 |
| 1.61 | Contingent Claim. | 8 |
| 1.62 | Creditor. | 8 |
| 1.63 | CRJ. | 8 |
| 1.64 | CRJ 700 Aircraft Leases. | 8 |
| 1.65 | CRJ 900 Aircraft Leases. | 8 |
| 1.66 | CRJ Equipment Trust. | 9 |
| 1.67 | CRJ Equipment Trust Aircraft Equipment. | 9 |
| 1.68 | CRJ Equipment Trust Aircraft Secured Claim. | 9 |
| 1.69 | CRJ Equipment Trust Guarantee. | 9 |
| 1.70 | CRJ Equipment Trust Guarantee Claim. | 9 |
| 1.71 | CRJ Equipment Trust Credit Agreement. | 9 |
| 1.72 | CRJ Equipment Trust Loan Documents. | 9 |
| 1.73 | De Minimis Convenience Claim. | 9 |
| 1.74 | Debtor Subsidiaries. | 10 |
| 1.75 | Debtors. | 10 |
| 1.76 | Deferred Compensation Plan Accounts. | 10 |
| 1.77 | Delta. | 10 |
| 1.78 | Delta CRJ Litigation. | 10 |
| 1.79 | Delta Engine Litigation. | 10 |
| 1.80 | Delta ERJ Litigation. | 10 |
| 1.81 | Delta MFN Litigation. | 10 |
| 1.82 | Delta Temporary Agreement. | 10 |
| 1.83 | Disclosure Statement. | 10 |
| 1.84 | Disclosure Statement Approval Order. | 10 |
| 1.85 | Disputed. | ~~11~~10 |
| 1.86 | Distribution Date[s]. | 11 |
| 1.87 | Distribution Record Date. | 11 |
| 1.88 | Distribution Reserve. | 11 |
| 1.89 | DOJ. | 11 |
| 1.90 | DOT. | 11 |

1.91     EDC Aircraft Secured Claim. ................................................................... 11

1.92     EDC Credit Agreement. ........................................................................... 11

1.93     EDC Credit Agreement Equipment ....................................................... 11

1.94     EDC Credit Agreement Guaranty .......................................................... 11

1.95     Effective Date. ......................................................................................... 11

1.96     Epiq. ......................................................................................................... 11

1.97     ERJ. .......................................................................................................... 11

1.98     Estate. ...................................................................................................... 11

1.99     Estate Assets. ..................................................................................... ~~12~~11

1.100   Estimated. ................................................................................................ 12

1.101   Estimated Additional Pro Rata Share of New 8% Notes (Series ~~B~~A). ...... 12

1.102   Estimated Additional Pro Rata Share of ~~Restructured Unsecured Equity~~New 8% Notes (Series B). ................................. 12

1.103   Estimated ~~Initial~~Additional Pro Rata Share of ~~New 8% Notes (Series B).13~~Restructured Unsecur

1.104   Estimated Initial Pro Rata Share of ~~Restructured Unsecured Equity~~New 8% Notes (Series A). ................................................................. 13

1.105   Estimated Initial Pro Rata Share of New 8% Notes (Series B). ............... 13

1.106   Estimated Initial Pro Rata Share of Restructured Unsecured Equity. ...... 13

1.107   Estimated Pro Rata Share of New 8% Notes. ........................................ 14

1.108   Estimated Pro Rata Share of Restructured Unsecured Equity. ............... 14

1.109   Excess Spirit Sale Proceeds ................................................................... 13

~~1.108~~   ~~FAA.~~ ....................................................................................................... 14

~~1.109~~   ~~Final Distribution Date.~~ ...................................................................... 14

1.110   ~~Final Order~~FAA. ................................................................................. 14

1.111   Final Distribution Date. ......................................................................... 14

1.112   Final Order. ............................................................................................ 14

1.113   Freedom. ................................................................................................. 14

~~1.112~~1.114   Georgia District Court. .. 14

~~1.113~~1.115   General Unsecured Claim. .. 14

~~1.114~~1.116   IATA. ~~14~~15

~~1.115~~1.117   Illinois District Court. ~~14~~15

~~1.116~~1.118   Imperial. ~~14~~15

~~1.117~~1.119   Indenture Trustees. ~~14~~15

~~1.118~~1.120   Indentures. ~~14~~

~~1.119~~   ~~Indigo.~~ ~~14~~

1.120 Individual Debtor Distribution Share. .............................................................. 15

1.121 Individual Debtor Distribution PercentageIndigo. .............................................. 15

1.122 Individual Estimated ValueDebtor Distribution Share. ......................................... 15

1.123 InitialIndividual Debtor Distribution DatePercentage. .......................................... 15

1.124 Individual Estimated Value. .................................................................................. 15

1.125 Initial Distribution Date. ...................................................................................... 15

1.126 Insider. .................................................................................................................. 15

1.1251.127 ........................................................................................... Intercompany Claim. 15

1.1261.128 .................................................................................................... Interests. 1516

1.1271.129 ................................................................................. Interim Compensation Order. 1516

1.1281.130 ................................................................................... Interim Distribution Date. 15

1.129 IRS. .................................................................................................................... 15

1.130 Key Employment Agreements. ........................................................................... 16

1.131 IRS. ..................................................................................................................... 16

1.132 Key Employment Agreements. ........................................................................... 16

1.133 Kunpeng. ............................................................................................................. 16

1.1321.134 .................................................................................. Kunpeng Joint Venture Agreement. 16

1.1331.135 ............................................................................................................ Lien. 16

1.1341.136 ........................................................................................... Liquidating Debtors. 16

1.1351.137 .................................................................................................... MAGAIM. 16

1.1361.138 ....................................................................................... Management Equity Pool. 16

1.1371.139 ............................................................................................... Management Notes. 16

1.1381.140 ............................................................................................... Mesa Air Group. 1617

1.1391.141 ............................................................................................ Mesa Air New York. 17

1.1401.142 ................................................................................................... Mesa Airlines. 17

1.1411.143 .................................................................................................. Mesa In-Flight. 17

1.1421.144 ................................................................................................ Mesa Tax Group. 17

1.1431.145 ............................................................................................................ Mo-Go. 17

1.1441.146 .............................................................................................................. MPD. 17

1.1451.147 ......................................................................................................... Nasdaq. 17

1.1461.148 ............................................................................................ New Common Stock. 17

1.147 New Notes. ......................................................................................................... 17

1.148 New 8% Notes. ................................................................................................... 17

1.149 New 8% Notes (Series A). ................................................................................. 17

1.150    **New 8% Notes** ~~(Series B)~~. ........................................................................ 17

1.151    **New** 8% Notes (Series A). ................................................................................ 17

**1.152    New 8% Notes (Series B).** ............................................................................. 18

**1.153    New** Notes Indenture. .................................................................................... 18

~~1.152~~**1.154** ......................................................................... New Preferred Stock. 18

~~1.153~~**1.155** ...................................................................... New Warrant Agreement. 18

~~1.154~~**1.156** .......................................................................................... New Warrants. 18

~~1.155~~**1.157** ...................................................................................... Nilchii. ~~18~~19

~~1.156~~**1.158** ......................................................................................... NOL. ~~18~~19

~~1.157~~**1.159** ....................................................................... Non- U.S. Citizen. ~~18~~19

~~1.158~~**1.160** ............................................................................. Noteholders. ~~18~~19

~~1.159~~**1.161** ..................................................................................... Notes. ~~18~~19

~~1.160~~**1.162** ....................................................................................... Patar. ~~18~~19

~~1.161~~**1.163** ........................................................................ Permitted Payment. 19

~~1.162~~**1.164** ............................................................................................ Person. 19

~~1.163~~**1.165** ...................................................................... Pesakovic Lenders. 19

~~1.164    Petition Date.~~ ..................................................................................... ~~19~~

~~1.165    Ping Shan.~~ ......................................................................................... ~~19~~

1.166    ~~Plan~~**Petition Date**. ................................................................................ 19

1.167    ~~Plan Supplement~~**Ping Shan**. ............................................................... 19

1.168    ~~Post-Effective Date Charter Documents~~**Plan**. ................................. 19

1.169    ~~Post-Effective Date Committee~~**Plan Supplement**. ............................ 19

1.170    Post-Effective Date ~~Debtors.~~ ............................... ~~19~~**Charter Documents.** 20

1.171    Post-Effective Date ~~Financing~~**Committee**. ................................. ~~19~~20

1.172    Post-~~Petition Aircraft Agreement.~~ ................ ~~19~~**Effective Date Debtors.** 20

1.173    **Post-Effective Date Financing.** ............................................................. 20

**1.174    Post-Petition Aircraft Agreement.** ........................................................ 20

**1.175    Principal Carriers.** ................................................................................... 20

~~1.174~~**1.176** ...................................................................... Priority Non-Tax Claim. 20

~~1.175~~**1.177** ................................................................................ Priority Tax Claim. ~~20~~

1.176    ~~Pro Rata.~~ ............................................................................................ ~~20~~

1.177    ~~Proceeds.~~ ................................................................................................ 20

1.178    ~~Professional~~**Pro Rata**. .......................................................................... 20

1.179    ~~Professional Fees~~**Proceeds**. ................................................................. 20

1.180 Professional ~~Fees Bar Date~~. .................................................................. 20

1.181 ~~PSZJ~~Professional Fees. ........................................................................ 20

1.182 ~~RACC.~~ ........................................................ 20Professional Fees Bar Date. 21

1.183 ~~RASI~~PSZJ. ........................................................................................ ~~20~~21

1.184 ~~Rejection Claim Bar Date.~~ ............................................................... ~~20~~RACC. 21

1.185 ~~Rejection Procedures Order.~~ ......................................................... ~~20~~RASI. 21

1.186 Rejection Claim Bar Date. ...................................................................... 21

1.187 Rejection Procedures Order. .................................................................. 21

1.188 Republic Airways. ................................................................................... 21

~~1.187~~1.189 ........................................................................... Reorganized Board. 21

~~1.188~~1.190 ......................................................... Reorganized Debtor Subsidiaries. 21

~~1.189~~ ~~Reorganized Debtors.~~ ......................................................................... 21

~~1.190~~ ~~Reorganized Mesa Air Group.~~ ........................................................... 21

1.191 Reorganized ~~Mesa Bylaws~~Debtors. ................................................... 21

1.192 Reorganized Mesa ~~Charter~~Air Group. .............................................. 21

1.193 Reorganized Mesa Bylaws. ..................................................................... 21

1.194 Reorganized Mesa Charter. .................................................................... 22

1.195 Reorganizing Debtors. ...................................................................... ~~21~~22

~~1.194~~ ~~Restructured Equity.~~ ......................................................................... 21

~~1.195~~ ~~Restructured Unsecured Equity.~~ ...................................................... 21

1.196 Restructured Equity. ............................................................................... 22

1.197 Restructured Unsecured Equity. ........................................................... 22

1.198 Restructured Unsecured Equity Holders. ........................................ ~~21~~22

~~1.197~~1.199 .......................................................................................... RHMC. ~~21~~22

~~1.198~~1.200 ............................................................................................. RLA. ~~21~~22

~~1.199~~1.201 ............................................................................................... SEC. 21

~~1.200~~ ~~Section 1110 Procedures.~~ ................................................................. 21

~~1.201~~ ~~Section 1110 Procedures Order.~~ ....................................................... 22

1.202 Section 1110 ~~Rejection/Abandonment~~ Procedures. ......................... 22

1.203 Section 1110 ~~Rejection/Abandonment~~ Procedures Order. .............. 22

1.204 Section 1110 Rejection/Abandonment Procedures. ............................ 22

1.205 Section 1110 Rejection/Abandonment Procedures Order. ................. 22

1.206 Section 1110(b) Stipulations. ............................................................. ~~22~~23

~~1.205~~1.207 ...................................................................................... Schedules. ~~22~~23

| | | |
|---|---|---|
| ~~1.206~~1.208 | Secured Claim. | ~~22~~23 |
| ~~1.207~~1.209 | Securities Act. | ~~22~~23 |
| ~~1.208~~1.210 | Settling Aircraft Counterparties. | ~~22~~23 |
| ~~1.209~~1.211 | Shan Yue. | 23 |
| 1.212 | **Shareholder Agreement.** | **23** |
| ~~1.210~~1.213 | Spirit Airlines. | 23 |
| ~~1.211~~1.214 | Solicitation Agent. | 23 |
| ~~1.212~~1.215 | Spirit Liquidity Event. | 23 |
| ~~1.198~~1.216 | Tax Code. | 23 |
| ~~1.199~~1.217 | Treasury Regulations. | 23 |
| ~~1.200~~1.218 | TSA. | ~~23~~24 |
| ~~1.201~~1.219 | True-Up Equity Distribution. | ~~23~~24 |
| ~~1.202~~1.220 | True-Up Note Distribution. | ~~23~~24 |
| ~~1.203~~1.221 | Union. | ~~23~~24 |
| ~~1.204~~1.222 | United. | ~~23~~24 |
| ~~1.205~~1.223 | United Litigation. | ~~23~~24 |
| ~~1.206~~1.224 | United Code-Share Agreement. | ~~23~~24 |
| ~~1.207~~1.225 | Unsecured Deficiency Claim. | 24 |
| ~~1.208~~1.226 | US Airways. | 24 |
| ~~1.209~~1.227 | US Airways Tenth Amendment. | 24 |
| ~~1.210~~1.228 | US Airways Code-Share Agreement. | 24 |
| ~~1.211~~1.229 | US Airways Investor Rights Agreement. | ~~24~~25 |
| ~~1.212~~1.230 | US Airways Note. | ~~24~~25 |
| ~~1.213~~1.231 | U.S. Citizen. | ~~24~~25 |
| ~~1.214~~1.232 | U.S. Trustee. | ~~24~~25 |
| ~~1.215~~1.233 | Voting Deadline. | 25 |
| ~~1.216~~1.234 | Voting Record Date. | 25 |
| **ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS** | | **25** |
| 2.1 | Unclassified Claims. | 25 |
| 2.2 | Administrative Claims. | ~~25~~26 |
| 2.2.1 | Administrative Claim Bar Date. | ~~25~~26 |
| 2.2.2 | Treatment. | ~~25~~26 |
| (a) | Generally. | ~~25~~26 |
| (b) | Ordinary Course. | ~~25~~26 |

|  |  | (c) | Source of Payment. | 26 |
| 2.3 | | | Allowed Priority Tax Claims. | 26 |
| | 2.3.1 | | Treatment. | 26 |
| | | (a) | Generally. | 26 |
| | | (b) | Source of Payment. | 2627 |
| 2.4 | | | Secured Tax Claims. | 2627 |
| | 2.4.1 | | Treatment. | 2627 |
| | | (a) | Generally. | 2627 |
| | | (b) | Section 1124(2) Reinstatement. | 27 |
| | | (c) | Determination of Applicable Treatment. | 2728 |
| | | (d) | Source of Payment. | 2728 |
| 2.5 | | | Claims for Professional Fees. | 2728 |

**ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS** 2729

| 3.1 | | Summary of Classification. | 2729 |
| 3.2 | | Classes. | 2829 |
| | 3.2.1 | Class 1(a) – (l): Priority Non-Tax Claims. | 2829 |
| | 3.2.2 | Class 2(a) – (l): Secured Claims. | 2829 |
| | 3.2.3 | Class 3(a) – (l): General Unsecured Claims. | 2930 |
| | 3.2.4 | Class 4(a) – (l): De Minimis Convenience Claims. | 3031 |
| | 3.2.5 | Class 5(a) – (l): 510(a) Subrogation Claims. | 3031 |
| | 3.2.6 | Class 6(a) – (l): 2012 Noteholder Claims. | 3132 |
| | 3.2.7 | Class 7(a) – (l): Interests. | 3132 |

**ARTICLE 4 TREATMENT OF CLAIMS AND INTERESTS** 3133

| 4.1 | | Class 1(a) – (l) – Priority Non-Tax Claims. | 3133 |
| | 4.1.1 | Impairment and Voting. | 3133 |
| | 4.1.2 | Treatment. | 3133 |
| | 4.1.3 | Source of Payment. | 3233 |
| 4.2 | | Class 2(a) – (l) – Secured Claims. | 3233 |
| | 4.2.1 | Unimpaired Aircraft Secured Claims and Voting. | 3233 |
| | 4.2.2 | Unimpaired CRJ Equipment Trust Aircraft Secured Claims. | 3233 |
| | 4.2.3 | Unimpaired EDC Credit Agreement Secured Claims. | 3234 |
| | 4.2.4 | Impairment and Voting. | 3334 |
| | 4.2.5 | Alternative Treatment. | 3334 |
| | | (a) | Abandonment or Surrender. | 3335 |

|  |  | (b) | Cash Payment. | 3335 |
|  | 4.2.6 | Source of Payment. | | 3335 |
|  | 4.2.7 | Unsecured Deficiency Claim. | | 3335 |
| 4.3 | Class 3(a) – (*l*) – General Unsecured Claims. | | | 3435 |
|  | 4.3.1 | Impairment and Voting. | | 3435 |
|  | 4.3.2 | Treatment. | | 3435 |
|  |  | (a) | U.S. Citizens. | 3435 |
|  |  | (b) | Non-U.S. Citizens. | 3435 |
|  | 4.3.3 | Source of Payment. | | 3436 |
| 4.4 | Class 4(a) – (*l*) – De Minimis Convenience Claims. | | | 3436 |
|  | 4.4.1 | Impairment and Voting. | | 3436 |
|  | 4.4.2 | Treatment. | | 3536 |
|  | 4.4.3 | Source of Payment. | | 3536 |
| 4.5 | Class 5(a) – (*l*) – 510(a) Subrogation Claims. | | | 3536 |
|  | 4.5.1 | Impairment and Voting. | | 3536 |
|  | 4.5.2 | Treatment. | | 3536 |
| 4.6 | Class 6 (a) – (*l*) – 2012 Noteholder Claims. | | | 3536 |
|  | 4.6.1 | Impairment and Voting. | | 3537 |
|  | 4.6.2 | Treatment. | | 3537 |
| 4.7 | Class 7(a) – (*l*) – Interests. | | | 3537 |
|  | 4.7.1 | Impairment and Voting. | | 3537 |
|  | 4.7.2 | Treatment. | | 3537 |
| 4.8 | Nonconsensual Confirmation. | | | 3637 |
| ARTICLE 5 IMPLEMENTATION OF THE PLAN | | | | 3637 |
| 5.1 | Continued Corporate Existence; Ongoing Operations Of the Reorganized Debtors, Wind-Up of the Liquidating Debtors and/or Alternative Transactions. | | | 3637 |
|  | 5.1.1 | Intercompany Claims. | | 3739 |
| 5.2 | Management. | | | 3739 |
|  | 5.2.1 | Reorganized Mesa Air Group. | | 3739 |
|  | 5.2.2 | Other Debtors. | | 3839 |
|  | 5.2.3 | Management Notes and Management Equity Pool. | | 3840 |
|  | 5.2.4 | Corporate Action. | | 3940 |
| 5.3 | Funding On and After the Effective Date. | | | 3941 |
| 5.4 | No Substantive Consolidation. | | | 3941 |

5.5     Revesting of Estate Assets. ~~39~~41

5.6     Retained Claims and/or Defenses. ~~39~~41

5.7     Issuance of Restructured Equity and New Notes~~.~~ ~~40~~; Shareholders Agreement. 42

5.8     Securities Law and Air Carrier Regulatory Matters. ~~41~~43

5.9     Restrictions on Resale of Securities to Protect Net Operating Losses ~~42~~, 44

5.10    Miscellaneous. ~~43~~45

     5.10.1  Cancellation of Existing Notes, Securities and Agreements. ~~43~~45

     5.10.2  Tax Identification Numbers/Citizenship Status ~~43~~45

     5.10.3  Committee. ~~43~~45

     5.10.4  Final Decree. ~~44~~46

ARTICLE 6 PROVISIONS GOVERNING DISTRIBUTIONS ~~44~~46

6.1     Distributions by the Debtors. ~~44~~46

6.2     Distributions on Account of Claims Allowed as of the Effective Date. ~~44~~46

6.3     Estimation. ~~44~~46

6.4     Distributions on Account of Claims Allowed After the Effective Date. ~~44~~46

     6.4.1  Distribution Record Date. ~~44~~46

     6.4.2  Distributions on Account of Disputed Claims and Estimated Claims. ~~44~~46

     6.4.3  Distributions of New Common Stock and New Warrants. ~~44~~47

     6.4.4  Distributions on account of Noteholder Claims. ~~45~~47

          (a)   Distributions on account of Noteholder Claims. ~~45~~47

          (b)   Indenture Trustee Fees and Expenses. ~~45~~47

     6.4.5  No Distributions Pending Allowance. ~~45~~47

     6.4.6  Objection Deadline. ~~45~~47

     6.4.7  Disputed and Estimated Claims Reserve. ~~45~~47

          (a)   Cash Reserve. ~~45~~48

          (b)   Restructured Unsecured Equity / New 8% Notes (Series A) and New 8% Notes (Series B) Reserves. ~~46~~48

     6.4.8  Settling Disputed Claims. ~~46~~48

6.5     Distributions in Cash. ~~46~~49

6.6     Undeliverable Distributions. ~~47~~49

6.7     Unclaimed Distributions. ~~47~~49

6.8     Setoff. ~~47~~49

6.9     Taxes. ~~47~~49

6.10    De Minimis Distributions. ~~48~~50

6.11    Surrender of Notes and Other Instruments. ~~48~~50

6.12    Fractional Shares. ........................................................... ~~48~~50

**ARTICLE 7 EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENT/PROGRAM MATTERS** ........................... ~~48~~51

7.1    Assumption. ........................................................... ~~48~~51

7.2    Rejection. ........................................................... ~~49~~51

7.3    Assumption Obligations. ........................................................... ~~49~~51

7.4    ~~Rejection.~~ ........................................................... ~~49~~

~~7.5~~    Effect of Confirmation Order. ........................................................... ~~50~~52

7.5    Post-Petition Agreements. ........................................................... 52

7.6    ~~Post-Petition Agreements.~~ ........................................................... ~~50~~

~~7.7~~    Modifications to Plan Supplement. ........................................................... ~~50~~52

~~7.8~~7.7    Code-Share Agreements. ........................................................... ~~50~~52

    ~~7.8.1~~7.7.1    US Airways Code-Share Agreement. ~~50~~52

    ~~7.8.2~~7.7.2    United Code-Share Agreement. ~~51~~53

~~7.9~~7.8    CRJ 700 Aircraft Leases and CRJ 900 Aircraft Leases. ........................................................... ~~51~~53

7.9    Collective Bargaining Agreements. ........................................................... 53

7.10    ~~Collective Bargaining~~Key Employment Agreements. ........................................................... ~~51~~53

7.11    ~~Key Employment Agreements.~~ ........................................................... ~~51~~

~~7.12~~    ACE Insurance Program. ........................................................... ~~52~~53

~~7.13~~7.12    Debtors' Indemnification Obligations. ~~52~~54

7.13    Post-Petition Aircraft Agreements. ........................................................... 54

7.14    ~~Post-Petition Aircraft Agreements.~~ ........................................................... ~~52~~

~~7.15~~    Customer Programs. ........................................................... ~~53~~54

**ARTICLE 8 CONDITIONS PRECEDENT** ........................................................... ~~53~~55

8.1    Conditions to Confirmation. ........................................................... ~~53~~55

8.2    Conditions to Effectiveness. ........................................................... ~~53~~55

8.3    Waiver of Conditions. ........................................................... ~~53~~55

**ARTICLE 9 EFFECTS OF CONFIRMATION** ........................................................... ~~54~~56

9.1    Binding Effect. ........................................................... ~~54~~56

9.2    Property Revests Free and Clear. ........................................................... ~~54~~56

9.3    Releases. ........................................................... ~~54~~56

    9.3.1    Release by the Debtors. ........................................................... ~~54~~56

    9.3.2    Voluntary Releases by Holders of Claims. ........................................................... ~~55~~57

9.4    Discharge and Permanent Injunction. ........................................................... ~~55~~57

9.5    Limitation of Liability. ........................................................... ~~56~~58

    9.6    Exoneration and Reliance..............................................................................5658

**ARTICLE 10 RETENTION OF JURISDICTION**..............................................5658

**ARTICLE 11 AMENDMENT AND WITHDRAWAL OF PLAN**.....................5860

    11.1    Amendment of the Plan...............................................................................5860

    11.2    Revocation or Withdrawal of the Plan.....................................................5860

**ARTICLE 12 MISCELLANEOUS**........................................................................5860

    12.1    Effectuating Documents; Further Transactions; Timing....................5860

    12.2    Exemption From Transfer Taxes...............................................................5860

    12.3    Governing Law...............................................................................................5860

    12.4    Modification of Payment Terms.................................................................5961

    12.5    Provisions Enforceable................................................................................5961

    12.6    Quarterly Fees to the United States Trustee..........................................5961

    12.7    Timing of Payment.......................................................................................5961

    12.8    Notice of Confirmation................................................................................5961

    12.9    Successors and Assigns................................................................................5961

    12.10    Notices...........................................................................................................5961

          12.10.1 Notice to Claim and Interest Holders.............................6062

          12.10.2 Post-Effective Date Notices.............................................6062

    12.11    Incorporation by Reference.......................................................................6163

    12.12    Computation of Time..................................................................................6163

    12.13    Conflict of Terms.........................................................................................6163

    12.14    Severability of Plan Provisions.................................................................6163

Mesa Air Group, Inc. and each other Debtor (as defined below) collectively propose the following plan of reorganization under Section 1121(a) of the Bankruptcy Code for the resolution of the Debtors' outstanding Claims and Interests. Pursuant to Section 1125(b) of the Bankruptcy Code, votes to accept or reject a plan of reorganization cannot be solicited from holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a bankruptcy court and distributed to such holders. On [_____, 2010], the Bankruptcy Court approved the Disclosure Statement. All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtors' history, business, properties, results of operations, and events leading up to the contemplated restructuring and for a summary and analysis of the Plan and certain related matters. *All holders of Claims against, and Interests in, any of the Debtors are encouraged to read the Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject the Plan.*

The Plan effectuates the reorganization and continued operation of the Reorganizing Debtors, the prompt liquidation of the Liquidating Debtors after the Effective Date, and the resolution of all outstanding Claims against and Interests in the Debtors. Subject to the specific provisions set forth in this Plan, other than with respect to claims in *de minimis* amounts, general unsecured creditors of the Debtors, which creditors are U.S. Citizens, will, on account of and in full satisfaction of their claims, receive New Common Stock, New 8% Notes (Series A) and/or New 8% Notes (Series B), as the case may be, to be issued by the ultimate corporate parent - Reorganized Mesa Air Group, while general unsecured creditors that are Non-U.S. Citizens will receive a *pro rata* share of the New 8% Notes (Series A) and/or New 8% Notes (Series B) and New Warrants, which will entitle the holder to acquire New Common Stock upon exercise of the New Warrants. Generally, as discussed further in the Disclosure Statement, this New Common Stock / New Warrant structure (together with certain transfer/exercise restrictions related thereto) has been developed by the Debtors to ensure compliance with applicable Federal regulations restricting the level of ownership of a United States air carrier by Non-U.S. Citizens. General unsecured creditors, including Noteholders, will receive a *pro rata* share of the New Common Stock, New Warrants, New 8% Notes (Series A) and New 8% Notes (Series B), as applicable, based on, *inter alia*, (i) valuations of each Debtor (which valuations will be reflected in the Disclosure Statement) and (ii) estimates of Allowed Claims against each Debtor. The holders of Interests will receive no distribution on account of such Interests, and the Interests in Mesa Air Group will be cancelled. The Estates will not be substantively consolidated under the Plan, and each Debtor will maintain its separate existence after the Effective Date.

Subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors expressly reserve the right to alter, amend or modify the Plan.

## ARTICLE 1
## DEFINITIONS AND RULES OF INTERPRETATION

For purposes of this Plan and the Disclosure Statement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein have

the meanings ascribed to them in Article 1 of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, each of the terms defined herein includes the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

1.1 **510(a) Subrogation Claim.** Any Claim of the type described in and subject to subordination pursuant to Section 510(a) of the Bankruptcy Code.

1.2 **2012 Noteholder Claim.** A Claim against any of the Debtors arising under, or relating to, the 2012 Notes.

1.3 **2012 Note Guarantors.** Mesa Airlines, Freedom, Air Midwest, MPD, RASI, MAGAIM, RHMC, Mesa In-Flight, Nilchii and Patar.

1.4 **2012 Notes.** Those certain 8% senior unsecured notes due February 10, 2012, totaling approximately $17.2 million in principal and accrued interest and other charges as of the Petition Date (i) issued by Mesa Air Group in favor of certain Noteholders pursuant to an indenture dated February 10, 2009 between Mesa Air Group and U.S. Bank National Association in its capacity as indenture trustee, and (ii) guaranteed by the 2012 Note Guarantors.

1.5 **2023 Noteholder Claim.** A Claim against any of the Debtors arising under, or relating to, the 2023 Notes.

1.6 **2023 Notes.** Those certain 6.25% senior convertible notes due June 16, 2023, totaling approximately $6.81 million in principal and accrued interest and other charges as of the Petition Date (i) issued by Mesa Air Group in favor of certain Noteholders pursuant to an indenture dated June 16, 2003 between Mesa Air Group and U.S. Bank National Association in its capacity as indenture trustee, and (ii) guaranteed by the Debtor Subsidiaries Mesa Airlines, Freedom, Air Midwest, MPD, RASI, MAGAIM, and RHMC.

1.7 **2024 Noteholder Claim.** A Claim against any of the Debtors arising under, or relating to, the 2024 Notes.

1.8 **2024 Notes.** Those certain 3.625% senior convertible notes due February 10, 2024, totaling approximately $1.89 million in principal and accrued interest and other charges as of the Petition Date (i) issued by Mesa Air Group in favor of certain Noteholders pursuant to an indenture dated February 10, 2004 between Mesa Air Group and U.S. Bank National Association in its capacity as indenture trustee, and (ii) guaranteed by the Debtor Subsidiaries Mesa Airlines, Freedom, Air Midwest, MPD, RASI, MAGAIM, and RHMC.

1.9 **ACE Companies.** Collectively, ACE American Insurance Company, Indemnity Insurance Company of North America, and each of their respective affiliates.

**1.10    ACE Insurance Program.**  All insurance policies and agreements, documents, or instruments relating thereto including, without limitation, claims servicing agreements, that have been issued or entered into by one or more of the ACE Companies with one or more of the Debtors and their respective predecessors and /or affiliates.

> ~~**1.11    Actual Pro Rata Share of New 8% Notes (Series B).**  With respect to any Allowed General Unsecured Claim that is entitled to receive New 8% Notes (Series B) under the Plan, the term "Actual Pro Rata Share of New 8% Notes (Series B)" shall mean, as of the date on which the final distribution of New 8% Notes (Series B) is being made, an amount of New 8% Notes (Series B) necessary to permit the holder of such Allowed Claim to hold a percentage of the New 8% Notes (Series B)obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claims by (ii) the Aggregate Distribution Share of holders of all Allowed Claims entitled to receive New 8% Notes (Series B) under the Plan.~~

**1.11    ~~1.12~~ Actual Pro Rata Share of Restructured Unsecured Equity.**  With respect to any Allowed General Unsecured Claim that is entitled to receive Restructured Unsecured Equity under the Plan, the term "Actual Pro Rata Share of Restructured Unsecured Equity" shall mean, as of the date on which the final distribution of Restructured Unsecured Equity is being made, the amount of the Restructured Unsecured Equity (either in the form of New Common Stock or New Warrants, as applicable pursuant to Sections 4.3.2 and 4.5.2 hereof) necessary to permit the holder of such Allowed Claim to hold a percentage of the Restructured Unsecured Equity obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claims by (ii) the Aggregate Distribution Share of holders of all Allowed Claims entitled to receive Restructured Unsecured Equity under the Plan.  For the purpose of calculations hereunder, each New Warrant, together with the corresponding share of New Common Stock to be acquired upon exercise of the New Warrant, shall equal one unit of Restructured Unsecured Equity.  For the avoidance of doubt, only those holders of Class 3 and Class 5 Allowed Claims who are U.S. Citizens shall receive shares of New Common Stock under Section 4.3.2 or 4.5.2 of the Plan, as applicable, and only those holders of Class 3 and Class 5 Allowed Claims who are Non-U.S. Citizens shall receive New Warrants pursuant to Section 4.3.2 and 4.5.2 hereof.

**1.12    ~~1.13~~ Administrative Claim.**  A Claim for any expense of administration of the Chapter 11 Cases under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual and necessary costs and expenses incurred in the ordinary course of the Debtors' businesses; (b) actual and necessary costs and expenses of preserving the Estates or administering the Chapter 11 Cases; (c) all Professional Fees; (d) any amounts owing under an agreement made by the Debtors in accordance with the Section 1110 Procedures Order that satisfies the requirements of section 503(b) of the Bankruptcy Code; and (e) all fees payable under 28 U.S.C. § 1930.  For the avoidance of doubt, an Intercompany Claim may constitute an Administrative Claim, provided that the Intercompany Claim falls within the foregoing definition.

**1.13** ~~1.14~~ **Administrative Claim Bar Date.** The thirty-fifth (35th) day after the Effective Date, by which date certain entities asserting an Administrative Claim (excluding Professional Fee Claims) against any of the Debtors must have filed a request for payment with the Bankruptcy Court under Section 503(a) of the Bankruptcy Code, or be forever barred from asserting an Administrative Claim against the Debtors and/or sharing in any distribution under the Plan; *provided, however,* the foregoing deadline shall not apply to claims arising under section 503(b)(9) of the Bankruptcy Code, which ~~is~~are subject to the Bar Date, or to claims arising from the rejection of unexpired leases or executory contracts or the abandonment of property, which are subject to ~~the order~~separate orders authorizing such rejection.

**1.14** ~~1.15~~ **AFA.** Association of Flight Attendants.

**1.15** ~~1.16~~ **AFA Collective Bargaining Agreement.** Agreement between Mesa Airlines, Inc. and the Flight Attendants in the service of Mesa Airlines, Inc. as Represented by the Association of Flight Attendants, AFL-CIO, as amended effective February 10, 2010.

**1.16** ~~1.17~~ **Agent.** Any former or current shareholder, non-Debtor affiliate, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

**1.17** ~~1.18~~ **Aggregate Distribution Share.** For each holder of an Allowed General Unsecured Claim, the term "Aggregate Distribution Share" shall mean the sum obtained by adding each of such holder's Individual Debtor Distribution Shares.

**1.18** ~~1.19~~ **Aggregate Distribution Percentage.** For each holder of an Allowed General Unsecured Claim, the term "Aggregate Distribution Percentage" shall mean the percentage obtained by dividing such claimant's Aggregate Distribution Share by the Aggregate Estimated Value.

**1.19** ~~1.20~~ **Aggregate Estimated Value.** The sum obtained by adding the Individual Estimated Values for all the Debtors.

**1.20** ~~1.21~~ **Air Midwest.** Air Midwest, Inc., a Debtor in these Chapter 11 Cases.

**1.21** ~~1.22~~ **Aircraft Equipment.** Any and all aircraft, aircraft engine, propeller, appliance, spare part and such other equipment and related records and documents as described in Section 1110(a)(3) of the Bankruptcy Code.

**1.22** ~~1.23~~ **Aircraft Rejection Damages Claim Settlement Procedures.** Procedures established pursuant to the Order Authorizing Debtors to Approve the Determination, Settlement, and Allowance of Certain Claims Arising from the Rejection of Aircraft Related Leases and Related Procedures entered by the Bankruptcy Court on May 13, 2010.

**1.23** ~~1.24~~ **Aircraft Secured Claim.** A Secured Claim secured by a valid, perfected and enforceable Lien on any of the Debtors' Aircraft Equipment.

**1.24** ~~1.25~~ **Allowed.** With respect to Claims: (a) any Claim, proof of which, request for payment of which, or application for allowance of which, was filed on or before the Bar Date,

Administrative Claim Bar Date, or Professional Fees Bar Date, as applicable, for Claims of such type against the Debtors; (b) any Claim, if no proof of Claim or Interest is filed, which has been or is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent; or (c) any Claim that is expressly allowed by the Plan or under any agreement entered into in connection with the Plan; *provided, however*, that with respect to any Claim described in clauses *(a)* or *(b)* above, such Claim shall be considered Allowed only if either (i) no objection to the allowance thereof has been interposed by the Claims Objection Deadline, or (ii) an objection to the Claim has been interposed and a Final Order has been entered allowing the Claim for distribution purposes, or (iii) the Reorganized Debtors or the Liquidating Debtors, as applicable, have agreed to settle and allow the Claim, without the need for Bankruptcy Court approval, in accordance with this Plan. The term "Allowed," when used to describe a reference in the Plan to any Claim, Interest, Class of Claims or Class of Interests, means a Claim or Interest (or any Claim or Interest in any such Class) that is so allowed. The term "Allowed Claim," will not, for purposes of computing distributions under the Plan, include interest on such claim from and after the Petition Date, other than as permitted under the Bankruptcy Code.

1.25 ~~1.26~~ **ALPA.** Air Line Pilots Association, International.

1.26 ~~1.27~~ **ALPA Collective Bargaining Agreement.** Agreement between Mesa Airlines, Inc., Freedom Airlines, Inc., and The Air Line Pilots in the Service of Mesa Airlines, Inc., Freedom Airlines, Inc., as represented by the Air Line Pilots Association, International, as amended effective December 10, 2008.

1.27 ~~1.28~~ **Alternative Transaction.** On or after the Effective Date, one or more transactions among any one or combination of the Debtors, the Reorganized Debtors, or Liquidating Debtors, which may include one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, changes in form of entity or other corporate transactions as may be determined by the Debtors, the Reorganized Debtors, or Liquidating Debtors, as applicable, to be necessary or appropriate, which may include maintaining the corporate existence in some form of any one of the Liquidating Debtors that would not result in liquidation.

1.28 ~~1.29~~ **AMT.** Alternative Minimum Tax.

1.29 ~~1.30~~ **AMTI.** Alternative Minimum Tax Income.

1.30 ~~1.31~~ **Arizona District Court.** United States District Court for the District of Arizona.

1.31 ~~1.32~~ **Assumption Obligations.** Any monetary amounts payable to the non-debtor party to any executory contract or unexpired lease, pursuant to Section 365(b)(1) of the Bankruptcy Code, as a condition to the assumption of such contract or lease.

1.32 ~~1.33~~ **Avoidance Actions.** All causes of action of the Estates under Sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, whether or not such actions seek an affirmative recovery or are raised as a defense to, or offset against, the allowance of a Claim.

**1.33** ~~1.34~~ **Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

**1.34** ~~1.35~~ **Bankruptcy Court.** The United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

**1.35** ~~1.36~~ **Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

**1.36** ~~1.37~~ **Bar Date.** The date or dates fixed by the Bankruptcy Court by which all Persons (except holders of Claims that appear in the Schedules and are **not** scheduled as disputed, contingent or unliquidated) asserting a Claim against the Debtors, inclusive of claims arising under section 503(b)(9) of the Bankruptcy Code but excluding other Administrative Claims, must file a proof of claim or be forever barred from asserting a Claim against the Debtors or their property, voting on the Plan, and sharing in distributions under the Plan.

**1.37** ~~1.38~~ **Business Day.** Any other day than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.38** ~~1.39~~ **Bombardier.** Bombardier Inc.

**1.39** ~~1.40~~ **Bombardier MPA.** Master Purchase Agreement by and between Mesa Air Group and Bombardier dated May 18, 2001.

**1.40** ~~1.41~~ **Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.41** ~~1.42~~ **Causes of Action and Defenses.** Any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date(s), including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. "Causes of Action" shall include, but not be limited to: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to Sections 362 of the Bankruptcy Code, (d) all Avoidance Actions; (e) any state law fraudulent transfer claims; and (f) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code.

**1.42** ~~1.43~~ **Chapter 11 Case(s).** The case(s) under Chapter 11 of the Bankruptcy Code in which each Debtor is a debtor and debtor-in-possession pending before the Bankruptcy Court.

**1.43** ~~1.44~~ **Charter Documents.** The articles or certificate of incorporation and the bylaws of a company, as applicable, and any amendments to the foregoing, and the certificate of formation or articles of organization and the limited liability company operating agreement of a company, as applicable, and any amendments to the foregoing.

**1.44** ~~1.45~~ **Citizenship Declaration.** The form declaration submitted by holders of claims setting forth whether such claim holder is a U.S. Citizen or a Non - U.S. Citizen.

**1.45** ~~1.46~~ **Claim.** A claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, arising at any time before the Effective Date; or (b) any right to an equitable remedy arising at any time before the Effective Date for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.46** ~~1.47~~ **Claim Objection Deadline.** The last day by which the Debtors may file objections to Claims, which day shall be the latest of (a) 175 days after the Effective Date, (b) 60 days after the filing of a proof of claim for, or request for payment of, such Claim, or (c) such other date as the Bankruptcy Court may order. The filing of a motion to extend the Claims Objection Deadline by any party shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion. In the event that such motion to extend the Claims Objection Deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims Objection Deadline (as previously extended, if applicable) or 28 days after entry of a Final Order denying the motion to extend the Claims Objection Deadline.

**1.47** ~~1.48~~ **Claims Settlement Procedures Order.** The Order dated July 7, 2010, approving pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(a) for approval of (i) Claim Objection Procedures, and (ii) Settlement Procedures.

**1.48** ~~1.49~~ **Class.** A category of holders of Claims or Interests which are substantially similar in nature to the Claims or Interests of other holders placed in such category, as designated in Article 3 of this Plan.

**1.49** ~~1.50~~ **Class 3 Distribution Date.** (i) The Initial Distribution Date, (ii) each Interim Distribution Date, and/or (iii) the Final Distribution Date.

**1.50** ~~1.51~~ **Class 5 Distribution Date.** (i) The Initial Distribution Date, (ii) each Interim Distribution Date, and/or (iii) the Final Distribution Date.

**1.51** **Class 6 Distribution Date.** (i) The Initial Distribution Date, (ii) each Interim Distribution Date, and/or (iii) the Final Distribution Date.

**1.52** **COD.** Cancellation of debt.

**1.53**     **Code-Share Agreements.** The US Airways Code-Share Agreement and the United Code-Share Agreement.

**1.54**     **Collective Bargaining Agreements.** (i) Agreement between Mesa Airlines, Inc. and the Flight Attendants in the Service of Mesa Airlines, Inc. and Freedom Airlines, Inc. as represented by the Association of Flight Attendants, AFL-CIO (October 10, 2002 - June 13, 2006), with an amendment effective February 19, 2010 (amendable February 18, 2012); and (ii) Agreement between Mesa Airlines, Inc., Freedom Airlines, Inc. and The Air Line Pilots in the Service of Mesa Airlines, Inc., Freedom Airlines, Inc., as represented by the Air Line Pilots Association, International (Effective December 2008 / Amendable December 10, 2010), each as may have been amended, modified or supplemented from time to time.

**1.55**     **Committee.** The Official Committee of Unsecured Creditors, appointed by the United States Trustee in the Chapter 11 Cases of the Debtors in accordance with Section 1102(a)(1) of the Bankruptcy Code, as it may be reconstituted from time to time.

**1.56**     **Compass Bank.** BBVA Compass Bank.

**1.57**     **Confirmation.** Entry of the Confirmation Order by the Bankruptcy Court.

**1.58**     **Confirmation Date.** The date on which the Bankruptcy Court enters the Confirmation Order.

**1.59**     **Confirmation Hearing.** The hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

**1.60**     **Confirmation Order.** The order of the Bankruptcy Court confirming the Plan.

**1.61**     **Contingent Claim.** Any Claim for which a proof of Claim has been filed with the Bankruptcy Court which (a) has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) has not been Allowed.

**1.62**     **Creditor.** Has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.63**     **CRJ.** Canadair Regional Jet.

**1.64**     **CRJ 700 Aircraft Leases.** Collectively, the (i) ~~ten~~eight (~~10~~8) lease transactions (inclusive of all "Operative Documents" as defined under the respective lease transactions) between Mesa Airlines and Wells Fargo Bank Northwest, NA in its capacity as owner trustee and AFS Investments XLIV LLC as owner participant governing the airframes bearing U.S. Registration Numbers N503MJ, N504MJ, N505MJ, N506MJ, N507MJ, N508MJ, N510MJ, and N511MJ, ~~N521LR, and N522LR and~~ (ii) two (2) lease transactions (inclusive of all "Operative Documents" as defined under the respective lease transactions) between Mesa Airlines and ~~Bombardier Capital Inc.~~Wells Fargo Bank Northwest, NA in its capacity as lessor and ~~SunTrust Leasing Corporation~~AFS Investments XLII LLC in its capacity as owner participant governing the airframes bearing U.S. Registration Numbers N501MJ and N502MJ, and (iii) two (2) lease transactions (inclusive of all "Operative Documents" as defined under the respective lease transactions) between Mesa Airlines and Bombardier Capital Inc. in its

capacity as lessor and Sun Trust Leasing Corporation as owner participant governing the airframes bearing U.S. Registration Numbers N521LR and N522LR.

**1.65    CRJ 900 Aircraft Leases.** Collectively, the (i) fifteen (15) lease transactions (inclusive of all "Operative Documents" as defined under the respective lease transactions) between Mesa Airlines and RASPRO Trust 2005 as lessor governing the airframes bearing U.S. Registration Numbers N922FJ, N923FJ, N924FJ, N925FJ, N926LR, N927LR, N928LR, N929LR, N930LR, N931LR, N932LR, N933LR, N934FJ, N935LR, and N938LR and (ii) nine (9) lease transactions (inclusive of all "Operative Documents" as defined under the respective lease transactions) between Mesa Airlines and Wells Fargo Bank Northwest, NA in its capacity as owner trustee and AFS Investments XLIV LLC in its capacity as owner participant governing the airframes bearing U.S. Registration Numbers N902FJ, N903FJ, N904FJ, N905FJ, N906FJ, N907FJ, N908FJ, N909FJ, and N910FJ.

**1.66    CRJ Equipment Trust.** CRJ Equipment Trust 2004.

**1.67    CRJ Equipment Trust Aircraft Equipment.** All Aircraft Equipment related to the five (5) CRJ 700 aircraft and eleven (11) CRJ 900 aircraft, with the airframes bearing U.S. Registration Numbers N509MJ, N512MJ, N513MJ, N514MJ, N515MJ, N911FJ, N912FJ, N913FJ, N914FJ, N915FJ, N916FJ, N917FJ, N918FJ, N919FJ, N920FJ and N921FJ that are subject to that certain Section 1110(a) agreement dated March 4, 2010 with respect to such Aircraft Equipment.

**1.68    CRJ Equipment Trust Aircraft Secured Claim.** Collectively, any and all Claims arising from or relating to all indebtedness and obligations now or hereafter owed under or in connection with the CRJ Equipment Trust Loan Documents.

**1.69    CRJ Equipment Trust Guarantee.** The Guaranty, dated as of January 29, 2003 of Mesa Air Group, and all amendments and supplements related thereto in connection with the financing of the CRJ Equipment Trust Aircraft Equipment.

**1.70    CRJ Equipment Trust Guarantee Claim.** Collectively, any and all Claims against the Debtors arising from or relating to guarantees of payment and performance of all indebtedness and obligations that are now or hereafter owed to CRJ Equipment Trust under and in connection with the CRJ Equipment Trust Loan Documents.

**1.71    CRJ Equipment Trust Credit Agreement.** That certain Credit Agreement, dated January 29, 2004, including the related operative documents, among Mesa Airlines, as borrower, Mesa Air Group, as guarantor, CRJ Equipment Trust, as lender, and Wells Fargo Bank Northwest, National Association, as security agent.

**1.72    CRJ Equipment Trust Loan Documents.** Collectively, any and all agreements (including, without limitation, the CRJ Equipment Trust Credit Agreement and the CRJ Equipment Trust Guaranty), promissory notes, guaranties, mortgages, deeds of trust, indemnity deeds of trust, security agreements, Uniform Commercial Code financing statements, instruments and other documents (collectively, as amended, restated, supplemented or otherwise modified from time to time), executed and/or delivered with, to or in favor of CRJ Equipment Trust or Wells Fargo

Bank Northwest, National Association, as security agent, in connection with the CRJ Equipment Trust Credit Agreement.

**1.73** **De Minimis Convenience Claim.** Any Claim against any of the Debtors other than a 2012 Noteholder Claim, a 2023 Noteholder Claim or a 2024 Noteholder Claim that would otherwise be a General Unsecured Claim but for the fact that the Claim is Allowed in an amount that is greater than $0 and less than or equal to $100,000 or for which the Creditor elects to reduce the Allowed amount of its Claim to $100,000; *provided, however*, that a Claim may not be sub-divided into multiple Claims of $100,000 or less for purposes of receiving treatment as a De Minimis Convenience Claim.

**1.74** **Debtor Subsidiaries.** Collectively, Mesa Air New York, Mesa In-Flight, RHMC, RASI, Freedom Airlines, Mesa Airlines, MPD, Inc., Air Midwest, MAGAIM, Nilchii, and Patar. To the extent that the context requires any reference to the Debtor Subsidiaries after the Effective Date, "Debtor Subsidiaries" shall mean the "Reorganized Debtor Subsidiaries" or the "Liquidating Debtors," as applicable.

**1.75** **Debtors.** Collectively, Mesa Air Group, Mesa Air New York, Mesa In-Flight, RHMC, RASI, Freedom Airlines, Mesa Airlines, MPD, Inc., Air Midwest, MAGAIM, Nilchii, and Patar. To the extent that the context requires any reference to the Debtors after the Effective Date, "Debtors" shall mean the "Reorganized Debtors" or the "Liquidating Debtors," as applicable.

**1.76** **Deferred Compensation Plan Accounts.** Those certain deferred compensation accounts at Merrill Lynch in the names of Jonathan G. Ornstein, Michael J. Lotz, Brian S. Gillman, and Paul Foley.

**1.77** **Delta.** Delta Air Lines, Inc.

**1.78** **Delta CRJ Litigation.** Action commenced by Mesa Air Group and Freedom against Delta under Case No. 1:09-CV-2267 in the Georgia District Court.

**1.79** **Delta Engine Litigation.** Action commenced by Mesa Air Group and Freedom against Delta under Case No. CV-08-1449 in the Arizona District Court.

**1.80** **Delta ERJ Litigation.** Action commenced by Mesa Air Group and Freedom against Delta under Case No. 1:08-CV-1334 in the Georgia District Court.

**1.81** **Delta MFN Litigation.** Action commenced by Delta against Mesa Air Group and Freedom under Case No. 1:09-CV-0772 in the Georgia District Court, removed to the United States District Court for the Southern District of New York and transferred to the Bankruptcy Court under Adversary Proceeding No. 10-3064 on March 25, 2010.

**1.82** **Delta Temporary Agreement.** Agreement by and among Mesa Air Group and Freedom, on the one hand, and Delta, on the other hand, dated May 21, 2010 and approved by the Bankruptcy Court by the entry of an order on May 25, 2010.

**1.83** **Disclosure Statement.** The disclosure statement relating to the Plan including, without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

**1.84** **Disclosure Statement Approval Order.** Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan entered by the Bankruptcy Court on [_____], 2010.

**1.85** **Disputed.** With respect to Claims, means any Claim that is not an Allowed Claim or Estimated Claim. The term "Disputed," when used to modify a reference in the Plan to any Claim, Interest, Class of Claims or Class of Interests, means a Claim or Interest (or any Claim or Interest in any such Class) that is so disputed.

**1.86** **Distribution Date[s].** The Initial Distribution Date, the Interim Distribution Date and the Final Distribution Date.

**1.87** **Distribution Record Date.** The date that is three (3) business days after the Confirmation Date.

**1.88** **Distribution Reserve.** The reserve created pursuant to Section 6.4.7 of the Plan to hold property (including New Common Stock) for distribution to holders of General Unsecured Claims pending resolution of Disputed Claims.

**1.89** **DOJ.** Department of Justice.

**1.90** **DOT.** Department of Transportation.

**1.91** **EDC Aircraft Secured Claim.** Collectively, any and all Claims arising from or relating to all indebtedness and obligations now or hereafter owed under or in connection with the EDC Credit Agreement.

**1.92** **EDC Credit Agreement.** That certain Credit Agreement, dated as of January 31, 2007, and related operative documents, among Mesa Airlines as borrower, Mesa Air Group as guarantor, Export Development Canada as senior lender, Bombardier Capital Inc. as the subordinated lender, and Wilmington Trust Company as loan trustee.

**1.93** **EDC Credit Agreement Equipment.** All Aircraft Equipment related to the three (3) CRJ 700 aircraft and three (3) CRJ 900 aircraft bearing U.S. Registration Numbers N516LR, N518LR, N519LR, N939LR, N942LR, and N956LR.

**1.94** **EDC Credit Agreement Guaranty.** The Guaranties of Mesa Air Group, and all amendments and supplements related thereto in connection with the financing of the EDC Credit Agreement.

**1.95** **Effective Date.** A date designated by the Debtor that is no earlier than the first day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

1.96    **Epiq.** Epiq Bankruptcy Solutions, LLC.

1.97    **ERJ.** Embraer Regional Jet.

1.98    **Estate.** The estate of each Debtor created in its respective Chapter 11 Case in accordance with Section 541 of the Bankruptcy Code or otherwise.

1.99    **Estate Assets.** All of the property of each Estate of each Debtor under Section 541 of the Bankruptcy Code.

1.100   **Estimated.** With respect to Claims, means any Claim that has been estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code or by agreement of the applicable Debtors and the holder of such Claim. The term "Estimated," when used to modify a reference in the Plan to any Claim, Interest, Class of Claims or Class of Interests, means a Claim or Interest (or any Claim or Interest in any such Class) that is so estimated.

1.101   **Estimated Additional Pro Rata Share of New 8% Notes (Series A).** With respect to any 2012 Noteholder Claim that becomes an Allowed Claim after the Effective Date and is entitled to receive (but has not yet received) New 8% Notes (Series A) under the Plan with respect to such Allowed Claim, the term "Estimated Additional Pro Rata Share of New 8% Notes (Series A)" shall mean, as of any Class 6 Distribution Date, an amount of the New 8% Notes (Series A) necessary to permit the holder of such Allowed Claim to receive its Pro Rata distribution of the New 8% Notes (Series A) distributed to Class 6 Creditors as of that date.

1.102   ~~1.101~~ **Estimated Additional Pro Rata Share of New 8% Notes (Series B).** With respect to any General Unsecured Claim that becomes an Allowed Claim after the Effective Date and is entitled to receive (but has not yet received) New 8% Notes (Series B) under the Plan with respect to such Allowed Claim, the term "Estimated Additional Pro Rata Share of New 8% Notes (Series B)" shall mean, as of any Class 3 Distribution Date or Class 5 Distribution Date, as applicable, an amount of the New 8% Notes (Series B) necessary to permit the holder of such Allowed Claim to receive a percentage of the New 8% Notes (Series B) obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claims by (ii) the aggregate of (A) the Aggregate Distribution Share of holders of all other previously Allowed Claims that have received New 8% Notes under the Plan prior to such distribution date plus (B) the Aggregate Distribution Share of holders of all then Allowed Claims entitled to receive New 8% Notes (Series B) under the Plan on such distribution date plus (C) the Aggregate Distribution Share of holders of all Disputed Claims that the Debtors then estimate may become Allowed Claims entitled to receive New 8% Notes (Series B) under the Plan.

1.103   ~~1.102~~ **Estimated Additional Pro Rata Share of Restructured Unsecured Equity.** With respect to any General Unsecured Claim that becomes an Allowed Claim after the Effective Date and is entitled to receive (but has not yet received) Restructured Unsecured Equity under the Plan with respect to such Allowed Claim, the term "Estimated Additional Pro Rata Share of Restructured Unsecured Equity" shall mean, as of any Class 3 Distribution Date or Class 5 Distribution Date, an amount of Restructured Unsecured Equity (either in the form of New Common Stock or New Warrants, as applicable pursuant to Sections 4.3.2 or 4.5.2 hereof)

necessary to permit the holder of such Allowed Claim to receive a percentage of the Restructured Unsecured Equity obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claim by (ii) the aggregate of (A) the Aggregate Distribution Share of holders of all other previously Allowed Claims that have received Restructured Unsecured Equity under the Plan prior to such distribution date plus (B) the Aggregate Distribution Share of holders of all then Allowed Claims entitled to receive Restructured Unsecured Equity under the Plan on such distribution date plus (C) the Aggregate Distribution Share of holders of all Disputed Claims that the Debtors then estimate may become Allowed Claims entitled to receive Restructured Unsecured Equity under the Plan. For the purpose of calculations hereunder, each New Warrant, together with the corresponding share of New Common Stock to be acquired upon exercise of the New Warrant, shall equal one unit of Restructured Unsecured Equity. For the avoidance of doubt, only those holders of Allowed Class 3 and Class 5 Claims who are U.S. Citizens shall receive shares of New Common Stock under Sections 4.3.2 and 4.5.2 of the Plan, and only those holders of Allowed Class 3 and Class 5 Claims who are Non-U.S. Citizens shall receive New Warrants pursuant to Sections 4.3.2 and 4.5.2 hereof.

**1.104 Estimated Initial Pro Rata Share of New 8% Notes (Series A).** With respect to any 2012 Noteholder Claim that is entitled to receive New 8% Notes (Series A) under the Plan, the term "Estimated Initial Pro Rata Share of New 8% Notes (Series A)" shall mean, as of the Effective Date, an amount of the New 8% Notes (Series A) necessary to permit the holder of such Allowed Claim to receive its Pro Rata share of the New 8% Notes (Series A), distributed as of such date.

**1.105 1.103 Estimated Initial Pro Rata Share of New 8% Notes (Series B).** With respect to any Allowed General Unsecured Claim that is entitled to receive New 8% Notes (Series B) under the Plan, the term "Estimated Initial Pro Rata Share of New 8% Notes (Series B)" shall mean, as of the Effective Date, an amount of the New 8% Notes (Series B) necessary to permit the holder of such Allowed Claim to hold a percentage of the New 8% Notes (Series B) obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claims by (ii) the aggregate of (A) the Aggregate Distribution Share of holders of all then Allowed Claims entitled to receive New 8% Notes (Series B) under the Plan plus (B) the Aggregate Distribution Share of holders of all Disputed Claims that the Debtors then estimate may become Allowed Claims entitled to receive New 8% Notes (Series B) under the Plan.

**1.106 1.104 Estimated Initial Pro Rata Share of Restructured Unsecured Equity.** With respect to any Allowed General Unsecured Claim that is entitled to receive Restructured Unsecured Equity under the Plan, the term "Estimated Initial Pro Rata Share of Restructured Unsecured Equity" shall mean, as of the Effective Date, an amount of Restructured Unsecured Equity (either in the form of New Common Stock or New Warrants, as applicable pursuant to Sections 4.3.2 and 4.5.2 hereof) necessary to permit the holder of such Allowed Claim to hold a percentage of the Restructured Unsecured Equity obtained by dividing (i) the Aggregate Distribution Share applicable to such holder's Allowed Claims by (ii) the aggregate of (A) the Aggregate Distribution Share of holders of all then Allowed Claims entitled to receive Restructured Unsecured Equity under the Plan plus (B) the Aggregate Distribution Share of holders of all Disputed Claims that the Debtors then estimate may become Allowed Claims entitled to receive Restructured Unsecured Equity under the Plan. For the purpose of

calculations hereunder, each New Warrant, together with the corresponding share of New Common Stock to be acquired upon exercise of the New Warrant, shall equal one and one-tenth unit of Restructured Unsecured Equity. For the avoidance of doubt, only those holders of Class 3 and Class 5 Allowed Claims who are U.S. citizens shall receive shares of New Common Stock under Sections 4.3.2 and 4.5.2 of the Plan, and only those holders of Class 3 and Class 5 Allowed Claims who are Non-U.S. Citizens shall receive New Warrants pursuant to Sections 4.3.2 and 4.5.2 hereof.

1.107  1.105 **Estimated Pro Rata Share of New 8% Notes (Series B).** With respect to any holder of New 8% Notes (Series B) under the Plan, the term "Estimated Pro Rata Share of New 8% Notes (Series B)" shall mean, on any Class 3 Distribution Date, Class 5 Distribution Date, or Class 6 Distribution Date as applicable, an amount of New 8% Notes (Series B) necessary to permit such holder to realize its Estimated Initial Pro Rata Share of New 8% Notes (Series B) plus its Estimated Additional Pro Rata Share of New 8% Notes (Series B).

1.108  1.106 **Estimated Pro Rata Share of Restructured Unsecured Equity.** With respect to any holder of Restructured Unsecured Equity under the Plan, the term "Estimated Pro Rata Share of Restructured Unsecured Equity" shall mean, on any Class 3 Distribution Date or Class 5 Distribution Date, as applicable, an amount of Restructured Unsecured Equity necessary to permit such holder to realize its Estimated Initial Pro Rata Share of Restructured Unsecured Equity plus its Estimated Additional Pro Rata Share of Restructured Unsecured Equity.

1.109  1.107 **Excess Spirit Sale Proceeds** The proceeds, if any, from a Spirit Liquidity Event existing after the payment in full of the New 8% Notes (Series A).

1.110  1.108 **FAA.** Federal Aviation Administration.

1.111  1.109 **Final Distribution Date.** The day selected by the Debtors in their sole discretion that is after the Initial Distribution Date and is no earlier than twenty-eight (28) calendar days after the date on which all Disputed Claims have become Allowed Claims or have been disallowed.

1.112  1.110 **Final Order.** An order or judgment of the Bankruptcy Court that has been entered upon the docket in the Chapter 11 Cases and: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided that*, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order or judgment shall not cause such order or judgment not to be a "Final Order."

1.113  1.111 **Freedom.** Freedom Airlines, Inc., a Debtor in these Chapter 11 Cases.

1.114  1.112 **Georgia District Court.** United States District Court for the District of Georgia.

**1.115** ~~1.113~~ **General Unsecured Claim.** Any Claim against any Debtor that is *not* (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) a Secured Claim, (e) a De Minimis Convenience Claim, (f) a 510(a) Subrogation Claim or (g) a 2012 Noteholder Claim. For the avoidance of doubt, the term "General Unsecured Claim" shall include (except to the extent that such Claims are treated as De Minimis Convenience Claims) any Claim against any Debtor arising under Section 502(h) of the Bankruptcy Code, a 2023 Noteholder Claim, a 2024 Noteholder Claim, and may include an Intercompany Claim.

**1.116** ~~1.114~~ **IATA.** International Air Transportation Association.

**1.117** ~~1.115~~ **Illinois District Court.** United States District Court for the District of Illinois.

**1.118** ~~1.116~~ **Imperial.** Imperial Capital, LLC.

**1.119** ~~1.117~~ **Indenture Trustees.** The indenture trustee for the 2012 Notes, the indenture trustee for the 2023 Notes, and the indenture trustee for the 2024 Notes.

**1.120** ~~1.118~~ **Indentures.** The indenture governing the 2012 Notes, the indenture governing the 2023 Notes, and the indenture governing the 2024 Notes.

**1.121** ~~1.119~~ **Indigo.** Indigo Miramar LLC.

**1.122** ~~1.120~~ **Individual Debtor Distribution Share.** For each holder of an Allowed General Unsecured Claim, the term "Individual Debtor Distribution Share" shall mean the following with respect to each Debtor against which such claimant holds an Allowed General Unsecured Claim: the amount obtained by multiplying the claimant's Individual Debtor Distribution Percentage by the Individual Estimated Value of the applicable Debtor.

**1.123** ~~1.121~~ **Individual Debtor Distribution Percentage.** For each holder of an Allowed General Unsecured Claim, the term "Individual Debtor Distribution Percentage" shall mean the following with respect to each Debtor against which such claimant holds an Allowed General Unsecured Claim: the percentage obtained by dividing (x) the amount of the holder's Allowed General Unsecured Claim against the applicable Debtor by (y) the total of all Allowed General Unsecured Claims against such Debtor.

**1.124** ~~1.122~~ **Individual Estimated Value.** For each Debtor, the estimated value allocated to such Debtor entity by the Debtors (in consultation with the Committee) as set forth in the Plan Supplement (taking into consideration the payment on the 2012 Notes and any dilution on account of the Management Equity Pool, Management Notes, US Airways Note, the New Common Stock distributed to US Airways, and the 1.1 conversion ration of the New Warrants) Each Individual Estimated Value has been prepared based on, *inter alia*, the Debtors' estimates of the value of the applicable Debtor's assets, including Interests, if any, in other Debtors, and Intercompany Claims that may be owed to the applicable Debtor.

**1.125** ~~1.123~~ **Initial Distribution Date.** The ~~day selected by the Debtors in their sole discretion that is as soon as reasonably practicable after, but not later than sixty (60) calendar days after.~~Initial Distribution Date shall be the Effective Date.

**1.126** ~~1.124~~ **Insider.**  Has the meaning set forth in Section 101(31) of the Bankruptcy Code.

**1.127** ~~1.125~~ **Intercompany Claim.**  A Claim held by any of the Debtors against another Debtor, whether or not a proof of Claim is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code in either of the Chapter 11 Cases.

**1.128** ~~1.126~~ **Interests.**  Any equity security of any Debtor within the meaning of Section 101(16) of the Bankruptcy Code, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred), together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto.

**1.129** ~~1.127~~ **Interim Compensation Order.**  The order dated January 26, 2010 establishing an orderly, regular process for the monthly compensation and reimbursement of Professionals in the Chapter 11 Cases.

**1.130** ~~1.128~~ **Interim Distribution Date.**  The date that is 175 calendar days after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, with such periodic Interim Distribution Dates occurring until the Final Distribution Date has occurred.

**1.131** ~~1.129~~ **IRS.**  Internal Revenue Service.

**1.132** ~~1.130~~ **Key Employment Agreements.**  The employment agreements and the guarantees thereof, as amended and as identified on **Exhibit B** attached hereto, between the Debtors and certain officers and employees of the Debtors, which officers and employees are expected to continue to render services to the Debtors on and after the Effective Date.

**1.133** ~~1.131~~ **Kunpeng.**  Kunpeng Airlines.

**1.134** ~~1.132~~ **Kunpeng Joint Venture Agreement.**  Joint venture agreement dated December 22, 2006, by and among Ping Shan, Shan Yue, and Shenzhen Airlines.

**1.135** ~~1.133~~ **Lien.**  A lien as defined in Section 101(37) of the Bankruptcy Code, but not including a lien to the extent that it has been avoided in accordance with Sections 506(d), 510, 544, 545, 546, 547, 548, 553, or 549 of the Bankruptcy Code.

**1.136** ~~1.134~~ **Liquidating Debtors.**  Collectively, RHMC, Air Midwest, and Patar.

**1.137** ~~1.135~~ **MAGAIM.**  Mesa Air Group — Airline Inventory Management, LLC, a Debtor in these Chapter 11 Cases.

**1.138** ~~1.136~~ **Management Equity Pool.**  Such number of shares of New Common Stock as shall equal 10% of the Restructured Equity (after giving effect to the issuance of shares of New Common Stock to US Airways), which shall be reserved for distribution under a management/employee equity incentive plan that will be established by the board of directors of Reorganized Mesa Air Group.  At least 3.75% and 2.25% of the Management Equity Pool

shall be allocated, subject to a vesting schedule to be negotiated with the Committee and disclosed in the Plan Supplement, to Jonathan G. Ornstein and Michael J. Lotz, respectively on account of the prepetition Claims arising as a result of the amendment to the Key Employment Agreements.

**1.139** ~~1.137~~ **Management Notes.** The series of unsecured, subordinated, non-amortized notes to be issued by Reorganized Mesa Air Group to members of the Debtors' management in place on and after the Effective Date, and guaranteed by the Reorganized Debtors, ~~pursuant to~~subject to the terms and conditions set forth in the Plan (as will be described in more detail in the New Notes Indenture to be filed with the Bankruptcy Court as part of the Plan Supplement), in the aggregate principal amount of $5.5 million and due five (5) years from the Effective Date, as fully set forth in the New Notes Indenture. The terms and conditions of the Management Notes shall be identical to the terms and conditions of the New 8% Notes (Series A), New 8% Notes (Series B) and the US Airways Note, except that the Management Notes shall be subordinated to the New 8% Notes (Series A), New 8% Notes (Series B), and the US Airways Note, and subject to payment priorities ~~as further provided~~set forth in the Plan (as will be described in greater detail in the New Notes Indenture ~~and this Plan~~). In the event there are Excess Spirit Sale Proceeds following a Spirit Liquidity Event and the New 8% Notes (Series A), US Airways Note, and New 8% Notes (Series B) are paid in full, Reorganized Mesa Air Group shall be required to use such proceeds to pay the Management Notes. At least $2 million and $1.5 million of the Management Notes shall be allocated to Jonathan G. Ornstein and Michael J. Lotz, respectively.

**1.140** ~~1.138~~ **Mesa Air Group.** Mesa Air Group, Inc., a Debtor in these Chapter 11 Cases.

**1.141** ~~1.139~~ **Mesa Air New York.** Mesa Air New York, Inc., a Debtor in these Chapter 11 Cases.

**1.142** ~~1.140~~ **Mesa Airlines.** Mesa Airlines, Inc., a Debtor in these Chapter 11 Cases.

**1.143** ~~1.141~~ **Mesa In-Flight.** Mesa In-Flight, Inc., a Debtor in these Chapter 11 Cases.

**1.144** ~~1.142~~ **Mesa Tax Group.** For U.S. federal tax purposes, the affiliated group of corporate entities, of which the Debtors are members and Mesa Air Group is the common parent that files a single consolidated federal income tax return.

**1.145** ~~1.143~~ **Mo-Go.** Mo-Go, LLC.

**1.146** ~~1.144~~ **MPD.** MPD, Inc., a Debtor in these Chapter 11 Cases.

**1.147** ~~1.145~~ **Nasdaq.** The Nasdaq Capital Market.

**1.148** ~~1.146~~ **New Common Stock.** 15,000,000 shares of common stock, no par value, of Reorganized Mesa Air Group to be authorized pursuant to the Reorganized Mesa Air Charter, of which up to 10,000,000 shares shall be initially issued or reserved for issuance pursuant to the Plan.

**1.149** ~~1.147~~ **New Notes.** Collectively, the New 8% Notes (Series A) and New 8% Notes (Series B), the US Airways Note and the Management Notes.

**1.150** ~~1.148~~ **New 8% Notes.** Collectively, the New 8% Notes (Series A) and New 8% Notes (Series B).

**1.151** ~~1.149~~ **New 8% Notes (Series A).** The unsecured non-amortized notes to be issued by Reorganized Mesa Air Group for the benefit of holders of a 2012 Noteholder Claim, and guaranteed by the other Post-Effective Date Debtors, ~~pursuant to~~subject to the terms and conditions set forth in the Plan (as will be described in more detail in the New Notes Indenture ~~(~~to be filed with the Bankruptcy Court as part of the Plan Supplement), in the aggregate principal amount of $19.4 million and due five (5) years from the Effective Date, with no payments due prior to maturity, except to the extent there is a Spirit Liquidity Event, which shall be subject to payment priorities ~~as further provided~~in the Plan (as will be described in greater detail in the New Notes Indenture ~~and this Plan~~).

**1.152** ~~1.150~~ **New 8% Notes (Series B).** The unsecured non-amortized notes to be issued by Reorganized Mesa Air Group for the benefit of Class 3 and Class 5 Creditors (exclusive of the holders of a 2012 Noteholder Claim), and guaranteed by the other Post-Effective Date Debtors, ~~pursuant to~~subject to the terms and conditions set forth in the Plan (as will be described in more detail in the New Notes Indenture ~~(~~to be filed with the Bankruptcy Court as part of the Plan Supplement), in the aggregate principal amount of $43.2 million and due five (5) years from the Effective Date, with no payments due prior to maturity, as fully set forth in the New Notes Indenture; *provided, however,* that in the event there are any Excess Spirit Sale Proceeds following a Spirit Liquidity Event and the New 8% Notes (Series A) and US Airways Notes are paid in full, Reorganized Mesa Air Group shall be required to use such proceeds to prepay the New 8% Notes (Series B), which shall be subject to payment priorities ~~as further provided~~in the Plan (as will be described in greater detail in the New Notes Indenture ~~and this Plan~~).

**1.153** ~~1.151~~ **New Notes Indenture.** The indenture governing the following series of notes: the New 8% Notes (Series A), the New 8% Notes (Series B), the US Airways Note and the Management Notes (to be filed with the Bankruptcy Court as part of the Plan Supplement), which such indenture shall provide for the mandatory prepayment of the New Notes following a Spirit Liquidity Event in the following priority: first, New 8% Notes (Series A); second, the US Airways Note; third, New 8% Notes (Series B); and fourth, the Management Notes. The New 8% Notes (Series A), the New 8% Notes (Series B), and the US Airways Note shall be of equal priority if redeemed or paid in any other scenario.

**1.154** ~~1.152~~ **New Preferred Stock.** 2,000,000 shares of the no par value blank check preferred stock of Reorganized Mesa Air Group authorized under the Reorganized Mesa Charter Documents, of which no shares shall be initially issued under the Plan, and which issuance shall (i) be subject to the restrictions set forth in the US Airways Investor Rights Agreement, and (ii) have the voting, dividend, conversion and/or other rights to be determined by the board of directors of Reorganized Mesa Air Group as permitted under the Reorganized Mesa Charter Documents.

**1.155** ~~1.153~~ **New Warrant Agreement.** The agreement governing the issuance and exercise of the New Warrants.

**1.156** ~~1.154~~ **New Warrants.** Penny warrants to acquire shares of the New Common Stock to be issued to Non-U.S. Citizens under the Plan on or as soon as practicable after the Effective Date,

which warrants will be transferable but may be exercised only by U.S. Citizens, (and subject to other restrictions on exercise and transfer set forth in Section 5.7 of the Plan), as more fully provided in the New Warrant Agreement substantially in a form to be filed with the Bankruptcy Court as part of the Plan Supplement. For the avoidance of doubt, creditors who are Non-U.S. Citizens will receive New Warrants under the Plan and will not be eligible to receive shares of New Common Stock. The shares of New Common Stock to be issued under the Plan, together with the shares of New Common Stock issuable upon exercise of the New Warrants, will equal 80% of the New Common Stock (on a fully diluted basis after giving effect to the issuance of the shares of New Common Stock reserved for issuance under the Management Equity Pool and US Airways).

**1.157** ~~1.155~~ **Nilchii.** Nilchii, Inc., a Debtor in these Chapter 11 Cases.

**1.158** ~~1.156~~ **NOL.** Net operating loss.

**1.159** ~~1.157~~ **Non- U.S. Citizen.** A person or entity that is not a U.S. Citizen or who fails to provide a certification that they are a U.S. Citizen when requested by the Debtors or Post-Effective Date Debtors prior to a distribution date under the Plan.

**1.160** ~~1.158~~ **Noteholders.** Holders of the Notes and any successors or assigns thereof.

**1.161** ~~1.159~~ **Notes.** The 2012 Notes, the 2023 Notes and the 2024 Notes.

**1.162** ~~1.160~~ **Patar.** Patar, Inc., a Debtor in these Chapter 11 Cases.

**1.163** ~~1.161~~ **Permitted Payment.** A payment on account of an obligation arising prior to the Petition Date made by the Debtors during the Chapter 11 Cases with the permission of the Bankruptcy Court.

**1.164** ~~1.162~~ **Person.** Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other "person" as defined in Bankruptcy Code § 101, as well as any governmental agency, governmental unit or associated political subdivision.

**1.165** ~~1.163~~ **Pesakovic Lenders.** Bozidar Pesakovic and Nada Pesakovic.

**1.166** ~~1.164~~ **Petition Date.** January 5, 2010, the date when the Debtors commenced their voluntary Chapter 11 Cases.

**1.167** ~~1.165~~ **Ping Shan.** Ping Shan, SRL.

**1.168** ~~1.166~~ **Plan.** This Chapter 11 plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including all of its annexed exhibits and schedules.

**1.169** ~~1.167~~ **Plan Supplement.** A compilation of documents and forms of documents, schedules and exhibits to the Plan, including any exhibits to the Plan that are not filed contemporaneously with the filing of the Plan and any amendments to exhibits filed contemporaneously with the

filing of the Plan. The Debtors shall file and serve on parties in interest the Plan Supplement no later than seven (7) days prior to the Voting Deadline.

**1.170** ~~1.168~~ **Post-Effective Date Charter Documents.** The respective Charter Documents of the Debtors other than Reorganized Mesa Air Group.

**1.171** ~~1.169~~ **Post-Effective Date Committee.** The committee to be formed after the Effective Date in accordance with the Section 5.10.3 of the Plan.

**1.172** ~~1.170~~ **Post-Effective Date Debtors.** Each Reorganizing Debtor and Liquidating Debtor, from and after the Effective Date.

**1.173** ~~1.171~~ **Post-Effective Date Financing.** Any exit financing facility or other lending arrangement obtained by Mesa Air Group or Reorganized Mesa Air Group on or after the Effective Date, which facility or arrangement shall be guaranteed by the other Debtors and may include the grant of a senior security interest in some or all of the Debtors' assets.

**1.174** ~~1.172~~ **Post-Petition Aircraft Agreement.** Any and all new or renegotiated agreements (including leases, subleases, security agreements and mortgages and any amendments, modifications or supplements of or to any lease, sublease, security agreement or mortgage and such leases, subleases, security agreements or mortgages as so amended, modified or supplemented, and any agreement settling or providing for any claims or otherwise addressing any matters relating to any lease, sublease, security agreement or mortgage or any amendment, modification or supplement of or to any lease, sublease, security agreement or mortgage) entered into after the Petition Date by the Debtors relating to Aircraft Equipment.

**1.175** ~~1.173~~ **Principal Carriers.** Delta, US Airways and United.

**1.176** ~~1.174~~ **Priority Non-Tax Claim.** A Claim (or portion of such Claim) against any Debtor entitled to priority under Sections 507(a)(3), (a)(4), (a)(5) or (a)(7) of the Bankruptcy Code.

**1.177** ~~1.175~~ **Priority Tax Claim.** A Claim (or portion of such Claim) of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.178** ~~1.176~~ **Pro Rata.** With respect to Claims within the same Class or sub-Class, the proportion that the Claim bears to the sum of all Claims within such Class or sub-Class.

**1.179** ~~1.177~~ **Proceeds.** All Cash, interest, profits, dividends, proceeds, products, and rents earned, accrued, collected, derived, received or recovered on account of the liquidation, sale, transfer, enforcement or other disposition of property, including all "proceeds" as defined under Section 9102(a)(64) of the California Uniform Commercial Code.

**1.180** ~~1.178~~ **Professional.** Each Person: (a) employed in accordance with an order of the Bankruptcy Court under Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services under Sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, or (b) for which compensation is requested under Section 503(b)(2)-(b)(6) of the Bankruptcy Code.

**1.181** ~~1.179~~ **Professional Fees.** A Claim by a Professional for compensation for services rendered and reimbursement for expenses submitted in accordance with Sections 330, 331, or 503(b) of the Bankruptcy Code for fees and expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.182** ~~1.180~~ **Professional Fees Bar Date.** The sixtieth (60th) day after the Effective Date, by which date any Professional seeking an award of Professional Fees must have filed an application with the Bankruptcy Court under Section 330(a) of the Bankruptcy Code, or be forever barred from an award of Professional Fees against the Debtors and/or sharing in any distribution under the Plan.

**1.183** ~~1.181~~ **PSZJ.** Pachulski Stang Ziehl & Jones LLP.

**1.184** ~~1.182~~ **RACC.** Raytheon Aircraft Credit Corporation.

**1.185** ~~1.183~~ **RASI.** Regional Aircraft Services, Inc., a Debtor in these Chapter 11 Cases.

**1.186** ~~1.184~~ **Rejection Claim Bar Date.** The thirty fifth (35th) day after the Effective Date, by which date any Person asserting a Claim for damages arising from the rejection of an executory contract or unexpired lease under this Plan must have filed a proof of Claim with the Bankruptcy Court under Section 502(g) of the Bankruptcy Code, or be forever barred from asserting such Claim against the Debtors and sharing in any distribution under the Plan.

**1.187** ~~1.185~~ **Rejection Procedures Order.** Order signed on 2/23/2010 [Docket No. 353] Granting Motion for (I) Authorization to (A) Reject Leases Relating to Certain Aircraft And Other Related Equipment, (B) Abandon Certain Aircraft, Engines, and Other Related Equipment, (C) Transfer Title to Certain Aircraft, Engines, and Other Related Equipment, and (D) Satisfy the Surrender and Return Requirements Under the Bankruptcy Code, and (II) Approval of Related Notices and Procedures.

**1.188** ~~1.186~~ **Republic Airways.** Republic Airways Holdings Inc.

**1.189** ~~1.187~~ **Reorganized Board.** The Board of Directors of the Reorganized Mesa Air Group.

**1.190** ~~1.188~~ **Reorganized Debtor Subsidiaries.** Collectively, Mesa Air New York, Mesa In-Flight, Mesa Airlines, MPD, RASI, MAGAIM, and Nilchii, from and after the Effective Date.

**1.191** ~~1.189~~ **Reorganized Debtors.** Each Reorganizing Debtor, from and after the Effective Date.

**1.192** ~~1.190~~ **Reorganized Mesa Air Group.** Mesa Air Group, from and after the Effective Date.

**1.193** ~~1.191~~ **Reorganized Mesa Bylaws.** The amended and restated bylaws of Reorganized Mesa Air Group to be in effect on or as soon as practicable after the Effective Date, as set forth in **Exhibit A** of the Plan.

**1.194** ~~1.192~~ **Reorganized Mesa Charter.** The amended and restated certificate of incorporation of Reorganized Mesa Air Group to be in effect on or as soon as practicable after the Effective Date, as set forth in **Exhibit A** of the Plan.

**1.195** ~~1.193~~ **Reorganizing Debtors.** Collectively, Mesa Air Group, Mesa Air New York, Mesa In-Flight, Mesa Airlines, Freedom, MPD, RASI, MAGAIM, and Nilchii.

**1.196** ~~1.194~~ **Restructured Equity.** Collectively, the New Common Stock and the New Warrants to be issued pursuant to the Plan.

**1.197** ~~1.195~~ **Restructured Unsecured Equity.** Collectively, the New Common Stock and the New Warrants to be issued pursuant to Section 4.3.2 and 4.5.2 hereof.

**1.198** ~~1.196~~ **Restructured Unsecured Equity Holders.** Those Persons who receive distributions of Restructured Unsecured Equity pursuant to this Plan.

**1.199** ~~1.197~~ **RHMC.** Ritz Hotel Management Corp., a Debtor in these Chapter 11 Cases.

**1.200** ~~1.198~~ **RLA.** The Railway Labor Act.

**1.201** ~~1.199~~ **SEC.** Securities and Exchange Commission.

**1.202** ~~1.200~~ **Section 1110 Procedures.** Procedures established pursuant to the Section 1110 Procedures Order authorizing Debtors: (a) to agree to perform obligations and cure defaults pursuant to section 1110(a) of the Bankruptcy Code; and (b) to enter into agreements to extend the 60-day period specified in section 1110(a) pursuant to section 1110(b) of the Bankruptcy Code.

**1.203** ~~1.201~~ **Section 1110 Procedures Order.** *Order(A) Establishing Procedures Authorizing Debtors, Subject to Subsequent Court Approval, to Perform Obligations and Cure Defaults Pursuant to Section 1110(A) of the Bankruptcy Code and to Enter Into Agreements to Extend the 60-Day Period Specified in Section 1110(A) Pursuant to Section 1110(B) of the Bankruptcy Code and (B) Authorizing the Filing of Redacted Section 1110(A) Election Notices and Section 1110(B) Agreements Under Seal*, entered by the Bankruptcy Court on February 23, 2010.

**1.204** ~~1.202~~ **Section 1110 Rejection/Abandonment Procedures.** Procedures established pursuant to the Section 1110 Rejection/Abandonment Procedures Order authorizing the Debtors to reject aircraft leases and related agreements and abandon and return aircraft thereunder.

**1.205** ~~1.203~~ **Section 1110 Rejection/Abandonment Procedures Order.** *Order Granting Motion for (I) Authorization to (A) Reject Leases Relating to Certain Aircraft And Other Related Equipment, (B) Abandon Certain Aircraft, Engines, and Other Related Equipment, (C) Transfer Title to Certain Aircraft, Engines, and Other Related Equipment, and (D) Satisfy the Surrender and Return Requirements Under the Bankruptcy Code, and (II) Approval of Related Notices and Procedures*, entered by the Bankruptcy Court on February 23, 2010.

**1.206** ~~1.204~~ **Section 1110(b) Stipulations.** Stipulations entered into by and among the Debtors and certain aircraft lessors under to section 1110(b) of the Bankruptcy Code pursuant to the Section 1110 Procedures.

**1.207** ~~1.205~~ **Schedules.** The schedules of assets and liabilities, the list of holders of Interests, and the statements of financial affairs filed by the Debtors in the Chapter 11 Cases, under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**1.208** ~~1.206~~ **Secured Claim.** A Claim against any Debtor secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of: (i) the interest of the holder of such Claim in the property of the Debtor securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

**1.209** ~~1.207~~ **Securities Act.** The Securities Act of 1933, 15 U.S.C. Sections 77a - 77aa, as now in effect or hereafter amended, or any similar federal, state, or local law.

**1.210** ~~1.208~~ **Settling Aircraft Counterparties.** Export Development Canada, HSH Nordbank AG, Landesbank Baden-Wurttemburg, Fortis Bank Nederland N.V., NIBC Bank N.V., Bank of Scotland plc, CIT Capital USA Inc., DVB Transport Finance Limited, Bremer Landesbank Kreditanstalt Oldenburg-Girozentrale, and DVB Bank SE (and their nominees, as applicable).

**1.211** ~~1.209~~ **Shan Yue.** Shan Yue SRL.

**1.212** **Shareholder Agreement.** That agreement by and among Reorganized Mesa Air Group and each holder of an Allowed Claim who holds five percent (5%) of the issued and outstanding shares of New Common Stock, whether as of the Effective Date or subsequent thereto as a result of the issuance of additional shares of New Common Stock pursuant to Allowed Claims or upon exercise of New Warrants, which agreement shall provide for the voting obligations set forth in Section 5.9 of the Plan.

**1.213** ~~1.210~~ **Spirit Airlines.** Spirit Airlines, Inc.

**1.214** ~~1.211~~ **Solicitation Agent.** Epiq Bankruptcy Solutions, LLC.

**1.215** ~~1.212~~ **Spirit Liquidity Event.** The ~~net proceeds, if any, received by Nilchii from the~~ sale of common stock of or payment on notes from Spirit Airlines, the net proceeds of which are distributed by Indigo to Nilchii in accordance with the terms of that certain Amended and Restated Limited Liability Company Agreement of Indigo Miramar LLC, as thereafter amended.

**1.216** ~~1.198~~ **Tax Code.** Internal Revenue Code of 1986, as amended.

**1.217** ~~1.199~~ **Treasury Regulations.** Regulations promulgated under the Tax Code.

**1.218** ~~1.200~~ **TSA.**  Transportation Security Administration.

**1.219** ~~1.201~~ **True-Up Equity Distribution.**  On any Class 3 Distribution Date or Class 5 Distribution Date, "True-Up Equity Distribution" means, with respect to any holder of an Allowed Claim entitled to receive Restructured Unsecured Equity under the Plan, a distribution of an additional amount of Restructured Unsecured Equity necessary to cause such holder to have received aggregate distributions of Restructured Unsecured Equity under the Plan equal to its then current Estimated Pro Rata Share of Restructured Unsecured Equity.

**1.220** ~~1.202~~ **True-Up Note Distribution.**  On any Class 3 Distribution Date, Class 5 Distribution Date, or Class 5~~6~~ Distribution Date, "True-Up Note Distribution" means, with respect to any holder of an Allowed Claim entitled to receive New 8% Notes (Series A) and/or New 8% Notes (Series B) under the Plan, as the case may be, a distribution of an additional amount of New 8% Notes (Series ~~B)~~A) and/or New 8% Notes (Series B), as applicable, necessary to cause such holder to have received aggregate distributions of New 8% Notes (Series ~~B)~~A) and/or New 8% Notes (Series B), as applicable, under the Plan equal to its then current Estimated Pro Rata Share of New 8% Notes (Series A) or (Series B).

**1.221** ~~1.203~~ **Union.**  Each of ALPA and AFA.

**1.222** ~~1.204~~ **United.**  United Airlines, Inc.

**1.223** ~~1.205~~ **United Litigation.**  Declaratory relief action commenced by United against Mesa Air Group under Case No. 1:09-CV-7352 in the Illinois District Court.

**1.224** ~~1.206~~ **United Code-Share Agreement.**  That certain United Express® Agreement dated as of January 28, 2004 and all amendments thereto and related ancillary agreements identified in the Plan Supplement, between Mesa Air Group and United, pursuant to which, *inter alia*, Mesa Air Group agreed to provide (through itself and its subsidiaries) certain regional air transportation services under certain trademarks, including the United Express mark, to United.

**1.225** ~~1.207~~ **Unsecured Deficiency Claim.**  A Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claim as of the Petition Date, after taking into account any election made pursuant to Section 1111(b) of the Bankruptcy Code.

**1.226** ~~1.208~~ **US Airways.**  US Airways, Inc.

**1.227** ~~1.209~~ **US Airways Tenth Amendment.**  That certain tenth amendment to the US Airways Code-Share Agreement to be presented to the court in connection with the motion to assume the US Airways Code-Share Agreement.

**1.228** ~~1.210~~ **US Airways Code-Share Agreement.**  That certain Code Share and Revenue Sharing Agreement dated as of March 20, 2001, with its effectiveness retroactive to February 1, 2001, between Mesa Airlines and America West Airlines, Inc., as amended as of the Petition Date (through and including the Ninth Amendment to Code Share and Revenue

Sharing Agreement and Settlement, dated March 30, 2009 by and among US Airways, Inc., Mesa Airlines, Inc., Freedom Airlines, Inc.).

**1.229** ~~1.211~~ **US Airways Investor Rights Agreement.** That agreement between Reorganized Mesa Air Group and US Airways with respect to the shares of New Common Stock issued to US Airways in accordance with the terms of the Plan. The US Airways Investor Rights Agreement will be filed as part of the Plan Supplement.

**1.230** ~~1.212~~ **US Airways Note.** The unsecured, non-amortized note to be issued by Reorganized Mesa Air Group for the benefit of US Airways, and guaranteed by the other Reorganized Debtors, ~~pursuant to~~subject to the terms and conditions set forth in the Plan (as will be described in more detail in the New Notes Indenture to be filed with the Bankruptcy Court as part of the Plan Supplement), in the aggregate principal amount of $6.8 million and due five (5) years from the Effective Date, with no payments due prior to maturity, as fully set forth in the Plan (as will be described in greater detail in the New Notes Indenture). The terms of the US Airways Note shall ~~be substantially similar to the~~have identical terms and conditions of the New 8% Notes~~, provided that~~ except for the principal amount and following the occurrence of a Spirit Liquidity Event, in the event there are Excess Spirit Sale Proceeds following the payment in full of the New 8% Notes (Series A), Reorganized Mesa Air Group shall be required to use such proceeds to prepay the US Airways Note prior to payment of the New 8% Notes (Series B) or the Management Notes, as set forth in the Plan (as will be described in greater detail in the New Notes Indenture ~~and this Plan~~).

**1.231** ~~1.213~~ **U.S. Citizen.** (A) an individual who is a citizen of the United States; (B) a partnership each of whose partners is an individual who is a citizen of the United States; or (C) a corporation or association organized under the laws of the United States or a State, the District of Columbia, or a territory or possession of the United States, of which the president and at least two-thirds of the board of directors and other managing officers are citizens of the United States, which is under the actual control of citizens of the United States, and in which at least 75 percent of the voting interest is owned or controlled by persons that are citizens of the United States.

**1.232** ~~1.214~~ **U.S. Trustee.** Office of the United States Trustee for Region 2, Southern District of New York.

**1.233** ~~1.215~~ **Voting Deadline.** December ~~2,~~23, 2010 at 4:00 P.M. prevailing Eastern Time, the date ordered by the Bankruptcy Court to serve as the voting deadline for submission of ballots in respect of the Plan.

**1.234** ~~1.216~~ **Voting Record Date.** November 18, 2010.

# ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIMS

2.1     **Unclassified Claims.**  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this Article 2 and in accordance with the requirements set forth in Section 1129(a)(9) of the Bankruptcy Code.

2.2     **Administrative Claims.**

2.2.1     **Administrative Claim Bar Date.**  All requests for payment of Administrative Claims (except with respect to Professional Fees, which shall instead be subject to the Professional Fees Bar Date and Claims arising under the Rejection Procedures Order, which are subject to the procedures and deadlines set forth therein) must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors or from sharing in any distribution under the Plan.

2.2.2     **Treatment.**

(a)     **Generally.**  Each Allowed Administrative Claim (except for Professional Fees, which shall be treated as set forth in Section 2.4 of the Plan) shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the Debtors on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth (14th) day after such Claim is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim and the Debtors may agree; and (e) the date such Claim is otherwise due according to its terms.

(b)     **Ordinary Course.**  Notwithstanding anything in Section 2.2.1 to the contrary, holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtors' businesses following the Petition Date shall not be required to comply with the Administrative Claim Bar Date, *provided, however*, that such holders, other than employees or former employees, that have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the applicable Debtor in the ordinary course of business, and *provided, further*, that the Debtors, to the extent of any disagreement with any such invoice, billing statement or other evidence of indebtedness, may file with the Bankruptcy Court an objection to such invoice, billing statement or other evidence of indebtedness as though the claimant thereunder had filed an Administrative Claim with the Bankruptcy Court.

(c)     **Source of Payment.**  Distributions to holders of Allowed Administrative Claims (other than for Professional Fees, which shall be payable pursuant to Section 2.4 of the Plan) shall be paid by the applicable Debtor against which the Administrative Claim is Allowed.

**2.3** **Allowed Priority Tax Claims.**

**2.3.1** <span style="text-align:center">**Treatment.**</span>

(a) **Generally.** Each Allowed Priority Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive deferred cash payments to the extent permitted by section 1129(a)(9)(C) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the statutory rate under applicable non-bankruptcy law or at a rate to be agreed upon by the Debtors and the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; *provided, however*, that the Debtors may elect in their sole discretion to pay any or all such Claims at any time, without premium or penalty, in which case the payment shall not include interest if paid on the Effective Date. The payment of each Allowed Priority Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (i) the first day following the end of the first full calendar quarter following the Effective Date, (ii) the first day following the end of the first full calendar quarter following the date an order allowing such claim becomes a Final Order, and (iii) such other time or times as may be agreed with the holder of such claim. Each installment shall include interest in accordance with section 511 of the Bankruptcy Code on the unpaid balance of the Allowed Priority Tax Claim, without penalty of any kind, at the non-default rate of interest prescribed, agreed to or determined in accordance with the foregoing.

(b) **Source of Payment.** Distributions to holders of Allowed Priority Tax Claims shall be paid by the applicable Debtor against which the Priority Tax Claim is Allowed.

**2.4** **Secured Tax Claims.**

**2.4.1** <span style="text-align:center">**Treatment.**</span>

(a) **Generally.** Each holder of an Allowed Secured Claim held by a governmental unit that is secured by an interest in the Debtors' property shall, unless the holder of such Secured Claim shall have agreed to different treatment of such Claim, receive deferred cash payments to the extent permitted by section 1129(a)(9)(D) of the Bankruptcy Code with interest on the unpaid portion of such Secured Claim at the statutory rate under applicable non-bankruptcy law or at a rate to be agreed upon by the Debtors and the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; *provided, however*, the Debtors may elect in their sole discretion to pay any or all such Claims at any time, without premium or additional penalty, if any, in which case the payment shall not include interest if paid on the Effective Date. The payment of each Allowed Secured Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (i) the first day following the end of the first full calendar quarter following the Effective Date, (ii) the first day following the end of the first full calendar quarter following the date an order allowing such claim becomes a Final Order, and (iii) such other time or times as may be agreed with the holder of such claim. Each installment shall include interest in accordance with section 511 of the Bankruptcy Code on the unpaid balance of the Allowed Priority Tax Claim, without penalty of

any kind, at the non-default rate of interest prescribed, agreed to or determined in accordance with the foregoing. The holder of an Allowed Secured Tax Claim shall retain its lien until the Allowed Secured Tax Claim is paid.

### (b) Section 1124(2) Reinstatement.

The Debtors may elect in their sole discretion, on the Effective Date, to cure and reinstate the applicable Allowed Secured Tax Claims as of the first date when last payable without interest, fees or penalties, and, as so cured and reinstated, shall receive a lump sum payment in full on the Effective Date. Under this alternative treatment, the holder of an Allowed Secured Tax Claim shall be paid Cash on the Effective Date equal to the amount of such Allowed Secured Tax Claim due as of the first date when last payable without interest, fees or penalty, plus, to the extent required by section 1124(2) of the Bankruptcy Code any interest thereupon from such date until payment at the rate of interest determined under the applicable nonbankruptcy law and any fees incurred in reasonable reliance on timely receipt of the tax, but exclusive of any penalty amounts thereof at any time incurred or charged (see Bankruptcy Code sections 1123(a)(5)(G) & 1124(2)).

### (c) Determination of Applicable Treatment.

The first treatment indicated above in Section 2.4.1(a) shall be applicable to each holder of an Allowed Secured Tax Claim, unless, the Debtors elect to reinstate the applicable Secured Tax Claims as provided in Section 2.4.1(b). The Debtors' election to treat Allowed Secured Tax Claims pursuant to Section 2.4.1(b) will be provided in the Plan Supplement.

(d) **Source of Payment.** Distributions to holders of Allowed Priority Tax Claims shall be paid by the applicable Debtor against which the Priority Tax Claim is Allowed.

**2.5 Claims for Professional Fees.** Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Professional Fees Bar Date; and (b) if the Bankruptcy Court grants such an award, each such Person will be paid in full in Cash by the Debtors, in such amounts as are allowed by the Bankruptcy Court as soon as practicable following the first day after such order has been entered by the Bankruptcy Court and is not stayed. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order.

# ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    **Summary of Classification.**  In accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of Interests are placed in the Classes described in Section 3.2 below for all purposes, including voting on, confirmation of, and distribution under, the Plan.

3.2    **Classes.**

3.2.1 **Claims.**                                              **Class 1(a) – (*l*): Priority Non-Tax**

| Class 1(a) | Priority Non-Tax Claims against Mesa Air Group | Unimpaired, deemed to accept |
| Class 1(b) | Priority Non-Tax Claims against Mesa Air New York | Unimpaired, deemed to accept |
| Class 1(c) | Priority Non-Tax Claims against Mesa In-Flight | Unimpaired, deemed to accept |
| Class 1(d) | Priority Non-Tax Claims against Freedom | Unimpaired, deemed to accept |
| Class 1(e) | Priority Non-Tax Claims against Mesa Airlines | Unimpaired, deemed to accept |
| Class 1(f) | Priority Non-Tax Claims against MPD | Unimpaired, deemed to accept |
| Class 1(g) | Priority Non-Tax Claims against RASI | Unimpaired, deemed to accept |
| Class 1(h) | Priority Non-Tax Claims against MAGAIM | Unimpaired, deemed to accept |
| Class 1(i) | Priority Non-Tax Claims against Nilchii | Unimpaired, deemed to accept |
| Class 1(j) | Priority Non-Tax Claims against Air Midwest | Unimpaired, deemed to accept |
| Class 1(k) | Priority Non-Tax Claims against RHMC | Unimpaired, deemed to accept |
| Class 1(*l*) | Priority Non-Tax Claims against Patar | Unimpaired, deemed to accept |

3.2.2                                              **Class 2(a) – (*l*): Secured Claims.**

| Class 2(a) | Secured Claims against Mesa Air Group (each secured creditor in a separate class identified as Class 2(a)-A, Class 2(a)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(b) | Secured Claims against Mesa Air New York (each secured creditor in a separate class identified as Class 2(b)-A, Class 2(b)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(c) | Secured Claims against Mesa In-Flight (each secured creditor in a separate class identified as Class 2(c)-A, Class 2(c)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |

| Class 2(d) | Secured Claims against Freedom (each secured creditor in a separate class identified as Class 2(d)-A, Class 2(d)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
|---|---|---|
| Class 2(e) | Secured Claims against Mesa Airlines (each secured creditor in a separate class identified as Class 2(e)-A, Class 2(e)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(f) | Secured Claims against MPD (each secured creditor in a separate class identified as Class 2(f)-A, Class 2(f)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(g) | Secured Claims against RASI (each secured creditor in a separate class identified as Class 2(h)-A, Class 2(h)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(h) | Secured Claims against MAGAIM (each secured creditor in a separate class identified as Class 2(j)-A, Class 2(j)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(i) | Secured Claims against Nilchii (each secured creditor in a separate class identified as Class 2(k)-A, Class 2(k)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(j) | Secured Claims against Air Midwest (each secured creditor in a separate class identified as Class 2(i)-A, Class 2(i)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(k) | Secured Claims against RHMC (each secured creditor in a separate class identified as Class 2(g)-A, Class 2(g)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |
| Class 2(*l*) | Secured Claims against Patar (each secured creditor in a separate class identified as Class 2(*l*)-A, Class 2(*l*)-B, etc.) | Impaired, entitled to vote (Other than Aircraft Secured Claims Reinstated pursuant to Sections 4.2.1 through 4.2.3) |

**3.2.3**     **Class 3(a) – (*l*): General Unsecured Claims.**

| Class 3(a) | General Unsecured Claims against Mesa Air Group | Impaired, entitled to vote |
|---|---|---|
| Class 3(b) | General Unsecured Claims against Mesa Air New York | Impaired, entitled to vote |
| Class 3(c) | General Unsecured Claims against Mesa In-Flight | Impaired, entitled to vote |
| Class 3(d) | General Unsecured Claims against Freedom | Impaired, entitled to vote |
| Class 3(e) | General Unsecured Claims against Mesa Airlines | Impaired, entitled to vote |
| Class 3(f) | General Unsecured Claims against MPD | Impaired, entitled to vote |