| Class 3(g) | General Unsecured Claims against RASI | Impaired, entitled to vote |
|---|---|---|
| Class 3(h) | General Unsecured Claims against MAGAIM | Impaired, entitled to vote |
| Class 3(i) | General Unsecured Claims against Nilchii | Impaired, entitled to vote |
| Class 3(j) | General Unsecured Claims against Air Midwest | Impaired, entitled to vote |
| Class 3(k) | General Unsecured Claims against RHMC | Impaired, entitled to vote |
| Class 3(*l*) | General Unsecured Claims against Patar | Impaired, entitled to vote |

**3.2.4**        **Class 4(a) – (*l*): De Minimis Convenience Claims.**

| Class 4(a) | De Minimis Convenience Claims against Mesa Air Group | Impaired, entitled to vote |
|---|---|---|
| Class 4(b) | De Minimis Convenience Claims against Mesa Air New York | Impaired, entitled to vote |
| Class 4(c) | De Minimis Convenience Claims against Mesa In-Flight | Impaired, entitled to vote |
| Class 4(d) | De Minimis Convenience Claims against Freedom | Impaired, entitled to vote |
| Class 4(e) | De Minimis Convenience Claims against Mesa Airlines | Impaired, entitled to vote |
| Class 4(f) | De Minimis Convenience Claims against MPD | Impaired, entitled to vote |
| Class 4(g) | De Minimis Convenience Claims against RASI | Impaired, entitled to vote |
| Class 4(h) | De Minimis Convenience Claims against MAGAIM | Impaired, entitled to vote |
| Class 4(i) | De Minimis Convenience Claims against Nilchii | Impaired, entitled to vote |
| Class 4(j) | De Minimis Convenience Claims against Air Midwest | Impaired, entitled to vote |
| Class 4(k) | De Minimis Convenience Claims against RHMC | Impaired, entitled to vote |
| Class 4(*l*) | De Minimis Convenience Claims against Patar | Impaired, entitled to vote |

**3.2.5**        **Class 5(a) – (*l*): 510(a) Subrogation Claims.**

| Class 5(a) | 510(a) Subrogation Claims against Mesa Air Group | Impaired, entitled to vote |
|---|---|---|
| Class 5(b) | 510(a) Subrogation Claims against Mesa Air New York | Impaired, entitled to vote |
| Class 5(c) | 510(a) Subrogation Claims against Mesa In-Flight | Impaired, entitled to vote |
| Class 5(d) | 510(a) Subrogation Claims against Freedom | Impaired, entitled to vote |
| Class 5(e) | 510(a) Subrogation Claims against Mesa Airlines | Impaired, entitled to vote |
| Class 5(f) | 510(a) Subrogation Claims against MPD | Impaired, entitled to vote |
| Class 5(g) | 510(a) Subrogation Claims against RASI | Impaired, entitled to vote |

| Class 5(h) | 510(a) Subrogation Claims against MAGAIM | Impaired, entitled to vote |
| Class 5(i) | 510(a) Subrogation Claims against Nilchii | Impaired, entitled to vote |
| Class 5(j) | 510(a) Subrogation Claims against Air Midwest | Impaired, entitled to vote |
| Class 5(k) | 510(a) Subrogation Claims against RHMC | Impaired, entitled to vote |
| Class 5(*l*) | 510(a) Subrogation Claims against Patar | Impaired, entitled to vote |

**3.2.6**                                              **Class 6(a) – (*l*): 2012 Noteholder Claims.**

| Class 6(a) | 2012 Noteholder Claims against Mesa Air Group | Impaired, entitled to vote |
| Class 6(b) | 2012 Noteholder Claims against Mesa Air New York | Impaired, entitled to vote |
| Class 6(c) | 2012 Noteholder Claims against Mesa In-Flight | Impaired, entitled to vote |
| Class 6(d) | 2012 Noteholder Claims against Freedom | Impaired, entitled to vote |
| Class 6(e) | 2012 Noteholder Claims against Mesa Airlines | Impaired, entitled to vote |
| Class 6(f) | 2012 Noteholder Claims against MPD | Impaired, entitled to vote |
| Class 6(g) | 2012 Noteholder Claims against RASI | Impaired, entitled to vote |
| Class 6(h) | 2012 Noteholder Claims against MAGAIM | Impaired, entitled to vote |
| Class 6(i) | 2012 Noteholder Claims against Nilchii | Impaired, entitled to vote |
| Class 6(j) | 2012 Noteholder Claims against Air Midwest | Impaired, entitled to vote |
| Class 6(k) | 2012 Noteholder Claims against RHMC | Impaired, entitled to vote |
| Class 6(*l*) | 2012 Noteholder Claims against Patar | Impaired, entitled to vote |

**3.2.7**                                              **Class 7(a) – (*l*): Interests.**

| Class 7(a) | Interests in Mesa Air Group | Impaired, deemed to reject |
| Class 7(b) | Interests in Mesa Air New York | Impaired, deemed to reject |
| Class 7(c) | Interests in Mesa In-Flight | Impaired, deemed to reject |
| Class 7(d) | Interests in Freedom | Impaired, deemed to reject |
| Class 7(e) | Interests in Mesa Airlines | Impaired, deemed to reject |
| Class 7(f) | Interests in MPD | Impaired, deemed to reject |
| Class 7(g) | Interests in RASI | Impaired, deemed to reject |
| Class 7(h) | Interests in MAGAIM | Impaired, deemed to reject |
| Class 7(i) | Interests in Nilchii | Impaired, deemed to reject |
| Class 7(j) | Interests in Air Midwest | Impaired, deemed to reject |
| Class 7(k) | Interests in RHMC | Impaired, deemed to reject |
| Class 7(*l*) | Interests in Patar | Impaired, deemed to reject |

# ARTICLE 4
# TREATMENT OF CLAIMS AND INTERESTS

**4.1**     **Class 1(a) – (*l*) – Priority Non-Tax Claims.**

**4.1.1**                                    **Impairment and Voting.** Classes 1(a) – 1(*l*) are unimpaired under the Plan. Holders of Priority Non-Tax Claims are deemed to have

accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.1.2** **Treatment.** Each holder of an Allowed Priority Non-Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Priority Non-Tax Claim, a Cash payment in an amount equal to the difference between: (a) such Allowed Priority Non-Tax Claim, and (b) the amount of any Permitted Payments made to the holder of such Claim, on the latest of: (i) the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and the Debtors may agree.

**4.1.3** **Source of Payment.** Distributions to holders of Allowed Priority Non-Tax Claims shall be paid by the applicable Debtors from their cash on hand.

**4.2** **Class 2(a) – (***l***) – Secured Claims.**

**4.2.1** **Unimpaired Aircraft Secured Claims and Voting.** Except to the extent that a holder of an Allowed Aircraft Secured Claim agrees to different treatment, in the sole discretion of the Debtors or Reorganized Debtors, on the Effective Date, each Allowed Aircraft Secured Claim set forth in the Plan Supplement or identified below shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of such Allowed Aircraft Secured Claim to demand or receive payment of such Allowed Aircraft Secured Claim from and after the occurrence of a default. Such holders of Allowed Aircraft Secured Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

**4.2.2** **Unimpaired CRJ Equipment Trust Aircraft Secured Claims.**

Unless otherwise agreed to between the Debtors and the controlling counterparty, on the Effective Date, the CRJ Equipment Trust Aircraft Secured Claim shall be Allowed and the Debtors' obligations under the CRJ Equipment Trust Loan Documents relating to the CRJ Equipment Trust Aircraft Equipment shall be reinstated as provided in Section 4.2.1 of the Plan and leaving the rights of CRJ Equipment Trust Secured Claim unimpaired. The holders of the CRJ Equipment Trust Aircraft Secured Claim will retain their security interest against the CRJ Equipment Trust Equipment and the CRJ Equipment Trust Guaranty will be an obligation of Reorganized Mesa Air Group on and after the Effective Date.

Any dispute with respect to the amount of the CRJ Equipment Trust Aircraft Secured Claim, including, without limitation, disputes as to default interest, fees, and expenses, will be determined by the Bankruptcy Court, and the amounts payable, if any, as so determined, shall be made in accordance with the determination made by the Bankruptcy Court.

The holders of CRJ Equipment Trust Aircraft Secured Claims are reinstated in accordance with section 1124(2) of the Bankruptcy Code and unimpaired and presumed to have accepted the Plan.

**4.2.3**                                              **Unimpaired EDC Credit Agreement Secured Claims.**

Unless otherwise agreed to between the Debtors and the controlling counterparty, on the Effective Date, the EDC Aircraft Secured Claim shall be Allowed and the Debtors' obligations under the Credit Agreement Documents relating to the EDC Credit Agreement Equipment shall be reinstated as provided in Section 4.2.1 of the Plan and leaving the rights of the holders of the EDC Aircraft Secured Claims unimpaired. The holders of the EDC Aircraft Secured Claim will retain their security interest against the EDC Credit Agreement Equipment and the EDC Credit Agreement Guaranty will be an obligation of Reorganized Mesa Air Group on and after the Effective Date.

Any dispute with respect to the amount of the EDC Aircraft Secured Claim, including, without limitation, disputes as to default interest, fees, and expenses, will be determined by the Bankruptcy Court, and the amounts payable, if any, as so determined, shall be made in accordance with the determination made by the Bankruptcy Court.

The holders of EDC Aircraft Secured Claims are reinstated in accordance with section 1124(2) of the Bankruptcy Code and unimpaired and presumed to have accepted the Plan.

**4.2.4**                                              **Impairment and Voting.** All Secured Claims in Classes 2(a) – 2(*l*) (other than the Aircraft Secured Claims reinstated pursuant to Sections 4.2.1 through 4.2.3 of the Plan) are impaired under the Plan. Holders of Secured Claims are entitled to vote on the Plan. For purposes of distributions under the Plan, each holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**4.2.5**                                              **Alternative Treatment.** Other than the Aircraft Secured Claims reinstated pursuant to Sections 4.2.1 through 4.2.3 of the Plan, on or as soon as practicable following the Effective Date, unless the holder of such Claim shall have agreed to different treatment of such Claim, the Debtors shall select, in their discretion, one of the following alternative treatments for each Allowed Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Secured Claim:

(a)                     Abandonment or Surrender. The Debtors will abandon or surrender to the holder of such Secured Claim the property securing such Secured Claim, in full satisfaction and release of such Secured Claim, without representation or warranty by or recourse against the Debtors, the Reorganized Debtors, or the Liquidating Debtors.

(b)                     Cash Payment. The Debtors will pay to the holder of such Secured Claim Cash equal to the amount of such Secured Claim, or such lesser amount to

which the holder of such Secured Claim and the applicable Debtor shall agree, in full satisfaction and release of such Secured Claim.

**4.2.6**                                      **Source of Payment.** Distributions to the holders of Allowed Secured Claims under the treatment option set forth in Section 4.2.2(b) of the Plan shall be paid by the applicable Debtors.

**4.2.7**                                    **Unsecured Deficiency Claim.** Any Unsecured Deficiency Claim asserted by a holder of an Allowed Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty five (35) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan. Any such Allowed Unsecured Deficiency Claim shall be treated in accordance with Section 4.4.2 of the Plan.

**4.3**      **Class 3(a) – (***l***) – General Unsecured Claims.**

**4.3.1**                                    **Impairment and Voting.** Classes 3(a) – 3(*l*) are impaired under the Plan. Holders of General Unsecured Claims are entitled to vote on the Plan.

**4.3.2**                                    **Treatment.**

         (a)                      <u>U.S. Citizens.</u>

On or as soon as practicable following the Effective Date, and on each Distribution Date, unless the holder of such Claim shall have agreed to different treatment of such Claim, each holder of an Allowed General Unsecured Claim, which holder is a U.S. Citizen, shall receive, in respect of all of its Allowed General Unsecured Claims, distribution(s) of its Aggregate Distribution Percentage of the New Common Stock (after giving effect to the shares of New Common Stock reserved for issuance under the Management Equity Pool and shares of New Common Stock issuable to US Airways) and the New 8% Notes (Series B). Such distributions shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, all Allowed General Unsecured Claims held by such holder.

         (b)                      <u>Non-U.S. Citizens.</u>

On or as soon as practicable following the Effective Date, and on each Distribution Date, unless the holder of such Claim shall have agreed to different treatment of such Claim, each holder of an Allowed General Unsecured Claim, which holder is a Non-U.S. Citizen, shall receive, in respect of all of its Allowed General Unsecured Claims, distribution(s) of its Aggregate Distribution Percentage of the New Warrants and the New 8% Notes (Series B). For purposes of calculating distributions to Non-U.S. Citizens, each Non-U.S. Citizen shall receive New Warrants for 110% of the shares of New Common Stock that such Creditor would be entitled to receive if such Creditor was a U.S. Citizen. Such distributions shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, all Allowed General Unsecured Claims held by such holder. ~~Notwithstanding the foregoing, in the event that the Reorganized Debtors do not continue operations past December 31, 2012, then Class 3 General Unsecured Claims shall be revived and reinstated in the amount of their Allowed Claims, less any actual payments received on account of such Claims.~~

**4.3.3**                                  **Source of Payment.** Distributions to the holders of Allowed General Unsecured Claims shall be limited to a share of the Restructured Unsecured Equity and New 8% Notes (Series B) to be issued by Reorganized Mesa Air Group, as set forth in Section 4.3.2 above.

**4.4**     **Class 4(a) – (*l*) – De Minimis Convenience Claims.**

       **4.4.1**                                   **Impairment and Voting.** Classes 4(a) – 4(*l*) are impaired under the Plan. Holders of De Minimis Convenience Claims are entitled to vote on the Plan.

       **4.4.2**                                   **Treatment.** On or as soon as practicable following the Effective Date, the Debtors will, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed De Minimis Convenience Claim, pay to each holder of an Allowed De Minimis Convenience Claim Cash equal to the percentage of the Allowed amount of such Claim set forth on **Exhibit D** hereto.

       **4.4.3**                                   **Source of Payment.** Distributions to holders of Allowed De Minimis Convenience Claims shall be paid by the Debtors.

**4.5**     **Class 5(a) – (*l*) – 510(a) Subrogation Claims.**

       **4.5.1**                                   **Impairment and Voting.** Classes 5(a) – 5(*l*) are impaired under the Plan. Holders of 510(a) Subrogation Claims are entitled to vote on the Plan.

       **4.5.2**                                   **Treatment.** The Debtors shall provide the holders of 510(a) Subrogation Claims the same distributions of Restructured Unsecured Equity and New 8% Notes (Series B) that would have otherwise been made to such holders of Allowed 510(a) Subrogation Claims if such Claims were treated as Allowed General Unsecured Claims and provided the treatment set forth in Section 4.3.2 of the Plan. The Debtors shall not be required to review or give effect to any subrogation agreement and instead, the holders of 510(a) Subrogation Claims shall receive distributions as if their claims were not subject to any subordination agreements and the burden shall be on the holders of 510(a) Subrogation Claims to honor and give effect to any such agreements.

**4.6**     **Class 6 (a) – (*l*) – 2012 Noteholder Claims.**

       **4.6.1**                                   **Impairment and Voting.** Classes 6(a) – 6(*l*) are impaired under the Plan. Holders of 2012 Noteholder Claims are entitled to vote on the Plan.

       **4.6.2**                                   **Treatment.** On or as soon as practicable following the Effective Date, and on each Distribution Date, each Holder of an Allowed 2012 Noteholder Claim shall receive, in respect of all of its Allowed 2012 Noteholder Claims, distributions of its Pro Rata share of the New 8% Notes (Series A).

**4.7**     **Class 7(a) – (*l*) – Interests.**

**4.7.1**                                                        **Impairment and Voting.**  Classes 7(a) – 7(*l*) are impaired under the Plan.  Holders of Interests are deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.7.2**                                                        **Treatment.**  Upon the Effective Date, all existing Interests in Mesa Air Group shall be deemed extinguished and the holders of such Interests shall not receive or retain any property on account of such Interests under the Plan. Reorganized Mesa Air Group shall be vested, directly or indirectly, with the Interests in the Reorganized Debtor Subsidiaries and the Liquidating Debtors on the Effective Date.

**4.8**     **Nonconsensual Confirmation.**  To the extent necessary, the Debtors hereby request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE 5
## IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date.  In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for the implementation of the Plan.

**5.1     Continued Corporate Existence; Ongoing Operations Of the Reorganized Debtors, Wind-Up of the Liquidating Debtors and/or Alternative Transactions.**  As of the Effective Date, each Debtor shall, as a Reorganized Debtor or Liquidating Debtor, as applicable, continue to maintain its separate legal existence for all purposes under the Plan, with each Reorganized Debtor and Liquidating Debtor, as applicable, retaining all the powers of a legal entity under applicable law.

The respective articles or certificate of incorporation and bylaws (or other applicable formation documents) in effect prior to the Effective Date for each Debtor shall continue to be in effect after the Effective Date, except (i) with respect to Reorganized Mesa Air Group, which Reorganized Debtor shall be subject to the Reorganized Mesa Charter and the Reorganized Mesa bylaws and (ii) such Debtor's articles or certificate of incorporation or bylaws (or other formation documents) as amended pursuant to this Plan.

From and after the Effective Date, the Reorganized Debtors shall continue to engage in business, and the Liquidating Debtors shall continue to engage in business only to the extent reasonably necessary to wind up their affairs in an orderly manner and make the distributions under this Plan, or enter into Alternative Transactions to the extent necessary for the purpose of avoiding unnecessary costs and expenses associated with a potential liquidation or as they deem appropriate for other purposes so long as not otherwise inconsistent with the Plan.

Specifically with regard to the Liquidating Debtors, the Liquidating Debtors shall have full authority, and shall take any action necessary, to wind up the affairs, liquidate, transfer or abandon assets, and dissolve and terminate the existence of the Liquidating Debtors in a manner and in accordance with the best means to maximize assets and minimize expenses or costs associated with such liquidation under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the

Bankruptcy Court; *provided*, *however*, that the Reorganized Debtors may elect to forego any liquidation of the Liquidating Debtors if they determine, in their sole discretion prior to or after the Effective Date, that costs and expenses associated with liquidation would outweigh the benefits of maintaining the corporate existence of such Liquidating Debtors or entering into an Alternative Transaction.

The actions necessary to effect the Alternative Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Debtors, Reorganized Debtors, or Liquidating Debtors may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance or dissolution pursuant to applicable state or provincial law; and (iv) all other actions that the applicable Debtors, Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Alternative Transactions. If and to the extent necessary, any controlling organization or formation documents or agreements for the Reorganized Debtors or Liquidating Debtors shall be deemed amended to authorize the foregoing.

Subject to Articles 5, 6 and 7 hereof, the Reorganized Debtors shall continue such business, and the Liquidating Debtors shall maintain operations as provided above, without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtors and the Liquidating Debtors shall be authorized, without limitation, to use and dispose of the Estate Assets of the Reorganized Debtors and the Liquidating Debtors, as applicable, to acquire and dispose of other property, to insure the Estate Assets of the Reorganized Debtors and the Liquidating Debtors, to borrow money, to employ and compensate Agents, to reconcile and object to Claims, to enter into Alternative Transactions, and to make distributions to Creditors in accordance with the Plan.

As set forth in Section 7.8 hereof, the Debtors shall assume the US Airways Code-Share Agreement (as modified by the US Airways Tenth Amendment) and the United Code-Share Agreement pursuant to Section 365 of the Bankruptcy Code, effective as of the Effective Date. The US Airways Code-Share Agreement will be assumed as modified by the US Airways Tenth Amendment pursuant to a separate motion and presented to the Court for approval on November 18, 2010. The United Code-Share Agreement will be assumed pursuant to Section 7.8 of the Plan. As part of their ongoing businesses, the Reorganized Debtors shall continue to operate their fleet of aircraft, including those aircraft related to the US Airways Amended Code-Share Agreement (including the US Airways Tenth Amendment) and the United Code-Share Agreement.

**5.1.1**                                           **Intercompany Claims.** On the Effective Date, or as soon thereafter as is practicable, all Intercompany Claims will be

reinstated in full or in part or cancelled, discharged in full or in part or contributed, distributed or otherwise transferred between and among the Debtors in full or in part, in each case, to the extent determined appropriate by the Post-Effective Date Debtors.

## 5.2 Management.

### 5.2.1 Reorganized Mesa Air Group.

Reorganized Mesa Air Group shall be operated and governed in accordance with the Reorganized Mesa Charter Documents. The existing officers of Mesa Air Group shall remain in their existing positions. As set forth in Section 7.10 hereof, the Key Employment Agreements and the related guarantees thereof shall be deemed assumed, as amended, effective as of the Effective Date. The initial board of directors of Reorganized Mesa Air Group shall consist of a nine (9) members. The Committee shall select six (6) members and the Debtors shall select three (3) members. The initial board members of Reorganized Mesa Air Group will be identified in the Plan Supplement. The appointment of the initial board members of the Reorganized Debtors shall be deemed to be in compliance with any restrictions, if any, in the Code-Share Agreements and/or other key contracts of the Debtors and all applicable Federal regulations restricting the level of ownership/control in a United States air carrier by Non-U.S. Citizens. Each of the directors and officers of Reorganized Mesa Air Group shall serve in accordance with applicable non-bankruptcy law and the Reorganized Mesa Charter Documents, as the same may be amended from time to time. From and after the Effective Date, the directors and officers of Reorganized Mesa Air Group shall be selected and determined in accordance with the provisions of applicable law and the Reorganized Mesa Charter Documents.

### 5.2.2 Other Debtors.

The existing officers of the other Debtors (other than Mesa Air Group) shall remain in their existing positions. The initial directors of such other Debtors shall be selected and identified by the Debtors and the Committee in the Plan Supplement and subject to any related restrictions, if any, in the Code-Share Agreements and/or other key contracts of the Debtors and in compliance with all applicable Federal regulations restricting the level of ownership in a United States air carrier by Non-U.S. Citizens. Each of the directors and officers of the Debtors (other than Mesa Air Group) shall serve in accordance with applicable non-bankruptcy law and the Post-Effective Date Debtors' Charter Documents, as the same may be amended from time to time. From and after the Effective Date, the directors and officers of the Reorganized Debtors and the Liquidating Debtors shall be selected and determined in accordance with the provisions of applicable law and the Post-Effective Date Debtors' Charter Documents.

Upon the Effective Date, and without any further action by the shareholders, directors and/or officers of the Reorganized Debtors and the Liquidating Debtors, the Post-Effective Date Debtors' Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtors and the Liquidating Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law.

**5.2.3** **Management Notes and Management Equity Pool.** On or as soon as practicable after the Effective Date, Reorganized Mesa Air Group shall issue the Management Notes to selected members of the Debtors' management in place on and after the Effective Date, other than the amounts of Management Notes to be issued to Jonathan G. Ornstein and Michael J. Lotz, the Reorganized Board shall determine the manner in which the remaining Management Notes are allocated. Reorganized Mesa Air Group shall also issue shares of New Common Stock out of the Management Equity Pool to selected members of the Debtors' management in place on and after the Effective Date in amounts to be determined by the Reorganized Board, *provided, however,* that the minimum amount of New Common Stock to be issued to Jonathan G. Ornstein and Michael J. Lotz shall be 3.75% and 2.25%, respectively. Messrs. Ornstein's and Lotz's New Common Stock shall be subject to a vesting schedule to be negotiated with the Committee and disclosed in the Plan Supplement. The shares of New Common Stock issued pursuant to the Management Equity Pool shall be subject to the terms of the Shareholders Agreement.

**5.2.4** **Corporate Action.** On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated under the Plan with respect to each of the Reorganized Debtors and the Liquidating Debtors shall be deemed authorized and approved in all respects. Without limiting the foregoing, such actions may include: (i) the adoption and filing of the Reorganized Mesa Charter Documents and/or the Post-Effective Date Charter Documents; (ii) the election or appointment, as the case may be, of directors and officers for the Reorganized Debtors and the Liquidating Debtors; and (iii) the issuance of the Restructured Equity, and the New Notes.

All matters provided for herein involving the corporate structure of any Debtor, Reorganized Debtor, or Liquidating Debtor, or any corporate action required by any Debtor, Reorganized Debtor or Liquidating Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders, directors or officers of such Debtor, Reorganized Debtor, or Liquidating Debtor or by any other stakeholder.

On or after the Effective Date, the appropriate officers of each Reorganized Debtor and Liquidating Debtor and members of the board of directors (or equivalent body) of each Reorganized Debtor and Liquidating Debtor are authorized and directed to issue, execute, deliver, file and record any and all agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments contemplated by the Plan in the name of and on behalf of such Reorganized Debtor or Liquidating Debtor and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5.3** **Funding On and After the Effective Date.** Funding for the Reorganized Debtors and the Liquidating Debtor from and after the Effective Date shall be provided by cash on hand, proceeds from operations and disposition, if any, of assets, Post-Effective Date Financing, if necessary, and such other sources as the Reorganized Debtors and Liquidating Debtors determine appropriate.

**5.4** **No Substantive Consolidation.** Nothing in this Plan is intended to substantively consolidate the Estates of the Debtors, and each such entity shall maintain its separate existence and its separate and distinct Estate Assets.

**5.5** **Revesting of Estate Assets.** Upon the Effective Date, the Reorganized Debtors and Liquidating Debtors shall be vested with all right, title and interest in the applicable respective Estate Assets of the Debtors, and such property shall become the property of the Reorganized Debtors and Liquidating Debtors, as applicable, free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as set forth in this Plan. For the avoidance of doubt, each Reorganized Debtor and Liquidating Debtor shall be vested on the Effective Date with the particular Estate Assets belonging to that Debtor prior to the Effective Date, including any Interests in other Debtors.

**5.6** **Retained Claims and/or Defenses.** As additional consideration to General Unsecured Creditors, the Debtors waive the right to pursue Avoidance Actions, pursuant to Section 547 of the Bankruptcy Code. Unless any Causes of Action and Defenses are expressly waived, relinquished, released, compromised, or settled in the Plan , any Final Order, or the US Airways Tenth Amendment (including, without limitation, the Confirmation Order), the Debtors, the Reorganized Debtors, and the Liquidating Debtors expressly reserve all such Causes of Action and Defenses for later adjudication by the Reorganized Debtors and Liquidating Debtors, as applicable, including, but not limited to the any Causes of Action listed on **Exhibit C** hereto. The reservation set forth in this Section 5.6 shall include, without limitation, a reservation by the Debtors, the Reorganized Debtors, and the Liquidating Debtors of any Causes of Action and Defenses not specifically identified in the Plan or Disclosure Statement, or of which the Debtors and/or the Restructured Unsecured Equity Holders may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors and/or the Restructured Unsecured Equity Holders at this time or facts or circumstances that may change or be different from those that the Debtors and/or the Restructured Unsecured Equity Holders now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action and Defenses upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action and Defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or a Final Order. Following the Effective Date, the Reorganized Debtors and Liquidating Debtors may assert, compromise or dispose of any Causes of Action and Defenses without further notice to Creditors or authorization of the Bankruptcy Court. Notwithstanding the foregoing or anything to the contrary elsewhere in this Plan, nothing in this Plan or the Confirmation Order shall prejudice or affect (1) any rights of any Person to assert Claims, including Administrative Claims, against the Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates, or any transferee thereof, by way of offset, recoupment, or counterclaim to the extent permitted by applicable law; and/or (2) any defense to any Causes of Action and Defenses or any other claims asserted by the Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates, or any transferee thereof.

**5.7** **Issuance of Restructured Equity and New Notes; Shareholders Agreement.** On the Effective Date, the Reorganized Debtors and Liquidating Debtors shall be authorized and

directed to take any and all necessary and appropriate actions to issue and deliver the Restructured Equity and the New Notes in accordance with this Plan. The Restructured Equity shall be issued in the form of New Common Stock and New Warrants. The Restructured Unsecured Equity shall represent 80% of the ownership interests in Reorganized Mesa Air Group (after giving effect to the shares of New Common Stock issuable under the Management Equity Pool and ~~US Airways).~~ to US Airways). Any holder of five percent (5%) or more of the then issued and outstanding shares of New Common Stock (determined at the time such holder acquires such shares), whether such holder acquires such shares (i) as of the Effective Date, (ii) subsequent to the Effective Date as a result of the issuance of additional shares of New Common Stock on account of Allowed Claims, (iii) upon exercise of New Warrants issued as of the Effective Date, or (iv) upon the exercise of New Warrants issued subsequent to the Effective Date on account of Allowed Claim, such holder shall be required to enter into the Shareholders Agreement. The term of the Shareholders Agreement shall be the earlier of the exercise of 80% or more of the New Warrants issued under the Plan or five (5) years. The Shareholders Agreement shall require a holder to vote all shares of New Common Stock of the Company registered in their respective names or beneficially owned by them, and any transferee thereof, in accordance with a majority of the Board of Directors of Reorganized Mesa Air Group on such matters thereafter requiring or submitted for shareholder approval, *provided, however*, that such voting requirement shall only apply to those shares of New Common Stock that exceed such holder's Estimated Initial Pro Rata Share of Restructured Unsecured Equity. For purposes of example only, if a holder of an Allowed Claim that is entitled to receive shares of New Common Stock on the Effective Date equal ten percent (10%) of Restructured Unsecured Equity (i.e., 1,000,000 shares based on 10,000,000, shares reserved for issuance under the Plan) and on such date only 3,000,000 shares of New Common Stock are actually issued and outstanding, then such holder shall be required to vote 700,000 of the 1,000,000 shares held by such holder in accordance with the Shareholders Agreement and shall be free to vote the remaining 300,000 shares (i.e., 10% of the 3,000,000 shares issued and outstanding) in its sole discretion.

The terms of the New Notes shall be ~~set forth~~subject to the terms and conditions of the Plan and set forth in greater detail in the New Notes Indenture and related documents to be submitted as part of the Plan Supplement. Other than the principal amount, the terms of the New 8% Notes (Series A), the New 8% Notes (Series B), the Management Notes, and the US Airways Note shall be ~~substantially similar; *provided, however*, that (a) the Management Notes shall be subordinated to the New 8% Notes (Series A), the New 8% Notes (Series B) and the US Airways Note, and (b) the New 8% Notes (Series A) and the US Airways Notes shall be subject to priority prepayment upon the occurrence, if ever, of a Spirit Liquidity Event as set forth in the New Notes Indenture.~~identical except for principal amount and (a) the Management Notes shall be subordinated to the New 8% Notes (Series A), the New 8% Notes (Series B) and the US Airways Note, and (b) the New 8% Notes (Series A) and the US Airways Notes shall be subject to priority prepayment upon the occurrence, if ever, of a Spirit Liquidity Event as set forth herein (and as will be described in greater detail in the New Notes Indenture).

The Reorganized Mesa Charter shall include restrictions on transfers of the Restructured Equity (including shares issuable upon exercise of the New Warrants) (i) to Non-U.S. Citizens, (ii) that would result in Reorganized Mesa Air Group having ~~300~~500 or greater holders of record and therefore becoming subject to the reporting obligations under the Securities Exchange Act of 1934, as amended, (iii) that would result in a change in control of

Reorganized Mesa Air Group under its then existing Code-Share Agreements, and (iv) that would result in the loss of Reorganized Mesa Air Group's net operating loss; *provided, however,* in the event that the Reorganized Board determines to list Reorganized Mesa Air Group on a public exchange or the Reorganized Debtors otherwise become subject to the reporting obligations under the Securities Exchange Act of 1934, then the restrictions of subsection (ii) shall not apply.

The New Common Stock when issued or distributed as provided in the Plan, will be duly authorized, validly issued and, if applicable, fully paid and nonassessable.  Each distribution and issuance of such New Common Stock shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance.

The Debtors (and each of their respective affiliates, agents, directors, officers, members, managers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable law with regard to the distribution of the New Common Stock and the New Warrants under the Plan (including, without limitation, any awards made under the Management Equity Pool), and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Upon entry of the Confirmation Order, all provisions of the Plan addressing distribution of the New Common Stock and New Warrants shall be deemed necessary and proper.

**5.8** **Securities Law and Air Carrier Regulatory Matters.** It is integral and essential to the Plan that (i) the issuance of the Restructured Equity pursuant to this Plan shall be exempt from registration under the Securities Act, pursuant to Section 1145 of the Bankruptcy Code and from registration under state securities laws, and (ii) the Debtors shall be in compliance with any and all applicable Federal statutes and regulations restricting the level of ownership of a United States air carrier by Non-U.S. Citizens. Any Restructured Equity issued to an "affiliate" of the Debtors within the meaning of the Securities Act or any Person the Debtors reasonably determined to be an "underwriter" within the meaning of the Securities Act, and which does not agree to resell such securities only in "ordinary trading transactions," within the meaning of Section 1145(b)(1) of the Bankruptcy Code, shall be subject to such transfer restrictions and bear such legends as shall be appropriate to ensure compliance with the Securities Act. In addition, under Section 1145 of the Bankruptcy Code any securities contemplated by the Plan, including without limitation, the shares of New Common Stock, will be freely tradable by the recipients thereof, subject to (i) the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments; and (iii) applicable regulatory approval. Further, the New Common Stock and New Warrants shall be subject to certain restrictions and limitations as set forth in the Reorganized Mesa Charter Documents and New Notes Indenture, respectively, to ensure compliance with applicable Federal regulations relating to air carriers. Nothing in this Plan is intended to preclude the Securities and Exchange Commission or any other governmental agency from exercising its police and regulatory powers relating to the Debtors or any other entity.

So long as (i) any New 8% Notes (Series A) are outstanding (unless defeased in a legal defeasance), (ii) any New 8% Notes (Series B) are outstanding (unless defeased in a legal defeasance), (iii) the US Airways Note is outstanding (unless defeased in a legal defeasance), or (iv) any shares of New Common Stock are outstanding, Reorganized Mesa Air Group will have its annual financial statements audited by a nationally recognized firm of independent accountants and will provide interim financial statements to the holders of New Notes, New Common Stock, and New Warrants within 120 days after the end of each fiscal year of Reorganized Mesa Air Group and within 60 days after the end of each of the first three fiscal quarters of each fiscal year of Reorganized Mesa Air Group, quarterly and annual financial statements prepared in accordance with GAAP that would be required to be contained in a filing with the SEC Forms 10-Q and 10-K if Reorganized Mesa Air Group were required to file those Forms, including a "Management's Discussion and Analysis of Financial Condition and Results of Operations" and, with respect to the annual information only, a report on the annual financial statements by Reorganized Mesa Air Group's certified independent accountants. To the extent that Reorganized Mesa Air Group does not file such information with the SEC, Reorganized Mesa Air Group will distribute (or cause the Trustee to distribute in the case of the New Notes) such information and such reports electronically to (a) any Holder of the New Notes, or shares of New Common Stock or New Warrants, (b) any beneficial owner of New Notes, New Common Stock, or New Warrants who provides its email address to Reorganized Mesa Air Group and certifies that it is a beneficial owner thereof, (c) to any prospective investor who provides its email address to Reorganized Mesa Air Group or (d) any securities

analyst who provides its email address to Reorganized Mesa Air Group and certifies that it is a securities analyst. US Airways shall be entitled to such other information as is required to be distributed under the terms of the US Airways Investor Rights Agreement.

**5.9** **Restrictions on Resale of Securities to Protect Net Operating Losses.** To avoid adverse federal income tax consequences resulting from an ownership change (as defined in Section 382 of the Tax Code), the articles of incorporation of Reorganized Mesa Air Group, which shall be subject to approval by the Committee and US Airways, shall restrict the transfer of (i) Restructured Equity and (ii) Claims prior to their Allowance without the consent of the Reorganized Board for ~~two~~three (~~2~~3) years after the Effective Date, ~~subject to extension for up to 3 additional years if the Reorganized Board determines in its reasonable discretion that such restrictions are necessary to preserve the value of the Reorganized Debtors' NOLs,~~ such that (a) no holder of ~~5~~5.0% or more of the equity of Reorganized Mesa Air Group may transfer any ~~securities~~Restructured Equity, (b) no transfer will be permitted if it would cause the transferee to hold 4.75% or more of the ~~equity~~Restructured Equity of Reorganized Mesa Air Group ~~and~~(as determined in accordance with Section 382 of the Tax Code), (c) no transfer will be permitted if it would increase the percentage ~~equity~~Restructured Equity ownership of any person who already holds 4.75% or more of the ~~equity~~Restructured Equity of Reorganized Mesa Air Group (as determined in accordance with Section 382 of the Tax Code), and (d) no transfer of a Claim will be permitted if it would cause the transferee to hold 4.75% or more of Restructured Equity upon the Allowance of such Claim (as determined in accordance with Section 382 of the Tax Code), except as may be otherwise agreed to by Reorganized Board~~.~~ if it determines in its reasonable discretion that such restrictions are not necessary to preserve the value of the Reorganized Debtors' NOLs.

### 5.10    Miscellaneous.

**5.10.1**                                                    **Cancellation of Existing Notes, Securities and Agreements.** Except to the extent reinstated or unimpaired under the Plan, as of the Effective Date and subject to the surrender requirements (if applicable) set forth in Section 6.11 hereof, the Notes and the Indentures shall be cancelled and deemed null and void and of no further force or effect without any further action on the part of the Bankruptcy Court, the Debtors, or any other person; *provided, however,* that the cancellation of the Indentures (i) shall not impair the rights of holders of the Notes under the Plan; (ii) shall not impair the rights of the Indenture Trustees under the Indentures and the Plan, including the right of the Indenture Trustees to enforce the Indenture Trustees' liens under the Indentures; and (iii) shall not impair the Debtors' indemnification obligations under the Indentures.

**5.10.2**                                                    **Tax Identification Numbers/Citizenship Status** The Post-Effective Date Debtors may require any Creditors to furnish their social security number, employer or taxpayer identification number, or a Citizenship Declaration and the Post-Effective Date Debtors may condition any distribution upon receipt of such identification number and supporting documentation (including, without limitation, an IRS Form W-9 in the case of a U.S. Person or other appropriate form in the case of a Foreign Person) or a certification of citizenship status.

**5.10.3**                                                                 **Committee.** On the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Chapter 11 Cases, except that the Committee shall continue in existence and have standing and capacity to prepare and prosecute (i) applications or objections for the payment of fees and reimbursement of expenses incurred by the Committee or any of the estates' Professionals, and (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of Orders entered in the Chapter 11 Cases.

On the Effective Date, there shall be formed a Post-Effective Date Committee with its duties limited to the oversight of certain actions of the Reorganized Debtors, which actions shall remain the sole responsibility of the Reorganized Debtors, including: (a) overseeing the General Unsecured Claims' reconciliation and settlement process conducted by or on behalf of the Reorganized Debtors pursuant to the Settlement Procedures Order or Aircraft Rejection Damages Claim Settlement Procedures, as applicable; (b) overseeing (i) the establishment and (ii) the maintenance of the Distribution Reserve; (c) overseeing the distributions to the holders of General Unsecured Claims under this Plan; (d) appearing before and being heard by the Bankruptcy Court and other Courts of competent jurisdiction in connection with the above duties; and (e) such other matters as may be agreed upon between the Reorganized Debtors and the Post-Effective Date Committee or specified in this Plan. The Post-Effective Date Committee shall consist of not less than three nor more than five members to be appointed by the Creditors' Committee and may adopt by-laws governing its conduct. For so long as the claims reconciliation process shall continue, the Reorganized Debtors shall make regular reports to the Post-Effective Date Committee as and when the Reorganized Debtors and the Post-Effective Date Committee may reasonably agree upon. The Post-Effective Date Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties as limited above, including any professionals retained in these Reorganization Cases, and the Reorganized Debtors shall pay the reasonable costs and expenses of the Post-Effective Date Committee, including reasonable professional fees, in the ordinary course without further order of the Court. In the event that, on the Effective Date, an objection to any Claim by the Creditors Committee is pending, the Post-Effective Date Committee shall have the right to continue prosecution of such objection.

**5.10.4**                                                                 **Final Decree.** At any time following the Effective Date, the Post-Effective Date Debtors shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Cases pursuant to Section 350 of the Bankruptcy Code.

# ARTICLE 6
# PROVISIONS GOVERNING DISTRIBUTIONS

**6.1**   **Distributions by the Debtors.** The Debtors shall administer Claims and make distributions in respect of Allowed Claims; *provided, however*, the Debtors may elect to designate and/or retain a third party to serve as disbursing agent without the need for any further order of the Bankruptcy Court.

**6.2     Distributions on Account of Claims Allowed as of the Effective Date.**  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims that become Allowed prior to the Effective Date shall be made by the Debtors on or as soon as reasonably practicable after the Effective Date.

**6.3     Estimation.**  In order to establish reserves under this Plan and avoid undue delay in the administration of these Chapter 11 Cases, the Debtors, the Reorganized Debtors, and the Liquidating Debtors, in consultation with the Committee or the Post-Effective Date Committee, shall have the right to seek an order of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, estimating the amount of any Claim.

**6.4     Distributions on Account of Claims Allowed After the Effective Date.**

**6.4.1                                                Distribution Record Date.**  On the Distribution Record Date, the claims register shall be closed and any transfer on any Claim therein shall be prohibited.  The Debtors, any party designated by the Debtors, and the Indenture Trustees shall be authorized and entitled to recognize and deal for all purpose under the Plan with only those record holders stated on the claims register or other similar ledger regarding the Notes, as applicable, as of the close of business on the Distribution Record Date.

**6.4.2                                                Distributions on Account of Disputed Claims and Estimated Claims.**  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed after the Effective Date shall be made by the Post-Effective Date Debtors, in consultation with the Post-Effective Date Committee, at such periodic intervals as such entities determine to be reasonably prudent.

**6.4.3                                                Distributions of New Common Stock and New Warrants.**  The Debtors will distribute (i) New Common Stock to the holders of Allowed Class 3 Claims and Allowed Class 5 Claims that are U.S. Citizens and (ii) New Warrants to all holders of Allowed Class 3 Claims or Allowed Class 5 Claims that are Non-U.S. Citizens.  To effectuate distributions in accordance with the federal law restrictions and the Plan, the Debtors will send a Citizenship Declaration to the holders of Class 3 Claims and Class 5 Claims that will require them to provide and verify the following information:  (i) name of Creditor, (ii) amount of Allowed Claim, and (iii) whether such person or entity is a U.S. Citizen or Non-U.S. Citizen as defined by title 49 of the United States Code.  If any holder of a Class 3 Claim or Class 5 Claim does not return a properly completed Citizenship Declaration prior to the deadline set forth therein, the holder of such Class 3 Claim or Class 5 Claim will be deemed to be a Non-U.S. Citizen and will receive New Warrants on account of such Claims.

**6.4.4                                                Distributions on account of Noteholder Claims.**

(a)                                Distributions on account of Noteholder Claims.  Distributions on account of 2012 Noteholder Claims, 2023 Noteholder Claims, and 2024 Noteholder Claims shall

be made to the applicable Indenture Trustee for the 2012 Notes, 2023 Notes, and 2024 Notes, respectively, to be applied in accordance with the applicable Indentures.

(b)     Indenture Trustee Fees and Expenses.  The fair and reasonable fees and expenses of the Indenture Trustee and its professionals and provided for under each Indenture ,will be paid by the Debtors pursuant to the Confirmation Order on the later of the Effective Date or thirty (30) days following receipt of detailed documentation of such fees and expenses without the need for the Indenture Trustee to file an application for allowance.  Upon payment of the fees and expense of the Indenture Trustee and its professionals in full, the Indenture Trustee will be deemed to have released its liens, including its charging lien against distributions to Noteholders, securing payment of its fees and expenses for all fees and expenses payable through the Effective Date.

**6.4.5**                                             **No Distributions Pending Allowance.** Notwithstanding anything herein to the contrary:  (a) no distribution shall be made with respect to any Disputed Claim or Estimated Claim until such Claim becomes an Allowed Claim, and (b) unless determined otherwise by the Post-Effective Date Debtors, in consultation with the Post-Effective Date Committee, as applicable, no distribution shall be made to any Person that holds both an Allowed Claim and either a Disputed Claim or an Estimated Claims and Estimated Claims until such Person's Disputed Claims and Estimated Claims have been resolved by settlement or Final Order.

**6.4.6**                                             **Objection Deadline.**  The Post-Effective Date Debtors shall file all objections to Disputed Claims, and shall file all motions to estimate Claims under Section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline.

**6.4.7**                                 **Disputed and Estimated Claims Reserve.**

(a)     Cash Reserve.  On and after the Effective Date, the Post-Effective Date Debtors shall maintain in reserve such Cash as they estimate to be necessary to satisfy any Cash distributions required to be made to Creditors (other than Creditors in Class 3 and Class 5) under the Plan for Class 1, Class 2 and Class 4 Disputed Claims and Estimated Claims against the Debtors.

(b)     Restructured Unsecured Equity / New 8% Notes (Series A) and New 8% Notes (Series B) Reserves.  On or as soon as practicable after the Effective Date, the Post-Effective Date Debtors shall distribute to those holders of Allowed Claims that are entitled to receive Restructured Unsecured Equity, New 8% Notes (Series A) and/or New 8% Notes (Series B) on the Effective Date a distribution of each such holder's Estimated Initial Pro Rata Share of Restructured Unsecured Equity and Estimated Initial Pro Rata Share of New 8% Notes, respectively.  With respect to any Disputed Claim or Estimated Claim that becomes an Allowed Claim entitled to receive Restructured Unsecured Equity, New 8% Notes (Series A) and/or New 8% Notes (Series B) after the Effective Date, on the next Distribution Date, as applicable, following the date on which such Disputed Claim or Estimated Claim becomes an Allowed Claim, the Post-Effective Date Debtors shall distribute to the holder of such Allowed

Claim its Estimated Additional Pro Rata Share of Restructured Unsecured Equity and/or its Estimated Additional Pro Rata Share of New 8% Notes (Series A) and/or New 8% Notes (Series B), as applicable. On each Interim Distribution Date, the Post-Effective Date Debtors shall distribute to the holders of Restructured Unsecured Equity a True-Up Equity Distribution and/or to the holders of New 8% Notes (Series A) and/or New 8% Notes (Series B) a True-Up Note Distribution, as applicable. After all Disputed Claims and Estimated Claims have become Allowed Claims or otherwise been disallowed, on the Final Distribution Date, the Post-Effective Date Debtors shall make a final distribution of Restructured Unsecured Equity, New 8% Notes (Series A) and/or New 8% Notes (Series B) such that (i) each holder of Restructured Unsecured Equity (including any holder of an Allowed Claim who first becomes entitled to receive Restructured Unsecured Equity on such distribution date) has received its Actual Pro Rata Share of Restructured Unsecured Equity and (ii) each holder of New 8% Notes (Series A) and/or New 8% Notes (Series B) (including any holder of an Allowed Claim who first becomes entitled to receive New 8% Notes (Series A) and/or New 8% Notes (Series B) on such distribution date) has received its Actual Pro Rata Share of such Notes. The Reorganized Mesa Charter Documents shall be structured in a manner that authorizes the issuance of and/or reserve a sufficient number of Restructured Equity, to permit the distributions set forth above. For the avoidance of doubt, distributions of New 8% Notes (Series A) and/or New 8% Notes (Series B) to any Person holding a Disputed Claim or Estimated Claim against the Debtors that becomes an Allowed Claim after the Effective Date shall be made together with any and all interest and amounts accrued under the New 8% Notes (Series A) and/or New 8% Notes (Series B) from the Effective Date until the date of payment thereof.

**6.4.8** **Settling Disputed Claims.** The Post-Effective Debtors shall be authorized to settle, or withdraw any objections to any Disputed Claims following the Effective Date without further order of the Court, subject to the consent of the Post-Effective Date Committee consistent with the terms of the Settlement Procedures Order or the Aircraft Rejection Damages Claim Settlement Procedures, as applicable.

**6.5** **Distributions in Cash.** The Post-Effective Date Debtors shall make any required Cash payments to the holders of Allowed Claims: (X) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Post-Effective Date Debtors in their sole discretion, or by wire transfer from a domestic bank, at the applicable foregoing entity's option, and (Y) by first-class mail (or by other equivalent or superior means as determined by the Post-Effective Date Debtors).

**6.6** **Undeliverable Distributions.** If any distribution under the Plan is returned as undeliverable, no further distributions to such Person shall be made unless and until the Post-Effective Date Debtors or other appropriate disbursing agent is notified in writing of such holder's then-current address, at which time the undelivered distributions shall be made to such holder without interest or dividends. Undeliverable distributions shall be returned to the Post-Effective Date Debtors until such distributions are claimed.

**6.7** **Unclaimed Distributions.** Any entity that fails to claim any Cash within one hundred twenty (120) days from the date upon which a distribution of Cash is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Post-Effective Date Debtors shall be authorized to cancel any distribution that is not timely claimed. Pursuant to Section 347(b) of

the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Post-Effective Debtors free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditors shall have no claim whatsoever against the Debtors or the Post-Effective Date Debtors.

6.8     **Setoff.** Nothing contained in this Plan shall constitute a waiver or release by the Debtors of any right of setoff or recoupment the Debtors may have against any Creditor. To the extent permitted by applicable law, the Post-Effective Date Debtors may setoff or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors may have against the holder of such Claim or Interest. Notwithstanding the foregoing or anything to the contrary elsewhere in the Plan, nothing in this Plan or the Confirmation Order shall prejudice ~~or~~, affect, or limit (1) any rights of any Person to assert or effectuate rights of setoff under section 553 of the Bankruptcy Code or otherwise assert Claims, including Administrative Claims, against the Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates, or any transferee thereof, by way of offset, recoupment, or counterclaim to the extent permitted by applicable law; ~~and/~~or (2) any defense to any Causes of Action and Defenses or any other claims asserted by the Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates, or any transferee thereof.

6.9     **Taxes.** Pursuant to Section 346(f) of the Bankruptcy Code, the Post-Effective Date Debtors shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. The Post-Effective Date Debtors shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

6.10    **De Minimis Distributions.** If any interim distribution under the Plan to the holder of an Allowed Claim would be less than $100.00 or a fractional number of New Common Stock or New Warrants, the Post-Effective Date Debtors may withhold such distribution until the next Interim Distribution Date or the final distribution, as applicable, is made to such holder. If any final distribution under the Plan to the holder of an Allowed Claim would be less than $25.00, the Post-Effective Debtors may cancel such distribution. Any unclaimed distributions pursuant to this Section 6.10 shall be treated as unclaimed property under Section 6.7 of the Plan.

6.11    **Surrender of Notes and Other Instruments.** Unless waived by the Debtors, as a condition to receiving any distribution pursuant to the Plan, each Person holding an instrument evidencing an existing Claim against a Debtor, including, without limitation, any Note, in which case the applicable Note shall be surrendered to the applicable Indenture Trustee, or in the event such Note is held in the name of, or by a nominee of, the Depository Trust Company, the Debtors shall follow the applicable procedures of the Depository Trust Company for book-

entry transfer of the applicable Notes to applicable Indenture Trustee, must surrender such instrument or Note or an affidavit of loss and indemnity satisfactory to the Post-Effective Date Debtors or other applicable distribution agent; *provided that*, in the event such Person fails to surrender such instrument within one year of the Effective Date, that Person shall be deemed to have forfeited his, her or its right to receive any distribution under the Plan on account of the subject Claim and such Person shall be forever barred from asserting any such Claim against the Debtors or the Post-Effective Date Debtors or their property; and provided further that, in such event as described above, any Restructured Unsecured Equity, together with any dividends or interest that may be attributable thereto, held for distribution on account of such Claim shall revert to Reorganized Mesa Air Group, notwithstanding any federal or state escheat laws to the contrary. Notwithstanding any of the foregoing, the provisions in the operative agreements and documents governing the Notes relating to the surrender and cancellation of such Notes shall continue to bind and govern such matters in the case of the Notes as of the Effective Date.

**6.12    Fractional Shares.** No fractional shares or number of the Restructured Unsecured Equity shall be issued or distributed under the Plan. The actual distribution of shares or number of the Restructured Unsecured Equity shall be rounded to the next higher or lower whole number as follows: (i) fractions less than one-half (½) shall be rounded to the next lower whole number and (ii) fractions equal to or greater than one-half (½) shall be rounded to the next higher whole number. The total amount of shares or number of Restructured Unsecured Equity to be distributed hereunder shall be adjusted as necessary to account for such rounding. No consideration shall be provided in lieu of fractional shares or numbers that are rounded down.

## ARTICLE 7
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES
## AND OTHER AGREEMENT/PROGRAM MATTERS

**7.1    Assumption.** On the Effective Date, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Post-Effective Date Debtors will assume the executory contracts and unexpired leases of the Debtors that: (a) have been expressly identified in the Plan Supplement for assumption (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Debtors prior to the Effective Date), and (b) are specified in this Article 7 of the Plan. Each executory contract and unexpired lease listed in the Plan Supplement shall include any modifications, amendments and supplements to such agreement, whether or not listed in the Plan Supplement.

**7.2    Rejection.** Except as set forth in this Article 7 of the Plan, on the Effective Date, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Debtors will reject any and all executory contracts and unexpired leases of the Debtors otherwise not identified in Section 7.1, including, without limitation, those executory contracts and unexpired leases expressly identified for rejection in the Plan Supplement (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Debtors prior to the Effective Date). Any Person asserting any Claim for damages arising from the rejection of an executory contract or unexpired lease of the Debtors under this Plan shall file such Claim on or before the Rejection Claim Bar Date, or be forever barred from: (a) asserting such Claim against the Debtors, the

Reorganized Debtors, the Liquidating Debtors, or the Estate Assets, and (b) sharing in any distribution under the Plan.

**7.3** **Assumption Obligations.** The Post-Effective Date Debtors shall satisfy all Assumption Obligations, if any, by making a Cash payment in the manner provided in Section 2.2 of the Plan or as otherwise permitted by Section 365(b)(1)(B) of the Bankruptcy Code, equal to the amount specified in the Plan Supplement, <u>unless</u> an objection to such proposed amount is filed with the Bankruptcy Court and served on counsel to the Debtors on or prior to the date set by the Bankruptcy Court for filing objections to Confirmation of the Plan and the Bankruptcy Court, after notice and hearing, determines that the applicable Debtor is obligated to pay a different amount under Section 365 of the Bankruptcy Code, <u>in which case</u>, the applicable Debtor shall have the right to remove such executory contract or lease from the list of assumed contracts pursuant to Section 7.7 of the Plan, or, if following the Effective Date, file a motion within ten (10) days after such determination to seek an order of the Bankruptcy Court rejecting such executory contract or unexpired lease. Any Person that fails to object to the Assumption Obligation specified in the Plan Supplement on or prior to the date set by the Bankruptcy Court for filing objections to Confirmation of the Plan and/or other subsequent date(s) set by the Bankruptcy Court, as applicable, shall be forever barred from: (a) asserting any other, additional or different amount on account of such obligation against the Debtors, the Reorganized Debtors, the Liquidating Debtors, or the Estate Assets, and (b) sharing in any other, additional or different distribution under the Plan on account of such obligation. Assumption Obligations under the Collective Bargaining Agreements will be governed by the provisions of Section 7.9 of the Plan.

> **7.4** **Rejection.** Except as set forth in this Article 7 of the Plan, on the Effective Date, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Debtors will reject any and all executory contracts and unexpired leases of the Debtors otherwise not identified in Section 7.1, including, without limitation, those executory contracts and unexpired leases expressly identified for rejection in the Plan Supplement (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Debtors prior to the Effective Date). Any Person asserting any Claim for damages arising from the rejection of an executory contract or unexpired lease of the Debtors under this Plan shall file such Claim on or before the Rejection Claim Bar Date, or be forever barred from: (a) asserting such Claim against the Debtors, the Reorganized Debtors, the Liquidating Debtors, or the Estate Assets, and (b) sharing in any distribution under the Plan.

**7.4** **7.5 Effect of Confirmation Order.** The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving, as of the Effective Date, the assumption or rejection by the Post-Effective Date Debtors pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of all executory contracts and unexpired leases identified under this Article 7 of the Plan. The contracts and leases identified in this Plan will be assumed or rejected, respectively, only to the extent that such contracts or leases constitute pre-petition executory contracts or unexpired leases of the Debtors, and the identification of such agreements under this Plan does not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder. This Plan does not

affect any executory contracts or unexpired leases that: (a) have been assumed, rejected or terminated prior to the Confirmation Date, or (b) are the subject of a pending motion to assume, reject or terminate as of the Confirmation Date.

**7.5** ~~7.6~~ **Post-Petition Agreements.** Unless inconsistent with the provisions of the Plan, all contracts, leases and other agreements entered into or restated by the Debtors on or after the Petition Date, or previously assumed by any of the Debtors prior to the Confirmation Date (or the subject of a pending motion to assume by either of the Debtors as of the Confirmation Date that is granted by the Bankruptcy Court), which have not expired or been terminated in accordance with their terms, shall be performed by the Debtors in the ordinary course of business and shall survive and remain in full force and effect following the Effective Date.

**7.6** ~~7.7~~ **Modifications to Plan Supplement.** The Debtors shall have the right, any time prior to the Effective Date, to make additions, deletions, modifications and/or other revisions to the identification of executory contracts and leases to be assumed or rejected by the Debtors; *provided, however*, that any party to such contract or lease or affected by such action shall be provided notice of such action and an opportunity to object, and if any objection is filed, such action will not be effective until such objection is resolved by the parties or by order of the Bankruptcy Court.

**7.7** ~~7.8~~ **Code-Share Agreements.** The Code-Share Agreements will be assumed either by separate motions or as provided in this Section. Upon assumption, the Code-Share Agreements shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court previously entered with respect to such Code-Share Agreement. Nothing in this Plan or the Confirmation Order shall be deemed a violation of such Code-Share Agreements.

**7.7.1** ~~7.8.1~~ **US Airways Code-Share Agreement.** Notwithstanding anything in this Plan to the contrary, the Debtors will assume the US Airways Code-Share Agreement as modified by the US Airways Tenth Amendment (which as of November 1, 2010 is being finalized) pursuant to a separate motion to be presented to the Court for approval in advance of confirmation of the Plan, and such assumption shall be subject to the conditions set forth in the US Airways Tenth Amendment. The assumption of the US Airways Code-Share Agreement as modified by the US Airways Tenth Amendment will be effective as of the Effective Date. In consideration for the US Airways Tenth Amendment, US Airways shall receive (i) 10% of the New Common Stock of the Reorganized Mesa Air Group on a fully diluted basis, subject the Shareholders Agreement, and (ii) the US Airways Note.

**7.7.2** ~~7.8.2~~ **United Code-Share Agreement.** Notwithstanding anything in this Plan to the contrary, the United Code-Share Agreement shall be deemed assumed effective as of the Effective Date.

**7.8** ~~7.9~~ **CRJ 700 Aircraft Leases and CRJ 900 Aircraft Leases.** The CRJ 700 Aircraft Leases and CRJ 900 Aircraft Leases will be assumed as provided under Section 7 of the Plan. Upon assumption, the CRJ 700 Aircraft Leases and CRJ 900 Aircraft Leases shall vest in and be fully

enforceable by the applicable Reorganized Debtor in accordance with the applicable terms of the foregoing leases.

**7.9** ~~7.10~~ **Collective Bargaining Agreements.** Notwithstanding anything in this Plan to the contrary, each Collective Bargaining Agreement shall be deemed assumed effective as of the Effective Date. Each Collective Bargaining Agreement assumed pursuant to this Section shall vest in and be fully enforceable by the applicable Post-Effective Date Debtor in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court previously entered with respect to such Collective Bargaining Agreement. The Assumption Obligations for each of the Collective Bargaining Agreements shall be satisfied by the Reorganized Debtors paying in the ordinary course all obligations arising under the Collective Bargaining Agreements, including grievance settlements and arbitration awards~~;~~ ~~*provided, however,* that any payments on account of the Settlement Agreement and Mutual Releases~~ unless otherwise agreed between the Debtors and the ~~ALPA, dated May 2010 shall be limited to distributions provided under the Plan~~ counterparty to the Collective Bargaining Agreement.

**7.10** ~~7.11~~ **Key Employment Agreements.** Notwithstanding anything in this Plan to the contrary, each Key Employment Agreement shall be deemed assumed along with the guarantees thereof by the other Reorganized Debtors, each as modified pursuant to terms agreed upon between the Debtor, the Committee and the affected employee, effective as of the Effective Date. The guarantee of the Key Employment Agreements by Nilchii shall be subordinate to the payment of the New 8% Notes (Series A), US Airways Notes, New 8% Notes (Series B), and Management Notes. The prepetition amounts in the Deferred Compensation Plan Accounts shall remain in place for the benefit of the employees for which such accounts were established. As a result of such assumption, the beneficiaries of such Key Employment Agreements will be paid certain incentive payments related to the postpetition period on the Effective Date as approved by the Committee. All other prepetition contingent claims (*i.e.*, those arising from the modification) of the officers that are parties to such agreements shall be deemed satisfied to the extent not satisfied by the Management Equity Pool. For certain key executives without employment agreements, the Debtors shall be authorized to pay further incentive payments on the Effective Date if and to the extent approved by the Committee. Each Key Employment Agreement and the guarantees thereof shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court previously entered with respect to such Key Employment Agreement.

**7.11** ~~7.12~~ **ACE Insurance Program.** Notwithstanding anything to the contrary in the Plan or Confirmation Order (including, without limitation, any other provision that (i) purports to be preemptory or supervening or grants an injunction or release or (ii) provides for an Administrative Claim Bar Date or requires a creditor to file an objection to proposed Assumption Obligations), on the Effective Date (a) the ACE Insurance Program and the Debtors' obligations thereunder shall be deemed and treated as executory contracts and assumed under the Plan by the Debtors pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and shall continue as obligations of the Reorganized Debtors (b) the ACE Companies' claims under the ACE Insurance Program whether arising prior to the Petition Date, during the Chapter 11 Cases, or after the Effective Date (i) shall continue to be secured

by any and all collateral and/or security provided by the Debtors in accordance with the terms and conditions of the ACE Insurance Program, (ii) shall be paid by and enforceable against the Reorganized Debtors in the ordinary course of business after the Effective Date pursuant to and in accordance with the terms and conditions of the ACE Insurance Program, (iii) shall not be discharged, impaired or released by the Plan or Confirmation Order, and (iv) shall be subject to all of the Debtors', the Reorganized Debtors' and the ACE Companies' rights, claims, defenses and remedies under the ACE Insurance Program and applicable non-bankruptcy law; (c) nothing in the Plan or Confirmation Order shall be construed as, or is, a determination as to coverage under the ACE Insurance Program and all rights of the Debtors, Reorganized Debtors, and the ACE Companies shall be preserved to seek or contest such coverage, as applicable; and (d) nothing in the Plan or the Confirmation Order in any way: (i) precludes or limits the rights of the ACE Companies, the Debtors, or the Reorganized Debtors to contest and/or litigate with any party, including, without limitation, the Debtors, Reorganized Debtors, or the ACE Companies, as applicable, the existence, primacy and/or scope of available coverage under any alleged applicable policy under the ACE Insurance Program; (ii) alters the Debtors', Reorganized Debtors', and the ACE Companies' rights and obligations under the ACE Insurance Program or modifies the coverage provided thereunder; or (iii) alters the rights and obligations of the Debtors and the Reorganized Debtors under the ACE Insurance Program, including, without limitation, any duty to defend, at their own expense, against claims asserted under the ACE Insurance Program.

7.12    7.13 **Debtors' Indemnification Obligations.** Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify past and current directors, officers, employees and/or other Agents with respect to present and future actions, suits and proceedings against the Debtors or such directors, officers, employees and/or other Agents, based upon any act or omission by such individuals, shall not be discharged or impaired by confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan and shall continue as obligations of the Post-Effective Date Debtors.

7.13    7.14 **Post-Petition Aircraft Agreements.** Notwithstanding anything in this Plan to the contrary, subject to the Debtors' right to terminate or reject any Post-Petition Aircraft Agreement pursuant to the terms of such Post-Petition Aircraft Agreement: (i) each Post-Petition Aircraft Agreement shall remain in place after the Effective Date, (ii) the Post-Effective Date Debtors shall continue to honor each such agreement according to its terms.

7.14    7.15 **Customer Programs.** Except as otherwise provided in the Plan, the Debtors and the Post-Effective Date Debtors, in their sole and absolute discretion, may honor, in the ordinary course of business, any and all of the Debtors' customer and loyalty programs, corporate incentive programs, travel credit programs, and similar and other customer-related programs, as such programs may be amended from time to time.

## ARTICLE 8
## CONDITIONS PRECEDENT

8.1    **Conditions to Confirmation.** The following are conditions precedent to confirmation of this Plan:

(a)     The Bankruptcy Court shall have entered a Final Order approving a Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtors; and

(b)     The Confirmation Order shall be in a form and substance acceptable to the Debtors and reasonably acceptable to the Committee.

**8.2     Conditions to Effectiveness.**  The following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Date shall have occurred;

(b)     The Confirmation Order shall be a Final Order;

(c)     No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, if made, remains pending;

(d)     The Debtors (in consultation with the Committee) shall have determined that all Disputed Claims and Estimated Claims have been sufficiently resolved or estimated so as to establish the Distribution Reserve;

(e)     All actions, documents and agreements necessary to implement the Plan shall have been effected or executed as determined by the Debtors in their sole and absolute discretion; and

(f)     The Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion or other documents that may be necessary to implement this Plan or that is required by any law, regulation or order.

**8.3     Waiver of Conditions.**  Conditions to Confirmation and the Effective Date may be waived, in whole or in part, by the Debtors at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

# ARTICLE 9
# EFFECTS OF CONFIRMATION

9.1    **Binding Effect.**  The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in the Debtors, the Reorganized Debtors, the Liquidating Debtors, and the Estate Assets.  The distributions made pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of the Allowed Claims on account of which such distributions are made.  Confirmation of the Plan shall bind and govern the acts of the Post-Effective Date Debtors and all holders of all Claims against, and Interests in the Debtors, whether or not: (i) a proof of Claim or proof of Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or Interest has accepted the Plan.

9.2    **Property Revests Free and Clear.**  Upon the Effective Date, title to all remaining Estate Assets of the Debtors shall vest in the Post-Effective Date Debtors for the purposes contemplated under the Plan and shall no longer constitute property of the Debtors' Estates.  Except as otherwise provided in the Plan, upon the Effective Date, all Estate Assets shall be free and clear of all Claims and Interests, including Liens, charges or other encumbrances of Creditors of the Debtors; *provided, however,* nothing contained herein will affect the obligations of the Reorganized Debtors under a Post-Petition Aircraft Agreement or the validity or priority of any lien granted pursuant to a Post-Petition Aircraft Agreement.

**9.3     Releases.**

**9.3.1**                                                    **Release by the Debtors.**  As of the Effective Date, the Debtors, their Estates, the Reorganized Debtors and the Liquidating Debtors release all of their respective Agents from any and all Causes of Action and Defenses (other than the rights, if any, of the Debtors, the Reorganized Debtors or the Liquidating Debtors to enforce applicable post-petition agreements (including, without limitation, any settlement agreements), any order entered in the Chapter 11 Cases, the Plan and any agreements, instruments or other documents delivered thereunder, and the Plan Supplement) held, assertable on behalf of or derivative from the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, and/or the business or contractual arrangements between any Debtor and any Agent thereof, and/or the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, which Causes of Action and Defenses are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts, or gross negligence) taking place before the Effective Date.  Notwithstanding the foregoing, if an Agent of the Debtors, their Estates, the Reorganized Debtors and/or the Liquidating Debtors directly or indirectly brings or asserts any Claim or Cause of Action and Defense in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against the Debtors, the Reorganized Debtors, the Liquidating Debtors or any of their Agents, then the release set forth in this Section 9.3.1 of the Plan (but not any release or exoneration or any other rights or claims granted under any other section of the Plan or under any other document or agreement) shall automatically and retroactively be null and void *ab initio* with respect to such Agent; *provided, however*, the immediately preceding clause shall not apply to the prosecution in this Court (or any appeal therefrom) of the amount, priority or secured status of any pre-petition Claim or ordinary course Administrative Claim against the Debtors.

**9.3.2**                                                    **Voluntary Releases by Holders of Claims.**  For good and valuable consideration, as of the Effective Date, holders of Claims who (a)(i) voted to accept or reject the Plan and (ii) did not elect (as permitted on the applicable ballots) to opt out of the release described in this Section 9.3.2 of the Plan or (b) failed to properly complete and execute a ballot in connection with voting on the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged all Agents of each of the Debtors, their Estates, the Reorganized Debtors and/or the Liquidating Debtors from any and all Causes of Action and Defenses whatsoever, including derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Agent thereof, and/or the restructuring of Claims

and Interests prior to or in the Chapter 11 Cases, which Causes of Action and Defenses are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts, or gross negligence) taking place before the Effective Date; *provided, however,* the releases in this Section 9.3.2 shall not otherwise affect the limited release as provided under the US Airways Tenth Amendment. The vote or election of a trustee or other agent under this Section 9.3.2 of the Plan acting on behalf of or at the direction of a holder of a Claim shall bind such holder to the same extent as if such holder had itself voted or made such election. A holder of a Claim who did not cast a ballot on the Plan or who was not entitled to cast a ballot shall be deemed to have opted out of the release set forth in this Section 9.3.2.

**9.4**   **Discharge and Permanent Injunction.** Except as otherwise set forth in the Plan and the US Airways Tenth Amendment, Confirmation of the Plan shall discharge the Debtors and the Reorganized Debtors from all Claims or other debts that arose at any time before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim has accepted the Plan. As of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined, to the full extent provided under Section 524(a) of the Bankruptcy Code, from "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability" of the Debtors or the Reorganized Debtors, except as otherwise set forth in this Plan. Nothing contained in the foregoing discharge shall, to the full extent provided under Section 524(e) of the Bankruptcy Code, affect the liability of any other entity on, or the property of any other entity for, any debt of the Debtors that is discharged under the Plan.

**9.5**   **Limitation of Liability.** The Debtors, the Reorganized Debtors, the Liquidating Debtors and each of their respective Agents shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

**9.6**   **Exoneration and Reliance.** The Debtors, the Reorganized Debtors, the Liquidating Debtors, the Committee, the Indenture Trustees, and each of their respective Agents, shall not be liable, other than for gross negligence, willful misconduct, acts taken in violation of an Order of the Bankruptcy Court entered in the Chapter 11 Cases, or under section 549 of the Bankruptcy Code, to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with the Chapter 11 Cases or the negotiation, formulation, development, proposal, disclosure, Confirmation or implementation of the Plan. The Debtors, the Reorganized Debtors, the Liquidating Debtors, the Committee, the Indenture Trustees and each of their respective Agents may reasonably rely upon the opinions of their respective counsel, accountants, and other experts and professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross negligence or willful misconduct; *provided however,* that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence or willful misconduct.

# ARTICLE 10
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the extent legally permissible, including, without limitation, jurisdiction to:

(a)　　Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)　　Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

(c)　　Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any Debtor is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

(d)　　Ensure that distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(e)　　Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving any Debtor that may be pending on the Effective Date;

(f)　　Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(g)　　Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan; provided, however, that any disputes with respect to the US Airways Code Share Agreement shall be subject to the provisions regarding jurisdiction contained therein.

(h)　　Modify the Plan before or after the Effective Date under Section 1127 of the Bankruptcy Code or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan and the Disclosure

Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(j)     Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(k)     Hear and determine Causes of Action and Defenses commenced by the Debtors or the Post-Effective Date Debtors to the extent the Bankruptcy Court otherwise has jurisdiction over such claims;

(l)     Hear and determine any and all retained Claims commenced by the Debtors to the extent the Bankruptcy Court otherwise has jurisdiction over such claims;

(m)     Enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan; and

(n)     Enter an order closing the Chapter 11 Cases at the appropriate time.

## ARTICLE 11
## AMENDMENT AND WITHDRAWAL OF PLAN

**11.1    Amendment of the Plan.**  At any time before the Confirmation Date, the Debtors may alter, amend, or modify the Plan in consultation with the Committee, subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. After the Confirmation Date, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, or as otherwise may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.2    Revocation or Withdrawal of the Plan.**  The Debtors reserve the right to revoke or withdraw this Plan in consultation with the Committee.  If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed a waiver of any Claims by or against the Debtors or any other Person in any further proceedings

involving the Debtors or an admission of any sort, and this Plan and any transaction contemplated by this Plan shall not be admitted into evidence in any proceeding.

## ARTICLE 12
## MISCELLANEOUS

**12.1**   **Effectuating Documents; Further Transactions; Timing.**  The Debtors and the Post-Effective Date Debtors shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

**12.2**   **Exemption From Transfer Taxes.**  In accordance with Section 1146(c) of the Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under this Plan shall not be subject to any stamp tax or similar tax, fee or assessment, and the appropriate state or local government officials or agents, including, without limitation, the Federal Aviation Administration, shall be directed to forego the collection of any such tax, fee or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax, fee or assessment.

**12.3**   **Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is controlling or the parties to a contract or agreement have agreed otherwise with respect to such contract or agreement, the rights, duties and obligations of the Debtors, the Post-Effective Date Debtors, and any other Person arising only under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to New York's choice of law provisions.

**12.4**   **Modification of Payment Terms.**  The Post-Effective Date Debtors may modify the treatment of any Allowed Claim or Interest in any manner adverse only to the holder of such Claim or Interest at any time after the Effective Date upon the prior written consent of the Person whose Allowed Claim or Interest treatment is being adversely affected.

**12.5**   **Provisions Enforceable.**  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan is valid and enforceable in accordance with its terms.

**12.6**   **Quarterly Fees to the United States Trustee.**  All fees payable under 28 U.S.C. § 1930(a)(6), and interest and penalties payable under 31 U.S.C. § 3717, shall be paid by the Debtors in the amounts and at the times such fees amounts may become due up to and including the Effective Date.  Thereafter, the Post-Effective Date Debtors shall pay all fees payable under 28 U.S.C. § 1930(a)(6), and interest and penalties payable under 31 U.S.C. § 3717, until the Chapter 11 Cases are closed, dismissed or converted.

**12.7**   **Timing of Payment.**  Whenever any payment or distribution to be made under the Plan is due on a day other than a Business Day, such payment or distribution may instead be made, without interest, on the immediately following Business Day.

**12.8    Notice of Confirmation.**  As soon as practicable following the Effective Date of the Plan, the Post-Effective Date Debtors shall file and serve a notice of the entry of the Confirmation Order in the manner required under Bankruptcy Rule 2002(f).  The notice shall further identify the Effective Date and shall set forth the Administrative Claim Bar Date, the Professional Fees Bar Date, the Rejection Claims Bar Date and any other deadlines that may be established under the Plan or the Confirmation Order.

**12.9    Successors and Assigns.**  The Plan is binding upon and will inure to the benefit of the Debtors, the Post-Effective Date Debtors, and each of their respective Agents, successors, and assigns, including, without limitation, any bankruptcy trustees or estate representatives.

**12.10    Notices.**  Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (a) the third (3rd) calendar day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service; or (b) the third (3rd) calendar day after deposit in the United States mail, with proper first class postage prepaid.  If such notice is made to the Debtors, it shall be addressed as follows:

        Mesa Air Group, Inc., *et al*.
        410 N. 44th Street, Suite 700
        Phoenix, AZ 85008
        Attention:  Brian S. Gillman
        Facsimile: 602-685-4352

        <ins>with copies to</ins>:

        Debra Grassgreen, Esq.
        John W. Lucas
        Pachulski Stang Ziehl & Jones LLP
        150 California St.
        15th Floor
        San Francisco, CA  94111
        Facsimile:  415-263-7010

        -and-

        Maria A. Bove, Esq.
        Pachulski Stang Ziehl & Jones LLP
        780 Third Ave., 36th Floor
        New York, NY  10017
        Facsimile:  212-561-7777

If such notice is made to the Committee, it shall be addressed as follows:

> Brett H. Miller, Esq.
> Lorenzo Marinuzzi, Esq.
> Todd M. Goren, Esq.
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, NY 10104
> Facsimile: 212-468-7900

If such notice is made to the United States Trustee, it shall be addressed as follows:

> Tracy Hope Davis, ~~Acting~~ United States Trustee
> Attn: Andrea B. Schwartz, Trial Attorney
> 33 Whitehall St., 21st Floor
> New York, NY 10004
> Facsimile: 212-668-2255

**12.10.1**      **Notice to Claim and Interest Holders.** Notices to Persons holding a Claim or Interest will be sent to the addresses set forth in such Person's proof of Claim or Interest or, if none was filed, at the address set forth in the Schedules.

**12.10.2**      **Post-Effective Date Notices.** Following the Effective Date, notices will only be served on the Post-Effective Date Debtors, the Office of the United States Trustee and those Persons who file with the Court and serve upon the Post-Effective Date Debtors a request, which includes such Person's name, contact person, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Court requests for special notice of the proceedings and other filings in the Chapter 11 Cases will not receive notice of post-Effective Date matters unless such Persons file a new request in accordance with this Section 12.10.2.

**12.11**    **Incorporation by Reference.** All exhibits, schedules and supplements to the Plan are incorporated and are made a part of the Plan as if set forth in full in the Plan.

**12.12**    **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

**12.13**    **Conflict of Terms.** In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan will control.

**12.14**    **Severability of Plan Provisions.** If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will

then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. In addition, in the event that certain Debtors are excluded from the scope of the Plan or the Plan is determine to be invalid, void or unenforceable as to such Debtors, the remaining provisions of the Plan shall remain valid and enforceable against the remaining Debtors to the Plan.

Dated:    November 4,[ ], 2010          MESA AIR GROUP, INC. AND
                                        ITS DEBTOR AFFILIATES


                                   By:    /s/ Michael J. Lotz
                                          Name:
                                          Title:


Respectfully submitted by,

PACHULSKI STANG ZIEHL
    & JONES LLP


By:      /s/ Debra I. Grassgreen
         Richard M. Pachulski
         Laura Davis Jones
         Debra I. Grassgreen
         Maria A. Bove
         John W. Lucas

         Attorneys for Debtors and
         Debtors in Possession

## *LIST OF EXHIBITS TO PLAN*

**Exhibit A:**   Reorganized Mesa Charter Documents

**Exhibit B:**   List of Key Employment Agreements

**Exhibit C:**   Non-Exclusive List of Retained Claims and/or Defenses

**Exhibit D:**   Convenience Class Distribution Percentages

**EXHIBIT A**

**REORGANIZED MESA CHARTER DOCUMENTS**

Amended and Restated Certificate of Incorporation of Mesa Air Group

Amended and Restated By-Laws of Mesa Air Group

**EXHIBIT B**

**LIST OF KEY EMPLOYMENT AGREEMENTS**

| Employee | Date of Prepetition Agreement |
|---|---|
| Jonathan G. Ornstein | January 1, 2009 |
| Michael J. Lotz | January 1, 2009 |
| Brian Gillman | January 1, 2009* |

*Amended and Restated as of that date.

## EXHIBIT C

## NON-EXCLUSIVE LIST OF

## RETAINED CLAIMS AND/OR DEFENSES

**This Exhibit is subject to all of the provisions of the Plan, including, without limitation, Article 11, under which the Debtors reserved the right to alter, amend, or modify the Plan, including any Exhibits thereto, under Section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date.**

The following is a non-exclusive list of potential or actual Causes of Action and Defenses that the Debtors, the Reorganized Debtors and/or the Liquidating Debtors have asserted or may potentially assert. The Debtors reserve their right to modify this list to amend such Causes of Action and Defenses or otherwise update this list, but disclaim any obligation to do so.

*APS Capital Corp. v. Mesa Air Group, Inc.*, Case No. 1:07-cv-00327-SS (W.D. Tex).

**EXHIBIT D**

**CONVENIENCE CLASS DISTRIBUTION PERCENTAGES\***

| Case | Percentage |
|---|---|
| Mesa Air Group, Inc. | 1.4% |
| Mesa Air New York, Inc. | 100% |
| Mesa In-Flight, Inc. | 0.0% |
| Freedom Airlines, Inc. | 7.7% |
| Mesa Airlines, Inc. | 2.4% |
| MPD, Inc. | 100% |
| Ritz Hotel Management Corp. | 0.0% |
| Regional Aircraft Services, Inc. | 0.0% |
| Air Midwest, Inc. | 3.6% |
| Mesa Air Group — Airline Inventory Management, LLC | 100% |
| Nilchii, Inc. | 100% |
| Patar, Inc. | 0.0% |

Document comparison by Workshare Professional on Wednesday, November 17, 2010 1:48:02 PM

| Input: | |
|---|---|
| Document 1 ID | pcdocs://docs_sf/74170/7 |
| Description | #74170 v7 - Mesa - Plan of Reorganization |
| Document 2 ID | pcdocs://docs_sf/74777/2 |
| Description | #74777 v2 - Mesa Second Amended Plan (Shareholder Agreement) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 500 |
| Deletions | 634 |
| Moved from | 6 |
| Moved to | 6 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 1146 |