UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MESA AIR GROUP, INC., et al.,[1]<br><br>        Reorganized Debtors. | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 10-10018 (MG)<br>(Jointly Administered)<br>Confirmed Cases |

**AMENDED MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART APPLICATION FOR PROFESSIONAL FEES AND EXPENSES OF DELOITTE TAX LLP**

*A P P E A R A N C E S :*

DELOITTE TAX LLP
2901 N. Central Avenue
Suite 1200
Phoenix, Arizona 85012
By: Irene Cannon-Geary, Esq.

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By: Serene Nakano, Esq.


**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

    Preparation and review of fee applications is an important responsibility of bankruptcy professionals in all cases, but particularly in large chapter 11 cases where aggregate fees of all professionals may exceed tens or hundreds of millions of dollars. Bankruptcy courts also have an important responsibility to scrutinize applications before approving requests for fees and reimbursement of expenses. This case has been a very successful one in which Mesa has been

---

[1]   The Debtors (collectively referred to in this Opinion as "Mesa") were: Mesa Air Group, Inc. (2351); Mesa Air New York, Inc. (3457); Mesa In-Flight, Inc. (9110); Freedom Airlines, Inc. (9364); Mesa Airlines, Inc. (4800); MPD, Inc. (7849); Ritz Hotel Management Corp. (7688); Regional Aircraft Services, Inc. (1911); Air Midwest, Inc. (6610); Mesa Air Group Airline Inventory Management, LLC (2015); Nilchi, Inc. (5531); and Patar, Inc. (1653).

1

reorganized and continues to operate as a going concern. All of the professionals in this case performed well. The Court was asked to consider the third interim and final fee applications of all professionals, including attorneys, investment advisors and accountants. Relatively modest adjustments in prior interim fee applications were either agreed upon or were imposed by the Court in the past. At a hearing on May 25, 2011, the third interim and final fee applications likewise were approved by the Court, either as submitted or with some adjustments imposed.

This Opinion addresses a recurring issue with fee applications, raised in this case with respect to the application of Deloitte Tax LLP ("Deloitte Tax") (ECF Doc. # 1691), but in the applications of legal, financial and accounting professionals in many other cases as well. Specifically, the Court addresses reimbursement for time spent preparing, reviewing and revising or editing fee applications.

## BACKGROUND

Deloitte Tax provides tax compliance and advisory services to Mesa. For the third interim period, Deloitte Tax sought $1,095,740.45 in fees and $17,953.64 in expenses. For the entire case, Deloitte Tax sought $2,003,421.05 in fees and $26,907.40 in expenses. At the May 25 hearing on this application, the Court reduced the requested fees for the third interim period by $3,500 for "minor" (but important) issues such as "block-billing," referring to individual time entries lumping multiple tasks together, and "vagueness," referring to inadequate descriptions for time entries. These adjustments would not merit mention in a written opinion.

The issue that the Court addresses in this Opinion is the amount of time Deloitte Tax charged during the third interim period relating to preparing billing and fee applications—a total of $88,072.10, or 8.04% of the total time billed during the third interim period. This requested

amount is supported by detailed time entries in the billing statements. Nevertheless, as explained below, the Court concludes that the fees requested with respect to billing and fee applications are unreasonable and excessive. Therefore, the Court ordered an additional fee reduction of $44,000 in the final fee award.

## STANDARDS FOR AWARD OF PROFESSIONAL FEES AND EXPENSES

The court may award fees to professional persons pursuant to § 330 of the Bankruptcy Code. Section 330 provides in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award . . .
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by an such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

> In determining reasonable compensation, section 330 directs the court to consider:
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the services was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Whether services are necessary is determined from the perspective of the time at which the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii] (16th ed. rev. 2011). In the Second Circuit, the "necessary" standard in section 330 is given a broad interpretation. Services are "necessary" if they benefit the estate. *In re Keene Corp.* 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (Bernstein, J.). The test considers whether services provided were "reasonably likely to benefit the estate" and is an objective test, considering the services that a reasonable lawyer would have performed in the same circumstances. *In re Ames Dep't. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996). The determination of reasonableness should not be made in hindsight but as of the time when the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii].

The court has an independent duty to review fee applications and evaluate the compensation requested. *In re Keene*, 205 B.R. at 695. The court may reduce or disallow a request if the services provide no real benefit to the estate. *Id.* at 696. The court may also reduce compensation if the request is based on incomplete or inaccurate time records. *In re Hamilton Hardware Co.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981).

Fee applications must also comply with Bankruptcy Rule 2016, which requires "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P. 2016. Bankruptcy Rule 2016 requires disclosure of any payments previously made to the applicant and of the existence of any compensation agreement between the applicant, their client and any third party who will share the compensation. *Id.*

Also, S.D.N.Y. Local Bankruptcy Rule 2016-1 requires that such entities "shall comply with the requirements contained in any guidelines for fees and disbursements promulgated by the Court."

Additionally fee applications and interim fee applications for professionals seeking compensation pursuant to 11 U.S.C. §§ 327, 328, 330, and 331 must comply with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases set forth in General Order M-389 by Chief Bankruptcy Judge Bernstein on November 23, 2009.  M-389 incorporates and supplements the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (the "Guidelines").

The M-389 Order requires certification by the professional responsible for compliance with the guidelines that the fee application has been read, that the application and the fees therein comply with the guidelines and that the fees are billed at rates customary to the applicant and generally accepted by the applicant's clients. *Id.* at 1.  The application must also contain certifications of service upon and approval of the fee application by the U.S. Trustee, the debtor or the chair of each official committee. *Id.*  The certifications also require a list of all professionals working on a given case, aggregate hours spent by each professional, and "a reasonably detailed breakdown of the disbursements incurred and an explanation of billing practices." *Id.* at 1–2.[2]

---

[2] M-389 guidelines incorporate from the Guidelines specific requirements concerning disbursements.  These requirements include maximums of $.20 per page charge for photocopies (or cost, whichever amount is lower), $1.25 for domestic faxes, and $2.50 for international faxes (or the tolls incurred, whichever amount is lower); an explanation why any overtime expenses are "absolutely necessary" for the case; limits on meals to $20 per person, and for meals earlier than 8:00 p.m., reimbursement only if there is an additional 1 ½ hours of work expended after the dinner; prohibition on reimbursement for daytime meals "unless the individual is participating, during the meal, in a necessary meeting respecting the case"; and limits on cellular phone reimbursement to those expenses that are reasonably incurred, with routine use of cellphones "unacceptable." *Id*. at 3.

5

Since fee applications are required under the Bankruptcy Code, courts may award fees for time spent in actually preparing a fee application "based on the level and skill reasonably required to prepare the application."  11 U.S.C. § 330(a)(6).  "It is proper . . . for the bankruptcy court to examine the amount and value of the time spent preparing the [fee] application, and reasonable limits may be placed on compensation for such work."  *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 249 (Bankr. N.D.N.Y. 1997).  There is no doubt that considerable time is required properly to prepare a fee application, and professionals are entitled to reasonable compensation for doing so.  Poorly prepared applications often result in large reductions of fees and expenses approved by the court.  *De facto* fee caps are not found in the Guidelines but courts that have imposed them have fixed the percentage of total fees sought in connection with preparation of fee applications in the 3–5% range.  *See, e.g.*, *In re New Boston Coke Grp.*, 299 B.R. 432, 446 (Bankr. E.D. Mich. 2003) ("Time spent generating fee applications is generally limited to 5% of the total fees requested."); *In re Bass,* 227 B.R. 103, 109 (Bankr. E.D. Mich. 1998) ("Absent exceptional circumstances, fees for the preparation of fee applications should be limited to 5% of the total fees requested."); *In re Heck's, Inc.*, 112 B.R. 775, 793 (Bankr. S.D. W.Va. 1990), *aff'd in part, rev'd in part on other grounds*, 151 B.R. 739 (S.D. W.Va. 1992) (imposing a 3% cap).  Furthermore, in *In re CCT Commc'n, Inc.*, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. 2010 Aug. 24, 2010), Judge Bernstein found "that the review and editing of time records—as opposed to fee applications—is not compensable."  The Court need not and does not adopt a fee cap on the amount charged for preparing fee applications, but the 3-5 % range is a useful metric.  At 8 %, this component of Deloitte Tax's fee application is simply too high.  At that level, the fees for preparing fee applications fail to satisfy the objective "reasonably likely to benefit the estate" standard.  *See Ames Dep't. Stores, Inc.*, 76 F.3d at 72.  Additionally,

6

Deloitte Tax's fee application is replete with time entries where the estate was billed for reviewing time records, which are not compensable. *See CCT Commc'n, Inc.*, 2010 WL 3386947, at *9.

## CONCLUSION

In the circumstances of this case, the Court has determined to reduce Deloitte Tax's fee application by $44,000 as a result of unreasonable and excessive time billed to the estate in connection with preparing, reviewing and editing time records.[3]  Deloitte Tax is by no means unusual or especially egregious in including the questioned time in its fee application.  Because this has been a recurring issue, the Court has decided to address it here in the hope that other professionals will be mindful of the Court's Opinion.

Dated: May 25, 2011
      New York, New York

                                                          **/s/Martin Glenn**
                                                            MARTIN GLENN
                                        United States Bankruptcy Judge

---

[3] This reduction is in addition to the $3,500 reduction directed at the hearing because of block-billing and vagueness.